Susan S.Q. Kalra, CA SBN167940
Email: susan@m-iplaw.com
MAHAMEDI IP LAW LLP
303 Twin Dolphin Drive, Suite 600
Redwood City, CA 94065
Telephone: (408) 236-6640
Fax: (408) 236-6641

William P. Ramey, III (*pro hac vice*)
Email: wramey@rameyfirm.com
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, TX 77006
Telephone: (713) 426-3923
Fax: (832) 689-9175

*Attorneys for Plaintiff*
LAURI VALJAKKA

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| LAURI VALJAKKA,<br><br>Plaintiff,<br><br>v.<br><br>NETFLIX, INC.,<br><br>Defendant. | Case No.: 4:22-cv-01490-JST<br><br>**PLAINTIFF VALJAKKA'S OPENING CLAIM CONSTRUCTION BRIEF** |

## TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND ........................................................................1

II. ARGUMENT ...........................................................................................................3

A.“modified transport request” (’167 patent 1, 3-6, 8, 9, 11-17, 19, 20)..........................3

B.“data” (’167 patent 1, 3-6, 8, 9, 11-17, 19, 20).........................................................6

C.“obtaining is based at least in part on the first digital rights management key” (’102 Patent 10, 11) ..........................................................7

D.“the digital rights management header” (’102 Patent 10, 11) ....................................10

E. Method claim 10 requires a particular step order (’102 Patent 10, 11) ......................11

F.“fingerprint” (’102 Patent 10, 11) ...........................................................................133

III. CONCLUSION .........................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009) ....... 6

*Altiris Inc. v. Symantec Corp.*, 318 F.3d 1363 (Fed. Cir. 2003) ....... 11

*Applera Corp. v. MJ Research, Inc.*, 297 F. Supp. 2d 453, 455, 456 (D. Conn. 2004); ....... 5

*Arthrex, Inc. v. Smith & Nephew, Inc.*, 2016 U.S. Dist. LEXIS 105750 (E.D. Tex. Aug. 10, 2016) ....... 4, 5

Atmel Corp. v. Information Storage Devices, Inc., 198 F.3d 1374 (Fed.Cir.1999) ....... 9

*Bose Corp. v. JBL, Inc.*, 274 F.3d 1354 (Fed. Cir. 2001) ....... 8, 10

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 2017 U.S. Dist. LEXIS 53509 (N.D. Ill. Apr. 7, 2017) ....... 5

*Core Wireless Licensing S.a.r.l. v. LG Elecs. Inc.*, 2015 U.S. Dist. LEXIS 150041 (E.D. Tex. Nov. 5, 2015) ....... 4, 5

Cross Medical Products v. Medtronic Sofamor Danek, 424 F.3d 1293 (Fed. Cir.2005) ....... 9

Datamize v. Plumtree Software, Inc., 417 F.3d 1342 (Fed. Cir.2005) ....... 9

*Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1370 (Fed. Cir. 2006) ....... 8, 9, 10

*Freeny v. Murphy USA Inc.*, 2015 U.S. Dist. LEXIS 6377 (E.D. Tex. Jan. 21, 2015) ....... 4, 5

*In re Moore, ,* 58 C.C.P.A. 1042, 439 F.2d 1232 (1971) ....... 8, 9

*Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985 (Fed. Cir. 1999) ....... 3, 4

*Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341 (Fed. Cir. 2009) ....... 6

*MeetrixIP, LLC v. Citrix Sys., Inc.*,
2017 WL 5986191 (W.D. Tex. Dec. 1, 2017) ........ 3

*N. Telecom Ltd. v. Samsung Elecs. Co.*,
215 F.3d 1281 (Fed. Cir. 2000) ........ 4

*Nautilus, Inc. v. Biosig Instruments*,
134 S. Ct. 2120, 189 L. Ed. 2d 37 (2014) ........ 8

Oakley, Inc. v. Sunglass Hut Int'l,
316 F.3d 1331 (Fed.Cir.2003) ........ 9

*Optis Cellular Tech., LLC v. Kyocera Corp*,
2017 U.S. Dist. LEXIS 18191 (E.D. Tex. Feb. 9, 2017) ........ 4, 5

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ........ 3, 6

*Pisony v. Commando Construction, Inc.*,
2019 WL 928406, (W.D. Tex. Jan. 23, 2019) ........ 3

Slimfold *Mfg. Co. v. Kinkead Indus.*,
810 F.2d 1113 (Fed. Cir. 1987) ........ 9

*Thorner v. Sony Computer Entm't Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012) ........ 3

*Traxxas, L.P. v. Hobbico, Inc.*,
2017 U.S. Dist. LEXIS 162858 (E.D. Tex. Sept. 29, 2017) ........ 4

*Union Pac. Res. Co. v. Chesapeake Energy Corp.*,
236 F.3d 684 (Fed.Cir.2001) ........ 9

*Watts v. XLSys., L.P.*,
2008 WL 5731945 (W.D. Tex. July 1, 2008) ........ 3

**I. INTRODUCTION AND BACKGROUND**

Plaintiff Lauri Valjakka ("Valjakka") respectfully requests that the Court adopt his proposed constructions—which are simply plain and ordinary meaning—regarding certain claim terms of the asserted patents, U.S. Patent No. 8,495,167 (the "'167 patent") and U.S. Patent No. 10,726,102 (the "'102 patent").

The '167 patent is directed to improvements in network systems, and particularly data transfer across large numbers of clients in a communications network. For reference, independent claim 1 of the '167 patent is provided below.

> 1. A data communication network comprising:
> a plurality of terminals; and
> a main server adapted to manage selective retrieval of data from a first server by at least one target terminal selected from said plurality of terminals, said main server being distinct from said first server; and
> a network information database containing terminal performance information, wherein
> at least two of said terminals are adapted to act as relay servers for serving data retrieved from said first server to at least one target terminal; and wherein
> the main server is adapted to send transport requests direct to at least one first target terminal on the basis of said terminal performance information, and wherein the main server is further adapted to monitor response times of terminals in the network and in which terminals are selected to act as relay servers for a particular data transfers on the basis of their relative response times, and the first target terminal is adapted to act as relay server; and
> wherein each such transport request includes details of data to be retrieved, the address of the first server from which the data is to be requested by the first target terminal, the addresses of at least one second target terminal to which the data from the first server to be relayed by the first target terminal and an indication of a relative performance of a further target terminal based on the terminal performance information stored in the network information database; and
> wherein terminals adapted to act as relay servers are adapted to modify transport requests received from the main server or from other relay servers and to transmit the modified transport request to selected target terminals from a set of target terminals identified in the transport request, wherein the modified transport request further includes addresses of further

> target terminals for which the recipient of the modified transport request is to act as relay server; and
>
> wherein data to be retrieved by said target terminals are divided into a series of packets for transmission to said target terminals and each of said terminals is adapted to communicate directly with said main server to acknowledge receipt of the last packet of a series routed thereto.[1]

The ’102 patent is directed to improvements in providing access to access restricted content. For reference, independent claim 10 of the ’102 patent is provided below.

> 10. A method, comprising:
>
> obtaining an access restricted content from at least one of a content database and a content providing server;
>
> obtaining a first digital rights management key from a content database, wherein the obtaining is based at least in part on a query, the query comprising the content identifier and an identifier associated with the user;
>
> deriving, using the first digital rights management key, from the access restricted content a fingerprint of the access restricted content wherein the obtaining is based at least in part on the first digital rights management key,
>
> causing the content providing server to validate the fingerprint, and, if the validation is successful, accessing the access restricted content and
>
> information describing encryption properties of the access restricted content, and
>
> deriving, using the digital rights management header of the access restricted content, from the access restricted content a second and third digital rights management key,
>
> wherein the second and third digital rights management keys are applied to retrieve the payload of the access restricted content and wherein at least one of the second or third digital rights management key is used to encrypt the other key of the second or third digital rights management key,
>
> wherein the content is usable without being in an unprotected state.[2]

With respect to the ’167 patent, Netflix seeks to overly narrow claim terms that would be readily apparent to one of ordinary skill in the art at the time of filing. Additionally, Netflix intends to argue that the ’102 patent’s claim terms are indefinite and to read in its own

---

[1] ECF 14-1, Exhibit (“Ex.”) A at Column 7, line 63 to Column 8, line 38 (“7:63-8:38”).
[2] ECF 14-1, Ex. A at 14:1-28.

limitations with respect to the method claims 10 and 11. As discussed in detail below, Netflix's proposed constructions are overly narrow and unnecessary in light of the straightforward plain and ordinary meaning of the identified claim terms.

## II. ARGUMENT

### A. "modified transport request" ('167 patent 1, 3-6, 8, 9, 11-17, 19, 20)

| Valjakka's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | "message that is modified by a relay server to add target terminal addresses" |

The plain and ordinary meaning of the claim phrase "modified transport request" should be adopted by the Court. In determining the meaning of the claims, "there is a 'heavy presumption in favor of the ordinary meaning of claim language.'"[3] Ordinary meaning is defined as the "meaning that term would haveto a person of ordinary skill in the art in question at the time of invention."[4] In fact, there are only two situations where a sufficient reason exists to require the entry of a definition of a claim term other than its plain and ordinary meaning. The first arises if the patentee has chosen to be his or her own lexicographer by clearly setting forth an explicit definition for a claim term. The second is where the term or terms chosen by the patentee so deprive the claim of clarity that there is no means by which the scope of the claim may be

---

[3] *Watts v. XLSys., L.P.*, No. 1:06-cv-653-LY, 2008 WL 5731945, at *7 (W.D. Tex. July 1, 2008) (quoting *Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999)); *see also MeetrixIP, LLC v. Citrix Sys., Inc.*, No. 1:16-CV-1033-LY, 2017 WL 5986191, at *2 (W.D. Tex. Dec. 1, 2017) (citing *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012))("The Federal Circuit has reaffirmed that a departure from the ordinary and customary meaning isthe exception, not the rule.").

[4] *Phillips v. AWH Corp.* 415 F.3d 1303, 1313 (Fed. Cir. 2005); *see also Pisony v. Commando Construction, Inc.*, W-17-CV-00055-ADA, 2019 WL 928406,at *1 (W.D. Tex. Jan. 23, 2019). "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313.

ascertained from the language used.[5]

Further, construing claim terms with different language than that of the claim (i.e., providing a construction other than "plain and ordinary meaning") runs the risk of "redraft[ing],"[6] "redefin[ing],"[7] or otherwise "chang[ing]"[8] a claim term's meaning. The danger of "redraft[ing]"[9] or "redefin[ing]"[10] a claim term's meaning is particularly heightened when a proposed construction uses words found nowhere in the patent specification.[11]

Unless the patent applicant clearly redefined (in the application or prosecution history) a term, an easily understandable, unambiguous term should simply be construed as "plain and ordinary meaning."[12] A proposed construction narrowing a term from its plain and ordinary meaning should be rejected if the intrinsic evidence does not require the narrowing restriction.[13]

---

[5] *N. Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281, 1291 (Fed. Cir. 2000) *citing Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 990 (Fed. Cir. 1999).

[6] *See Arthrex, Inc. v. Smith & Nephew, Inc.*, No. 2:15-cv-1047-RSP, 2016 U.S. Dist. LEXIS 105750, at **93, 173 (E.D. Tex. Aug. 10, 2016).

[7] *See Core Wireless Licensing S.a.r.l. v. LG Elecs. Inc.*, No. 2:14-cv-0911-JRG-RSP, 2015 U.S. Dist. LEXIS 150041, at **60, 61, 65, 66 (E.D. Tex. Nov. 5, 2015).

[8] *See Freeny v. Murphy USA Inc.*, 2015 U.S. Dist. LEXIS 6377 (E.D. Tex. Jan. 21, 2015), at **52, 61, 68, 90.

[9] *See Arthrex*, 2016 U.S. Dist. LEXIS 105750, at **93, 173.

[10] *See* Core *Wireless Licensing S.a.r.l.*, 2015 U.S. Dist. LEXIS 150041, at **60, 61, 65, 66.

[11] *See Arthrex*, 2016 U.S. Dist. LEXIS 105750, at *173 (stating, "'[G]rooves' does not appear in the specification. The Court is not persuaded that it should redraft the claims to replace a term that is in the specification with a term that is not in the specification, particularly when doing so would not provide any additional clarity."); *Freeny*, 2015 U.S. Dist. LEXIS 6377, at *73 (stating, "The specification never uses the term 'group' or 'encoded,' and the Court rejects Defendant's inclusion of these terms as not being necessary or warranted.").

[12] *See Arthrex*, 2016 U.S. Dist. LEXIS 105750, at **106, 108, 127 173, 174; *Traxxas, L.P. v. Hobbico, Inc.*, No. 2:16-CV-00768-JRG-RSP, 2017 U.S. Dist. LEXIS 162858 (E.D. Tex. Sept. 29, 2017) (Payne, Mag.).

[13] *Arthrex*, 2016 U.S. Dist. LEXIS 105750, at *127 (stating, "There is nothing in the claim language that *requires* [emphasis added] the width to be the largest width."); *Optis Cellular Tech., LLC v. Kyocera Corp,*, 2017 U.S. Dist. LEXIS 18191 (E.D. Tex. Feb. 9, 2017), at *27 (stating, "Defendants have pointed to no clear language in the intrinsic record of lexicography, disavowal, or disclaimer *mandating* [emphasis added] that 'mapping' be limited to 'placing.'"); *Mobile*

A defendant proposing a different construction because of purported ambiguity bears the burden of proving the ambiguity.[14] The danger of "redraft[ing]"[15] or "redefin[ing]"[16] a claim term's meaning is particularly heightened when a proposed construction uses words found nowhere in the patent specification.[17]

This argument is straightforward for this term - the definition of the phrase is in claim 1 itself, which one skilled in the art could read and comprehend. The relevant portion of the second "wherein" modifier element of claim 1, copied above, is as follows:

> wherein **terminals** adapted to act as relay servers **are adapted to modify transport requests** received from the main server or from other relay servers. . . (Emphasis added).

The meaning is clear to the skilled artisan: "terminals" are "adapted" to "act as relay servers." These terminals are also "adapted to modify transport requests." Thus, there are terminals that are adapted to act as relay servers and these adapted terminals can also modify transport requests.

---

*Telecommc'ns, LLC v. T-Mobile USA, Inc.*, 78 F. Supp. 3d at 661 (stating, " . . . Defendants have failed to identify anything in the claims or the specification that *necessarily limit* [emphasis added] s the disputed term to . ..

[14] *Optis Cellular*, 2017 U.S. Dist. LEXIS 18191, at **91, 92 (stating, "Defendants have not demonstrated any lack of clarity of the actual claim language in light of the specification."); *Freeny*, 2015 U.S. Dist. LEXIS 6377, at **52, 60, 68, 90 (Payne, Mag.) (stating, "Absent clear evidence to the contrary, the Court is hesitant to change the plain meaning of a term."); *see also Applera Corp. v. MJ Research, Inc.*, 297 F. Supp. 2d 453, 455, 456 (D. Conn. 2004); *Chamberlain Grp., Inc. v. Techtronic Indus. Co*., No. 16 C 6097, 2017 U.S. Dist. LEXIS 53509, at *55 (N.D. Ill. Apr. 7, 2017).

[15] *See Arthrex*, 2016 U.S. Dist. LEXIS 105750, at **93, 173 (Payne, Mag.).

[16] *See* Core *Wireless Licensing S.a.r.l.*, 2015 U.S. Dist. LEXIS 150041, at **60, 61, 65, 66 (Payne, Mag.).

[17] *See Arthrex*, 2016 U.S. Dist. LEXIS 105750, at *173 (Payne, Mag.) (stating, "'[G]rooves' does not appear in the specification. The Court is not persuaded that it should redraft the claims to replace a term that is in the specification with a term that is not in the specification, particularly when doing so would not provide any additional clarity."); *Freeny*, 2015 U.S. Dist. LEXIS 6377, at *73 (Payne, Mag.) (stating, "The specification never uses the term 'group' or 'encoded,' and the Court rejects Defendant's inclusion of these terms as not being necessary or warranted.").

Defendant seeks to improperly add limitations from the specification not found in the claims. Netflix wants the phrase "modified transport request" to be limited strictly to a "message that is modified by **a relay server**." (Emphasis added.) The claims are not so limited. Plainly, claim 1 states a "terminal" modifies the transport request—not a relay server. Netflix seeks to exclude the claim term "terminal" from the meaning of the claim using language from the specification:

> As part of the transport request, the main server sends the addresses of other target terminals to the first set of terminals/relay servers.[18]

None of the patent claims here should have imports of limitations from the specification into the claims. The Federal Circuit consistently has cautioned that "courts must take care not to import limitations into the claims from the specification,"[19] and "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment."[20]

Defendant's construction of "modified transport request" from claims 1, 3-6, 8, 9, 11-17, 19, 20) should be rejected, and the plain and ordinary meaning (no construction necessary) of the phrase "modified transport request" should be held by the Court.

**B. "data" ('167 patent 1, 3-6, 8, 9, 11-17, 19, 20)**

| Valjakka's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | "content files or parts of content files that are stored by a terminal for subsequent use after retrieval, distinct from streaming content" |

[18] ECF 14-1, Ex. A at 5:33-35.

[19] *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009).

[20] *Phillips v. AWH Corp.*, 415 F.3d at 1323; *see also Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1347-48 (Fed. Cir. 2009) (single detailed embodiment is "not enough, however, to limit the patentee's clear, broader claims.").

The plain and ordinary meaning of the claim term "data" should be adopted by the Court. "Data" is a ubiquitous term that is understood by one skilled in the art and has not been limited by the claims, specification or prosecution history of the '167 Patent. "Data" was defined in the specification in non-limiting terms as the following:

> For convenience, data that is to be distributed from the media storage system 18 will be referred to herein as "content, which will be understood to include **any type of data of interest to end users**, including **but not limited to** text, graphics, video, audio, executable code etc. Content will generally comprise a data file of some type.[21]

Thus, even the specification states that "data" is not limited to the types of content listed as text, graphics, video, audio, code, etc.

Defendant's proposed construction uses the phrases "content files" and "parts of content files." These phrases are not found in the claims or specification. Netflix' proposed construction is therefore to use phrases that are not defined and extrinsic to the patent. Netflix's proposed construction also seeks to limit "data" to specific files stored by a terminal for use at a specific time. This is improperly limiting "data" in the claims when the skilled artisan can determine that the claims clearly do not do so.

The Court should reject Netflix's proposed construction and adopt a plain and ordinary meaning for the claim term "data."

**C. "obtaining is based at least in part on the first digital rights management key" ('102 Patent 10, 11)**

| **Valjakka's Proposed Construction** | **Defendant's Proposed Construction** |
|---|---|
| Plain and ordinary meaning | Indefinite |

[21] ECF 14-1, Ex. A at 1:58-63 (Emphasis added.)

Here, defendant's proposed indefiniteness construction conveniently leaves out the rest of the claim term which modifies the term at issue. The full claim term states:

> deriving, using the first digital rights management key, from the access restricted content a fingerprint of the access restricted content wherein the obtaining is based at least in part on the first digital rights management key….[22]

One of ordinary skill would not read claim terms in a vacuum but would look to the specification of the '102 patent which clarifies "[t]he client may obtain, in phase 4120, a fingerprint of the content wherein the obtaining may be based at least in part on the first DRM key."[23] Thus, it is apparent that this claim feature refers to the fingerprint of the access restricted content obtained by the derivation from the first digital rights management key.

The Federal Circuit is clear on the issue of definiteness of claim terms. "Claim definiteness is analyzed 'not in a vacuum, but always in light of the teachings of the prior art and of the particular application disclosure as it would be interpreted by one possessing the ordinary level of skill in the pertinent art.'"[24] Moreover, in *Bose Corp. v. JBL, Inc.*[25] the court held that "[i]f the scope of a claim would be reasonably ascertainable by those skilled in the art, then the claim is not indefinite," even if there is an absence of explicit antecedent basis. The United States Supreme Court made it clear in *Nautilus, Inc. v. Biosig Instruments, Inc.*, that patent claims are definite when, read in light of the specification delineating the patent and the prosecution history, the words inform, with reasonable certainty, those skilled in the

---

[22] ECF 14-1, Ex. B at claim 10.

[23] ECF 14-1, Ex. B at 10:32-36.

[24] *Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366 (Fed. Cir. 2006) (quoting *In re Moore*, 58 C.C.P.A. 1042, 439 F.2d 1232, 1235 (1971)).

[25] 274 F.3d 1354, 1359 (Fed.Cir.2001).

art about the scope of the invention.[26] The requirement of antecedent basis is a rule of patent drafting, administered during patent examination. The Manual of Patent Examining Procedure states that "... the failure to provide explicit antecedent basis for terms does not always render a claim indefinite."[27] Moreover, the Federal Circuit has repeatedly noted that an antecedent basis can be present by implication.[28]

An analysis of claim indefiniteness under § 112 ¶ 2 is "inextricably intertwined with claim construction."[29] Claims should not be found indefinite if reasonable efforts at claim construction would provide a construction and thus respect the statutory presumption of validity and protect the inventive contribution of patentees, even when the drafting of their patents has been less than ideal.[30]

Claim definiteness is not analyzed "in a vacuum, but always in light of the ... particular application disclosure as it would be interpreted by one possessing the ordinary level of skill in the pertinent art."[31] The definiteness inquiry "focuses on whether those skilled in the art would understand the scope of the claim when the claim is read in light of the rest of the specification."[32]

---

[26] 134 S. Ct. 2120, 2124, 189 L. Ed. 2d 37 (2014).

[27] *Energizer Holdings, Inc.*, 435 F.3d at 1370.

[28] *Slimfold Mfg. Co. v. Kinkead Indus.*, 810 F.2d 1113, 1116 (Fed Cir. 1987). *See Cross Medical Products v. Medtronic Sofamor Danek*, 424 F.3d 1293, 1319 (Fed.Cir.2005).

[29] *Atmel Corp. v. Information Storage Devices, Inc.*, 198 F.3d 1374, 1379 (Fed.Cir.1999). *See Datamize v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347–48 (Fed.Cir.2005).

[30] *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1340–41 (Fed.Cir.2003) (determination of claim definiteness "requires a construction of the claims according to the familiar canons of claim construction").

[31] *Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1370 (Fed. Cir. 2006) *citing In re Moore,* 58 C.C.P.A. 1042, 439 F.2d 1232, 1235 (1971).

[32] *Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 692 (Fed.Cir.2001).

Likewise, here, the claim phrase is reasonably ascertainable by those skilled in the art, and defendant's "construction" of indefinite should be rejected. The plain and ordinary meaning of "obtaining is based at least in part on the first digital rights management key" should be adopted by the Court.

**D. "the digital rights management header" ('102 Patent 10, 11)**

| **Valjakka's Proposed Construction** | **Defendant's Proposed Construction** |
|---|---|
| Plain and ordinary meaning | Indefinite |

The plain and ordinary meaning of the claim phrase "the digital rights management header" should be adopted by the Court. The phrase in claim 10 begins with the article "the", which lacks an antecedent basis. However, lack of an antecedent basis does not make a claim de-facto indefinite. In *Energizer Holdings, Inc. v. Int'l Trade Comm'n* , the Federal Circuit found clear error and reversed a holding of claim indefiniteness by the International Trade Commission under 35 USC 112 based on a lack of antecedent basis. The court refused to follow any strict "rules" of claim drafting and instead found that a claim is not indefinite unless the scope is not "reasonably ascertainable by those skilled in the art."[33]

The plain meaning of the claim phrase "the digital rights management header," when read in context of the claims and the specification, is reasonably ascertainable by those skilled in the art. The digital rights management header is mentioned numerous times in the specification such that those skilled in the art can form a clear meaning to the phrase in context of the claims. For example, the specification states that "[t]he validation module 28 retrieves (at block 46) a first digital rights management key (Key #1) and a header associated with the user

---

[33] 435 F.3d 1366, 1370 (Fed. Cir. 2006); *Bose Corp. v. JBL, Inc.*, 274 F.3d 1354, 1359 (Fed.Cir.2001).

identifier. . . ."[34] and ". . . the client in phase 4190 proceeds to access the content to retrieve a D R M header, and optionally also to apply the first D R M key to the header. . . ."[35]

The claim phrase is reasonably ascertainable by those skilled in the art, and defendant's "construction" of indefinite should be rejected.

**E. Method claim 10 requires a particular step order ('102 Patent 10, 11)**

| **Valjakka's Proposed Construction** | **Defendant's Proposed Construction** |
|---|---|
| Plain and ordinary meaning | The DRM keys must be obtained or derived before restricted content is obtained.<br><br>Further, the first DRM key must be obtained and the fingerprint validated before the second and third DRM keys are derived. |

The plain and ordinary meaning of the method step order in claim 10 should be followed. The leading case in the ordering of steps in a claim, according to the Patent Office's Manual of Patent Examining Procedure, or "MPEP," is *Altiris Inc. v. Symantec Corp*.[36] There, the Federal Circuit held that although the specification discussed only a single embodiment, that it was improper to read a specific order of steps into method claims where, as a matter of logic or grammar, the language of the method claims did not impose a specific order on the performance of the method steps, and the specification did not directly or implicitly require a particular order.[37]

First, method claim 10 has no explicit ordering of steps that is imposed to complete the method. Second, only the first DRM key and the fingerprint are validated before accessing the

[34] ECF 14-1, Ex. B at 7:16-19.
[35] ECF 14-1, Ex. B at 10:49-51.
[36] 318 F.3d 1363 (Fed. Cir. 2003); MPEP 2111.01(II).
[37] *Id.* at 1371.

restricted content. Contrary to Netflix' proposed construction, all of the DRM keys do not need to be validated to access restricted content. The relevant steps are listed below:

> obtaining a first digital rights management key from a content database. . .
>
> deriving, using the first digital rights management key, from the access restricted content a fingerprint of the access restricted content. . .
>
> causing the content providing server to validate the fingerprint, and, if the validation is successful, **accessing the access restricted content**. . . '102 Patent, 14:5-12 (Emphasis added.)

Thus, contrary to Netflix' assertions, those skilled in the art would recognize that only the first DRM key and fingerprint need to be validated before restricted content is accessed.

Further, those skilled in the art would recognize that there are no temporal restrictions on obtaining the second and third DRM keys in the claim. Contrary to Netflix' position, there is no mandate that the second and third DRM keys "must be obtained and the fingerprint validated" before the second and third DRM keys are obtained. The plain language of the claim step provides additional support for plaintiff's position:

> deriving, **using the digital rights management header** of the access restricted content, from the access restricted content a second and a third digital rights management key. . .[38]

The second and third DRM keys are derived from the DRM header, and no mention of obtaining the first DRM key and fingerprint validation are required prior to this step.

Based on the foregoing, Netflix' claim construction of necessary order of steps for claim 10 should be rejected.

---

[38] ECF 14-1, Ex. B at 14:17-20 (Emphasis added).

**F. "fingerprint" ('102 Patent 10, 11)**

| Valjakka's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | "a bit string, derived (or computed) directly from the content, that uniquely represents the content" |

The plain and ordinary meaning of the claim term "fingerprint" should be adopted by the Court. The term is used in the third method step of claim 10 as "deriving . . . a fingerprint of the access restricted content. . . ."[39] The computerized term "fingerprint" is common among those skilled in the art of working with data and especially secured data. Netflix' proposed construction of "a bit string. . ." as the meaning of "fingerprint" in claim 10 is without foundation or evidence. Neither the phrase "bit string" nor each individual word "bit" or "string" are found in the claims or specification of the '102 Patent. Thus, according to the '102 Patent the proposed construction appears to be made up whole-cloth by Netflix.

The **C**ourt should reject Netflix' proposed construction and rely on the plain and ordinary meaning of "fingerprint" for claim 10.

**III. boxCONCLUSION**

For the reasons set forth above, Valjakka respectfully requests that the Court rejects Netflix's proposed construction of "modified transport request," "data," and "fingerprint," find

[39] ECF 14-1, Ex. B at 14:8-10.

’102 claim 10 not require a particular step order, and find ’102 claims 10 and 11 not indefinite.

Dated: October 14, 2022

Respectfully submitted,

MAHAMEDI IP LAW LLP

/s/ Susan S.Q. Kalra
Susan S.Q. Kalra, CA SBN 167940
303 Twin Dolphin Drive, Suite 600
Redwood City, CA 94065
Telephone: (408) 236-6640
Fax: (408) 236-6641
Email: susan@m-iplaw.com

RAMEY LLP

/s/ William P. Ramey, III
William P. Ramey, III (*pro hac vice*)
5020 Montrose Blvd., Suite 800
Houston, TX 77006
Telephone: (713) 426-3923
Fax: (832) 689-9175
Email: wramey@rameyfirm.com

*Attorneys for Plaintiff*
LAURI VALJAKKA

# CERTIFICATE OF SERVICE

Case Name: Lauri Valjakka v. Netflix, Inc.

Case Number: 4:22-cv-01490-JST

I, the undersigned, certify and declare that I am over the age of 18 years, am employed by the firm of Ramey LLP in the Houston (Harris County), Texas, and not a party to the above-entitled cause. On October 14, 2022, I caused to be served a true copy of the following document(s):

1. **PLAINTIFF VALJAKKA'S OPENING CLAIM CONSTRUCTION BRIEF**

to the person (s) indicated below in the manner as provided in Fed. R. Civ. P. 5(b)(2)(E):

☒ By Electronic Mail – serving the enclosed via e-mail transmission to counsel of record for each of the parties listed on the official service list for the above-indicated case.

☐ By U.S. Mail – by placing it for collection and mailing, in the course of ordinary business practice, with other correspondence of Ramey LLP, enclosed in a sealed envelope, with postage fully prepaid, addressed to all parties of record on the official service list for the above-indicated case, and who do not have an email address.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on October 14, 2022.

By: /s/ Tina Hueske
Litigation Paralegal
RAMEY LLP

*Attorneys for Plaintiff*
LAURI VALJAKKA