Susan S.Q. Kalra, CA SBN167940
Email: susan@m-iplaw.com
MAHAMEDI IP LAW LLP
303 Twin Dolphin Drive, Suite 600
Redwood City, CA 94065
Telephone: (408) 236-6640
Fax: (408) 236-6641

William P. Ramey, III (*pro hac vice*)
Email: wramey@rameyfirm.com
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, TX 77006
Telephone: (713) 426-3923
Fax: (832) 689-9175

*Attorneys for Plaintiff*
LAURI VALJAKKA

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| LAURI VALJAKKA,<br><br>              Plaintiff,<br>v.<br><br>NETFLIX, INC.,<br><br>              Defendant. | Case No.: 4:22-cv-01490-JST<br><br>**PLAINTIFF VALJAKKA'S REPLY TO NETFLIX'S RESPONSIVE CONSTRUCTION BRIEF** |

i

# TABLE OF CONTENTS

I.   PLAINTIFF'S REPLY TO DEFENDANT'S ARGUMENT ........................... 1

   A. "modified transport request" ('167 patent 1, 3-6, 8, 9, 11-17, 19, 20) ............... 1

   B. "data" ('167 patent 1, 3-6, 8, 9, 11-17, 19, 20) .................................................. 2

   C. "obtaining is based at least in part on the first digital rights management key" ('102 Patent 10, 11) ........................................................................................ 4

   D. "the digital rights management header" ('102 Patent 10, 11) ............................. 5

   E. Method claim 10 requires a particular step order ('102 Patent 10, 11) ............... 6

   F. "fingerprint" ('102 Patent 10, 11) ......................................................................... 7

II.  CONCLUSION .................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*Customer, Inc. v. LivePerson, Inc.*, 235 F. Supp. 3d 1102 (N.D. Cal. 2016) .......... 5

I. PLAINTIFF'S REPLY TO DEFENDANT'S ARGUMENT

A. "modified transport request" ('167 patent 1, 3-6, 8, 9, 11-17, 19, 20)

| Valjakka's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | "message that is modified by a relay server to add target terminal addresses" |

Plaintiff objects to defendant's improper limitation of the claim term "modified transport request" to require a "message that is modified by a relay server to add target terminal addresses." Defendant argues that "the modified transport request must be *modified by a relay server*." Dkt. 63 at 14 (emphasis in original). Defendant cites to the claim 1 language copied below for this conclusory statement. However, the language is consistent throughout the claims, and one skilled in the art would understand that the "**terminals**," not a "relay server" are adapted to modify transport requests:

> wherein **terminals** adapted to act as relay servers **are adapted to modify transport requests** received from the main server or from other relay servers. . .
> '167 Patent at 8: 25-33 (emphasis added).

The Defendant's brief does cite to appropriate support in the specification that a terminal—not a "relay server"—sends a request:

> When one of the first **terminals** 14 has received a predetermined number of bytes of the file, that **terminal** 14 sends a modified version of the original transport request to its subset of the target terminals. *Id*. at 2:67-3:3 (emphasis added). Dkt. 63 at 14.

Furthermore, neither the claim language nor the specification limit a "modified transport request" to a "message that is modified . . . to add target terminal addresses," as the Defendant would have it.

Defendant's proposed construction of "modified transport request" from claims 1, 3-6, 8, 9, 11-17, 19, 20) should be rejected, and the plain and ordinary meaning (no construction necessary) of the phrase "modified transport request" should be held by the Court.

### B.   "data" ('167 patent 1, 3-6, 8, 9, 11-17, 19, 20)

| Valjakka's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | "content files or parts of content files that are stored by a terminal for subsequent use after retrieval, distinct from streaming content" |

Plaintiff objects to defendant's proposed construction, and the plain and ordinary meaning of the claim term "data" should be adopted by the court. The Defendant's brief cited to the same specification paragraphs for this term as did the Plaintiff in its brief, but defendant left out an important part of the specification in the middle of the citation. The comparison table below demonstrates this:

| '167 Patent Specification | Defendant Quoting the Specification (Dkt. 63 at 16) |
|---|---|
| For convenience, data that is to be distributed from the media storage system 18 will be referred to herein as "content," | For convenience, data that is to be distributed from the media storage system 18 will be referred to herein as "content," |
| which will be understood to include **any type of data of interest to end users**, including **but not limited to** text, graphics, video, audio, executable code etc. Content will generally comprise a data file of some type. | [Missing this language] |
| For the purposes of the present invention, "content" means files or parts of files or equivalents thereof that are stored on a server, downloaded from the server by a client and stored by the client for subsequent use. . . '167 Patent, 1:58-63 (emphasis added). | For the purposes of the present invention, "content" means files or parts of files or equivalents thereof that are stored on a server, downloaded from the server by a client and stored by the client for subsequent use. . . '167 Patent, 1:58-63. |

2

PLAINTIFF'S REPLY CLAIM CONSTRUCTION BRIEF – CASE NO. 4:22-CV-01490-JST

Thus, even the specification states that "data" is not limited to the types of content listed as text, graphics, video, audio, code, etc., which the Defendant conveniently leaves out of its argument.

Defendant's proposed construction uses the phrases "content files" and "parts of content files." These phrases are not found in the claims or specification and should not be part of the claim construction.

Defendant also included in its proposed construction that the specification disclaimed "streaming content" and therefore streaming content should be excluded from the claim scope. The phrase "streaming content" is not found in the specification nor the claims and should not be part of the claim construction. This appears to be part of Netflix's non-infringement argument. Netflix quoted the continuation of the specification cited above, that "content" is "distinct from digital broadcast media in which a data stream is transmitted by a broadcast server and is temporarily buffered by clients and in some cases, by intervening relay units." '167 Patent, 1:63-2:3. Netflix makes the leap that the patentee disclaimed "streaming content" by stating his data was distinct from digital broadcast media. Plaintiff has carefully searched the Defendant's brief but has found no extrinsic or intrinsic evidence to support this position, although Netflix had ample opportunity to do so.

The patentee did not define what "digital broadcast media" was, since it is a type of media known in the art. However, the patentee did include a prior art patent in his submission of his application to the USPTO: Patent 6,249,810 (the "'810 patent") for Method and system for implementing an internet radio device for receiving and/or transmitting media information. *See* **Exhibit A**. The USPTO classification of this patent was for "Arrangements for relaying broadcast information among terminal devices." The '810 patent "relates to the field of

computer implemented digital broadcast communication of information over the Internet" ('810 patent at 1:18-21) and claims a system for "Internet radio broadcasters." '810 patent at 18:61-63. Thus, "digital broadcast media" is for live on-air performances, such as radio, as one skilled in the art would know. The Plaintiff described this digital broadcast media "in which a data stream is transmitted by a broadcast server and is temporarily buffered by clients and, in some cases, by intervening relay units. '167 Patent, 2:1-3.

The patentee in this case differentiated data from live Internet broadcast media such as Internet radio, and most certainly did not disclaim "streaming content" as alleged by Netflix.

The Court should reject Netflix's proposed construction and adopt a plain and ordinary meaning for the claim term "data."

### C. "obtaining is based at least in part on the first digital rights management key" ('102 Patent 10, 11)

| Valjakka's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite |

Here, the claimed method step has an antecedent basis of "obtaining an access restricted content from at least one of a content database and a content providing server. . . ." '102 patent at 14: 2-3. It is perfectly acceptable claims drafting procedure to use a "wherein" clause to refer back to prior steps or elements in a previous step or element that is not the immediately preceding step or element. This is demonstrated by the final "wherein" step in claim 10: "wherein the content is usable without being in an unprotected state." '102 patent at 14: 27-28. The term "content" is used in all steps of claim 10, which demonstrates this principle of claims drafting, namely, that a "wherein" clause may modify and limit more than just its immediately preceding step or element. '102 patent at 14:2-20.

One skilled in the art, familiar with the rules for claims drafting, would understand that the "wherein" clause is proper and not indefinite. Defendant's proposed construction should be rejected, and the plain and ordinary meaning should be adopted.

### D. "the digital rights management header" ('102 Patent 10, 11)

| Valjakka's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite |

Defendant asserts that the phrase "the digital rights management header" is indefinite because the skilled artisan would not know which header the claim is referring to: a user identifier or a content identifier. Dkt. 63 at 22. Defendant's position is not valid since it is based on only a partial reading of the step from claim 10. Additionally, claim 10 itself clarifies which header the claim is referring to: the "content" header. The **full** method step from claim 10 reads as follows:

> deriving, using the digital rights management header **of the access restricted content**, from the access restricted content a second and third digital rights management key. . . '102 patent at 14:17-20.

Thus, the claim phrase is reasonably ascertainable by those skilled in the art as a header for the content and not the user.

For its legal basis, Netflix cited to *24/7 Customer, Inc. v. LivePerson, Inc.*, 235 F. Supp. 3d 1102, 1108 (N.D. Cal. 2016) for the contention that finding the term "said interaction data" [was] invalid for indefiniteness due to lack of antecedent basis. However, *24/7 Customer* does not apply here since in that case "the claims provide no definition of the term "said interaction data" or context from which a definition can be derived." *Id*. Here, the claim does provide context to the "header," where as explained above a skilled artisan would understand the header is for the content and not the user.

The Defendant's "construction" of indefinite should be rejected, and the plain and ordinary meaning of "the digital rights management header" should be adopted by the Court.

### E. Method claim 10 requires a particular step order ('102 Patent 10, 11)

| Valjakka's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | The DRM keys must be obtained or derived before restricted content is obtained.<br><br>Further, the first DRM key must be obtained and the fingerprint validated before the second and third DRM keys are derived. |

Defendant's proposed construction should be rejected at least because it does not summarize the method steps of claim 10 properly. In its opening brief, plaintiff explained how the method claim 10 has no explicit ordering of steps that is imposed upon it and that the restricted content can be accessed after obtaining the first digital rights management key and the fingerprint is validated. Dkt. 62 at 15-16. Contrary to defendant's position, the remaining second and third DRM keys **do not** need to be obtained before accessing the restricted content. '102 Patent, 14:5-12.

To clarify plaintiff's position and why the defendant's construction should be rejected, the full claim sixth method step is copied and highlighted below, which explains how the second and third digital rights keys are derived:

> deriving, using the digital rights management header of the access restricted content, from the access restricted content a second and third digital rights management key,

It is clear from the language of claim 10 that the second and third DRM keys are obtained using the digital rights management header and are not dependent on accessing the

digital content after the first DRM key is obtained and the fingerprint validated.  Thus, defendant's arguments and proposed construction should be rejected, and the plain and ordinary meaning should be adopted.

### F.  "fingerprint" ('102 Patent 10, 11)

| **Valjakka's Proposed Construction** | **Defendant's Proposed Construction** |
|---|---|
| Plain and ordinary meaning | "a bit string, derived (or computed) directly from the content, that uniquely represents the content" |

Defendant's proposed construction for "fingerprint" should be rejected, and the plain and ordinary meaning of "fingerprint" should be adopted by the court. Defendant alleges that "fingerprint" is a "technical term" and the "jury will have no guidance" on its meaning "without some explanation." Dkt. 63 at 25.  For its proposed guidance, Netflix offers only attorney arguments for its own contrived meaning.  After reading defendant's brief carefully, plaintiff can find **no** intrinsic or extrinsic evidence offered by defendant for its proposed construction. Netflix then ends its argument with a non-infringement contention. Dkt. 63 at 26.  None of Netflix's argument is based on evidence and what one skilled in the art would understand. Therefore, Netflix's proposed construction should be disregarded by the court.

To determine meaning, one skilled in the art would draw on his or her knowledge of computer programming and the specification of the '102 Patent.  The term is first introduced in the specification as:

> The second determination may be based at least in part on a fingerprint of the access restricted content. The second determination may comprise a comparison between a first fingerprint received in the apparatus from the user to a second fingerprint received in the apparatus from a content database. '102 Patent at 9:24-29.

One skilled in the art would understand that a fingerprint is something less than access of the restricted content, and that a fingerprint in the user apparatus can be compared to a fingerprint received from a content database. In relation to Figure 4, the fingerprint is described as:

> Responsive to receipt of the first DRM key in phase **490,** the client may access the content using at least in part the first DRM key. This is illustrated as phase **4100.** The client may obtain, in phase **4120,** a fingerprint of the content wherein the obtaining may be based at least in part on the first DRM key. In phase **4130,** the client may transmit the fingerprint to the content server, optionally with the content identifier and in phase **4140,** the content server may query the content database for the content fingerprint. The query may comprise the content identifier. In phase **4150,** the content database may responsively provide the fingerprint to the content server. In phase **4160,** the server may compare the fingerprints received in phases **4150** and **4130.** In case of mismatch, the processing advances to phase **4170** and ends. In case the fingerprints match, processing advances to phase **4180** where the client is provided with a positive validation result.

'102 Patent at 10:30-47 (emphasis added).

The skilled artisan would understand from the specification that a fingerprint is a type of security in the process to allow a user to access the restricted content, where if a fingerprint of the content obtained by the user matches a fingerprint from the content database, the client is provided with a positive validation result.

Plaintiff's position is clear: the court should reject all of Netflix's proposed construction of "a bit string, derived (or computed) directly from the content, that uniquely represents the content." This language is not taken from intrinsic or extrinsic evidence and represents only attorney argument. The Court should rely on the plain and ordinary meaning of "fingerprint" for claim 10.

## II. CONCLUSION

For the reasons set forth above, Valjakka respectfully requests that the Court rejects Netflix's proposed constructions of "modified transport request," "data," and "fingerprint," find the '102 claim 10 does not require a particular step order, and find '102 claims 10 and 11 not indefinite.

Dated: November 4, 2022

RAMEY LLP

/s/ William P. Ramey, III
William P. Ramey, III (*pro hac vice*)
5020 Montrose Blvd., Suite 800
Houston, TX 77006
Telephone: (713) 426-3923
Fax: (832) 689-9175
Email: wramey@rameyfirm.com

MAHAMEDI IP LAW LLP

Susan S.Q. Kalra, CA SBN 167940
303 Twin Dolphin Drive, Suite 600
Redwood City, CA 94065
Telephone: (408) 236-6640
Fax: (408) 236-6641
Email: susan@m-iplaw.com

*Attorneys for Plaintiff*
LAURI VALJAKKA

# CERTIFICATE OF SERVICE

Case Name: <u>Lauri Valjakka v. Netflix, Inc</u>.

Case Number: <u>4:22-cv-01490-JST</u>

I, the undersigned, certify and declare that I am over the age of 18 years, am employed by the firm of Ramey LLP in the Houston (Harris County), Texas, and not a party to the above-entitled cause. On November 4, 2022 document(s):

1. **PLAINTIFF VALJAKKA'S REPLY CLAIM CONSTRUCTION BRIEF**

to the person (s) indicated below in the manner as provided in Fed. R. Civ. P. 5(b)(2)(E):

☒ <u>By Electronic Mail</u> – serving the enclosed via e-mail transmission to counsel of record for each of the parties listed on the official service list for the above-indicated case.

☐ <u>By U.S. Mail</u> – by placing it for collection and mailing, in the course of ordinary business practice, with other correspondence of Ramey LLP, enclosed in a sealed envelope, with postage fully prepaid, addressed to all parties of record on the official service list for the above-indicated case, and who do not have an email address.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on November 4, 2022.

                                          By: <u>/s/ Tina Hueske</u>
                                          Litigation Paralegal
                                          RAMEY LLP

                                          *Attorneys for Plaintiff*
                                          LAURI VALJAKKA