Sarah E. Piepmeier, Bar No. 227094
SPiepmeier@perkinscoie.com
Elise S. Edlin, Bar No. 293756
EEdlin@perkinscoie.com
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, California 94105
Telephone: +1.415.344.7000
Facsimile: +1.415.344.7050

Janice L. Ta (admitted *pro hac vice*)
JTa@perkinscoie.com
PERKINS COIE LLP
405 Colorado Street, Suite 1700
Austin, Texas 78701
Telephone: +1.737.256.6100
Facsimile:  +1.737.256.6300

Jassiem N. Moore (admitted *pro hac vice*)
JassiemMoore@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: +1.206.359.8000
Facsimile:  +1.206.359.9000

*Attorneys for Defendant*
NETFLIX, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| LAURI VALJAKKA, | Case No. 4:22-cv-01490-JST |
| Plaintiff, | **DEFENDANT NETFLIX, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS** |
| v. | |
| NETFLIX, INC., | Date:   March 9, 2022<br>Time:   2:00 p.m.<br>Ctrm:   6, 9th Floor<br>Judge:  Honorable Jon S. Tigar |
| Defendant. | |

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................. 1

II.  ARGUMENT ....................................................................................................................... 2

    A.   The '102 Patent Is Ineligible Under Section 101 ................................................... 2

        1.   Claim 10 of the '102 Patent Claims the Abstract Idea of Providing Restricted Access to Content by Applying Multiple Validation Rules ........................................................................................................ 2

            a.   The '102 patent does not improve computer functionality ........... 3

            b.   None of Valjakka's cited support is relevant here ........................ 4

            c.   Analogous cases find similar claims abstract .............................. 6

        2.   Claim 10 of the '102 Patent Contains No Inventive Concept ................... 7

    B.   The '167 Patent Is Ineligible Under Section 101 ................................................... 8

        1.   Claim 1 of the '167 Patent Claims the Abstract Idea of Distributing Delivery of Content by Dividing and Conquering ................................. 8

        2.   Claim 1 of the '167 Patent Contains No Inventive Step ........................ 11

        3.   Dependent Claims 3-6 and 11-14 Are Also Patent-Ineligible ................ 12

    C.   Valjakka Does Not Dispute that Leave to Amend Would Be Futile .................. 12

III. CONCLUSION .................................................................................................................. 12

# TABLE OF AUTHORITIES

**CASES**

*Aftechmobile Inc. v. Salesforce.com, Inc.*,
    No. 19-CV-05903-JST, 2020 WL 6129139 (N.D. Cal. Sept. 2, 2020) ...................................... 8

*Alice Corp. Pty. v. CLS Bank Int'l*,
    573 U.S. 208 (2014) ..................................................................................................... 1, 8, 12

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
    841 F.3d 1288 (Fed. Cir. 2016) ............................................................................................ 10

*Ancora Techs., Inc. v. HTC Am., Inc.*,
    908 F.3d 1343 (Fed. Cir. 2018) .................................................................................. 1, 4, 5, 10

*Appistry, Inc. v. Amazon.com, Inc.*,
    No. C15-311 MJP, 2015 WL 4210890 (W.D. Wash. July 9, 2015) .................................. 9, 11

*Broadcom Corp. v. Netflix Inc.*,
    598 F. Supp. 3d 800 (N.D. Cal. 2022) .................................................................................. 10

*BSG Tech LLC v. Buyseasons, Inc.*,
    899 F.3d 1281 (Fed. Cir. 2018) ..................................................................................... 2, 4, 7, 9

*buySAFE, Inc. v. Google, Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014) ............................................................................................. 11

*CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*,
    15 F.4th 1091 (Fed. Cir. 2021) ........................................................................................ passim

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) ....................................................................................... 10, 11

*Diamond v. Diehr*,
    450 U.S. 175 (1981) ................................................................................................................ 1

*Digital Media Techs., Inc. v. Amazon.com, Inc.*,
    No. 4:16CV244-MW/CAS, 2017 WL 11700001 (N.D. Fla. July 3, 2017) ........................ 3, 8

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
    879 F.3d 1299 (Fed. Cir. 2018) ................................................................................... 1, 4, 5, 6

*Genetic Techs. Ltd. v. Agilent Techs., Inc.*,
    24 F. Supp. 3d 922 (N.D. Cal. 2014) ...................................................................................... 1

*HTC Corp. v. Ancora Techs. Inc.*,
    No. CBM2017-00054, 2017 WL 6032605 (P.T.A.B. Dec. 1, 2017) ...................................... 5

*In re Bilski*,
    545 F.3d 943 (Fed. Cir. 2008) ................................................................................................ 8

*In re Killian*,
   45 F.4th 1373 (Fed. Cir. 2022) ........................................................................................... 1

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*,
   50 F.4th 1371 (Fed. Cir. 2022) ........................................................................................... 9

*Intell. Ventures I LLC v. Erie Indem. Co.*,
   850 F.3d 1315 (Fed. Cir. 2017) ........................................................................................... 8

*Packet Intel. LLC v. NetScout Sys., Inc.*,
   965 F.3d 1299 (Fed. Cir. 2020) ......................................................................................... 10

*PersonalWeb Techs. LLC v. Google LLC*,
   8 F.4th 1310 (Fed. Cir. 2021) ........................................................................................... 12

*Prism Techs. LLC v. T-Mobile USA, Inc.*,
   696 F. App'x 1014 (Fed. Cir. 2017) ................................................................................ 6, 7

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
   930 F.3d 1295 (Fed. Cir. 2019) ......................................................................................... 10

*Synopsys, Inc. v. Mentor Graphics Corp.*,
   839 F.3d 1138 (Fed. Cir. 2016) .............................................................................. 3, 10, 11

*Universal Secure Registry LLC v. Apple Inc.*,
   10 F.4th 1342 (Fed. Cir. 2021), *cert. denied,* 212 L. Ed. 2d 778 (May 16, 2022) ............ 3, 4, 6

*Yu v. Apple Inc.*,
   No. 3:18-CV-06181-JD, 2020 WL 1429773 (N.D. Cal. Mar. 24, 2020) ............................. 2

**STATUTES**

35 U.S.C. § 102 ........................................................................................................................ 10

35 U.S.C. § 103 ........................................................................................................................ 10

## I. INTRODUCTION

Three core defects define Valjakka's Opposition to Netflix's Motion for Judgment on the Pleadings.

*First*, Valjakka repeatedly conflates novelty under Sections 102/103 with patent eligibility under Section 101. But an invention may be "patentably distinct from the prior art" and still be directed to an abstract idea that lacks an inventive concept. By relying on the concept of novelty without ever explaining why the asserted patents are non-abstract or inventive, Valjakka never engages with the analysis required by Section 101. As such, Valjakka fails to show that the asserted patents are patent-eligible. *Genetic Techs. Ltd. v. Agilent Techs., Inc.*, 24 F. Supp. 3d 922, 929 (N.D. Cal. 2014) (analysis of whether patent's steps are novel "conflate[s] the analysis of patent eligible subject matter under § 101 with analysis of novelty and non-obviousness under §§ 102 and 103"); *see also Diamond v. Diehr*, 450 U.S. 175, 188-89 (1981) ("The 'novelty' of any element or steps in a process, or even the process itself, is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter.").

*Second*, Valjakka fails to distinguish the relevant caselaw identified by Netflix. Cautioning the reader "not to rely too much on [] precedent when performing an *Alice* analysis, since each patent is unique and must be decided on a case-by-case basis," Valjakka improperly ignores the several analogous patents that courts have invalidated under Section 101. *See In re Killian*, 45 F.4th 1373, 1383 (Fed. Cir. 2022) ("Examination of earlier cases is the classic common law methodology for creating law when a single governing definitional context is not available. Indeed, the Supreme Court has decided cases arising under § 101 through comparison to its prior opinions.") (cleaned up). The clear guidance provided by the Federal Circuit demonstrates that patents directed to the abstract idea of providing restricted access to content using multiple validation rules (as in the '102 patent), or to the abstract idea of distributing the delivery of content among multiple actors (as in the '167 patent), are patent ineligible.

*Third*, Valjakka argues that the asserted patents are patent eligible by seeking the shelter of case law that finds eligibility in specific improvements to computer functionality such as *Ancora*, *Finjan*, and *CosmoKey* (Dkt. 83 at 13-14). But Valjakka fails to explain how the asserted patents

are anything like those at issue in the cases he cites, instead resorting to verbatim recitations of claim language and conclusory assertions that the claims improve computer functionality. Valjakka fails to identify a single improvement to computer functionality claimed by either the '167 or '102 patent—much less a specific one. At most Valjakka touts benefits to a user that derive from implementing each patent's abstract idea using purely conventional hardware—but these are not advancements to computer functionality. A "claim's focus must be something other than the abstract idea itself" to satisfy Section 101. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1287 (Fed. Cir. 2018). Further, conclusory statements that the asserted patents improve computer functionality cannot confer eligibility. *Yu v. Apple Inc.*, No. 3:18-CV-06181-JD, 2020 WL 1429773, at *3 (N.D. Cal. Mar. 24, 2020), *aff'd*, 1 F.4th 1040 (Fed. Cir. 2021). And Valjakka does not cite a single factual allegation from the Complaint supporting any alleged inventiveness—beyond generic and conventional computer functionality—in support of patentability.

Accordingly, the Court should grant Netflix's Rule 12(c) motion for judgment on the pleadings that the claimed inventions in the '102 and '167 patents are patent ineligible with prejudice.

## II.    ARGUMENT

### A.    The '102 Patent Is Ineligible Under Section 101

#### 1.    Claim 10 of the '102 Patent Claims the Abstract Idea of Providing Restricted Access to Content by Applying Multiple Validation Rules

The sole asserted claim of the '102 patent is directed to the abstract idea of providing restricted access to content by applying multiple validation rules. Valjakka does not meaningfully distinguish the cases in which this Court and the Federal Circuit have repeatedly found claims directed to similar technology to be ineligible under Section 101. Valjakka also does not dispute that the claim recites the performance of this abstract idea on generic computer components. Instead, Valjakka broadly asserts that the alleged invention improves content security or computer functionality, without providing any concrete explanation for how it does so. Indeed, when describing how the '102 patent purportedly improves functionality, Valjakka merely quotes the claim language verbatim without spelling out why claim 10 is anything more than the abstract idea

of providing restricted access to content using multiple validation rules. Dkt. 83 at 13. Valjakka even admits that claim 10 "relies upon certain aspects of the intentions *of any DRM method*"—confirming the generic nature of the invention. *Id.* at 14 (emphasis added). Valjakka then illogically claims that the aspects present in "any DRM method" are somehow "missing in prior method and systems." *Id.*

### a.  The '102 patent does not improve computer functionality

Neither Valjakka's pleadings nor its response brief show that claim 10 of the '102 patent recites any patent-eligible improvement in technology. According to Valjakka, the aspect of claim 10 allegedly missing from prior art systems is "allow[ing] a user to view or listen to the content file without the content file being in an unprotected state . . . with these type of DRM keys," which results in the "beneficial reduction of theft of digital media files." *See id.* Whether that limitation was found in the prior art, however, is not the salient question for Section 101—"a new abstract idea is still an abstract idea." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016).

In any event, this single limitation of claim 10 does not transform the abstract nature of the claim. The analogy from Netflix's opening brief is illustrative. Dkt. 79 at 6-7. When the owner of a safety deposit box accesses its contents, those contents are still in a protected state. They remain in the bank vault, and only the owner can view them in a secured environment that is protected from other interlopers. Courts have found claim language analogous to this limitation to be directed to an abstract idea. *See Digital Media Techs., Inc. v. Amazon.com, Inc.*, No. 4:16CV244-MW/CAS, 2017 WL 11700001, at *7 (N.D. Fla. July 3, 2017), *aff'd sub nom. Digital Media Techs., Inc. v. Netflix, Inc.*, 742 F. App'x 510 (Fed. Cir. 2018) (finding abstract claims directed to a multimedia system that "send[s] the protected content to the client device"—i.e., content not in an unprotected state—after applying validation and authentication rules). Moreover, Valjakka says nothing about how this language represents a specific improvement over conventional methods or how it "departs from earlier approaches." *See Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1349 (Fed. Cir. 2021), *cert. denied,* 212 L. Ed. 2d 778 (May 16, 2022) (finding claims directed to the abstract idea of combining multiple conventional authentication techniques to verify a user and

facilitate a transaction).

Notably, the '102 patent's specification is silent as to any improvements to computer functionality associated with the claim language that Valjakka identifies. *See* '102 patent at 12:1-6. The specification only mentions "us[ing] the content without leaving it in an unprotected state" in passing, merely summarizing the claim language rather than discussing how the claims improve upon conventional DRM methods. *See id.* ("When the third method is used, at least one of the following may apply: . . . the client is able to use content without leaving it in an unprotected state."). Valjakka argues that the '102 patent "yields a tangible technological benefit in making a content network less susceptible to content media theft by altering how the verification is performed" (Dkt. 83 at 14), but this just restates the abstract idea to which the patent is directed. *See BSG*, 899 F.3d at 1291 ("Here, the only alleged unconventional feature . . . simply restates what we have already determined is an abstract idea . . . [N]arrowing or reformulating an abstract idea does not add significantly more to it.") (cleaned up). Valjakka does not articulate what the specific alteration to verification is, explain how it improves computer security, or cite any support for this contention. *See* Dkt. 83 at 14. Any content provider that uses generic computing hardware to implement the abstract idea of restricting access to content using multiple validation rules would also benefit from less "content media theft."

### b. None of Valjakka's cited support is relevant here

Valjakka's reliance on *Ancora Technologies*, *CosmoKey*, and *Finjan* (Dkt. 83 at 13-14) fails because each case involves patents that claim specific improvements to computer technology that are supported by the specifications in those patents. *Id.* at 13. In contrast, the '102 patent specification does not identify any improvement to computer technology and describes only generic computer technology in generic ways.

In *Ancora*, the Federal Circuit held that claims in the '941 patent directed to reducing the risk of hacking by "relying on specific and unique characteristics of certain aspects of [computer] BIOS" were not abstract and claimed a specific functionality improvement. *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1348-49 (Fed. Cir. 2018) (citing *HTC Corp. v. Ancora Techs. Inc.*, No. CBM2017-00054, 2017 WL 6032605, at *3-5 (P.T.A.B. Dec. 1, 2017)). The claimed solution

involved "setting up a verification structure in nonvolatile memory of the BIOS *not ordinarily considered to be a storage medium*." *HTC Corp.*, 2017 WL 6032605, at *4 (emphasis added). The specification and prosecution history for the '941 patent discuss the "important advantage in utilizing non-volatile memory . . . in the BIOS." *Id*. The Federal Circuit noted that "[t]he prosecution history reinforces what the patent itself indicates about the change in previous verification techniques for computer security." *Ancora*, 908 F.3d at 1349 (relying on applicant's arguments to the examiner explaining the claimed invention's improvements over the prior art). The inventive idea of using a modifiable part of the BIOS memory in *Ancora* is notably different than Valjakka's use of generic computer methods (e.g., generic DRM methods) in generic ways (e.g., to restrict content) to get generic results (e.g., reducing theft).

Likewise, in *CosmoKey*, the claims at issue focused on using a timed authentication function on a mobile device to log onto a computer, reciting the "activation of the authentication function, communication of the activation within a predetermined time, and automatic deactivation of the authentication function . . . ." *CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*, 15 F.4th 1091 at 1097 (Fed. Cir. 2021). The Federal Circuit found that the use of an authentication function from an entirely different mobile device to authenticate log-in at a computer "recite[d] a specific improvement to authentication that increases security . . . ." *Id*. at 1098, 1099 (crediting the specification's description of "how the particular arrangement of steps . . . provides a technical improvement . . . [and] emphasizes the inventive nature of these steps").

Finally, in *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299 (Fed. Cir. 2018), the Federal Circuit found that the patent-at-issue was non-abstract and constituted an improvement in computer functionality because it disclosed a behavior-based virus scan, which scanned for suspicious operations, and distinguished itself from "traditional, 'code-matching' virus scans that are limited to recognizing the presence of previously-identified viruses." *Id*. at 1304 (relying on "disclos[ures] in the [asserted] patent's specification").

In contrast to each of these cases, the '102 patent's specification and prosecution history do not disclose a specific improvement to technology, and Valjakka does not identify one in his Complaint; rather, the specification discloses that the '102 patent relies solely on conventional

DRM methods and components. *See, e.g.*, '102 patent at 5:64-6:10 (describing a "content access authorization system" that comprises a processor and generic DRM modules such as "an interrogation module, a validation module, a calculation module, and a decryption module," which all "comprise[] software modules configured to cause [the] processor to perform corresponding functions"); *see also Universal Secure Registry,* 10 F.4th at 1352 ("Unlike in *Finjan*, the claimed 'encrypted authentication data' here is merely a collection of conventional data combined in a conventional way that achieves only expected results."); Dkt. 79 at 8-9. And unlike the patent-at-issue in *Cosmokey*, which featured a unique and specific method to authenticate a computer by using a "predetermined time relation" between two different devices, the '102 patent merely uses generic and conventional authentication processes—queries and fingerprints—that were already well-known and well-understood. 15 F.4th at 1097; Dkt. 79 at 10-11 (discussing conventional nature of fingerprints, server queries, and other common cryptographic tools).

Unable to point to any actual advancement in computer capabilities, Valjakka relies solely on conclusory statements and citations to dissimilar cases. *See, e.g.*, Dkt. 83 at 14 (claiming that the '102 patent "yields a tangible technological benefit in making a content network less susceptible to content media theft by altering how the verification is performed" and failing to describe what the "alteration" is or how it differs from earlier approaches). Because the '102 patent's specification identifies no specific improvements to DRM technology or any innovation directed at the computer itself (as opposed to an alleged innovation using a computer), Valjakka's legal citations provide no support for eligibility of the '102 patent.

### c.     Analogous cases find similar claims abstract

Notably, *CosmoKey* confirms the ruling in *Prism*, which invalidates claims that actually are analogous to the '102 patent—as Netflix discussed in its opening brief. *Id.* at 1096 ("[T]his court has previously considered the eligibility of various claims generally directed to authentication and verification under § 101 and found those claims abstract.") (citing *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1016-17 (Fed. Cir. 2017)); Dkt. 79 at 7. Rather than materially engage with *Prism*, or the other cases on which Netflix relies, Valjakka hangs its hat on *Prism*'s use of identity data rather than user data. *See* Dkt. 83 at 15-16, n. 12. Specifically, Valjakka alleges

that *Prism* discusses identity data related to computer components while the '102 patent discusses identity data related to a user. *Id.* at 15. But identity data tied to a user is no less generic than identity data tied to a computer. And the '102 patent, like the claims in *Prism*, "recite[s] generic steps typical of any conventional process for restricting access, including such processes that predate[] computers." *CosmoKey,* 15 F.4th at 1096 (discussing *Prism*). Further, the '102 patent explicitly considers embodiments where "the user identifier is an identifier associated with a communication device"—revealing that there is in fact no distinction at all between the '102 patent and the claim in *Prism* for the purposes of Section 101. '102 patent at 3:59-62.

### 2. Claim 10 of the '102 Patent Contains No Inventive Concept

Valjakka argues that the claims and specification of the '102 patent recite "a specific improvement to authentication that increases content management security," but provides little support for this claim. Dkt. 83 at 17. The two citations to the specification on which Valjakka relies confirm the '102 patent's implementation of an abstract idea on generic devices such as tablets, smartphones, and PDAs. *Id.* at n.16; '102 patent at 5:21-25 ("It will be appreciated that the communication device . . . may comprise a personal computer . . ., a smart phone or a Personal Digital Assistant (PDA) for example."), 12:35-36 ("[T]he client device is a tablet or smartphone device, the server may also be a tablet or smartphone device."). In addition, Valjakka repeatedly insists that the '102 patent discloses a "novel technical solution" without offering any insight on what makes the solution inventive, what the specific improvement is, and how it is advantageous over prior solutions. *See CosmoKey*, 15 F.4th at 1098. Instead, Valjakka largely relies on regurgitating the claim language. *See* Dkt. 83 at 17-18 ("To solve this problem, the claimed method is directed to securing a first, second, and third digital rights keys [sic] to provide the novel method of allowing a user to use the content without . . . leaving the content in an unprotected state."). *See BSG*, 899 F.3d at 1290 ("[A] claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that render the invention 'significantly more' than that ineligible concept.").

At most, Valjakka appears to argue that prior systems did not allow content networks or providers to "maintain[] control of the secure media files after the access [was] granted." Dkt. 83

at 17. But, as discussed above, courts have found that such claimed systems lack an inventive concept. *Supra*, Section II.A.1.a; *see also* Dkt. 79 at 7-8 (analogizing *Digital Media* to the '102 patent). Further, the identification of the purported inventive feature alone, "[w]ithout an explanation of the mechanism for how the result is accomplished, . . . cannot supply an inventive concept." *See Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1331-32 (Fed. Cir. 2017) (rejecting plaintiff's argument that the claimed invention solves compatibility issues in mobile devices where "neither the specification nor the claims cabin the invention specifically in terms of solving these compatibility issues") (cleaned up).

Finally, Valjakka improperly conflates Section 101 with anticipation or obviousness. Dkt. 83 at 18 ("This limitation was developed by the inventor of the '102 Patent, not the prior art. In the '102 Patent's file history, the USPTO agreed that this aspect had advantages over the prior art, was not found in the prior art, and is patentably distinct from the prior art."). But "it is irrelevant to the § 101 analysis whether [the] claimed process is novel or non-obvious." *In re Bilski*, 545 F.3d 943, 958 (Fed. Cir. 2008), *aff'd but criticized sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010); *see also Aftechmobile Inc. v. Salesforce.com, Inc.*, No. 19-CV-05903-JST, 2020 WL 6129139, at *9 (N.D. Cal. Sept. 2, 2020), *aff'd*, 853 F. App'x 669 (Fed. Cir. 2021) ("[P]rior determinations by the USPTO regarding novelty have no bearing on whether the asserted claims are patent-eligible under § 101."). Valjakka must show an inventive concept sufficient to "transform the nature of the claim into a patent-eligible application," rather than show that it is distinct from prior art. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014) (cleaned up). Without evidence or explanation, Valjakka's conclusory assertions that "the claim recites an inventive concept . . . [,] go[es] beyond the abstract idea identified by [Netflix,] and improves upon the prior art" fail to save his claims. *See* Dkt. 83 at 18.

    **B.**    **The '167 Patent Is Ineligible Under Section 101**

        **1.**    **Claim 1 of the '167 Patent Claims the Abstract Idea of Distributing Delivery of Content by Dividing and Conquering**

As with the '102 patent, Valjakka's assertion that the '167 patent is non-abstract relies primarily on verbatim recitations of claim language and conclusory statements. Valjakka does not

meaningfully distinguish cases finding claims analogous to the '167 patent to be abstract or dispute Netflix's classroom analogy illustrating the abstract nature of the '167 patent. As discussed below, Valjakka's assertion that the "claimed features are a technical improvement over the prior art because these features allow for the beneficial reduction in extreme spikes in network loads . . . providing the end user . . . a better experience without network delay and reduc[ing] congestion and bandwidth needs on the network . . ." (Dkt. 83 at 21) fails for five key reasons.

*First*, the claimed features do not afford a specific improvement to computer functionality. Indeed, the only purported benefit that Valjakka identifies—"reducing congestion and bandwidth needs on the network, saving costs"—is a generic improvement that does not improve the computer itself. Valjakka's admission that the benefit lies in "providing the end user . . . a better experience" (*Id.* at 10) confirms that the benefit is not an improvement to computer technology—it uses a generic computer network to provide a *user* a better experience. But improving the user experience using a computer is not enough to confer patent eligibility. *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1377 (Fed. Cir. 2022) ("[I]mproving a user's experience while using a computer application is not, without more, sufficient to render the claims patent-eligible at step one") (internal quotations omitted).

*Second*, the alleged improvement is itself abstract: it simply results from splitting conventional methods across multiple generic computer terminals. *See BSG*, 899 F.3d at 1287 ("For an application of an abstract idea to satisfy step one, the claim's focus must be something other the abstract idea itself."). The purported innovation replaces a network of people with a network of computers and is a familiar method of splitting up a task that courts have previously found to be abstract. *See* Dkt. 79 at 14 (collecting cases). The benefit derives solely from "implement[ing] the abstract idea of distributed processing akin to command and control on generic computers, connected through generic networks" rather than a specific improvement in computer functionality. *Appistry, Inc. v. Amazon.com, Inc.*, No. C15-311 MJP, 2015 WL 4210890, at *4 (W.D. Wash. July 9, 2015), *aff'd sub nom. Appistry, LLC v. Amazon.com, Inc.*, 676 F. App'x 1007 (Fed. Cir. 2017).

*Third*, Valjakka alleges that the claim limitations are missing from prior network systems. Dkt. 83 at 20-21 (the claimed method was "not previously done by prior network systems" and

1  "claimed features are a technical improvement over the prior art"). But once again, Valjakka
2  conflates Sections 102 and 103 with Section 101. *See Synopsys*, 839 F.3d at 1151 ("[Plaintiff]
3  equates the inventive concept inquiry with novelty and contends that the Asserted Claims contain
4  an inventive concept because they were not shown to have been anticipated by (35 U.S.C. § 102)
5  or obvious over (35 U.S.C. § 103) the prior art . . . That position misstates the law . . . The search
6  for a § 101 inventive concept is [] distinct from demonstrating § 102 novelty"). And Valjakka fails
7  to take the second, necessary, step of "specifically identif[ying] how [any] functionality
8  improvement is effectuated." *Ancora,* 908 F.3d at 1348.

9    *Fourth*, Valjakka fails to address most of the cases Netflix examined in its opening brief,
10 which found that claims analogous to the '167 patent were directed to an abstract idea. Dkt. 83 at
11 20-21; Dkt. 79 at 14. Valjakka does mention *Broadcom Corp. v. Netflix Inc.*, 598 F. Supp. 3d 800
12 (N.D. Cal. 2022), but that discussion fails to draw an actual distinction between the claims at issue
13 in *Broadcom* and those at issue here. While it is true that the '167 patent does not claim a "central
14 processor that distributes executable functions," it does use a "main server" to similarly allocate
15 tasks across a system of network terminals like the claims in *Broadcom*. Thus, both here and in
16 *Broadcom*, the claims at issue use a divide-and-conquer approach that is directed to an abstract
17 idea. 598 F. Supp. 3d at 806-07. The use of this well-known technique by a central processor versus
18 a main server is a distinction without a difference.

19   *Fifth*, the string of cases that Valjakka relegates to a footnote are inapplicable because none
20 concerns claims unrelated to dividing tasks among a network of actors. Dkt. 83 at n. 19; *See DDR*
21 *Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257-58 (Fed. Cir. 2014) (retaining website
22 visitors by changing "conventional functioning of Internet hyperlink protocol"); *Amdocs (Israel)*
23 *Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1304 (Fed. Cir. 2016) (collecting network usage
24 information from plurality of network devices); *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295,
25 1303 (Fed. Cir. 2019) ("detect[ing] suspicious network activity based on analysis of network traffic
26 data"); *Packet Intel. LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1309 (Fed. Cir. 2020) ("identifying
27 disjointed connections flows in a network environment" by extracting and analyzing packet
28 information). Further, rather than "overcom[ing] a problem specifically arising in the realm of

computer networks," as the patents did in the cases cited above, the '167 patent "merely recite[s] the performance of [a] practice known from the pre-Internet world along with the requirement to perform it on the Internet." *See DDR Holdings,* 773 F.3d at 1257.

### 2.   Claim 1 of the '167 Patent Contains No Inventive Step

Valjakka fails to show that the '167 patent claims anything more than a communication network comprising generic terminals and servers that send and receive messages, read information from a database, and transmit data. Instead Valjakka again declares, without explanation or support, that Netflix's "analysis and conclusions are wrong." Dkt. 83 at 22. Valjakka then purports to demonstrate the '167 patent's "novel technical solution" with yet another verbatim recitation of the claim language. *Id.* at 23. But neither the '167 patent's specification and prosecution history nor the Complaint identify any improvements in computer functionality. Indeed, in one instance, Valjakka cites the '167 patent's use of "conventional network infrastructure" as an advantage, but this only underscores the patent's reliance on generic computer hardware and conventional techniques. *Id.* at n. 26 (citing '167 patent at 3:42-44). "In effect, the patents' 'numerous limitations' function only to limit the abstract idea of distributed processing akin to command and control to a particular technological environment, namely, networked computers." *Appistry*, 2015 WL 4210890, at *5.

In addition, Valjakka again conflates patent eligibility with novelty when describing the alleged "technological advances" of the claimed "transport requests" and "modified transport requests." Dkt. 83 at 23 ("The Defendant simply argues that transport requests and modified transport requests are what 'one would expect in a message sent between networked computers.' The Defendant has produced no evidence that 'one' or even one skilled in the art would expect such technological advances . . . To the contrary, the USPTO found that these features were patentable and not found in the prior art."); *see also Synopsys*, 839 F.3d at 1151. Conflation aside, Valjakka does not explain how either the recited transport request or modified transport request is unconventional. Nor could he; these requests simply contain generic information such as server addresses, file types, and file sizes. '167 patent at 2:49-57, 8:16-24. Accordingly, they cannot supply an inventive concept. *See buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir.

2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."). As with the '102 patent, conclusory statements that "the claim recites an inventive concept . . . [,] go[es] beyond the abstract idea identified by [Netflix,] and improves upon the prior art," without evidence or explanation do not "transform the nature of the claim into a patent-eligible application." *Alice*, 573 U.S. at 217.

### 3. Dependent Claims 3-6 and 11-14 Are Also Patent-Ineligible

For the dependent claims, Valjakka simply incorporates its "reasoning" from claim 1. Accordingly, the dependent claims are ineligible for the reasons Netflix outlined for claim 1 above and in its opening brief and. Dkt. 79 at 17-18.

### C. Valjakka Does Not Dispute that Leave to Amend Would Be Futile

This Court can grant Netflix's 12(c) motion for judgment on the pleadings because the patent eligibility issues here are purely legal and do not turn on any factual disputes or claim construction issues. *See* Dkt. 79 at 18-19. Valjakka's Response does not dispute this or request leave to amend its pleadings to add any factual allegations to support patent eligibility. Indeed, despite three opportunities to amend its Complaint, Valjakka has never suggested that a Section 101 determination could turn on factual disputes or on the construction of any claim terms. Accordingly, nothing precludes the Court from granting Netflix's motion for judgment on the pleadings. *See PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310 (Fed. Cir. 2021), cert. denied, 212 L. Ed. 2d 540, 142 S. Ct. 1445 (2022) (affirming district court's finding that no alleged factual disputes could preclude judgement on the pleadings).

## III. CONCLUSION

Netflix respectfully requests that the Court grant its motion for judgment on the pleadings and dismiss Valjakka's case with prejudice.

| | | |
|---|---|---|
| Dated: February 7, 2023 | | **PERKINS COIE LLP** |
| | By: | */s/ Sarah E. Piepmeier* |
| | | Sarah E. Piepmeier, Bar No. 227094 |
| | | SPiepmeier@perkinscoie.com |
| | | Elise S. Edlin, Bar No. 293756 |
| | | EEdlin@perkinscoie.com |
| | | PERKINS COIE LLP |
| | | 505 Howard Street, Suite 1000 |
| | | San Francisco, California 94105 |
| | | Telephone: +1.415.344.7000 |
| | | Facsimile:  +1.415.344.7050 |

Janice L. Ta, (admitted *pro hac vice*)
JTa@perkinscoie.com
PERKINS COIE LLP
405 Colorado Street, Suite 1700
Austin, Texas 78701
Telephone: +1.737.256.6100
Facsimile:  +1.737.256.6300

Jassiem N. Moore, (admitted *pro hac vice*)
JassiemMoore@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: +1.206.359.8000
Facsimile:  +1.206.359.9000

*Attorneys for Netflix, Inc.*