# REDACTED VERSION OF
# EXHIBIT A

```
1   Sarah E. Piepmeier, Bar No. 227094
    SPiepmeier@perkinscoie.com
2   Elise S. Edlin, Bar No. 293756
    EEdlin@perkinscoie.com
3   PERKINS COIE LLP
    505 Howard Street, Suite 1000
4   San Francisco, California 94105
    Telephone:    +1.415.344.7000
5   Facsimile:    +1.415.344.7050
6
    Janice L. Ta (appearance pro hac vice)
7   JTa@perkinscoie.com
    PERKINS COIE LLP
8   405 Colorado Street Suite 1700
    Austin, Texas 78701
9   Telephone:    +1.737.256.6100
    Facsimile:    +1.737.256.6300
10
11  Jassiem N. Moore, (appearance pro hac vice)
    JassiemMoore@perkinscoie.com
12  PERKINS COIE LLP
    1201 Third Avenue, Suite 4900
13  Seattle, Washington 98101-3099
    Telephone:    +1.206.359.8000
14  Facsimile:    +1.206.359.9000
15
16  Brianna Kadjo, Bar No. 303336
    BKadjo@perkinscoie.com
17  PERKINS COIE LLP
    1900 Sixteenth Street, Suite 1400
18  Denver, Colorado 80202-5255
    Telephone:    +1.303.291.2300
19  Facsimile:    +1.303.291.2400
20  Attorneys for Defendant
    NETFLIX, INC.
21
```

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| LAURI VALJAKKA, | Case No. 4:22-cv-01490-JST |
|---|---|
| Plaintiff, | **DEFENDANT NETFLIX, INC.'S PATENT L.R. 3-9 SUPPLEMENTAL RESPONSIVE DAMAGES CONTENTIONS** |
| v. | |
| NETFLIX, INC., | |

|   |   |   |
|---|---|---|
|   | Defendant. | Judge:   Jon S. Tigar |

**I.      PRELIMINARY STATEMENT**

Pursuant to Patent L.R. 3-9 and in response to Plaintiff Lauri Valjakka's ("Valjakka's") damages contentions served on September 1, 2022, Defendant Netflix, Inc. ("Netflix") serves its supplemental responsive damages contentions as follows.

Founded in 1997, Netflix is a leading subscription streaming service and content production company based in Los Gatos, California. Valjakka is a citizen of Finland who alleges to have developed a "working software system for the patented systems," but whose alleged system is currently not being made, sold, marketed, used, or imported for sale by any third party. Valjakka initially filed suit against Netflix on September 13, 2021, in the Western District of Texas. After Netflix filed a motion to transfer suit because Valjakka had filed suit in an improper venue, Valjakka agreed to transfer suit to this District. Valjakka filed an Amended Complaint on May 12, 2022. Dkt. 39.

Valjakka's Amended Complaint alleges that "Netflix's Open Connect program and Netflix websites (e.g., https://www.netflix.com)" (the "Accused Instrumentality")—the latter of which encompasses the former—infringe United States Patent Nos. 8,495,167 ("'167 patent") and 10,726,102 ("'102 patent") (collectively, the "Asserted Patents"). *Id*. The Accused Instrumentality is an exceptionally complex, multi-component network that offers a diverse range of features that are derived from proprietary technologies wholly apart from Valjakka's alleged inventions.

Valjakka's damages contentions, with respect to a reasonable royalty, are flawed in multiple respects. Most fundamentally, Valjakka's damages contentions contain almost no detail and provide no analysis or factual support for its proposed 22% reasonable royalty rate and damages award of approximately ▮▮▮▮▮▮▮. Instead, Valjakka arbitrarily bases its proposed 22% reasonable royalty rate on a single website showing intellectual property royalty rates from an unknown time period and for unknown assets, unknown licenses, and unknown technologies based

on undisclosed data. *See* Valjakka's Revised Disclosure of Damages Contentions ("Damages Contentions") at 17–18 ("For example, this link (also see Exhibit C) https://lawexplores.com/court-awarded-royalty-rates/ shows royalty rates awarded in court for computer/electronics industry from 1990-2006. The number of awards was 38, with a high of 42%, median of 6.5%, and mean of 11.01%."). The Federal Circuit has "determined that a patentee [can] not rely on license agreements that [are] 'radically different from the hypothetical agreement under consideration' to determine a reasonable royalty." *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011) (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327 (Fed. Cir. 2009)). "[T]he 'licenses relied on by the patentee in proving damages [must be] sufficiently comparable to the hypothetical license at issue . . .' and [] the patentee's failure to do so 'weighs strongly against . . .' relying on such non-comparable licenses[.]" *Id.* at 1316 (second alteration in original) (internal citations omitted); *see also ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 870–72 (Fed. Cir. 2010) (holding that licenses unrelated to the claimed invention could not form the basis for a reasonable royalty calculation). Valjakka improperly uses alleged industry rates that are unrelated to any facts and circumstances of the matter at hand. *See Uniloc*, 632 F.3d at 1317 ("Relying on the 25 percent rule of thumb in a reasonable royalty calculation is far more unreliable and irrelevant than reliance on parties' unrelated licenses, which we rejected in *ResQNet* and *Lucent Technologies*. There, the prior licenses at least involved the same general industry and at least some of the same parties as the hypothetical negotiations at issue, and in *Wordtech* even involved licenses to the patents in suit entered into by the patentee-plaintiff.").

Further, Valjakka fails to apportion damages and instead improperly relies upon the entire market value of the "entire streaming platform of Netflix that uses the Open Connect Platform." Damages Contentions at 4–5, 16; *see Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1310-11 (Fed. Cir. 2018) (citation omitted) ("The smallest salable unit principle directs that 'in any case involving multi-component products, patentees may not calculate damages based on sales of the entire product, as opposed to the smallest salable patent-practicing unit, without showing that the demand for the entire product is attributable to the patented feature.'"). This is particularly

problematic because the allegedly infringing patented features are not the basis of consumer demand, and Valjakka has offered no evidence that the sales of the Accused Instrumentality are driven by use of the accused functionality. *See id.* at 1311 ("[T]he 'ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product.'") (quoting *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014)). Valjakka thus fails to isolate the value of the accused technology, which has resulted in a damages demand that greatly exceeds the value of the patented technology.

Valjakka's Damages Contentions also do not address what the proper royalty base should be, let alone address what the smallest salable unit is. Valjakka thus fails to address apportionment or the need to properly isolate the value of the accused technology, particularly in light of the countless non-accused features that are found in the Accused Instrumentality as well as the non-accused functionality offered by Netflix that provides value to its streaming service. Indeed, the value, demand, and revenue for the Accused Instrumentality is driven more by Netflix's content and service offerings than by any technology underlying its content delivery networks. *See, e.g.*, NFX-VALJ-00007019 at 7024 ("If consumers do not perceive our service offering to be of value, including if we introduce new or adjust existing features, adjust pricing or service offerings, or change the mix of content in a manner that is not favorably received by them, we may not be able to attract and retain members.").

Moreover, the claimed patents are directed to functionality that can potentially be designed around for a *de minimis* amount if the patent claims are not invalidated or if Netflix is found to infringe. The '102 patent relates to the use of multiple digital rights management keys to obtain access to restricted content, and the '167 patent relates to the distribution of content, using transport requests, through a tree of terminal devices.[1] To be clear, Netflix does not believe its accused system directly, indirectly, or willfully infringes the patented technology and also does not believe the asserted patent claims to be valid. *See* Dkts. 51, 54.

Given the lack of evidence supporting Valjakka's baseless ███████ damages award,

---

[1] According to Valjakka, the '167 patent expired in July 2022 so a design-around would not be required for this patent.

1  Netflix contends that the appropriate royalty is zero dollars. *See TecSec, Inc. v. Adobe Inc.*, 978
2  F.3d 1278, 1291 (Fed. Cir. 2020) ("[35 U.S.C. § 284] does not require an award of damages if none
3  are proven that adequately tie a dollar amount to the infringing acts."). Moreover, in view of
4  Valjakka's deficient damages contentions, Netflix reserves all rights to supplement, clarify, amend,
5  or correct any or all of the responsive damage contentions herein.

## II.   THE ASSERTED PATENTS

Valjakka's Amended Complaint alleges that the Accused Instrumentality infringes the '167 and '102 patents. The assignment chains of both the '167[2] and the '102[3] patents raise cause for concern. The '167 patent issued on July 23, 2013, and is entitled "Data Communications Networks, Systems, Methods and Apparatus." The assignment agreement for the '167 patent, signed in 2021, does not provide a right to sue for past infringement or collect past damages. Thus, Valjakka is not entitled to past damages that occurred prior to the assignment agreement. The '102 patent issued on July 28, 2020, and is entitled "Method of and System for Providing Access to Access Restricted Content to a User." The assignment agreement for the '102 patent, signed on December 28, 2021, does not provide a right to sue for past infringement or collect past damages. According to Valjakka, the '167 patent expired in July 2022, and the '102 patent expires in 2025.

Further, Valjakka lacks standing to assert the '167 Patent. This patent enjoys a complicated assignment history, but Netflix has recently uncovered evidence (in Finnish, and not in the PTO records) that demonstrates that Valjakka is not the owner. In 2009, Lauri Valjakka brought suit in the Helsinki District Court against the bankruptcy estate of Suomen Biisi Oy ("Suomen") to prohibit their use of patent EP 1421759 ("the '759 patent"), which is the European equivalent of the '167 patent. LV002216 at LV002222; NFX-VALJ-00011076 at 11079. Ruling against Valjakka, the Helsinki District Court held that the '759 European Patent, and all other patents relating to the invention, belonged to Suomen. LV002216 at LV002222; 2225; NFX-VALJ-00011076 at 11079, 11086. Specifically, the court found that Valjakka had retroactively

---

[2] *See* LV2_001108; LV2_000220; LV2_000222; LV2_000415; LV2_002913; LV2_001026; LV2_000420; LV2_000224; and LV2_000417.
[3] *See* LV2_000231; LV2_001031; LV2_000423; LV2_000234; and LV2_001034.

transferred the patent rights to Suomen in 2006. *Id.* ("In the deed of transfer of the patent . . . it was agreed between e-3 Systems Oy and [Suomen] on 8/21/2006 that e-3 Systems Oy conveys all rights based on the patent to [Suomen]. The agreement has been signed by on behalf of e-3 Systems Oy by Lauri Valjakka and on behalf of [Suomen] by Juha Setälä. The transfer has taken effect retroactively, i.e. from 11/16/2005."). In other words, the court rejected Valjakka's argument that the patent rights for the '759 patent, and related patents (i.e., the '167 patent), belonged to him as a result of a utilization agreement dated 12/20/2005. *Id.*, NFX-VALJ-00011076 at 11087 ("The District Court considers that the deeds of transfer concerning the DMTS invention described above and the deed of sale dated 11/16/2005 indicate that all rights related to patenting of the invention have been transferred to [Suomen] from 11/16/2005."). In March 2010, The Helsinki Court of Appeal affirmed the district court's holding. LV002216 at 2222; NFX-VALJ-00011076 at 11081. After Valjakka transferred the patent rights from e-3 Systems to Suomen in 2007, those rights never reverted back to Valjakka via the 12/20/2005 utilization agreement—in other words, Valjakka does not own the '167 Patent and cannot seek damages.

### III. THE DATE OF THE HYPOTHETICAL NEGOTIATION

The only method cited by Valjakka to calculate an alleged reasonable royalty is the use of the *Georgia Pacific* factors in the context of a hypothetical negotiation dating to January 2016. Valjakka, however, has not provided any support for why this date is appropriate, and Netflix is unable to verify this date or any licensor at the time of this purported 2016 negotiation. Netflix thus contests the propriety of the January 2016 date. In a *Georgia Pacific* analysis, the date of the hypothetical negotiation is the date of the alleged first infringement. Netflix's Open Connect platform was released around June 2012, and the Asserted Patents issued in July 2013 ('167) and July 2020 ('102). *See, e.g.*, Techcrunch.com, *Netflix Rolls Out Its Own CDN: OpenConnect* (June 4, 2012), https://techcrunch.com/2012/06/04/netflix-open-connect/. Thus, it is unclear what Valjakka is relying on to support a January 2016 date for the hypothetical negotiation. Netflix invites Valjakka to provide the legal and factual basis for its proposed hypothetical negotiation

date.

## IV.   THE ROYALTY BASE: THE ENTIRE MARKET VALUE RULE IS NOT APPLICABLE

Typically, the determination of a reasonable royalty is a two-part process. The first step is to determine the appropriate royalty base, which may be confined to the smallest salable patent-practicing unit or may require apportionment of that unit in order to exclude the value of technology or features that are not accused of infringement. The second step is to determine the appropriate royalty rate to apply to the royalty base.

The entire market value rule does not apply to this case. The entire market value rule is a "narrow exception" to the general rule that where a small element of a multi-component product is accused of infringement, "royalties [must] be based not on the entire product, but instead on the smallest salable patent-practicing unit." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) (citation and quotation marks omitted). The entire market value rule exception allows that "[i]f it can be shown that the patented feature drives demand for an entire multi-component product, a patentee may be awarded damages as a percentage of revenues or profits attributable to the entire product." *Id.* The patent holder has the burden of proving this requirement is met. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 894 F.3d 1258, 1272 (Fed. Cir. 2018).

The importance of identifying the appropriate royalty base cannot be overstated because the risk of improperly compensating the patent-holder for technologies unrelated to the Asserted Patents is high. As the Federal Circuit has said, "[w]here small elements of multi-component products are accused of infringement, calculating a royalty on the entire product carries a considerable risk that the patentee will be improperly compensated for non-infringing components of that product." *LaserDynamics*, 694 F.3d at 67. Customer demand for complex technology products, such as the Accused Instrumentality in this case, is driven by numerous considerations and the value of such a product is rarely based on a single feature or function. For this and other reasons, the entire market value rule is not appropriate here. In addition, Valjakka has not shown

(or even attempted to show) that the accused technology drives customer demand for the Accused Instrumentality, nor has Valjakka come close to demonstrating that the accused technology is the basis for such demand. Netflix's only product is its streaming service and the content and service offerings on the streaming service drive customer demand. Valjakka has entirely failed to account for how Netflix's content and service offerings drive the value of the Accused Instrumentality relative to the alleged value of the accused functionalities.

## V.   THE REASONABLE ROYALTY ANALYSIS[4]

Since the objective of a reasonable royalty analysis is aimed at assessing the value of the patented technology as distinct from technology, features, and other considerations not covered by the asserted patent, determination of the reasonable royalty must include considerations of apportionment. *See, e.g.*, *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) (quoting *Garretson v. Clark*, 111 U.S. 120, 121 (1884)) ("a patentee 'must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features'"). Apportionment recognizes the economic reality that many factors contribute to the revenue[5] and market success associated with

---

[4] Netflix intends to rely on the report and testimony of expert Nisha Mody; *see also* June 1–2, 2023 Deposition of Lauri Valjakka Vols. 1–2; June 2, 2023 Deposition of Ishaan Shastri; May 26, 2023 Deposition of Haripriya Murthy; June 7, 2023 Deposition of Iiro Karesniemi; *see also* forthcoming deposition of Michael Mutter, June 13, 2023; forthcoming deposition of Karen Casella, June 14, 2023; and forthcoming deposition of Helen Ponce, June 16, 2023.

[5] *See* NFX-VALJ-00007111; NFX-VALJ-00006610; NFX-VALJ-00006686; NFX-VALJ-00006694; NFX-VALJ-00006768; NFX-VALJ-00006846; NFX-VALJ-00006924; NFX-VALJ-00007019; NFX-VALJ-00010704; NFX-VALJ-00010707; NFX-VALJ-00010709; NFX-VALJ-00010711; NFX-VALJ-00010713; NFX-VALJ-00010715; NFX-VALJ-00010719; NFX-VALJ-00010721; NFX-VALJ-00010723; NFX-VALJ-00010731; NFX-VALJ-00010733; NFX-VALJ-00010735; NFX-VALJ-00010737; NFX-VALJ-00010739; NFX-VALJ-00010741; NFX-VALJ-00010743; NFX-VALJ-00010745; NFX-VALJ-00010749; NFX-VALJ-00010751; NFX-VALJ-00010753; NFX-VALJ-00010755; NFX-VALJ-00010757; NFX-VALJ-00010759; NFX-VALJ-00010761; NFX-VALJ-00010763; NFX-VALJ-00010765; NFX-VALJ-00010767; NFX-VALJ-00010769; NFX-VALJ-00010771; NFX-VALJ-00010781; NFX-VALJ-00010783; NFX-VALJ-00010785; NFX-VALJ-00010787; NFX-VALJ-00010789; NFX-VALJ-00010791; NFX-VALJ-00010794; NFX-VALJ-00010796; NFX-VALJ-00010798; NFX-VALJ-00010800; NFX-VALJ-00010802; NFX-VALJ-00010806; NFX-VALJ-00010808; NFX-VALJ-00010810; NFX-VALJ-00010812; NFX-VALJ-00010814; NFX-VALJ-00010817; NFX-VALJ-00010819; NFX-VALJ-00010821; NFX-VALJ-00010823; NFX-VALJ-00010825; NFX-VALJ-00010827; NFX-VALJ-00010829; NFX-VALJ-00010831; NFX-VALJ-00010833; NFX-VALJ-00010835; NFX-VALJ-00010837; NFX-VALJ-00010839; NFX-VALJ-00010841; NFX-VALJ-00010844; NFX-VALJ-00010846; NFX-VALJ-00010848; NFX-VALJ-00010850; NFX-VALJ-00010852; NFX-VALJ-

an overall product or process. Here, there are many features of the Accused Instrumentality that are not accused of infringement. In addition, Netflix expects that there are numerous other factors contributing to revenue and the success of the Accused Instrumentality that should also be evaluated in an apportionment analysis to determine if it is appropriate to limit the royalty base further by isolating and excluding such elements. These factors include, *inter alia*, features covered by other patents, non-patented features, reliability, Netflix's content and service offerings, Netflix's own intellectual property (including its trademarks, copyrights, trade secrets, and patents), brand reputation, marketing and sales efforts, and manufacturing quality and capability.[6]

Undertaking a full apportionment analysis at this time would be premature given that Valjakka has yet to identify the precise functionality or hypothetical combinations of Netflix's Open Connect system that Valjakka contends practices the asserted claims of the Asserted Patents. Nonetheless, based on the limited information available to date, Netflix expects that any reasonable royalty analysis must apportion the value of accused functionality to exclude the multitude of non-accused functionalities, in order to arrive at the appropriate royalty base to which a royalty rate may be applied. The result may then be multiplied by the percentage of the accused functionality that is devoted to the Accused Instrumentality. In arriving at a royalty rate as part of the royalty analysis, various factors may be assessed, including, *inter alia*, technology, licensing, financial, and market/competitive considerations. While this method—an apportioned royalty base that begins with the smallest salable patent-practicing unit and excludes non-accused technology, multiplied by an applicable royalty rate—is offered as one example of how the reasonable royalty may be calculated, it is substantially more accurate and reasonable than the conclusory figures presented

---

00010854; NFX-VALJ-00010856; NFX-VALJ-00010858; NFX-VALJ-00010860; NFX-VALJ-00010862; NFX-VALJ-00010866; NFX-VALJ-00010868; NFX-VALJ-00010870; NFX-VALJ-00010872; NFX-VALJ-00010887; NFX-VALJ-00010924; NFX-VALJ-00010925; NFX-VALJ-00010926; NFX-VALJ-00010927; NFX-VALJ-00010928 and NFX-VALJ-00010929.

[6] *See* NFX-VALJ-00010930; NFX-VALJ-00010949; NFX-VALJ-00010958; NFX-VALJ-00010973; NFX-VALJ-00010973; NFX-VALJ-00010987; NFX-VALJ-00010991; NFX-VALJ-00010997; NFX-VALJ-00011001; NFX-VALJ-00010183; NFX-VALJ-00010215; NFX-VALJ-00010243; NFX-VALJ-00010298; NFX-VALJ-00010303; NFX-VALJ-00010364; NFX-VALJ-00010424; NFX-VALJ-00010434; NFX-VALJ-00010439; NFX-VALJ-00010470; NFX-VALJ-00010497; NFX-VALJ-00010548; NFX-VALJ-00010556; NFX-VALJ-00010564; NFX-VALJ-00010572; and NFX-VALJ-00010643.

by Valjakka based on the entire market value rule, which are devoid of any analysis as to the smallest salable unit or apportionment.

## VI. THE *GEORGIA PACIFIC* FACTORS

Regardless, the information provided by Valjakka under the *Georgia Pacific* Factors is insufficient, lacks analysis, and does not meet the disclosure requirements of Patent L.R. 3-8. *See Twilio, Inc. v. Telesign Corp.*, No. 16-cv-06925, 2017 WL 5525929, at *2 (N.D. Cal. Nov. 17, 2017) ("The requirements of L.R. 3-8 could not be more clear: identify the theories of recovery; identify the known facts that support the theories; do the math."); Pat. L.R. 3-8.

**FACTOR 1**: **The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.**

Valjakka's Damages Contentions state that, "Valjakka has, as part of prior lawsuits involving the patents-in-suit, settled with defendants for lump-sum payments." Any transactions including the Asserted Patents, even ones negotiated during litigation, may be relevant to a reasonable royalty analysis. *ResQNet.com*, 594 F.3d at 869. Valjakka has produced the following licenses bearing Bates numbers LV004030; LV004038; LV004058; LV004070; LV2_002242; LV2_000410; NFX-VALJ-00011042; LV2_000799; and NFX-VALJ-00011047. Netflix may also rely on additional valuations Valjakka obtained relating to the Asserted Patents bearing Bates numbers LV002102; NFX-VALJ-00011069; LV004243; and LV2_000600.

**FACTOR 2**: **The rates paid by the licensee for the use of other patents comparable to the patent in suit.**

Netflix produced multiple licenses bearing Bates numbers NFX-VALJ-007142, NFX-VALJ-00007162, NFX-VALJ-00007177, NFX-VALJ-00007186, NFX-VALJ-00007192, NFX-VALJ-00007198, NFX-VALJ-00007222, NFX-VALJ-00007236, and NFX-VALJ-00010173. Whether a license is technically or economically comparable is subject to expert opinions and will be disclosed at the appropriate time. However, Netflix expects to present a comparable license analysis based on at least these licenses if they are found to be technically and economically comparable.

**FACTOR 3**: **The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.**

Valjakka has stated that settlements relating to the patents-in-suit are all lump sum amounts, and denies that he has ever licensed the Asserted Patents for a running royalty. Damages Contentions at 3. Netflix thus expects that any hypothetical negotiation outcome would result in an upfront lump sum payment. To the degree any adjustments are necessary from the comparable licenses to the hypothetical negotiation, they will be addressed in the appropriate GP factor area, including adjustments associated with exclusivity and possibly field of use.

**FACTOR 4**: **The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.**

Valjakka states that "Valjakka's policy" is that he is "willing to license the patents for a reasonable royalty for third parties who are using the technology in order to maintain his patent monopoly." *Id.* at 6. Valjakka, however, is a non-practicing entity and therefore has no monopoly to protect. Finally, given Valjakka's admission, he should produce any documents related to or supporting his alleged patent licensing "polic[ies]," including any such policies or practices that have guided the negotiations of any settlement agreements.

**FACTOR 5**: **The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.**

Valjakka admits that he is not a competitor to Netflix and that he does not produce any products. However, absent the production of Valjakka's transactions regarding the patents in suit, any adjustment based on those transactions is presently unknown.

**FACTOR 6**: **The effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.**

Valjakka appears to misunderstand Factor 6 and thus appears to be overstating the alleged contribution of the Asserted Patents. In particular, Valjakka states that, "because of the patented Valjakka technology, Netflix was able to deliver content around the world on any device simultaneously with very little additional internet traffic, and Netflix considered this feature, 'a great Netflix viewing experience' important enough to write a press release discussing the topic." Damages Contentions at 8. Valjakka thus improperly conflates Netflix's entire content delivery system with the technology of the two Asserted Patents, without any basis that these separate systems can be equated from either a technical or damages perspective. Valjakka's statement is a clear violation of the entire market value rule. *Versata Software, Inc. v. SAP Am., Inc*., 717 F.3d 1255, 1268 (Fed. Cir. 2013) (citation omitted) ("A patentee may assess damages based on the entire market value of the accused product only where the patented feature creates the basis for customer demand or substantially creates the value of the component parts."). Indeed, many other factors and non-accused functionalities, besides the patented functionality, drive the value of the Accused Instrumentality, including Netflix's content and service offerings. Because Valjakka has failed to provide any evidence or analysis of apportionment, any response to Valjakka's assertions with respect to Factor 6 would be premature.

**FACTOR 7**: **The duration of the patent and the term of the license.**

According to Valjakka, the '167 patent expired in July 2022 and the '102 patent expires in 2025. Damages Contentions at 8.

**FACTOR 8**: **The established profitability of the product made under the patent; its commercial success; and its current popularity.**

Valjakka provided no relevant evidence or argument under this factor. Simply providing information on Netflix's net sales is not only a violation of the entire market value rule—it also fails to provide any analysis of nexus to the Asserted Patents. Moreover, Valjakka explained that he "did develop a working software system for the patented systems, however Valjakka's system is currently not being used by a third party." Damages Contentions at 6. The failure of Valjakka to commercialize its purported system suggests a lack of commercial success of the patented

technology.

While Netflix has been a successful business, and has realized profits, Netflix's commercial success is not the result of Valjakka's technology. Many factors contribute to Netflix commercial success including branding, content offerings, and more. Even assuming infringement and validity of claims, none of these factors associated with Netflix commercial success are due to any contribution by the Asserted Patents. Regardless, the appropriate measure of any commercial success or profitability is operating profit and not gross profit.

**FACTOR 9**: **The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.**

Valjakka admits that "no third-party commercial users licensed or adopted the technology from Valjakka." Damages Contentions at 12; *see also id.* at 6. As such, there appears to be little, if any, benefits to the patents in suit.

Additionally, Netflix could have designed around the patent in suit in a simple way for little to no costs. While premature in these initial damages contentions, Netflix experts are expected to consider design arounds and non-infringing alternatives. Finally, with respect to Factor 9 and/or 13, Netflix experts may offer a cost-based approach to damages analysis.[7]

**FACTOR 10**: **The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.**

Netflix incorporates its response to Factors 8 and 9.

**FACTOR 11**: **The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.**

Netflix incorporates its response to Factors 8 and 9.

**FACTOR 12**: **The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.**

---

[7] *See* NFX-VALJ-00010930.

As discussed earlier, Valjakka arbitrarily bases its proposed 22% reasonable royalty rate on a single website showing intellectual property royalty rates from an unknown time period and for unknown assets, unknown licenses, and unknown technologies based on undisclosed data. *See* Damages Contentions at 17–18. As discussed above, because Valjakka's proposed royalty rate is completely divorced from any facts or circumstances related to the matter at hand, and because Valjakka fails to properly apportion, the information provided by Valjakka under Factor 12 has no nexus to the relevant facts and would not assist a trier of fact.

**FACTOR 13**: **The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.**

Valjakka has provided no evidence or argument under Factor 13. For example, Valjakka has not specified the novel portion of the '102 or '167 patents that provides incremental value. *See Finjan*, 879 F.3d at 1310 ("[T]he patentee must give evidence tending to separate or apportion the infringer's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative.") (citation and internal quotation marks omitted). Valjakka instead identifies the entirety of Netflix's Open Connect system and its streaming platform as the smallest saleable unit or the smallest patented article, and assumes that "all revenue listed" in an Excel spreadsheet showing Netflix's gross revenue, costs, and net revenue can be "assumed to be from subscriptions that stream content to users over Open Connect"— in violation of the entire market value rule. Damages Contentions at 16. While Valjakka acknowledges, "[a]pportionment is a proper analysis in reasonable royalty calculations," *id.* at 16, Valjakka does not even attempt to provide any evidence or analysis for apportionment.

**FACTOR 14**: **The opinion testimony of qualified experts.**

Valjakka provided no evidence or argument under Factor 14.

**FACTOR 15**: **The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been**

**reasonably and voluntarily trying to reach an agreement; that is, the amount that a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.**

Because Valjakka has failed in its damages disclosures to provide any cogent analysis on damages, and has failed to produce relevant information regarding patent transactions, Netflix can provide no further contentions at this time. From Netflix's perspective, the Parties were not and are not competitors, and the alleged patented features are not market drivers. At best, the most relevant damages calculation is likely based on the sales and licensing transactions that include the Asserted Patents. Netflix expects that in the event it is found to be infringing non-invalidated patent claims, damages would be in the form of a small fully paid-up lump sum payment that would cover the period from when notice was provided to when the patents expire.

Furthermore, Valjakka's briefing in its damages contentions of the "parameters for treble damages is unnecessary" because "Local Rule 3-1 already requires that a party set forth the basis for an allegation of willful infringement." *See, e.g.*, *Twilio*, 2017 WL 5525929, at *3. Nonetheless, Netflix denies that it willfully infringes the Asserted Patents or that this is an exceptional case. *See* Dkts. 51, 54.

## VII.   VALJAKKA'S CONTENTIONS FAIL TO SATISFY PATENT L.R. 3-8

Valjakka has failed to provide the requisite documentation, computations, and/or analysis, as required under Patent L.R. 3-8. *See, e.g.*, *Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-cv-00072, 2019 WL 1168536, at *1 (N.D. Cal. Mar. 13, 2019) ("An important function of this District's damages contention requirement is to provide damages information 'early enough in the course of fact discovery to inform the parties and the court on issues of relevance and proportionality,'" as well as to "'create[] a potential opportunity for meaningful settlement discussions.'") (alteration in original) (quoting *Twilio*, 2017 WL 5525929, at *2)); *see also Twilio*, 2017 WL 5525929, at *3 ("[I]t simply is not credible that a full year after the filing of the complaint, which certainly followed

a diligent investigation, a plaintiff is unable to quantify, with reasonableness if not certainty, the damages it will seek at trial. Nor is it credible that a plaintiff cannot break that quantification into elements of a computation: a royalty base, a royalty rate, and other potential factors that will compose its alleged damages."). Most notably, Valjakka has failed to provide any facts relating to apportionment in its Damages Contentions. *Id.* ("Nevertheless, the apportionment requirement does not obviate the need to compute damages under L.R. 3-8. A plaintiff should, at a minimum, identify the likely factors that will be considered in its apportionment calculation, quantify those factors to the extent possible, and identify the outstanding discovery directed to quantifying these factors with the particularity outlined above."). Additionally, Valjakka has failed to provide evidence of compliance with the marking requirements in 35 U.S.C. § 287. Further, in the interests of facilitating damages discovery, providing proper notice of Valjakka's theory of damages, and promoting potential settlement negotiations, Netflix requests that Valjakka provide the following categories of information and documents. As discovery is ongoing, Netflix reserves the right to supplement or amend its contentions after receipt of the requested information and documents, including the following:

1) The identification of each of Valjakka's asserted damages theories (e.g., lost profits, reasonable royalty, interest and any other asserted theory), as well as the amount of damages Valjakka seeks under each damages theory. *See Corning Optical Commc'ns Wireless Ltd. v. Solid, Inc.*, 306 F.R.D. 276, 278–79 (N.D. Cal. 2015).

2) All documents related to a good faith computation of a reasonable royalty, including identification of the "royalty base(s), royalty rate(s), date(s) of the hypothetical negotiation currently used, [and] factors identified to date that are or will be used in apportionment, and where possible a quantification of those factors." *See Twilio*, 2017 WL 5525929, at *5; *Intel Corp. v. Tela Innovations, Inc.*, No. 18-cv-02848, 2021 WL 1222622, at *29 (N.D. Cal. Feb. 11, 2021) (noting that while plaintiff "fairly disclosed" a "broad theory" of damages that included "royalty rates based on

[defendant's] sales," Rule 3-8 "requires 'computations of damages'" and "the manner and result of how [plaintiff] now calculates damages was not disclosed").

3) All offers to license the patents in suit, sell the patents in suit, or transfer the patents in suit.

4) All licenses or transactions of any sort involving the patents in suit including discussions or negotiations regarding those licenses and the results of any settlements.

5) All documents or communications related to Valjakka's patent licensing and/or settlement policies and practices.

6) Any valuations of the patents in suit.

7) All income statements, sales data, profitability data, market research reports, competitive analyses supporting Valjakka's contentions that Valjakka tried to have "third-party commercial users" license or adopt the technology from him.

8) Demonstration of commercial success of the patents in suit, or any technologies that embody the patents in suit, including adoption of the patents in suit by others.

9) Any documents that identify demand for the patents in suit.

10) Any consumer surveys or any documentation showing use of the patented inventions.

11) Any documents supporting actual or constructive notice of the patents from Valjakka, including any alleged evidence of compliance with the marking requirements of 35 U.S.C. § 287.

12) Information, data, documentation, and identification of benefits and functionalities of the patents in suit.

13) For each patent in suit, the time period for which Valjakka seeks damages as a result of the alleged infringement.

14) Any and all documents that support Valjakka's claim that the hypothetical negotiation would have occurred in 2016. *See Twilio*, 2017 WL 5525929, at *5.

Dated: June 15, 2023

Respectfully submitted,

*/s/ Elise S. Edlin*
Sarah E. Piepmeier, Bar No. 227094
SPiepmeier@perkinscoie.com
Elise S. Edlin, Bar No. 293756
EEdlin@perkinscoie.com
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, California 94105
Telephone: +1.415.344.7000
Facsimile:  +1.415.344.7050

Janice L. Ta, (admitted *pro hac vice*)
JTa@perkinscoie.com
PERKINS COIE LLP
405 Colorado Street, Suite 1700
Austin, Texas 78701
Telephone: +1.737.256.6100
Facsimile:  +1.737.256.6300

Jassiem N. Moore, (admitted *pro hac vice*)
JassiemMoore@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: +1.206.359.8000
Facsimile:  +1.206.359.9000

Brianna Kadjo, Bar No. 303336
BKadjo@perkinscoie.com
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, Colorado 80202-5255
Telephone: +1.303.291.2300
Facsimile:  +1.303.291.2400

**Attorneys for Defendant
NETFLIX, INC.**

# CERTIFICATE OF SERVICE

I, the undersigned, declare:

I am a citizen of the United States and employed by the firm of Perkins Coie LLP in San Alameda, California. I am over the age of eighteen years and not a party to the within-entitled action. On June 15, 2023, I served a copy of the within document(s):

- DEFENDANT NETFLIX, INC.'S PATENT L.R. 3-9 RESPONSIVE DAMAGES CONTENTIONS

☒     by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

| | |
|---|---|
| William Peterson Ramey , III<br>Email: wramey@rameyfirm.com<br>Ramey LLP<br>5020 Montrose Blvd., Suite 800<br>Houston, TX 77006<br>713-426-3923<br>Fax: 832-900-4941 | Attorneys for Plaintiff Lauri Valjakka |

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on June 15, 2023.

*Elise S. Edlin*
Elise S. Edlin