Susan S.Q. Kalra (CA State Bar No. 16740)
Email: skalra@rameyfirm.com
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, TX 77006
Telephone: (800) 993-7499
Fax: (832) 900-4941

William P. Ramey, III (Admitted *pro hac vice*)
Email: wramey@rameyfirm.com
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, TX 77006
Telephone: (713) 426-3923
Fax: (832) 689-9175

*Attorneys for Plaintiff*
LAURI VALJAKKA

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| **LAURI VALJAKKA,** | Case No.: 4:22-cv-01490-JST |
| Plaintiff, | **PLAINTIFF LAURI VALJAKKA'S FIRST AMENDED ANSWER, DEFENSES AND COUNTERCLAIM TO DEFENDANT'S ADDITIONAL DEFENSES AND COUNTERCLAIMS IN NETFLIX INC.'S AMENDED ANSWER TO THIRD AMENDED COMPLAINT** |
| v. | |
| **NETFLIX, INC.,** | |
| Defendant. | |
| | **JURY TRIAL DEMANDED** |

In response to the additional defenses and Counterclaims (ECF 101-1, 116) asserted by

Defendant Netflix, Inc. ("Netflix"), Plaintiff Lauri Valjakka ("Valjakka") answers and

1

counterclaims as follows:

### GENERAL DENIAL

Pursuant to Fed. R. Civ. P. 8(b)(3), Valjakka denies all allegations in Defendant's Counterclaims except those specifically admitted below.

### NETFLIX'S COUNTERCLAIMS

The introductory paragraph of Netflix's Counterclaims avers legal conclusion to which no response is required, To the extent a response is required, Valjakka denies the allegations of the introductory paragraph of Netflix's Counterclaims.

### PARTIES[1]

1.     Upon information and belief, Valjakka admits that Netflix, Inc. is a Delaware corporation with a principal address of 100 Winchester Circle, Los Gatos, CA 95032.

2.     Admitted.

### JURISDICTION AND VENUE

3.     Valjakka admits that Netflix's Counterclaims purport to arise under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.; the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.; and that this Court has jurisdiction over the subject matter of Netflix's Counterclaims under 28 U.S.C. §§ 1331, 1338(a). Valjakka denies any remaining allegations of Paragraph 3.

4.     Admitted.

5.     Admitted.

6.     For the purposes of this action, Valjakka admits the allegations of Paragraph 6

---

[1] Headings in Valjakka's Answer and Affirmative Defenses to Netflix's Counterclaims are used solely to mirror the headings in Netflix's pleading and should not be construed as an admission or denial by Valjakka on any issue.

insofar as the Third Amended Complaint alleges infringement of U.S. Patent No. 10,726,102, but denies the allegations of Paragraph 6 as to the Third Amended Complaint alleging infringement of U.S. Patent No. 1,495, 167. For the purposes of the remainder of this Amended Answer, Plaintiff will assume Defendant is referring to U.S. Patent No. 8,495,167 (the "'167 Patent").

7.    Admitted.

8.    Admitted.

9.    Admitted.

10.    Admitted.

11.    Valjakka admits that there is an actual, substantial, and continuing justiciable case or controversy with respect to infringement and validity of the '167 Patent. Valjakka admits that Paragraph 11 states that "Netflix is entitled to a judicial determination and declaration that Mr. Valjakka does not have rights, title, and interests in the '167 patent, and therefore lacks standing to assert the '167 Patent against Netflix; that Netflix has not infringed and is not infringing the '167 Patent; and that the '167 Patent is invalid. Netflix is also entitled to a judicial determination and declaration that the '167 '102 Patents are unenforceable at least because of Mr. Valjakka's inequitable conduct and acts of unclean hands before the U.S. Patent and Trademark Office ("USPTO")," but denies the veracity and merit of these allegations.  Valjakka denies any remaining allegations of Paragraph 11.

12.    Paragraph 12 contains legal conclusions and therefore no answer is necessary. To the extent an Answer is required, these allegations are denied.

**FACTUAL BACKGROUND**

13.    Denied.

14.    Denied.

15.    Denied.

16.    Denied.

17.    Denied.

18.    Valjakka admits that a Helsinki District Court held that no rights had reverted to Valjakka under the DMTS Utilization Agreement, but denies the remaining allegations of paragraph 18 as the court based that opinion on solely the DMTS Utilization Agreement. The court did not consider Finnish common law. The court also did not consider reforming the DMTS Utilization Agreement to make the assignor e-3 Systems, which is consistent with the intent of the parties at the time of execution.

19.    Valjakka admits that the decision determining the DMTS Utilization Agreement was upheld by the Helsinki Court of Appeal, but denies the remaining allegations of paragraph 19 as the lower court based that opinion on solely the DMTS Utilization Agreement. The appellate court did not consider Finnish common law. The appellate court also did not consider reforming the DMTS Utilization Agreement to make the assignor e-3 Systems, which is consistent with the intent of the parties at the time of execution.

20.    Denied.

21.    Admitted.

22.    Admitted.

23.    Denied.

24.    Denied.

25.    Denied.

26.    Denied.

4

27.     Denied.

28.     Denied.

29.     Denied.

30.     Denied.

31.     For the purposes of this action, Valjakka admits, that in 2005, Valjakka wrote that Iiro Karesniemi was a co-inventor of the '685 Application in its form at that time, but denies the remaining allegations of Paragraph 31.  Valjakka named Iiro Karesniemi as a co-inventor as a reward for his help and not for his contribution.

32.     Denied.

33.     Denied that Iiro Karesniemi has any rights in the issued '167 patent, admitted as to the remainder.

34.     Admitted.

35.      Valjakka admits that when e-3 Systems was formed, Mr. Valjakka did not record any assignment of rights to the '685 Application from e-3 Solutions to e-3 Systems, but denies Mr. Karesniemi had any rights to the '685 Application at the time. It was Valjakka's intent to assign the rights to the '685 Application from e-3 Solutions to e-3 Systems.

36.     Denied, it was Valjakka's intent to assign the '685 application rights to e-3 Systems.

37.     Admitted that Valjakka corrected the issue through a series of nunc pro tunc assignments.

38.     Admitted that Valjakka corrected the issue through a series of nunc pro tunc assignments.

39.     Admitted that Valjakka corrected the issue through a series of nunc pro tunc

assignments.

40.     Admitted that Valjakka corrected the issue through a series of nunc pro tunc assignments.

41.     Admitted that Valjakka corrected the issue through a series of nunc pro tunc assignments.

42.     Denied.

43.     Denied to the extent that Valjakka was the intended assignor of rights from e-3 Systems to Suomen Biisi.  The intent of the parties was that the DMTS agreement was effective upon the assignment of rights from e-3 Systems to Suomen Biisi, or November 16, 2005, with the correct assignor being e-3 Systems. In the alternative, by operation of Finnish common law, Valjakka is the sole owner of the '167 patent.[2]  The expert report of Professor Jarno Tepora conclusively establishes that under the common law of Finland, Soumen Biisi abandoned the application that matured into the '167 patent and when Lauri Valjakka revived and the application, he became the rightful owner.

44.     Admitted.

45.     Admitted that relief was sought solely under DMTS agreement and not Finnish common law or that a reformation of the DMTS agreement was sought.

46.     Admitted that was the result solely under DMTS agreement and not considering Finnish common law or that a reformation of the DMTS agreement was needed.

47.     Admitted that was the result solely under DMTS agreement and not considering Finnish common law or that a reformation of the DMTS agreement was needed.

48.     Denied.

---

[2]  Exhibit A, Expert Report of Professor Jarno Tapora.

49.     Admitted that was the result solely under DMTS agreement and not considering Finnish common law or that a reformation of the DMTS agreement was needed.

50.     Admitted that was the result solely under DMTS agreement and not considering Finnish common law or that a reformation of the DMTS agreement was needed.

51.     Admitted the court, without considering the claims or US law that "Lauri Valjakka and Iiro Karesniemi have been the inventors."

52.     Admitted.

53.     Admitted.

54.     Admitted that was the result solely under DMTS agreement and not considering Finnish common law or that a reformation of the DMTS agreement was needed.

55.     Admitted that was the result solely under DMTS agreement and not considering Finnish common law or that a reformation of the DMTS agreement was needed.

56.     Admitted that Suomen Biisi abandoned the '685 application.

57.     Admitted that Suomen Biisi abandoned the '685 application.

58.     Admitted.

59.     Admitted to the extent that Valjakka was not relying on the DMTS agreement at that point, but rather Finnish common law.

60.     Admitted to the extent that Valjakka was not relying on the DMTS agreement at that point, but rather Finnish common law.

61.     Denied to the extent that Valjakka was not relying on the DMTS agreement at that point, but rather Finnish common law.

62.     Admitted to the extent that Valjakka was not relying on the DMTS agreement at that point, but rather Finnish common law.

63.     Valjakka admits that in March, 2011 the USPTO revived the '685 application. Valjakka denies the remaining allegations as Valjakka was not relying on the DMTS agreement at that point, but rather Finnish common law.

64.     Admitted.

65.     Admitted that a supplemental amendment was filed on January 24, 2011 to cancel claims 9 and 26 and that a Request to Correct Inventorship under 25 U.S.C. § 1.48(b) to remove Mr. Karesniemi as co-inventor was also filed on the same date. Denied as to the remaining allegations of Paragraph 65 as the only inventor of the claimed subject matter is Valjakka.

66.     Admitted.

67.     Admitted insofar as On January 7, 2013, Mr. Valjakka recorded a nunc pro tunc assignment retroactively effective as of June 23, 2010, to assign and revert rights in the '685 Application from Suomen Biisi to Mr. Valjakka based on Clause 8 of the DMTS Utilization Agreement and Suomen Biisi's failure to prosecute the '685 Application, recorded the DMTS Utilization Agreement, and on April 8, 2013, the USPTO again issued a denial for power of attorney because Mr. Valjakka's submissions were lacking Mr. Karesniemi's signature.  Denied as to the remaining allegations of Paragraph 67.

68.     Admitted as to Valjakka, on May 23, 2013, submitted a Request to Correct Inventorship Under 35 U.S.C. § 1.48(b), alleging that the Examiner had failed to expressly act on the previous request to remove Karesniemi as a co-inventor.  Denied as to the remaining allegations of Paragraph 68 as the only inventor of the claimed subject matter is Valjakka.

69.     Admitted as the only inventor of the claimed subject matter is Valjakka.

70.     Admitted.

## FIRST COUNTERCLAIM

### Declaratory Judgment That the '167 Patent Is Unenforceable Due to Inequitable Conduct

71.    To the extent that Paragraph 71 incorporates prior allegations, these allegations are denied.

72.    Denied.

73.    Admitted.

74.    Denied.

75.    Denied.

76.    Admitted.

77.    Denied.

78.    Denied.

79.    Admitted insofar as Mr. Karesniemi is a named inventor in the European patent EP01660145. Denied as to the remaining allegations of Paragraph 79 as Iiro Karesniemi was not an inventor to the claim subject matter that issued as the '167 patent.

80.    Admitted that Iiro Karesniemi performed the ministerial function of drafting claims and did not contribute to conception.

81.    Admitted insofar that after Mr. Karesniemi left his employment as a software engineer at e-3 Solutions, Mr. Valjakka continued to ask Mr. Karesniemi for his help in revising the specification and claims of EP01660145. Denied as to the remaining allegations of Paragraph 81.

82.    Admitted insofar that during the prosecution of the '167 Patent, Mr. Valjakka filed a supplemental amendment on or around January 24, 2011, to cancel two dependent claims of the '685 Application, specifically dependent claims 9 and 26. Denied as to the remaining

allegations of Paragraph 82.

83. Admitted insofar as in conjunction with the supplemental amendment, Mr. Valjakka also submitted a request to remove Mr. Karesniemi, citing the cancellation of dependent claims 9 and 26. Denied as to the remaining allegations of Paragraph 83.

84. Admitted.

85. Admitted.

86. Admitted.

87. Admitted.

88. Denied.

89. Denied.

90. Denied.

91. Denied.

92. Admitted as to patent law. Denied as to a legal conclusion in reference to prior allegations.

93. Denied.

94. Denied.

95. Denied.

96. Denied.

97. Denied as to allegations that the '167 Patent is unenforceable because of Mr. Valjakka's fraud on the USPTO and inequitable conduct. The remaining allegations in Paragraph 97 are legal conclusions to which no response is necessary. To the extent an Answer is required, these allegations are denied.

## SECOND COUNTERCLAIM

### Declaratory Judgment That Mr. Valjakka's Claims with Respect to the '167 Patent and '102 Patent Are Barred Because of Unclean Hands

98.     To the extent that Paragraph 98 incorporates prior allegations, these allegations are denied.

99.     To the extent that Paragraph 99 incorporates prior allegations, these allegations are denied.

100.     Admitted as to Valjakka has produced documents during the course of this litigation representing that he owns the '167 patent. Denied as to the remaining allegations of Paragraph 100.

101.     Denied.

102.     Denied.

## THIRD COUNTERCLAIM

### Declaratory Judgment of Non-Infringement of U.S. Patent No. 8,495,167

103.     To the extent that Paragraph 103 incorporates prior allegations, these allegations are denied.

104.     Admitted.

105.     Valjakka admits that Paragraph 105 states that "Netflix has not infringed and is not infringing any valid or enforceable claim of the '167 Patent, willfully or otherwise, directly or indirectly, either literally or by application of the doctrine of equivalents. For example, Claim 1[e] requires "wherein each such transport request includes details of data to be retrieved, the address of the first server from which the data is to be requested by the first target terminal, the addresses of at least one second target terminal to which the data from the first server to be relayed by the first target terminal and an indication of a relative performance of a further target

11

terminal based on the terminal performance information stored in the network information database;" and the Accused Products do not infringe this element, at least under Plaintiff's apparent application of the claims. Furthermore, there is no substantial identity between the claims of the '167 Patent and the Accused Products," but denies the veracity and merit of these assertions.

106.   The allegations in Paragraph 106 are legal conclusions to which no response is necessary. To the extent an Answer is required, these allegations are denied.

107.   Admitted that this is an exceptional case such that an award to Valjakka of its attorneys' fees and costs pursuant to 35 U.S.C. § 285 is justified.  Denied that Netflix is entitled to an award of attorneys' fees and costs.

## FOURTH COUNTERCLAIM

### Declaratory Judgment of Non-Infringement of U.S. Patent No. 10,726,102

108.   To the extent that Paragraph 108 incorporates prior allegations, these allegations are denied.

109.   Admitted.

110.   Valjakka admits that Paragraph 110 states that "Netflix has not infringed and is not infringing any valid or enforceable claim of the '102 Patent, willfully or otherwise, directly or indirectly, either literally or by application of the doctrine of equivalents. For example, the Accused Products do not cause "the content providing server to validate the fingerprint, and, if the validation is successful, access[] the access restricted content" as required by Claim 10 of the '102 Patent, at least under Plaintiff's apparent application of the claims. Furthermore, there is no substantial identity between the claims of the '102 Patent and the Accused Products," but denies the veracity and merit of these assertions.

111.    The allegations in Paragraph 111 are legal conclusions to which no response is necessary. To the extent an Answer is required, these allegations are denied.

112.    Admitted that this is an exceptional case such that an award to Valjakka of its attorneys' fees and costs pursuant to 35 U.S.C. § 285 is justified.  Denied that Netflix is entitled to an award of attorneys' fees and costs.

## FIFTH COUNTERCLAIM

### Declaratory Judgment of Invalidity of U.S. Patent No. 8,495,167

113.     To the extent that Paragraph 113 incorporates prior allegations, these allegations are denied.

114.    Admitted.

115.    Paragraph 115 contains legal conclusions and allegations to which no answer is required. To the extent an Answer is required, the allegations are denied upon information and belief.

116.    Valjakka admits that Paragraph 116 states that "The claims of the '167 Patent are invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 101 et seq., e.g., 102, 103, 112, and 132," but denies the veracity and merit of these assertions.

117.    Valjakka admits that Paragraph 117 states that "For example, '167 Patent is also invalid under 35 U.S.C. § 101 because it is directed to nothing more than the unpatentable abstract idea of distributing the delivery of content among multiple actors. Further, each claim element of the asserted claims recites only features that are well-understood, routine, and conventional, and nothing in the claims transforms the abstract idea into an inventive concept," but denies the veracity and merit of these assertions.

118.   Valjakka admits that Paragraph 118 states that "The '167 Patent is also invalid under pre-AIA 35 U.S.C. § 102 and/or as obvious under U.S.C. § 103 in view of prior art to the patent, including without limitation, U.S. Patent Nos. 6,912,514; 6,950,431; 6,970,939; 7,139,827; 7222,186; 7,228,416; 7,373,103; 5,905,952; 7,398,312; 6,708,213; 8,392,611; 7,149,797; U.S. Patent Application No. 2006/0114350; and Publication Nos. WO 00/65776; WO 01/22688; HU 222,337; EP 0726663; EP 0863646; EP 0709994; Publications Zegura et al., Application-Layer Anycasting: A Server Selection Architecture and Use in a Replicated Web Service; Kung et al., Hierarchical Peer-to-Peer Networks; Amini et al., Distribution Requirements for Content Internetworking; Green et al., Content Internetworking Architectural Overview; Cisco Systems, Inc., Close Encounters: Cisco end-to-end solution pushes streaming and other feature-rich content closer to end users; Cisco Systems, Inc., Speeding and Scaling Web Sites Using Cisco Content-Delivery Technology White Paper; and Prior Art Systems Cisco Systems, Inc., Cisco Content Delivery Network (CDN); Inktomi Corporation, Inktomi Content Distributor; F5 Networks, Inc., Global-Site Controller; and Starburst Software, Inc., StarBurst OmniCast," but denies the veracity and merit of these assertions.

119.   Valjakka admits that Paragraph 119 states that "The '167 Patent is also invalid under 35 U.S.C. § 112 as indefinite. At least as would be understood by one of ordinary skill in the art and/or as applied in Mr. Valjakka's Complaint, the claim language is indefinite because it does not have a meaning that can be clearly and definitely determined from the patent, and thus fails to put the public on notice of what is and is not covered by these claims. The '167 Patent fails to satisfy the requirements of 35 U.S.C. § 112(2) due to the claim language being indefinite," but denies the veracity and merit of these allegations.

120.   Valjakka admits that Paragraph 120 states that "The '167 Patent is also invalid

due to improper and/or incorrect inventorship, including nonjoinder under 35 U.S.C. §§ 101, 111, 115, 116, 282, and/or pre-AIA 35 U.S.C. § 102(f) for Mr. Valjakka's intentional omission of Iiro Karesniemi as a co-inventor of the '167 Patent," but denies the veracity and merit of these allegations.

121.    The allegations in Paragraph 121 are legal conclusions to which no response is necessary. To the extent an Answer is required, these allegations are denied.

122.    Admitted that this is an exceptional case such that an award to Valjakka of its attorneys' fees and costs pursuant to 35 U.S.C. § 285 is justified.  Denied that Netflix is entitled to an award of attorneys' fees and costs.

## SIXTH COUNTERCLAIM

### Declaratory Judgment of Invalidity of U.S. Patent No. 10,726,102

123.    To the extent that Paragraph 123 incorporates prior allegations, these allegations are denied.

124.    Admitted.  Valjakka withdrew its claims of infringement of the '102 patent on or about June 16, 2023.  Netflix was informed by e-mail on that day.

125.    Valjakka admits that Paragraph 125 states that "the '102 Patent is invalid under 35 U.S.C. § 101 because Claims 10 and 11 are directed to nothing more than the unpatentable abstract idea of providing restricted access to content using multiple levels of validation. Further, each claim element of the asserted claims 10 and 11 recites only features that are well-understood, routine, and conventional, and nothing in the claims transforms the abstract idea into an inventive concept," but denies the veracity and merit of these allegations.

126.    "The claims of the '102 Patent are invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 101 *et seq., e.g.*, 102,

103, 112, and 132. For example, the '102 Patent is invalid as anticipated under 35 U.S.C. § 102 and/or as obvious under U.S.C. § 103 in view of prior art to the patent, including without limitation, U.S. Patent Nos. 6,891,953; and 8,359,473; U.S. Patent Application Nos. 2016/0198202; 2003/0161473; 2004/0064714; 2004/0098592; 2002/0018566; 2007/0208711; 2010/0185868; 2008/0071617; 2008/0098212; 2005/0018854; 2010/0174608; 2012/0042389; and Publication No. KR 101103403 B1; Publications William Rosenblatt, William Trippe, Stephen Mooney, Digital Rights Management; Ramya Venkataramu, Analysis and Engancement of Apple's Fairplay Digital Rights Management; Eric Rescorla, SSL and TLS: Designing and Building Secure Systems; Naganand Doraswamy, Dan Harkins, IPSec: The New Security Standard for the Internet, Intranets, and Virtual Private Networks (Second Edition); H. Krawczyk, M. Bellare, R. Canetti, HMAC: Keyed-Hashing for Message Authentication (RFC 2104); Bruce Schneier, E-Mail Security: How to Keep Your Electronic Messages Private; David K. Gifford, Cryptographic Sealing for Information Secrecy and Authentication; and S. Kent, IP Encapsulating Security Payload (ESP) (RFC 2406); and Prior Art Systems the Apple FairPlay system, the Google WideVine system, and the Microsoft PlayReady system," but denies the veracity and merit of these allegations.

127.    Valjakka admits that Paragraph 127 states that "The '102 Patent is also invalid under 35 U.S.C. § 112 as indefinite, for lack of written description, and/or enablement, at least under Valjakka's apparent application of the claims. For example, the specification of the '102 Patent does not provide an adequate written description under 35 U.S.C. § 112(1) for at least the phrase "information describing encryption properties" in Claim 10. The specification does not teach that the patentee had possession of a method to access "information describing encryption properties" as recited in the claims. While "information describing encryption properties" is

recited briefly in the specification, there is no description or teaching of what "information describing encryption properties" is. Thus, this claim limitation lacks written description and enablement. The specification does not enable a person of ordinary skill in the art to make use of the full scope of these claims without undue experimentation. Additionally, at least as would be understood by one of ordinary skill in the art and/or as applied in Valjakka's Amended Complaint, this claim language is indefinite because it does not have a meaning that can be clearly and definitely determined from the patent, and thus fails to put the public on notice of what is and is not covered by these claims. Claim 10 of the '102 Patent fails to satisfy the requirements of 35 U.S.C. § 112(2) due to the identified claim phrase being indefinite," but denies the veracity and merit of these allegations.

128.    The allegations in Paragraph 128 are legal conclusions to which no response is necessary. To the extent an Answer is required, these allegations are denied.

129.    Admitted that this is an exceptional case such that an award to Valjakka of its attorneys' fees and costs pursuant to 35 U.S.C. § 285 is justified.  Denied that Netflix is entitled to an award of attorneys' fees and costs.

## RESPONSE TO PRAYER FOR RELIEF

Valjakka denies that Netflix is entitled to judgment or any of the relief requested by the Counterclaims and prays for the following relief:

A.    That Netflix take nothing by reason of the counterclaims, and that the counterclaims action be dismissed with prejudice;

B.    That the Court enter judgment in favor of Valjakka and against Netflix, with respect to all causes of action in the counterclaims;

C.    That the Court award Valjakka his attorneys' fees and other costs reasonably

incurred in the defense of the counterclaims; and

D.    That the Court order such further relief for Valjakka as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Valjakka respectfully demands a jury trial as to all issues raised in Netflix's counterclaims which are triable to a jury in this action.

## AFFIRMATIVE DEFENSES

By characterizing these as "Affirmative Defenses," as Netflix does in its answer, Valjakka is not taking on any burden of proof beyond that which the law applies to him.  Thus, without admitting or implying that Valjakka bears the burden of proof as to any of them, Valjakka, on information and belief, asserts the following affirmative defenses:

### FIRST AFFIRMATIVE DEFENSE

130.    Each cause of action set forth in Netflix's Counterclaims fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

131.    Netflix's counterclaims are barred, in whole or in part, by the equitable defenses of estoppel, waiver, laches and/or unclean hands.

### THIRD AFFIRMATIVE DEFENSE

132.    Netflix has failed to make reasonable efforts to mitigate its damages, if any.

### FOURTH AFFIRMATIVE DEFENSE

133.    Netflix's claims are subject to a set off based upon Netflix's and/or other parties' acts and wrongdoing.

## FIFTH AFFIRMATIVE DEFENSE

134.    That if the Court holds that Valjakka did not have ownership of the '167 patent at the time this action was filed, Valjakka requests the Court reform the Utilization Agreement such that e-3 Systems transfers the rights to Sumo Biisi with reversion back to Lauri Valjakka, Juha Setala, and Pekka Pakarinen, according to the agreement.

## SIXTH AFFIRMATIVE DEFENSE

135.    Under Finnish common law, when Sumo Biisi abandoned the '685 application and Lauri Valjakka reinstated the rights, the title of the '685 application reverted to Lauri Valjakka.[3]

## SEVENTH AFFIRMATIVE DEFENSE

136.    Netflix has failed to allege a sufficient controversy concerning inventorship. Netflix has not sufficiently alleged that Mr. Karesniemi is an inventor of the '167 patent but only of having written parts of the patent application. Thus, Karesniemi's contribution was, at most, assisting in constructively reducing the invention to practice. This alone cannot constitute inventorship, otherwise patent attorneys and agents would be considered inventors on all patents.

## EIGTH AFFIRMATIVE DEFENSE

137.    Mr. Valjakka is the true original first inventor of the '167 patent.  However, if the Court holds otherwise, any misnaming of inventors was by mistake and without deceptive intent, and any putative inventor can be added pursuant to 35 U.S.C. § 285 without affecting this action.

---

[3] See Exhibit A, Expert Report of Professor Jarno Tapora.

**NINTH AFFIRMATIVE DEFENSE**

138.    Netflix at least has unclean hands in the filing of counterclaims that allege lack of standing and unclean hands by Valjakka when Netflix knows and has known that Valjakka owns the '167 patent. Mr. Valjakka is the true and rightful owner of the '167 patent due to ownership rights claimed under Finnish common law that arose after the'685 Application was abandoned by Soumen Biisi on July 9, 2010.  Netflix intentionally and maliciously left out this important fact from its pleadings. Netflix knew at the time of filing its counterclaims, and has known at least since the deposition of Mr. Valjakka, that Valjakka owns the '167 patent under Finnish law.

**RESERVATION OF RIGHTS & PRAYER FOR RELIEF**

139.    Valjakka reserves the right to assert any other legal or equitable defenses to which it is shown to be entitled, including all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States, and any other defenses that may now exist or in the future be available based on discovery or further factual investigation in this case.

**VALJAKKA'S COUNTERCLAIMS**

Valjakka hereby alleges, on knowledge as to its own actions and upon information and belief as to all other matters, as follows:

**PARTIES**

1.    Plaintiff is a citizen of Finland having an address located at Valtakatu 51, Vapaudenaukio Technopolis 2, 53100 Lappeenranta, Finland.

2.    On information and belief, Defendant is a Delaware corporation with a principal

address of 100 Winchester Cir., Los Gatos, CA 95032.

3.      On information and belief, Defendant directly and/or indirectly develops, designs, manufactures, distributes, markets, offers to sell and/or sells infringing products and services in the United States, including in the Northern District of California, and otherwise directs infringing activities to this District in connection with its products and services.

## JURISDICTION AND VENUE

4.      Subject to Valjakka's affirmative defenses and denials, Valjakka alleges that this Court has jurisdiction over the subject matter of these Counterclaims under, without limitation, 28 U.S.C. §§ 1331, 1338(a), 2201 *et seq*., and under the patent law of the United States, 35 U.S.C. § 1 *et seq*.

5.      This United States District Court for the Northern District of California has general and specific personal jurisdiction over Defendant because, directly or through intermediaries, Defendant has committed acts within the District giving rise to this action and are present in and transact and conduct business in and with residents of this District and the State of California.

6.      This Court has personal jurisdiction over Netflix for at least the reason that, in filing counterclaims of declaratory judgement of patent non-infringement in this case against Valjakka in the Northern District of California, Valjakka has submitted to the personal jurisdiction of this Court.

7.      To the extent that venue is proper for Netflix's claims, based solely on Netflix's filing of its counterclaims for declaratory judgement of patent non-infringement, invalidity, and the remaining counterclaims relating to ownership and inventorship, venue is also proper, for Valjakka's counterclaims under 28 U.S.C. §§ 1391 and 1400(b) for purposes of this action. Moreover, Netflix has consented to venue in this District at 1400(b) for purposes of this action.

Moreover, Valjakka has consented to venue in this District at least by bringing its counterclaims in this action in this District.

8.     In its First Counterclaim, Netflix has alleged that the '167 patent is unenforceable due to inequitable conduct at least because Mr. Valjakka knowingly and intentionally failed to disclose accurate inventorship.

9.     Although Valjakka denies there has been inequitable conduct, and asserts that Netflix's allegations fail to allege a sufficient case or controversy regarding inventorship, pursuant to 28 U.S.C. § 2201(a), Netflix has alleged an actual and justiciable controversy has arisen and exists between Mr. Valjakka and Netflix over inventorship of the '167 patent. Mr. Valjakka is entitled to a determination that he is the sole inventor of the '167 patent and that no inequitable conduct occurred on his part.

## FACTUAL BACKGROUND

10.     Mr. Valjakka has testified that he conceived the invention in or about 1998-1999. Both Mr. Pekka and Mr. Karesniemi agree that the conception of the invention was done solely by Mr. Valjakka.

11.     Indeed, by the time Mr. Karesniemi started work at e-3 Solutions, the initial Finnish patent application that is the priority filing for the '167 patent was already submitted.

12.     Both Mr. Pekka and Mr. Karesniemi were software coders.  A major part of their work responsibilities included writing code for various software related to the technology claimed in the '167 Patent.

13.     All the coding work that they did was pursuant to specific instructions and under the direction of Mr. Valjakka. In particular, Mr. Pekka assisted Mr. Valjakka in writing the original software code in 1999-2000.  After the original code was composed and upon Mr.

PLAINTIFF'S AM. ANSWER, DEFENSES AND COUNTERCLAIM – CASE NO. 4:22-CV-01490-JST

Pekka's departure from e-3 Solutions, Mr. Karesniemi was asked to update the software to add the well-known TCP-IP communications protocol that was becoming prevalent in the industry.

14.     At the time Mr. Valjakka had already conceived the invention, Pekka and Karesniemi were essentially tasked with the mechanics of putting that invention into code based on the guidance from Mr. Valjakka.

15.     Mr. Pekka and Mr. Karesniemi have also both assisted Mr. Valjakka to prepare revisions to the Finnish patent application.  Mr. Karesniemi has testified that he has provided comments and proposed changes to the language of the patent specification and has helped implement changes to the claim language, including modifying existing claim language and adding new claim language.

16.     Mr. Karesniemi has also testified that he was asked to review, analyze, and distinguish prior art technologies, including patents and publications, during the prosecution of the Finnish patent.

17.     Mr. Karesniemi was always working at Mr. Valjakka's direction and close supervision as his employee.  This includes making changes to the patent application and claims and analyzing prior art pursuant to Mr. Valjakka's instructions.

18.     Karesniemi's work that Netflix claims merits co-inventorship, while technical in nature, was focused on non-inventive aspects of the technology, such as adding a well-known protocol layer to existing code, wordsmithing the patent application, and reviewing and analyzing prior art patents and publications.

19.     At the time these Messrs. Pekka and Karesniemi made their contributions, Mr. Valjakka has already conceived and developed a workable invention.

20.     At the time of filing the '685 application, Mr. Valjakka believed that Karesniemi

was an inventor for original dependent claims 9 and 26.  At the time, Valjakka was confused about the difference between contributions of an inventor versus contributions from an employee.  Nevertheless, on January 24, 2011 Valjakka cancelled claims 9 and 26 and asked the USPTO to correct inventorship on May 23, 2013 by removing Karesniemi as a co-inventor, which the USPTO eventually did remove Karesniemi.

### COUNT 1 - DECLARATORY JUDGMENT
### (PATENT INVENTORSHIP)

21.      Valjakka incorporates and re-alleges all previous paragraphs in both Valjakka's counterclaims, and Defendant's First Amended Answer, ECF 116.

22.      Netflix has alleged in its counterclaims, based only upon testimony of Mr. Karesniemi, that Karesniemi was the inventor of significant limitations of at least claim 1 of the '167 patent.  Netflix admits in its counterclaims that Mr. Valjakka only acknowledged that Karesniemi helped to draft the claims that were eventually submitted in the application for EP01660145 and helped to revise the specification and claims of EP01660145.

23.      Netflix's only allegation of incorrect inventorship of the '167 patent is that by cancelling dependent claims 9 and 26, Mr. Valjakka "implicitly represented that Mr. Karesniemi's contributions to the subject patent application were limited to claims 9 and 26." This lack of evidence does not give rise to inventorship by Karesniemi.

24.      Mr. Karesniemi's contributions to the specification and claims of EP01660145 were made after the original Finnish application containing the invention was filed by Valjakka in Finland.

25.      Karesniemi at all relevant times worked under and for Valjakka.  Valjakka asked Karesniemi to work on the software code of the program for implementing an embodiment of the '167 patent.

PLAINTIFF'S AM. ANSWER, DEFENSES AND COUNTERCLAIM – CASE NO. 4:22-CV-01490-JST

26.     Valjakka also asked and directed Karesniemi as an employee to work on claim and specification drafting for aspects of Valjakka's invention.  These tasks were akin to a patent agent or attorney constructively reducing an invention to practice, which the courts have ruled clearly and consistently that this activity does not give rise to invention.  The Federal Circuit has held that to find otherwise, all patent attorneys and agents would be inventors on every patent they drafted.

27.     Mr. Karesniemi believes that his work drafting claims in a constructive reduction to practice for Valjakka gave rise to being an inventor, which as stated above, is false.

28.     Mr. Karesniemi did not participate in conception and reduction to practice of the invention of the '167 patent.

29.     Mr. Valjakka's request to the USPTO to correct inventorship 35 U.S.C. § 1.48(b) was submitted in good faith and without false representation of the facts that Karesniemi is not a co-inventor of the '167 patent.

30.     Valjakka therefore seeks a judicial declaration that he is the original and sole inventor of the invention disclosed and claimed in the '167 patent, and that no other person - including Mr. Karesniemi - conceived of or otherwise invented the subject matter described and claimed in the '167 patent or has any claim to inventorship of the '167 patent.

31.     Patent inventorship raises a substantial question of federal patent law.  The question of whether Mr. Valjakka is the original and sole inventor of the invention disclosed in the '167 patent cannot be resolved except by reference to federal patent law.

**IN THE ALTERNATIVE, MOTION TO CORRECT INVENTORSHIP**

32.     Valjakka incorporates and re-alleges all previous paragraphs in both Valjakka's counterclaims and Defendant's First Amended Answer, ECF 116.

PLAINTIFF'S AM. ANSWER, DEFENSES AND COUNTERCLAIM – CASE NO. 4:22-CV-01490-JST

33.     Valjakka respectfully requests an inventorship hearing under Title 35 U.S. §256 if the Court believes inventorship is incorrectly named on the '167 patent because any misnaming in inventorship is without deceptive intent.  Regardless, if, by mistake, inventorship is incorrect, the inventorship can be corrected and the lawsuit maintained without affecting the validity of the patent.

### IN THE ALTERNATIVE, MOTION TO REFORM THE DMTS AGREEMENT

34.     Valjakka incorporates and re-alleges all previous paragraphs in both Valjakka's counterclaims and Defendant's First Amended Answer, ECF 116.

35.     By operation of Finnish common law, Valjakka is the sole owner of the '167 patent.[4]  The expert report of Professor Jarno Tepora conclusively establishes that under the common law of Finland, Soumen Biisi abandoned the application that matured into the '167 patent and when Lauri Valjakka revived and the application, he became the rightful owner.

36.     Valjakka requests reformation of the DMTS Agreement to effect the intention of the parties, that the DMTS Agreement was entered into by e-3 Systems and Suomen Biisi when the assignment was made effective on November 16, 2005.  Valjakka requests the Court reform the DMTS Agreement to make e-3 Systems the assignor and the effective date no earlier than November 16, 2005.

### PRAYER FOR RELIEF

Valjakka respectfully requests the Court to enter an order:

a.     Declaring that Mr. Valjakka is the lawful inventor of U.S. Patent No. 8,495,167 and that no other person has any claim to inventorship of that patent;

---

[4] Exh. A, Expert Report of Professor Jarno Tapora.

b. Declaring that Mr. Valjakka is the lawful owner of U.S. Patent No. 8,495,167
and that no other person has any claim to ownership of that patent;

c. That the U.S. Patent No. 8,495,167 is valid and enforceable and no
inequitable conduct was committed by Valjakka in correcting inventorship;

d. Awarding such other relief as may be appropriate and just.


Dated: July 7, 2023                    Respectfully submitted,

RAMEY LLP

*/s/ Susan S.Q. Kalra*
Email: skalra@rameyfirm.com
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, TX 77006
Telephone: (800) 993-7499
Fax: (832) 900-4941


RAMEY, LLP

*/s/ William P. Ramey, III*
William P. Ramey, III (Admitted *pro hac vice*)
5020 Montrose Blvd., Suite 800
Houston, California 77006
Telephone: (713) 426-3923
Fax: (832) 689-9175
Email: wramey@rameyfirm.com

Attorneys for Plaintiff
LAURI VALJAKKA

PLAINTIFF'S AM. ANSWER, DEFENSES AND COUNTERCLAIM – CASE NO. 4:22-CV-01490-JST