# EXHIBIT A

*Translation from Finnish, page 1 of 6*

## STATEMENT

### 1. Assignment

Onni Hietalahti, Attorney-at-Law, from law office Asianajotoimisto Tamora Legal Oy has requested an expert opinion on pending legal proceedings in Texas, United States. The legal proceedings concern the acquisition of title to an abandoned patent application US10/208685/patent US 8.495,167 on the basis of appropriation under Finnish law.

### 2. Background

I have conducted negotiations with Onni Hietalahti, Attorney-at-Law, on the facts related to the case, and I have received a report on the case. I have also studied Finnish legal practice and legal literature and legislation on the matter. I have received the following documents as background material:

- Turku Court of Appeal, 23 March 2005, judgment No. 787
- Helsinki Court of Appeal, 24 March 2010, judgment No. 760

### 3. Point of law to be considered

The following question is presented in the request for a statement:

> *Can it be considered under Finnish law that my client (inventor) has acquired the title to an abandoned patent on the basis of appropriation?*

## 4. Legal consideration

### 4.1 Starting points

The statement focuses on the consideration of the question, based on the Finnish judicial system, from three viewpoints. These are: (i) appropriation as a method of acquisition of title and its preconditions, (ii) on the capability of being abandoned and taken over of an object, and (iii) the protection of the secundus who acquired the title by appropriation against the primus. On the basis of the overall consideration of these viewpoints, the question presented in the request for a statement will be answered in the final chapter on the basis of the facts presented.

### 4.2 Appropriation as a method of acquiring title, and its preconditions

Acquisitions of title can be divided into original acquisitions and acquisitions based on the change of ownership. Original acquisitions include appropriation (*occupatio*). *A new title* is created by virtue of the original acquisition.[1] By definition, appropriation refers to an acquisition based on taking over an unowned object *with the intention to own*, to the *actual power of disposal* of the one taking over.[2] Appropriation as a legal acquisition requires the will of the one taking over to become the owner of an object. We can therefore start from the premiss that the will to own exists, unless the circumstances prove that the one taking over has not wanted to acquire the title.[3]

Appropriation as an acquisition of title requires that the object was not owned by anyone else at the moment of appropriation; i.e. it is ownerless (*res nullius*). Appropriation usually comes to question when an object did not belong to anyone. However, it must be noted that also an abandoned object can be taken over by another person who can thus have the original acquisition. Therefore we must also pay attention to regulations on the abandonment (*derelictio*) of an object. According to traditional regulations pertaining to the law of property in the Finnish judicial system, an owner loses title to an object when he/she abandons it. In an individual case, the abandonment of an object is in practice assessed on the basis of external, objective constituent elements.[4] The abandonment of title can be defined as follows: Without transferring the title and possession of an object to anyone, the owner relinquishes an object and its ownership by abandoning the object to an ownerless state where it can be one-sidedly taken over or taken possession of by anyone. Abandonment does not require a clear indication of purpose; instead, it can take place by an implied act, for example, by leaving the object unattended.[5]

---

[1] See *Leena Kartio,* Esineoikeuden perusteet. Helsinki 2001 p. 216.

[2] See *Jarmo Tuomista,* Valtaus esineoikeudessa teoksessa Encyclopedia Iuridica Fennica I Varallisuus- ja yritysoikeus. Helsinki 1994 p. 962.

[3] See *R.A. Wrede – Ilmari Caselius,* Esineoikeuden pääpiirteet I. Helsinki 1946 p. 222.

[4] See *Erkki Havansi,* On the abandonment of title in the book Juhlajulkaisu Simo Zitting 1915 – 14/2 – 1985. Helsinki 1985 p. 71-72.

[5] See ibid. p. 72.

**4.3 On the object's capability of being abandoned and taken over**

Below I will consider the question of the types of objects that, on the one hand, can be abandoned and, on the other hand, can be taken over according to the Finnish judicial system. Answering these questions is of great significance to the case at hand.

Typically, we have our eye on actual tangible objects, when we consider the abandonment or taking over of the title to an object. This is due to the fact that these situations are the most common. In the Finnish legal practice we can look at the case of the schooner Koivisto at the bottom of the Gulf of Finland, in which case the person taking possession acquired the title to the unowned schooner, and the case KKO 1970 II 35, concerning an abandoned pile of chrome leather in a gravel pit. The acquiring party who bought the real property acquired title to the leather.

Today, ownership should be understood broadly. It also includes the extensive situations which are equivalent to ownership by their *function*, such as the title of a patent holder to a patent. Therefore, when referring to the subject of ownership, the word "object" must be understood in a broad sense. It is more natural to speak of an *object of property*. Objects of property can be divided as follows: (i) real objects, (ii) receivables, (iii) shares in corporations, and (iv) objects under the law of industrial property.[6] One can have the title to these objects of property, but one can also lose the title to these objects in various ways.

In principle, on the basis of the above, *abandonment* can also concern receivables (e.g. a receivable indicated on a promissory note), shares in a corporation (shares of stock, for example), and objects under the law of industrial property (patent application/patent, for example). On the other hand, in practice, these types of objects are less often abandoned, but there is no impediment to it, either, when a valueless or burdening object of property is abandoned to an ownerless state *(res nullius)*.

In Finnish legal literature, Professor *Erkki Havansi* has considered it legally possible to abandon a share in a corporation, such as a share of stock, and a receivable. Havansi has stated the following: "The existence of a transferable paper of value is not an essential prerequisite for a situation in which the owner of such a right (right to a share, right to a claim) can bring the right to an ownerless state by abandonment. In principle, there is no impediment to the dereliction of a share with no share certificate, or a right to a claim under an ordinary promissory note or an oral right to a claim.[7] In such a case, there is only the technical question of showing proof of the intent to abandon, and how the person taking over legitimates his or her right of disposition over third parties.

On the other hand, Professor *Ilmari Caselius* has said that an invention or patent, for example, can also be abandoned, and that "in principle, it is possible to take over other legal objects besides an object of substance, such as a trademark."[8]

The Finnish Patents Act (15 Dec 1967/550), section 44 (1), discusses a situation in which a patent has been *transferred* to another, and this shall be recorded in the Patent Register. Ordinarily, in such

---

[6] See on the object and analysis of title *Erkki Havansi*, Esinevakuusoikeudet. Helsinki 1992 p. 76-77.

[7] *Havansi*, On the abandonment of title in the book Juhlajulkaisu Simo Zitting 1915 – 14/2 – 1985. Suomalainen Lakimiesyhdistys. Helsinki 1985 p. 74-75.

[8] *Caselius*, Omistajankiinnityksestä Suomen oikeuden mukaan. Helsinki 1924 p. 205-206.

a case, the title to a patent is transferred on the basis of assignment: a sale, exchange or gift.[9] However, legislation as such does not prevent acquisition by appropriation, when the prerequisites for appropriation exist otherwise; in other words, a patent application has been rejected and the latest registered applicant has dismissed the application and neglected to pay maintenance fees.

Thus, according to the Finnish Patents Act and legal literature, other than real objects, such as a patent application, invention or patent, can be abandoned and taken over.

In a case of abandonment, the termination of the right of ownership to an object may take place in stages. What is generally essential is the owner's indication of the purpose to abandon, although this is by no means obligatory. Subsequent circumstances, legal facts, may reveal that an object of property has been abandoned and is ownerless. In the case of a patent application, abandonment is indicated by the abandonment of the application, and, as subsequent legal facts, by the fact that the patent application has been dismissed in various countries and the maintenance fees have been neglected. Together these legal facts indicate that the patent application has been left ownerless, without an owner, which enables taking over by appropriation.

As a summary, on the basis of the above, it can be concluded that a patent application/patent can be an object of abandonment and appropriation on the basis of the Finnish legal system and legal literature. Finnish patent legislation does not prevent this either.

## 4.4. The protection of a secundus who acquired title by appropriation against the primus

My intention is this chapter is to study briefly whether it is possible under Finnish legislation, in case of an abandonment/appropriation, to protect the ownership claim of a third party who has acquired the actual power of disposal to an object of property by appropriation in good faith (did not know and was not supposed to know) against an acquiring party in the primus position. In other words, how do you break down the protection of exchange of an acquiring party in the primus position in a retroactive third-party relation $Y - A - B$. The protection of exchange refers to the protection of the acquiring party ($Y$) in a primus position. From the viewpoint of the other party, secundus ($B$), the question of extinction and its prerequisites comes up. Both $Y$ and $B$ derive their rights from the same author, $A$. From the viewpoint of the secundus, this is a question of protection provided by good faith. In addition, it is required that the secundus is able to protect his legal status before the primus by an external act, such as tradition or registration (register entry).[10]

The above-described acquiring of protection by the secundus against the acquiring party in the primus position can also develop in the abandonment/appropriation situation. For example, such a situation is possible, if A, who has the latest holder entry in the patent register, has made an agreement on the assignment of a rejected patent claim to Y (acquiring party in the position of primus), who, however, has not been active about the patent application and has not paid the maintenance fees. A has since been declared bankrupt, and A still has the latest holder entry in the

---

[9] In other words, one needs to look out for derivative acquisition, where transfer takes place by a legal act from one person to another. See e.g. *Rainer Oesch – Heli Pihlajamaa,* Patenttioikeus. Keksintöjen suoja. Helsinki 2003 p. 125-126

[10] To examine the matter more closely see e.g. *Jarno Tepora,* Johdatus esineoikeuden perusteisiin. Helsinki 2008 p. 216-218.

patent register. The bankruptcy estate of A has in these circumstances dismissed the rejected patent application and has not paid the maintenance fees. On the basis of the above legal facts, it can be fairly considered that the rejected patent application, which has been dismissed and the maintenance fees not paid, is in an unowned state, and B, in the secundus position and in good faith, is entitled to consider the object of property abandoned, and therefore take possession (actual power of disposal) of it by appropriation.[11]

In the above-described manner, B (secundus) will acquire title to the rejected patent application by appropriation, and through it the right to apply for a patent. When B has acted in good faith at the time of the appropriation about a possible earlier assignment, B, who carried out the appropriation, will have protection provided by good faith against Y in the primus position, if and when B, who carried out the appropriation, applies for a patent first (before Y) on the basis of the patent application (also see the Patents Act, section 44.5). Good faith and a registration entry together provide the required protection.

## 4.5 Applied consideration as to the case at hand

According to the information I have received, a US patent application in the case at hand was filed on 30 July 2002. A Finnish limited company was entered as the latest holder concerning the invention in the patent register (both Finnish and US registers) before the takeover. The claimant in the case (inventor) has owned 37% of the stock in the company in question. The limited company was declared bankrupt in 2008, and no stipulations on the patent application were made in the bankruptcy. The trustee in bankruptcy has been passive in the matter. The patent applications concerning the invention have been dismissed and maintenance fees neglected in all countries. As proved by documents, the patent application has been in the "abandoned" state in the US patent register (USPTO).

In the light of the above legal facts (the patent application is registered as abandoned in the patent register, patent applications have been dismissed in all countries, and maintenance fees have been neglected), the claimant has had justified grounds to start from the assumption that the patent application at hand has been abandoned to an ownerless state, and he has taken possession of the object of property by appropriation. The person who carried out the appropriation also ascertained the existence of the said state by acquiring the written consent of two shareholders of the above-mentioned bankrupt limited company to the takeover of the patent, and he has verbally checked from the trustee in bankruptcy that the estate does not have any claims concerning the patent.

On the basis of the above, it can be established that according to the Finnish judicial system, in the case at hand (i) the patent application was undisputedly in an *abandoned* state and (ii) the abandoned patent application/patent was an object of property *capable of being taken over*, and (iii) the inventor (claimant) has taken the said object of property in his possession and actual power of disposal, and thus acquired *title* to the *patent* by appropriation through the granting of the patent application. The title is based on the original acquisition, which means a *new* title. The judgment of

---

[11] See protection against loss of title in *Erkki Havansi ,On the abandonment of title in the book* Juhlajulkaisu Simo Zitting 1915 – 14/2 – 1985. Helsinki 1985 p. 71-72.

*Translation from Finnish, page 6 of 6*

the Helsinki Court of Appeal of 24 March 2010 No. 760 does not have legal effect on the appropriation which took place after the judgment.

All this took place while the person who carried out the appropriation acted in good faith considering any previous acquiring parties of the object of property. Thus, he has also acquired extinction to any previous acquiring parties while acting in good faith at the time of the appropriation and when he acquired the patent granted in the register by recovery of the patent application before any other parties. According to information received by me, he and the assignees after the patent have subsequently defrayed all costs related to the granting and maintenance of the patent for the past 8 years.

Vantaa, 7 December 2021

*[signed]*

Jarno Tepora

Doctor of Laws

Professor in Civil Law

University of Helsinki

---

I hereby certify the above to be a true and correct translation of an electronic copy of the Finnish document, a printout of which (6 pages) I have stapled to the translation.

Lappeenranta, Finland, 9 December 2021

Minna Viskari,
Authorised Translator
(Act 1231/2007)

1

# LAUSUNTO

## 1. Toimeksianto

Asianajaja Onni Hietalahti Asianajotoimisto Tamora Legal Oy:stä on pyytänyt asiantuntijalausuntoa vireillä olevassa oikeudenkäyntimenettelyssä Texasin osavaltiossa Yhdysvalloissa, jossa on esillä kysymys valtauksen perusteella omistusoikeuden hankkimisesta hylättyyn patenttihakemukseen US10/208685/patenttiin US 8.495.167 Suomen lain mukaan.

## 2. Tausta-aineisto

Olen käynyt neuvottelun asianajaja Onni Hietalahden kanssa tapauksen fakta-aineistosta ja saanut siitä selvityksen sekä perehtynyt suomalaiseen oikeuskäytäntöön ja oikeuskirjallisuuteen sekä lainsäädäntöön asiassa. Tausta-aineistona olen saanut seuraavat asiakirjat:

- Turun HO 23.3.2005 tuomio nro 787
- Helsingin HO tuomio 24.3.2010 nro 760

## 3. Tarkasteltava oikeuskysymys

Lausuntopyynnössä esitetään vastattavaksi seuraava kysymys:

*Voidaanko päämieheni (keksijä) katsoa Suomen lain mukaan hankkineen valtauksen perusteella omistusoikeuden hylättyyn patenttiin?*



## 4. Oikeudellinen tarkastelu

### 4.1 Lähtökohtia

Lausunnossa keskitytään tarkastelemaan Suomen oikeusjärjestyksen perusteella annettua kysymystä kolmen näkökulman perusteella. Näitä ovat: (i) valtaus omistusoikeuden saantomuotona ja sen edellytykset, (ii) kohteen hylkäämis- ja valtauskelpoisuudesta ja (iii) valtauksella omistusoikeuden hankkineen sekunduksen suoja primusta kohtaan. Näiden näkökulmien kokonaistarkastelun perusteella vastataan lausuntopyynnössä esitettyyn kysymykseen lopuksi omassa luvussaan tapauksesta esitettyjen faktojen perusteella eli tapaukseen soveltava osio.

### 4.2 Valtaus omistusoikeuden saantomuotona ja sen edellytykset

Omistusoikeussaannot voidaan jakaa alkuperäisiin saantoihin ja omistajanvaihdossaantoihin. Alkuperäisiin saantoihin luetaan valtaus (*okkupaatio*). Alkuperäisen saannon nojalla syntyy *uusi omistusoikeus*.[1] Määritelmällisesti valtauksella tarkoitetaan saantoa, joka perustuu omistajaa vailla olevan objektin ottamiseen *omistamistarkoituksessa* valtaajan *tosiasialliseen määräämisvaltaan*.[2] Valtaus laillisena saantona edellyttää valtaajan tahtoa tulla objektin omistajaksi. Voidaan lähteä siitä, että omistamistahdon oletetaan olevan olemassa, ellei olosuhteista ilmene, ettei valtaaja ole halunnut saada omistusoikeutta.[3]

Valtaus omistusoikeuden saantona edellyttää, ettei sen kohde valtauksen tapahtuessa ole kenenkään toisen henkilön oma; ts. se on isännätön (*res nullius*). Yleensä valtaus tulee kysymykseen silloin, kun objekti ei ole kuulunut kenellekään. Kuitenkin on huomattava, että myös hylätyn kohteen voi toinen vallata ja siten saada siihen alkuperäisen saannon. Tämän vuoksi on kiinnitettävä huomiota myös kohteen hylkäämistä (*dereliktiota*) koskevaan sääntelyyn. Perinteisten Suomen oikeusjärjestyksessä vallinneiden esineoikeudellisten sääntöjen mukaan omistaja menettää omistusoikeuden kohteeseen hylätessään sen. Objektin hylkääminen yksittäistapauksessa tulee käytännössä arvioitavaksi ulkonaisten objektiivisten tunnusmerkkien perusteella.[4] Omistuksenhyläntä voidaan jäsentää seuraavalla tavalla: Objektin omistusta ja hallintaa kenellekään siirtämättä omistaja luopuu kohteestaan ja sen omistamisesta hylkäämällä objektin isännättömään tilaan, missä se on kenen tahansa yksipuolisesti vallattavissa eli otettavissa omaksi. Hylkääminen ei edellytä nimenomaista tahdonilmaisua, vaan voi tapahtua myös konkludenttisin toimin, kuten jättämällä objekti oman onnensa nojaan.[5]

---

[1] Ks. *Leena Kartio*, Esineoikeuden perusteet. Helsinki 2001 s. 216.

[2] Ks. *Jarmo Tuomisto*, Valtaus esineoikeudessa teoksessa Encyclopedia Iuridica Fennica I Varallisuus- ja yritysoikeus. Helsinki 1994 s. 962.

[3] Ks. *R.A.Wrede – Ilmari Caselius*, Esineoikeuden pääpiirteet I. Helsinki 1946 s. 222.

[4] Ks. *Erkki Havansi*, Omistusoikeuden hylännästä teoksessa Juhlajulkaisu Simo Zitting 1915 – 14/2 – 1985. Helsinki 1985 s. 71-72.

[5] Ks. emt. s. 72.

## 4.3 Kohteen hylkäämis- ja valtauskelpoisuudesta

Seuraavassa siirrytään tarkastelemaan kysymystä siitä, millainen kohde voi olla yhtäältä hylkäämisen kohteena ja toisaalta valtauksen kohteena Suomen oikeusjärjestyksen mukaan. Näihin vastaamisella on erinomaisen suuri merkitys tarkasteltavan tapauksen kannalta.

Yleensä pidetään silmällä varsinaisia irtaimia esineitä, kun tarkastellaan kohteen omistusoikeuden hylkäämistä tai valtausta. Tämä on seurausta siitä, että näitä tilanteita esiintyy käytännössä eniten. Suomalaisesta oikeuskäytännöstä mainittakoon Koivisto -nimisen kuunarin tapaus Suomenlahden pohjasta, missä tapauksessa haltuunottaja sai isännättömään kuunariin omistusoikeuden ja KKO 1970 II 35, joka koski sorakuopassa ollutta hylättyä krominahkajätekasaa, johon omistusoikeuden sai kiinteistön ostanut luovutuksensaaja.

Omistusoikeus on ymmärrettävä nykyaikana laajasti. Se sisältää myös ne laaja-alaiset varallisuusvalta-asemat, jotka *funktioltaan* vastaavat omistajuutta, esimerkiksi patentinhaltijan omistusoikeus patenttiin. Tämän vuoksi sana "esine" tulee ymmärtää omistusoikeuden kohteesta puhuttaessa laajassa merkityksessä, jolloin on luontevampaa puhua *varallisuusobjektista*. Varallisuusobjektit voidaan jäsentää seuraavasti (i) reaaliesineet, (ii) saatavat, (iii) yhteisöosuudet ja (iv) immateriaalioikeudelliset objektit.[6] Omistusoikeus voi kohdistua näihin varallisuusobjekteihin, kuin myös omistusoikeus voidaan eri tavoin menettää näihin objekteihin.

Periaatteellista estettä ei edellä esitetyn perusteella ole myöskään sille, että *hylkääminen* voi kohdistua myös saatavaan (esim. velkakirjan osoittamaan saatavaan), yhteisöosuuteen (esimerkiksi osakkeeseen) ja immateriaalioikeudelliseen objektiin (esimerkiksi patenttihakemukseen/patenttiin). Toinen asia on, että käytännössä näiden kohteiden osalta hylkääminen tulee harvemmin kysymykseen, mutta estettä ei sille ole myöskään käytännössä, kun esimerkiksi arvottomaksi tai raskaaksi taakaksi koettu varallisuusobjekti hylätään isännättömään tilaan (*res nullius*).

Suomalaisessa oikeuskirjallisuudessa professori *Erkki Havansi* on pitänyt oikeudellisesti mahdollisena, että hylkäämisen kohteena voi olla muun muassa yhtiöosuus, kuten osake, ja saatava. Havansi on todennut asiasta seuraavasti: " Arvopaperin olemassaolo ei ole mikään välttämätön edellytys sille, että kyseistä tyyppiä olevan oikeuden (osakeoikeus, saamisoikeus) omistaja voi hylännällä saattaa kyseisen oikeuden omistajattomaan tilaan. Periaate-estettä ei ole sille, että dereliktio kohdistuu osakekirjattomaan osakkeeseen taikka tavallisen velkakirjan mukaiseen tai suulliseen saamisoikeuteen."[7] Tällaisessa tapauksessa on vain tekninen näyttökysymys, kuinka hylkäämistahto ilmenee ja kuinka valtauksen suorittanut legitimoi määräämisvaltansa kolmansiin nähden.

Professori *Ilmari Caselius* on vastaavasti katsonut, että hylkääminen voi kohdistua myös esimerkiksi keksintöön tai patenttiin ja "vallata voi periaatteellisesti jonkun muunkin oikeusobjektin kuin substanssiesineen, esim. tavaramerkin".[8]

Patenttilain (15.12.1967/550) 44 §:n 1 momentissa tarkastellaan tilannetta, jossa patentti on *siirtynyt* toiselle, jolloin siitä on tehtävä merkintä patenttirekisteriin. Normaalisti tällöin tarkastellaan

---

[6] Ks. omistusoikeuden kohteesta ja jäsennyksestä *Erkki Havansi*, Esinevakuusoikeudet. Helsinki 1992 s. 76-77.
[7] *Havansi*, Omistusoikeuden hylännästä teoksessa Juhlajulkaisu Simo Zitting 1915 – 14/2 – 1985. Suomalainen Lakimiesyhdistys. Helsinki 1985 s. 74-75.
[8] *Caselius*, Omistajankiinnityksestä Suomen oikeuden mukaan. Helsinki 1924 s. 205-206.

4

omistusoikeuden siirtymistä patenttiin toiselle luovutussaannolla: kauppa, vaihto tai lahja.[9] Lainsäädäntö ei kuitenkaan itsessään aseta estettä valtaussaannolle silloin, kun valtauksen edellytykset ovat muutoin olemassa; ts. patenttihakemus on hylätty ja viimeksi rekisteriin merkitty patentinhakija on jättänyt hakemuksen sillensä ja laiminlyönyt ylläpitomaksut.

Hylkäämisen ja valtauksen kohteena voi siten sekä patenttilain estämättä että oikeuskirjallisuutemme mukaan olla muukin kuin reaaliesine, kuten esimerkiksi patenttihakemus, keksintö tai patentti.

Omistuksen lakkaaminen kohteeseen saattaa hylkäämisessä muodostua vaiheittaiseksi tapahtumasarjaksi. Olennaista on yleensä omistajan hylkäämistahdonilmaisu, vaikkakaan ei suinkaan välttämätön. Myöhemmistä olosuhteista, oikeustosiseikoista, voi ilmetä, että varallisuusobjekti on hylätty omistajattomaan tilaan. Patenttihakemuksen kohdalla hylkäämistä osoittaa patenttihakemuksen hylkääminen ja sen jälkeisinä oikeustosiseikkoina, että patenttihakemus on jätetty sillensä eri maissa ja ylläpitomaksut on laiminlyöty. Nämä oikeustosiseikat yhdessä osoittavat, että patenttihakemus on jätetty isännättömäksi, omistajattomaan tilaan, mikä mahdollistaa omistajaksi oton valtauksella.

Tiivistetysti voidaan edellä esitetyn aineiston perusteella todeta, että patenttihakemus/patentti voi olla sekä hylkäämisen että valtauksen kohteena oikeusjärjestyksemme ja oikeuskirjallisuutemme perusteella. Myöskään patenttilainsäädäntömme ei aseta tässä suhteessa estettä.

### 4.4 Valtauksella omistusoikeuden hankkineen sekunduksen suoja primusta kohtaan

Tässä luvussa on tarkoitus lyhyesti selvittää, onko Suomen lainsäädännön mukaan mahdollista, että hylkäämis-/valtaamistapauksessa vilpittömässä mielessä (ei tiennyt eikä pitänyt tietää) varallisuusobjektiin valtauksella tosiasiallisen määräämisvallan hankkineen sivullisen omistusvaadetta suojataan häneen nähden primuksen asemassa olevaa luovutuksensaajaa kohtaan. Toisin sanoen miten murretaan primuksen asemassa olevan luovutuksensaajan vaihdantasuoja takautuvassa sivullissuhteessa Y – A – B. Vaihdantasuojalla tarkoitetaan primuksen asemassa olevan luovutuksensaajan (Y) suojaa. Toisen osapuolen eli sekunduksen (B) kannalta katsottuna tulee esille kysymys ekstinktiosta ja sen edellytyksistä. Kummatkin sekä Y että B johtavat oikeutensa samalta auktorilta A:lta. Sekunduksen näkökulmasta katsottuna kyse on vilpittömän mielen suojasta, minkä lisäksi edellytetään, että sekundus saa turvattua oikeusasemansa ennen primusta jollakin ulkoisella aktilla, kuten traditiolla tai kirjaamisella (rekisterimerkinnällä).[10]

Hylkäämis-/valtaustilanteessa voi myös syntyä edellä kuvatun kaltainen sekunduksen suojan saanti primuksen asemassa olevaa luovutuksensaajaa kohtaan. Tällainen tilanne voi syntyä esimerkiksi silloin, jos A, jolla on viimeisin patenttirekisterin haltijamerkintä, on tehnyt luovutussopimuksen hylätystä patenttihakemuksesta Y:lle (primuksen asemassa oleva luovutuksensaaja), joka ei ole kuitenkaan aktiivisesti toiminut patenttihakemuksen suhteen eikä ole suorittanut ylläpitomaksuja. A on sittemmin asetettu konkurssiin ja viimeisin patenttirekisterin haltijamerkintä on yhä A:lla. A:n konkurssipesä on näissä olosuhteissa jättänyt hylätyn patenttihakemuksen sillensä eikä ole

9 Toisin sanoen pidetään silmällä derivatiivista saantoa, jossa siirto tapahtuu oikeustoimella toiselta toiselle henkilölle. Ks. mm Rainer Oesch – Heli Pihlajamaa, Patenttioikeus. Keksintöjen suoja. Helsinki 2003 s. 125-126
10 Aiheesta lähemmin ks. mm. Jarno Tepora, Johdatus esineoikeuden perusteisiin. Helsinki 2008 s. 216-218.

myöskään suorittanut ylläpitomaksuja. Edellä mainittujen oikeustosiseikkojen perusteella voidaan perustellusti katsoa, että hylätty patenttihakemus, joka on jätetty sillensä ja ylläpitomaksut suorittamatta, on omistajattomassa tilassa, jolloin sekunduksen asemassa oleva vilpittömässä mielessä oleva B on oikeutettu pitämään varallisuusobjektia hylättynä ja siksi valtaamaan sen nyt hallinnan (tosiasiallisen määräämisvallan) otolla itselleen.[11]

Edellä kuvatulla tavalla B (sekundus) saa valtauksen perusteella omistusoikeuden hylättyyn patenttihakemukseen ja sen kautta oikeuden hakea patenttia. Kun B on ollut vilpittömässä mielessä valtauksen tapahtuessa mahdollisesta aiemmasta luovutuksesta, saa valtauksen suorittanut B vilpittömän mielen suojaa primuksen asemassa olevaa Y:tä kohtaan, jos ja kun valtauksen suorittanut B hakee ensin (ennen Y:tä) patenttihakemuksen perusteella patenttia (vrt. myös PatL 44.5 §). Vilpitön mieli ja rekisterimerkintä yhdessä antavat tarvittavan suojan.

## 4.5 Soveltava tarkastelu nyt vireillä olevan tapauksen kannalta

Saamani selvityksen perusteella tarkasteltavassa tapauksessa US patenttihakemus on tehty 30.7.2002. Keksintöä koskeva viimeisin patenttirekisterin (sekä Suomen että US-rekistereissä) haltijamerkintä ennen haltuunottoa on ollut suomalaisella osakeyhtiöllä. Asiassa kantajana oleva henkilö (keksijä) on omistanut kyseisen yhtiön osakekannasta 37 %. Osakeyhtiö on haettu konkurssiin vuonna 2008 eikä patenttihakemuksesta ole konkurssissa määrätty. Konkurssipesän hoitaja on ollut asiassa passiivinen. Keksintöä koskevat patenttihakemukset on kaikissa maissa jätetty sillensä ja ylläpitomaksut on laiminlyöty. Patenttihakemus on ollut dokumentoidusti US-patenttirekisterissä (USPTO) tilassa "abandoned" eli hylätty.

Edellä kuvattujen oikeustosiseikkojen ilmetessä (eli patenttihakemus on patenttirekisterissä hylätyssä tilassa, patenttihakemukset on kaikissa maissa jätetty sillensä ja ylläpitomaksut on laiminlyöty) kantajana oleva henkilö on voinut perustellusti lähteä siitä, että tarkasteltava patenttihakemus on hylätty isännöttömään tilaan ja ottanut varallisuusobjektin omaksi valtauksella. Asianomainen valtauksen suorittanut henkilö on vielä varmistanut sanotun tilan olemassaolon sillä, että hän on saanut em. konkurssiin menneen osakeyhtiön kahdelta osakkaalta kirjalliset suostumukset patentin haltuunottoon ja varmistanut suullisesti konkurssipesän pesänhoitajalta, ettei pesällä ole vaatimuksia patenttiin.

Edellä esitetyn perusteella voidaan Suomen oikeusjärjestyksen mukaan todeta, että tarkasteltavassa tapauksessa (i) patenttihakemus on ollut riidattomasti *hylätyssä* tilassa ja (ii) kyseinen hylätty patenttihakemus/patentti on ollut *valtauskelpoinen* varallisuusobjekti sekä (iii) keksijä (kantajana oleva henkilö) on ottanut sanotun varallisuusobjektin omakseen tosiasialliseen määräämisvaltaan ja saanut siten valtaussaannolla *omistusoikeuden* patenttihakemuksen myöntämisen kautta *patenttiin*. Omistusoikeus perustuu alkuperäiseen saantoon, mikä merkitsee *uutta* omistusoikeutta. Helsingin hovioikeuden tuomiolla 24.3.2010 nro 760 ei ole oikeusvaikutusta tuomion jälkeen tapahtuneeseen valtaukseen.

Tämä kaikki on tapahtunut valtauksen toimittajan ollessa vilpittömässä mielessä mahdollisiin aiempiin varallisuusobjektin luovutuksensaajiin nähden. Siten hän on saanut myös ekstinktion

---

[11] Ks. saantosuojan saannin osalta vastaavasti *Erkki Havansi*, Omistusoikeuden hylännästä teoksessa Juhlajulkaisu Simo Zitting 1915 – 14/2 – 1985. Helsinki 1985 s. 71-72.

6

mahdollisiin aiempiin luovutuksensaajiin ollessaan vilpittömässä mielessä valtauksen tapahtuessa ja saadessaan patenttihakemuksen elvyttämisellä patentin myönnettynä rekisteriin ennen mahdollisia muita. Tämän jälkeen hän ja patentin jälkeiset siirronsaajat ovat saamani selvityksen mukaan vastanneet kaikista patentin myöntämiseen ja ylläpitoon liittyneistä kuluista viimeisten 8 vuoden ajan.

Vantaalla 7.12.2021

Jarno Tepora

oikeustieteen tohtori

siviilioikeuden professori

Helsingin yliopisto

