Rachael D. Lamkin (SBN 246066)
Karan Singh Dhadialla (SBN 296313)
BAKER BOTTS L.L.P.
101 California Street, Suite 3200
San Francisco, California 94111
Phone: (415) 291-6200
Fax: (415) 291-6300
rachael.lamkin@bakerbotts.com
karan.dhadialla@bakerbotts.com

*Attorneys For Defendant NETFLIX, INC.*

(*Additional counsel listed in signature block*)

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| LAURI VALJAKKA<br><br>        Plaintiff,<br><br>   v.<br><br>NETFLIX, INC.<br><br>        Defendant. | Case No.: 4:22-cv-01490-JST<br><br>**DEFENDANT NETFLIX, INC.'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**REDACTED VERSION**<br><br>Date:     October 19, 2023<br>Time:    2:00 p.m.<br>Crtrm:  6, 2nd Floor<br>Judge:  Hon. Jon S. Tigar |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on October 19, 2023 at 2:00 p.m., or before or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable Jon S. Tigar, 1301 Clay Street, Oakland, California 94612, Defendant Netflix, Inc. ("Netflix") will and hereby does move the Court for an order granting Netflix's Motion for Preliminary Injunction. Netflix's Motion is based on this Notice of Motion, the Motion, the memorandum of points and authorities and declarations in support filed herewith, documents sealed concurrently herewith, the proposed order filed herewith, any additional pleadings and papers on file in this matter and any arguments that may be presented at the hearing.

## STATEMENT OF RELIEF REQUESTED

Netflix seeks an order restraining and enjoining Defendant Lauri Valjakka, pending trial, from using, moving, concealing, transferring, or otherwise disposing of any licensing or settlement asset in his possession, custody, or control.

Dated:    August 21, 2023                    Baker Botts L.L.P.


By: */s/ Rachael D. Lamkin*
    Rachael D. Lamkin (SBN 246066)
    Karan Singh Dhadialla (SBN 296313)
    BAKER BOTTS L.L.P.
    101 California Street, Suite 3200
    San Francisco, CA 94111
    Tel: (415) 291-6200
    Fax: (415) 291-6300
    rachael.lamkin@bakerbotts.com
    karan.dhadialla@bakerbotts.com

i

Notice Of Motion and Motion for Preliminary Injunction;
Memorandum of Points and Authorities                    Case No.: 4:22-Cv-01490-JST

Sarah E. Piepmeier, Bar No. 227094
SPiepmeier@perkinscoie.com
Elise S. Edlin, Bar No. 293756
EEdlin@perkinscoie.com
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, California 94105
Telephone: +1.415.344.7000
Facsimile: +1.415.344.7050

Janice L. Ta (appearance pro hac vice)
JTa@perkinscoie.com
PERKINS COIE LLP
405 Colorado Street Suite 1700
Austin, Texas 78701
Telephone: +1.737.256.6100
Facsimile: +1.737.256.6300

Jassiem N. Moore (appearance pro hac vice)
JassiemMoore@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000

Brianna Kadjo, Bar No. 303336
BKadjo@perkinscoie.com
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, Colorado 80202-5255
Telephone: +1.303.291.2300
Facsimile: +1.303.291.2400

*Attorneys for Defendant NETFLIX, INC.*

ii

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION;
MEMORANDUM OF POINTS AND AUTHORITIES                    CASE NO.: 4:22-CV-01490-JST

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................................1

II.   MATERIAL BACKGROUND.....................................................................................2

A.    Valjakka Secretly Transferred Assets After He Filed Suit ........................................2

B.    Valjakka Commited Settlement Fraud and Violates the Court's Rules to Avoid
      Disclosing CDN ..........................................................................................................4

C.    Netflix Has the Right to An Injunction Until the Merits of Its Section 285 Claim Can
      Be Heard ......................................................................................................................6

III.  LEGAL STANDARD...................................................................................................7

IV.   ARGUMENT ................................................................................................................7

A.    Netflix Is A CUVTA Creditor ....................................................................................7

B.    Netflix Is Entitled To A Preliminary Injunction Protecting The Enforcement Assets
      Pending Determination Of Netflix's Section 285 Remedy..........................................8

      1.    Netflix Is Likely To Prevail On The Merits Of Its CUVTA Claim........................8

            (a)    Valjakka's Insider Transaction Evidences His Fraudulent Intent..............9

            (b)    Valjakka's Retention of Control Evidences His Fraudulent Intent ............9

            (c)    Valjakka's Extensive Efforts to Conceal CDN Evidences His
                   Fraudulent Intent........................................................................................9

            (d)    Valjakka's Removal and Concealment of The Enforcement Assets
                   Evidences His Fraudulent Intent...............................................................11

            (e)    The Low Cost of The CDN Licenses Versus The Value of The
                   Enforcement Assets Evidences Valjakka's Fraudulent Intent ..................11

            (f)    Valjakka &/or CDN &/or IPRA's Likely Insolvency Evidences
                   Valjakka's Fraudulent Intent....................................................................12

            (g)    The Fact That Valjakka Transferred Rights & Enforcement Assets To
                   CDN Shortly After He Filed His First Lawsuits Evidence Valjakka's
                   Fraudulent Intent ......................................................................................12

            (h)    Additional Badges May Implicate His Fraudulent Intent .........................13

            (i)    Valjakka Transferred the Assets And Kept the Liabilities, Further
                   Evidencing His Fraudulent Intent .............................................................13

            (j)    There Exists Considerable Further Evidence of Valjakka's Fraudulent
                   Intent ........................................................................................................14

      2.    Netflix Is Likely to Suffer Irreparable Harm .........................................................14

iii

3.    The Equities Balance in Favor of Granting a Preliminary Injunction ...................15

4.    The Public Interest Is Neutral Unto Favoring Injunction .......................................15

5.    No Bond Is Required ..............................................................................................15

V.    CONCLUSION.............................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alliance for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) ........................................................................7

*Bernhardt v. L.A. County*,
    339 F.3d 920 (9th Cir. 2003) ........................................................................15

*Carter v. Amgen, Inc.*,
    682 F. App'x 620 (9th Cir. 2017) .................................................................12

*DZ Bank AG Deutsche Zentral-Genossenschaftsbank v. Meyer*,
    869 F.3d 839 (9th Cir. 2017) ..........................................................................6

*ESCAPEX IP LLC, v. GOOGLE LLC*,
    No. 22-cv-08711-VC, 2023 WL 5257691 (N.D. Cal. Aug. 16, 2023) ...................12

*Flynt Distrib. Co. v. Harvey*,
    734 F.2d 1389 (9th Cir. 1984) ........................................................................7

*Hennessey's Tavern, Inc. v. Am. Air Filter Co.*,
    204 Cal. App. 3d 1351 (1988) ........................................................................7

*In re Acequia, Inc.*,
    34 F.3d 800 (9th Cir. 1994) ..........................................................................13

*In re Beverly*,
    374 B.R. 221 (B.A.P. 9th Cir. 2007).................................................................8

*In re Medina*,
    No. 20-60045, 2021 WL 3214757 (9th Cir. July 29, 2021)...............................14

*Johnson v. Couturier*,
    572 F.3d 1067 (9th Cir. 2009) ...................................................................7, 16

*Kremen v. Cohen*,
    No. 5:11-CV-05411-LHK, 2011 WL 6113198 (N.D. Cal. Dec. 7, 2011) ...............16

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
    571 F.3d 873 (9th Cir. 2009) ........................................................................7

*Martin v. Int'l Olympic Committee*,
    740 F.2d 670 (9th Cir. 1984) ........................................................................7

v

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION;
MEMORANDUM OF POINTS AND AUTHORITIES                    CASE NO.: 4:22-CV-01490-JST

*NetSoc, LLC v. Chegg Inc.*,
    No. 18-CV-10262 (RA), 2020 WL 7264162 (S.D.N.Y. Dec. 10, 2020) ................................13

*Stormans, Inc. v. Selecky*,
    586 F.3d 1109 (9th Cir. 2009) .................................................................................................15

*Traxcell Techs., LLC v. Huawei Techs. USA, Inc.*,
    No. 2:17-CV-42-RWS-RSP, 2023 WL 2625948 (E.D. Tex. Mar. 24, 2023).........................13

*Valjakka v. Akamai Technologies, Inc.*,
    No. 6:21-cv-00942-ADA (W.D. Tex. Sept. 10, 2021) ........................................................2, 3

*Valjakka v. Amazon.Com, Inc. et al*,
    No. 6:21-cv-00945-ADA (W.D. Tex., Sept. 10, 2021) ...........................................................2

*Valjakka v. Apple Inc.*,
    No. 6:22-cv-00003-ADA (W.D. Tex. Jan. 3, 2022) ...........................................................2, 5

*Valjakka v. Charter Communications Inc.*,
    No. 6:22-cv-00491-ADA (W.D. Tex. May 13, 2022) ..............................................................2

*Valjakka v. Cisco Sys., Inc.*,
    No. 6:21-cv-00944-ADA (W.D. Tex. Sept. 10, 2021) ........................................................2, 3

*Valjakka v. Comcast Corp.*,
    No. 6:22-cv-00493-ADA (W.D. Tex. May 13, 2022) ..............................................................2

*Valjakka v. Cox Communications Inc. et al*,
    No. 6:22-cv-00497-ADA (W.D. Tex. May 16, 2022) ..............................................................2

*Valjakka v. Google LLC*,
    No. 6:22-cv-00004-ADA (W.D. Tex. Jan. 3, 2022) ...........................................................2, 5

*Valjakka v. Intertrust Technologies Corp.*,
    No. 6:22-cv-00234-ADA (W.D. Tex. Mar. 3, 2022) ...............................................................2

*Valjakka v. Meta Platforms Inc.*,
    No. 6:22-cv-00495-ADA (W.D. Tex. May 13, 2022) ..............................................................2

*Valjakka v. Microsoft Corp.*,
    No. 6:21-cv-01006-ADA (W.D. Tex. Sept. 29, 2021) ........................................................2, 3

*Valjakka v. Netflix, Inc.*,
    No. 6:21-cv-00947-ADA (W.D. Tex. Sept. 13, 2021) .............................................................2

*Valjakka v. Philips North America LLC*,
    No. 6:22-cv-00226-ADA (W.D. Tex. Mar. 2, 2022) ...............................................................2

*Valjakka v. Sony Interactive Ent. Inc.*,
    No. 6:22-cv-00005-ADA (W.D. Tex. Jan. 3, 2022) ...........................................................2, 5

vi

*Valjakka v. Zoom Video Communications Inc.*,
  No. 6:22-cv-00496-ADA (W.D. Tex. May 13, 2022) .................................................................2

*Virtue Glob. Holdings Ltd. v. Rearden LLC*,
  No. 15-cv-00797-JST, 2016 WL 9045855 (N.D. Cal. June 17, 2016) ........................... *passim*

*Wimbledon Fund, SPC Class TT v. Graybox, LLC*,
  648 F. App'x 701 (9th Cir. 2016) ...............................................................................6, 7, 13

*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) .......................................................................................................7, 8, 15

*WPEM, LLC v. SOTI Inc.*,
  No. 2:18-CV-00156-JRG, 2020 WL 555545 (E.D. Tex. Feb. 4, 2020) ..................................13

*ZT IP, LLC v. VMware, Inc.*,
  Civil Action No. 3:22-CV-0970-X, 2023 WL 1785769 (N.D. Tex. Feb. 6, 2023) ........... 12-13

STATUTES

35 U.S.C. § 285..........................................................................................................6, 7, 8, 12, 14

Cal. Civ. Code § 3439 *et. seq.*............................................................................................ *passim*

Cal. Civ. Code, § 3430.........................................................................................................................7

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

In September 2021 Plaintiff Lauri Valjakka ("Valjakka") sued Defendant Netflix, Inc. ("Netflix"), among other companies, alleging patent infringement. Less than two months later, Valjakka began secretly moving assets material to this litigation. In an insider transaction, Valjakka transferred material rights to the patents asserted herein ("Asserted Patents") to CDN Licensing ("CDN"), a Finnish entity that Valjakka owns. Valjakka, intentionally and in violation of his duty to disclose, kept this transfer secret and it remained concealed until just recently, *i.e.*, spanning two (2) years and sixteen (16) litigations.

In the CDN license agreements, Valjakka gave CDN the sole rights to any damages, litigation, or licensing revenue ("Enforcement Assets"). But in that tellingly circular transaction, the express beneficiaries of the CDN licenses are Valjakka and a company he owns, IPRA Technologies.  In other words, in a series of secret and consistently concealed transactions, Valjakka moved material rights to the Asserted Patents and the Enforcement Assets from himself in his personal capacity to a Finnish Company outside the reach of this Court, *i.e.*, back to himself, now shielded as owner of the unreachable foreign entity.  Indeed, the express purpose of the CDN licenses is to protect the Asserted Patents, Valjakka, and IPRA from ███████████████.

Valjakka has concealed CDN and his transfer of rights, assets, and authority to CDN since CDN's inception, *i.e.,* for two (2) years. In this litigation, Netflix propounded discovery that asked Valjakka to disclose all parties with an interest in the Asserted Patents. Valjakka did not disclose CDN. This Court's Local Rules mandate that Valjakka disclose "any" party with "any interest" in the Asserted Patents. LR 3-15. Valjakka did not disclose CDN. The settlement agreements between Valjakka and fourteen (14) defendants make no mention of the only entity-licensor with the express authority to grant settlement licenses. Valjakka did not disclose CDN. Throughout the pendency of this litigation, Valjakka successfully concealed CDN such that Netflix had no knowledge that Valjakka had very limited rights to the Asserted Patents and no rights to the Enforcement Assets.

1   Netflix has asserted a claim for attorneys' fees against Valjakka. The California Uniform

2   Voidable Transactions Act expressly prevents Valjakka from moving assets to avoid contingent

3   debtors. *See* Cal. Civ. Code § 3439 *et. seq*. Netflix has just learned that Valjakka is attempting to

4   insulate himself from Netflix's contingent claim. And, Netflix has just learned that IPRA

5   Technologies, the secret beneficiary of the Enforcement Assets—along with Valjakka—is on the eve

6   of bankruptcy. Indeed, facts suggest that CDN itself may be near bankruptcy. Netflix does not know

7   whether Valjakka has yet transferred the Enforcement Assets to CDN, or whether the Enforcement

8   Assets are on the verge of being employed to resolve IPRA Technologies' (Valjakka's) or CDN's

9   (Valjakka's) bankruptcy debts. As such, Netflix asks this Court to enjoin Valjakka from any transfer

10  of the Enforcement Assets to CDN.

11  **II.    MATERIAL BACKGROUND**

12  **A.    Valjakka Secretly Transferred Assets After He Filed Suit**

13  Plaintiff Lauri Valjakka is a citizen of Finland, living in Finland. Third Amended Complaint,

14  Dkt. No. 74, ¶1. Valjakka voluntarily submitted to the jurisdiction of this Court and other US courts

15  so that he could pursue sixteen (16) lawsuits against US companies in his own name.[1] *See* Answer To

16  Def's Counterclaims, Dkt. No. 117, ¶4 (Valjakka admitting this Court has jurisdiction over his person).

17  In September 2021, Valjakka sued five (5) entities alleging patent infringement, including

18  Defendant Netflix, asserting US Patent Nos. 8,495,167 and 10,726,102 (the '167 and '102 Patents, or

19  the Asserted Patents, collectively).[2] Shortly after filing suit, Valjakka began secretly transferring

---

[1] *Valjakka v. Akamai Technologies, Inc*., No. 6:21-cv-00942-ADA (W.D. Tex. Sept. 10, 2021);
*Valjakka v. Cisco Sys., Inc*., No. 6:21-cv-00944-ADA (W.D. Tex. Sept. 10, 2021);
*Valjakka v. Amazon.Com, Inc*. et al, No. 6:21-cv-00945-ADA (W.D. Tex., Sept. 10, 2021);
*Valjakka v. Netflix, Inc*., No. 6:21-cv-00947-ADA (W.D. Tex. Sept. 13, 2021);
*Valjakka v. Microsoft Corp.,* No. 6:21-cv-01006-ADA (W.D. Tex. Sept. 29, 2021);
*Valjakka v. Apple Inc*., No. 6:22-cv-00003-ADA (W.D. Tex. Jan. 3, 2022);
*Valjakka v. Google LLC*, No. 6:22-cv-00004-ADA (W.D. Tex. Jan. 3, 2022);
*Valjakka v. Sony Interactive Ent. Inc.,* No. 6:22-cv-00005-ADA (W.D. Tex. Jan. 3, 2022);
*Valjakka v. Philips North America LLC*, No. 6:22-cv-00226-ADA (W.D. Tex. Mar. 2, 2022);
*Valjakka v. Intertrust Technologies Corp.,* No. 6:22-cv-00234-ADA (W.D. Tex. Mar. 3, 2022);
*Valjakka v. Charter Communications Inc*., No. 6:22-cv-00491-ADA (W.D. Tex. May 13, 2022);
*Valjakka v. Comcast Corp*., No. 6:22-cv-00493-ADA (W.D. Tex. May 13, 2022);
*Valjakka v. Meta Platforms Inc*., No. 6:22-cv-00495-ADA (W.D. Tex. May 13, 2022);
*Valjakka v. Zoom Video Communications Inc*., No. 6:22-cv-00496-ADA (W.D. Tex. May 13, 2022);
*Valjakka v. Cox Communications Inc. et al*, No. 6:22-cv-00497-ADA (W.D. Tex. May 16, 2022).
[2] *Valjakka v. Netflix, Inc.,* No. 6:21-cv-00947-ADA (W.D. Tex. Sept. 13, 2021);
*Valjakka v. Amazon.Com, Inc. et al*, No. 6:21-cv-00945-ADA (W.D. Tex., Sept. 10, 2021);

2

Enforcement Assets that might otherwise be used to settle contingent debts held by defendants, including Netflix.

In November 2021, Valjakka transferred seemingly all rights in the asserted '167 Patent to Finnish Entity CDN.

The '167 License expressly states that Valjakka is ████████████████████████████ ████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████ Declaration of Karan Singh Dhadialla in Support of Netflix's Administrative Motion To Consider Whether Plaintiff's Material Should Be Sealed, filed concurrently herewith and incorporated by reference, ("Dhadialla Decl.") Exh. A ('167 License, NFX-VALJ-00011048-65) at 49 (Certified Finnish translation).

That is, Valjakka admits to assigning '167 Patent rights █████████████████████████ ██████████████████████████████

Moreover, the transfer of the '167 Patent rights from Valjakka to CDN was an insider transaction. Valjakka owns CDN and IPRA Technologies. Lamkin Decl., Exh. 1 (Valjakka Depo Tr.) at 7:12-17, 25:6-21, 27:1-2, 41:19-42:3. As such, Valjakka stands on both sides of the '167 License deal. Straddling both sides of the deal is one of the most damning facts considered when determining if a party has fraudulently transferred assets to avoid paying a claim. *Virtue Glob. Holdings Ltd. v. Rearden LLC*, No. 15-cv-00797-JST, 2016 WL 9045855, at *6 (N.D. Cal. June 17, 2016) ("The Ninth Circuit has recognized that a special relationship between the debtor and the transferee is one of the more common circumstantial indicia of fraudulent intent.") (cleaned up; collecting cases).

Further, the rights conferred upon CDN were exclusive to CDN: ███████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

---

*Valjakka v. Cisco Sys., Inc.*, No. 6:21-cv-00944-ADA (W.D. Tex. Sept. 10, 2021);
*Valjakka v. Akamai Technologies, Inc.*, No .6:21-cv-00942-ADA (W.D. Tex. Sept. 10, 2021);
*Valjakka v. Microsoft Corp.*, No. 6:21-cv-01006-ADA (W.D. Tex. Sept. 29, 2021).

Dhadialla Decl., Exh. A ('167 License) at 50.  That is, CDN ████████████████████

████████████████████████████████

Finally, the '167 License made clear that Valjakka ██████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████." *Id.*

(emphasis added).

Even though Valjakka transferred essentially every right in the '167 Patent to CDN, Valjakka concealed CDN from Netflix, from this Court, and from every eventual licensee of the '167 Patent.

**B.     Valjakka Commited Settlement Fraud and Violates the Court's Rules to Avoid Disclosing CDN**

On December 22, 2021, Valjakka entered into a settlement and licensing agreement with ███████████████████████ one of the first five defendants sued. *See* Dhadialla Decl., Exh. C (LV004030-37). Therein, Valjakka purported to grant █████ a license to both Asserted Patents, ███████████████████████████████████████████████

█████████ *See id.*; Dhadialla Decl., Exh. A ('167 License) at 50. Undaunted, Valjakka expressly warranted that he had the right to ███████████████████████ Dhadialla Decl., Exh. C (LV004030-37) at 33 (6(c)). He did not have that right, only CDN held that right. Dhadialla Decl., Exh. A ('167 License) at 50.

On December 31, 2021, Valjakka signed the '102 License, granting CDN, ███████████

████████████████████████████████████████████████

███████████████████████████████████" Dhadialla Decl., Exh. D ('102 License; NFX-VALJ-00011043-46) at 43. As with the '167 License, the '102 License granted CDN ████████████████████████████████, and expressly stated that ██████████

████████████████████████████████████████████████

█████████████ *Id.*

Valjakka had, again, ███████████████████████████ from himself personally to the Finnish entity that he owned, CDN, in yet another insider transaction. Concluding the unusual agreement, the only right Valjakka retained, was the right ███████████████████

1  ████████████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████████

4  ████████████████████████ Dhadialla Decl., Exh. D ('102 License; NFX-VALJ-00011043-46)

5  at 43 (emphasis added).

6        The next business day after Valjakka signed the '102 License, January 3, 2022, Valjakka sued

7  three (3) more entities.[3]

8        Ultimately, Valjakka would sign five (5) more settlement and licensing agreements.[4] In each,

9  Valjakka again fraudulently warranted that he had ████████████████████. In each,

10  he concealed CDN. Dhadialla Decl., Exh. G (LV004058-69) at 64 (5.5(a)); Exh. H (LV004038-57) at

11  43 (5.1.1); Exh. F (LV004070-86) at 70, 73-74 (VI(2)-(4)); Exh. E (LV003942-86) at 46-47 (2.1(a)-

12  (c)).

13        On April 27, 2022, Valjakka filed his Local Rule 3-15 disclosure in this matter, mandating that

14  he disclose "*any* entity . . . a financial interest *of any kind* in the subject matter in controversy." Dkt.

15  No. 36 (emphasis added). Valjakka continued to conceal CDN; in contravention of the express and

16  clear language of Local Rule 3-15, CDN is not listed thereon. *Id.* Valjakka has still never updated his

17  L.R. 3-15 disclosure to identify CDN.

18        After nearly two (2) years of litigation, and a year of Netflix demanding complete and

19  forthright discovery responses, on May 12, 2023, Valjakka produced the CDN licenses—in Finnish.

20  Netflix immediately sought translations of the documents, and received same on May 30, 2023, two

21  (2) days before Valjakka's deposition. In his deposition, under oath, Valjakka finally admitted the

22  existence of CDN, finally admitted CDN's status as the ████████████, and finally admitted that

23  CDN was the sole entity with the right to Enforcement Assets. Lamkin Decl., Exh. 1 (Valjakka Depo

24  Tr.) at 7:12-17, 13:22-14:4, 25:10-12, 27:1-2, 50:25-51:6, 316:23-317:7; Dhadialla Decl., Exh. B

25

---

[3] *Valjakka v. Google LLC*, No. 6:22-cv-00004-ADA (W.D. Tex. Jan. 3, 2022);

26  *Valjakka v. Apple Inc.*, No. 6:22-cv-00003-ADA (W.D. Tex. Jan. 3, 2022);
*Valjakka v. Sony Interactive Ent. Inc.*, No. 6:22-cv-00005-ADA (W.D. Tex. Jan. 3, 2022).

27  [4] One of the settlement agreements ████████████████████ Dhadialla Decl., Exh. E. As such,

28  ████████████████. According to Valjakka,
one (1) defendant was dismissed without signing a settlement agreement, and Netflix has not settled
(thus accounting for sixteen (16) defendants across Valjakka's campaign).

(Valjakka Depo Tr.) at 307:12-308:24. And, in his deposition under oath, Valjakka disclosed for the first time that IPRA Technologies, the beneficiary of the revenue from the Asserted Patents (other than Valjakka himself), had declared bankruptcy days before, in May 2023, further evidencing the urgency of this motion. *See* Lamkin Decl., Ex. 1, at 45:22-46:10.

## C. Netflix Has the Right to An Injunction Until the Merits of Its Section 285 Claim Can Be Heard

The "overriding purpose" of the California Uniform Voidable Transactions Act ("CUVTA") is to provide relief to creditors harmed by debtors placing assets beyond reach. *DZ Bank AG Deutsche Zentral-Genossenschaftsbank v. Meyer*, 869 F.3d 839, 842 (9th Cir. 2017).[5]  CUVTA protects Netflix against Valjakka's fraudulent shell game while this Court adjudicates Netflix's claim. *Virtue Glob. Holdings Ltd.*, 2016 WL 9045855, at *5 ("The Court may enter a preliminary injunction over the MOVA Assets on Defendants' fraudulent conveyance claim even though Defendants have not yet established an interest in the assets.") (Tigar, J.) (*citing Wimbledon Fund, SPC Class TT v. Graybox, LLC*, 648 Fed. App'x 701, 702 (9th Cir. Apr. 18, 2016).) Netflix's claim is not hypothetical.  Netflix maintains an equitable claim for attorney's fees pursuant to 35 U.S.C. § 285. Dkt. Nos. 35, at 8:13-15; 75, at 9:27-28, 11:28, 13:26, 15:19, 16:3-7; 116, 10:25, ¶¶107, 112, 122, 129, p. 32:6-9.

The harm CUVTA seeks to prevent is debt being placed out of a creditor's reach. Netflix faces exactly that harm here as Valjakka has intentionally shifted or is about to shift the Enforcement Assets from himself to himself, from the Plaintiff in this litigation to a Finnish entity owned by Valjakka, and then—through that entity—back to Valjakka and his company IPRA, a company facing imminent bankruptcy. The material distinction between Valjakka the Plaintiff herein and Valjakka the ultimate beneficiary of CDN, is that this Court's contingent Section 285 determination can reach Valjakka the Plaintiff but not Valjakka the beneficiary of CDN.  Based on the CUVTA "badges of fraud," *infra*, this Court should assume Valjakka intended to fraudulently shield his assets from his creditors, including Netflix.

---

[5] The California Uniform Fraudulent Transactions Act is now known as the California Uniform Voidable Transactions Act. It was amended by 2015 Cal SB 161, effective January 1, 2016. *Virtue Glob. Holdings Ltd.*, 2016 WL 9045855, at *2 n.1.

6

### III.   LEGAL STANDARD

To obtain preliminary injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008). "[S]erious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted).

Preliminary relief may take two forms: it may be prohibitory or mandatory in nature. "A prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co*., 571 F.3d 873, 878 (9th Cir. 2009) (internal alterations and quotation marks omitted). A mandatory injunction orders a party to take action. *Id*. at 879. Because mandatory injunctions do more than preserve the status quo, prohibitory preliminary injunctions are favored over mandatory injunctions. *Martin v. Int'l Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984).

Due to the exigent nature of a preliminary injunction, a court may consider hearsay and other evidence that would otherwise be inadmissible at trial. *See Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009); *see also Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) ("The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial.").

### IV.   ARGUMENT

#### A.   Netflix Is A CUVTA Creditor

CUVTA exists precisely to protect Netflix against Valjakka's thimblerig until this Court adjudicates Netflix's Section 285 claim. *See Virtue Glob. Holdings Ltd.*, 2016 WL 9045855, at *5; *Wimbledon,* 648 Fed. App'x, at 702; *Hennessey's Tavern, Inc. v. Am. Air Filter Co*., 204 Cal. App. 3d 1351, 1360 (1988) ("Under the statutory scheme of the Uniform Fraudulent Transfer Act (Civ. Code, § 3439 et seq.) plaintiff is a 'creditor,' since it alleges that it has a contingent claim for damages (Civ.

7

Notice Of Motion and Motion for Preliminary Injunction;
Memorandum of Points and Authorities                                    Case No.: 4:22-Cv-01490-JST

Code, § 3430) against Elliot Air, which is a 'debtor'").

**B.     Netflix Is Entitled To A Preliminary Injunction Protecting The Enforcement Assets Pending Determination Of Netflix's Section 285 Remedy**

To obtain preliminary injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. 7, 20. The *Winter* factors weigh in favor of an injunction.

### 1.     Netflix Is Likely To Prevail On The Merits Of Its CUVTA Claim

Under CUVTA, a transfer is fraudulent to a present or future creditor if it is made "[w]ith actual intent to hinder, delay or defraud any creditor of the debtor." Cal. Civ. Code § 3439.04(a)(1). A "creditor" means a person who has a right to payment, whether or not the right is reduced to a judgment. Cal. Civ. Code §§ 3439.01(b) and (c).

CUVTA enumerates eleven (11) nonexclusive factors—the "badges of fraud"—that indicate actual intent to hinder, delay, or defraud creditors. *Virtue Glob. Holdings Ltd.*, 2016 WL 9045855, at *6 (*citing In re Beverly*, 374 B.R. 221, 235 (B.A.P. 9th Cir. 2007).) The enumerated badges of fraud are:

> (1) Whether the transfer or obligation was to an insider.
> (2) Whether the debtor retained possession or control of the property transferred after the transfer.
> (3) Whether the transfer or obligation was disclosed or concealed.
> (4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
> (5) Whether the transfer was of substantially all the debtor's assets.
> (6) Whether the debtor absconded.
> (7) Whether the debtor removed or concealed assets.
> (8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
> (9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
> (10) Whether the transfer occurred shortly before or after a substantial debt was incurred.
> (11) Whether the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor.

Cal. Civ. Code § 3439.04.

8

These badges demonstrate Valjakka's fraudulent intent in transferring the Enforcement Assets to CDN.

"A creditor making a claim for relief . . . has the burden of proving the elements of the claim for relief by a preponderance of the evidence." Cal. Civ. Code § 3439.04(c).

(a) <u>Valjakka's Insider Transaction Evidences His Fraudulent Intent</u>

Valjakka owns CDN. As such, badge (1) is satisfied because "the transfer or obligation was to an insider." Civ. Code § 3439.04(b)(1). "The Ninth Circuit has recognized that a special relationship between the debtor and the transferee is one of the more common circumstantial indicia of fraudulent intent." *Virtue Glob. Holdings Ltd.*, 2016 WL 9045855, at *6 (collecting cases; cleaned up). Here, Valjakka transferred all rights to his patents, including all rights to the Enforcement Assets, from himself personally as Plaintiff to himself as owner of CDN, evidencing the intent to commit a fraudulent transfer.

(b) <u>Valjakka's Retention of Control Evidences His Fraudulent Intent</u>

Valjakka "retained possession or control of the property transferred after the transfer." *See* Cal. Civ. Code § 3439.04(b)(2). As noted above, Valjakka is on both sides of the transaction, evidencing retained control. He also placed his personal attorney in the role of Chief Executive Officer at CDN, further evidencing retained control. Lamkin Decl., Exh. 1 (Valjakka Depo Tr.) 12:8-10, 13:22-15:4, 25:10-12. Badge Number 2 evidences the intent to commit fraud.

(c) <u>Valjakka's Extensive Efforts to Conceal CDN Evidences His Fraudulent Intent</u>

Valjakka concealed the transfer of the Asserted Patents and the Enforcement Assets. *See* Cal. Civ. Code § 3439.04(b)(3) ("Whether the transfer or obligation was disclosed or concealed."). Section II, *supra*, details Valjakka's extensive and successful efforts to conceal the CDN licenses and the transfer of Enforcement Assets to CDN, including failing to disclose to Netflix and fourteen (14) settlement licensees ███████████████████████████████████ ████████████. Dhadialla Decl., Exh. B (Valjakka Depo Tr.), at 308:22-24.

Evidence of Valjakka's efforts to conceal CDN are numerous. In addition to the examples above, Valjakka's Supplemental Response to Interrogatory No. 7 (asking for all licenses) states in clearly and unequivocal terms, "Besides the licenses listed in the response to Interrogatory No. 6,

9

***Valjakka has not licensed or assigned rights of either patent-in-suit***.”  Dhadialla Decl., Exh I, at 18 (emphasis added).  The licenses listed in response to Interrogatory 6 do not include the CDN licenses. *Id*., at 16.

By way of another example, on June 9, 2022, Netflix served Interrogatory No. 8, which states: “Identify every person or entity with any past, current, or prospective financial, ownership, or other interest in the Asserted Patents[.]”  Dhadialla Decl., Exh. I at 19.  In his response served on July 11, 2022, Valjakka did not disclose CDN Licensing. *Id*. at 19–20. In his supplemental response on September 9, 2022, Valjakka still did not disclose CDN.  Dhadialla Decl., *Id*. at 20–21.  Indeed, in his response, Valjakka stated, ███████████████████████████ have financial interests in the present case.” *Id*.  Valjakka’s response is striking. Interrogatory No. 8 directly asks for the identity of all entities with a financial interest in the Asserted Patents. Valjakka did not disclose CDN.  It wasn’t until he was placed under oath in deposition that Valjakka admitted that CDN had a financial interest in the patents, and that he failed to disclose that financial interest to this Court:

> Q. So does CDN Licensing have an interest in any proceeds that you make from this patent in litigation?
>
> A. Yes, it’s the receiver of those.
>
> . . .
>
> Q. Does CDN Licensing have an interest to the outcome of this case?
>
> A. Yes.
>
> . . .
>
> Q. CDN Licensing is not listed in this corporate disclosure statement pursuant to Civil Legal Rule 3-15 in the Northern District of California; correct?
>
> A. Correct.

Dhadialla Decl., Exh. B (Valjakka Depo Tr.) 308:10-24; Lamkin Decl., Exh. 1 (Valjakka Depo Tr.) 316:23-317:11.

Further, on June 9, 2022, Netflix served Interrogatory No. 17, which states: “Describe in detail the role and relationship that ‘IPRA Technologies Ltd.,’ ‘SC Intelligent Holding Oy,’ and any other related entity or subsidiary has with Plaintiff, the Asserted Patents, and this Action.” Dhadialla Decl.,

10

Notice Of Motion and Motion for Preliminary Injunction;
Memorandum of Points and Authorities                                    Case No.: 4:22-Cv-01490-JST

Exh. I at 33. In response, on July 11, 2022, Valjakka stated:

*Id..* Valjakka's representation about CDN Licensing is a fabrication. CDN is presented as the entity ████████████████████████████████████████." *Id.* There is zero disclosure of CDN as the ████████████████████████████████████████████. *See id.* Indeed, Valjakka proceeds to ████████████████████████████████, but does not list CDN. *Id.* Thus, even though Valjakka mentioned CDN Licensing in July 2022, Valjakka grossly misrepresented CDN's actual relevance, and Valjakka did so while currently fraudulently omitting CDN from the list of patent rights holders. As such, Valjakka's response served to further secret the true relevance of CDN to this litigation.

Further, the language employed in the settlement and license agreements evidence concealment of CDN. For example, in the ██████ Agreement, Valjakka lists nine (9) entities "█████████████████████████████████████████████████████████████████ ██████. Dhadialla Decl., Exh. F (LV004070-86) at 70. Valjakka even lists ████████████, the beneficiary—along with Valjakka—of the CDN licenses. But Valjakka does not disclose CDN.

Valjakka has, at every single opportunity, concealed the existence of CDN and the transfer of the Enforcement Assets.

(d) Valjakka's Removal and Concealment of The Enforcement Assets Evidences His Fraudulent Intent

There is no question that Valjakka "removed or concealed assets." *See* Cal. Civ. Code § 3439.04(a)(7) ("Whether the debtor removed or concealed assets."). As shown herein, Valjakka has consistently secreted and concealed the ultimate recipient of the Enforcement Assets.

(e) The Low Cost of The CDN Licenses Versus The Value of The Enforcement Assets Evidences Valjakka's Fraudulent Intent

Regarding "whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred," the monies

CDN licensing paid for its exclusive licenses are a fraction (about ███) of the monies it stands to receive, or has received, from the settling defendants. Dhadialla Decl., Exhs. A (NFX-VALJ-00011048-65) at 50, D (NFX-VALJ-00011043-46) at 44; *see* Cal. Civ. Code § 3439.04(a)(8). Badge (8) evidences Valjakka's fraudulent intent.

### (f) Valjakka &/or CDN &/or IPRA's Likely Insolvency Evidences Valjakka's Fraudulent Intent

It appears likely that CDN Licensing nears insolvency. *See* Cal. Civ. Code § 3439.04(a)(9) ("Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.").[6] In his June deposition, Valjakka announced that IPRA Technologies, the entity—other than himself—standing to benefit from the litigation settlements, declared bankruptcy days before, in May 2023. Lamkin Decl., Exh. 1 (Valjakka Depo Tr.) 41:19-42:17. Further, in his deposition, Valjakka explained that CDN is being "restructure[ed]" because of "the bankruptcy".[7] Lamkin Decl., Exh. 1 (Valjakka Depo Tr.) at 50:25-51:6.

Thus, it appears that the Enforcement Assets being transferred from Valjakka to himself (CDN) may be used to cure or attempt to cure debtor claims upon IPRA Technology or upon CDN itself. Discovery will need to be propounded to ascertain the entity at risk for "the bankruptcy." But whether its IPRA or CDN, the Enforcement Assets are at risk.

### (g) The Fact That Valjakka Transferred Rights & Enforcement Assets To CDN Shortly After He Filed His First Lawsuits Evidence Valjakka's Fraudulent Intent

Valjakka began transferring the ███████████████████████████ shortly after he filed his first lawsuits, and thus shortly after he acquired his first contingent debts. Discovery may reveal that Valjakka's attorney informed Valjakka of the risk of attorney's fees. *See Carter v. Amgen, Inc.*, 682 F. App'x 620, 620 (9th Cir. 2017) ("an attorney's knowledge is imputed to the client[.]") At least five (5) clients of Valjakka's counsel have been ordered to pay defendants' attorneys' fees pursuant to 35 U.S.C. § 285.[8] It is likely that Valjakka understands this risk. It is

---

[6] Badge Number 9 asks whether the debtor is about to be insolvent, but here the debtor and CDN Licensing are the same or similar entities.

[7] In Valjakka's June 2023 deposition, Netflix did not realize it should further question Valjakka on this issue as Valjakka's concealment of CDN had successfully prevented Netflix from realizing CDN was implicated in a CUVTA concern.

[8] *See, e.g., ESCAPEX IP LLC, v. GOOGLE LLC*, No. 22-cv-08711-VC, 2023 WL 5257691 (N.D. Cal. Aug. 16, 2023); *ZT IP, LLC v. VMware, Inc.*, Civil Action No. 3:22-CV-0970-X, 2023 WL

12

possible that discovery will show that the subject of attorneys' fees was raised between Valjakka and his counsel. Regardless, if this Court does not enjoin the transfer of Enforcement Assets to CDN, any relief this Court orders on behalf of Netflix is likely beyond the Court's reach.

(h) Additional Badges May Implicate His Fraudulent Intent

Discovery is likely to demonstrate satisfaction of additional badges of fraud. For example, Badge Number 5 inquires: "[w]hether the transfer was of substantially all the debtor's assets." Cal. Civ. Code § 3439.04(a)(5). Valjakka's companies have repeatedly gone bankrupt, including most recently CDN and/or CDN beneficiary IPRA Technologies. Lamkin Decl., Exh. 1 (Valjakka Depo Tr.) 44:7-8, 46:1-10, 47:7-11, 62:5-63:19, 67:2-5, 236:22-24. As such, it may be that the Enforcement Assets are "substantially all" of Valjakka's assets, further evidencing fraudulent transfer.

In sum, the confluence of these many badges of fraud and additional circumstantial evidence constitutes substantial evidence of Valjakka's actual intent to defraud. *See Virtue Glob. Holdings Ltd.*, 2016 UWL 9045855, at *7 (*citing In re Acequia, Inc*., 34 F.3d 800, 806 (9th Cir. 1994); *see also Wimbledon*, 648 F. App'x 701, 702 (affirming issuance of injunction on satisfaction of five (5) badges of fraud).

(i) Valjakka Transferred the Assets And Kept the Liabilities, Further Evidencing His Fraudulent Intent

The CUVTA factors are not exhaustive; this Court is permitted to consider other evidence in determining whether Valjakka has committed a fraudulent transfer. *Virtue Glob. Holdings Ltd.*, 2016 WL 9045855, at *6 ("The enumerated factors are nonexclusive[.]")

Another indicium of fraud is that Valjakka transferred ███████████ ███████████████████████████████████████. *See Virtue Glob. Holdings Ltd.*, 2016 WL 9045855, at *7 (agreeing that plaintiff "used the transfer as a means to shoulder the debt but strip [it]self of assets with which to pay the debt," and that said conduct was relevant under CUVTA). Netflix's claim for attorneys' fees is a contingent claim creating a liability held by Valjakka. *See* Cal. Civ. Code §§ 3439.01(b) and (c). Valjakka stands before this Court in name only. His representation

---

1785769 (N.D. Tex. Feb. 6, 2023); *NetSoc, LLC v. Chegg Inc*., No. 18-CV-10262 (RA), 2020 WL 7264162 (S.D.N.Y. Dec. 10, 2020); *Traxcell Techs., LLC v. Huawei Techs. USA, Inc*., No. 2:17-CV-42-RWS-RSP, 2023 WL 2625948 (E.D. Tex. Mar. 24, 2023); *WPEM, LLC v. SOTI Inc.,* No. 2:18-CV-00156-JRG, 2020 WL 555545 (E.D. Tex. Feb. 4, 2020).

13

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION;
MEMORANDUM OF POINTS AND AUTHORITIES                    CASE NO.: 4:22-CV-01490-JST

and submission to this Court's jurisdiction became a sham when Valjakka secretly ███████ ███████. If this Court finds that Valjakka is liable to Netflix for attorneys' fees, it's an empty order if it cannot be enforced.

(j)  There Exists Considerable Further Evidence of Valjakka's Fraudulent Intent

There is considerable additional evidence of concealment behavior. For example, in the settlement agreements, Valjakka represents that the Asserted Patents ███████████████ ██████████████" *See, e.g.*, Dhadialla Decl., Exh. E (LV003942-86) at 48 (2.1(j)). Valjakka's representation is not true. Valjakka admits under oath in his deposition that the Asserted Patents were subject to litigation in Finland over their proper title, a litigation Valjakka admits to losing. Lamkin Decl., Exh. 1 (Valjakka Depo Tr.) 75:3-77:5. Netflix has asserted counterclaims for inequitable conduct and unclean hands due to Valjakka's prosecution and assertion of patents that he does not own, *inter alia*. Dkt. No. Dkt. No. 116, ¶¶13-102.

Substantial evidence supports a finding at this stage that Valjakka transferred or is about to transfer the Enforcement Assets to avoid paying Netflix's contingent claim for Section 285 fees.

## 2.    Netflix Is Likely to Suffer Irreparable Harm

Valjakka concealed CDN until the eve of the close of fact discovery.  Even now, Valjakka has not provided: (i) an accurate LR 3-15 disclosure; (ii) truthful discovery responses; or (iii) accurate settlement agreements. To this day, Valjakka continues to conceal CDN from the Court. If Netflix had not translated the recently-produced CDN agreements from Finnish to English, CDN's relevance would still be hidden. And if this Court does not enjoin Valjakka from transferring the Enforcement Assets to a Finnish entity before the Assets are used to absolve CDN and/or IPRA Technology of its Finnish creditors' claims, Netflix may have no ability to recover its cognizable, actionable claim. *See In re Medina*, No. 20-60045, 2021 WL 3214757, at *2 (9th Cir. July 29, 2021) ("the only harm a creditor must show is that the debtor concealed assets that could have been used to settle the debt with the intention of making it more difficult for the creditor to collect.")

Netflix has thus "shown a likelihood of dissipation of the claimed assets and that it will suffer from irreparable harm as a result." *Virtue Glob. Holdings Ltd.*, 2016 WL 9045855, at *8; *see also Medina*, No. 20-60045, 2021 WL 3214757, at *2 (9th Cir. July 29, 2021).

14

### 3.    The Equities Balance in Favor of Granting a Preliminary Injunction

"In considering the equities of a preliminary injunction, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Virtue Glob. Holdings Ltd.*,, 2016 WL 9045855, at *8 (*quoting Winter*, 555 U.S. at 24).

Valjakka is on both sides of the fraudulent transaction. Asking him to hold assets or not to pass assets from one of his hands to the other does no harm.

Conversely, if this Court does not act to enjoin Valjakka's fraudulent transfer, Netflix's claim could be forever extinguished vis-à-vis IPRA Technologies' or CDN's pending bankruptcy(s). Absent an injunction, Netflix could lose all ability to collect upon its protectable claim.

Further, Valjakka should not be rewarded for discovery misconduct. Valjaka continues to provide and has not corrected wholly improper, false, and deceptive discovery responses. His conduct weighs strongly in favor of an injunction.

### 4.    The Public Interest Is Neutral Unto Favoring Injunction

When an injunction would have public consequences, the public interest is relevant to whether the injunction is appropriate. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009). However, "[w]hen the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor in the analysis." *Id*. at 1138-39 (quoting *Bernhardt v. L.A. County*, 339 F.3d 920, 931 (9th Cir. 2003) (internal quotation marks removed). Here, the injunction sought by Plaintiff is narrow and limited to the parties. This factor is neutral. *See Bernhardt*, 339 F.2d at 932.

That said ██████████████████████████████████████ Although Netflix has not undertaken an analysis of the settling defendants' rights, it is possible those defendants may have a cause of action against Valjakka based on the forgoing and other misconduct by Valjakka. Preserving the Enforcement Assets for Netflix may also accrue to those defendants and therefore is a public good.

### 5.    No Bond Is Required

The Court may dispense with Rule 65(c)'s bond requirement if "there is no realistic likelihood

15

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION;
MEMORANDUM OF POINTS AND AUTHORITIES                                    CASE NO.: 4:22-CV-01490-JST

of harm to the defendant from enjoining his or her conduct," should the preliminary injunction later be found to have issued in error. *Kremen v. Cohen*, No. 5:11-CV-05411-LHK, 2011 WL 6113198, at *8 (N.D. Cal. Dec. 7, 2011) (*quoting Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009). Here, Valjakka stands on both sides of the deal. As such, he is not harmed from having Assets stay or move between Valjakka entities.

## V.    CONCLUSION

For the foregoing reasons, Netflix seeks an order restraining and enjoining Plaintiff Lauri Valjakka, pending trial, from using, moving, concealing, transferring, or otherwise disposing of any licensing or settlement asset in his possession, custody or control.


Dated:    August 21, 2023                    Baker Botts L.L.P.


By: */s/ Rachael D. Lamkin*
    Rachael D. Lamkin (SBN 246066)
    Karan Singh Dhadialla (SBN 296313)
    BAKER BOTTS L.L.P.
    101 California Street, Suite 3200
    San Francisco, CA 94111
    Tel: (415) 291-6200
    Fax: (415) 291-6300
    rachael.lamkin@bakerbotts.com
    karan.dhadialla@bakerbotts.com

    Sarah E. Piepmeier, Bar No. 227094
    SPiepmeier@perkinscoie.com
    Elise S. Edlin, Bar No. 293756
    EEdlin@perkinscoie.com
    PERKINS COIE LLP
    505 Howard Street, Suite 1000
    San Francisco, California 94105
    Telephone: +1.415.344.7000
    Facsimile: +1.415.344.7050

    Janice L. Ta (appearance pro hac vice)
    JTa@perkinscoie.com
    PERKINS COIE LLP
    405 Colorado Street Suite 1700
    Austin, Texas 78701
    Telephone: +1.737.256.6100
    Facsimile: +1.737.256.6300

16

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION;
MEMORANDUM OF POINTS AND AUTHORITIES                    CASE NO.: 4:22-CV-01490-JST

Jassiem N. Moore (appearance pro hac vice)
JassiemMoore@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000

Brianna Kadjo, Bar No. 303336
BKadjo@perkinscoie.com
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, Colorado 80202-5255
Telephone: +1.303.291.2300
Facsimile: +1.303.291.2400

*Attorneys for Defendant NETFLIX, INC.*

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION;
MEMORANDUM OF POINTS AND AUTHORITIES                    CASE NO.: 4:22-CV-01490-JST