Rachael D. Lamkin (SBN 246066)
Karan Singh Dhadialla (SBN 296313)
BAKER BOTTS L.L.P.
101 California Street, Suite 3200
San Francisco, California 94111
Phone: (415) 291-6200
Fax: (415) 291-6300
rachael.lamkin@bakerbotts.com
karan.dhadialla@bakerbotts.com

*Attorneys for Defendant NETFLIX, INC.*

*Additional counsel listed on signature page*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| LAURI VALJAKKA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>NETFLIX, INC.,<br><br>　　　　Defendant. | Case No. 4:22-cv-01490-JST<br><br>**DEFENDANT NETFLIX, INC.'S REPLY IN SUPPORT OF OPPOSED MOTION FOR LEAVE TO AMEND THE SCHEDULING ORDER ON NARROW GROUNDS TO ALLOW MINIMAL, TARGETED CUVTA DISCOVERY**<br><br>Judge:　Hon. Jon S. Tigar<br>Date:　September 21, 2023<br>Time:　2:00 p.m.<br>Crtrm:　6 – 2nd Floor |

1 **MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

There is good cause to amend the scheduling order for a limited re-opening of fact discovery so that Netflix can conduct targeted discovery regarding Plaintiff Lauri Valjakka's ("Valjakka") fraudulent and voidable transfers to a Finnish company, CDN Licensing. Specifically, Netflix seeks leave to (1) conduct two brief depositions of no more than three hours each, and (2) obtain responses to a narrow set of written discovery requests that were served on September 22, 2023. Netflix does not seek to extend <u>any</u> other deadlines in this case, including the trial date.

Valjakka's 2-page Opposition did not address any of the relevant factors pertaining to Netflix's request for a limited reopening of discovery. *See* Dkt. 142. Instead, Valjakka simply disputed that the transfers at issue constitute a CUVTA violation. *Id*. at 2–3.

The Ninth Circuit has stated that "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). As discussed below, a limited re-opening of discovery is warranted because Valjakka withheld material information until just before the fact discovery cut-off in May. Indeed, Netflix learned just days before Valjakka's deposition that he attempted to transfer essentially all of the potential revenue from the Asserted Patents to a Finnish company, while purportedly retaining for himself only the right to be the plaintiff in legal proceedings involving those patents (thus ensuring that any proceeds or assets that could potentially be available to satisfy any judgments or fee awards against him are beyond the reach of this Court). Worse still, Netflix also learned that CDN Licensing and its Valjakka-owned beneficiary, IPRA Technologies, are on the eve of bankruptcy—raising further red flags regarding the potential dissipation of Valjakka's assets. The limited facts belatedly revealed have raised many critical questions to be explored that may impact the parties' claims, defenses, and themes at trial, and go to the merits of Netflix's newly-asserted CUVTA claim against Valjakka.

Accordingly, the Court should amend the scheduling order to allow for a brief re-opening of fact discovery so Netflix can obtain additional information regarding these concerning developments that are likely to shape the litigation moving forward.

## II. ARGUMENT

### A. The relevant factors weigh in favor of granting Netflix's request for additional fact discovery.

Valjakka failed to address any of the six factors[1] that the Ninth Circuit has instructed courts to consider when evaluating a request to re-open discovery. Dkt. 142. As discussed in Netflix's Motion (Dkt. 129) and below, those factors weigh in favor of granting Netflix's request.

<u>First</u>, the February 2023 trial date is not imminent and is still more than five months away. Allowing Netflix to conduct limited discovery in September or early October[2] will ensure that the parties have sufficient time to evaluate the merits of the new CUVTA claim and the broader impact on these transfers on the rest of the litigation in advance of the trial date. *See New Cingular Wireless PCS LLC v. City of W. Covina, California*, No. 2:22-cv-01642-MEMF-JCx, 2022 WL 20611226, at *2 (C.D. Cal. Nov. 21, 2022) (concluding that "extending the discovery cut-off itself likely would not lead to an inordinate delay, as extension of a single deadline does not necessarily require the Court to extend the deadlines that follow").[3]

<u>Second</u>, Valjakka opposes the request, but this is the lone factor leaning against Netflix's request and should not be given much weight.

<u>Third</u>, Netflix is not seeking to broadly re-open discovery, but only to explore critical additional issues that Valjakka finally revealed 20 months into this litigation and just before the close of fact discovery. The discovery and deposition requests are narrowly tailored to these limited

---

[1] *See City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Circ. 2017). ("When ruling on a motion to amend a Rule 16 scheduling order to reopen discovery, we instruct district courts to consider the following factors: 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.").

[2] Netflix has repeatedly asked Valjakka to coordinate with respect to Netflix's discovery and deposition requests, but Valjakka has refused to even discuss those requests with Netflix.

[3] In his Opposition to Netflix's motion for a preliminary injunction, Valjakka contends that Netflix's CUVTA claim and request for a preliminary injunction will "delay this case," and "waste the time of the parties and the Court." Dkt. 143 at 2. But because Netflix is not seeking to extend or change any additional deadlines other than a limited re-opening of fact discovery, there will be no delays in preparing for and bringing this case to trial.

issues and are not burdensome. Importantly, the present situation is one of Valjakka's own making and could have been avoided had he promptly and timely disclosed these critical developments earlier in discovery. *See Hernandez v. Parker Hannifin Corp.*, No. 21-CV-0808-H-BGS, 2021 WL 5989914, at *2 (S.D. Cal. Dec. 17, 2021) (granting request for leave to take additional discovery where "[d]efendant delayed producing these documents until only two days before the close of fact discovery," and plaintiff could have taken the additional discovery requested during the discovery period "[h]ad the documents been produced earlier").

Fourth, despite Netflix's diligence during the discovery period, Valjakka's decision to withhold production of CDN license agreements until the eve of the fact discovery cut-off ensured that Netflix would only be able to obtain sufficient discovery regarding these important issues if discovery was re-opened in the future. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992) (a scheduling order may be modified "if it cannot reasonably be met despite the diligence of the party seeking the extension") (quoting Fed. R. Civ. P. 16, advisory committee's notes (1983 amendment)). Netflix only became aware of the significance of CDN Licensing when Valjakka produced the license agreements with CDN (in Finnish) just two weeks before his deposition. Netflix immediately sought to translate the Finnish agreements into English, which only became available two days before Valjakka's deposition, during which new and even more concerning information regarding these transfers came to light. Since then, Netflix has moved expeditiously to continue to comply with the remaining deadlines in the scheduling order, while also investigating, researching, and preparing its CUVTA claim and request for a preliminary injunction, and preparing and serving its CUVTA discovery requests. In short, the record is clear that Netflix has acted diligently. *See O'Neal v. SmithKline Beecham Corp.*, No. CIVS06-1063FCD/DAD, 2007 WL 2156075, at *2–3 (E.D. Cal. July 25, 2007) (granting request to re-open discovery where the defendant "demonstrated that it has diligently pursued discovery in this action relating to information potentially held by" another witness, given that the defendant only learned the witness might have relevant information at another deposition just weeks before the close of fact discovery).

Fifth, the need for additional discovery regarding CDN was not foreseeable until Valjakka's belated production of the critical licensing agreements. It is noteworthy that Valjakka contends that

he "disclosed to [his] attorneys the existence of CDN Licensing Finland OY prior to July 11, 2022." Dkt. 143–1 ¶ 14. However, Valjakka offered no explanation as to why he waited nearly a year after informing his attorneys, and a year and a half after entering into those agreements in November 2021, to produce documents that are highly relevant to this dispute.

Finally, the requested discovery is likely to lead to evidence that is relevant to Netflix's CUVTA claim. *See Dixon v. Oleachea*, No. 2:15-CV-02372-KJM-AC, 2021 WL 5912027, at *1 (E.D. Cal. Nov. 10, 2021) (granting motion to reopen fact discovery where the discovery sought "will shed light on the central factual disputes in this case," and "denying the motion would cause much greater prejudice to [plaintiff] than granting the motion will cause to the defendant"). The facts that have been revealed thus far provide strong indicia of fraud associated with the transfers to CDN licensing. *See* Dkt. 127 at 5–6 (summarizing Valjakka's history of incomplete and inadequate discovery disclosures, as compared to the facts recently revealed in Valjakka's deposition regarding CDN Licensing and IPRA Technologies); *id.* at 8–14 (discussing CUVTA's badges of fraud applicable to these facts). However, there are many additional issues to explore in discovery. This is particularly true given the numerous inconsistencies between the documents at issue, and the contradictory assertions in Valjakka's Opposition to Netflix's motion for a preliminary injunction and supporting declaration.

For example, Netflix served interrogatories seeking a greater understanding of the language of the CDN license agreements. As just one example, Netflix seeks information regarding the meaning and purpose of the provision stating that Valjakka is aware that the patents "may be subject to demands concerning the reversal of the legal action, based on recovery legislation, by creditors of IPRA Technologies Ltd Oy and Lauri Valjakka" (Interrogatory No. 2). The license agreements expressly assert that the license and sales revenues from the Asserted Patents are to be used to protect Valjakka's assets. Dkt. 127 at 3. Netflix learned that IPRA Technologies, the secret beneficiary of the Enforcement Assets, filed for bankruptcy just days before Valjakka's deposition, and CDN likewise may be on the eve of bankruptcy. *Id.* at 6. In other words, it appears that Valjakka intends to use the revenue from the patents at issue in this case to cover his existing debts, and the debts of IPRA Technologies, which already are so numerous that IPRA has filed for bankruptcy. This raises

1  significant concerns regarding whether these transfers were intended to prevent additional creditors
2  (such as Netflix) from having any available remedies.

3  Moreover, although Valjakka continues to enter settlement agreements purporting to grant
4  licenses to the Asserted Patents, *see* Dkt. 127 at 4, the license agreements make clear that Valjakka
5  no longer has that right, *id*. Accordingly, Netflix seeks more information regarding the provision in
6  the '167 CDN License stating that Valjakka "cannot grant parallel licenses based on the same patent
7  to third parties" (Interrogatory No. 5).

8  As another example, Valjakka contends that the transfers to CDN are like "passing assets
9  from one of his hands to the other," and that "any theoretical future judgment against Valjakka will
10 necessary include his ownership of CDN as an asset." Dkt. 143 at 5. Valjakka admits, however, that
11 he only owns 70% of CDN. Dkt. 143–1 ¶ 3. And Valjakka cites no legal authority for any
12 mechanism as to how the assets of a foreign entity located in Finland, which is not named as a party
13 to this litigation, could potentially be available to satisfy a judgment or fee award against Valjakka
14 in this case. To that end, it is imperative to conduct additional discovery regarding the legal form of
15 CDN, its ownership structure, the other owners of CDN, the beneficiaries of CDN, and the
16 availability (or lack thereof) of CDN's assets to satisfy the personal debts of any of its owners.

17 Moreover, Valjakka asserts that CDN Licensing paid him "reasonably equivalent value" in
18 exchange for the rights to litigation proceeds to the '102 and '167 patents. Dkt. 143 at 7-8; Dkt.
19 143–1 ¶¶ 7–9. But then in the very next sentence, he admits that when the licenses were granted,
20 "the value of the infringement suits" based on those patents "were untested and future proceeds were
21 merely potential." Dkt. 143 at 7–8. Nowhere does Valjakka identify the specific amount paid to him
22 by CDN Licensing. These contradictory sentences suggest that CDN Licensing may have paid
23 <u>nothing</u> to Valjakka in exchange for the rights to all litigation proceeds from those cases—a critical
24 issue going to an important CUVTA badge of fraud, which should be explored in discovery.

25 Additionally, Valjakka asserts that he did not discuss with anyone or receive advice from
26 anyone "related to licensing litigation proceeds from the '167 and '102 patents to CDN Licensing
27 Finland OY for the purpose of putting money out of the reach of future creditors of mine." Dkt.
28 143–1 ¶ 14. This does not foreclose the possibility that Valjakka may have received other kinds of

advice about the arrangement in CDN Licensing, which resulted in Valjakka's attempts to transfer only the benefits (the right to litigation and licensing proceeds), but not any associated liabilities, such as the obligation to pay claims for attorney's fees, to that entity.

Because five of the six factors – including the most important factor, Netflix's diligence – weigh in favor of granting Netflix's request, there is good cause to amend the scheduling order.

### B. Valjakka fails to offer any valid reasons to deny Netflix's request to re-open discovery.

Instead of addressing the relevant factors, Valjakka contends CUVTA does not apply to the transfers at issue. Dkt. 142 at 1–2. The ample factual and legal basis as to why CUVTA should apply to the transfers at issue is explained in detail in Netflix's proposed counterclaim (Dkt. 128, Ex. A), its motion for a preliminary injunction (Dkt. 127), and its concurrently-filed reply in support of the motion for a preliminary injunction, and therefore is not repeated here.

## III. CONCLUSION

For the foregoing reasons, Netflix respectfully requests that the Court amend the scheduling order to allow for a brief re-opening of fact discovery.

Dated: September 7, 2023                              Respectfully submitted,

*/s/ Rachael D. Lamkin*
Rachael D. Lamkin (SBN 246066)
Karan Singh Dhadialla (SBN 296313)
BAKER BOTTS L.L.P.
101 California Street, Suite 3200
San Francisco, CA 94111
Tel: (415) 291-6200
Fax: (415) 291-6300
rachael.lamkin@bakerbotts.com
karan.dhadialla@bakerbotts.com

Sarah E. Piepmeier, Bar No. 227094
SPiepmeier@perkinscoie.com
Elise S. Edlin, Bar No. 293756
EEdlin@perkinscoie.com
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, California 94105
Telephone: +1.415.344.7000
Facsimile: +1.415.344.7050

Janice L. Ta (appearance pro hac vice)
JTa@perkinscoie.com
PERKINS COIE LLP
405 Colorado Street Suite 1700
Austin, Texas 78701
Telephone: +1.737.256.6100
Facsimile: +1.737.256.6300

Jassiem N. Moore (appearance pro hac vice)
JassiemMoore@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000

Brianna Kadjo, Bar No. 303336
BKadjo@perkinscoie.com
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, Colorado 80202-5255
Telephone: +1.303.291.2300
Facsimile: +1.303.291.2400

*Attorneys for Defendant NETFLIX, INC.*