Susan S.Q. Kalra (CA State Bar No. 16740)
Email: skalra@rameyfirm.com
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, TX 77006
Telephone: (800) 993-7499
Fax: (832) 900-4941

William P. Ramey, III (Admitted pro *hac vice*)
Email: wramey@rameyfirm.com
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, TX 77006
Telephone: (713) 426-3923
Fax: (832) 689-9175

*Attorneys for Defendant*
LAURI VALJAKKA

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| **LAURI VALJAKKA,**<br><br>Plaintiff,<br><br>v.<br><br>**NETFLIX, INC.,**<br><br>Defendant. | Case No. 4:22-SC-01490-JST<br><br>**VALJAKKA'S REPLY IN SUPPORT OF ITS DAUBERT MOTION TO EXCLUDE TESTIMONY OF NETFLIX'S DESIGNATED EXPERT DR. NISHA MODY**<br><br>Hearing date: Nov. 30, 2023<br>Time: 2:00 p.m.<br>Judge:   Hon. Jon S. Tigar<br>Courtroom 6 – 2nd Floor |

Netflix argues in its Response Brief[1] that Dr. Mody's opinions concerning the Valjakka/Setala Agreement should not be excluded because: (1) her analysis exceeds the "baseline comparability" burden for admissibility; and (2) the Valjakka/Setala Agreement is probative of value of the patent. Both arguments are wrong.

 This is not a matter of degree of compatibility, as Netflix contends. Dr. Mody's analysis fundamentally misses the cardinal requirement of a hypothetical negotiation that a comparable license must be between a willing licensor and a willing licensee. Neither Dr. Mody in her report nor Netflix in its briefing present any authority to justify using of a sale agreement between two co-inventors, neither of which is a willing licensee.

The Valjakka/Setala Agreement is also not comparable because it is not an arms-length transaction between a willing licensor and a willing licensee, nor has Netflix offered any authority showing that a sale agreement between two inventors can be.

Furthermore, the Valjakka/Setala Agreement is not probative of the value of the '167 Patent. Dr. Mody ignores that the agreement was contemplated to compensate Mr. Setala for his investment and lacks any type of economic valuation of the patent.[2]

In sum, Dr. Mody's analysis of the Valjakka/Setala Agreement is far from "quibbles over the details," but is fundamentally flawed, unreliable, and not probative of the patent value. The Court should act as a gatekeeper to exclude it from getting to the jury.

I.   ARGUMENT

   A. **Netflix's Compatibility Argument Misses the Mark Because the Sale Agreement is Fundamentally Incompatible**

      1) *Valjakka/Setala Agreement is not between a willing licensor and licensee*

---

[1] ECF 187 ("Netflix Response").
[2] *Id.* at Paragraph 148.

Netflix's expert Dr. Mody has failed to establish the requisite "baseline compatibility" of the January 2014 Sale Agreement between between the two patent owners, Valjakka and Setala. *See Bio-Rad Lab'ys, Inc. v 10X Genomics Inc.*, 967 F.3d 1353, 1374 (Fed. Cir. 2020). All case law Netflix attempts to rely on is factually distinct and therefore inapplicable.[3]

In *Bio-Rad*, the issue was technological compatibility of the licenses, which the Federal Circuit court concluded was a matter of degree to be addressed through cross examination. *Id.* at 1373-74. By contrast, the issue here is the complete absence of a willing licensee as a necessary party to the transaction between two patent owners to the Valjakka/Setala Agreement, which is a fundamental deficiency rather than a matter of degree.

Likewise, in *SSL Services*, the Federal Circuit court held that the agreements involving relevant technology and close to the hypothetical negotiation date between the <u>actual parties</u> to the litigation were probative. *See SSL Servs., LLC v. Citrix Sys., Inc.*, 769 F.3d 1073, 1093 (Fed. Cir. 2014). As in *Bio-Rad*, the agreements in *SSL Services* involved a licensee and a licensor, not two co-owners of a patent as in the Valjakka/Setala Agreement. Thus, the *SSL Services* case is also unhelpful to Netflix.

The *TVIIM, LLC* case involves facts that are similarly unhelpful to Netflix. *See TVIIM, LLC. v. McAffee, Inc.*, No. 13-CV-04545-HSG, 2015 WL 4148354, at *3 (N.D. Cal. July 9, 2015). The plaintiff in *TVIIM, LLC* argued that the defendant's expert relied on an acquisition of rights rather than a license that was not economically comparable. *Id.* The court in *TVIIM, LLC* held that plaintiff's challenge went to the degree of comparability of the agreement and the expert's ultimate conclusions rather than methodology, and therefore denied the motion to strike. *Id.* at *3-4. But

---

[3] Netflix Response at 3.

similar to the agreements in *Bio-Rad* and *SSL Services*, the agreement in *TVIIM, LLC* also involved a licensor and licensee, not two patent owners as in the present Valjakka/Setala Agreement.

Furthermore, Netflix's reliance on *Palantir Technologies* fares no better. *See Palantir Techs. v. Abramowitz*, No. 19-cv-06879-BLF, at *19 (N.D. Cal. Nov. 3, 2022). The court in *Palantir* addressed the technological and economic compatibility of the licenses relied on by Dr. Mody's, concluding that they met "baseline compatibility." *Id.* at *19. But the licenses Dr. Mody relied on in *Palantir* were between a licensee and a licensor, which is very distinct the co-inventor sale agreement she purports to rely on in the present case.

*2) Valjakka/Setala Agreement is not an arms-length transaction*

As a separate matter, Dr. Mody ignores that a sale agreement between two patent owners designed to return one owner's capital investment is not an arms-length transaction required for hypothetical negotiation.[4] The case law Netflix relies on are inapposite because, as addressed above, the two patent owners are not a willing licensor and a willing licensee.[5] Nor is Netflix's recital of the patent statute of any help.[6] The issue is now whether a patent owner can, as a general matter, license the invention but whether a co-owner of the same patent can be considered a licensor. Netflix has failed to offer any authority in support of its incorrect methodology.

Tellingly, Netflix attempts to draw a comparison to the 2021 CDN License Agreement (which has since been retroactively canceled) arguing that it is a "separate validation check for Dr. Mody's analysis of the value of the '167 Patent based on the [Sale] Agreement".[7] But CDN License

---

[4] Netflix Response at 7-9.
[5] *Id.* at 8.
[6] *Id.* (quoting 35 U.S. C. §262).
[7] Netflix Response at 7.

is not an arms-length transaction using Netflix's own definition[8] because Valjakka is on both sides of the agreement.[9] Thus, Netflix's reliance on the CDN License is improper.

Bottomline, Valjakka's *Daubert* challenge goes to reliability of Dr. Mody's underlying methodology, as opposed to a matter of degree of compatibility. Her use of a sale agreement between two inventors, as opposed to a willing licensor and willing licensee required for a hypothetical negotiation, if fundamentally unreliable and improper.  Couching this incompatible agreement as a "starting benchmark rate" and applying "accounting" adjustments cannot salvage this deficiency.[10]  Because Netflix has failed to establish baseline compatibility of the Valjakka/Setala Agreement, Dr. Mody's opinions must be excluded as unreliable.

### B. Valjakka/Setala Agreement Is Not Probative of the Value of the Patent

In addition to Dr. Mody's unreliable methodology, her opinions concerning the Valjakka/Setala Agreement are also unhelpful to the jury because the agreement is not probative of the value of the '167 patent. As argued in Valjakka's Opening Brief, the agreement is not tied to any patent valuation but is rather based on returning Mr. Setala's capital investment as well as a speculative and uncertain possibility of additional payments.[11]

Netflix's Response fails to address Valjakka's probativeness argument and unsuccessfully attempts to conflate it with compatibility.[12] But compatibility and probativeness are two distinct issues. In essence, Netflix makes a bizarre and incorrect argument that Valjakka/Setala Agreement must be probative because it is compatible, having been entered into close to the date of the hypothetical

---

[8] Response at 8 (Netflix defining "arms-length transaction" as "between two parties . . . conducted *as if the parties were strangers*, so that no conflict of interest arises.") (emphasis added).
[9] ECF 173-3, Held Opening Report, at Paragraph 61.
[10] Netflix Response at 4.
[11] ECF 173-3, Held Opening Report, at Paragraph 148.
[12] Response at 6-7.

negotiation.[13]

As explained above, the Valjakka/Setala Agreement is fundamentally incompatible, and thus the date of the agreement is irrelevant. It is not between a willing licensor and a willing licensee. Netflix's reliance on the same case law as with respect to license compatibility, is wrong for the same reasons as above. Likewise, Netflix's reliance on the CDN License in attempt to show probativeness of the Valjakka/Setala Agreement is flawed for the same reasons and as addressed in Mr. Held's report.[14]

Incompatibility aside, Netflix's also seems to misunderstand Valjakka's argument with respect to lack of probative value based on the nature of the agreement. Netflix fails to point to any type of patent or technology valuation contained in the agreement, admitting that the agreement on its face specifically mentions returning Mr. Setala's capital investment.[15] Valjakka does not dispute that a sale agreement (as opposed to a license) can potentially be probative of the value of a patent or that a patent owner can be a willing licensor. But the specific sale transaction here does not involve any type of patent valuation nor a willing licensor-licensee relationship.

As such, the Court should also exclude Dr. Mody's testimony concerning the Valjakka/Setala Agreement as not probative of the value of the '167 Patent.

## II. CONCLUSION

For all the foregoing reasons, the Court should exclude Dr. Mody's testimony and opinions concerning the Valjakka/Setala Agreement as unreliable and not probative of the patent value.

---

[13] *Id.* at 6.
[14] ECF 173-3, Held Opening Report, at Paragraph 61.
[15] Response at 7.

DATED: October 12, 2023

Respectfully submitted,

RAMEY LLP

By:  */s/ Susan S.Q. Kalra*
Susan S. Q. Kalra CA SBN 167940
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
Telephone: (800) 993-7499
Fax: (832) 900-4941
Email: skalra@rameyfirm.com

RAMEY LLP

By:  */s/ William P. Ramey, III*
William P. Ramey III (Admitted *pro hac vice*)
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
Telephone: (713) 426-3923
Fax: (832) 689-9175
Email: wramey@rameyfirm.com

***Attorneys for Plaintiff***
***LAURI VALJAKKA***