Sarah E. Piepmeier, Bar No. 227094
SPiepmeier@perkinscoie.com
Elise Edlin, Bar No. 293756
EEdlin@perkinscoie.com
Angela C. Griggs, Bar No. 340652
AGriggs@perkinscoie.com
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, California 94105
Telephone: +1.415.344.7000
Facsimile:  +1.415.344.7050

[Additional counsel listed on signature page]

*Attorneys for Defendant NETFLIX, INC.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| LAURI VALJAKKA,<br><br>           Plaintiff,<br><br>     v.<br><br>NETFLIX, INC.,<br><br>           Defendant. | Case No. 4:22-cv-01490-JST<br><br>**DEFENDANT NETFLIX, INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE PORTIONS OF THE OPINIONS AND TESTIMONY OF ROBERT HELD**<br><br>Date:    November 30, 2023<br>Time:    2:00pm<br>Judge:   Honorable Jon S. Tigar |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 2

    A. Mr. Held's "Marking Up" Formula Remains Unsupported and Unreliable. .......... 2

    B. Mr. Held Fails to Apportion His Royalty Rate or Royalty Base to Account for Non-infringing Features. ................................................................................ 3

        1. Royalty Rate: Mr. Held's Claimed "Two-Step Apportionment" Fails to Apportion Beyond the Alleged SSPPU and Account for Non-Infringing Functionalities. ............................................................. 4

            a. Mr. Held's First Step Is Not an Apportionment. ........................... 4

            b. Mr. Held's Second Step Does Not Exclude Non-Patented Functionalities of Open Connect. ...................................................... 5

        2. Royalty Base: Mr. Held Attributes His Entire OC Generated Revenue to His Base and Does Not Apportion to Exclude Non-Patented Functionalities. ................................................................................. 6

    C. Valjakka's New Opinions and Explanations Cannot Salvage Mr. Held's Flawed Analysis. .............................................................................................. 7

        1. Mr. Held Relies on Outdated and Incomplete Data. ................................. 7

        2. Mr. Held's Exclusion of Netflix Costs From His Total Costs Is Inexcusable. ................................................................................................. 8

        3. Valjakka Improperly Relies on the Declaration of an Undisclosed Witness (Juha Setälä) to Introduce Irrelevant New Facts. ......................... 9

    D. Valjakka Should Not Be Permitted to Cure His Flawed Methodology. ............... 10

III. CONCLUSION .................................................................................................................. 11

-i-

4:22-CV-01490-JST
DEFENDANT NETFLIX, INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE PORTIONS OF THE OPINIONS AND TESTIMONY OF ROBERT HELD

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Asetek Danmark A/S v. CMI USA, Inc.*,
 No. 13-CV-00457-JST, 2014 WL 6997670 (N.D. Cal. Dec. 9, 2014) .................................. 10

*Daubert v. Merrell Dow Pharms., Inc.*,
 43 F.3d 1311 (9th Cir. 1995) ........................................................................................... 2, 3

*Ericsson, Inc. v. D-Link Sys., Inc.*,
 773 F.3d 1201 (Fed. Cir. 2014) ........................................................................................... 3

*Exmark Mfg Co. v. Briggs & Stratton Power Prods. Grp., LLC*,
 879 F.3d 1332 (Fed. Cir. 2018) ........................................................................................... 3

*GPNE Corp. v. Apple, Inc.*,
 No. 12-CV-02885-LHK, 2014 WL 1494247 (N.D. Cal. Apr. 16, 2014) ............................. 4

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
 694 F.3d 51 (Fed. Cir. 2012) .......................................................................................... 9, 10

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
 10 F.4th 1358 (Fed. Cir. 2021) .......................................................................................... 10

*Network Protec. Scis., LLC v. Fortinet, Inc.*,
 No. C 12-01106 WHA, 2013 WL 5402089 (N.D. Cal. Sept. 26, 2013) ...................... 10, 11

*Nortek Air Sols., LLC v. Energy Lab Corp.*,
 No. 14-CV-02919-BLF, 2016 WL 3856250 (N.D. Cal. July 15, 2016) .............................. 5

*Virnetx, Inc. v. Cisco Sys., Inc.*,
 767 F.3d 1308 (Fed. Cir. 2014) .................................................................................. 3, 5, 6

-2-

4:22-CV-01490-JST
DEFENDANT NETFLIX, INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE PORTIONS OF
THE OPINIONS AND TESTIMONY OF ROBERT HELD

## I. INTRODUCTION

Valjakka's Opposition Motion ("Opposition" or "Op. Br.", Dkt. 189) introduces a slew of new attorney arguments and inadmissible alleged facts well after the close of fact discovery to obscure Mr. Held's fatally flawed analysis and create the illusion of jury-worthy facts. But Mr. Held's methodology remains unsupported and improper: (1) the formula underlying his royalty base remains unsupported, (2) he makes no attempt to apportion beyond Open Connect (or "OC"), the claimed smallest saleable patent practicing unit ("SSPPU"), because he applies a royalty rate that is 100% of alleged Open Connect ("OC") profit margins to a royalty base that is 100% of alleged Open Connect revenue, and (3) he relies on never-disclosed facts and attorney argument to attempt to patch holes Netflix pointed out in his opinion.

First and foremost, Mr. Held's "marking up" formula, which he uses to determine his alleged "OC-Generated US Streaming Revenue" and the foundation of his entire royalty base calculation, **remains unsupported**. Valjakka's Opposition ironically highlights the glaring omission it most wishes to obscure:

> This is the formula Mr. Held presented in paragraph 195 of the Held Report as the estimation of Open Connect-generated revenue. Business professionals and financial analysts refer to this as a markup from cost of revenue to determine the revenue, see ___ (need a citation).

Opposition at 14 (highlighting in original).

Second, Mr. Held's alleged "two-step apportionment" does not apportion beyond the alleged total value of Open Connect, his claimed SSPPU, as he is **legally required to do**. Indeed, the first step of Mr. Held's "two-step apportionment" is not, in fact, an apportionment because the inputs to the analysis are Netflix's **total contribution margins** for its entire U.S. streaming business. Mr. Held admitted that he did not even ask Valjakka's technical expert, Dr. Kozek, about non-infringing features despite Dr. Kozek admitting that Valjakka only accuses the "fill logic" functionality of Open Connect. Mr. Held should have considered both patented and non-patented features **of Open Connect** in his apportionment analysis by making an effort to account for the value attributed to other functionalities.

-1-

4:22-CV-01490-JST
DEFENDANT NETFLIX, INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE PORTIONS OF THE OPINIONS AND TESTIMONY OF ROBERT HELD

Finally, Valjakka introduces new undisclosed opinions to justify errors that conveniently avoided substantial Netflix costs. Valjakka's belated excuses for omitting correct Netflix data from updated SEC filings were never previously disclosed and directly contradict his analysis and deposition testimony. Mr. Held could not explain these problems in deposition, and Valjakka's lawyers should not be allowed to do that for him now. Valjakka also improperly cites to a new declaration of a previously undisclosed witness to make unfounded claims about the hypothetical negotiation. None of this passes muster under the *Daubert* standard, and Mr. Held's opinions and testimony remain unreliable and inadmissible. And allowing Valjakka to submit yet another supplemental report would likewise be a waste of time and judicial resources.

## II.     ARGUMENT

### A.     Mr. Held's "Marking Up" Formula Remains Unsupported and Unreliable.

Valjakka is unable to support Mr. Held's "marking up" formula with any industry source, or indeed any source at all, and because this formula underlies Mr. Held's entire royalty base analysis, this lack of support alone justifies exclusion. *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1317–18 (9th Cir. 1995). Netflix challenged Mr. Held's "marking up" formula as an unsupported and speculative assumption that is not generally accepted in the economics or accounting communities. Netflix Motion ("Motion," Dkt. 179) at 11:11–12:3. In response, Valjakka claims that this formula is "a simple re-arrangement of the gross margin formula" and that "[b]usiness professionals and financial analysts refer to this as a markup from cost of revenue to determine the revenue." Opposition at 14:25–15:1. But Valjakka still cites to nothing other than his own expert as a source for these statements and even highlights the issue by filing his brief without removing the attorney comment noting the need for support. Opposition at 14:27. Indeed, Valjakka "need[s] a citation" to support Mr. Held's formula, as this "marking up" formula is the source of Mr. Held's "OC-generated revenue" and underlies his entire royalty base calculation. Dkt. 191-17 ("Held Report") ¶¶188–96. And the fact that Mr. Held needed to rely on SEC filings to obtain revenues for a time period outside of the damages window (Opposition at 14) does not excuse or justify his use of an unsupported formula to create a data-point ("OC-generated revenue")

-2-

4:22-CV-01490-JST
DEFENDANT NETFLIX, INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE PORTIONS OF
THE OPINIONS AND TESTIMONY OF ROBERT HELD

that Netflix does not track or report. With no support that Mr. Held's formula is "grounded in the methods of science" and "subjected to normal scientific scrutiny through peer review and publication," Mr. Held's "marking up" formula and his analysis relying on this formula are unreliable in violation of *Daubert* standards. *See Daubert,* 43 F.3d at 1317–18.

**B.     Mr. Held Fails to Apportion His Royalty Rate or Royalty Base to Account for Non-infringing Features.**

Valjakka's circuitous and inaccurate explanations of Mr. Held's calculations cannot conceal the fundamental failure to apportion, which is required by binding Federal Circuit precedent. *See e.g.*, *Exmark Mfg Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018); *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326–29 (Fed. Cir. 2014); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). As explained in Netflix's Motion and below, Mr. Held failed to apportion his royalty rate or royalty base from his claimed SSPPU of "the entire Open Connect System" to account for the non-infringing features. *See* Dkt. 179 at 8:1–11, 9:9–10:5 (citing cases). Mr. Held relies on alleged total Open Connect revenues for his royalty base (Dkt. 191-17 ¶199, Exhibit 7a) and entire Open Connect profit margins for his royalty rate (Dkt. 191-17 ¶181, Dkt. 173-4, Exhibit 8b). But "[a] patentee may assess damages based on the entire market value of the accused product *only where* the patented feature creates the basis for customer demand or substantially creates the value of the component parts. . . . In the absence of such a showing, principles of apportionment apply." *Virnetx, Inc.*, 767 F.3d at 1326 (cleaned up). Dr. Kozek confirmed during his deposition that the feature of Open Connect "attributable to the asserted claims" is the very specific "Open Connect fill logic." *See* Griggs Decl., Ex. 1 (Dkt. 178-04) 199:14–200:6. Mr. Held has not demonstrated that this "fill logic" is the "basis for consumer demand" or conducted any surveys or assessed features associated with Open Connect. Moreover, Mr. Held admitted during deposition that drivers other than the accused "fill logic" of Open Connect create demand for Netflix. Dkt. 191-16 120:6–9 ("Q: Okay. So there are other demand drivers for Netflix's streaming service; right? . . . The Witness: Yes."). Therefore, Mr. Held cannot rely on Open Connect revenues or Open Connect profit margins for his royalty base or royalty rate

without further apportionment; doing so violates the entire market value rule. *See VirnetX, Inc.*, 767 F.3d at 1327–29.

Valjakka argues that *VirnetX, Inc.*, 767 F.3d 1308 (Fed. Cir. 2014) "does not completely foreclose the fact that in rare occasions… it may be appropriate to base damages may [*sic*] on the value of the multi-component product." Opposition at 17:25–28. But the *VirnetX* court held that a patentee must apportion to account for non-infringing features or show that the **patented feature** drove consumer demand to fall into the narrow exception allowed by the entire market value rule. *Id.*, at 1328–29. And a failure to apportion constitutes an "error [that] cannot be considered harmless" *Id.* at 1328. Here, Mr. Held has not even alleged that the accused fill functionality drives consumer demand for Open Connect, and therefore must apportion from the SSPPU to determine the value of the patented functionality. Mr. Held has not done so.

Valjakka also attempts to distinguish *GPNE Corp. v. Apple, Inc.*, No. 12-CV-02885-LHK, 2014 WL 1494247 (N.D. Cal. Apr. 16, 2014), claiming that because the '167 Patent contemplates "an innovative data communication network" instead of a "node" like in *GPNE*, this justifies Mr. Held's conclusion that Open Connect is the SSPPU and no further apportionment is required. *See* Opposition at 17. But for purposes of this motion, Netflix does not dispute whether Open Connect is the SSPPU as the parties in *GPNE* were. Here, the issue is that Mr. Held violates the entire market value rule because he does not apportion for non-infringing features or demonstrate that the accused functionality (Open Connect's fill logic) is the main driver for consumer demand. Dkt. 191-16 at 119:21–120:9.

        **1.**     **Royalty Rate: Mr. Held's Claimed "Two-Step Apportionment" Fails to Apportion Beyond the Alleged SSPPU and Account for Non-Infringing Functionalities.**

Valjakka claims that Mr. Held performed a "two-step" apportionment for his royalty rate calculation. But the first step is not an apportionment, and the second step does not apportion to account for unpatented features of Open Connect as required and discussed above.

        **a.**     **Mr. Held's First Step Is Not an Apportionment.**

Mr. Held's first step is not an apportionment because Mr. Held simply calculates the

-4-

4:22-CV-01490-JST
DEFENDANT NETFLIX, INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE PORTIONS OF THE OPINIONS AND TESTIMONY OF ROBERT HELD

increase in Netflix's ***total contribution margins*** between two time periods. The source data is Netflix total contribution margins, and Mr. Held does nothing in this step to remove profits derived from other Netflix value drivers. The result simply represents the change in Netflix's ***total contributions margins*** over that time period.[1]

Valjakka claims that the result of his first step subtraction is "assumed to have included the full contribution of the Open Connect technology." Opposition at 7:14–15. But that is beside the point and not disputed: it includes the full contribution of Open Connect technology ***as well as the contribution of other features and functionalities*** such as the rise of streaming services, the bankruptcy of its competitor Blockbuster, the increase in Netflix subscribers, the new production of Netflix original content, and various other contributing factors to Netflix's increasing profits between 2012 and 2016. *See* Dkt. 191-7 Exhibit 3b; ¶¶ 164, 166 (referring to Exhibit 3b as showing "the profitability of Netflix's US streaming business"). His only attempt to eliminate those is contained in step 2 of his analysis, as discussed below.

### b. Mr. Held's Second Step Does Not Exclude Non-Patented Functionalities of Open Connect.

Mr. Held's second step is his sole attempt at apportionment, but the output of his calculation only apportions to Open Connect's total profit margins and therefore makes no attempt to exclude non-patented features of the SSPPU. Dkt. 191-17 ¶180; Dkt. 173-4 ¶8. Mr. Held admits that this results in his "Incremental Profit Margin Attributable to OC Technology," and there is no dispute that this value ultimately becomes his ending royalty rate. Dkt. 191-16 at 220:3–221:13. But this should be the ***starting point of his apportionment***, as Mr. Held claims that Open Connect is the SSPPU (*id.*, 109:13–22), and he provides no evidence or argument that the accused fill functionality of Open Connect is the driver of consumer demand. *See, supra,* Section II.B.; *see Virnetx, Inc.*, 767 F.3d at 1326–29 ("a patentee's obligation to apportion damages only to the patented features does not end with the identification of the smallest salable unit if that unit still contains significant

---

[1] Valjakka does not address Netflix's argument that Mr. Held used simple averages instead of weighted averages for his total contribution margins, an error that contributes to his significant overestimation of damages. *See* Motion at 15 n. 15.

-5-

unpatented features."); *Nortek Air Sols., LLC v. Energy Lab Corp.*, No. 14-CV-02919-BLF, 2016 WL 3856250, at *5 (N.D. Cal. July 15, 2016) (holding same). Mr. Held does not perform any further apportionment *within* Open Connect (Netflix's entire CDN system) to account for non-patented features, and he admits that he did not analyze the contributions of patented versus non-patented features of Open Connect. Dkt. 191-16 at 114:24–115:5.

Because Mr. Held's second step in his "two-step apportionment" analysis does not to appropriately consider non-infringing features and his apportionment stops at his claimed SSPPU, Mr. Held's royalty rate analysis is unreliable and should be excluded.

**2.    Royalty Base: Mr. Held Attributes His Entire OC Generated Revenue to His Base and Does Not Apportion to Exclude Non-Patented Functionalities.**

Mr. Held's royalty base is his entire calculated "OC-Generated US Streaming Revenue," and he admits that he did not apportion this revenue to exclude non-patented functionalities. *See* Dkt. 191-16 at 276:21- 277:8 ("Q: So you include 100 percent of what you consider all OC-generated revenue in your royalty base? ... The Witness: Yes. That's what the table calculates."), 277:10-19 ("Q: . . . I'm talking about, [*sic*] looking at the royalty base of OC-generated revenue, you do not reduce it any further to account for features within Open Connect that do or do not practice the patent? ... The Witness: No. There's no way to know that."). Valjakka's argument that "Mr. Held concluded that no further apportionment is needed because 'the SSPPU is the OCA device and the functions it performs in the CDN system'" is unsupported and contrary to this Court's and the Federal Circuit's precedent. Opposition at 17:4–5. Binding precedent requires Mr. Held to apportion **beyond** the claimed SSPPU. *See supra* Section II.B. *See also*, *VirnetX, Inc.*, 767 F.3d at 1327 (rejecting a jury instruction that "mistakenly suggest[ed] that when the smallest salable unit is used as the royalty base, there is necessarily no further constraint on the selection of the base").

As discussed above, the Federal Circuit in *VirnetX, Inc.* found that "[t]he law requires patentees to apportion the royalty down to a reasonable estimate of the value of its claimed technology, or else establish that its patented technology drove demand for the entire product."

-6-

4:22-CV-01490-JST
DEFENDANT NETFLIX, INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE PORTIONS OF THE OPINIONS AND TESTIMONY OF ROBERT HELD

*Virnetx, Inc.* 767 F.3d at 1329. Mr. Held has done neither and admitted during deposition that there are other drivers of demand for Netflix. Dkt. 191-16 at 120: 6–9. Mr. Held has not met his obligation to properly apportion his royalty base or his royalty rate, and both are inadmissible and must be excluded.

### C. Valjakka's New Opinions and Explanations Cannot Salvage Mr. Held's Flawed Analysis.

#### 1. Mr. Held Relies on Outdated and Incomplete Data.

Sitting in deposition just a few weeks ago, Mr. Held could not explain why he failed to use Netflix's revised SEC filings. *See* Dkt. 191-16 at 199:6–12. Now, Valjakka's counsel advances a new argument that Netflix's 2013 and 2018 reclassification of its annual domestic streaming contribution margins "will have no impact on the calculation of the incremental profit margin," essentially because they cancel each other out. *See* Opposition at 10–12 ("The 2018 reclassification essentially reversed what the 2013 reclassification did"). But Valjakka never addresses Mr. Held's admissions during deposition that (1) he was aware Netflix reclassified its expenses in 2018, (2) this changed the contribution margins, and (3) he did not use the revised contribution margins. *See* Dkt. 191-16 at 192:24–199:12. ("Q: And are you aware that in 2018, in Netflix's 10-K from 2018, Netflix reclassified some of its expenses and, therefore, also changed their contribution margins for past years? A: Yes. . . . Q: [Y]ou didn't update anything for 2018 either, with the revised contribution margins? . . . The Witness: No."). Moreover, Mr. Held could provide no explanation for why he did not revise his calculation with these updated margins, despite submitting a Supplemental Report.[2] *See id.,* at 199:6–12 ("Q: And then, so if you knew that this reclassification happened, why did you not revise your report to put the accurate numbers in your data? . . . The Witness: I would have to go back and study my report to figure that out."). Simply put, Valjakka cannot now proffer and rely on attorney arguments to justify failures that his own expert did not identify and could not explain during deposition.

---

[2] In contrast, Dr. Mody *did* consider both the 2013 and 2018 reclassifications and presents a detailed analysis as to why the 2013 reclassification did not impact the subsequent contribution margins. *See* Dkt. 173-5 Exhibit R3b.

Valjakka similarly ignores Netflix's demonstration that Mr. Held uses the OC-generated revenue percentage from Q1 2016 as the input for the subsequent nine years when data was available to calculate them individually, stating that his calculated percentage "represents an *underestimation* of the Open Connect technology's contribution". Dkt. 189 at 15:23–16:27. But the data directly contradict this statement because the percentages are **lower** in subsequent years. *See* Dkt. 173-5 ¶53 ("But note that each successive annual percentage is lower than the preceding percentage, and each is lower than the [percentage] which Mr. Held assumes for those years and beyond."). Valjakka's belated and contradictory explanation cannot change the underlying data. His calculations rest on incomplete, incorrect, and unreliable data and should be excluded.

### 2. Mr. Held's Exclusion of Netflix Costs From His Total Costs Is Inexcusable.

Netflix's total costs of revenues are more than just the seven cost centers that Mr. Held relies upon for his royalty rate calculation. Dkt. 179-4 at 48:6–23. This is an undisputed fact. Dkt. 179 at 15:1–8. Valjakka does not dispute that Mr. Held possessed all data and costs of revenues or that some were excluded from Mr. Held's analysis. And Mr. Held admits that if this is the case, his analysis and his royalty rate would change. Dkt. 191-16 at 156:5–11. Mr. Held's improper reliance on only seven cost centers led to significant underreporting that renders his royalty rate unreliable. *See* Motion at 14–15.

When directed to testimony from Netflix's witness, which conclusively shows that Netflix's total revenues are more than what was presented in the seven cost centers on the summary tab of the produced spreadsheet, Mr. Held admits that "[i]f what you're saying is true and the summary tab is incorrect, then we would have to take into account that and reformulate [my calculation].") Dkt. 191-16 at 152:2–10. Indeed, Mr. Held continues "we'll have to spend time and redo this Excel sheet and make sure all the formulas are correct, and then if it changes the input to [*sic*] methodology, **then it will obviously change the results of our methodology**". *Id.*, at 156:5–11 (emphasis added). When confronted with the possibility that he relied on incorrect assumptions about the data, Mr. Held had admitted that this would impact his final royalty rate. Notably, he also

-8-

4:22-CV-01490-JST
DEFENDANT NETFLIX, INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE PORTIONS OF THE OPINIONS AND TESTIMONY OF ROBERT HELD

disclosed that his "team didn't take the time to validate the data that was given to us by Netflix." *Id.*, at 154:2–8.

Valjakka's new argument that including all of Netflix's costs (as Mr. Held purports, but fails, to do) would be double counting the alleged apportionment in step 1 of his rate calculation (Opposition at 13) is, again, simply attorney argument. And it is wrong. As discussed in Section II.B.1.a, step 1 of his rate calculation does not exclude any profits related to unaccused features or functionalities, so there is no double-counting. Regardless, the jury should not evaluate Valjakka's attorneys' justification when his expert admitted that all costs should have been included. Dkt. 191-16 at 140:19–23 ("Q: And you're saying that that denominator, what you're dividing by, is the total Netflix costs; right? . . . The Witness: "That are in this sheet, yes.""). Mr. Held admits that the denominator of his equation should be total Netflix costs, and Valjakka's new (incorrect) double-counting argument cannot change that the input he used (seven cost centers) is not the input he claims it to be (total Netflix costs). When the correct costs are used, Mr. Held's OC-related costs as a percent of **total costs and expenses** decreases significantly. *See* Motion at 6–7.

### 3. Valjakka Improperly Relies on the Declaration of an Undisclosed Witness (Juha Setälä) to Introduce Irrelevant New Facts.

In response to Netflix's argument that Mr. Held improperly concludes that Mr. Valjakka would be the party at the hypothetical negotiation, Valjakka alleges that Juha Setälä "would not have engaged in licensing negotiations with Netflix, and had Netflix approached Setala [*sic*] for such a purpose, Setala [*sic*] would have referred Netflix to Valjakka." Opposition at 18:19–21 (citing Setälä declaration). Valjakka relies on a new declaration from Mr. Setälä to support his conclusion that Mr. Valjakka is the legitimate party at the hypothetical negotiation.[3]

Notably, in the over three years this case has been pending, Valjakka never once disclosed Mr. Setälä as a witness or made him available for deposition during fact discovery, even though Netflix propounded several discovery requests specifically asking for "assignments" to the '167

---

[3] Valjakka filed a new declaration from Mr. Setälä as an Exhibit to his Opposition to Netflix's Motion for Summary Judgment (Dkt. 188) and cites to it here (Dkt. 189 at 18). Netflix moves to strike Mr. Setälä's Declaration (Dkt. 188–24) and will brief that motion in conjunction with its Reply ISO of Netflix's Motion for Summary Judgment.

Patent, including "identifying the persons and/or entities thereto" (Netflix Interrogatory No. 7), and "[a]ll Documents and Things relating to any current and former ownership, titles, transfer, assignment" (Netflix RFP No. 31).

Even if the disclosure were timely and proper (which it is not), it does not support Valjakka's contention. The correct analysis is to evaluate how the parties would have acted at the time of the hypothetical negotiation. *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 76 (Fed. Cir. 2012). In other words, the parties would not have had the gift of hindsight. Mr. Setälä's *current* statements about his willingness to license 10 years ago are irrelevant. *See id.* Regardless, Valjakka cannot rely on statements that Mr. Held did not consider in his analysis to justify his improper legal conclusion that Mr. Valjakka is the legitimate party at the hypothetical negotiation table. *See MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1370–71 (Fed. Cir. 2021) (affirming the district court's decision to exclude the damages expert's opinion based on documents plaintiff had failed to provide in response to defendant's discovery responses); *Asetek Danmark A/S v. CMI USA, Inc.*, No. 13-CV-00457-JST, 2014 WL 6997670, at *2 (N.D. Cal. Dec. 9, 2014) (excluding expert's opinion that relied on testimony disclosed after submission of his report in part because the opposing party was "unable to rebut it adequately or to cross-examine [the expert] prior to trial."). The Setälä declaration should be excluded along with Mr. Held's analysis.

### D. Valjakka Should Not Be Permitted to Cure His Flawed Methodology.

Mr. Held's underlying methodology is irreparably deficient, and Netflix would be greatly prejudiced if Mr. Held were permitted the complete re-do that would be required to correct the problems with his unsupported methodologies. Indeed, as explained above, Mr. Held cannot cure his unsupportable "marking up" formula or his failure to apportion to the patented feature without providing a completely new analysis. Dkt. 191-17 ¶¶194–96 (relying on the "marking up formula" to calculated royalty base); ¶202 (no apportionment of royalty base); ¶¶151–83 (no apportionment of royalty rate).

Furthermore, even if he were allowed to correct his data-entry or mathematical errors, no changes in mathematical inputs can remedy his flawed and unsupported methodology. "[W]here

-10-

4:22-CV-01490-JST
DEFENDANT NETFLIX, INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE PORTIONS OF
THE OPINIONS AND TESTIMONY OF ROBERT HELD

the report is not even close, there is a positive need to deny a second bite in order to encourage candor in the first place." *Network Protec. Scis., LLC v. Fortinet, Inc.*, No. C 12-01106 WHA, 2013 WL 5402089, at *8 (N.D. Cal. Sept. 26, 2013) ("To start over with a new royalty analysis would impose prejudice on the defense as well and disrupt the Court's calendar, which is burdened with other trials set far into the future. Possibly, plaintiff can cobble together a royalty case based on other disclosed witnesses and evidence. Possibly not. If not, it is a problem clearly of plaintiff's own overreaching and it will not be allowed a second bite at the apple.") Allowing Mr. Held to submit new reports based on the same flawed methodology would not be helpful to the jury and would result in waste of judicial resources. *Id.*

### III.    CONCLUSION

Netflix respectfully requests that the Court exclude portions of the opinions and testimony of Mr. Held as described above and listed in Netflix's Motion (Dkt. 179), Section III.

-11-

4:22-CV-01490-JST
DEFENDANT NETFLIX, INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE PORTIONS OF THE OPINIONS AND TESTIMONY OF ROBERT HELD

| | | |
|---|---|---|
| 1 | Dated: October 13, 2023 | **PERKINS COIE LLP** |
| 2 | | |
| 3 | | By: /s/ *Sarah E. Piepmeier* |
| 4 | | Sarah E. Piepmeier, Bar No. 227094<br>SPiepmeier@perkinscoie.com |
| 5 | | Elise Edlin, Bar No. 293756<br>EEdlin@perkinscoie.com |
| 6 | | Angela C. Griggs, Bar No. 340652<br>AGriggs@perksincoie.com |
| 7 | | PERKINS COIE LLP<br>505 Howard Street, Suite 1000 |
| 8 | | San Francisco, California 94105<br>Telephone: +1.415.344.7000 |
| 9 | | |
| 10 | | Janice L. Ta (admitted *pro hac vice*)<br>JTa@perkinscoie.com |
| 11 | | PERKINS COIE LLP<br>405 Colorado Street Suite 1700 |
| 12 | | Austin, Texas 78701<br>Telephone: +1.737.256.6100 |
| 13 | | |
| 14 | | Jassiem N. Moore (admitted *pro hac vice*)<br>JassiemMoore@perkinscoie.com |
| 15 | | PERKINS COIE LLP<br>1201 Third Avenue, Suite 4900 |
| 16 | | Seattle, Washington 98101-3099<br>Telephone: +1.206.359.8000 |
| 17 | | |
| 18 | | Brianna Kadjo, Bar No. 303336<br>BKadjo@perkinscoie.com |
| 19 | | PERKINS COIE LLP<br>1900 Sixteenth Street, Suite 1400 |
| 20 | | Denver, Colorado 80202-5255<br>Telephone: +1.303.291.2300 |
| 21 | | |
| 22 | | Rachael D. Lamkin, Bar No. 246066<br>Karan Singh Dhadialla, Bar No. 296313 |
| 23 | | BAKER BOTTS L.L.P.<br>101 California Street, Suite 3200 |
| 24 | | San Francisco, CA 94111<br>Tel: (415) 291-6200 |
| 25 | | Rachel.lamkin@bakerbotts.com |
| 26 | | Karan.dhadialla@bakerbotts.com |
| 27 | | |
| 28 | | |

-12-

4:22-CV-01490-JST

DEFENDANT NETFLIX, INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE PORTIONS OF
THE OPINIONS AND TESTIMONY OF ROBERT HELD

Attorneys for Defendant NETFLIX, INC.

-13-

4:22-CV-01490-JST
DEFENDANT NETFLIX, INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE PORTIONS OF THE OPINIONS AND TESTIMONY OF ROBERT HELD