UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURI VALJAKKA,<br><br>        Plaintiff,<br><br>    v.<br><br>NETFLIX INC,<br><br>        Defendant. | Case No. 22-cv-01490-JST<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION**<br><br>Re: ECF No. 127 |

Before the Court is Defendant, Netflix Inc.'s motion for a preliminary injunction. ECF No. 127. The Court will grant the motion.

## I.   BACKGROUND

### A.   Parties

Netflix is a Delaware corporation headquartered in Los Gatos, California. ECF No. 75 at 3. Valjakka is the named inventor of United States Patent Nos. 8,495,167 ('167 Patent) and 10,726,102 ('102 Patent, and together with the '167 Patent, "Asserted Patents"). ECF No. 143-1 ¶ 2. The '167 Patent "provides improved data communications networks, methods of operating data communications networks, network servers, network terminals and computer programs." ECF No. 74-1 at 8. The '102 Patent "relates generally to a method of using digital rights management keys to provide access to access restricted content." ECF No. 74-1 at 25.

In 2021, Valjakka established CDN Licensing Oy ("CDN"), a Finnish entity. ECF No. 126-11 at 12. Valjakka owns 70% of CDN and retains control over the company. ECF No. 143-1 ¶¶ 3–4. CDN is "at break now" and will "need to [be] restructure[d] because of the bankruptcy."

ECF No. 127-2 at 8.[1]  Valjakka is also the founder and CEO of IPRA Technologies Oy Ltd. ("IPRA Tech"), a Finnish company that declared bankruptcy in May 2023.  *Id.* at 7.

### B. Procedural History

Valjakka originally filed this patent infringement complaint in September 2021 in the Western District of Texas.  ECF No. 1.  The case was transferred to this Court in March 2022.  ECF No. 18.  The currently operative third amended complaint was filed in December 2022.  ECF No. 74.  Netflix answered the complaint, bringing counterclaims and seeking judgment under 35 U.S.C. § 285 for attorney's fees, that same month.  ECF No. 75.  In March 2023, the parties filed a stipulation selecting mediation.  ECF No. 89.  While mediation was ongoing, the parties continued to conduct discovery.  ECF No. 77.

### C. Valjakka's Licensing Agreements with CDN

On May 12, 2023, Valjakka produced license agreements in the Finnish language pertaining to the Asserted Patents.  ECF No. 126-12 at 13.  Netflix received translations of these license agreements on May 30, 2023.  *Id.*

The translated agreements revealed that in November 2021, Valjakka granted a license to CDN for the rights in the '167 patent.  ECF No. 143-1 ¶ 5.  Thereafter, in December 2021, Valjakka granted a license to CDN for the rights in the '102 patent.  *Id.* ¶ 6.  Both licenses included the right to all litigation and licensing proceeds, including from settlement and final judgments relating to the Asserted Patents ("Enforcement Assets").  *Id.* ¶¶ 5–6.  The '167 license states that the purpose of the agreement is to "use the sales revenues obtained from the patent to cover the debts of Lauri Valjakka and IPRA Tech."  ECF No. 126-3 at 3.  (The '167 patent license and '102 patent license to CDN are collectively referred to as "Licenses.")  Although CDN now owns the rights to all Enforcement Assets, Netflix does not know whether Valjakka has transferred any Enforcement Assets to CDN.  ECF No. 126-12 at 10.

### D. Motion for Preliminary Injunction

On August 21, 2023, Netflix filed the instant motion for preliminary injunction to prevent

---

[1] The quote is from Plaintiff Valjakka's deposition.  It is unclear from the testimony to whose bankruptcy he is referring.

the potential transfer of Enforcement Assets from Valjakka to CDN under the California Uniform Voidable Transactions Act ("CUVTA"). ECF No. 126-12. Netflix asks the Court to enjoin Valjakka, "pending trial, from using, moving, concealing, transferring, or otherwise disposing of any licensing or settlement asset in his possession, custody or control." ECF No. 127-3. Simultaneously, Netflix filed motions to amend the scheduling order to allow targeted discovery on the CUVTA, and to amend its answer to add an additional counterclaim under the CUVTA. ECF Nos. 128, 129. The Court heard oral argument on September 21, 2023.

## II.   LEGAL STANDARD

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Id.* at 20. "[S]erious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Due to the exigent nature of a preliminary injunction, a court may consider hearsay, additional affidavits, and "factual allegations which have been submitted . . . by all parties." *See Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009).

## III.  DISCUSSION

Netflix argues that it is entitled to a preliminary injunction preventing the transfer of Enforcement Assets under the CUVTA. Cal. Civ. Code § 3439.07(a)(3)(A); ECF No. 126-12 at 10. Valjakka contests the merits of Netflix's motions, but also responds that the CUVTA should not apply to the facts before the Court. The Court first addresses Valjakka's arguments about the applicability of the CUVTA before reaching the merits of Netflix's motion.

### A.   The CUVTA Applies to the Alleged Transfers

Valjakka argues the Court should not apply the CUVTA for three reasons: (1) that the

1   CUVTA does not apply to transfers from or to himself; (2) that Netflix is not a creditor under the

2   CUVTA; and (3) that transfer of the assets to CDN does not place them out of Netflix's reach.

### 1.     The CUVTA Applies to Transfers between Valjakka and CDN

Valjakka argues that because transfers would be from and to himself, and not between "two separate and distinct parties," the CUVTA does not apply. ECF No. 143 at 4. Netflix responds, and the Court agrees, that Valjakka misreads the CUVTA. ECF No. 147 at 8–9.

"A fraudulent conveyance under the [CUVTA] involves 'a transfer by the debtor of property to a *third person*.'" *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1065 (N.D. Cal. 2014) (emphasis added). The CUVTA's definition of a "person" includes a corporation. Cal. Civ. Code § 3439.01(g). At the same time, it is a basic tenet of corporate law that a corporation and its stockholders are generally to be treated as separate entities. *Burnet v. Clark*, 287 U.S. 410, 415 (1932); *Abrahim & Sons Enter. v. Equilon Enter., LLC*, 292 F.3d 958, 962 (9th Cir. 2002).

Although founded by Valjakka, CDN is a distinct, foreign company. *Burnet*, 287 U.S. at 415; *Abrahim & Sons*, 292 F.3d at 962. Accordingly, a transaction from Valjakka to CDN is a transfer by the debtor to a third person. Furthermore, Valjakka admits to owning and controlling CDN. ECF No. 143-1 ¶¶ 3–4. Thus, although any transfer would be to CDN, the real owner remains the debtor Valjakka. *Lo v. Lee*, 24 Cal. App. 5th 1065, 1071 (2018) (holding that under the CUVTA, the third-person transferee "holds only an apparent title [to the transferred property] . . . the real owner being the scheming and shifty judgment debtor").

The Court concludes that the CUVTA applies to transfers between Valjakka and CDN.

### 2.     Netflix Has a Cognizable Claim for Attorney's Fees Under the CUVTA

Valjakka next argues that Netflix cannot be a "creditor" within the meaning of the CUVTA merely by asserting a 35 U.S.C. § 285 claim for attorney's fees. ECF No. 143 at 5–6. Netflix responds that its claim for Section 285 attorney's fees is the kind of "contingent" right to payment envisioned by the CUVTA. ECF No. 126-12 at 14; ECF No. 147 at 13.

A creditor is a person who has a claim, meaning "a right to payment, whether or not the right is . . . contingent[.]" Cal. Civ. Code § 3439.01(b)–(c). A "contingent liability" is "a liability that depends on the occurrence of a future and uncertain event." *Liability*, Black's Law Dictionary

(11th ed. 2019).  Courts have previously recognized claims under the CUVTA for contingent debts.  *See Virtue Glob. Holdings Ltd. v. Rearden LLC*, No. 15-CV-00797-JST, 2016 WL 9045855, at *5 (N.D. Cal. June 17, 2016).

Accordingly, the Court finds that Netflix's claim for Section 285 attorney's fees, is the type of contingent debt covered by the CUVTA.

### 3. The Transfer from Valjakka to CDN Would Put Assets Out of Reach

A creditor cannot premise a CUVTA claim on a transfer unless "the transfer puts beyond the creditor's reach property the creditor otherwise would be able to subject to the payment of debt." *Opperman*, 87 F. Supp. 3d at 1018 (citing *Mehrtash v. Mehrtash*, 93 Cal. App. 4th 75, 80 (2001) (internal modifications omitted)).  For example, assets may be out of reach if they are dissipated before the debt is paid, or if they are held by a foreign entity beyond the Court's jurisdiction.  The Supreme Court makes clear that absent exceptional circumstances, or substantial and continuous contacts, federal courts do not typically have jurisdiction over foreign corporations.  *Daimler AG v. Bauman*, 571 U.S. 117 (2014) (general jurisdiction); *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255 (2017) (specific jurisdiction).

Finally, Valjakka argues that "passing assets from one of his hands to the other does not affect [Netflix's] ability to recover a potential future debt" because "[t]he entity to which Valjakka transferred licensing rights is a part of his assets and thus any theoretical future judgment against Valjakka will necessarily include his ownership of CDN as an asset." ECF No. 143 at 5.  Netflix responds that: (1) there may be no assets to obtain given IPRA Tech's bankruptcy and CDN's restructuring, (2) this Court will have no jurisdiction over CDN as a foreign corporation with no U.S. presence, and (3) even if it did have jurisdiction, California's corporate veil piercing laws may hinder Netflix from reaching those assets via a post judgment motion.  ECF No. 147 at 7.[2]

First, the Court agrees with Netflix that given IPRA Tech's bankruptcy and CDN's restructuring, if Enforcement Assets are transferred and used to satisfy Finnish creditors, there may not be any assets in CDN's control that Netflix could reach.  Second, the Court agrees with

---

[2] Because the first two issues are dispositive, the Court does not reach Netflix's third argument.

Netflix that CDN might not be subject to the Court's jurisdiction, a point Valjakka concedes by not addressing it. The Court therefore concludes that the transfer of Enforcement Assets would put them beyond Netflix's reach.

### B. Netflix Has Met Its Burden to Show that a Preliminary Injunction Should Issue

Turning to the merits of Netflix's motion, the Court now addresses the elements Netflix must establish to prevail on its request for a preliminary injunction.

#### 1. Likelihood of Success on the Merits

First, Netflix must establish a likelihood of success on the merits of its fraudulent conveyance claim under the CUVTA. *See Winter*, 555 U.S. at 20.

##### a. The CUVTA Factors

"A creditor making a claim for relief . . . has the burden of proving the elements of the claim for relief by a preponderance of the evidence." Cal. Civ. Code § 3439.04(c). The CUVTA enumerates eleven nonexclusive factors—the "badges of fraud"—that indicate actual intent to hinder, delay, or defraud creditors. *Virtue Glob. Holdings Ltd.*, 2016 WL 9045855, at *6. "No minimum number of factors tips the scales toward actual intent." *In re Beverly*, 374 B.R. 221, 236 (B.A.P. 9th Cir. 2007).

> The CUVTA provides:
>
> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:
>
>> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor.
>>
>> . . .
>
> (b) In determining actual intent under paragraph (1) of subdivision (a), consideration may be given, among other factors, to any or all of the following:
>
>> (1) Whether the transfer or obligation was to an insider.
>>
>> (2) Whether the debtor retained possession or control of the property transferred after the transfer.
>>
>> (3) Whether the transfer or obligation was disclosed or concealed.

6

> (4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
>
> (5) Whether the transfer was of substantially all the debtor's assets.
>
> (6) Whether the debtor absconded.
>
> (7) Whether the debtor removed or concealed assets.
>
> (8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
>
> (9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
>
> (10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.
>
> (11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

Cal. Civ. Code § 3439.04. Netflix contends that several "badges of fraud" demonstrate Valjakka's fraudulent intent. ECF No. 126-12 at 16.

First, Netflix asserts that the first badge is established because "the transfer or obligation was to an insider." ECF No. 147 at 8; Cal. Civ. Code § 3439.04(b)(1). The parties agree that CDN is owned and controlled by Valjakka. ECF No. 143-1 ¶¶ 3–4. Valjakka responds that transactions to or from himself are not the kind of "insider" transactions envisioned by the CUVTA—and CDN is "himself" because it is wholly owned by him. ECF No. 143 at 4.

Because the CUVTA does not define the term "insider," the Court turns to the Bankruptcy Code. Courts in this circuit have found that the "California fraudulent conveyance law and the fraudulent transfer section of the Bankruptcy Code are similar in form and substance, and [] may be analyzed contemporaneously." *In re United Energy Corp.*, 944 F.2d 589, 594 (9th Cir. 1991); *In re 3DFX Interactive, Inc.*, 389 B.R. 842, 862 n.15 (Bankr. N.D. Cal. 2008) (citing 11 U.S.C.A. § 548; Cal. Civ. Code § 3439), *aff'd*, 585 F. App'x 626 (9th Cir. 2014); *see also Falkenstein v. Shipco Transp., Inc.*, No. CV 13-08052 BRO, 2015 WL 11256774, at *15 (C.D. Cal. Oct. 15, 2015). When the debtor is an individual, the Bankruptcy Code defines an "insider" as a

"corporation of which the debtor is a director, officer, or person in control." 11 U.S.C.A. § 101. Because Valjakka controls CDN, that entity is an insider, and the transfer of the Licenses between Valjakka and CDN constituted an insider transaction.

Second, the parties agree that Valjakka retains control over CDN. ECF No. 139 at 16; ECF No. 143-1 ¶ 4. Accordingly, the Court finds that the second badge of fraud is present because "the debtor retain[s] . . . control of the property transferred after the transfer." *Id.*; Cal. Civ. Code § 3439.04(b)(2).

Third, the Court finds that Valjakka concealed the transfer of his assets. Cal. Civ. Code § 3439.04(b)(3). Netflix contends that Valjakka's discovery and settlement conduct demonstrates his attempts to conceal the transfers to CDN via the Licenses. Netflix asserts that Valjakka did not disclose that CDN was granted nearly every right in the Asserted Patents in his interrogatory responses. ECF No. 147 at 6. Netflix also contends that Valjakka's settlement agreements made no mention of CDN owning the rights to Enforcement Assets—instead representing that Valjakka "has the right to grant the patent license" and that "no other party . . . has the right to enforce any of the patents covered by the patent license." ECF Nos. 126-5, 126-8, 126-9, 126-10. Valjakka responds that he disclosed CDN in response to Netflix's first round of interrogatories. ECF No. 143 at 9. Valjakka does not respond to the alleged misrepresentation in the settlement agreements. Instead, he argues only that Netflix "has been informed of Valjakka's right to recover on the '167 and '102 patents" and about the "specific amounts of prior recovery." ECF No. 143 at 7.

Although the Court agrees that Valjakka disclosed the *existence* of CDN in his responses to Netflix's interrogatories, the Court finds that Valjakka concealed the *actual transfer* of rights to Enforcement Assets through the Licenses during discovery and in his settlement agreements. For example, when asked in Interrogatory No. 8 to identify every entity with financial, ownership, or other interest in the Asserted Patents, Valjakka's response does not mention the Licenses or CDN or IPRA Tech. ECF No. 126-11 at 7–9. Similarly, in the settlement agreements he produced, despite the fact that the Licenses incontrovertibly state that "[t]he license is exclusive, i.e., only the Licensee can utilize the rights imputable to it, and the Licensor cannot grant parallel licenses based on the same patent to third parties," Valjakka asserted that he (and not CDN) had the right to grant

8

the patent license. ECF Nos. 126-5, 126-8, 126-9, 126-10. These facts also support a finding of the seventh badge of fraud, which is that Valjakka removed or concealed his assets. Cal. Civ. Code § 3439.04(b)(7).

Next, Netflix contends that the transfer was made after the debtor had been sued or threatened with suit because Valjakka's attorney may have informed him about the risk of attorney's fees after he commenced the lawsuit. ECF No. 126-12 at 20–21. Valjakka represents that the Licenses to CDN were granted in November and December 2021, more than a year before Netflix's claim for attorney's fees was first filed on December 23, 2022. ECF No. 143 at 8. The evidence does not support a finding that the transfer was made *after* the debtor had been sued or threatened with suit. Cal. Civ. Code § 3439.04(b)(4).

With regard to whether "the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred," Valjakka argues that "the value of infringement suits asserting the '167 and '102 patents were untested." ECF No. 143 at 7. Valjakka also asserts that he received fair market value for the patent licenses. ECF No. 143-1 ¶ 8. Valjakka's own expert, however, states that Valjakka's Licenses with CDN were not at "arms-length" and that the value of the Asserted Patents is higher than the amount paid for the Licenses. ECF No. 167-1 at 2–3. Moreover, Valjakka's deposition testimony and the Licenses indicate that CDN paid €50,000 as consideration for the '102 Patent, and €95,000 for the '167 Patent, ECF No. 126-3 at 4; ECF No. 126-6 at 3, but the cumulative value of the settlement agreements related to these patents reached to date exceeds $1,000,000.00, ECF Nos. 126-5, 126-8, 126-9, 126-10.[3] The Court therefore finds that the consideration for the Licenses was not reasonably equivalent to the value of the transferred assets. Cal. Civ. Code § 3439.04(b)(8).

Finally, Netflix contends that additional limited discovery pertaining to the CUVTA is likely to demonstrate the presence of other badges of fraud—including whether the transfer was of

---

[3] The Court takes judicial notice that, as of September 15, 2023, $1,000,000 was worth approximately €1,067,300. *See* Board of Governors of the Federal Reserve System, Foreign Exchange Rates – H.10, https://perma.cc/BA4X-TKUZ (last visited Sep. 20, 2023).

substantially all the debtor's assets (badge five) and whether Valjakka himself may be insolvent (badge twelve). ECF No. 126-12 at 20–21; Cal. Civ. Code §§ 3439.04(b)(5), (b)(12). The Court agrees, and in a separate order grants Netflix's request for limited additional discovery.

In the aggregate, these several badges of fraud constitute substantial evidence of Valjakka's intent to defraud. *See In re Acequia, Inc.*, 34 F.3d 800, 806 (9th Cir. 1994).

### b. Valjakka Does Not Establish a Supervening Legitimate Purpose

Once indicia of fraud are established, the burden shifts to the transferee to demonstrate "significantly clear" evidence of a "legitimate supervening purpose" for the transfers at issue. *Id.* Valjakka claims that CDN was created to "easily divide [his] financial interest in the '167 and '102 patents with other investors, to obtain financing for this litigation and others, and to more easily administer the financing and proceeds from this litigation and others." ECF No. 143-1 ¶ 10. As Netflix correctly notes, however, Valjakka neither explains, nor provides supporting evidence showing, how the creation of CDN allows Valjakka to accomplish these goals. ECF No. 147 at 13. And some of the evidence before the Court specifically contradicts Valjakka's assertions. For example, the '167 License states that at least part of the purpose of the License is to "cover the debts of . . . IPRA Tech." ECF No. 126-3 at 3. Particularly on this record, Valjakka's unsupported assertions do not meet his burden to provide "'significantly clear' evidence of a legitimate supervening purpose." *In re Acequia,* 34 F.3d at 806 (9th Cir. 1994) (quoting *Max Sugarman Funeral Home, Inc. v. A.D.B. Invs.*, 926 F.2d 1248, 1254–55 (1st Cir. 1991)).

Accordingly, the Court finds that Netflix has shown a likelihood of success on the merits of its fraudulent conveyance claim.

### 2. Likelihood of Irreparable Harm

To obtain preliminary relief, plaintiff must "demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis omitted). "Typically, monetary harm does not constitute irreparable harm." *Total Real Est. Grp., LLC v. Strode*, 588 F. Supp. 3d 1137, 1156 (D. Or. 2022) (citation and quotation omitted). "A party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." *Johnson*, 572 F.3d at 1085. In *Johnson*, the Ninth Circuit found

1    that the defendant director had diverted millions of dollars from the company into his personal

2    bank account, and that his "prior conduct establishe[d] a likelihood that in the absence of an asset

3    freeze . . . [p]laintiffs will not be able to recover the improperly diverted funds and will thus be

4    irreparably harmed." *Id.*

5          Netflix identifies three facts that weigh in favor of finding a danger that Valjakka will

6    dissipate his assets such that Netflix will not be able to recover any judgment it might obtain

7    against him: first, Valjakka's prior conduct in failing to respond truthfully to discovery requests

8    and concealing assets; second, Valjakka's transfer of key assets while simultaneously retaining the

9    contingent obligation to pay attorney's fees; and finally, the potential transfer of Enforcement

10   Assets to entities that have already faced or may soon be facing bankruptcy. ECF No. 147, 6–7.

11   Valjakka responds that Netflix was made aware of the existence of CDN as early as July 2022

12   when he responded to Netflix's interrogatories. ECF No. 143 at 9. Implicitly, he also suggests

13   that Netflix's delay in filing for a preliminary injunction undermines its arguments regarding

14   irreparable harm. *Id*. Netflix responds that it has been demanding complete and accurate

15   discovery responses for over two years, and that the licensing information was only revealed—in

16   Finnish—in May 2023, and then confirmed through deposition testimony in June 2023. ECF No.

17   126-12 at 13.

18         The Court agrees with Netflix. Valjakka's conduct in licensing the Asserted Patents,

19   transferring rights to Enforcement Assets to CDN, and refusing to disclose asset information and

20   ownership with regards to CDN, *Johnson*, 572 F.3d at 1085, combined with the bankruptcy of

21   IPRA Tech and the impending restructuring of CDN, lead the Court to conclude that Netflix has

22   shown a substantial likelihood of dissipation of the Enforcement Assets.

23         **3.**    **Balance of Equities**

24         In considering the equities of a preliminary injunction, courts "must balance the competing

25   claims of injury and must consider the effect on each party of the granting or withholding of the

26   requested relief." *Winter*, 555 U.S. at 24. Netflix argues that equity tips in its favor because its

27   claim for attorney's fees could be "forever extinguished," especially considering IPRA Tech's

28   bankruptcy and CDN's restructuring. ECF No. 126-12 at 10, 14, 20. Valjakka neither contests the

potential harm to Netflix nor identifies any harm that he or CDN will suffer if the Court prevents the transfer of Enforcement Assets.

Balancing the equities, the Court finds that the potential harm to Netflix from dissipation of the Enforcement Assets is greater than the potential harm to Valjakka from the issuance of an injunction.

### 4. Public Interest

When the reach of an injunction is limited only to the parties, the public interest will be "at most a neutral factor in the analysis rather than one that favor[s] [granting or] denying the preliminary injunction." *Bernhardt v. L.A. County*, 339 F.3d 920, 931 (9th Cir. 2003). This factor is therefore neutral.

### C. No Bond Is Required

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Notwithstanding the seemingly mandatory language, "the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Johnson*, 572 F.3d at 1086.

Because Valjakka has not presented evidence that he will suffer harm if improperly enjoined, no bond is necessary. *Abdou v. DaVita Inc.*, No. 216CV02597APGCWH, 2017 WL 7036659, at *3 (D. Nev. Nov. 17, 2017), *aff'd*, 734 F. App'x 506 (9th Cir. 2018), and *aff'd,* 734 F. App'x 506 (9th Cir. 2018).

## CONCLUSION

The Court grants Netflix's motion for a preliminary injunction as follows:

1. This preliminary injunction applies to the Enforcement Assets identified in Netflix's motion for preliminary injunction, ECF No. 126-12, which consist of damages, litigation, or licensing revenues related to the Asserted Patents.

2. Valjakka is hereby restrained and enjoined, pending trial, from selling, using, moving, concealing, transferring, or otherwise disposing of any Enforcement Asset in his

possession, custody, or control.

3. Within 10 days of entry of this Order, Valjakka is ordered to transmit a copy of this preliminary injunction to his licensees, and to any entity that has an interest in Enforcement Assets including, but not limited to, CDN and IPRA Tech.

4. No bond shall be required.

**IT IS SO ORDERED.**

Dated: October 18, 2023



JON S. TIGAR
United States District Judge