William P. Ramey, III (appearance *pro hac vice*)
wramey@rameyfirm.com
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
Telephone: +1.713.426.3923
Facsimile: +1.832.689.9175

Susan S.Q. Kalra, Bar No. 167940
susan@rameyfirm.com
RAMEY LLP
303 Twin Dolphin Drive, Suite 600
Redwood City, California 94065
Telephone: +1.800.993.7499
Facsimile: +1.832.689.9175

**Attorneys for Defendant**
*LAURI VALJAKKA*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| LAURI VALJAKKA,<br><br>      Plaintiff,<br><br>v.<br><br>NETFLIX, INC.,<br><br>      Defendant. | Case No. 4:22-cv-01490-JST<br><br>**DECLARATION OF WILLIAM RAMEY IN SUPPORT OF RESPONSE TO MOTION TO SHOW CAUSE**<br><br>Judge: Jon S. Tigar |

I, William P. Ramey, III, declare as follows:

    1.    My name is Willim Ramey. I am over 18 years of age and have personal knowledge of the facts set forth in this declaration. I make this declaration in support of Valjakka's Response to the Motion to Show Cause (Doc. No. 216). I am an attorney for Lauri Valjakka in the above captioned matter.

2. I appeared for Lauri Valjakka on September 21, 2023, at the Zoom hearing for Netflix's Requested Preliminary Injunction (Doc. No. 127). After the hearing, the Court issued a Minute Entry (a true and correct copy of which is attached as Exhibit A). I immediately forwarded the Minute Entry to Lauri Valjakka and Onni Hietalahti with the intent of indicating its importance.

3. On September 22, 2023, I had a phone conversation with Valjakka and Hietalahti. I verbally conveyed to them the Court's injunction order as I understood it. I specially told them that they were enjoined, meaning prohibited, from transferring, or moving, any litigation proceeds from Valjakka or CDN Licensing.

4. Hietalahti informed me during the discussion on the 22nd, that he would convey the injunction order to Matti Saraheimo. Hietalahti later confirmed to me that he did in fact share the Court's injunction with Saraheimo on the 22nd, both forwarding the e-mail I sent and verbally conveying the terms. After Hietalahti informed Saraheimo of the injunction on September 22, 2023, both CDN licensing and IPRA Technologies were made aware of the Court's injunction. A copy of Document Number 204, the Court's injunction Order, was provided to Valjakka, Heitalahti and Saraheimo no later than November 2, 2023, and thus CDN and IPRA.

5. During the phone conversation on the 22nd, I was informed by both Valjakka and Hietalahti that there were no litigation proceeds with Valjakka or CDN Licensing because the Enforcement Assets transferred earlier had been spent in the ordinary course of business and for living expenses. Valjakka asked whether the order applied to his earnings other than litigation proceeds and I said I did not think so, but we would need to check the written Order when it issued. After the written Order issued, we confirmed our understanding that only Enforcement Assets comprising litigation proceeds were covered.

6. I asked if any money was expected to come into CDN Licensing and I was told no. I also asked if Valjakka was expecting any further Enforcement Assets

DECLARATION OF WILLIAM P. RAMEY, III

2

1  and he said not at this time as the Netflix case was the only case pending.

2  7. Later, co-counsel Ken Sheets and co-counsel Joseph Zito began to advise Valjakka on the issues related to the California Uniform Voidable Transactions Act ("CUVTA") counterclaim, including the preliminary injunction. I am informed that a copy of the transcript was sent to Valjakka and Hietalahti.

8. While preparing this declaration, I was informed that Hietalahti shared the transcript with Saraheimo.

9. In discussions with Rachael Lamkin on November 8, 2023, I was asked if my Firm, Ramey LLP, retained any litigation proceeds (Enforcement Assets) from any of the Valjakka matters and I said no. My Firm received litigation proceeds from the Valjakka matters into its IOLTA account for each of the settlements. The litigation proceeds were transferred from Ramey LLP's IOLTA account, by wire, to an account that Eric Morehouse told me is controlled by AiPi and was set up for the Valjakka Case Group.

10. Ramey LLP did receive invoice payments from AiPi for legal services during the time period when Valjakka was receiving litigation proceeds, or Enforcement Assets, from settlements. However, money received from AiPi for the payment of invoices was transferred to an operating account and used in the regular course of business. There are no Enforcement Assets from any of the Valjakka settlements in any of Ramey LLP's accounts, neither its operating accounts nor its IOLTA account.

11. Exhibit B is a true and correct copy of an e-mail chain dated November 3, 2023, from Joseph Zito to Rachael Lamkin.

12. Exhibit C is a true and correct copy of an e-mail chain dated November 6, 2023, from Joseph Zito to Rachael Lamkin.

I declare under penalty of perjury that the foregoing is true and correct. Executed on

DECLARATION OF WILLIAM P. RAMEY, III

3

1 | this 9th day of November, 2023 in Harris County, Texas.

3 | Dated:  November 9, 2023            /s/ William P. Ramey, III

DECLARATION OF WILLIAM P. RAMEY, III

4