William P. Ramey, III (appearance *pro hac vice*)
wramey@rameyfirm.com
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
Telephone:  +1.713.426.3923
Facsimile:   +1.832.689.9175

Susan S.Q. Kalra, Bar No. 167940
skalra@rameyfirm.com
Ramey LLP
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
(800) 993-7499
(832) 900-4941 (facsimile)

Attorneys for Plaintiff
*LAURI VALJAKKA*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| LAURI VALJAKKA,<br><br>Plaintiff,<br><br>v.<br><br>NETFLIX, INC.,<br><br>Defendant. | Case No. 4:22-cv-01490-JST<br><br>**PLAINTIFF LAURI VALJAKKA'S ANSWERS AND DEFENSES TO DEFENDANT'S ADDITIONAL DEFENSES AND COUNTERCLAIMS IN NETFLIX INC.'S THIRD AMENDED ANSWER TO THIRD AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

In response to the additional defenses and Counterclaims (ECF 192) asserted by Defendant Netflix, Inc. ("Netflix"), Plaintiff Lauri Valjakka ("Valjakka") answers and counterclaims as follows:[1]

## GENERAL DENIAL

Pursuant to Fed. R. Civ. P. 8(b)(3), Valjakka denies all allegations in Defendant's Counterclaims except those specifically admitted below.

## NETFLIX'S COUNTERCLAIMS

The introductory paragraph of Netflix's Counterclaims avers legal conclusion to which no response is required, To the extent a response is required, Valjakka denies the allegations of the introductory paragraph of Netflix's Counterclaims.

## PARTIES

1.      Upon information and belief, Valjakka admits that Netflix, Inc. is a Delaware corporation with a principal address of 100 Winchester Circle, Los Gatos, CA 95032.

2.      Admitted.

## JURISDICTION AND VENUE

3.      Valjakka admits that Netflix's Counterclaims purport to arise under the Patent Laws of the United States, 35 U.S.C. § 1 et seq.; the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq.; and that this Court has jurisdiction over the subject matter of Netflix's Counterclaims under 28 U.S.C. §§ 1331, 1338(a). Valjakka denies any remaining allegations of Paragraph 3.

4.      Admitted.

5.      Admitted.

6.      For the purposes of this action, Valjakka admits the allegations of Paragraph 6 insofar as the Third Amended Complaint alleges infringement of U.S. Patent No. 10,726,102, but denies the allegations of Paragraph 6 as to the Third Amended Complaint alleging infringement

---

[1] This amended answer is filed by agreement of the parties, pursuant to FRCP 15(a), such agreement was reached in [phone conversations between William Ramey and Rachael Lamkin on November 10, 2023.

PLAINTIFF'S AM. ANSWER, DEFENSES AND COUNTERCLAIM – CASE NO. 4:22-CV-01490-JST

1    of U.S. Patent No. 1,495, 167. For the purposes of the remainder of this Amended Answer,

2    Plaintiff will assume Defendant is referring to U.S. Patent No. 8,495,167 (the "'167 Patent").

3           7.     Admitted.

4           8.     Admitted.

5           9.     Admitted.

6           10.    Admitted.

7           11.    Valjakka admits that there is an actual, substantial, and continuing justiciable case

8    or controversy with respect to infringement and validity of the '167 Patent. Valjakka admits that

9    Paragraph 11 states that "Netflix is entitled to a judicial determination and declaration that Mr.

10   Valjakka does not have rights, title, and interests in the '167 patent, and therefore lacks standing

11   to assert the '167 Patent against Netflix; that Netflix has not infringed and is not infringing the

12   '167 Patent; and that the '167 Patent is invalid. Netflix is also entitled to a judicial determination

13   and declaration that the '167 '102 Patents are unenforceable at least because of Mr. Valjakka's

14   inequitable conduct and acts of unclean hands before the U.S. Patent and Trademark Office

15   ("USPTO")," but denies the veracity and merit of these allegations.  Valjakka denies any

16   remaining allegations of Paragraph 11.

17          12.    Paragraph 12 contains legal conclusions and therefore no answer is necessary. To

18   the extent an Answer is required, these allegations are denied.

                                  **FACTUAL BACKGROUND**

19

20          13.    Denied.

21          14.    Denied.

22          15.    Denied.

23          16.    Denied.

24          17.    Denied.

25          18.    Valjakka admits that a Helsinki District Court held that no rights had reverted to

26   Valjakka under the DMTS Utilization Agreement, but denies the remaining allegations of

27   paragraph 18 as the court based that opinion on solely the DMTS Utilization Agreement.  The

28
                                              -2-

court did not consider Finnish common law. The court also did not consider reforming the DMTS Utilization Agreement to make the assignor e-3 Systems, which is consistent with the intent of the parties at the time of execution.

19.     Valjakka admits that the decision determining the DMTS Utilization Agreement was upheld by the Helsinki Court of Appeals, but denies the remaining allegations of paragraph 19 as the lower court based that opinion on solely the DMTS Utilization Agreement.  The appellate court did not consider Finnish common law. The appellate court also did not consider reforming the DMTS Utilization Agreement to make the assignor e-3 Systems, which is consistent with the intent of the parties at the time of execution.

20.     Denied.

21.     Admitted.

22.     Admitted.

23.     Denied.

24.     Denied.

25.     Denied.

26.     Denied.

27.     Denied.

28.     Denied.

29.     Denied.

30.     Denied.

31.     For the purposes of this action, Valjakka admits, that in 2005, Valjakka wrote that Iiro Karesniemi was a co-inventor of the '685 Application in its form at that time, but denies the remaining allegations of Paragraph 31.  Valjakka named Iiro Karesniemi as a co-inventor as a reward for his help and not for his contribution.

32.     Denied.

33.     Denied that Iiro Karesniemi has any rights in the issued '167 patent, admitted as to the remainder.

-3-

34.    Admitted.

35.    Valjakka admits that when e-3 Systems was formed, Mr. Valjakka did not record any assignment of rights to the '685 Application from e-3 Solutions to e-3 Systems, but denies Mr. Karesniemi had any rights to the '685 Application at the time. It was Valjakka's intent to assign the rights to the '685 Application from e-3 Solutions to e-3 Systems.

36.    Denied, it was Valjakka's intent to assign the '685 application rights to e-3 Systems.

37.    Admitted that Valjakka corrected the issue through a series of nunc pro tunc assignments.

38.    Admitted that Valjakka corrected the issue through a series of nunc pro tunc assignments.

39.    Admitted that Valjakka corrected the issue through a series of nunc pro tunc assignments.

40.    Admitted that Valjakka corrected the issue through a series of nunc pro tunc assignments.

41.    Admitted that Valjakka corrected the issue through a series of nunc pro tunc assignments.

42.    Denied.

43.    Denied to the extent that Valjakka was the intended assignor of rights from e-3 Systems to Suomen Biisi.  The intent of the parties was that the DMTS agreement was effective upon the assignment of rights from e-3 Systems to Suomen Biisi, or November 16, 2005, with the correct assignor being e-3 Systems. In the alternative, by operation of Finnish common law, Valjakka is the sole owner of the '167 patent.  The expert report of Professor Jarno Tepora conclusively establishes that under the common law of Finland, Soumen Biisi abandoned the application that matured into the '167 patent and when Lauri Valjakka revived and the application, he became the rightful owner.

44.    Admitted.

-4-

45. Admitted that relief was sought solely under DMTS agreement and not Finnish common law or that a reformation of the DMTS agreement was sought.

46. Admitted that was the result solely under DMTS agreement and not considering Finnish common law or that a reformation of the DMTS agreement was needed.

47. Admitted that was the result solely under DMTS agreement and not considering Finnish common law or that a reformation of the DMTS agreement was needed.

48. Denied.

49. Admitted that was the result solely under DMTS agreement and not considering Finnish common law or that a reformation of the DMTS agreement was needed.

50. Admitted that was the result solely under DMTS agreement and not considering Finnish common law or that a reformation of the DMTS agreement was needed.

51. Admitted the court, without considering the claims or US law that "Lauri Valjakka and Iiro Karesniemi have been the inventors."

52. Admitted.

53. Admitted.

54. Admitted that was the result solely under DMTS agreement and not considering Finnish common law or that a reformation of the DMTS agreement was needed.

55. Admitted that was the result solely under DMTS agreement and not considering Finnish common law or that a reformation of the DMTS agreement was needed.

56. Admitted that Suomen Biisi abandoned the '685 application.

57. Admitted that Suomen Biisi abandoned the '685 application.

58. Admitted.

59. Admitted to the extent that Valjakka was not relying on the DMTS agreement at that point, but rather Finnish common law.

60. Admitted to the extent that Valjakka was not relying on the DMTS agreement at that point, but rather Finnish common law.

61. Denied to the extent that Valjakka was not relying on the DMTS agreement at that

-5-

1 | point, but rather Finnish common law.

2 |  62.     Admitted to the extent that Valjakka was not relying on the DMTS agreement at

3 | that point, but rather Finnish common law.

4 |  63.     Valjakka admits that in March, 2011 the USPTO revived the '685 application.

5 | Valjakka denies the remaining allegations as Valjakka was not relying on the DMTS agreement at

6 | that point, but rather Finnish common law.

7 |  64.     Admitted.

8 |  65.     Admitted that a supplemental amendment was filed on January 24, 2011 to cancel

9 | claims 9 and 26 and that a Request to Correct Inventorship under 25 U.S.C. § 1.48(b) to remove

10 | Mr. Karesniemi as co-inventor was also filed on the same date. Denied as to the remaining

11 | allegations of Paragraph 65 as the only inventor of the claimed subject matter is Valjakka.

12 |  66.     Admitted.

13 |  67.     Admitted insofar as On January 7, 2013, Mr. Valjakka recorded a nunc pro tunc

14 | assignment retroactively effective as of June 23, 2010, to assign and revert rights in the '685

15 | Application from Suomen Biisi to Mr. Valjakka based on Clause 8 of the DMTS Utilization

16 | Agreement and Suomen Biisi's failure to prosecute the '685 Application, recorded the DMTS

17 | Utilization Agreement, and on April 8, 2013, the USPTO again issued a denial for power of

18 | attorney because Mr. Valjakka's submissions were lacking Mr. Karesniemi's signature.  Denied

19 | as to the remaining allegations of Paragraph 67.

20 |  68.     Admitted as to Valjakka, on May 23, 2013, submitted a Request to Correct

21 | Inventorship Under 35 U.S.C. § 1.48(b), alleging that the Examiner had failed to expressly act on

22 | the previous request to remove Karesniemi as a co-inventor.  Denied as to the remaining

23 | allegations of Paragraph 68 as the only inventor of the claimed subject matter is Valjakka.

24 |  69.     Admitted as the only inventor of the claimed subject matter is Valjakka.

25 |  70.     Admitted.

26 | **FIRST COUNTERCLAIM**
27 | **Declaratory Judgment That the '167 Patent Is Unenforceable**
   | **Due to Inequitable Conduct**
28 |

-6-

71.     To the extent that Paragraph 71 incorporates prior allegations, these allegations are denied.

72.     Denied.

73.     Admitted.

74.     Denied.

75.     Denied.

76.     Admitted.

77.     Denied.

78.     Denied.

79.     Admitted insofar as Mr. Karesniemi is a named inventor in the European patent EP01660145. Denied as to the remaining allegations of Paragraph 79 as Iiro Karesniemi was not an inventor to the claim subject matter that issued as the '167 patent.

80.     Admitted that Iiro Karesniemi performed the ministerial function of drafting claims and did not contribute to conception.

81.     Admitted insofar that after Mr. Karesniemi left his employment as a software engineer at e-3 Solutions, Mr. Valjakka continued to ask Mr. Karesniemi for his help in revising the specification and claims of EP01660145. Denied as to the remaining allegations of Paragraph 81.

82.     Admitted insofar that during the prosecution of the '167 Patent, Mr. Valjakka filed a supplemental amendment on or around January 24, 2011, to cancel two dependent claims of the '685 Application, specifically dependent claims 9 and 26. Denied as to the remaining allegations of Paragraph 82.

83.     Admitted insofar as in conjunction with the supplemental amendment, Mr. Valjakka also submitted a request to remove Mr. Karesniemi, citing the cancellation of dependent claims 9 and 26. Denied as to the remaining allegations of Paragraph 83.

84.     Admitted.

85.     Admitted.

1    86.    Admitted.

2    87.    Admitted.

3    88.    Denied.

4    89.    Denied.

5    90.    Denied.

6    91.    Denied.

7    92.    Admitted as to patent law. Denied as to a legal conclusion in reference to prior

8  allegations.

9    93.    Denied.

10    94.    Denied.

11    95.    Denied.

12    96.    Denied.

13    97.    Denied as to allegations that the '167 Patent is unenforceable because of Mr.

14  Valjakka's fraud on the USPTO and inequitable conduct.  The remaining allegations in Paragraph

15  97 are legal conclusions to which no response is necessary. To the extent an Answer is required,

16  these allegations are denied.

17

18                          **SECOND COUNTERCLAIM**
    **Declaratory Judgment That Mr. Valjakka's Claims with Respect to the '167 Patent and**
19                 **'102 Patent Are Barred Because of Unclean Hands**

20    98.    To the extent that Paragraph 98 incorporates prior allegations, these allegations are

21  denied.

22    99.    To the extent that Paragraph 99 incorporates prior allegations, these allegations are

23  denied.

24    100.    Admitted as to Valjakka has produced documents during the course of this

25  litigation representing that he owns the '167 patent. Denied as to the remaining allegations of

26  Paragraph 100.

27    101.    Denied.

28    102.    Denied.

-8-

1

2

3
### THIRD COUNTERCLAIM
### Declaratory Judgment of Non-Infringement of U.S. Patent No. 8,495,167

4       103.    To the extent that Paragraph 103 incorporates prior allegations, these allegations

5   are denied.

6       104.    Admitted.

7       105.    Valjakka admits that Paragraph 105 states that "Netflix has not infringed and is not

8   infringing any valid or enforceable claim of the '167 Patent, willfully or otherwise, directly or

9   indirectly, either literally or by application of the doctrine of equivalents. For example, Claim 1[e]

10  requires "wherein each such transport request includes details of data to be retrieved, the address

11  of the first server from which the data is to be requested by the first target terminal, the addresses

12  of at least one second target terminal to which the data from the first server to be relayed by the

13  first target terminal and an indication of a relative performance of a further target terminal based

14  on the terminal performance information stored in the network information database;" and the

15  Accused Products do not infringe this element, at least under Plaintiff's apparent application of

16  the claims. Furthermore, there is no substantial identity between the claims of the '167 Patent and

17  the Accused Products," but denies the veracity and merit of these assertions.

18      106.    The allegations in Paragraph 106 are legal conclusions to which no response is

19  necessary. To the extent an Answer is required, these allegations are denied.

20      107.    Admitted that this is an exceptional case such that an award to Valjakka of its

21  attorneys' fees and costs pursuant to 35 U.S.C. § 285 is justified.  Denied that Netflix is entitled to

22  an award of attorneys' fees and costs.

23
### FOURTH COUNTERCLAIM
### Declaratory Judgment of Non-Infringement of U.S. Patent No. 10,726,102

24

25      108.    To the extent that Paragraph 108 incorporates prior allegations, these allegations

26  are denied.

27      109.    Admitted.

28
-9-

110.     Valjakka admits that Paragraph 110 states that "Netflix has not infringed and is not infringing any valid or enforceable claim of the '102 Patent, willfully or otherwise, directly or indirectly, either literally or by application of the doctrine of equivalents. For example, the Accused Products do not cause "the content providing server to validate the fingerprint, and, if the validation is successful, access[] the access restricted content" as required by Claim 10 of the '102 Patent, at least under Plaintiff's apparent application of the claims. Furthermore, there is no substantial identity between the claims of the '102 Patent and the Accused Products," but denies the veracity and merit of these assertions.

111.     The allegations in Paragraph 111 are legal conclusions to which no response is necessary. To the extent an Answer is required, these allegations are denied.

112.     Admitted that this is an exceptional case such that an award to Valjakka of its attorneys' fees and costs pursuant to 35 U.S.C. § 285 is justified.  Denied that Netflix is entitled to an award of attorneys' fees and costs.

## FIFTH COUNTERCLAIM
### Declaratory Judgment of Invalidity of U.S. Patent No. 8,495,167

113.     To the extent that Paragraph 113 incorporates prior allegations, these allegations are denied.

114.     Admitted.

115.     Paragraph 115 contains legal conclusions and allegations to which no answer is required. To the extent an Answer is required, the allegations are denied upon information and belief.

116.     Valjakka admits that Paragraph 116 states that "The claims of the '167 Patent are invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 101 et seq., e.g., 102, 103, 112, and 132," but denies the veracity and merit of these assertions.

117.     Valjakka admits that Paragraph 117 states that "For example, '167 Patent is also invalid under 35 U.S.C. § 101 because it is directed to nothing more than the unpatentable

-10-

abstract idea of distributing the delivery of content among multiple actors. Further, each claim element of the asserted claims recites only features that are well-understood, routine, and conventional, and nothing in the claims transforms the abstract idea into an inventive concept," but denies the veracity and merit of these assertions.

118.    Valjakka admits that Paragraph 118 states that "The '167 Patent is also invalid under pre-AIA 35 U.S.C. § 102 and/or as obvious under U.S.C. § 103 in view of prior art to the patent, including without limitation, U.S. Patent Nos. 6,912,514; 6,950,431; 6,970,939; 7,139,827; 7222,186; 7,228,416; 7,373,103; 5,905,952; 7,398,312; 6,708,213; 8,392,611; 7,149,797; U.S. Patent Application No. 2006/0114350; and Publication Nos. WO 00/65776; WO 01/22688; HU 222,337; EP 0726663; EP 0863646; EP 0709994; Publications Zegura et al., Application-Layer Anycasting: A Server Selection Architecture and Use in a Replicated Web Service; Kung et al., Hierarchical Peer-to-Peer Networks; Amini et al., Distribution Requirements for Content Internetworking; Green et al., Content Internetworking Architectural Overview; Cisco Systems, Inc., Close Encounters: Cisco end-to-end solution pushes streaming and other feature-rich content closer to end users; Cisco Systems, Inc., Speeding and Scaling Web Sites Using Cisco Content-Delivery Technology White Paper; and Prior Art Systems Cisco Systems, Inc., Cisco Content Delivery Network (CDN); Inktomi Corporation, Inktomi Content Distributor; F5 Networks, Inc., Global-Site Controller; and Starburst Software, Inc., StarBurst OmniCast," but denies the veracity and merit of these assertions.

119.    Valjakka admits that Paragraph 119 states that "The '167 Patent is also invalid under 35 U.S.C. § 112 as indefinite. At least as would be understood by one of ordinary skill in the art and/or as applied in Mr. Valjakka's Complaint, the claim language is indefinite because it does not have a meaning that can be clearly and definitely determined from the patent, and thus fails to put the public on notice of what is and is not covered by these claims. The '167 Patent fails to satisfy the requirements of 35 U.S.C. § 112(2) due to the claim language being indefinite," but denies the veracity and merit of these allegations.

120.    Valjakka admits that Paragraph 120 states that "The '167 Patent is also invalid

due to improper and/or incorrect inventorship, including nonjoinder under 35 U.S.C. §§ 101, 111, 115, 116, 282, and/or pre-AIA 35 U.S.C. § 102(f) for Mr. Valjakka's intentional omission of Iiro Karesniemi as a co-inventor of the '167 Patent," but denies the veracity and merit of these allegations.

121.    The allegations in Paragraph 121 are legal conclusions to which no response is necessary. To the extent an Answer is required, these allegations are denied.

122.    Admitted that this is an exceptional case such that an award to Valjakka of its attorneys' fees and costs pursuant to 35 U.S.C. § 285 is justified.  Denied that Netflix is entitled to an award of attorneys' fees and costs.

**SIXTH COUNTERCLAIM**
**Declaratory Judgment of Invalidity of U.S. Patent No. 10,726,102**

123.    To the extent that Paragraph 123 incorporates prior allegations, these allegations are denied.

124.    Admitted.  Valjakka withdrew its claims of infringement of the '102 patent on or about June 16, 2023.  Netflix was informed by e-mail on that day.

125.    Valjakka admits that Paragraph 125 states that "the '102 Patent is invalid under 35 U.S.C. § 101 because Claims 10 and 11 are directed to nothing more than the unpatentable abstract idea of providing restricted access to content using multiple levels of validation. Further, each claim element of the asserted claims 10 and 11 recites only features that are well-understood, routine, and conventional, and nothing in the claims transforms the abstract idea into an inventive concept," but denies the veracity and merit of these allegations.

126.    "The claims of the '102 Patent are invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 101 et seq., e.g., 102, 103, 112, and 132. For example, the '102 Patent is invalid as anticipated under 35 U.S.C. § 102 and/or as obvious under U.S.C. § 103 in view of prior art to the patent, including without limitation, U.S. Patent Nos. 6,891,953; and 8,359,473; U.S. Patent Application Nos. 2016/0198202; 2003/0161473; 2004/0064714; 2004/0098592; 2002/0018566; 2007/0208711;

-12-

2010/0185868; 2008/0071617; 2008/0098212; 2005/0018854; 2010/0174608; 2012/0042389; and Publication No. KR 101103403 B1; Publications William Rosenblatt, William Trippe, Stephen Mooney, Digital Rights Management; Ramya Venkataramu, Analysis and Engancement of Apple's Fairplay Digital Rights Management; Eric Rescorla, SSL and TLS: Designing and Building Secure Systems; Naganand Doraswamy, Dan Harkins, IPSec: The New Security Standard for the Internet, Intranets, and Virtual Private Networks (Second Edition); H. Krawczyk, M. Bellare, R. Canetti, HMAC: Keyed-Hashing for Message Authentication (RFC 2104); Bruce Schneier, E-Mail Security: How to Keep Your Electronic Messages Private; David K. Gifford, Cryptographic Sealing for Information Secrecy and Authentication; and S. Kent, IP Encapsulating Security Payload (ESP) (RFC 2406); and Prior Art Systems the Apple FairPlay system, the Google WideVine system, and the Microsoft PlayReady system," but denies the veracity and merit of these allegations.

127.     Valjakka admits that Paragraph 127 states that "The '102 Patent is also invalid under 35 U.S.C. § 112 as indefinite, for lack of written description, and/or enablement, at least under Valjakka's apparent application of the claims. For example, the specification of the '102 Patent does not provide an adequate written description under 35 U.S.C. § 112(1) for at least the phrase "information describing encryption properties" in Claim 10. The specification does not teach that the patentee had possession of a method to access "information describing encryption properties" as recited in the claims. While "information describing encryption properties" is recited briefly in the specification, there is no description or teaching of what "information describing encryption properties" is. Thus, this claim limitation lacks written description and enablement. The specification does not enable a person of ordinary skill in the art to make use of the full scope of these claims without undue experimentation. Additionally, at least as would be understood by one of ordinary skill in the art and/or as applied in Valjakka's Amended Complaint, this claim language is indefinite because it does not have a meaning that can be clearly and definitely determined from the patent, and thus fails to put the public on notice of what is and is not covered by these claims. Claim 10 of the '102 Patent fails to satisfy the

requirements of 35 U.S.C. § 112(2) due to the identified claim phrase being indefinite," but denies the veracity and merit of these allegations.

128.    The allegations in Paragraph 128 are legal conclusions to which no response is necessary. To the extent an Answer is required, these allegations are denied.

129.    Admitted that this is an exceptional case such that an award to Valjakka of its attorneys' fees and costs pursuant to 35 U.S.C. § 285 is justified.  Denied that Netflix is entitled to an award of attorneys' fees and costs.

## SEVENTH COUNTERCLAIM
### Violation of the California Uniform Voidable Transactions Act
### Cal. Civ. Code § 3439 *et. seq.*

130.    To the extent that Paragraph 130 incorporates prior allegations, these allegations are denied.

131.    The allegations in Paragraph 131 are legal conclusions to which no response is necessary. To the extent an Answer is required, these allegations are denied.

132.    The allegations in Paragraph 132 are legal conclusions to which no response is necessary. To the extent an Answer is required, these allegations are denied.

133.    The allegations in Paragraph 133 are legal conclusions to which no response is necessary. To the extent an Answer is required, these allegations are denied.

134.    The allegations in Paragraph 134 are legal conclusions to which no response is necessary. To the extent an Answer is required, these allegations are denied.

135.    The allegations in Paragraph 135 are legal conclusions to which no response is necessary. To the extent an Answer is required, these allegations are denied.

(a) Valjakka's Insider Transaction Evidences His Fraudulent Intent

136.    The allegations in Paragraph 136 are legal conclusions to which no response is necessary. To the extent an Answer is required, Valjakka admits he is a majority shareholder of CDN.  Valjakka denies that badge (1) of Civ. Code § 3439.04(b)(1) is met by any transfer or obligation.

-14-

137.     The allegations in Paragraph 137 are legal conclusions to which no response is necessary. To the extent an Answer is required, these allegations are denied as Valjakka did not transfer all rights to his patents.  Valjaka admits he transferred rights related to the Enforcement Assets to CDN but denies any fraudulent transfer.

(b) <u>Valjakka's Retention of Control Evidences His Fraudulent Intent</u>

138.     The allegations in Paragraph 138 are legal conclusions to which no response is necessary. To the extent an Answer is required, Valjakka denies that Cal. Civ. Code § 3439.04(b)(2) applies to the rights transferred in the Enforcement Assets but admits that he retained possession and control, at least in part.

139.     Valjakka admits he has an ownership interest as a shareholder in CDN but denies the remainder.

(c) <u>Valjakka's Extensive Efforts to Conceal CDN Evidences His Fraudulent Intent</u>

140.     Denied.

141.     Denied.

142.     Denied as Valjakka's July 11, 2022, response to interrogatory No. 8 comprised unresolved objections. Valjakka supplemented on September 9, 2022 by providing Valjakka and IP Case Group 1, LLC.  In his July 11, 2022 response to interrogatory No. 17, Valjakka provided "CDN Licensing Oy is a company established in 2021 to manage expenses and revenue from the Action."

143.     Denied to the extent that on July 11, 2022, Valjakka did disclose CDN in interrogatory response No.17:  "CDN Licensing Oy is a company established in 2021 to manage expenses and revenue from the Action."  Valjakka therefore disclosed that CDN was to receive revenue from the Action and had a financial interest.

144.     Denied to the extent that on July 11, 2022, Valjakka did disclose CDN in interrogatory response No.17:  "CDN Licensing Oy is a company established in 2021 to manage expenses and revenue from the Action."  Valjakka therefore disclosed that CDN was to receive revenue from the Action and had a financial interest.  Moreover, Plaintiff filed a

revised disclosure document on September 21, 2023, as Doc. No. 174.

145.    Denied.

146.    Denied.

    (d) <u>Valjakka's Removal and Concealment of The Enforcement Assets Evidences His Fraudulent Intent</u>

147.    Denied  to the extent that Cal. Civ. Code § 3439.04(a)(7) applies to the litigation funding agreement Valjakka established through the CDN License Agreement.  Valjakka admits he transferred Enforcement Assets to CDN but only to obtain financing for the Action.  There was no intent to conceal.

    (e) <u>The Low Cost of The CDN Licenses Versus The Value of The Enforcement Assets Evidences Valjakka's Fraudulent Intent</u>

148.    Denied as the execution date of the CDN License Agreement was ion 2021, prior to any expert's proper evaluation of the appropriate value for the claims of the '167 patent and before any opinion on infringement.

    (f) <u>Valjakka &/or CDN &/or IPRA's Likely Insolvency Evidences Valjakka's Fraudulent Intent</u>

149.    Denied that CDN Licensing nears insolvency as provided by Cal. Civ. Code § 3439.04(a)(9).

150.    Admitted except that IPRA Technologies would not benefit from Enforcement Assets of CDN Licensing.

151.    Denied.

    (g) <u>Valjakka Transferred the Assets And Kept the Liabilities, Further Evidencing His Fraudulent Intent</u>

152.    Denied.

153.    The allegations in Paragraph 153 are legal conclusions to which no response is necessary. To the extent an Answer is required, these allegations are denied.

    (h) <u>There Exists Considerable Further Evidence of Valjakka's Fraudulent Intent</u>

-16-

154.   Denied.

155.   Denied, as explained in paragraphs 142-144.

156.   Denied.

157.   The allegations in Paragraph 157 are legal conclusions to which no response is necessary. To the extent an Answer is required, these allegations are denied.

## RESPONSE TO PRAYER FOR RELIEF

Valjakka denies that Netflix is entitled to judgment or any of the relief requested by the Counterclaims and prays for the following relief:

A.   That Netflix take nothing by reason of the counterclaims, and that the counterclaims action be dismissed with prejudice;

B.   That the Court enter judgment in favor of Valjakka and against Netflix, with respect to all causes of action in the counterclaims;

C.   That the Court award Valjakka his attorneys' fees and other costs reasonably incurred in the defense of the counterclaims; and

D.   That the Court order such further relief for Valjakka as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Valjakka respectfully demands a jury trial as to all issues raised in Netflix's counterclaims which are triable to a jury in this action.

## AFFIRMATIVE DEFENSES

By characterizing these as "Affirmative Defenses," as Netflix does in its answer, Valjakka is not taking on any burden of proof beyond that which the law applies to him.  Thus, without admitting or implying that Valjakka bears the burden of proof as to any of them, Valjakka, on information and belief, asserts the following affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE

158.   Each cause of action set forth in Netflix's Counterclaims fails to state a claim

-17-

1    upon which relief can be granted.

2                    **SECOND AFFIRMATIVE DEFENSE**

3         159.    Netflix's counterclaims are barred, in whole or in part, by the equitable defenses of

4    estoppel, waiver, laches and/or unclean hands.

5                    **THIRD AFFIRMATIVE DEFENSE**

6         160.    Netflix has failed to make reasonable efforts to mitigate its damages, if any.

7                    **FOURTH AFFIRMATIVE DEFENSE**

8         161.    Netflix's claims are subject to a set off based upon Netflix's and/or other parties'

9    acts and wrongdoing.

10

11                   **FIFTH AFFIRMATIVE DEFENSE**

12        162.    That if the Court holds that Valjakka did not have ownership of the '167 patent at

13   the time this action was filed, Valjakka requests the Court reform the Utilization Agreement such

14   that e-3 Systems transfers the rights to Sumo Biisi with reversion back to Lauri Valjakka, Juha

15   Setala, and Pekka Pakarinen, according to the agreement.

16                   **SIXTH AFFIRMATIVE DEFENSE**

17        163.    Under Finnish common law, when Sumo Biisi abandoned the '685 application and

18   Lauri Valjakka reinstated the rights, the title of the '685 application reverted to Lauri Valjakka.

19                   **SEVENTH AFFIRMATIVE DEFENSE**

20        164.    Netflix has failed to allege a sufficient controversy concerning inventorship.

21   Netflix has not sufficiently alleged that Mr. Karesniemi is an inventor of the '167 patent but only

22   of having written parts of the patent application. Thus, Karesniemi's contribution was, at most,

23   assisting in constructively reducing the invention to practice. This alone cannot constitute

24   inventorship, otherwise patent attorneys and agents would be considered inventors on all patents.

25                   **EIGHTH AFFIRMATIVE DEFENSE**

26        165.    Mr. Valjakka is the true original first inventor of the '167 patent.  However, if the

27   Court holds otherwise, any misnaming of inventors was by mistake and without deceptive intent,

28

and any putative inventor can be added pursuant to 35 U.S.C. § 285 without affecting this action.

### NINTH AFFIRMATIVE DEFENSE

166.     Netflix at least has unclean hands in the filing of counterclaims that allege lack of standing and unclean hands by Valjakka when Netflix knows and has known that Valjakka owns the '167 patent. Mr. Valjakka is the true and rightful owner of the '167 patent due to ownership rights claimed under Finnish common law that arose after the'685 Application was abandoned by Soumen Biisi on July 9, 2010.  Netflix intentionally and maliciously left out this important fact from its pleadings. Netflix knew at the time of filing its counterclaims, and has known at least since the deposition of Mr. Valjakka, that Valjakka owns the '167 patent under Finnish law.

### TENTH AFFIRMATIVE DEFENSE

167.     Valjakka did not violate the California Uniform Voidable Transactions Act because the actions he took in entering into the CDN License were designed to fund this case. There was no intent to hide any assets from any potential creditor.  Upon learning that the CDN License Agreement might be viewed as a violation of the California Uniform Voidable Transactions Act, Valjakka cancelled it to remove any potential harm to Defendant.

### RESERVATION OF RIGHTS & PRAYER FOR RELIEF

168.     Valjakka reserves the right to assert any other legal or equitable defenses to which it is shown to be entitled, including all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States, and any other defenses that may now exist or in the future be available based on discovery or further factual investigation in this case.

### PRAYER FOR RELIEF

Valjakka respectfully requests the Court to enter an order:

a.     Declaring that Mr. Valjakka is the lawful inventor of U.S. Patent No. 8,495,167 and that no other person has any claim to inventorship of that patent;

b.     Declaring that Mr. Valjakka is the lawful owner of U.S. Patent No. 8,495,167 and that no other person has any claim to ownership of that patent;

c.     That the U.S. Patent No. 8,495,167 is valid and enforceable and no inequitable

-19-

conduct was committed by Valjakka in correcting inventorship;

      d.      Awarding such other relief as may be appropriate and just.

Dated: November 14, 2023           Respectfully submitted,

                               RAMEY LLP

                               */s/ William P. Ramey, III*
                               William P. Ramey III (Admitted *pro hac vice*)
                               5020 Montrose Blvd., Suite 800
                               Houston, Texas 77006
                               Telephone: (713) 426-3923
                               Fax: (832) 689-9175
                               Email: wramey@rameyfirm.com

                               */s/ Susan S.Q. Kalra*
                               Susan S. Q. Kalra CA SBN 167940
                               5020 Montrose Blvd., Suite 800
                               Houston, TX 77006
                               Telephone: (800) 993-7499
                               Fax: (832) 900-4941
                               Email: skalra@rameyfirm.com

                               ***Attorneys for Plaintiff***
                               ***LAURI VALJAKKA***