Kavon Adli (Bar No. 203040)
kavon@tilg.us
David Newman (Bar No. 246351)
david@tilg.us
THE INTERNET LAW GROUP
9100 Wilshire Boulevard, Suite 725E
Beverly Hills, CA 90212
tel. (310) 910-1496

Joseph J. Zito (to be admitted *pro hac vice*)
*jzito@whitestone.law*
WHITESTONE LAW
1850 Tower Crescent Plaza, Suite 550
Tysons, Virginia 22182
Telephone: 202-466-3500

Attorneys for Non-party AiPi, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURI VALJAKKA;<br><br>  Plaintiff,<br><br>v.<br><br>NETFLIX, INC.,<br><br>  Defendants. | Case No. 4:22-cv-01490-JST<br><br>**NON-PARTY AIPI'S OPPOSITION TO NETFLIX'S MOTION TO JOIN AIPI, LLC [DOC #217]**<br><br>JUDGE:  HON. JON S. TIGAR<br>DATE:   JANUARY 25, 2024<br>TIME:   2:00 P.M.<br>CRTRM:  6 – 2ND FLOOR |

## I. INTRODUCTION

Non-party AiPi, LLC ("AiPi"), a Delaware limited liability corporation, submits this opposition to Netflix's Motion to Join it because AiPi is not subject to personal jurisdiction in this Court. AiPi has not had any contact with this District nor the State of California. There is no basis for the exercise of either general or specific personal jurisdiction over AiPi.

In addition, Nexflix has failed to state any factual support for any claim for relief against AiPi. Netflix never once states or even asserts a single action taken by AiPi that forms the basis for any relief.

Moreover, AiPi is also not a necessary party and is not even a proper party to the above matter. AiPi is a third party to this matter and has fully cooperated as a third party and remains available for any discovery as a third party. There is no need to joins AiPi. AiPi, as an agent of Valjakka, would be bound to turn over any Valjakka funds in its possession without being joined.

AiPi is managing third party funding for Valjakka. (Lund Decl., ¶ 14.) AiPi, is not in control of Valjakka's litigation against Netflix. (Lund Decl., ¶ 7.) AiPi is not in control of Valjakka in any manner. (Lund Decl., ¶7.) AiPi is not a law firm and does not provide legal services. (Lund Decl., ¶ 17.) AiPi provides litigation support services to Ramey LLP (the "Ramey Law Firm") and to Mr. Ramey in support of his actions and in support of the actions of his local counsel Ms. Susan Klara. (Lund Decl., ¶ 15.) The Agreement between AiPi and Mr. Valijaka specifically states that AiPi is not providing legal services. (Lund Decl., ¶¶ 15, 17.) AiPi complied fully and timely with the Preliminary Injunction ("PI"), including the transmittal of the PI documents by Mr. Ozmen, an employee of AiPi, to each licensee of Valjakka. (Lund Decl., ¶ 23.) AiPi as an agent of Valjakka, and in assistance with Valjakka's counsel Mr. Ramey, has fully complied with any and all discovery requests to the full extent that AiPi possessed any documents within its possession, custody or control, as requested by Valjakka and/or its counsel the Ramey Firm. (Lund Decl., ¶ 24.)  AiPi has no control over the decision to produce or not produce

documents, that is the decision of counsel for Valjakka. (Lund Decl., ¶ 25.) AiPi is a legal support company and has assisted counsel in the production of Valjakka documents, as instructed by counsel, including the collection of documents from Valjakka, the marking of documents and providing documents to counsel for Defendant, as instructed by counsel for Plaintiff. (Lund Decl., ¶ 26.) In addition, AiPi as a third party, will comply fully with the PI and is ready and willing to comply with any discovery requests directed thereto. (Lund Decl., ¶ 27.)

## II.  LEGAL AUTHORITY

This Court's exercise of personal jurisdiction must comport with the requirements of due process. "Where, as here, there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court sits applies." *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1484 (9th Cir. 1993). The California long-arm statute provides: "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. Proc. § 410.10. Here in this action, brought under the Court's diversity jurisdiction, the Court must "determine whether personal jurisdiction in this case would meet the requirements of due process." *Core-Vent Corp.*, 11 F.3d at 1484.

If a third party does not reside in California and was not served with process in California - as is the case regarding AiPi - the court may not assert personal jurisdiction unless the third party has constitutionally sufficient "minimum contacts" with California. *See Vons*, 14 Cal. 4th at 444-45 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *Goehring v. Superior Court*, 62 Cal. App. 4th 894, 904 (1998).

Personal jurisdiction may be either general or specific. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8-9 (1984). General jurisdiction allows a court to adjudicate any claim involving the defendant and is established by the defendant's forum related activities as a whole, but the contacts with the forum must be "continuous and systematic." *Helicopteros*, 466 U.S. at 414-15 & n.9. Specific

jurisdiction, in contrast, allows a court to adjudicate only claims that arise from the defendant's forum-related activities and is established by the defendant's involvement in forum activities specifically concerning the matters at issue in the action. *Id.* at 414 n.8. In either case, the constitution requires that a defendant have "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Helicopteros*, 466 U.S. at 414 (citing *International Shoe*, 326 U.S. at 316).

### III. ARGUMENT

#### A. THIS COURT DOES NOT HAVE GENERAL PERSONAL JURISDICTION OVER AIPI

The Supreme Court has set a stringent standard that must be met to establish a prima facie case of general personal jurisdiction. General personal jurisdiction over a foreign defendant exists *only* if the party has "substantial," "continuous and systematic" contacts with the forum state. *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 445-47 (1952). "This is a fairly high standard in practice." *Fields v. Sedgwick Associated Risks. Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986). The Ninth Circuit has "regularly .... declined to find general jurisdiction even where the contacts were quite extensive." *Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 851 (9th Cir. 1993)(citing cases); *see also Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1124-25 (9th Cir. 2002) (declining to find personal jurisdiction even though the defendant exported considerable amounts of products through California, stating "while it is clear that [defendant] has stepped through the door, there is no indication that it has sat down and made itself at home"). To support general jurisdiction, the defendant's contacts must be "so wide-ranging that they take the place of physical presence in the forum as a basis for jurisdiction." *Vons*, 14 Cal. 4th 434, 446 (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445, 446 (1952)).

Here, AiPi does not have the type of substantial, continuous and systematic contacts with the State of California that would establish general personal jurisdiction. To

the contrary, AiPi does not have any contacts with the State of California. AiPi does not reside in California. AiPi does not have an office in California. AiPi has never had a telephone number or mailing address in California. AiPi has never owned or leased property in California or maintained a bank account in California. AiPi has never maintained an office in California, or worked in or commuted to the state for business. AiPi has never had employees in California nor filed a tax return with the State of California. (see Morehouse Declaration) These types of contacts - residence, mailing address, property, bank account, office, employees, etc. - are precisely the key indicia courts consider in analyzing general jurisdiction. AiPi has none of these key indicia.

## B. THIS COURT DOES NOT HAVE SPECIFIC PERSONAL JURISDICTION OVER AIPI

To establish specific personal jurisdiction, Netflix must make a prima facie case fulfilling the following three-part test set forth by the Ninth Circuit:

(1) whether the non-party purposefully availed himself of the privileges of conducting activities in the forum,

(2) whether the claim arises out of or results from the non-party's forum-related activities, and

(3) whether the exercise of jurisdiction is reasonable.

*Glencore Grain*, 284 F.3d at 1123; *see also Ochoa v. J.B. Martin and Sons Farms, Inc.*, 287 F.3d 1187, 1188-89 (9th Cir. 2002). In this action, Netflix fails each part of this specific-jurisdiction test.

AiPi did not "purposefully avail" themselves of the benefits and protections of California law. The asserted reason for joinder does not arise out of AiPi's activities in California because there are none. The alleged reason to join AiPi does not arise out of any "forum-related activities" of AiPi. Finally, the exercise of jurisdiction over AiPi is unreasonable.

The purposeful availment requirement ensures that defendants will not be "haled into a jurisdiction through 'random', 'fortuitous', or 'attenuated' contacts." *Terracom v.*

*Valley Nat'l Bank*, 49 F.3d 555, 560 (9th Cir. 1995) (quoting *Burger King Com. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "[P]urposeful availment" requires that the defendant "have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Sinatra v. National Enquirer. Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988); *see also Benefit Ass'n Int'l Inc. v. Superior Court*, 46 Cal. App. 4th 827, 833 (1996) (plaintiffs must show that defendants purposefully availed themselves of California's "economic market"). The requirement is not satisfied when a defendant's business incidentally interfaces with California. For example, in *Edmunds v. Superior Court*, the defendant was a Hawaiian lawyer who represented California clients in a litigation pending in Hawaii. The defendant (1) participated in a deposition in California, (2) made phone calls and wrote letters to and from California, and (3) accepted payment from his California clients. The Court of Appeal nonetheless held that the defendant had not purposefully availed himself of the benefits and protections of California law. 24 Cal. App. 4th 221, 232-33 (1994). The appellate court recognized that the defendant's activities in California were "essentially promoting the economic well-being of his Hawaii law [practice]," and "any promotion of California financial interests was incidental." 24 Cal. App. 4th at 236; *see also Sher v. Johnson*, 911 F.2d 1357, 1366 (9th Cir. 1990) (Florida attorney who represented California client, made phone calls and sent letters to client, and visited client in California on three occasions, did not purposefully avail himself of "the privilege of conducting activities in California"); *Benefit Ass'n.* 46 Cal. App. 4th 827, 834 (Mississippi corporation that sold insurance policies to foreign travelers, knowing that some might travel to California, did not purposefully avail itself of California's economic market); *Erman v. Lox Equipment Co.*, 1993 WL 393343, *2 (N.D. Cal. 1993)(corporate officer did not purposefully avail himself of the privileges of doing business in California even though he procured insurance coverage for the California hazardous waste site that was subject of lawsuit).

Here, AiPi cannot be deemed to have purposefully availed itself of California's benefits and protections because they are not involved in the California economic market,

1 nor has it sought to be.

2 Finally, merely causing an "effect" in California is not a sufficient condition for specific jurisdiction. *See*, *e.g.*, *Goehring*, 62 Cal. App. 4th 894, 908; *Edmunds*, 24 Cal. App. 4th 221, 230. That Netflix believes AiPi has dominion over Valjakka's Enforcement Assets cannot confer jurisdiction over AiPi because the alleged dominion occurred, if at all, outside of California.

**C. NETFLIX'S INTRODUCTION MISSTATES LAW AND FACT**

Contrary to the assertion of Defendant's Counsel, AiPi is not Valjakka's litigation funder. As is clear from the Response to Interrogatory No. 1 (see Exhibit A to Ms. Lamkin's Declaration), "IP Case Group I LLC" is Valjakka's litigation funder. AiPi is the company that administers the fund for payment of litigation expenses on behalf of Valjakka. However, even if AiPi were a litigation funder, being a litigation funder does not make an entity a proper or necessary party.

AiPi is not counsel in this matter or any other, as is set forth in the Agreements between AiPi and Valjakka. AiPi engaged the services of Counsel of record Mr. William Ramey, to represent Valjakka in this matter and entrusted all legal decisions to Mr. Ramey, with the consent of Mr. Valjakka, the real party in interest. AiPi provided support services to Mr. Ramey, at his request and discretion, including legal research, factual research, coordination of some discovery, pre-drafting of pleadings and technical evaluations of issues such as validity and infringement. In all instances, Mr. Ramey remained responsible, as counsel of record and lead counsel, for all decisions and all judgements and for the filing of all pleadings. No one at AiPi has claimed to represent Valjakka in this matter, or any other matter, including the related IPR proceedings in the USPTO which were also handled by The Ramey Law Firm.

AiPi had no control over the decision to disclose or not disclose AiPi in any Local Rule 3-15 documents. (Lund Decl., ¶ 35.) AiPi had no control of any other legal decision or filing decisions in this matter.

Despite Mr. Valjakka's testimony, AiPi does not and has never run the litigation

nor controlled the enforcement assets. (Lund Decl., ¶ 7.) *See also*, AiPi Valjakka Agreements, Exhibits A and B hereto. Which specifically state:

1. **Netfix's "First Argument"**

Contrary to the assertions of Defendant's counsel based upon the unsupported statements of Mr. Valjakka, AiPi neither received nor retained "a substantial share of the Enforcement Assets" and does not have any "dominion over said assets." Even if AiPi had any Enforcement Asserts, the possession of enforcement assets obtained from other parties in other litigations cannot impose "strict liability" from AiPi to Netflix, and Netflix's counsel cites no authority in support of this proposition. At most, as a third party bailee, AiPi may be under an obligation to return Valjakka funds in its possession to Valjakka, in order for Valjakka to satisfy any judgement against Valjakka in favor of Netflix. No joinder of AiPi is necessary. And, joinder is futile because there are no assets and AiPi is not subject to personal jurisdiction in California. (Lund Decl., ¶ 34.)

2. **Netflix's "Second Argument"**

Netflix admits that there is no need whatsoever to add AiPi as a party because the PI Order "automatically binds Valjakka's agent." AiPi is a Valjakka agent and has fully complied with the PI and has not disputed being bound to the full extent that AiPi is an agent of Valjakka. Thus, joinder is moot, by Netflix's own admission. In order to attempt to create an argument for inclusion, during Netflix's second argument (Brief Page 2, line 21 - Page 3, line 10) Counsel morphs AiPi from the puppet agent of Valjakka and thus vicariously liable, into the overlord "suzerian" master of both Valjakka and The Ramey Law Firm. Counsel for Netflix is mistaken, AiPi is not in control and has retained none of the Litigation Assets, unlike both Ramey or Valjakka, both of whom received funds and neither of whom have provided any accounting. (Lund Decl., ¶¶ 29, 30, 32, 34.)

3. **Netflix's "Third" argument**

Affording a third party "due process" is not a reason to add a third party to a case. Due process is a reason not to enter judgement against a non-party. It is not a basis for

adding a party. In addition to the lack of personal jurisdiction, nothing in the arguments advanced by Netflix, even if the asserted underlying facts were true, supports joinder of AiPi under FRCP 19. This is a patent case and AiPi has no bearing on validity, infringement, or damages.

A CUVTA claim was later added. The CUVTA claim is based upon the actions of Valjakka, without any involvement by AiPi, see Declaration of Netflix's counsel, Ms. Lamkin [DE#128-1]:

> 11. Together, Netflix's trial team realized that Mr. Valjakka had established a fraudulent series of transactions, likely to avoid paying his creditors.

The "series of transactions" occurred in Finland and there is no suggestion that AiPi was involved. Thus, AiPi again has no bearing on this issue. A PI was recently issued and Netflix's counsel has raised issues as to compliance by Valjakka and his agents. Compliance can be assessed by the simple process of third party discovery of AiPi, or compelling AiPi to be a witness. The onerous process of making AiPi a party is a needless and fruitless undertaking, wasting the party's resources and judicial resources. AiPi has on numerous occasions expressed complete willingness to comply with any and all discovery requests, if only Netflix's counsel would ask instead of filing motions to join. Even without any request, AiPi's counsel has provided evidence of full compliance, directly and through counsel for Valjakka.

### D. FACTUAL MISSTATEMENTS IN NEXFLIX'S ARGUMENT SECTION

Netflix asserts that "AiPI has Dominion Over the Enforcement Assets." This statement is inaccurate. All Litigation settlement funds were received directly by The Ramey Law Firm. Some of the funds were transferred to AiPi and AiPi was then tasked with distribution according to the written agreements. To the extent of AiPi's knowledge, monetary settlements with five prior defendants were reached, totaling $1,285,500. (Lund Decl., ¶28.) Ramey has billed $1,142,276 for work on the Valjakka matter and had been paid at least $295,539.00 of that amount out of Valjakka funds. (Lund Decl., ¶¶ 29, 30.) Valjakka has received disbursement of at least $258,000 from the litigation funds. (Lund

Decl., ¶ 32.) Experts have invoiced $258,500 from the Valjakka funds. (Lund Decl., ¶ 31.) In addition, $393,911 has been disbursed to the fund investors (not making them whole). (Lund Decl., ¶ 33.) This leaves the net balance of the Valjakka litigation at -$804,281.76. (Lund Decl., ¶ 34.)  AiPi has not transferred any Valjakka enforcement assets since well before the PI Motion was filled. Moreover, none of those prior transfers has been alleged to have been fraudulent or a violation of CUVTA. The CUVTA allegation only asserts that Valjakka's subsequent transfers of funds (i.e. the 258,500 that he received) to other foreign entities may be a violation. AiPi only has dominion over an unpaid debit of $-804,281.76 plus the additional monies owed to the investors in the fund who contributed significantly more than the disbursement of $393,911. (Lund Decl., ¶ 33.) The fact that AiPi not only has not profited from the litigations, as have The Ramey Law Firm and Valjakka, but has in fact incurred debit not covered by the investment funds, demonstrates the fact that AiPi is not the master in control of the litigations or in control of the funds.

**E. CUVTA**

Netflix makes the assertion that "Netflix's CUVTA claims against AiPi (there are no such claims) arise out of the same transactions or occurrences as Netflix's CUVTA claim against Valjakka." This assertion is incorrect. Netflix has not asserted any CUVTA claim against AiPi. Netflix's CUVTA claim is contained in Paragraphs 133-157 of Netflix's Second Amended Answer and Counterclaim, the pertinent portion quoted below:

> 133 . . . .Valjakka incurred the obligation to pay creditors, including Netflix, and then created the licenses between himself and CDN Licensing with intent to avoid paying said creditors.
> 134. Specifically, Valjakka created CDN and the CDN licenses to move and shelter money earned from his litigation campaign in order to fraudulently place his assets beyond the reach of creditors, including Netflix.
> 135. Valjakka's fraudulent intent is evidenced by the multiple badges of fraud implicated by his conduct.
>     (a) Valjakka's Insider Transaction Evidences His Fraudulent Intent

136. Valjakka owns CDN. As such, badge (1) is satisfied because "the transfer or obligation was to an insider." Civ. Code § 3439.04(b)(1).

AiPi had nothing to do with CDN and nothing to do with any transfers made by Valjakka. Netflix does not allege that AiPi was in any manner involved with any of the accused activities. Thus, There is no CUTVA claim against AiPi and any claim against AiPi could not have arisen out of "the same occurrences or transactions." In fact, nowhere throughout the entire Motion to Join, does Netflix ever state what actions, if any, of AiPi would be a CUVTA violation, nor what claim Netflix's intends to assert against AiPi, were AiPi to be joined and does not set forth any facts that would establish a claim.

### F. JOINDER

Netflix asserts that Joinder is feasible. Netflix asserts that "Venue is proper because the CUTVA harms created by AiPi occurred in this District." Dkt. No. 217 at 7:20. Yet, Netflix has not identified a single CUTVA harm nor even any action by AiPi whatsoever that would be a CUTVA violation. One cannot base jurisdiction on a naked legal conclusion—there must be at least one fact in support of jurisdiction. Netflix has cited none. None of the "suit related" activities, even if accurate, give rise to jurisdiction. The activities of assisting in document production and defending a deposition occurred in Virginia, not California. These activities do not give rise to general jurisdiction and have no relationship to the CUVTA allegations asserted only against the individual actions of Valjakka and as such cannot give rise to specific jurisdiction.

### IV. CONCLUSION

For the foregoing reasons, there is no basis for the exercise of either general or specific personal jurisdiction over AiPi in California. Accordingly, AiPi respectfully requests that the Court deny Netflix's Motion to Join them to this action for lack of personal jurisdiction.

DATED: November 24, 2023   THE INTERNET LAW GROUP

/s/ *David Newman*
David Newman
Attorneys for Non-party AiPi, LLC

– 11 –

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28