William P. Ramey, III (appearance *pro hac vice*)
wramey@rameyfirm.com
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
Telephone:     +1.713.426.3923
Facsimile:     +1.832.689.9175

Susan S.Q. Kalra, Bar No. 167940
skalra@rameyfirm.com
Ramey LLP
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
(800) 993-7499
(832) 900-4941 (facsimile)

Attorneys for Plaintiff
*LAURI VALJAKKA*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| LAURI VALJAKKA,<br><br>            Plaintiff,<br><br>    v.<br><br>NETFLIX, INC.,<br><br>            Defendant. | Case No. 4:22-cv-01490-JST<br><br>**MOTION FOR LEAVE TO SUPPLEMENT SUMMARY JUDGMENT RECORD BASED ON ARGUMENTS RAISED AT THE HEARING UNDER RULE 56 (D) AND (E)**<br><br>Judge: Hon. Jon S. Tigar<br>Date: February 15, 2024<br>Time: 2:00 p.m.<br><br>Crtrm: 6 – 2nd Floor |

## I. INTRODUCTION

Lauri Valjakka ("Valjakka") files this request to supplement the summary judgment record under Rule 56 (d) and (e), addressing only issues raised by the Court at the Summary Judgment Hearing on November 30, 2023, showing the Court the leave should be granted so that case cited by the Court can be addressed by Valjakka and delay ruling on .

## II. Motion For Leave To Supplement

Valjakka moves to supplement the record under Rule 59(e) in the interests of fairness and substantial justice. The Court raised the issue of comity during the hearing that was not expressly briefed by either party, referring to the fact that the Finnish Court Decision was case determinative. After the hearing, Plaintiff's counsel reviewed the case cited by the Court and respectfully requests the ability to supplement the record with that case, *Int'l Nutrition Co. v. Horphag Rsch. Ltd.*, 257 F.3d 1324, 1329–30 (Fed. Cir. 2001). This motion is not for delay but in the interests of justice. The trial date is rescheduled for August/September of 2024 and granting this motion will not harm or prejudice Defendant.

## III. Netflix's Motion did not Raise Comity

While the Court is allowed to raise comity, without Notice, Plaintiff was not prepared to argue the Court's reference to *Int'l Nutrition Co. v. Horphag Rsch. Ltd.*, 257 F.3d 1324, 1329–30 (Fed. Cir. 2001) because the issue had not been pled by Netflix in its Motion for Summary Judgment. Should the Court allow leave, Plaintiff therefore files this short supplement directed to comity as applied through the case cited by the Court. Rule 59(e) provides "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (**1**) give an opportunity to properly support or address the fact; …(**4**) issue any other appropriate order." Because Plaintiff was not prepared to argue comity as applied to the case cited by the Court, Plaintiff requests under Rule 59(e) that the Court allow Plaintiff the chance to briefly address the facts as applied through *International Nutrition*.

IV. ***International Nutrition* Concerned the Construction of a U.S. Patent Assignment Limited by a Development Under Foreign Law**

The facts of *International Shoe* are very different that the facts of this case. In *International Shoe,* the court was answering the question of whether it could apply French law. The Court concluded that there was nothing improper in applying French court decision that considered a development agreement between the parties that prohibited unilateral assignment.[1] In short, the court in *International Shoe* determined another contract applied that limited the plaintiff's ability in that case to prove it had an assignment.[2] The court in that case specifically addresses the fact that the foreign court in the foreign case had dealt with the separate US assignment but concluded they were of no effect:

> The district court correctly deflected [the bona fide purchaser] argument because the French courts had determined that INC was aware of the disputed nature of the ownership of the ′360 patent at the time of the 1994 assignment. *SCIPA v. Horphag,* Certified Translation of the Judgment of the Bordeaux Court of Appeals at 38 (INC "could not be unaware that it was acquiring only a share of the patent and that the other joint proprietor was one of its principal competitors on the American market", and that SCIPA, its assignor, had not had dealings with its co-owner since a dispute in 1990.)[3]

Therefore, the court in *International Shoe* applied comity only as specifically limited by the foreign court decision. That court only disregarded the contrary US assignments because the foreign court decision specifically addressed the US assignment and explained why it was not effective because the development agreement specifically provided that unilateral assignments were not allowed.[4]

V. **The Finnish Court Decision Indicates that the '685 Application Assignments Were Restricted from the DMTS Invention**

---

[1] *Int'l Nutrition Co.*, 257 F.3d at 1330–31.
[2] *See id* at 1331-3.
[3] *See id* at 1330.
[4] *See id* at 1331-3.

It is undisputed that the Finnish Court Decision does not mention the *nunc pro tunc* US assignments of the '685 Application except in the statement of facts presented to the Finnish Court.[5] The opinion never addresses the effect of the *nunc pro tunc* US assignments beyond the uncontroverted statement of facts in the Finnish court Decision provides that the U.S. rights for the same invention were restricted after the DMTS Agreement on August 28, 2007:

> In a patent case concerning the same invention pending in the United States, Valjakka has actively taken care of the restriction of the transfer chain with his rights after the conclusion of the utilization agreement, i.e. with the nunc pro tunc documents of 8/28/2007.[6]

Therefore, just as in *International Shoe*, if this Court applies comity to the foreign decision, the comity should include the fact that the Finnish Court Decision did not dispute the factual allegations made that the US rights for the '685 Application were restricted differently by the *nunc pro tunc* US assignments only on August 28, 2007, well after the December 20, 2005 Utilization Agreement was effective. Therefore, there was no assignment by Valjakka of the '685 Application prior to August 28, 2007, under the facts used in the Finnish Court Decision.

As the three *nunc pro tunc* assignments were drafted to correct the assignment history of a portion of the DMTS Patent Applications and only affect the '685 Application for the territory of the United States, its possessions and territories:

> ASSIGNOR hereby acknowledges that on October 2, 2002, he sold, assigned, transferred and conveyed unto ASSIGNEE the whole and entire right, title and interest in and to the inventions described and claimed in United States Patent Application No. 10/208,685 for the territory of the United States, its possessions and territories; in and to United States Patent Application No. 10/208,685 and all United States patents which may be granted on said inventions, including reexaminations and reissues; and all rights to damages or profits, due or accrued, arising out of past infringements of said Patent Application should it issue as a Patent and accrued royalties due on said Patent and the right to sue for and recover the same, such assignment being subject to certain conditions set forth in separate business transfer and inventor's agreements with ASSIGNEE,[7]

This language illustrates that the assignment is to be performed in the U. S. Thus, the

---

[5] Doc. No. 116-2 at NFX-VALJ-00011077-87.
[6] Doc. No. 116-2 at NFX-VALJ-00011084; Counsel for Plaintiff informed the Court during oral argument that he believed the assignments were not discussed. As a correction, the assignments were mentioned in the factual background and therefore the assignments were considered by the Finnish Court.
[7] Language present in each Exhibits D at 2, E at 2 and F at 2.

construction and effect of the three *nunc pro tunc* agreements is according to US law, specifically California law.

California law recognizes that the three *nunc pro tunc* agreements only abrogate the portions of an agreement that remain executory.[8]  In other words, the three *nunc pro tunc* agreements do not change what happened before they were effective.  Here, Netflix admits that Mr. Valjakka did not assign his interests until at least November 29, 2007.  Therefore, from at least December 20, 2005[9] until at least August 28, 2007, if not November 29, 2007, as alleged by Netflix,[10] the DMTS Agreement was in full force.  Accordingly, by August 15, 2007, when SBO was both (1) out of business and (2) no longer using the '685 application, the rights reverted back to Mr. Valjakka, per the terms of the DMTS Agreement.[11]  The *nunc pro tunc* agreements do not change what has already happened.[12]

## VI.     FURTHER APPEALS OF FINNISH OWNERSHIP

Valjakka requests that the court delay ruling on Netflix's Motion for summary judgment until he is able to further appeal the ownership issue in the Finnish Courts under Rule 59 (d).  Mr. Valjakka is asking a Market Court in Finland to rule on Professor Tepora's legal opinion that Valjakka owns the DMTS invention by appropriation.[13]  The decision of the Market Court would be some evidence on whether Professor Tepora's opinion was accepted under Finnish law. Therefore, Valjakka requests that the Court defer ruling until the Market Court issues its expected opinion in early 2024.[14]  Netflix would not be prejudiced as it requested and received a delay in the

---

[8] *Welles*, 503 F.3d at 738-9.
[9] The date of execution of the DMTS Agreement, see Exhibit C at 2, 4.
[10] The date Mr. Valjakka executed each of the three *nunc pro tunc* agreements.
[11] *See DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1289–90 (Fed. Cir. 2008) (deciding that federal law controls the issue of whether an assignment is automatic); Doc. No. 188-20, Declaration of Valjakka at ¶¶3, 13-17.
[12] *See, e.g., Welles*, 503 F.3d at 738-9.
[13] Declaration of Onni Hietalahti at ¶¶ 5-7.
[14] Declaration of Onni Hietalahti at ¶¶ 5-7.

trial date until August/September of 2024.

## VII. CONCLUSION

Valjakka respectfully requests that the Court grant it leave to file this brief supplement based on the new case discussed at the hearing.

Respectfully submitted,
**Ramey LLP**

*/s/ William P. Ramey, III*
William P. Ramey, III
Texas State Bar No. 24027643
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
(713) 426-3923 (telephone)
(832) 900-4941 (fax)
wramey@rameyfirm.com

***Attorneys for LAURI VALJAKKA***

## CERTIFICATE OF CONFERENCE

Pursuant to the Federal Rules of Civil Procedure and local rule, I hereby certify that I conferred via e-mail and phone on December 4, 2023 with counsel for Netflix and I left a phone message on Sarah Piepmeier's line asking to discuss Plaintiff's motions, but no response indicating Defendant's position was received before this motion was filed. However, the parties did exchange e-mails on the issue. Therefore, the motion is filed as opposed.

*/s/William P. Ramey, III*
William P. Ramey, III

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure, I hereby certify that all counsel of record who have appeared in this case are being served on this day of December 4, 2023, with a copy of the foregoing via e-mail.

*/s/William P. Ramey, III*
William P. Ramey, III