# Exhibit D

UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

CALIFORNIA INNOVATIONS, INC.  )
                              )
                              )   Civil Action No. 1:22-cv-01986-RM-NRN
        *Plaintiff/Counter-Defendant,* )
v.                            )
                              )
ICE ROVER, INC.               )
                              )
        *Defendant/Counter Claimant* )

## DECLARATION OF JOSEPH J ZITO

I, Joseph J, Zito, do hereby declare and state as follows, to the full extent of my knowledge, information and belief:

1. My name is Joseph J. Zito. I am over the age of 21 and have personal knowledge of the facts contained herein, which are true and correct. If called as a witness, I could competently testify to these statements. I make this Declaration to address the assertions contained in the Ramey Declaration entered as Dkt 61-1.

2. I am licensed to practice law in the state of Maryland and The District of Columbia. I have practiced patent litigation since 1986 and I am admitted to sixteen US District Courts, Three US Circuit Courts, The Court of Appeals for the Federal Circuit, The US Court of Claims, The USPTO and The US Supreme Court. I currently represent the Defendant, Ice Rover, in the above-captioned lawsuit.

3. I can confirm, based upon information from AiPi, that:

    "On September 14, 2021, Ramey LLP, [I] was approached by a colleague for a co-counsel opportunity on a series of patent infringement cases. The colleague introduced [Ramey] to Eric Morehouse ("Morehouse") of AiPi Solutions (later changed to AiPi, Inc.) ("AiPi")."

4. I can confirm, based upon information from AiPi, that:

    "Morehouse introduced himself and his company as a patent litigation funder" Mr. Morehouse has never introduced AiPi as a "law firm." AiPi is not a law firm and does not provide legal representation. AiPi provides legal support services and business services. Mr. Morehouse likely "explained that he had a series of investors that helped him finance patent litigation. He explained that he was able work as a lawyer from his firm and a funder under AiPi."

5. I can confirm, based upon information from AiPi, that:

    "In November of 2021, Morehouse said he wanted to work with [Ramey] and Ramey LLP. He proposed a financial arrangement whereby Ramey LLP would enter the appearances and assist with case work but his internal attorneys and staff would handle the majority of the drafting, including discovery. Neither [Ramey] nor Ramey LLP ever represented AiPi directly, Morehouse told Ramey that he could make it work with his lawyers, later known as Whitestone Law, PLLC ("Whitestone"), helping with the legal work from drafting the cases through trial." I understand that Mr. Morehouse never represented that" he viewed the entities within each Plaintiff Case Group as his personal clients." The patent owners are client's of AiPi for business services and clients of the Ramey Law Firm for legal representation.

6. I have reviewed documentation and can confirm that:

    "Ramey LLP and [Ramey] began to enter appearances in cases that were already filed and in new cases as they were filed. In addition to reliance on my highly competent staff and the other attorneys at the Ramey LLP firm, [Ramey] also used resources including litigation support services from AiPi, including Eric Morehouse, Erik Lund, Ken Sheets, and a team of technical staff that Morehouse said would help with the claim charts. Shortly after Ramey LLP began working with AiPi, [Ramey] visited Morehouse at AiPi's office located at 11718 Bowaman Green Drive, Reston, VA 20190 and personally met the lawyers and some of what I was told was the technical staff. Later, after the lawyers with AiPi joined Whitestone Law, Joseph Zito was added."

7. I have reviewed documentation and can confirm that:

    "The full list of cases, organized by Case Group and including a status indicator of pending or closed [was] included as an attachment to [the Ramey] declaration, that were collaborated on between Ramey LLP and AiPi's attorneys Morehouse, Lund, Sheets, and others, were:

  a. Lauri Valjakka ("Valjakka")
  b. Ward Participation BV ("Ward")
  c. SafeCast Ltd.
  d. Peter Pedersen ("Pedersen")
  e. ALD Social
  f. CTD Networks
  g. GateKeeper Solutions
  h. SLS Manager Tech
  i. Ask Sydney
  j. VIAAS
  k. Wrist SP Biotech LLC
  l. Ice Rover
  m. M4Siz ("collectively, "AiPi Related Cases").

In addition, I, Mr. Zito, am familiar with each of the above case groups.

8. To the best of my knowledge, the assertions of Paragraph 8 of the Ramey Declaration are inaccurate. (i) I do not know if Mr. Morehouse ever "referred to the Case Group entities as his clients"  However, based upon the materials I reviewed, AiPi did not "provid[ed] legal services through AiPi for each."  AiPi provided some technical/legal advice in the form of preliminary patent evaluations, but at all times referred that advice to Mr. Ramey (or other outside counsel) for evaluation, review and approval before any legal action was undertaken.  As stated by Mr. Ramey, AiPi relied upon The Ramey Firm to provide legal services, AiPi provided support as requested:

> "using Ramey LLP to make court appearances for each Case Group. One such Plaintiff Case Group was Ice Rover, Inc. AiPi owned, through investment vehicles, several of the other Case Group Plaintiffs, including at least, CTD Networks and ALD Social, and on information and belief, Gatekeeper Solutions, and SLS Manager Techn.

The final statement of Paragraph 8 of the Ramey Declaration is likely inaccurate, but may reflect Mr. Ramey's recollection. i.e. " Morehouse told me that it was easier for him to buy a Case Group Entity because he could do with it what he wanted."

9.     Mr. Ramey, in Paragraph 9 of his Declaration states that:

> "I find it very odd that Ice Rover's counsel Joseph Zito complains of actions largely initiated by documents drafted by lawyers in Whitestone Law,"

Mr. Ramey is correct, in that it appears that the materials were prepared and provided to Mr. Ramey by AiPi, in some instances by lawyers now at Whitestone Law.  Mr. Ramey is also correct that I take issue with the sufficiency of the documents themselves.  I have met with the group of attorneys involved and have met with each attorney individually to address general and specific issues with the documents. We have discussed why much of the legal work is not of sufficient quality for filing. However, I take greater issue with the fact that Mr. Ramey apparently did not review and reject or significantly revise the materials supplied by AiPi before filing those materials with a Court.  Mr. Ramey continues on to identify certain cases:

> "namely *ALD Social LLC v. Apple, Inc.*, 3:23-cv-02695 (N.D. Calif. April 21, 2023); *CTD Networks, LLC v. Cisco Systems, Inc.*, 6:22-cv-010309 (W.D. Tx. Oct. 5, 2022); *CTD Networks, LLC v. Microsoft Corporation*, 6:22-cv-01049 (W.D. Tx. Oct. 6, 2022); *CTD Networks, LLC v. Google LLC*, 6:22-cv-01042 (W.D. Tx. Oct. 6, 2022). Attached as Exhibits E-H are true and correct copies of declarations filed in each of the above cases that specify Lund and Morehouse, working through AiPi, were involved with drafting of all of the documents that led to the Defendants filing motions for sanctions. Paragraphs 3-7 specify Lund and Morehouse's involvement in each declaration. These declarations were modified and approved by Lund. Attached as Exhibit I is a true and correct copy of an Order in *ALD Social LLC v. Apple, Inc.* denying the motion for fees."

I do not take issue with the assertion that Mr. Lund and Mr. Morehouse and others at AiPi provided support for Mr. Ramey.  From the materials I reviewed, this is accurate.  The issue is that this material was support material, drafts, for Mr. Ramey, the attorney of record and the attorney in charge of the case.  The material was not indented to be filed

as is. Mr. Ramey had an obligation to review and correct and to confirm that the pleadings were accurate and sufficient and that the cases were supported by the facts, before filing. Mr. Ramey acknowledges this responsibility in each of the Declarations referenced by Mr. Ramey: (see for example Dkt#61-10 at Paragraph 7) "Then, after I reached an opinion that the claim charts were sufficient and the complaint adequate, Ramey LLP filed the Lawsuit." My review, at the request of AiPi determined that in some instances the best judgements may not have been made.

10.  I cannot comment on the accuracy of this assertion of Paragraph 10, as it relates to Mr. Ramey's firm practice. However, it appears consistent with my observations of his work practices in the AiPi cases.

> "It is my Firm's common practice to use the technical resources of our clients in helping to draft claim charts and review technical arguments. My firm employed 8 lawyers and one patent agent into October of 2023. Currently my Firm employs 6 lawyers and the one patent agent. Typically, our clients provide additional technical resources for case assistance, as did AiPi, as explained in paragraphs 3-9. With AiPi, we also had additional legal help from attorneys with AiPi and then the same attorneys as they moved to Whitestone Law."

11.  Mr. Ramey claims that:

> "In the past 12 months, my Firm has filed 217 cases. I am listed as counsel or lead counsel in 126 currently pending cases. Over the past three years, from 12/14/2020 to today, Section 285 sanctions have been issued in" [only 6 cases]

Mr. Ramey's assertions in Paragraph 11 are significantly inaccurate. Mr. Ramey is not being candid with the Court. A PACER System search finds that Mr. Ramey filed 231 cases in the past 12 months and 694 in the past three years. Pacer also lists Mr. Ramey as counsel in 155 Open cases. Docket Navigator lists Mr. Ramey as having filed the second largest number of patent cases for the week of December 18, 2023, surpassing every large firm in the United States. Thus Mr. Ramey's case load continues to increase. Mr. Ramey is consistently in the top five patent case filers at least one week of every month.

However, the greatest inaccuracy is in identifying the number of sanctions. Mr. Ramey identifies six, the real number is sixteen:

Identified by Ramey:
- *1 - Verna IP Holdings, 422* (TXWD) .......................... $48,076.50
- *2 - Traxcell v Huawei.*, 044 (TXED) .......................... $18,606.62
- *3 - Traxcell v. Verizon* 718 (TXED) .......................... $489,710.00
- *4 - EscapeX*, (CAND) July 2023 ............................. $191,302.00
- *5 - ZT IP, LLC* (TXND.) ..................................... $92,130.35
- *6 - WPEM, LLC* (TXED) ...................................... $179,622.00

Omitted by Ramey:

*7 - NetSoc, LLC v. Oath Inc.*, 18-cv-12267 (NYSD) 2020
**Fees under sec 285**. ........................................ $22,106.00

8 - NetSoc v Quara 18-12250 NYSD Feb 25, 2021   **fees under sec 285**. ................................................... $ 6,930

9. Traxel v Nokia 17-cv-44 TXED March 2023. .................... $ 44,866

10. Traxcell v Verizon 17-cv-721 TXED March 29, 2022. ......... $ 132,046.50

11. Traxcell v Sprint 17-719 TXED Nov 10, 2022 ............. $ 784,529.16

12. Traxcell Sprint  17-cv-719 TXED June 15, 2020 ............. $ 21,360.69

13. Traxcell v Nokia 17-cv-44 TXED .......................... $ 12,657.93

The sanctions incurred by Mr. Ramey in just the past 3 years totals over: ......... **$ 2,043,940**

*Past 4 Years:*

14. Traxcell v Nokia March 2018 TXED ......................... $ 25,000

15. Traxcell v ALE February, 2018 ........................... $ 20,202.14

16. - *EMED Techs. Corp. v. Repro-Med Sys., Inc.*, No. 1:18-cv-05880, Dkt. 167 (S.D.N.Y. Nov. 12, 2019) **Sec 285 fees**. .......... $ 992,431.35

In the past four years, the total is over: ................................... **$ 3,081,573**

12.     Ice Rover is a company located in Bolder Colorado that manufactures ice chests

and sells them on-line and through retail outlets including REI, Moose Jaw and others, under the RovR Products brand. I can confirm that AiPi, including Mr. Morehouse and Whitestone Law had contact with Ice Rover and continue to have contact with Ice Rover. I have spoken to Ice Rover's CEO in person and by video conference on more then one occasion. Whitestone attorneys continue to have constant, direct contact with Ice Rover. However, there is no way to determine if Mr. Ramey had no direct contact with the client Ice Rover. If Mr. Ramey's assertion that:

> Morehouse handled all direct client communication with Ice Rover. I and Ramey LLP's attorneys at Ramey LLP worked through Morehouse, Lund and Sheets to speak with representatives of Ice Rover and perform the legal work."

is accurate, it would raise concerns about Mr. Ramey's attention to matters and client's under his purview. Mr. Ramey continues on in Paragraph 12 to blame others:

> In multiple conversations preparing for the Markman Hearing in this case, I personally conveyed to Morehouse, Lund and Sheets that we needed to send out discovery in this case. I was told AiPi's lawyers would handle it, as was the agreement. Attached as Exhibit A is a true and correct copy of an e-mail dated August 14, 2023 where I reminded Ice Rover's attorneys with AiPi that discovery needed to be sent out. In the email, Erik Lund and Ken Sheets state that they are handling the discovery.

Apparently Mr. Ramey failed to follow up on that instruction and insure that the matter was handled properly. As I stated in my Motion to Extend Discovery, I take responsibility for my part in the delay in discovery. Once I made an appearance, I should have been more diligent. However, I accepted responsibility in the motion for time, for making the incorrect assumption that discovery had been done and of not properly confirming. Once discovered, we followed through and reached agreement with opposing counsel to extend.

13. I can confirm that:
    "Exhibit B is a true and correct copy of an e-mail dated August 18, 2023 from Tina Hueske to Eric Morehouse, Erik Lund and Ken Sheets reminding them of discovery responses due soon in this matter. Ms. Hueske is a paralegal at Ramey LLP."

14. Mr. Ramey may view the situation from his perspective as set forth in his paragraph 14:
    "At first, I was confident in the support I received from AiPi and its attorneys but by the summer of 2023, the relationship began to sour when AiPi quit paying. Morehouse then formed Whitestone Law to move the Case Group related work in-house and quit paying for Ramey LLP's work. Morehouse told me on multiple occasions he was having funding problems and asked me not to withdraw from AiPi's cases as it would affect his ability to raise funds."

    However, from the perspective of AiPi and Whitestone, the mounting number of sanctions in cases unrelated to AiPi was causing concern and the mounting bad press surrounding Mr Ramey ==caused AiPi to conclude that a comprehensive review of the cases was warranted and I was contacted==. As stated above, some of the Ramey cases appear to have been well founded and adequately handled, others not. A decision was made to advise clients regarding their matters and let them make decisions on moving forward. My review of cases from AiPi handled by other outside counsel did not find any of the same irregularities that were in some of the Ramey cases, however some of those matters were also moved into Whitestone Law by the patent holders.

15. This paragraph is generally accurate.
    "In late July of 2023, I told Morehouse by phone that I needed and planned to stop all work for his matters including the Ice Rover matters. Morehouse again asked me not to withdraw as his attorneys would handle all of the drafting as my firm was not being paid. He told me that he was having trouble raising money but he promised me that it would be resolved shortly. This promise was repeated many times over the next few months."

16. This paragraph is generally accurate, except that I did not enter any cases until mid September, I had not even spoken to Mr. Morehouse until September 6th.

> "In August of 2023, I again told Morehouse I needed to withdraw from his matters if I was not going to be paid. He agreed that I should withdraw from all Case Group Entities except Valjakka, Ward, and Pedersen.6 Attorneys with Morehouse's firm, Whitestone Law began to enter appearances in the Ice Rover matters and my firm began to withdraw. Zito entered an appearance on September 15, 2023 in this matter, but had appeared in at least one other Ice Rover case in mid-August. By mid-August, it was my understanding that Jospeh Zito and Whitestone Law were handling all aspects of the Ice Rover Cases."

17. This paragraph is generally accurate:

> "To not potentially harm the client's case, I waited until after Zito had appeared before I reached out to the client to seek their approval to withdraw in the Ice Rover Case Group based on AiPi's failure to pay. Exhibit D is a true and correct copy of an e-mail chain including me, Morehouse and Tom DeFrancia, a principal of Ice Rover, dated September 22, 2023. In response to the e-mail of Exhibit D, DeFrancia thanked me for my work and stated that he was not opposed to my firm withdrawing. A formal motion to withdraw for me and my firm was filed September 28, 2023."

18. This paragraph is not accurate. The e-mail related to Ice Rover, dated August 18, is not an e-mail to me and I am not cc:d. I was not involved in any matters at AiPi nor Whitestone until mid September and was not even aware of AiPi or Whitestone in August of 2023.

> Exhibit C is a true and correct copy of an e-mail dated August 18, 2023 from Joseph Zito at Whitestone Law entering an appearance and serving discovery in a related Ice Rover case where my firm was co-counsel.

Contrary to the description provided by Mr. Ramey, Exhibit C Dkt#61-5 of the Ramey Declaration appears to be a three page e-mail chain between Mr. Ramey and a Ms. Victoria Webb, counsel for Plaintiff, California Innovations. Ms. Webb appears to be complaining to Mr.

Ramey about his failure to comply with deadlines, Ms Webb timely served Initial disclosures on September 5 and Mr. Ramey replied "We are going to serve ours on the 12th, the day after the Markman." Ms. Webb responded: "Mr. Ramey – The scheduling order in this case (ECF 33) sets today as the "deadline to serve Initial Disclosures." If Ice Rover chooses to ignore the Court's order, YETI reserves all rights." On September 13, the day after I entered an appearance, Ms. Webb included me in the emails for the first time and wrote:

> "Mr. Ramey,
> As you know, the Court entered the parties' Agreed Scheduling Order (ECF 33) and required the parties to serve their respective Initial Disclosures by September 5, 2023. YETI served its Initial Disclosures on Ice Rover in accordance with the Court-ordered deadline. But Ice Rover did not. Instead, in your below email, you attempted to unilaterally extend Ice Rover's due date to September 12, 2023 without agreement of YETI or Court Order. But Ice Rover failed to serve its Initial Disclosures by yesterday, September 12, 2023, and is now over a week past the Court-ordered deadline. Please immediately serve Ice Rover's Initial Disclosures. If Ice Rover refuses to immediately comply with the Court-ordered deadline, YETI reserves all rights, including seeking sanctions and fees.
> In addition, we have copied Mr. Joseph J. Zito from Whitestone Law on this email in view of him filing an appearance yesterday as counsel for Ice Rover. Please let us know if going forward we should continue to include both you and Mr. Zito on all correspondence and communications regarding this case."

I responded the same day, Serving Ice Rover's Initial Disclosures, this was my introduction to the above captioned matter:

> "Ms. Webb:
> Thank you for your e-mail of today.
> Attached is Ice Rover's Initial Disclosures.
> Please include me on all correspondence going forward.
> Can you please resend the attachments listed in your e-mail of September 5 below?"

19.   Mr. Ramey did fail in his responsibility as lead counsel and counsel of record.

Delegation is appropriate but follow up is required. As stated in the motion to which Mr. Ramey refers, I accepted my responsibility in failing to follow up on discovery being served, once this matter became my responsibility and thus asked for leave of Court to avoid my actions prejudicing the client.

> I understand that Erik Lund of Whitestone Law never served the discovery he prepared for this case and Ice Rover has filed a motion providing that my Firm failed our duty to competently represent them for not serving discovery. I am appalled at such a representation given the documented proof that at least by August 14, 2023, I personally had notified each of Morehouse, Lund and Sheets of the need to serve discovery in this case. Lund responded that he had it handled and his e-mail included a draft of the discovery to be sent, as shown in Exhibit A.

20. It is not possible to comment on the hopes and speculation of Mr. Ramey:

> "I am hopeful that Ice Rover is allowed to serve its discovery late because had I remained as counsel for Ice Rover, service of the documents Lund prepared would not have been missed. Even though AiPi was not paying per our agreement for the legal services rendered by my Firm, I made certain to notify Lund, Sheets and Morehouse of the need for discovery in this case. I am confident the error arose during the switch from Ramey LLP to Whitestone Law and was not intentional on the part of Zito, as he had served discovery in at least one related Ice Rover case and would have, or should have, known that discovery had not gone out in the other cases. My assumption is further supported given the attorneys from Whitestone Law were the ones who prepared the discovery documents in mid-August that should have been sent. I cannot explain their failure to serve, especially as by September 13, 2023, Zito was serving discovery in related Ice Rover cases as shown in Exhibit C."

21. This paragraph is generally accurate:

> "As of this date, I and my Firm have been able to withdraw from all of the AiPi Related Cases except for the Valjakka, Pedersen, Ward cases and the remaining CTD Cases. Each of Pedersen, Ward and Valjakka have informed me that they have a funding agreement with AiPi whereby AiPi pays litigation related expenses. AiPi ceased paying litigation related expenses for each of these Case Group Entities in the summer of 2023 even though each of these Case Groups were in critical periods of litigation. My Firm has remained counsel even though we are unpaid.

22.     Neither Mr. Morehouse nor I have any animus toward Mr. Ramey and neither of us have spread any falsehoods. Notably, Mr. Ramey simply makes the conclusory assertion without providing any examples. I am aware of two clients that choose to remain with Mr. Ramey. I wish them well and hope that they are successful. I understand that Mr. Ramey has expressed his opinion that he is owed money by AiPi and that he has expressed this opinion privately, and to clients, as well as publically and in Court filings.

> "Morehouse and Zito's expressed animus and deliberate falsehoods towards me and my Firm are likely due to the fact that more than one of their former Case Group Entities have informed AiPi they do not want to work with them any longer and would rather work with me and my Firm. Further, at least one of the Case Group Entities has threatened legal action against AiPi and Morehouse because they were abandoned by AiPi and Morehouse at a critical time in their litigation. Further, my Firm has put AiPi, Morehouse and Whitestone Law on Notice of the fees they owe."

23.     I have no information to comment on Mr. Ramey's failure to appear at aa conference in May, 2023.

> "[My] failure to appear at the May 9, 2023 Status Conference was my mistake as it was on my calendar but was accidently missed. There is no excuse and I apologize to the Court. After the hearing was missed, we reviewed docketing procedures at the weekly meeting to ensure such a mistake does not happen again by modifying reminders for hearings."

24.     I can confirm that:
"Exhibit I is a true and correct copy of an Order denying a motion for fees in *ALD Social v. Apple*, Case No. 23-cv-2695, pending in the Northern District of California."

25.     I can confirm that:
"Exhibit J is a true and correct copy of an e-mail chain dated October 13, 2023 between [Ramey] and representatives of AiPi concerning the [REDACTED]."

I can also confirm that the E-mail string, Exhibit J, contains highly sensitive privileged communications between counsel and should never have been provided to any

party or any Court without an express waiver from the client. The Exhibit should not have been filed as a public document. I can also confirm that this is not the only instance where I had to instruct Mr. Ramey not to disclose privileged communications.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 28, 2023

_____
Joseph J. Zito