UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURI VALJAKKA,<br><br>        Plaintiff,<br><br>    v.<br><br>NETFLIX, INC.,<br><br>        Defendant. | Case No. 22-cv-01490-JST<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 162, 244 |

Before the Court is Defendant Netflix, Inc.'s motion for summary judgment, ECF No. 162, as well as Valjakka's motion for leave to file supplemental briefing, ECF No. 244. The Court will grant Netflix's motion and deny Valjakka's motion.

## I.  BACKGROUND

### A.  Factual Background

This action centers on United States Patent No. 8,495,167 ("'167 Patent") and the underlying Patent Application No. 10/208,685 ("'685 Application") filed on July 30, 2002. ECF No. 74 ¶ 12; ECF No. 162-2. The '167 Patent "provides improved data communications networks, methods of operating data communications networks, network servers, network terminals and computer programs." ECF No. 74-1 at 8.

The invention described in the '167 Patent was co-invented by Valjakka and Iiro Karesniemi. ECF No. 162-2 at 1104. Valjakka was the CEO of e-3 Solutions Oy ("e-3 Solutions"), a Finnish Company, and Karesniemi was its employee. ECF No. 116-3 at 2. In 2001, Karesniemi assigned his rights in the '685 Application to e-3 Solutions Oy pursuant to his employment contract. *Id.* Valjakka, however, did not assign his rights in the '685 Application to e-3 Solutions at that time. ECF No. 162 at 9. In 2003, Valjakka re-organized e-3 Solutions into

e-3 Systems Oy ("e-3 Systems"). ECF No. 162 at 10.  On November 16, 2005, Valjakka sold all the assets held by e-3 Systems (which included rights to the '685 Application) to Suomen Biisi Oy ("SBO"), another Finnish Company. *Id.*; ECF No. 188-20 ¶ 2.  SBO was owned by Valjakka and two other persons.  ECF No. 188-24 ¶ 4.  On December 20, 2005, Valjakka entered into an agreement with SBO governing his personal rights to the '685 Application (the "Utilization Agreement" or "DMTS Agreement").  ECF No. 162 at 11; ECF No. 188-20 ¶ 3; ECF No. 116-6 at 8–9.  The Utilization Agreement contained the following material terms:

- "DMTS refers to software developed for the distribution of digital media for which the following patent applications are pending: . . . Application No. US10/208685" i.e., the '685 Application.

- "Lauri Valjakka is the Inventor and owner of DMTS and transfers with this Agreement his rights to the Company."

- "The Company has an exclusive right to utilize the DMTS rights commercially."

- "The Company has the right to alter and develop the program in any way they wish."

- "The exclusive nature of this Agreement is terminated and the rights of utilization of DMTS, assigned with this Agreement to the Company, are reassigned to the Inventor, Pekka Pakarinen, and Juha Setala, if:
  a) The company ceases to utilize the invention commercially.
  b) The company goes out of business or is declared bankrupt.
  c) If the company does not continue the patent application."

ECF No. 116-6 at 8–9.

Thereafter, Valjakka corrected the title chain for the '685 Application using three *nunc pro tunc* assignments signed on September 21, 2007, and recorded the assignments with the United States Patent and Trademark Office ("USPTO"). ECF No. 188-20 ¶ 5; ECF Nos. 188-5, 188-6, 188-7.  Through these assignments, Valjakka transferred his personal interest in the '685 Application to e-3 Solutions, effective October 2, 2002; from e-3 Solutions to e-3 Systems effective June 4, 2003; and finally, from e-3 Systems to SBO effective November 16, 2005.  ECF Nos. 188-5, 188-6, 188-7.

Valjakka and the co-owners of SBO state that by August 15, 2007, SBO ceased using the '685 Application.  ECF No. 188-20 ¶ 4; ECF No. 188-24 ¶ 6.  SBO was formally declared bankrupt on May 27, 2008.  ECF No. 116-2 at 9.

**B.     Procedural Background**

On May 27, 2008, Valjakka filed suit in the Helsinki District Court asking the court to confirm that pursuant to the Utilization Agreement, and upon the bankruptcy of SBO, the rights to the European Union Patent "EP 1421759" and the related United States '685 Application reverted to Valjakka and SBO's two other co-owners.  ECF No. 116-2 at 8.

Valjakka represented to the Helsinki District Court that "[i]n a patent case concerning the same invention pending in the United States, Valjakka has actively taken care of the restriction of the transfer chain with his rights after the conclusion of the Utilization Agreement, i.e., with the *nunc pro tunc* documents of 8/28/2007."  *Id.* at 9.  These *nunc pro tunc* documents were before the Helsinki District Court (listed as Plaintiff's documentary evidence: "No. 12 U.S. Patent Application Certificates dated 8/28/2007.")  *Id.* at 10.

Several other documents pertaining to the transfer of rights were before the Helsinki District Court, including the "[d]eed of transfer of E-3 DMTS Rights 8/21/2006," the supplemental agreements to the Utilization Agreement, SBO meeting minutes, and an SBO shareholder's proposal.  *Id.* at 11.[1]  On January 26, 2009, the Helsinki District Court found:

> that the deeds of transfer concerning the DMTS invention described above, and the deed of sale dated 11/16/2005 indicate that all rights related to patenting of the invention have been transferred to Suomen Biisi Oy from 11/16/2005.  As the rights of patent holder concerning the invention have been transferred to Suomen Biisi Oy by consecutive deeds of transfer, the document named the Utilization Agreement, dated 12/20/2005 has not been demonstrated to have prescribed on these rights.  Thus, the Utilization Agreement or the possible rescission thereof has no significance in the assessment of whom the rights to the DMTS invention belong to under the Patents Act.[2]

ECF No. 116-2 at 12.  The opinion was affirmed by the Helsinki Court of Appeals on March 24, 2010.  *Id*. at 5.

In essence, and as Valjakka admits, "two Finnish courts under Finnish contract law

---

[1] Netflix notes, and Valjakka does not dispute, that none of these documents were produced in this case.  ECF No. 162 at 12 n.3.

[2] Neither the parties nor this Court have the deed of transfer forming the basis of the Helsinki Court's decision.  ECF No. 116-2 at 10–11; ECF No. 243 at 7.

3

conclude[d] that the 2005 DMTS Agreement was ineffective" and that "SBO owned all rights to the '685 Application at the time of abandonment under Finnish law." ECF No. 191-3 at 6–7; *see also* ECF No. 188-20 ¶ 7 (Valjakka stating that the Finnish courts found that "SBO was, already the assignee of the application from November 16, 2005, and therefore SBO and I could not agree on IP ownership in the DMTS Agreement signed one month later on December 22, 2005.")

On December 23, 2009, the USPTO mailed a non-final rejection letter to SBO. ECF No. 162-2 at 435. On July 9, 2010, SBO stopped prosecuting the patent and confirmed its intentional abandonment with the patent examiner. *Id.* at 434–435 ("confirmed that no response was filed in response to the non-final rejection mailed" on December 23, 2009); *see also* ECF No. 188-20 ¶ 8 (Valjakka stating that he "called SBO's patent attorney . . . [who] informed [him] that SBO had abandoned the '685 Application by missing a USPTO deadline.")

In December 2010, Valjakka filed a petition for revival with the USPTO under 37 C.F.R § 1.137, stating that he had unintentionally abandoned the '685 Application. ECF No. 162-2 at 409–412. In January 2013, Valjakka recorded the Utilization Agreement as an assignment from SBO to himself and to SBO's two other co-owners with the USPTO, stating that:

> Provision 8 c) of the assignment, '*the rights [to US 10/208,685] . . . assigned with this agreement to the company [Suomen Biisi Oy], are reassigned to the inventor [Mr. Lauri Valjakka], Pekka Pakarinen and Juha* Setälä*, if . . . c) If the company [Suomen Biisi Oy] does not continue the patent application*' went in to effect on at least June 23, 2010 when the application was abandoned for failure to reply to an office action within the statutory time limit. As such, on at least June 23, 2010 the ownership of the application was reassigned from Suomen Biisi Oy to Mr. Lauri Valjakka, Mr. Juha Setälä and Mr. Pekka Pakarinen by provision 8 c) of the present assignment.

ECF No. 116-6 at 4 (emphasis in original).

Thereafter, Valjakka also recorded two assignments from SBO's co-owners to himself. ECF Nos. 162-6, 162-7.

Valjakka did not disclose to the USPTO that the Finnish courts had decided that SBO had ownership and that the Utilization Agreement was ineffective. ECF No. 162-2. Valjakka admits that he "did not think the Finnish court decisions were relevant to the revival of the '685 Application as both Finnish common law and the assignment history provided ownership." ECF

4

1  No. 188-20 ¶ 15.  Notwithstanding Valjakka's argument before this Court, he did not raise the
2  Finnish common law of appropriation as an issue in any filing with or representation to the
3  USPTO.  ECF No. 162-2.
4  The '167 Patent issued on July 23, 2013.  ECF No. 162-2 at 17.
5  Valjakka originally filed this patent infringement complaint in September 2021 in the
6  Western District of Texas.  ECF No. 1.  The case was transferred to this Court in March 2022.
7  ECF No. 18.
8  On September 15, 2023, Netflix filed a motion for summary judgment based in part on
9  Valjakka's lack of standing.  ECF No. 162.  The motion summarizes the foregoing facts in the
10 following chart, which the Court adopts as a helpful visual aid:



ECF No. 162 at 13.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if there is sufficient evidence for a reasonable trier of fact to resolve the issue in the nonmovant's favor, and a fact is material only if it might affect the outcome of the case. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986)). The court must draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.*

A moving party without the ultimate burden of persuasion at trial has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). That party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Id.* If the moving party satisfies its initial burden of production, the nonmoving party must produce admissible evidence to show that a genuine issue of material fact exists. *Id.* at 1103. If the nonmoving party fails to make this showing, the moving party is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

### B. Standing

"Article III of the Constitution confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *Id.* (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)).

"[T]he touchstone of constitutional standing in a patent infringement case is whether a party can establish that it has an exclusionary right in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury." *In re Cirba Inc.*, No. 2021-154, 2021 WL 4302979, at *1 (Fed. Cir. Sept. 22, 2021) (*Cirba Inc. v. VMware, Inc.*, No. CV 19-

6

742-LPS, 2020 WL 2992348, at *2 (D. Del. June 3, 2020)). "A patentee who holds all the exclusionary rights and suffers constitutional injury in fact from infringement is one entitled to sue for infringement." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339–40 (Fed. Cir. 2007). If a patentee transfers "all rights" or "all substantial rights" to the patent, then only the assignee has constitutional standing. *Id.*; *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1308 (Fed. Cir. 2003) (affirming summary judgment dismissing complaint for lack of standing where, at the time the plaintiff corporation filed the suit, it did not hold an enforceable right to the asserted patent). The Federal Circuit has also held that to have statutory standing under 35 U.S.C. § 281, the "plaintiff must [] have legal title to the patent or patent application" before filing suit. *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1072–73 (Fed. Cir. 2020).

## III.     DISCUSSION

### A.     Motion to Strike

Netflix moves to strike new declarations attached to Valjakka's opposition because they "include improper expert opinions, statements made by undisclosed witnesses, and unpermitted opinions of counsel." ECF No. 210-3 at 7, 19–21. Because the evidence supports the grant of summary judgment against Valjakka even when taken in a light most favorable to him, Netflix's motion to strike is denied as moot.

### B.     Motion for Summary Judgment

The facts recited above are undisputed, and thus the issue presented by this motion is purely legal: does Plaintiff Valjakka have legal title to the '167 Patent sufficient to confer standing? Based on the Utilization Agreement, recorded as an assignment with the USPTO, Valjakka asserts that he is the "exclusive owner" of the '167 Patent and has standing to bring this suit. ECF No. 74 ¶ 12; ECF No. 116-6. In response, Netflix offers the Finnish courts' decisions finding that the Utilization Agreement did not transfer or revert any patent rights to Valjakka. ECF No. 162 at 12; ECF No. 116-2 at 12.[3] Valjakka responds by asking this Court first to disregard the Finnish courts' decisions because they did not consider his *nunc pro tunc*

---

[3] Netflix also notes without contradiction that Valjakka did not disclose the Finnish courts' decisions to the USPTO. ECF No. 162 at 14.

7

assignments, and then either (1) to apply a combination of federal and California law to find that the Utilization Agreement automatically assigned ownership rights to Valjakka, or (2) to apply Finnish common law to an abandoned U.S. patent to find that he has legal title through appropriation. ECF No. 191-3.

### 1. Ownership of the '167 Patent

Patent ownership "is a question of who owns legal title to the subject matter claimed in a patent, patents having the attributes of personal property." *Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248 (Fed. Cir. 1993) (citing 35 U.S.C. § 261). "[T]he question of whether a patent is valid and infringed ordinarily is one for federal courts, while the question of who owns the patent rights and on what terms typically is a question exclusively for state courts." *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1572 (Fed. Cir. 1997). "Similarly, the law of a foreign jurisdiction may determine ownership of the subject matter claimed in a U.S. patent." *Pharma v. Solux Corp.*, No. 11-CV-3035-H (JMA), 2013 WL 12108255, at *3 (S.D. Cal. Aug. 30, 2013) (citing *Akazawa v. Link New Tech. Int'l, Inc.*, 520 F.3d 1354, 1357 (Fed. Cir. 2008)). In deciding whether the plaintiff is the patentee with legal title, it is proper to look at the patent application's assignment history. *Schwendimann*, 959 F.3d at 1073 (affirming the grant of summary judgment finding that plaintiff had legal title to the patent under a Minnesota assignment agreement, even if the assignee of record for USPTO was different).

To determine which state or foreign law to apply, the Court looks to the residency of the patent owner or the state where the assignment took place. *Akazawa*, 520 F.3d at 1357–58 (holding that Japanese intestacy law governs the ownership of patents where the legal title holder to the patent was a resident of Japan at the time of his death); *Schwendimann*, 959 F.3d at 1072 (applying Minnesota law to determine ownership because the parties executed the assignment contract in the state).

The Utilization Agreement is an agreement between a "Finnish citizen (Valjakka) and a Finnish company (SBO), signed in Helsinki, Finland, and written in the Finnish language." ECF No. 210-3 at 10; ECF No. 116-6 at 6–7. Accordingly, under *Akazawa* and *Schwendimann*, the Court applies Finnish law in interpreting the assignment chain. *Akazawa*, 520 F.3d at 1357;

8

1  *Schwendimann*, 959 F.3d at 1072.  Valjakka himself concedes that "there is no dispute that it is
2  appropriate to apply Finnish law to resolv[e] the ownership issues of the DMTS Technology."
3  ECF No. 191-3 at 8.

### 2. Effect of the Finnish Judgment

"[E]nforceability of judgments of courts of other countries is generally governed by the law of the state in which enforcement is sought." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1212–1213 (9th Cir. 2006) (internal citations omitted).  In California, "[t]he doctrine of comity prescribes that a court . . . recognize the judgment of a court of a foreign nation when the foreign court had proper jurisdiction and enforcement does not prejudice the rights of United States citizens or violate domestic public policy." *In re Stephanie M.*, 7 Cal. 4th 295, 314 (1994).  The Court may also "appropriately consult the Restatement (Third) of the Foreign Relations Law of the United States ('Third Restatement' or 'Restatement'), given that California courts frequently cite the Restatement, as well as earlier Restatements, as sources of law." *Yahoo! Inc.*, 433 F.3d at 1213.  Under the Restatement, an American court will enforce a judgment unless "the cause of action on which the judgment was based, or the judgment itself, is repugnant to the public policy of the United States or of the state where recognition is sought." *Id.* (citing Restatement § 482(2)(d)); *see also Bd. of Trs. of Leland Stanford Junior Univ. v. Chi-Yi*, No. 13-cv-04383-BLF, 2022 WL 17738724, at *2 (N.D. Cal. Dec. 16, 2022) ("The doctrine of comity prescribes that a court of this nation recognize the judgment of a court of a foreign nation when the foreign court had proper jurisdiction and enforcement does not prejudice the rights of United States citizens or violate domestic public policy."); *see also Int'l Nutrition Co. v. Horphag Res. Ltd.*, 257 F.3d 1324, 1328–31 (Fed. Cir. 2001) (giving effect to a foreign court's decision invalidating a patent assignment under the law of the jurisdiction governing patent ownership).[4]

---

[4] In *Int'l Nutrition Co.*, inventor Jack Masquelier assigned his rights to a U.S. patent ("'360 patent") to two organizations—SCIPA and Horphag Overseas Limited. *Id.* at 1326.  In 1994, SCIPA assigned its rights in the '360 patent to a company called INC.  In 1996, Masquelier executed a "confirmatory assignment of any rights to the '360 patent that might revert to him to INC." *Id.* at 1327.  Horphag sued SCIPA and INC in French court seeking to void the assignment to INC. *Id.*  In addition to determining the validity of the assignment between SCIPA and INC,

9

Here, the issue of ownership of the '685 Application has been previously litigated and decided. ECF No. 116-2. The Helsinki District Court found, and the Helsinki Court of Appeals affirmed:

> that the deeds of transfer concerning the DMTS invention described above, and the deed of sale dated 11/16/2005 indicate that all rights related to patenting of the invention have been transferred to Suomen Biisi Oy from 11/16/2005. As the rights of patent holder concerning the invention have been transferred to Suomen Biisi Oy by consecutive deeds of transfer, the document named the Utilization Agreement, dated 12/20/2005 has not been demonstrated to have prescribed on these rights.

ECF No. 116-2 at 5, 12. The parties agree that "two Finnish courts under Finnish contract law conclude[d] that the 2005 DMTS Agreement was ineffective" and that "SBO owned all rights to the '685 Application at the time of abandonment under Finnish law." ECF No. 191-3 at 6–7; ECF No. 116-2 at 12 (Helsinki District Court holding that "all rights related to patenting of the invention have been transferred to Suomen Biisi Oy from 11/16/2005" and that "the Utilization Agreement . . . has no significance in the assessment of whom the rights to the DMTS invention belong."). Furthermore, Valjakka concedes that the Finnish courts held that "SBO was already the assignee of the application from November 16, 2005, and therefore SBO and [Valjakka] could not agree on IP ownership in the DMTS Agreement signed one month later on December 22, 2005." ECF No. 188-20 ¶ 7; *see also* ECF No. 191-3 at 7.

Applying the foregoing principles, and because "a [Finnish] court has already presented a well-reasoned analysis of this issue, presenting a clear case for extending comity to the decision," *Int'l Nutrition Co. v. Horphag Rsch. Ltd.*, No. 96-cv-0386-DJS, 2000 WL 1863560, at *4 (D. Conn. Apr. 14, 2000), *aff'd*, 257 F.3d 1324 (Fed. Cir. 2001), the Court finds that under Finnish law, Valjakka was not the legal title holder to the '685 Application—or, by extension, the '167

---

"[t]he French court of appeals concluded that INC received no interest in the '360 patent from Masquelier's 1996 confirmatory assignment because he "lost his rights as soon as he assigned them on April 1, 1985." *Id*. at 1327. In other words, "in the absence of any reversion of the rights assigned away in 1985, Masquelier had no ownership interest in the '360 patent in 1996, and the confirmatory assignment remains a prospective assignment of any rights he may eventually regain." *Id.* at 1331. The Federal Circuit concluded that the "district court did not abuse its discretion by extending comity to this ruling." *Id.* The Federal Circuit held that "comity is appropriate because the French courts merely determined who owned a United States patent pursuant to a French contract." *Id*. at 1329.

1  Patent.

### 3. USPTO Assignment Record

Notwithstanding the decision of the Finnish courts, Valjakka asserts ownership based on the Utilization Agreement, which he recorded as an assignment with the USPTO. ECF No. 74 ¶ 12; ECF No. 116-6.

When a plaintiff asserts its ownership rights in a patent to prove standing based on an assignment recorded in the USPTO, that recordation creates a presumption of correctness as to the identity of the owner of the patent. *SiRF Tech. Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1327–28 (Fed. Cir. 2010). However, recordation of an assignment at the USPTO does not establish that the assignment is valid; it merely creates a rebuttable presumption. 37 C.F.R. § 3.54 (2000) ("[t]he recording of a document pursuant to § 3.11 is not a determination by the Office of the validity of the document or the effect that document has on the title to an application, a patent, or a registration.") An opposing party can rebut the presumption. *SiRF Tech. Inc.*, 601 F.3d at 1327–28. Here, the Finnish courts have found conclusively that Valjakka assigned away any right, title, or interest in the '167 Patent. ECF No. 116-2 at 5, 12. Because the Court gives effect to the Finnish courts' decision invalidating a patent assignment under the law of the jurisdiction governing patent ownership, *Int'l Nutrition Co.*, 257 F.3d at 1328–31, the Court finds that Netflix has met its burden of rebutting the presumption of correctness of the USPTO assignment record.

### 4. Impact of *Nunc Pro Tunc* Assignments

Valjakka also contends that the Finnish courts' decisions were incomplete because they allegedly did not consider the *nunc pro tunc* assignments:

> There is no evidence in the record that the Helsinki court considered the separate effect of the three *nunc pro tunc* agreements on the '685 patent application . . . What is clear is that the three *nunc pro tunc* agreements limited to the '685 patent application are very different than the November 16, 2005, deed of sale to SBO, the basis of the Helsinki Court Decision . . . There is no mention of the separate assignments of the '685 application . . . [that] allowed the DMTS Agreement to effect transfer.

ECF No. 191-3 at 18–19. The Court is not persuaded by this argument. For one thing, the contention is irrelevant—the question for this federal court is whether the Finnish courts entered a

11

binding judgment on the question of patent ownership, not what evidence was presented to those tribunals. Complaints about the Finnish judicial process should be directed, if anywhere, to the Finnish courts. More importantly, the retroactive assignments *were* in front of the Helsinki District Court—and Valjakka and SBO made arguments about them to that court, so the argument is not grounded in reality.[5] ECF No. 116-2 at 9–10. The Court therefore rejects it.

### 5. Valjakka Did Not Revive the '685 Application

Valjakka argues that even if the Court gives effect to the Finnish courts' decision, it should find that Valjakka regained ownership of the '685 Application under Finnish common law through appropriation of an abandoned patent application. ECF No. 191-3 at 8–11; ECF Nos. 188-11, 188-22. In support, he offers the opinion of a Finnish law professor who declares that "a patent application/patent can be an object of abandonment and appropriation on the basis of the Finnish legal system and legal literature." ECF No. 188-11 at 4. Applying this principle, the expert opines that Valjakka "has taken the said object of property [the '167 Patent] in his possession and actual power of disposal, and thus acquired title to the patent by appropriation through the granting of the patent application." *Id.* at 5. Valjakka maintains that the Finnish courts' decisions have no bearing on this appropriation theory because SBO's abandonment took place *after* the Helsinki Court of Appeals affirmed the Helsinki District Court's decision. ECF No. 188-22 ¶ 14.

This argument is unavailing. As an initial matter, the Court doubts very strongly whether Valjakka has accurately stated Finnish law as it applies to the revival of patent applications. The cases his expert cites all involve physical property, including one regarding a shipwreck and the Antiquities Act in Finland, another concerning an unclaimed schooner, and a third about a pile of chrome leather in a waste pile. ECF No. 188-13 at 9–11. The expert cites no examples of the Finnish patent office following Finnish common law regarding physical property to determine questions of patent ownership. ECF Nos. 188-11, 188-22.

In any event, Finnish common law does not matter here. While state or foreign law

---

[5] Notably, Valjakka has not produced any of the other evidence that is known to have been presented to the Helsinki District Court, including the deed of transfer of e-3's DMTS Rights; the supplemental agreements to the Utilization Agreement; and the SBO meeting minutes. ECF No. 243 at 7; ECF No. 116-2 at 11; ECF No. 162 at 12.

governs issues relating to patent *ownership*, patent *abandonment and revival* are decided under federal patent law. *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1330 (Fed. Cir. 1998), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999) (citing 35 U.S.C § 133 and finding the revival of an abandoned patent application to be an issue of federal patent law). Under that law, SBO abandoned the '685 Application. "If an applicant of a patent application fails to reply within the time period provided . . . the application will become abandoned unless an Office action indicates otherwise." 37 C.F.R § 1.135(a) (2022). The USPTO does allow unintentionally abandoned applications to be revived under 37 C.F.R. § 1.137(a) (2022). The revival petition must include "a statement that the entire delay in filing the required reply from the due date for the reply until the filing of a grantable petition pursuant to this section was unintentional." 37 C.F.R. § 1.137(b) (2022). "Where the applicant deliberately permits an application to become abandoned, [however,] the abandonment of such application is considered to be a deliberately chosen course of action, and the resulting delay cannot be considered as 'unintentional' within the meaning of 37 C.F.R. § 1.137." MPEP § 711.03(c) (8th ed. Rev. 7, Sept. 2008) (Petitions Relating to Abandonment).[6]

The parties do not dispute that SBO intentionally abandoned the '685 Application and that this abandonment was final as of July 2010. ECF No. 162 at 13; ECF No. 191-3 at 6. Whether Finnish common law might hold otherwise is irrelevant.

/ / /

/ / /

/ / /

---

[6] The Federal Circuit considered whether an accused infringer may raise improper revival as an invalidity defense in *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 543 F.3d 657 (Fed. Cir. 2008) ("*Aristocrat*"). The *Aristocrat* court found that "[p]rocedural lapses during examination, should they occur, do not provide grounds of invalidity. Absent proof of inequitable conduct, the examiner's or the applicant's absolute compliance with the internal rules of patent examination becomes irrelevant after the patent has issued." 543 F.3d at 663.

While *Aristocrat* held that "improper revival may not be asserted as a defense in an action involving the validity or infringement of a patent," *id.*, it did not change the settled rule that "the plaintiff must have the legal title to the patent or patent application" to bring a claim for infringement. *Schwendimann*, 959 F.3d at 1072–73.

**CONCLUSION**

In sum, the Court finds that Valjakka does not have title to, or any exclusionary right in, the '167 Patent.  Accordingly, he lacks standing to bring this lawsuit.  Netflix's motion for summary judgment is granted, and Valjakka's motion for supplemental briefing and delayed ruling is denied.

**IT IS SO ORDERED**

Dated:  January 8, 2024



JON S. TIGAR
United States District Judge