# Exhibit B

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF VIRGINIA
 2                         ALEXANDRIA DIVISION

 3   ---------------------------x
     AiPi, LLC,                  :     Civil Action No.:
 4                               :     1:24-mc-2
              Movant,            :
 5      versus                   :
                                 :     Friday, February 23, 2024
 6   NETFLIX, INC.,              :     Alexandria, Virginia
                                 :     Pages 1-19
 7            Respondent.        :
     ---------------------------x
 8
             The above-entitled motions hearing was heard before
 9   the Honorable William E. Fitzpatrick, United States
     Magistrate Judge.  This proceeding commenced at 10:08 a.m.
10
                       A P P E A R A N C E S:
11
     FOR THE MOVANT:           JOSEPH ZITO, ESQUIRE
12                             ERIK LUND, ESQUIRE
                               WHITESTONE LAW PLLC
13                             1850 Towers Crescent Plaza
                               Suite 550
14                             Tysons, Virginia  22182
                               (703) 261-9101
15
     FOR THE RESPONDENT:       ANDREW GEORGE, ESQUIRE
16                             BAKER BOTTS, LLP
                               700 K Street, NW
17                             Washington, D.C.  20001
                               (202) 639-7764
18
                               RACHAEL LAMKIN, ESQUIRE
19                             BAKER BOTTS, LLP
                               101 California Street
20                             Suite 3200
                               San Francisco, California  94111
21                             (415) 291-6200

22   TRANSCRIBER:              STEPHANIE M. AUSTIN, RPR, CRR
                               Transcriber
23                             United States District Court
                               401 Courthouse Square
24                             Alexandria, Virginia  22314
                               (571) 298-1649
25                             S.AustinReporting@gmail.com
         (TRANSCRIPT PROCEEDINGS RECORDED BY THE FTR SYSTEM)
```

1

|    |    |
|----|----|
| 1  | P R O C E E D I N G S |
| 2  | THE DEPUTY CLERK:  AiPi, LLC versus Netflix, Inc., |
| 3  | Case 1:24-mc-2. |
| 4  | Counsel, please note your appearances for the |
| 5  | record. |
| 6  | MR. ZITO:  Good morning, Your Honor.  Joseph Zito |
| 7  | here and Erik Lund for the movant. |
| 8  | THE COURT:  Good morning. |
| 9  | MR. GEORGE:  Good morning, Your Honor.  Andrew |
| 10 | George for Netflix.  And Ms. Knapp unfortunately is not |
| 11 | here; she's having a baby right now. |
| 12 | THE COURT:  Congratulations to her.  That's |
| 13 | wonderful. |
| 14 | MR. GEORGE:  I'll pass that along to her. |
| 15 | I'm here with my partner, Rachael Lamkin.  And on |
| 16 | behalf of Netflix, we also have Asa Wynn-Grant.  Excuse me, |
| 17 | Wynn-Grant.  I apologize. |
| 18 | THE COURT:  Okay.  The -- this is your motion. |
| 19 | I'm happy to hear any argument either side wants to make on |
| 20 | any of the points that you all have raised.  I've read your |
| 21 | submissions.  I think I have a pretty good understanding of |
| 22 | where the parties are. |
| 23 | But if I could, I really want to focus initially |
| 24 | on the close of discovery and exactly what the authority is |
| 25 | for Netflix to issue the subpoena at this point. |

2

1          I think I understand your position, and I think I
2    have a general understanding of your argument that you all
3    are -- or sort of how you interpret the California Court's
4    orders and the representations that were made by AiPi.  But
5    I'm happy to hear any other argument you have on that point.
6          MS. LAMKIN:  Your Honor, would you like me to go
7    first?
8          THE COURT:  Yeah.  I think it actually makes
9    sense, if you don't mind.  Let me just start with them and
10   hear where they are.
11         MS. LAMKIN:  Again, good morning, Your Honor.
12         I think I was remiss in not creating an actual
13   timeline for the Court.  I have done so.  If I could hand
14   one to the Court's admin up front.
15         THE COURT:  Sure.
16         MS. LAMKIN:  There you are, sir.  Thank you.
17         The important facts are this, Your Honor.  In
18   January of 2023 when the case was only a patent case, the
19   California court set the case for trial.  Discovery was to
20   close in June of 2023, and the trial was to be February of
21   2024, this month.  And that's Docket Number 77 discussed and
22   cited in the papers.
23         After the close of fact discovery, after June of
24   2024, Netflix learned that Mr. Valjakka, the patent
25   plaintiff, had been committing fraudulent transfers.  We

3

1   then moved the California Court to enjoin Mr. Valjakka and
2   his agents from continued fraudulent transfers.  We won that
3   motion.  The California Court found that it was likely that
4   Mr. Valjakka and his agents were committing fraudulent
5   transfers, and he enjoined Mr. Valjakka and his agents.
6            At that time, we did not -- Netflix did not seek
7   to move the February 2024 trial date.  As this Court knows,
8   trials are very expensive -- extending trials are very
9   expensive, so Netflix did not move to extend the trial date.
10  Netflix merely asked for limited CUVTA discovery from
11  Mr. Valjakka.
12           During the CUVTA deposition in October of 2023,
13  Netflix learned that AiPi was, in fact, the mastermind
14  behind Mr. Valjakka's fraudulent transfers.  Then, and only
15  then, in November of 2023, Netflix moved for three things.
16  Netflix moved to join AiPi.  Netflix moved for an order to
17  show cause why Mr. Valjakka and AiPi should not be
18  sanctioned for violating the Court's preliminary injunction.
19  And, most important, Netflix moved to vacate the February
20  trial date, creating a new trial date for the sole purpose
21  of joining AiPi and obtaining discovery over AiPi.  And I
22  have a copy of the joint CMC filed by all parties, including
23  AiPi, where Netflix argues that the trial date -- this
24  month's trial date -- must be vacated so Netflix could join
25  AiPi and seek discovery over AiPi.

4

1         THE COURT:  But all that's still pending; right?
2  AiPi -- the joinder motion is still pending, the trial
3  date -- the motion to continue the trial date is -- well, we
4  have the order of December 8th, 2023.
5         MS. LAMKIN:  That's correct, Your Honor.  Exhibit
6  Number 6.
7         THE COURT:  But in terms of fact -- in terms of
8  fact discovery, right, what we have are two things, as far
9  as I can tell.  We have an order of the Court terminating
10 fact discovery as of, as you said, June of '23.  We have a
11 second order from the California Court that permitted -- in
12 September of '23 that permitted limited discovery on
13 Netflix's, essentially, counterclaims; right?
14        MS. LAMKIN:  Correct.
15        THE COURT:  That's it.
16        MS. LAMKIN:  And then after that -- Your Honor,
17 again, I have the copy of the CMC.  I'm happy to hand it to
18 the Court.  After that fact, after the limited discovery, we
19 learned that AiPi is actually the mastermind.  We then moved
20 the Court to vacate the trial date so we can join AiPi.
21        THE COURT:  When did you move the Court to reopen
22 discovery?
23        MS. LAMKIN:  Because we didn't think we had to,
24 Your Honor, because AiPi promised to provide discovery.
25 That's what's critical.

5

1            THE COURT:  AiPi can't alter a Court's order.
2            MS. LAMKIN:  There was no operative Court order at
3    that time, Your Honor, closing fact discovery.  That all
4    pertained to patent infringement.  The case had been
5    reopened.
6            THE COURT:  When was the counterclaim filed?
7            MS. LAMKIN:  Can you hand me my glasses, Andrew?
8            We filed our counterclaim in August.  We got
9    permission to file the claim in August of 2023.  Two months
10   after the close of patent discovery, we then filed our CUVTA
11   counterclaim in September of 2023, three months after the
12   close of fact discovery on the patent case.  There is
13   expressly no close of fact discovery over AiPi who is yet to
14   be joined.
15           Go ahead, Your Honor.
16           THE COURT:  But why would the Court have entered
17   an order allowing only limited discovery?  If your position
18   is correct that the -- even though there's not an order that
19   says so, the order terminating discovery in June of 2023 is
20   just now moot, right, you know, conditions have overtaken
21   that order and it's just moot, even though there's no
22   subsequent order that says that, even though there's no
23   subsequent order that voids it, even though there's no
24   subsequent order that says what you're saying -- and it
25   wouldn't be a hard order to draft, it wouldn't be a hard

                                                          6

1  motion to file -- since the Court decided that in September
2  of '23 to prevent limited discovery, doesn't that suggest
3  that the California judges didn't think that it was sort
4  of -- you know, discovery is now reopened for all purposes
5  as to all, you know, parties or potential third parties?
6          MS. LAMKIN:  No, Your Honor.  Two facts are
7  critical to understand about this.  When we requested
8  limited discovery over Valjakka, not AiPi, we did not know
9  about AiPi's involvement.  During that limited discovery,
10 that's when we discovered that AiPi was the mastermind.
11 After that in November, after the close of CUVTA discovery
12 over Valjakka, in November, we filed a joint CMC.  We asked
13 the Court to vacate the trial date, and we asked the Court
14 to join AiPi and provide discovery over AiPi once joined.
15         THE COURT:  But why don't we wait until the Court
16 decides about whether or not it's appropriate to join AiPi?
17 Aren't we sort of putting the cart before the horse?
18         MS. LAMKIN:  We're not, Your Honor, because what's
19 really important to understand is AiPi is in violation of
20 the Court's preliminary injunction.
21         THE COURT:  That's not for me to decide.
22         MS. LAMKIN:  It's not for you to decide, but the
23 only way we can get discovery right now -- because AiPi is
24 not yet joined, the only way we can get discovery over AiPi
25 is a Rule 45 subpoena.  It's the proper path.  And we would

7

1  have gone to the California Court and asked the Court to
2  clarify whether or not discovery was open, because we
3  believe it's open.  We would have gone to the California
4  Court to do that if AiPi hadn't promised the Court in a
5  sworn declaration that it would provide discovery.  And if
6  AiPi had called us when it received the subpoena and said
7  what are you doing Netflix, fact discovery is closed, we
8  would have said you're wrong and gone to the California
9  Court to get that clarification.  But they didn't.  They
10 filed this motion to quash without a meet-and-confer after
11 they told the California Court three times that they would
12 provide discovery.
13         The reason we didn't go to the California Court is
14 they promised to give us discovery.  We're just asking them
15 to keep their promise.  It is now really late in the game,
16 Your Honor, for us to get this discovery and stop them from
17 violating the Court's injunction.
18         THE COURT:  I understand your point, and I
19 understand the sense of urgency that you have, and I
20 certainly understand the sense of urgency that your client
21 has.  I do think that many of these issues have just got to
22 be revolved by the Court in the forum that's handling the
23 underlying matter.  Here, I'm constrained by just the face
24 of the California orders, and the face of the California
25 orders say discovery is closed.

8

```
 1              If you are -- you know, I'm not saying anything
 2   you're saying doesn't make sense, I'm not saying that it's
 3   not the proper path forward, but I'm just saying that before
 4   this can go forward, there has got to be an order from the
 5   California Court that says exactly what you want and what
 6   they're authorizing.
 7              MS. LAMKIN:  Your Honor, if I might just try one
 8   more important point.
 9              THE COURT:  Keep at it.
10              MS. LAMKIN:  Great.  Thank you, sir.
11              Attachment Number 6 to their motion to quash is
12   the new order entered by the judge in the California court,
13   and as this Court knows --
14              THE COURT:  And that's the one dated December 8th?
15              MS. LAMKIN:  The numbers -- let me see the back of
16   the --
17              THE COURT:  I don't have -- unfortunately, the ECF
18   numbers --
19              MS. LAMKIN:  Unfortunately the top -- it's
20   Attachment Number 6 to their motion.  It says order
21   regarding case scheduled.  I can also --
22              THE COURT:  Yes.  I've got it.  That's the one
23   entered December 8th, 2023.
24              MS. LAMKIN:  Okay.  As this Court knows, a new
25   scheduling order renders inoperable the previous scheduling
```

9

1  order.  As the document shows, Netflix filed this proposed
2  scheduling order, and it does not have a close of fact
3  discovery.
4              THE COURT:  It doesn't -- for whatever reason, it
5  doesn't mention discovery at all.
6              MS. LAMKIN:  If I might -- can I hand this up to
7  the Court, Your Honor?
8              THE COURT:  I have a copy of the order.
9              MS. LAMKIN:  No.  No, sir.  This is a new document
10 the Court hasn't seen that I brought this morning.
11             THE COURT:  Okay.
12             MS. LAMKIN:  Let me give a copy to opposing
13 counsel.  You have it.  Great.
14             Your Honor, this is the joint CMC Netflix filed,
15 AiPi participated, Mr. Valjakka participated.  On page 3 --
16 this was filed, as the Court knows, at 11/21/2023.  After
17 the close of purported fact discovery, on page 3, Netflix
18 says, Judge, we need you to vacate the trial date because we
19 need you to join AiPi, and we need discovery over AiPi.  The
20 Court did that.  The Court vacated this.
21             THE COURT:  The Court speaks to its orders.  The
22 Court -- there's nothing -- there's no order that reopens
23 discovery.  The only orders out here close discovery, or
24 open it for limited purposes.  I'm not saying one day we're
25 not going to be back here, and we're going to be back here,

                                                              10

```
 1  you know, litigating perhaps the other issues raised by
 2  AiPi.  But, at this point, I don't see that I have the
 3  authority to fill in the gaps that appear to exist.
 4            MS. LAMKIN:  You do, Your Honor.  From the cases
 5  cited by AiPi in their motion to quash that talk about
 6  discovery after the -- Rule 45 discovery after the close of
 7  discovery, all of those cases say it's a fact-dependent
 8  calculus.  None of those cases, none, there's not a single
 9  case cited by AiPi.  We could not find a single case where
10  there's a bright-line rule that says no judge can allow
11  Rule 45 discovery.  Every single one of those cases cited,
12  including the first Travelers case, says it's a
13  fact-dependent inquiry.
14            THE COURT:  I understand I have the authority to
15  do it, but I don't think I have the authority to sort of
16  rewrite their orders.  Right.  I don't have the authority to
17  manage their case.  This is their case.
18            And explain to me, how is Netflix prejudiced by
19  going back to California, where this case is being
20  litigated, file a motion that says exactly what you're
21  saying, and have the district judge or a magistrate judge
22  clarify the procedural posture of the case and then reissue
23  the subpoena, assuming they authorize it?
24            MS. LAMKIN:  We're prejudiced because there's
25  ongoing fraudulent transfers, ongoing violation of the
                                                           11
```

```
 1  Court's preliminary injunction order.
 2          As this Court knows, preliminary injunctions are
 3  very rare.  The Court agreed it was likely they were
 4  committing a fraudulent transfer, Valjakka and his agents.
 5  Those fraudulent transfers, we believe, are ongoing, Your
 6  Honor.
 7          THE COURT:  Isn't that more reason why I should
 8  defer to California who knows the underlying facts of this
 9  case who can take -- if there needs to be immediate
10  injunctive relief, they're in a position where they can do
11  that?
12          MS. LAMKIN:  Your Honor, because AiPi's
13  position -- and this is critical.  AiPi's position in that
14  court -- and they said it in the briefing -- is that Court
15  does not have jurisdiction over AiPi.  It doesn't matter if
16  we go to the California Court, ask that Court to reopen
17  discovery.  This is critical.  If Netflix goes to the
18  California Court and says reopen discovery, we believe it's
19  open, but clarify, open discovery and grant us discovery
20  over AiPi, the Court doesn't have the power to do it.
21          THE COURT:  All they need to do is issue an order
22  saying that discovery is open, you can reissue your
23  subpoena.  If they filed a second motion to quash, we're
24  right back here, we're going to argue the merits of the
25  motion to quash.
```

12

1             MS. LAMKIN:  Last thing, and then I'm going to get
2    off the bench because I can tell I'm irritating you, Your
3    Honor.
4             THE COURT:  You're not irritating me at all.
5             MS. LAMKIN:  Okay.  Good.
6             THE COURT:  You're doing a great job, we just may
7    not totally agree, but you're not irritating me at all.
8             MS. LAMKIN:  Think about the timeline of this --
9             THE COURT:  This is a very friendly district.
10            MS. LAMKIN:  Thank you for the smiles, sir.
11            Think about the timeline we have here, Your Honor.
12   The Court's already ruled that fraudulent transfers are
13   occurring.  What you're asking us to do, Your Honor, is go
14   back and file a motion in the Northern District, set on, at
15   best, a 30-day schedule, at best -- and I will tell you, the
16   Northern District of California, like this Court, is
17   incredibly busy.  There's no way we're going to have it
18   heard in a month.  Let's say we have -- best-case scenario,
19   we're here in a month, six weeks, the judge says, you're
20   right, Netflix, the whole reason I moved the trial date was
21   to get discovery over these guys, you're right, fine, I
22   re-open.  Then I have to issue another subpoena to them,
23   right.  We're talking two months from now, Your Honor.  At
24   that point, we're in pretrial motions.  And then I'll move
25   the Court again to vacate the trial date?

13

```
1            All of this was caused by AiPi promising the Court
2    it would give discovery on a fact-by-fact inquiry where you
3    have no bright-line rule and you can't issue Rule 45
4    discovery.  We should not allow them to promise one Court
5    they're going to give discovery.  We go through the process
6    they invited us to do, and now we have to go back to the
7    same Court, and we're three months down the line and on the
8    eve the trial when all we're doing is doing what they
9    promised they would do.
10           This Court has the power to grant Rule 45
11   discovery, they promised us they would give it, and if they
12   are innocent of everything they say they're innocent of,
13   they should want to give it.
14           This entire situation is caused by them promising
15   an Article III judge they would give us discovery and then
16   not doing it.  And if we go by your suggested path, Your
17   Honor, we're going to be on the eve of trial again.  It
18   doesn't make any sense.  What makes sense --
19           THE COURT:  They haven't even been joined yet.
20   They haven't been joined as a defendant yet.  The California
21   Court is -- maybe they will join them, maybe they won't join
22   them.  And if they join them, then you're in a totally
23   different ball game; right?
24           MS. LAMKIN:  Yeah.  But the whole purpose of
25   Rule 45 is to get third-party discovery.  We have a whole
```

                                                                14

```
 1   federal rule that allows us to do exactly what we want to do
 2   here.
 3            THE COURT:  But typically third parties are not on
 4   the cusp of being joined as parties.  Or at this point
 5   they're not a party.
 6            MS. LAMKIN:  They're not, which is why we have to
 7   use this mechanism.
 8            THE COURT:  I understand, and I understand your
 9   frustration, and I just -- the way the orders are
10   structured, I think there needs to be some clarity.  Because
11   essentially I think what you're asking me to do is to play a
12   larger case management role in a matter that is not in this
13   court.  I'm not saying the inferences you want me to draw
14   are unreasonable, but they are asking me to rewrite orders
15   that are currently operative issued by another judge.
16            MS. LAMKIN:  The case law in their motion gives
17   this Court the power and authority to do that.
18            THE COURT:  Well, even if I have the authority do
19   it, I'm exercising my discretion not to do it.
20            MS. LAMKIN:  I understand.
21            THE COURT:  Now what I'm not doing is, I'm not
22   reaching any of the other issues.  The challenges to notice
23   obviously will be moot because if the California Court
24   reopens discovery and a new subpoena is issued, then the
25   current notice issues won't obviously be relevant.
                                                             15
```

1           The other issues with respect to undue burden or
2   the other challenges that AiPi has raised I'm not reaching
3   today.  I will say that if we do get to that point down the
4   line, then I think there probably needs to be a little bit
5   more of a fulsome record as to exactly what specifically the
6   burden would be.  But I think for today's purposes, just
7   reading the face of the California orders, I am going to
8   quash the subpoenas just based on the fact that it appears
9   to me that discovery is closed.
10          If that should change, then -- and we're back here
11  again, what I can promise you is we will not be slow.  I've
12  already reviewed the matter.  The -- we typically -- on most
13  non-dispositive motions, we have a one-week turnaround from
14  filing on a Friday, responses on a Wednesday, replies on a
15  Thursday, hearing and ruling on a Friday.
16          So if there are -- if there is a -- if there is
17  another hearing that's necessary on this, what I can promise
18  Netflix is, we will give you a quick answer, at least on
19  that schedule.  Even though I am going to quash the motion,
20  if we are back here again and you -- and there is another
21  filing, I would invite you just to have the clerk's office
22  relate the matter to me because I've already reviewed it;
23  okay?
24          MS. LAMKIN:  All right.  Your Honor, thank you for
25  your time.

16

```
 1                THE COURT:  Is there anything else that you all
 2   want to put on the record?
 3                MS. LAMKIN:  Your Honor, I'll keep you all day
 4   here if you let me.  I'm very passionate about this motion.
 5                THE COURT:  Okay.  I understand.  Is there
 6   anything else AiPi wants to put on the record?
 7                MR. ZITO:  Yes, Your Honor.  Normally, I would say
 8   thank you for the ruling, but there's been so many
 9   misstatements made, I think some of them require
10   clarification.
11                First of all, there has never been a CUVTA
12   violation, and there are no ongoing CUVTA violations.  The
13   Court did not find that there were CUVTA violations and
14   implement a preliminary injunction.  The Court -- and you
15   can read the Court's record, and it's in the ruling, I
16   believe.  The Court said because there are no funds -- and
17   the parties have indicated there are no funds -- and there's
18   no challenge to the fact that there are no funds, I am
19   entering the order because it's essentially moot.  There
20   isn't anything to CUVTA violate.  CUVTA violation is a
21   transfer of funds.  Not only have there been no CUVTA
22   violation transfer of funds, there have been no funds for
23   AiPi/Valjakka parties to transfer anywhere since 2022.  So
24   her ongoing, ongoing, ongoing, ongoing urgency is completely
25   non-existent, and Netflix knows that.  The last time any
```

1 funds even existed was more than what was almost two years
2 ago.
3       Second, if it's correct that Netflix knew AiPi was
4 "the mastermind" -- which AiPi is not the mastermind.  As a
5 matter of fact, AiPi has been fired by Mr. Valjakka because
6 they weren't masterminding anything.  But assuming that's
7 true and they found that out, as she claims, in November,
8 what took them, Netflix, four months, five months to bother
9 to file their third-party subpoena?  We didn't cause the
10 delay; it's Netflix's delay.  I wanted to clarify that.
11       There are no violations of the TROs.  There have
12 been no ongoing violations of the TROs.  They have brought
13 no violations of the TROs to the attention to the Court in
14 California.  So all that argument and disparagement is
15 incorrect.
16       And, again -- and they claim they knew of
17 fraudulent transfers.  That's not what the Court said.  The
18 Court said there isn't anything to transfer, so I'm granting
19 your preliminary injunction because there's no objection to
20 it.  I just wanted to clarify those points.
21       THE COURT:  Thank you.  I appreciate that.
22       And, again, I think the record is clear, but just
23 to restate it, my ruling today is on a very limited basis.
24 It's simply just based on my interpretation of the Court's
25 order regarding the procedural posture of discovery, and

1  that's it.
2              And, again, if the California Court amends its
3  order or clarifies its order or tells me I'm wrong, I am
4  happy to take this to the next step.  Okay.
5              All right.  Thank you all very much.  Have a nice
6  day.
7              (Proceedings adjourned at 10:31 a.m.)
8              -----------------------------------
9  I certify that the foregoing is a true and accurate, to the
10 best of my ability, transcription of proceedings recorded by
11 electronic sound recording (FTR system).
12
13              *Stephanie Austin*
14                   Stephanie M. Austin, RPR, CRR