UNITED STATES DISTRICT COURT   **ORIGINAL**

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable JON S. TIGAR, Judge

| | | |
|---|---|---|
| LAURI VALJAKKA, | ) | **Motion to Disqualify** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. C 22-01490 JST |
| | ) | |
| NETFLIX, INC., | ) | Pages 1 - 19 |
| | ) | |
| Defendant. | ) | Oakland, California |
| _____ | ) | Thursday, February 14, 2024 |

**REPORTER'S TRANSCRIPT OF ZOOM WEBINAR PROCEEDINGS**

**APPEARANCES VIA ZOOM WEBINAR:**

For Plaintiff:           Ramey LLP
                         5020 Montrose Boulevard, Suite 800
                         Houston, Texas  77006
                    BY:  WILLIAM P. RAMEY, ATTORNEY AT LAW


For Defendant:           Baker Botts L.L.P.
                         101 California Street, Suite 3200
                         San Francisco, California  94111
                    BY:  RACHAEL D. LAMKIN, ATTORNEY AT LAW


                (Appearances continued next page)

Reported By:         Raynee H. Mercado, CSR No. 8258


   Proceedings reported by electronic/mechanical stenography;
transcript produced by computer-aided transcription.

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 565-7228*

**A P P E A R A N C E S (CONT'D.)**

```
For Defendant:          Perkins Coie LLP
                        3150 Porter Drive
                        Palo Alto, California  94304
                  BY:   SARAH PIEPMEIER, ATTORNEY AT LAW


For Third party AIPI:   Whitestone Law
                        1850 Towers Crescent Plaza
                        Suite 550
                        Tysons, Virginia  22182
                  BY:   JOSEPH J. ZITO, ATTORNEY AT LAW



Also present:  Asa Wynn-Grant, Netflix, Inc.
```

--o0o--

```
1    Thursday, February 15, 2024                          2:17 p.m.
2                        P R O C E E D I N G S
3                           (Zoom Webinar)
4                              --o0o--
5         THE CLERK:  And, Your Honor, now calling civil matter
6    221490, Lauri Valjakka v. Netflix, Inc.
7       If counsel could please state their appearances for the
8    record starting with counsel for plaintiff.
9         MR. RAMEY:  Good afternoon, Your Honor.  Bill Ramey
10   for the plaintiff Lauri Valjakka, and we're ready to proceed.
11        THE COURT:  Mr. Zito, I think everyone's expecting
12   you to go next because of the motion that's at issue.
13      Your microphone is muted, sir.
14        MR. ZITO:  Yes.  Sorry.  Yeah.  Joseph Zito here for
15   nonparty AIPA, which is the respondent to the motion.
16        MS. PIEPMEIER:  Good afternoon, Your Honor.  Sarah
17   Piepmeier from Perkins Coie on behalf of defendant Netflix,
18   joined today by Rachel Lamkin of Baker Botts, and our client
19   Asa Wynn-Grant is also on line.  They're not on video.
20      Thank you, Your Honor.
21        THE COURT:  Ms. Piepmeier, is Netflix -- are Netflix
22   counsel expecting to argue this afternoon, or are you simply
23   observing?
24        MS. PIEPMEIER:  We are not, Your Honor.  We wanted to
25   be here in case Your Honor had any questions, but we intend to
```

1  let the argument proceed between Mr. Ramey and Mr. Zito.
2       **THE COURT:**  Thank you.
3       So I have not had a case quite like this before.  There
4  are aspects of this motion that may actually be new to the
5  federal court, at least insofar as the published -- and I just
6  don't mean reported -- I mean published anywhere case law is
7  concerned.  So I have lots of questions for the parties.
8       Before I get to those, I'll let each of you -- I'll give
9  each of you a chance to make argument.
10      I would observe that the AIPA Whitestone papers don't
11 contain any authority.  And I'm not sure what to make about
12 that, but it's a fact I think worth identifying.
13      Mr. Ramey, it's your motion.  You can go first.
14      **MR. RAMEY:**  Thank you, Your Honor.
15      And, again, quickly -- I won't spend a lot of time.  The
16 papers speak for themselves, but to start with what the
17 California rules allows for, they allow for when there's a
18 conflict, for you to disqualify an attorney, right?  And
19 that's where we start.
20      And we'll start that there was no waiver of any conflict
21 between Mr. Valjakka and -- and Whitestone.  And that's -- I
22 think that's the one fact we all could agree on, that there's
23 been no waiver of conflict been put out there.
24      This, as you pointed to, Your Honor, is a very interesting
25 set of facts.  And I've been involved in it from the start.

1   And I still have a hard time understanding exactly how it
2   goes.
3       But in short, you had a funder, AIPI, providing early
4   legal services to Mr. Valjakka, long before I was involved in
5   the case.  Then that -- that funder, AIPI, those same lawyers
6   went and formed a law firm, Whitestone Law.
7       Then those lawyers -- those same funder lawyers went over,
8   and they are started providing legal advice to Mr. Valjakka
9   now from Whitestone Law.
10      Then at some point, there was a CUFTA violation made by
11  Netflix.  And Whitestone Law sat on the deposition by
12  Mr. Valjakka and provided discovery responses for that
13  purported CUFTA violation.  They were basically running that
14  side of the case while I was involved in the summary judgment
15  responses.
16      And then at some point, AIPA quit funding the case for
17  Mr. Valjakka, and Mr. Valjakka became adverse to AIPI.  And at
18  that point, the lawyers from Whitestone, the same lawyers who
19  were at AIPI who went over to Whitestone, began representing
20  AIPI opposite Mr. Valjakka.
21      I don't know of a more clear case of a conflict.  They, of
22  course, obtained confidential information from Mr. Valjakka.
23  Mr. Valjakka is clearly adverse to them.  He's -- he's
24  threatened them with litigation.  I, of course, am not a
25  lawyer handling anything about that.

1  But you see in his declaration, he's considering filing
2  litigation against AIPI for breach of a funding agreement, so
3  they're clearly adverse to one another.
4  So now we have the lawyers that started at AIPI, who now
5  were [sic] at Whitestone Law representing AIPA, that somehow
6  think that they're not -- that that's okay, even though
7  represented Mr. Valjakka at one point.  And I just don't see
8  how we get there.
9  And that's pretty much the summary, that all I needed to
10  say, that California Code makes it clear that if -- if you
11  obtain confidential information from a client and you then
12  become adverse, the Code provides that you should be
13  disqualified.  And that's what we're requesting of the Court
14  for Whitestone Law and representing AIPA.
15  But it's okay because they already have local counsel in
16  California, so it's not like they're going to be without
17  counsel.  They'll just be without Whitestone Law.
18  And on top of that, remember, these are the same lawyers
19  at AIPA, so they're still going to be involved in the case.
20  They're -- they're not going anywhere.  They're just not going
21  to be representing AIPA, and they're just going to be --
22  instead be the witnesses on the other side.
23  Thank you, Your Honor.
24  **THE COURT:**  What do you want the Court's order to
25  say?

1    In other words, from what -- from what precise
2 representation do you want the Court to disqualify Whitestone
3 Law?
4    **MR. RAMEY:**  The precise representation is the fact
5 that Whitestone Law represented Mr. Valjakka during the
6 CUF- --
7    **THE COURT:**  No, no, no, no, no, no.  Stop.
8    **MR. RAMEY:**  Oh, I'm sorry.  My apologies.
9    **THE COURT:**  I understand the basis for your motion.
10 I probably wasn't clear.
11    I want to know -- so -- maybe I could come at this a
12 different way.
13    I gather you're not contending that Whitestone Law could
14 never represent AIPA in any matter.  They could represent them
15 on some other matters that didn't involve Mr. Valjakka,
16 correct?
17    **MR. RAMEY:**  Yes, Your Honor.
18    **THE COURT:**  Okay.
19    And because of the funding arrangement between the
20 parties -- I don't have the docket in this case completely in
21 mind -- but I gather you don't want Whitestone representing
22 AIPA in this case to the extent that they're being dragged
23 into this case, right?
24    That seems obvious.  You don't want that.
25    **MR. RAMEY:**  That's correct, Your Honor.  Yes, Your

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 565-7228*

1  Honor.
2  **THE COURT:** Okay.
3  So my question for you is, is there some other relief
4  besides that that you're asking the Court for?
5  And the way I want you to answer that question is I want
6  you to assume that you won the motion, and at the end of the
7  order granting your motion, there's a sentence that says
8  "Whitestone Law is precluded from representing AIPA" and then
9  there's a blank.  And I want you to fill in the blank.
10 **MR. RAMEY:** Any of its members and employees --
11 'cause it's an LLC, so I think those would be the --
12 **THE COURT:** Okay.  We'll get all the members and
13 employees.
14 What kind of cases -- what matter of --
15 **MR. RAMEY:** Ah.
16 **THE COURT:** -- right --
17                (Simultaneous colloquy.)
18 **THE COURT:** Lawyers and judges use "matter."
19                (Simultaneous colloquy.)
20 **THE COURT:** "Matter"?  "I opened a file for a new
21 matter."
22 What matters do you think Whitestone should be precluded
23 from representing AIPA in?
24 **MR. RAMEY:** In any matter involving Mr. Lauri
25 Valjakka.  That's it.  We're -- we are fine with them

1  representing them in any other matter out there, just not one
2  with Mr. Valjakka where he's a -- a party in the -- in the
3  proceeding.
4     **THE COURT:** Okay.
5     All right.  I have to tell you -- the parties don't
6  address this in their papers, but I'm -- I -- that raises the
7  question of whether the Court can prospectively bar somebody
8  from representing a client in a matter that has not yet -- the
9  matter has not yet occurred.
10    So let's say, for example --
11    Right?  I mean --
12    **MR. RAMEY:** Yes, sir.
13    **THE COURT:** I don't know.  Can I do that?  Parties
14  have not addressed that point.
15    But at least now I know what you're asking for.
16    Mr. Zito, you have the floor to make whatever argument you
17  want to make.
18    **MR. ZITO:** Sure.  Certainly, Your Honor.
19    I'd like the first clarify that I personally have never
20  been a member of AIPA, never worked for AIPA, never been an
21  employee of AIPA.  So the blanket statement that all the
22  lawyers at Whitestone were lawyers at AIPI is not correct.
23  Just want to clear that for the record.
24    Second --
25    **THE COURT:** Many of them were.  I mean, "all" is a

1    bit of an overreach, but there's a big overlap, correct?
2              **MR. ZITO:**  That's correct.
3              **THE COURT:**  Okay.
4              **MR. ZITO:**  Okay.
5         And the conflict has to be between something the lawyers
6    know that the client AIPA doesn't know about the other party.
7    There's no allegation that that's true.  The allegation is
8    exactly the opposite.
9         The knowledge is possessed by AIPA, the client, because
10   they were in business with -- we don't need to go --
11   details -- Valjakka, the other party.
12        Well, that's true in almost every case, especially when
13   they used to be partners, and now they're suing each other.
14        So to say that the knowledge of the party AIPA creates the
15   conflict with the other party Valjakka would be true in every
16   case, and it would preclude AIPA from having any lawyers to
17   represent them.
18             **THE COURT:**  Hmm.
19             **MR. ZITO:**  That's my point in the opposition.  We
20   don't disagree with the case law, which is why there's not
21   case law there.  But it has to be knowledge that the law firm
22   has that the client AIPA does not have that could be used to
23   AIPA's advantage against Valjakka.
24        There's no allegation of that.  The allegation is because
25   AIPA and Valjakka were funding and doing business with each

1    other and representing each other, AIPA has inside
2    confidential knowledge.  That does not disqualify anyone.
3    That's result of their interaction.  It's not a result of --
4    of Whitestone representing Valjakka, apart from anything else
5    that has to do with AIPA or anyone, and Whitestone obtained
6    internal knowledge of Valjakka that's not known AIPA.
7         It's exactly the opposite that's being [sic] here.
8         And there would be nothing presenting -- preventing AIPA's
9    lawyers from representing AIPA because, again, their knowledge
10   comes from parties to a -- an interaction, not from being
11   outside counsel to Valjakka obtaining confidential information
12   from Valjakka that could then be used and imparted to AIPA to
13   their advantage.
14        And that's why I say the facts don't line up with anything
15   resembling a traditional conflict of interest, Your Honor.
16             **THE COURT:**  Fair enough.
17        Do you dispute that -- that at this point, the interests
18   of AIPA and Mr. Valjakka -- which I think may be how he says
19   it -- that the interests of AIPA and Valjakka are now
20   materially adverse?
21             **MR. ZITO:**  Not in the present action we're talking
22   about, Your Honor.  Both parties have been accused of things
23   by Netflix.  Both parties acted together in those things to
24   some extent and not together in other extents.
25        There isn't -- to me --

1   **THE COURT:** You don't think that there is any
2   possibility that with regard to the allegations you just
3   identified, the parties won't have an incentive to point the
4   finger at each other?
5   **MR. ZITO:** Absolutely it will have an incentive to
6   point the finger at each other, that's correct. And I think
7   outside of --
8   **THE COURT:** Then how can they not be materially
9   adverse then?
10  **MR. ZITO:** Well, presently, there is no action for
11  any sanctions. There's no action for any attorneys' fees.
12  There's nothing that Netflix is intending to seek from other
13  either party.
14     So you're asking me currently, no. Based upon what is --
15  looks like it will -- may or will be filed? Then yes; that's
16  correct. And I was going to say --
17  **THE COURT:** Do you think -- do you think that in tort
18  case, for example, just a run-of-the-mill state law tort case,
19  that joint tortfeasors are not materially adverse to each
20  other for purposes of the rule of professional conduct unless
21  and until they actually verbalize in some way that they're
22  pointing their fingers at each other?
23     You think that there's no material adversity there?
24  **MR. ZITO:** No, no. I -- I agree with Your Honor, but
25  those would be defendants in a tort case.

1          **THE COURT:** How is that different? You've been
2  accused of mis- -- of joint -- you just said, you and Mr. --
3  your client and Mr. Valjakka have been accused jointly of
4  participating in this bad conduct.
5      How is it different?
6          **MR. ZITO:** Well, there's -- AIPA is not a party to
7  the case. And there is no specific allegation as to what AIPA
8  may or may not have done regards to a CUFTA violation, nor any
9  allegation as to what tort may have occurred and what may be
10 damage [sic] for.
11     Again, I was going to the technical question.
12     The second part of my answer is certainly there may be and
13 most likely will be adversity between the parties. And
14 outside of this, Mr. Valjakka has indicated that he has -- he
15 has an adversity because he's going to claim something and --
16 and AIPA may make a counterclaim. I don't know what that is.
17         **THE COURT:** So should I then deny the motion -- you
18 said most likely, there will be adversity.
19     Should I deny the motion today and then hold my breadth
20 until the granting of it becomes the better course of action?
21         **MR. ZITO:** Well, you should deny the motion
22 permanently because there's no basis for it, Your Honor.
23     Technically, since AIPA is not in the case --
24         **THE COURT:** Oh, right. Yeah.
25         **MR. ZITO:** -- party maybe technically, you should

1    hold it in abeyance until you rule on that motion.
2              **THE COURT:**  Well, AIPA has submitted -- I thought
3    about that.  AIPA has submitted a motion.  Here you are.  So I
4    might have had some question about that in the abstract, but I
5    don't have that question as I sit here now.
6         Are you familiar with duty of loyalty?
7              **MR. ZITO:**  The duty of what?
8              **THE COURT:**  Loyalty.  A lawyer's duty of loyalty.
9    Are you familiar with that concept.
10             **MR. ZITO:**  Yes, absolutely.
11             **THE COURT:**  And can we agree that with regard to the
12   duty of loyalty, the question of whether Whitestone came into
13   possession of confidential information, you know, that AIPA
14   would have gotten anyway, that doesn't really matter for the
15   duty of loyalty, does it?
16             **MR. ZITO:**  Well, yes, Your Honor, because let's
17   assume that Smith and Jones took over instead of Whitestone.
18   AIPA would convey the exact same information that it has to
19   Smith and Jones that Whitestone has now.
20        And so I understand what you're saying about the duty of
21   loyalty and --
22        Let me back up.  We came into this case because Netflix
23   accused and asked for information -- accused AIPI and tries
24   to -- trying to move them in as a party.
25        We didn't come into this case because Valjakka wanted to

1   assert something against AIPA, so our -- our entry into this
2   case was in support of Mr. Valjakka.  Our entry in this case
3   was because Netflix filed a motion to bring AIPA in.
4       Our entry into this case is because Netflix is seeking
5   discovery from AIPA.  It was not because Valjakka accused AIPA
6   of something.
7           **THE COURT:**  Right.
8           **MR. ZITO:**  So we didn't come in in a breach of
9   loyalty.  But I understand that concept.  And if I thought
10  there was nothing we were doing adverse to Mr. Valjakka, I
11  would -- would honor that concept, as I have many times in the
12  past.
13          **THE COURT:**  Let me read you from California Rule of
14  Professional Conduct 1.9(a), which, to be fair to you, was not
15  a subject of the parties' briefing.  But I'll read it to you
16  anyway.
17      Absent informed written consent from a former client --
18  that's my paraphrase.  Here comes the direct quote, "a lawyer
19  who has formerly represented a client in a matter shall not
20  thereafter represent another person in the same or a
21  substantially related matter in which that person's interests
22  are materially adverse to the interests of the former client,"
23  closed quote.
24      Were you able to capture all that?
25          **MR. ZITO:**  Yes.

1           **THE COURT:** Do you contend that Whitestone's
2    representation -- continued representation on the current
3    facts, regardless of what they used to be, that its continued
4    representation of AIPA on the current facts having concededly
5    represented Mr. Valjakka at his deposition and otherwise, that
6    their continued representation is consistent with the
7    requirements of that rule?
8           **MR. ZITO:** In all fairness, Your Honor, if the Court
9    believes we should step down because it violates the spirit of
10   that rule, we would certainly step away.
11          **THE COURT:** I want to know what you think.
12          **MR. ZITO:** Well, to be honest --
13          **THE COURT:** You're contesting the motion.  I want
14   AIPA and Whitestone to take a position.
15      Do you think that it is consistent with the provisions of
16   that rule for you, on the current facts, to continue to
17   represent AIPA?
18          **MR. ZITO:** Yes, because I think any other attorney
19   who took over this case where it is now who have much more
20   motivation to have AIPA in a much more adverse situation to
21   Mr. Valjakka and it would to his disadvantage, especially
22   given the fact that Mr. Valjakka's own counsel has decided to
23   withdraw from the case.
24      Mr. Valjakka will be left without counsel should Mr. Ramey
25   withdraw.  And then the counsel that comes in would have no

1  sense of loyalty or fairness or sympathy towards Mr. Valjakka
2  but, instead, would do everything in their power to make sure
3  that Mr. Valjakka suffered in the case.
4      However --
5          **THE COURT:**  Yes, go ahead.
6          **MR. ZITO:**  -- there's no -- Whitestone has no need to
7  be in this case.  And Whitestone would gladly step aside on
8  that basis.
9      The motion was not filed on that basis.  The motion was
10 filed on the basis of a conflict of interest.  And there is no
11 factual conflict of interest.  There's nothing that Whitestone
12 knows that Whitestone's client AIPA does not know better and
13 more of the same thing, so there's no conflict.
14     But if it's on the basis of loyalty or the appearance of
15 loyalty, Whitestone will step aside and let the chips fall
16 where they may.
17         **THE COURT:**  I'm not going to rule from the bench.
18 I'll say this as I think some things need to be said more
19 carefully than I'm in a position to say them now.  And I
20 appreciate Mr. Zito, you're answering my questions on a
21 pop-quiz basis about Rule 1.9(a).
22     So what I'm about to say is very tentative because it's
23 not a final order.  But I think the comment that you just made
24 stating that a lawyer representing AIPA would have it very
25 much in their interests to damage the interests of

1   Mr. Valjakka make the point better than I ever could have.
2       And if I wind up granting the motion, I'm likely to
3   quote -- I'm likely to quote verbatim from what you just said.
4       So as I sit here right now, I think there is a big
5   problem, and I think what I ought to do is just take this
6   motion under submission for two weeks and then issue an order.
7       So I'll take any last words counsel have, but that's the
8   course of action I think the Court is looking at.
9       Mr. Ramey, any additional thoughts?
10          **MR. RAMEY:**  Nothing from plaintiff, Your Honor.
11          **THE COURT:**  Mr. Zito, any additional argument?
12          **MR. ZITO:**  Yes.  I don't mind -- pardon my
13  statement -- ruling from the bench.
14      Should the Court rule that AIPA is a party to this action,
15  then the Court does not need to rule.  We will withdraw.
16      Currently AIPA is not actually even a party to this
17  action, so all I'm doing is representing third-party interest.
18          **THE COURT:**  I'm not sure if you're asking -- if
19  you're inviting the Court to do some research to determine
20  whether 1.9(a) only applies if the entity in question is a
21  party on the docket, I'll accept that challenge.
22      I'm giving you two weeks of grace.  I'm not negotiating
23  with you.  If you want the two weeks, you can have it.  At the
24  end of that time, I'm going to rule.
25          **MR. ZITO:**  Thank you, Your Honor.

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 565-7228*

```
 1            THE COURT:  The motion's now under submission.
 2            THE CLERK:  Thank you, Judge.
 3            MR. RAMEY:  Thank you, Your Honor.
 4         (Proceedings were concluded at 2:38 P.M.)
 5                          --o0o--
```

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter. I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further that I am not financially nor otherwise interested in the outcome of the action.

_____
Raynee H. Mercado, CSR, RMR, CRR, FCRR, CCRR

Friday, February 23, 2024

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 565-7228*