UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURI VALJAKKA,<br><br>    Plaintiff,<br><br>    v.<br><br>NETFLIX, INC.,<br><br>    Defendant. | Case No. 22-cv-01490-JST<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR AN ORDER TO SHOW CAUSE AND MOTION TO JOIN AIPI, LLC**<br><br>Re: ECF Nos. 216, 217 |

Before the Court are Defendant Netflix, Inc.'s motion for an order to show cause and motion to join non-party AiPi, LLC. ECF Nos. 216, 217. The Court will deny both motions.

## I.   BACKGROUND

This is a patent infringement case against Netflix brought by Plaintiff Lauri Valjakka. ECF No. 74. Netflix has counterclaimed for a judgment that Netflix does not infringe the patents at issue; that both patents are invalid for lack of inventive concept, obviousness, and other reasons; that one of the patents at issue is unenforceable due to inequitable conduct; that Plaintiff's claims are barred by the doctrine of unclean hands; and for violation of the California Uniform Voidable Transactions Act ("CUVTA"), Cal. Civ. Code §§ 3439 *et. seq.* ECF No. 192. With regard to the CUVTA claim, Netflix alleges that Valjakka created an entity called CDN Licensing for the purpose and with the effect of diverting settlement proceeds from other patent litigation to avoid paying creditors, including Netflix. *Id.* ¶¶ 130–157. The CUVTA claim is at the heart of the present motions.

After conducting discovery, Netflix moved for a preliminary injunction on its CUVTA claim. ECF No. 127. The Court granted the motion and issued a preliminary injunction in September 2023. ECF Nos. 176, 204. The Court found that Netflix had shown a likelihood of

success on the merits of its CUVTA claims, and that Valjakka had transferred assets to CDN Licensing with fraudulent intent and with no legitimate supervening purpose. ECF No. 204 at 6–10. The Court's preliminary injunction ("PI Order") prevented Valjakka from "selling, using, moving, concealing, transferring, or otherwise disposing of any Enforcement Assets[1] in his possession, custody, or control." *Id.* at 12–13. Valjakka was also ordered to transmit a copy of the PI Order to "his licensees, and to any entity that ha[d] an interest in Enforcement Assets including, but not limited to, CDN and IPRA Tech." *Id.* at 13.

By separate order, the Court also granted Netflix the ability to take CUVTA-related discovery. ECF No. 183. In the course of that discovery, on October 3, 2023, Valjakka's then attorney, William Ramey, disclosed the involvement of litigation fund manager AiPi, LLC, to Netflix via email. ECF No. 216-3 at 5. Netflix represents, and it is not disputed, that AiPi's involvement had not been disclosed before that time. ECF No. 217 at 3.

AiPi's counsel submitted a declaration describing its role in the litigation. He stated that AiPi "agreed to engage a law firm to file a Complaint and initiate the Valjakka litigation." ECF No. 233-1 ¶ 13. AiPi also "agreed to support the Valjakka litigation and manage third-party funding." *Id.* ¶ 14. He notes that AiPi "has assisted counsel in the production of Valjakka documents . . . including the collection of documents from Valjakka, the marking of documents and providing documents to counsel for Defendant." *Id.* ¶ 26. He explains that AiPi managed the settlement funds from prior defendants "totaling $1,285,500." *Id.* ¶ 28. From this amount, he states that AiPi paid $295,539 to Ramey LLP, $267,594.76 to experts, $393,911 to investors in the litigation, and $258,500 to Valjakka. *Id.* ¶¶ 30–33.

Netflix now moves to join AiPi as a party based on its alleged control over the settlement and licensing proceeds. ECF No. 217. Valjakka, now proceeding pro se, has filed a statement of non-opposition to Netflix's motion and a declaration in support of joinder. ECF Nos. 223, 223-1.

Netflix also moves for a finding of contempt. ECF No. 216. On October 12, 2023, Netflix

---

[1] Enforcement Assets are all litigation and licensing proceeds, including from settlement and final judgments relating to the Asserted Patents (i.e., United States Patent Nos. 8,495,167 ('167 Patent) and 10,726,102 ('102 Patent)). ECF No. 204 at 1–2.

conducted Valjakka's deposition. ECF No. 216-4. Based on Valjakka's testimony, Netflix concluded that Valjakka was not abiding by the terms of the injunction. ECF No. 216 at 5–6, 9–10. Thereafter, Netflix wrote to AiPi and Mr. Ramey stating, "[i]t is our understanding that the Court's PI Order extends to stay any Enforcement Assets held by the Ramey Firm and AiPi." ECF No. 216-5 at 2. AiPi responded, "[c]onfirmed, only to the extent that any 'licensing or settlement assets' that are 'held' by any other entities are in the 'possession, custody or control' of Mr. Valjakka," and that because it was not aware of any such assets, AiPi deemed the question moot. *Id.* Based on this information, Netflix moved for an order to show cause as to why Valjakka, "his agents, and his counsel, including the Ramey Firm and AiPi, should not be held in civil contempt for failure to comply with the Court's order granting a preliminary injunction." ECF No. 216 at 2.

## II.     LEGAL STANDARD

### A.     Order to Show Cause

"Civil contempt [ . . . ] consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006) (citing *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)). "The party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by 'clear and convincing evidence,' not merely a preponderance of the evidence." *In re Dual-Deck Video*, 10 F.3d at 695. "'Substantial compliance' with the court order is a defense to civil contempt, and is not vitiated by 'a few technical violations.'" *Id.* "A court has wide latitude in determining whether there has been contemptuous defiance of its order." *Gifford v. Heckler*, 741 F.2d 263, 265–66 (9th Cir. 1984).

### B.     Joinder of Absent Party

The Court undertakes a three-step inquiry to determine whether joinder of an absent party is required under Rule 19 of the Federal Rules of Civil Procedure: "(1) Is the absent party necessary [] under Rule 19(a)[;] (2) If so, is it feasible to order that the absent party be joined[;] (3) If joinder is not feasible, can the case proceed without the absent party, or is the absent party

indispensable such that the action must be dismissed?" *Salt River Project Agric. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012) (citing *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779–80 (9th Cir. 2005)).

**III.   DISCUSSION**

    **A.   Motion for an Order to Show Cause**

Netflix alleges three violations of the PI Order: (1) Valjakka failed to send the PI Order to all licensees as required; (2) Valjakka may have transferred Enforcement Assets; and (3) AiPi (as Valjakka's agent) may have aided and abetted the transfer of Enforcement Assets. ECF No. 216. The Court considers whether Valjakka and AiPi's alleged violations of the PI Order are an appropriate basis for Netflix's request for an order to show cause.

        **1.   Alleged Failure to Send the PI Order to All Licensees**

Netflix argues that Valjakka violated the PI Order when he did not send a copy of the Court's Order to either the settling defendant licensees or to CDN Licensing and IPRA Tech. ECF No. 216 at 8–9. Valjakka responds that the PI Order was "given to all licensees who provided Enforcement Assets . . . no later than November 6, 2023." ECF No. 224-4; ECF No. 224 at 2. "CDN Licensing and IPRA were made aware of the Court's Preliminary Injunction Order on September 22, 2023, and were provided a copy of the Court's Preliminary Injunction Order no later than November 2, 2023." ECF No. 224 at 2; ECF No. 224-1 ¶ 4; ECF No. 224-2.

The party alleging civil contempt must prove by clear and convincing evidence that the nonmoving party violated a court order and demonstrate that the noncompliance was more than technical. *In re Dual-Deck Video*, 10 F.3d at 695. "Civil contempt sanctions . . . are employed for two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992). Substantial compliance with the court's order is a defense to civil contempt. *In re Dual-Deck Video*, 10 F.3d at 695.

While Valjakka's efforts to comply with the PI Order were somewhat belated and sluggish, the Court finds that he has substantially complied with that order. Further, the issuance of an order to show cause would neither serve the purpose of coercing Valjakka into compliance

4

(because he has already complied) nor of compensating Netflix for any losses sustained (because it has not proven any). The Court declines to issue an order to show cause on this basis.

### 2. Valjakka's Alleged Transfers Prohibited by PI Order

Netflix argues that Valjakka "testified that he never read the transcript of the preliminary injunction hearing," "that he did not believe the Court's Order applied to the settlement and licensing monies paid by the other defendants," and that "in his view, the injunction 'would cover only the U.S. funds that [he] might . . . control, not the Finnish.'" ECF No. 216 at 5–6, 9–10. Based on this deposition testimony, Netflix contends that "Valjakka himself is likely not complying with the Court's PI Order." *Id.* at 9. Valjakka's former counsel responds that "simply because Mr. Valjakka's description of . . . his understanding of the PI . . . differ[s] from the information provided to him does not mean that . . . he is not following the PI." ECF No. 216-3 at 4.

Netflix's argument that Valjakka "likely" violated the PI Order is not supported by clear and convincing evidence that he actually did so. Netflix's request for an order to show cause on this ground is denied.

### 3. AiPi's Alleged Aiding and Abetting Transfers Prohibited by PI Order

Finally, Netflix argues that AiPi is also bound by the Court's PI Order as Valjakka's agent, but AiPi "adamantly refuses to be bound by the Court's PI Order." ECF No. 216 at 3. Based on this alleged refusal, Netflix argues that AiPi must be "flatly disregard[ing]" the Court's order. *Id.* at 11.

The Federal Rules of Civil Procedure "provide for the enforcement of judgments against non-parties in limited circumstances." *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1323 (9th Cir. 1998). Pursuant to Rule 65(d)(2), an injunction is binding upon "the parties" to the action, their "officers, agents, servants, employees, and attorneys," and upon those "persons in active concert or participation with" them. Fed. R. Civ. P. 65(d)(2). Non-parties may be held in contempt under two different tests. First, a non-party maybe held in contempt if it had notice of the order and abets the party to the injunction in violating the court's order. *Peterson*, 140 F.3d at 1323. Alternatively, the non-party maybe held in contempt if it is "in privity" with the party to the

injunction, represented by it, or subject to its control. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1280 (9th Cir. 1992) (citation omitted). Regardless of which theory is pursued, "[t]he moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999).

AiPi does not dispute that it is Valjakka's agent. ECF No. 233-1 ¶ 24 ("AiPi is an agent of Valjakka"); *see also* ECF No. 233 at 8 ("AiPi is a Valjakka agent and has fully complied with the PI and has not disputed being bound to the full extent that AiPi is an agent of Valjakka."). Valjakka's former counsel states that Enforcement Assets were transferred to CDN Licensing prior to the issuance of the PI Order and have since been spent in the ordinary course of business. ECF No. 224-1 ¶ 5. He also avers that there are no Enforcement Assets in any account of Ramey LLP. *Id.* ¶ 10. Nor can it be disputed that Ramey, as Valjakka's former attorney, is also bound by the PI Order, given the explicit language of Rule 65. Fed. R. Civ. P. 65(d)(2)(B) (including "attorneys" as persons bound).

Once again, however, Netflix has failed to meet its burden of demonstrating a violation by AiPi or Ramey of the PI Order by clear and convincing evidence. Accordingly, Netflix's request for an order to show cause on this ground is denied.

### B.     Motion to Join AiPi

#### 1.     AiPi Is Not a Necessary Party

The Court first evaluates whether the absent party is necessary under Rule 19(a). A party is necessary only if: (1) "in that party's absence, the court cannot accord complete relief"; or (2) the party claims "an interest relating to the subject of the action" and is situated such that disposing of the action may "(a) impair or impede that party's ability to protect the interest; or (b) leave an existing party subject to substantial risk of incurring . . . inconsistent obligations." Fed. R. Civ. P. 19(a). "There is no precise formula for determining whether a particular non-party should be joined under Rule 19(a). The determination is heavily influenced by the facts and circumstances of the case." *E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1081 (9th Cir. 2010). Only if the court determines that a party is necessary does it proceed to the second inquiry:

whether joinder is feasible. *Alto v. Black*, 738 F.3d 1111, 1126 (9th Cir. 2013).

Whether AiPi must be joined in this action centers on whether complete relief can be provided in AiPi's absence. Fed. R. Civ. P. 19(a); *Salt River Project Agr. Imp. & Power Dist.*, 672 F.3d at 1179. Netflix argues that AiPi's presence is necessary to provide complete relief under three theories: first, because AiPi is strictly liable for damages as the initial transferee under Netflix's CUVTA claim; second, to ensure compliance with the Court's PI Order; and third, to ensure that AiPi is afforded due process for violating the Court's PI Order. ECF No. 217 at 5–8. Because the Court has already denied Netflix's request for an order to show cause regarding AiPi's compliance with the PI Order, the Court considers only whether AiPi is a necessary party to afford complete relief under the CUVTA.

Under the CUVTA, "a 'fraudulent conveyance' is a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim." *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1065 (N.D. Cal. 2014). California courts have found that "[t]ransferees are necessary parties 'in an action to declare a transfer void as fraudulent.'" *Diamond Heights Vill. Assn., Inc. v. Fin. Freedom Senior Funding Corp.*, 196 Cal. App. 4th 290, 304 (2011) (internal citations omitted).

According to Netflix, AiPi is the "initial transferee" because AiPi exercises "dominion" over the settlement proceeds—that is, AiPi has the authority to distribute Enforcement Assets. ECF No. 217 at 5–6. Netflix claims that the Court cannot provide complete relief in AiPi's absence because AiPi, as the initial transferee of Enforcement Assets, is strictly liable for damages under the CUVTA. *Id.* (citing *In re Matter of Walldesign, Inc.*, 872 F.3d 954, 962 (9th Cir. 2017)[2]). "[I]f Netflix proves that Valjakka fraudulently transferred Enforcement Assets, Netflix may also recover against the 'initial transferee,' i.e., AiPi." *Id.* AiPi responds that there is no

---

[2] *Walldesign* relies upon the bankruptcy code. Courts in this circuit have found that the "California fraudulent conveyance law and the fraudulent transfer section of the Bankruptcy Code are similar in form and substance, and [] may be analyzed contemporaneously." *In re United Energy Corp.*, 944 F.2d 589, 594 (9th Cir. 1991); *In re 3DFX Interactive, Inc.*, 389 B.R. 842, 862 n.15 (Bankr. N.D. Cal. 2008) (comparing 11 U.S.C.A. § 548 and Cal. Civ. Code § 3439), *aff'd*, 585 F. App'x 626 (9th Cir. 2014); *see also Falkenstein v. Shipco Transp., Inc.*, No. CV 13-08052 BRO, 2015 WL 11256774, at *15 (C.D. Cal. Oct. 15, 2015).

7

allegation that AiPi ever participated in any fraudulent transfer. ECF No. 233 at 9–10.

The first step in the analysis is determining the two parties—transferor and transferee—involved in an allegedly fraudulent transfer:

> To the extent a transfer is avoidable in an action by a creditor . . . the creditor may recover judgment for the value of the asset transferred . . . or the amount necessary to satisfy the creditor's claim, whichever is less . . . against . . . [t]he first transferee of the asset or the person for whose benefit the transfer was made . . . or an immediate or mediate transferee of the first transferee.

Cal. Civ. Code § 3439.08(b)(1). A transfer made fraudulent by the transferor's intent may not be voided against a person "who took in good faith and for a reasonably equivalent value." Cal. Civ. Code § 3439.08(a).

Netflix's argument that AiPi is the initial transferee misapplies this first step. Netflix alleges in its counterclaim that the transfer between Valjakka (the debtor) and CDN Licensing (a third party) is fraudulent under the CUVTA. ECF No. 192 ¶¶ 130–157. In Netflix's counterclaim, there is no allegation of any transfer from Valjakka to AiPi after Valjakka became aware of Netflix's contingent claim for attorney's fees. Nor is there any such allegation in Netflix's motion for joinder. Instead, Netflix argues that AiPi has received, and exercises "dominion" over, Valjakka's Enforcement Assets. ECF No. 217 at 3, 5–6.

These allegations are inadequate. "Dominion" is a "minimum requirement [for] status as a 'transferee,'" *Walldesign*, 872 F.3d at 962, but it is not sufficient by itself—there still must be an actual transfer. Nor does Netflix allege when AiPi received any transfer. Because Netflix does not allege any transfer from Valjakka to AiPi after Valjakka's potential liability to Netflix became known, Netflix has not stated any right to recover from AiPi as a transferee, initial or otherwise. Therefore, AiPi is not a necessary party. Accordingly, the Court does not proceed to the second inquiry—whether joinder is feasible.[3] *Alto*, 738 F.3d at 1126.

Because AiPi is not a necessary party, Netflix's motion for joinder is denied.

---

[3] Were the Court to reach the question, it would find that it does not have jurisdiction over AiPi because Netflix has not shown that AiPi did anything "causing harm that [it] knows is likely to be suffered in the forum state." *Doe v. WebGroup Czech Republic, a.s.*, 93 F.4th 442, 452 (9th Cir. 2024).

**CONCLUSION**

For the foregoing reasons, the Court denies Netflix's motions for an order to show cause and to join AiPi.

**IT IS SO ORDERED.**

Dated:  May 29, 2024



JON S. TIGAR
United States District Judge