# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| AiPi, LLC<br><br>    Movant,<br><br>        v.<br><br>Netflix Inc.,<br><br>    Respondent. | Case No. 1:24-mc-00002 (LMB/WEF) |

## BRIEF IN SUPPORT OF
## AIPI, LLC'S MOTION TO QUASH SUBPOENA

AiPi, LLC ("AiPi") respectfully submits this brief in support of its Motion to Quash a Subpoena issued by Netflix, Inc. ("Netflix") in the pending lawsuit in the Northern District of California, *Lauri Valjakka v. Netflix Inc.,* Case No. 4:22-cv-01490-JST ("*Netflix Litigation*").

A copy of the subpoena is attached as Exhibit 1.

### I. INTRODUCTION

This Court previously quashed a nearly identical subpoena issued by Netflix on the grounds that Netflix was seeking to obtain discovery outside of the discovery period. Tr. 16:7-9 (Feb. 23, 2024).[1] The court in the *Netflix Litigation* subsequently issued an order extending fact discovery to September 27, 2024, to allow Netflix to reissue the subpoena. *Netflix Litigation* at ECF No. 285.

---

[1] All citations to the transcript hereinafter refer to the hearing on February 23, 2024, before this Court on AiPi's first motion to quash.

Netflix reissued the subpoena on June 13, 2024.[2] Once again the subpoena must be quashed, but now on the basis that it seeks disclosure of privileged information.

Indeed, using its CUVTA counterclaim (more fully explained below) as cover, Netflix has issued a third-party subpoena to obtain communications between the plaintiff, his attorney, and its litigation funder made in anticipation of, and during the course of, the *Netflix Litigation*. Netflix claims these privileged communications are relevant to its CUVTA claim, but relevance is not a basis to eviscerate the attorney-client privilege, work product privilege, and the common interest privilege. And ultimately, Netflix is really just after privileged communications made by its adversary during the course of litigation—the very thing that the work product privilege is designed to prevent.

Further, Netflix also ignores the Court's ruling in the *Netflix Litigation* where the Court declined to join AiPi as a party to the litigation finding that "[b]ecause Netflix does not allege any transfer from the [plaintiff] to AiPi after [the plaintiff's] potential liability to Netflix became known, Netflix has not stated any right to recover from AiPi as a transferee, initial or otherwise." *Netflix Litigation* at ECF No. 284 at 8. So, if Netflix does not allege any transfer to AiPi after the potential liability to Netflix became known, then how does the information it seeks to subpoena have any relevance to Netflix's counterclaim? While Netflix has resorted to inflammatory and sensationalistic rhetoric accusing AiPi of being a "mastermind" (Tr. 4:13, 5:19, 7:10), the court in the *Netflix Litigation* rejected these arguments with respect to Netflix's motion for contempt and to join AiPi as lacking an evidentiary basis. *Netflix Litigation* at ECF No. 284 at 6, 8.

---

[2] Although the face of the subpoena does not have a return date, during the meet and confer process, the Parties agreed for AiPi to file this motion to quash by July 22, 2024. Thus, this Motion is timely filed.

Finally, the subpoena should be quashed as it categorically seeks disclosure of privileged information. To the extent, AiPi is required to log the privileged documents as requested by Netflix or to comply with the subpoena, AiPi requests that the costs and attorney fees of compliance be shifted to Netflix due to the undue burden and expense of responding to the subpoena.

## II. BACKGROUND ON THE SUBPOENA AND THE NETFLIX LITIGATION

### A. Background on the *Netflix Litigation*

The court in the *Netflix Litigation* summarized the facts and procedural posture in a recent order, which are relevant here:

> This is a patent infringement case against Netflix brought by Plaintiff Lauri Valjakka. Netflix has counterclaimed for a judgment that Netflix does not infringe the patents at issue; that both patents are invalid for lack of inventive concept, obviousness, and other reasons; that one of the patents at issue is unenforceable due to inequitable conduct; that Plaintiff's claims are barred by the doctrine of unclean hands; and for violation of the California Uniform Voidable Transactions Act ("CUVTA"), Cal. Civ. Code §§ 3439 *et. seq.* With regard to the CUVTA claim, Netflix alleges that Valjakka created an entity called CDN Licensing for the purpose and with the effect of diverting settlement proceeds from other patent litigation to avoid paying creditors, including Netflix.

*Netflix Litigation*, ECF No. 284 at 1 (internal ECF citations omitted). Netflix then filed a motion for a preliminary injunction on the CUVTA claim, which the court granted finding that: (1) Valjakka had granted a license to the rights for the patents at issue in the case, including litigation proceeds, to a company he owned, CDN Licensing; (2) Netflix is a "creditor" based on the attorney fees it is seeking under 35 U.S.C § 285; and (3) Valjakka transferred the assets (e.g. the license to the patents) with fraudulent intent and no legitimate supervening purpose. *Netflix Litigation*, ECF No. 204 at 2-10.

Netflix then filed a motion to join Valjakka's litigation funder, AiPi, to the lawsuit and to hold AiPi and Valjakka in contempt of the preliminary injunction. *See generally, Netflix Litigation*,

ECF No. 284. The California Court denied both motions, finding that Netflix failed to meet its burden that Valjakka transferred assets after the issuance of the preliminary injunction, and that AiPi aided and abetted in any such transfers. *Netflix Litigation*, ECF No. 284 at 5-6. The court further denied Netflix's motion to join AiPi finding that "[b]ecause Netflix does not allege any transfer from Valjakka to AiPi after Valjakka's potential liability to Netflix became known, Netflix has not stated any right to recover from AiPi as a transferee, initial or otherwise. Therefore, AiPi is not a necessary party." *Netflix Litigation*, ECF No. 284 at 5-6.

**B. Background on AiPi**

"AiPi is a legal support company" that provides litigation assistance and third-party litigation funding. *Netflix Litigation*, ECF No. 233-1 at ¶¶ 14-16, 26. AiPi entered into an agreement with Valkjakka to provide such litigation support and third-party funding for his litigation. *Netflix Litigation*, ECF No. 233-1 at ¶¶ 14-26; *see also* Morehouse Decl. (attached here at Exhibit 2). Valjakka entered into a funding agreement with AiPi on September 15, 2021 ("Funding Agreement") and signed a Litigation Plan on September 19, 2021. *See* Morehouse Decl. at ¶ 5. In the Funding Agreement, Valjakka and AiPi agreed that they shared a "common legal interest" in pursuing claims against potential infringers for purposes of sharing work product and privileged information. Morehouse Dec. at ¶ 5.[3] Valjakka and AiPi further agreed that privileged information and work product would be disclosed to AiPi with the understanding and agreement

---

[3] AiPi will provide the Funding Agreement for in-camera review if requested by the Court.

Pursuant to Rule 45, AiPi is describing the contents of the Funding Agreement for purposes of asserting the claim of privilege and carrying AiPi's burden to show that the documents and information sought by the subpoena are privileged. The existence of a written agreement is evidence of the existence of the common interest privilege. *Molock v. Whole Foods Mkt. Grp.,* No. 16-cv-02483 (APM), 2019 U.S. Dist. LEXIS 233497, at *3 (D.D.C. Nov. 1, 2019). AiPi's disclosure of this portion of the Agreement or its relationship with Valjakka shall not construed as a waiver in any way.

4

that the privileges would not be waived, and that both parties agreed to uphold the privileges with respect to information disclosed between Valjakka and AiPi. *Id.* at ¶ 6. Indeed, privileged information and work product were only shared with AiPi because there was agreement that the information would be maintained as confidential and privileged. *Id.*

Indeed, Valjakka further stated that lawyers at AiPi assisted Valjakka in preparing work product and assistance in his litigation. *Netflix Litigation*, ECF No. 251-1 at ¶¶ 3-4.[4] Nevertheless, Valjakka confirmed that he shared information with AiPi understanding that it would be confidential and privileged, and that disclosure of such would harm his case. *Netflix Litigation*, ECF No. 251-1 at ¶¶ 3-4, 14.

**C. The Subpoena**

Although the court only ordered "minimal, targeted CUVTA discovery" (*Netflix Litigation*, ECF No. 183), Netflix issued a subpoena compelling the disclosure of 7 categories of documents, and a corporate deposition on 14 impermissibly broad topics. At the heart of every request is Netflix's attempt to obtain documents, agreements, and communications between Valjakka, his former lawyer (William Ramey), and/or AiPi.

AiPi does not have any documents or communications outside of those subject to the common interest privilege agreement. Morehouse Decl. at ¶ 7. In addition, there have been no settlements by Valjakka in other litigation that occurred after the issuance of the preliminary injunction order in the *Netflix Litigation*. *Id.* The expenses of the litigation vastly exceed the amount of the settlements that occurred. *See Netflix Litigation*, ECF No. 233-1 at ¶¶ 28-34. And

---

[4] Valjakka further stated that AiPi's lawyers worked as his lawyer. *Netflix Litigation*, ECF No. 251-1 at ¶ 3. AiPi disputed this as AiPi. *See also Netflix Litigation*, ECF No. 233-1 at ¶ 7.

It is also worth noting that Valjakka and AiPi agreed that Valjaka retained all control over the conduct of his claim. Morehouse Decl at ¶ 7.

5

AiPi has not transferred any settlement proceeds to CDN. Morehouse Decl. at ¶ 9. AiPi also did a cursory search for responsive documents to determine the number of responsive documents, which totaled in the thousands.  Morehouse Decl. at ¶ 8.

### III. ARGUMENT

#### A. The Documents, Communications, and Information Sought by Netflix are Privileged

Before diving into the privilege analysis, it is important to reorient as to what Netflix is trying to do here. In the *Netflix Litigation*, Netflix intends to seek attorney fees as a prevailing party at the conclusion of the case under 35 U.S. Code § 285. No such attorney fees have been awarded yet, as AiPi understands. Nevertheless, Netflix has then used that claim for fees as a basis to assert a CUVTA claim against Valjakka. Using the CUVTA claim as a foothold, Netflix is now trying to obtain all communications between its opposing party (Valjakka), his counsel, and his litigation funder. While Netflix may believe the communications are relevant under its CUVTA claim, relevance is not a way to circumvent the attorney-client and work-product privileges.

The documents or communications Netflix is seeking are protected by the attorney-client and work product privileges. Our Supreme Court explained the importance of shielding work product from discovery:

> Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that ***a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information***, sift what he considers to be the relevant from the irrelevant facts, ***prepare his legal theories and plan his strategy without undue and needless interference***. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. ***This work is reflected, of course,***

6

> *in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways…Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten*. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. *The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served*.

*Hickman v. Taylor*, 329 U.S. 495, 510-551 (1947) (emphasis added). The purpose of this privilege is to protect "written materials that lawyers prepare 'in anticipation of litigation,' ensuring that 'lawyers can prepare for litigation without fear that opponents may obtain their private notes, memoranda, correspondence, and other written materials.'" *United States v. Williams Companies, Inc.,* 562 F.3d 387, 393 (D.C. Cir. 2009). The communications sought by Netflix fall squarely within the work-product privilege—documents and communications prepared in anticipation of litigation. Morehouse Decl. at ¶ 8. In the same vein, Netflix is also seeking communications between Valjakka and his lawyer. *Id.*

Moreover, the attorney-client and work-product privileges extend to all communications under the common interest privilege between Valjakka, his attorney, and AiPi. *See Hunton & Williams v. United States DOJ,* 590 F.3d 272, 274 (4th Cir. 2010) (hereinafter *"Hunton"*); *United States v. Am. Tel. & Tel. Co*., 642 F.2d 1285, 1298 (D.C. Cir. 1980) (hereinafter "*AT&T*"). The common interest privilege "enables parties with a shared legal interest to pursue a joint legal strategy." *Hunton*, 590 F.3d at 274. The "doctrine permits parties whose legal interests coincide to share privileged materials with one another in order to more effectively prosecute or defend their claims." *Id.* at 277. The common interest privilege does not require a written agreement, nor does it require that both parties to the communications at issue be co-parties in litigation. *Am. Mgmt.*

7

*Servs. v. Dep't of the Army*, 703 F.3d 724, 732-733 (4th Cir. 2013). The common interest privilege only requires that there is "an agreement or a meeting of the minds" to treat the communications and/or disclosures as privileged. *Id.* "When the transfer to a party with such common interests is conducted under a guarantee of confidentiality, the case against waiver is even stronger. *AT&T*, at 1299-1300 (emphasis added); *see also Molock v. Whole Foods Mkt. Grp.,* No. 16-cv-02483 (APM), 2019 U.S. Dist. LEXIS 233497, at *3 (D.D.C. Nov. 1, 2019) (finding the existence of the common interest privilege based on the existence of a written agreement).

Here, there is a written agreement between Valjakka and AiPi that they have a "common interest." *See* Moorehouse Decl. at ¶¶ 5-6. As stated above, consistent with Rule 45, AiPi has provided a description of the agreement through the declaration of Eric Morehouse for purposes of maintaining the privilege. AiPi will provide a copy of the agreement for an in-camera review upon request of the Court. That being said, AiPi can satisfy its burden to establish the existence of the common interest privilege through the sworn declaration of Eric Morehouse. *Am. Mgmt. Servs.,* 703 F.3d at 733. And that declaration establishes that Valjakka and AiPi agreed that privileged information and work product would be disclosed to AiPi with the understanding and agreement that privilege would not be waived, and that both parties agreed to uphold the privilege with respect to the information shared between them. Morehouse Decl. at ¶ 6. Further, privileged information was only shared with AiPi because there was an agreement that the information would be maintained as confidential and privileged. *Id.*; *see also Netflix Litigation*, ECF No. 251-1 at ¶¶ 3-4, 14. Thus, the subpoena should be quashed as it seeks the disclosure of information subject to the common interest privilege.

Further, the Court is not treading into unknown waters here. Courts have routinely rejected disclosure concerning litigation funding arrangement. *See e.g.,Ashghari-Kamrani v. United Servs.*

8

*Auto. Ass'n*, No. 2:15-cv-478, 2016 U.S. Dist. LEXIS 197601, at *14 (E.D. Va. May 31, 2016); *Art Akiane LLC v. Art & SoulWorks LLC*, No. 19 C 2952, 2020 U.S. Dist. LEXIS 171682, at *5 (N.D. Ill. Sep. 18, 2020); *Kaplan v. S.A.C. Capital Advisors, L.P.*, No. 12-CV-9350 (VM)(KNF), 2015 U.S. Dist. LEXIS 135031, at *10-17 (S.D.N.Y. Sep. 10, 2015*); Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 721 (N.D. Ill. 2014). But the Netflix subpoena seeks to do much more than obtain information concerning the funding agreement between AiPi and Valjakka; it seeks to compel all their communications, litigation strategy, privileged information concerning other litigation involving Valjakka, and even draft pleadings.

Finally, were the Court to accept Netflix's entreaties to compel disclosure of the requested communications and documents it would eviscerate the attorney-client and attorney work-product privileges. In the future, defendants would be forced to disclose all communications amongst defense counsel in a multi-defendant lawsuit. Parties would be forced from working together against a common foe. A party would waive the attorney-client privilege and work product simply by using litigation funding. The very purpose of these privileges is to allow "a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman*, 329 U.S. at 510-551. The purpose of these privileges is to "safeguard[] the fruits of an attorney's trial preparations from the discovery attempts of the opponent" and "protect information against opposing parties." *AT&T*, 642 F.2d at 1299. It would also lead to ancillary litigation having no bearing on any issue that will be tried in the litigation, such as here.

Thus, Netflix's subpoena to AiPi should be quashed in its entirety as it seeks the disclosure of privileged information.

### B. AiPi does not have any Relevant Documents that are Responsive to the Subpoena

A party may only obtain discovery "regarding any ***nonprivileged*** matter that is ***relevant*** to any party's ***claim or defense*** and proportional to the needs of the case…" Fed. R. Civ. P. 26(b)(1)

9

(emphasis added). Here, AiPi does not have responsive documents outside of those protected by the common interest privilege. Morehouse Decl. at ¶ 8. Moreover, to the extent that Netflix is claiming that it is seeking discovery of fraudulent transfers by Valjakka under CUVTA, then AiPi has no responsive documents as: (1) Valjakka has not settled any claims since the order on the preliminary injunction was issued; (2) the litigation expenses vastly exceed the amounts recovered by Valjakka in his other litigation; and (3) AiPi has not transferred any of the settlement proceeds to CDN. Morehouse Decl. at ¶ 9; *Netflix Litigation*, ECF No. 233-1 at ¶¶ 28-34.

So, if Netflix's proffered basis to seek this discovery is that there may be evidence of transfers relating to its CUVTA claim, then AiPi is not in possession of any responsive documents.

**C. The Subpoena Issued by Netflix is Unduly Burdensome**

The documents and information sought by the subpoena are undoubtedly in the possession of Valjakka, the party to the litigation. But the court in the *Netflix Litigation*, only permitted Netflix to obtain "minimal, targeted CUVTA discovery," which was limited to:

> (i) one three (3) hour deposition of Valjakka limited to the CUVTA issue, (ii) one three (3) hour deposition of CDN Licensing's CEO limited to the CUVTA issue, (iii) a single discovery request seeking documents related to the formation and purpose of CDN Licensing, (iv) five (5) interrogatories limited to the CUVTA issue, and (v) five (5) requests for admission limited to the CUVTA issue.

*Netflix Litigation*, ECF No. 183. Despite those initial limitations on CUVTA discovery, Netflix issued a subpoena to AiPi seeking disclosure of 17 categories of documents and on a corporate deposition on 14 deposition topics. In short, Netflix is seeking discovery on any information that AiPi has relating to Valjakka and his company CDN Licensing. There is no dispute that AiPi provided litigation funding and support to Valjakka up until about December 2023 (*Netflix Litigation*, ECF No. 233-1 at ¶¶ 13-26, ECF No. 251 at ¶ 12), and as such, the volume of discovery sought by the subpoena is significant and poses an undue burden on AiPi. This is especially true

10

since Netflix could obtain this discovery from Valjakka. A quick search by AiPi determined that the production would consist of thousands of documents.

Accordingly, if the Court were to deny the motion to quash, and compel AiPi to comply with the subpoena, AiPi requests that the costs of compliance, including attorney fees, be shifted to Netflix under Rule 45(d). *See Hinterberger v. Am. Nurses Ass'n* (In re Am. Nurses Ass'n), 643 F. App'x 310, 314 (4th Cir. 2016) (ordering shifting of attorney fees necessary to the production of discovery materials).

## IV. CONCLUSION

For the forgoing reasons, AiPi respectfully requests this Court to quash the subpoena issued by Netflix to AiPi. In the alternative, AiPi respectfully requests that Netflix be ordered to pay AiPi's costs and attorney fees to comply with the subpoena.

Dated: July 22, 2024

Respectfully submitted,

KLAPROTH LAW PLLC

*/s/* Brendan J. Klaproth
Brendan J. Klaproth
2300 Wisconsin Ave NW
Suite 100A
Washington, DC 20007
Tel:    202-618-2344
Email: bklaproth@klaprothlaw.com
*Counsel for AiPi, LLC*