IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

AIPI, LLC, §
§
    Movant, §
§
v. § Civil Action No. 1:24-mc-00002 (LMB/WEF)
§
NETFLIX, INC., §
§
    Respondent. §
§

**<u>NETFLIX, INC.'S OPPOSITION TO AIPI, LLC'S MOTION TO QUASH</u>**

I.  **INTRODUCTION**

AiPi may be liable: (1) under the California Uniform Fraudulent Transfer Act ("CUVTA") for its possible participation in or dominion over Mr. Valjakka's fraudulent transfers in the underlying patent litigation in the Northern District of California ("NDCA Litigation");[1] (2) for some or all of Netflix's attorneys' fees in the NDCA Litigation; and (3) for violating Judge Tigar's preliminary injunction, enjoining the patentee Mr. Valjakka and those acting in concert with Valjakka (AiPi) from further transfer of any of the settlement monies paid to Valjakka and AiPi in Valjakka's fifteen-suit patent litigation campaign ("Enforcement Assets"). As such, in January 2024, Netflix served a Rule 45 subpoena upon AiPi. AiPi did not serve objections to Netflix's subpoena. When AiPi moved to quash Netflix's subpoena, it did not move based on any purported privilege. *See* Dkt. Nos. 1, 3. After this Court granted AiPi's motion to quash, Netflix asked Judge Tigar in the NDCA Litigation to clarify whether its Rule 45 subpoena was proper. Judge Tigar ruled that Netflix's January 2024 subpoena was proper and timely served. Dkt. No. 16-1. Judge Tigar also vacated the NDCA Litigation trial schedule so Netflix could take Rule 45 discovery over AiPi. Fact discovery in the NDCA Litigation now closes on September 27, 2024. *Id*.

When Netflix attempted to meet and confer with AiPi's counsel of record to seek compliance with Judge Tigar's order and Netflix's Rule 45 subpoena, AiPi's counsel of record refused to engage, refused to provide Judge Tigar's order to AiPi, and refused to honor Judge Tigar's order. As such, Netflix was forced to again serve its January 2024 Rule 45 subpoena upon AiPi directly. Although AiPi engaged in substantial efforts to avoid service, on June 20, 2024,

---

[1] Netflix will file its attorneys' fees motion(s) after Judge Tigar determines CUVTA liability in the NDCA Litigation.

1

Netflix was able to again serve AiPi with its January 2024 subpoena. AiPi did not serve objections to Netflix's reserved Rule 45 subpoena.

On July 22, 2024, AiPi again moved to quash Netflix's subpoena arguing (1) Valjakka and AiPi share a "common interest" privilege, and (2) Netflix's subpoena is allegedly overly burdensome. Both arguments are unsupported and *contra* well-established law.

The only possible holders of any purported privilege are the client (Valjakka) and the law firm (Ramey, LLC). Both were provided copies of Netflix's subpoena in January and again in June 2024. Lamkin Decl., Exhs. A-B. Neither have objected to Netflix's subpoena nor asserted any privilege.

AiPi's motion to quash should be denied.

## II. MATERIAL BACKGROUND

### A. Procedural And Factual Background

On June 5, 2024, Judge Tigar issued an Order stating: "The Court extends fact discovery to September 27, 2024, *nunc pro tunc*. For clarity, this means that the subpoena served on AiPi on January 24, 2024, was timely." Dkt. No. 16-1. Judge Tigar also vacated the current pretrial conference, jury selection, and trial dates to allow Netflix's Rule 45 discovery over AiPi. *Id*.

On June 7, 2024, Netflix emailed counsel of record for AiPi, Joe Zito and Erik Lund, provided a copy of Judge Tigar's Order and wrote: "Judge Tigar granted discovery over AiPi. Please advise a time next week to discuss production and deposition dates." Lamkin Decl., Exh. C. Mr. Zito responded, claiming he no longer represented AiPi and refused to provide Judge Tigar's order to AiPi, "I will not be forwarding anything to AiPi, I will not be discussing this matter with AiPi nor will I be discussing this matter with you. I do not know if AiPi has counsel nor the identity of any such counsel." *Id*. But Joe Zito is still counsel of record in this matter. Erik Lund, also counsel of record here, did not respond.

2

On June 10, 2024, Netflix filed Judge Tigar's Order in this matter via CM/ECF, thereby serving AiPi through its counsel of record, Messrs. Zito and Lund.[2] Again, Mr. Zito responded by saying that he was not counsel for AiPi and that he would not provide Judge Tigar's Order to AiPi. Lamkin Decl. Exh. D. Joe Zito remains counsel of record for AiPi in this matter.

Given Messrs. Zito and Lund's refusal to provide Judge Tigar's order to AiPi, Netflix was forced to re-serve the same subpoena upon AiPi. As detailed below and in the attached Declaration of Amy Bergeron, AiPi repeatedly attempted to avoid service of Netflix's Rule 45 subpoena. AiPi's efforts notwithstanding, on June 20, 2024, Netflix again personally served AiPi with its Rule 45 subpoena. Lamkin Decl., Exh. E (POS).

AiPi's objections to Netflix's re-served subpoena were due on July 5, 2024. Fed. R. Civ. P 45(d)(2)(B). AiPi did not serve objections. On July 7, 2024, Netflix emailed the principals of AiPi (Lund, Morehouse, and Sheets) and asked them to identify the names of any new Rule 45 counsel.[3] None responded to Netflix's email. Instead, Mr. Zito—who claims not to represent AiPi—filed a motion in the NDCA Litigation asking Judge Tigar to find counsel for Netflix in contempt. Lamkin Decl., Exh. F. Judge Tigar promptly denied Mr. Zito's motion before Netflix could file a response. Lamkin Decl., Exh. G.

On July 8, 2024, Netflix again emailed the principals of AiPi (Lund, Morehouse, and Sheets) and asked them once again to identify its new counsel. Netflix informed AiPi that, if it did

---

[2] "By participating in the electronic filing process, parties consent to the electronic service of all documents and will make available electronic mail addresses for service." https://www.vaed.uscourts.gov/sites/vaed/files/Page%20110.pdf.

[3] Erik Lund is a co-founder and principal of AiPi and also serves as counsel for AiPi through the overlapping law firm, Whitestone Law. Because Lund is a principal of AiPi, Netflix included him as a recipient.

3

not identify counsel within forty-eight hours, Netflix would move to compel and seek fees and costs. AiPi did not identify new counsel.

On July 9, 2024, the day before Netflix was to file its motion to compel, new counsel for AiPi emailed Netflix and identified himself as counsel. AiPi's new counsel did not serve objections to Netflix's reserved Rule 45 subpoena.

Even though they were provided with Netflix's Rule 45 subpoena in January and June of 2024, Neither Mr. Valjakka nor Mr. Ramey have ever objected to Netflix's Rule 45 subpoena. Lamkin Decl., Exhs. A-B; Lamkin Decl., ¶ 10.

On July 22, 2024, six (6) weeks after AiPi was notified that the January 2024 Rule 45 subpoena was ruled timely served, nearly six (6) weeks after AiPi was served with Judge Tigar's order through this Court's ECF system, and more than a month after Netflix was forced to re-serve the same Rule 45 subpoena upon AiPi, AiPi filed its second motion to quash. AiPi asserts that (1) a "common interest privilege" prohibits the production of every document requested and testimony on every deposition topic propounded; and (2) the document requests are unduly burdensome.

**B.     The Documents And Deposition Topics Are Relevant**

Netflix seeks information and testimony to determine AiPi's liability under CUVTA, liability for Netflix's upcoming attorneys' fees motion, and compliance with Judge Tigar's preliminary injunction ("PI"). As to the former, AiPi's control or "dominion" over Valjakka's litigation against Netflix, Valjakka's campaign in general, and the Enforcement Assets from that campaign are relevant to AiPi's liability under CUVTA and Netflix's attorneys' fees. Documents and deposition topics regarding the actions AiPi took (or didn't take) after Judge Tigar issued the PI are relevant to whether AiPi should be held in contempt of that Order. Each document request and deposition topic is narrowly tailored to seek that information.

4

- Request Nos. 1-5 and Topic Nos. 1-5 seek AiPi's participation with or understanding of CDN Licensing, which was the vehicle Valjakka created to fraudulently transfer the Enforcement Assets.

- Request Nos. 1-4, 10-11, 14, and 17 and Topic Nos. 2-4, 6, 9 and 14 seek AiPi's dominion over the Enforcement Assets. Under CUVTA, AiPi is joint and severally liable if it exercised "dominion" over the Enforcement Assets.

- Request Nos. 4, 6-7, 12, 13-16 and Topic Nos. 2, 6-8, and 13-14 seek to understand AiPi's control over Valjakka's campaign. AiPi is liable for any attorneys' fees awarded to Netflix if AiPi and its principals were the actual decision-makers behind Valjakka's campaign.

- Request Nos. 1-5, 7, 10, 12-14, and 17 and Topic Nos. 3, and 9-12 seek information regarding AiPi's compliance with Judge Tigar's PI.[4]

## III. LEGAL AUTHORITY

"[T]he burden for showing that a subpoena must be quashed under Rule 45(c)(3) is at all times on the movant." *McAfee v. Boczar*, Civil Action No. 3:11-cv-646, 2012 U.S. Dist. LEXIS 87116, at *6 (E.D. Va. June 22, 2012). "[W]hen a party asserts a privilege as a basis for refusing to provide information, the party must describe the nature of the privileged material 'in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.'" *Ashghari-Kamrani v. United Servs. Auto. Ass'n,* Civil Action No. 2:15-cv-478, 2016 U.S. Dist. LEXIS 197601, at *8 (E.D. Va. May 31, 2016) (quoting Fed. R. Civ. P. 26(b)(5)(A)(ii)). To meet its burden to successfully invoke a privilege, the party asserting privilege "may not rely on conclusory allegations or mere statements in briefs." *Ellis v. Arrowood Indem. Co*., No. 2:14-mc-00146, 2014 U.S. Dist. LEXIS 121913, at *18-19 (S.D. W. Va. Sep. 2, 2014) (citing *Suggs v. Whitaker*, 152 F.R.D. 501, 505 (M.D.N.C. 1993)). The moving party must "provid[e] specific demonstration of facts supporting the requested protection[.]" *Id*. "Preferably, this demonstration is made 'through affidavits from knowledgeable persons.'" *Id*. "If a party fails to meet this burden,

---

[4] Request Nos. 8-9 were deleted prior to service of both identical Rule 45 subpoenas.

5

the party's motion will be denied." *Id; see also Sziber v. Dominion Energy, Inc.,* Civil Action No. 3:20-CV-117, 2021 WL 6332784, at *2 (E.D. Va. Sept. 14, 2021) (accord).

**Common Interest Privilege.** The common interest privilege not a separate privilege. *Ashghari-Kamrani v. United Servs. Auto. Ass'n*, Civil Action No. 2:15-cv-478, 2016 U.S. Dist. LEXIS 197601, at *7 (E.D. Va. May 31, 2016); *see also GeoMetWatch Corp. v. Hall*, Civil Action No. 1:14-cv-60-JNP-PMW, 2016 U.S. Dist. LEXIS 91274, at *4-5 (D. Utah July 12, 2016) ("The joint-defense or common-interest privilege is an extension of the attorney-client and/or the work-product privileges; it does not stand alone as an independent privilege."). "Because the common interest doctrine (sometimes referred to as joint defense doctrine) is an exception to waiver, rather than a stand-alone privilege, there must be an applicable underlying privilege before the doctrine comes into consideration." *ServiceMaster of Salina, Inc. v. United States*, Case No. 11-1168-KHV-GLR, 2012 U.S. Dist. LEXIS 53399, at *9, 109 A.F.T.R.2d (RIA) 2012-1821 (D. Kan. Apr. 17, 2012).

"The Fourth Circuit … require[s] that the common interest must be legal in nature for the privilege to apply to any information shared among the parties." *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Tr. No. 1B*, 230 F.R.D. 398, 416 (D. Md. 2005).

**Attorney-Client Privilege.** When a party seeks to invoke the attorney-client privilege, the burden is on the proponent of the privilege to demonstrate "not only that an attorney-client relationship existed, but also that the particular communications at issue are privileged and that the privilege was not waived." *Id.* at 409.[5] "Communications involving an attorney but relating to

---

[5] In the Fourth Circuit, a party asserting the attorney-client privilege must establish that: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for

6

business advice are not covered by the attorney-client privilege." *McAirlaids, Inc. v. Kimberly-Clark Corp.*, No. 7:13-CV-193, 2014 WL 12782814, at *4 (W.D. Va. Sept. 26, 2014).

**Work-Product Privilege.** "It is the burden of the party asserting work product privilege to show that the privilege applies, and to meet this burden, the party asserting privilege must show, 'as to each document, that the work product in question was: (1) prepared by, or under the direction of, an attorney and, (2) was prepared in anticipation of litigation.'" *E.I. Du Pont de Nemours & Co. v. Kolon Indus., Inc.*, Civil Action No. 3:09-CV-58, 2010 WL 1489966, at *3 (E.D. Va. Apr. 13, 2010) (quoting *Rambus, Inc. v. Infineon Techs. AG,* 220 F.R.D. 264, 272 (E.D. Va. 2004). The work product privilege does not cover documents created in the "ordinary course of business" that later serve a litigation-related purpose. *Id*.

## IV.   ARGUMENT

### A.   AiPi Failed To Serve Any Objections And Has Therefore Waived All Objections.

AiPi did not serve any objection to the Rule 45 subpoena served in January 2024. When it moved to quash, it did not object based on any purported privilege. *See* Dkt. Nos. 1, 3.

On June 5, 2024, Judge Tigar ruled that Netflix's January 2024 Rule 45 subpoena was timely served. AiPi should have served objections upon Netflix fourteen (14) days from the issuance of that order, *i.e*., on June 19, 2024. *See* Fed. R.Civ.P 45(d)(2)(B). AiPi was served with Judge Tigar's order on June 10, 2024 (via the Court's CM/ECF system).[6] AiPi should have served

---

the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982).

[6] Mr. Zito refused to provide the Judge Tigar's order to AiPi, arguing that CM/ECF service via a closed case had no legal effect. Lamkin Decl., Exh. D.  But that position is belied by the fact that AiPi served its second motion to quash by filing in the same case, this case. Under Mr. Zito's logic, AiPi's second motion to quash would have no legal effect.

7

objections on June 24, 2024. *Id.* Finally, on June 20, 2024, AiPi was personally re-served with the January 2024 Rule 45 subpoena. Lamkin Decl., Exh. E. Assuming *arguendo* that none of the instances of prior service were legally operative, Rule 45 mandated that AiPi provide written objections to Netflix by July 5, 2024. Fed. R. Civ. P. 45. AiPi failed to serve any objections to Netflix's subpoena. Therefore, AiPi's objections are waived. *Wellin v. Wellin*, No. 2:13-cv-1831-DCN, 2014 U.S. Dist. LEXIS 95027, at *12-14 (D.S.C. July 14, 2014) ("The failure to serve written objections to a subpoena within the time specified by Rule 45(c)(2)(B) typically constitutes a waiver of such objections."); *In re Motorsports Merch. Antitrust Litig.*, 186 F.R.D. 344, 349 (W.D. Va. 1999) (accord; collecting cases); *United States v. TRW, Inc.,* 211 F.R.D. 388, 392 (C.D. Cal. 2002) ("[f]ailure to serve timely objections waives all grounds for objection, including privilege"). Because AiPi filed to timely serve any objections, AiPi's objections are waived, and AiPi should be ordered to produce the requested documents and sit for the requested topics.

### B. AiPi Failed To Meet Its Burden To Establish That The Common Interest Privilege Applies To Each Of The Responsive Documents It Has Withheld.

#### i. The common interest privilege is not a stand-alone privilege.

AiPi's primary argument is that a common interest privilege (sometimes called the joint defense privilege) bars production of communications between Valjakka and AiPi. But the common interest privilege is not a stand-alone privilege. *Ashghari-Kamrani v. United Servs. Auto. Ass'n*, Civil Action No. 2:15-cv-478, 2016 U.S. Dist. LEXIS 197601, at *7 (E.D. Va. May 31, 2016); *GeoMetWatch Corp. v. Hall*, Case No. 1:14-cv-60-JNP-PMW, 2016 U.S. Dist. LEXIS 91274, at *4-5 (D. Utah July 12, 2016) ("The joint-defense or common-interest privilege is an extension of the attorney-client and/or the work-product privileges; it does not stand alone as an independent privilege."); *see also ServiceMaster of Salina, Inc. v. United States*, Case No. 11-1168-KHV-GLR, 2012 U.S. Dist. LEXIS 53399, at *9, 109 A.F.T.R.2d (RIA) 2012-1821 (D. Kan.

8

Apr. 17, 2012).

AiPi has not provided any evidence that the actual holders of any purported underlying privileges object to the production of the documents and topics propounded. Neither Valjakka nor his law firm (Ramey) objected to the subpoena or raised issues of privilege in any manner. Lamkin Decl., ¶ 10. And without the assertion of the underlying privileges, the common interest privilege cannot bar production. *See Moore v. Shapiro & Burson, LLC*, Civil No. 3:14-cv-832 (DJN), 2015 WL 6674709, at * 1 (E.D. Va. Oct. 29, 2015) (denying motion to quash filed by third party where third party's "objections to Plaintiffs' subpoena were not timely under Rule 45(d)(2) of the Federal Rules of Civil Procedure," "***no actual holder of any privilege has asserted the attorney-client privilege***," the third party "failed to provide a privilege log or functional equivalent, thereby failing to comply with Rule 45(e)(2)(A) of the Federal Rules of Civil Procedure," and had waived any privilege claim by disclosure to another third party) (emphasis added).

> ii. **The common interest privilege does not exist where, as here, AiPi and Valjakka's interest are adverse.**

When Netflix moved to join AiPi in the NDCA Litigation, Whitestone Law represented AiPi in that briefing. Plaintiff Lauri Valjakka moved to disqualify Whitestone from representing AiPi because Whitestone had represented Valjakka for portions of the NDCA Litigation and Valjakka and AiPi's interests were and are adverse because "Netflix accuses both AiPi and Valjakka of transferring and using litigation settlement proceeds in a manner that violated the California Uniform Voidable Transactions Act ('CUVTA') and this Court's September 21, 2023 injunction . . . . and consequently, both Valjakka and AiPi will have an incentive to point the finger at each other." Order, at 1:24-27, 2:3-4 (Lamkin Decl., Exh. H.) Judge Tigar agreed: "The facts before the Court demonstrate a significant violation of the duty of loyalty by Whitestone Law. Going forward, vigorously representing either AiPi or Valjakka will require attempting to damage

9

the other one's interests, both as to the responsibility for any CUVTA violation and as to any claim Valjakka might make concerning alleged misrepresentations by AiPi. That is a direct conflict of interest." *Id*., at 2:17-21.[7]

"If an interest is adverse between the parties rather than common, the common interest privilege does not apply." *AMEC Civil v. DMJM Harris, Inc*., Civil Action No. 06-064 (FLW), 2008 U.S. Dist. LEXIS 54466, at *7 (D.N.J. July 10, 2008) (citing *McNally Tunneling Corp. v. City of Evanston*, 2001 U.S. Dist. LEXIS 17090, 2001 WL 1246630, at *3 (N.D. Ill. 2001).) Here, Valjakka and AiPi's interests are directly adverse because liability with respect to CUVTA and/or attorneys' fees is "zero-sum," where any liability that attaches to AiPi reduces any relief sought from Valjakka, and *vice versa*. *See, e.g.,* Order, at 1:23-24 (Lamkin Decl., Exh. H) ("Netflix has made allegations concerning AiPi that render AiPi adverse to Valjakka.") As such, AiPi cannot claim it holds a "common interest" with Valjakka when in fact its interests are adverse.

### iii. The common interest privilege does not apply to business communications.

"The Fourth Circuit … require[s] that the common interest must be legal in nature for the privilege to apply to any information shared among the parties." *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Tr. No. 1B*, 230 F.R.D. 398, 416 (D. Md. 2005). "[C]ourts engage in a painstaking analysis to determine whether 'the third party ... shares an identical, and not merely similar, legal interest as the client with respect to the subject matter of the communication between the client and its attorney.'" *Id.* Additionally, the "proponent of the common interest privilege

---

[7] Judge Tigar's disqualification of Whitestone Law in the NDCA Litigation is the justification Joe Zito uses for refusing to provide Judge Tigar's order, Dkt. No. 16-1, to AiPi. But Joe Zito says he is no longer with Whitestone Law (Exh. C, at 1), and he does not appear as Whitestone counsel in this matter. Mr. Zito remains counsel of record for AiPi here and had no basis to refuse to provide Judge Tigar's Order to AiPi and to refuse to comply with Netflix's subpoena.

'must establish that *when* communications were shared among individuals with common legal interests, the act of sharing was part of an ongoing common legal enterprise.'" *Prowess, Inc. v. Raysearch Labs. AB*, Civil Case No. CIV. WDQ-11-1357, 2013 WL 509021, at *5 (D. Md. Feb. 11, 2013) (emphasis in original). "Moreover, the party asserting the common interest privilege 'is obligated to explicitly define the nature and scope of the interest (identical or merely similar) it allegedly has . . . and specify the extent any legal interests overlapped with commercial interests or other conversations.'" *Id*. (citing *Byrnes v. Jetnet Corp.,* 111 F.R.D. 68, 72 (M.D.N.C.1986)).

As Mr. Zito has explained in a sworn declaration, "The patent owners [e.g., Valjakka] are client's [*sic*] of AiPi for business services and clients of the Ramey Law Firm for legal representation." Zito Decl., ¶ 5 (Lamkin Decl., Exh. I). AiPi claims that it is not a law firm. Lund Decl., Dkt. No. 11-2 Exh. A, ¶¶ 11-12, 17. AiPi claims it "is not involved in legal decision making." *Id*., at ¶¶ 11-12. The business relationship between Valjakka and AiPi does not create a common interest privilege. *Neuberger,* 230 F.R.D. at 416.

### iv. A common interest privilege cannot be established with conclusory allegations.

"A party cannot establish a common interest by relying 'solely on counsel's conclusory allegation that the communications were privileged based on the common interest in the [ ] litigation.'" *Prowess, Inc. v. Raysearch Labs. AB*, Civil Case No. CIV. WDQ-11-1357, 2013 WL 509021, at *5 (D. Md. Feb. 11, 2013) (citing *Byrnes v. Jetnet Corp.*, 111 F.R.D. 68, 72 (M.D.N.C. 1986)).

AiPi "cannot simply make a blanket claim of common interest doctrine applicability as the defendant is attempting to do here. It must instead assert the common interest doctrine on a document-by-document basis, as it is limited to those documents that fall within that interest." *Fleury v. Union Pac. R.R. Co*., No. 20 C 390, 2024 WL 1620613, at *7 (N.D. Ill. Apr. 15, 2024)

11

(collecting cases). Disregarding its burden and obligations, AiPi argues, *ipse dixit*, that it "does not have responsive documents outside of those protected by the common interest privilege." Brief in Support of Mot., Dkt. No. 17-1, at 10. AiPi contends "[t]he communications sought by Netflix fall squarely within the work-product privilege—documents and communications prepared in anticipation of litigation." *Id*. at 7. Additionally, AiPi argues "Netflix is also seeking communications between Valjakka and his lawyer." *Id*. In support of both assertions, AiPi cites to Paragraph 8 of the Morehouse Declaration. *Id*. But that paragraph, copied below, provides no facts to indicate that any of the withheld documents are subject to any kind of privilege or immunity:

> 8. I have conducted a cursory search for documents responsive to the Netflix subpoena. The documents sought by the Netflix subpoena are protected by the common interest privilege. Further, based on my preliminary search for documents, I have determined that there are thousands of documents that would be responsive to the subpoena.

Morehouse Decl., Dkt. No. 17-2, at ¶ 8.

AiPi further argues "the attorney-client and work-product privileges extend to all communications under the common interest privilege between Valjakka, his attorney, and AiPi." Brief in Support of Mot., Dkt. No. 17-2, at 7. AiPi, however, has the analysis backwards. AiPi cannot simply assert a blanket common interest privilege over "thousands" of documents responsive to seventeen different requests and seventeen different Rule 30(b)(6) deposition topics, based on a single sentence in a declaration which, in turn, references an undisclosed funding agreement. *See* Morehouse Decl. ¶ 5. AiPi must first establish that either the attorney-client or work-product privilege exists, and that the holder of either privilege has asserted that privilege. AiPi fails to provide any evidence that either Mr. Valjakka or Mr. Ramey intend to assert privilege. Even if either Valjakka or Ramey had stepped forward, then Valjakka or Ramey or AiPi would need to demonstrate that any privileged applied to each of the responsive, withheld documents,

12

and then show how each communication or document was in furtherance of a shared legal enterprise with AiPi. *In re Dealer Mgmt. Sys. Antitrust Litig.*, 335 F.R.D. 510, 514 (N.D. Ill. 2020).

AiPi comes nowhere close to meeting its burden. There is no evidence in the record allowing anyone to determine the participants in or subject matter of any withheld documents, let alone determine whether any of the additional requirements to invoke either the work product privilege or attorney-client privilege have been met. Indeed, Morehouse's declaration provides no facts whatsoever to determine whether (i) any attorneys were involved in any of the withheld communications; (ii) any legal advice was requested, disseminated, or discussed (as opposed to business advice); (iii) any documents constitute work product that was prepared by, or under the direction of, an attorney in anticipation of litigation; and/or (iv) that Valjakka or Ramey are asserting privilege. Nor does AiPi provide sufficient, non-conclusory facts from which one could determine that AiPi and Valjakka did in fact share a common legal interest with respect to the subject matter of each of the withheld documents and communication at-issue. *Neuberger,* 230 F.R.D. at 416.

It is well-established that where, as here, a party fails to support its assertions of privilege with sufficient evidentiary facts, a motion to quash must be denied. *See, e.g., Moore v. Shapiro & Burson, LLC*, Civil No. 3:14-cv-832 (DJN), 2015 WL 6674709, at * 1 (E.D. Va. Oct. 29, 2015) (denying motion to quash where third party's "objections to [p]laintiffs' subpoena were not timely," the third party "failed to provide a privilege log or functional equivalent," "***no actual holder of any privilege has asserted the attorney-client privilege***," and any privileges had likely been waived through disclosure to a third party) (emphasis added).[8]

---

[8] And even if, *arguendo*, some privilege applied, the information sought relevant to CUVTA would fall under the crime-fraud exception. *Argyle Online, LLC v. Nielson (In re GGW Brands, LLC),* 504 B.R. 577, 589 n.13 (Bankr. C.D. Cal. 2013); *United States v. Ballard,* 779 F.2d 287,

> **v. Most of the communications and topics sought are not between Valjakka and AiPi.**

Most of the requested documents and topics do not even involve or reference communications between AiPi and Valjakka or his counsel. For example, to show dominion over the Enforcement Assets, Netflix seeks communications and transfers between AiPi and the various litigation funders (RFP Nos. 3, 10, 14). "[I]n patent litigation cases, 'courts have generally ruled that litigation funding agreements and related documents are relevant and discoverable.'" *Taction Tech., Inc. v. Apple Inc.*, Case No. 21-CV-00812-TWR-JLB, 2022 WL 18781396, at *5 (S.D. Cal. Mar. 16, 2022).[9] Additionally, courts have found that such discovery may be relevant "where there is a sufficient showing that a non-party is making ultimate litigation or settlement decisions…. or conflicts of interest exist." *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Products Liab. Litig.*, 405 F. Supp. 3d 612, 615 (D.N.J. 2019). Here, AiPi's communications with its funders are relevant to whether AiPi complied with Judge Tigar's PI, controls the Enforcement Assets, and was in fact the litigation mastermind (had dominion over Valjakka's litigations under CUVTA caselaw). *See Henry v. Official Comm. of Unsecured Creditors of Walldesign, Inc. (In re Walldesign, Inc.)*, 872 F.3d 954, 962-64 (9th Cir. 2017).

Communications and agreements with the litigation funders is but one example; most of Netflix's requested documents and topics do not comprise communications between Valjakka and AiPi. *See, e.g.*, Request Nos.1, 3, 5-6, 10-17; Topic Nos. 1-3, 5-7, 9-10, 12-14.

---

293 (5th Cir. 1986)); *Carbajal v. Hayes Mgmt. Serv.*, No. 4:19-cv-00287-BLW, 2022 U.S. Dist. LEXIS 130744, at *49 (D. Idaho July 21, 2022).
[9] AiPi argues that courts "routinely" reject disclosure regarding litigation funding arrangements, Brief in Support of Mot., Dkt. 17-2, at 8, but AiPi ignores that courts have generally found litigation funding agreements and related documents to be relevant in patent lawsuits.

### C. AiPi Fails To Establish That Producing The Requested Documents And Topics Would Impose An Undue Burden, Or Warrant Cost-Shifting.

"The party claiming that a discovery request is unduly burdensome must allege specific facts that indicate the nature and extent of the burden." *Sziber v. Dominion Energy, Inc.*, Civil Action No. 3:20-cv-117, 2021 WL 6332784, at *3 (E.D. Va. Sept. 14, 2021) (quoting *Tucker v. Ohtsu Tire & Rubber Co.*, 191 F.R.D. 495, 498 (D. Md. 2000)). In *Sziber*, the Court denied a motion to quash where the movant alleged the subpoena would require "many hours, maybe weeks, of compiling documents" but "offer[ed] no specific facts to support this conclusory statement;" the Court found that such "conclusory statements alone are insufficient to demonstrate undue burden." *Sziber*, 2021 WL 6332784, at *3.

AiPi's purported bases for undue burden are even weaker than that of the party resisting discovery in *Sziber*. AiPi claims production would be unduly burdensome, but AiPi fails to explain or offer any facts in support of its claim. Indeed, AiPi does not even specifically address any of the requests for production or any of the Rule 30(b)(6) deposition topics, even though this Court cautioned AiPi that it would need a more fulsome explanation of any alleged burden. Hearing Tr., Dkt. No. 15, 16:3-6. AiPi has failed to meet its burden to show that the requests are unduly burdensome.

### D. Each Of The Requested Documents And Topics Are Relevant

As explained in Section IIB, *infra*., all of the requested documents and topics are relevant.

## V. CONCLUSION

For the foregoing reasons, the Court should deny AiPi's motion to quash. Netflix respectfully requests that the Court enter an Order (1) denying AiPi's motion to quash, and (2) requiring AiPi to (i) produce all responsive documents within two weeks, and (ii) present a witness (or witnesses) for a Rule 30(b)(6) deposition within four weeks.

Respectfully submitted,

Dated:  August 1, 2024 _____/s/_____
Cailyn Reilly Knapp (VA Bar No. 86007)
BAKER BOTTS L.L.P.
700 K Street N.W.
Washington, DC  200001
Tel: (202) 639-7753
Fax: (202) 585-4070
Email: cailyn.reilly.knapp@bakerbotts.com

Rachael Lamkin (admitted *pro hac vice*)
BAKER BOTTS L.L.P.
101 California Street
Suite 3200
San Francisco, CA  94111
Tel: (415) 291-6264
Fax: (415) 291-6364
Email: rachael.lamkin@bakerbotts.com

*Counsel for Respondent Netflix, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on August 1, 2024, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record in this action.

_____/s/_____
Cailyn Reilly Knapp (VA Bar No. 86007)
BAKER BOTTS L.L.P.
700 K Street N.W.
Washington, DC 20001
Tel: (202) 639-7753
Fax: (202) 585-4070
Email: cailyn.reilly.knapp@bakerbotts.com

*Counsel for Respondent Netflix, Inc.*

17