**REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL**

1   Sarah E. Piepmeier, Bar No. 227094
    SPiepmeier@perkinscoie.com
2   Elise Edlin, Bar No. 293756
    EEdlin@perkinscoie.com
3   PERKINS COIE LLP
    505 Howard Street, Suite 1000
4   San Francisco, California 94105
    Telephone: +1.415.344.7000
5   Facsimile:  +1.415.344.7050
6
7   *Additional attorneys listed on signature page.*
    *Attorneys for Defendant*
8   *NETFLIX, INC.*

9

10                  UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12                       OAKLAND DIVISION

13

14  LAURI VALJAKKA,                          | **Case No. 4:22-cv-01490-JST**

15          *Plaintiff,*                       **NETFLIX, INC.'S MOTION FOR AN
                                                ORDER TO SHOW CAUSE AND
16      v.                                      SANCTIONS AGAINST PLAINTIFF'S
                                                FORMER ATTORNEY, WILLIAM
17  NETFLIX, INC.,                              RAMEY AND RAMEY LLP**

18          *Defendant.*
                                                Date:  May 8, 2025
19                                              Time:  2:00 PM
                                                Place: Courtroom 6
20                                              Judge: Hon. Jon S. Tigar

21

22

23

24

25

26

27

28

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL**

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ..................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................3

I.      INTRODUCTION .....................................................................................................3

II.     STATEMENT OF FACTS .......................................................................................3

        A.      Netflix Produced Sensitive Materials in Reliance on the Protective Order. .............3

        B.      Mr. Valjakka and Ramey Never Disclosed That Attorneys at AiPi, LLC
                Were Shadow Lead Counsel. ...........................................................................5

        C.      What We Know (So Far) About the Netflix Protected Materials That
                Ramey Provided to AiPi. ..................................................................................6

        D.      Mr. Ramey Prevents Netflix from Ascertaining the Full Extent of His
                Protective Order Violations...............................................................................7

III.    LEGAL STANDARDS...............................................................................................8

        A.      Civil Contempt .................................................................................................8

        B.      Sanctions for Discovery Order Violations ......................................................9

IV.     ARGUMENT ............................................................................................................10

        A.      Mr. Ramey Should be Ordered to Show Cause Because He Violated the
                Court's Protective Order. ................................................................................10

        B.      Ramey's Misuse of Netflix's Confidential Information Warrants Monetary
                Sanctions Under Rule 37..................................................................................11

        C.      The Court Should Order Ramey to Provide Discovery into What Appears
                to be Many Other Protective Order Violations. ..............................................12

V.      CONCLUSION .........................................................................................................14

REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Apple, Inc. v. Samsung Elecs. Co.*,
   No. 5:11-cv-01846-LHK, 2013 WL 9768650 (N.D. Cal. Oct. 2, 2013)...................................13

*Apple, Inc. v. Samsung Elecs. Co.*,
   No. 5:11-cv-01846-LHK(PSG), 2014 WL 12596470 (N.D. Cal. Jan. 29, 2014) ....................12

*Cardell Fin. Corp. v. Suchodolski Assocs., Inc.*,
   2012 WL 12932049 (S.D.N.Y. July 17, 2012) .........................................................................12

*Clarke v. First Transit, Inc.*,
   No. 07-CV-6476 GAF, 2012 WL 12877865 (C.D. Cal. Nov. 2, 2012)...................................11

*EPL Holdings, LLC v. Apple Inc.*,
   No. C-12-04306-JST(JSC), 2013 WL 2181584 (N.D. Cal. May 20, 2013) ............................13

*Falstaff Brewing Corp. v. Miller Brewing Co.*,
   702 F.2d 770 (9th Cir. 1983)..............................................................................................9, 12

*Gifford v. Heckler*,
   741 F.2d 263 (9th Cir. 1984)...................................................................................................9

*Holley v. Gilead Scis., Inc.*,
   No. 18-cv-06972-JST, 2021 WL 940594 (N.D. Cal. Mar. 12, 2021).................................9, 11

*In re Banc of Cal. Sec. Litig.*,
   No. 17-cv-118, 2024 WL 4597254 (C.D. Cal. Sept. 30, 2024) ...............................................10

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
   10 F.3d 693 (9th Cir. 1993)......................................................................................................8

*In re Search of Content Stored at Premises Controlled by Google Inc.*,
   No. 16-mc-80263-RS, 2017 WL 4700056 (N.D. Cal. Oct. 19, 2017).......................................8

*Life Techs. Corp. v. Biosearch Techs., Inc.*,
   No. C-12-00852-WHA(JCS), 2012 WL 1600393 (N.D. Cal. May 7, 2012).........................9, 11

*LifeScan Scot., Ltd. v. Shasta Techs, LLC*,
   No. 11-cv-04494-WHO, 2013 WL 4604746 (N.D. Cal. Aug. 28, 2013) .................................9

*LifeScan Scot., Ltd. v. Shasta Techs, LLC*,
   No. 11-cv-04494-WHO, 2013 WL 5949629 (N.D. Cal. Nov. 6, 2013) ..................................11

*OmniGen Rsch., LLC v. Wang*,
   No. 6:16-cv-268-MC, 2018 WL 11512767 (D. Or. Nov. 6, 2018)..........................................10

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL**

*Reynolds v. Roberts*,
  207 F.3d 1288 (11th Cir. 2000).................................................................................8, 9

*Silicon Genesis Corp. v. EV Grp. E. Thallner GmbH*,
  No. 22-cv-04986-JSC, 2023 WL 6882749 (N.D. Cal. Oct. 18, 2023).....................................12

*Spallone v. United States*,
  493 U.S. 265 (1990).........................................................................................8

*Systemic Formulas, Inc. v. Kim*,
  2009 WL 5205995 (D. Utah Dec. 23, 2009).................................................................10

*United States v. Nat'l Med. Enterprises, Inc.*,
  792 F.2d 906 (9th Cir. 1986)................................................................................11

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001)...............................................................................9

**RULES**

Fed. R. Civ. P. 16 ...............................................................................................9

Fed. R. Civ. P. 37 .........................................................................................9, 11, 12

-iii-

REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on May 8, 2025 at 2 pm, in Courtroom 6, Second Floor, United States District Court for the Northern District of California, Oakland Courthouse, 1301 Clay Street, Oakland, CA 94612, Defendant Netflix, Inc. ("Netflix" or "Defendant") moves for an order to show cause as to why William Ramey and the Ramey LLP law firm should not be held in civil contempt for failure to comply with the Court's protective order ("Protective Order," ECF No. 56) and for sanctions. Netflix's Motion is based on this Notice of Motion, the Motion, the memorandum of points and authorities and declarations in support filed herewith, the Proposed Order filed herewith, any additional pleadings and papers on file in this matter, and any arguments that may be presented at the hearing.

**STATEMENT OF RELIEF REQUESTED**

Netflix seeks two categories of relief. First, Netflix requests an Order to show cause as to why William Ramey and the Ramey LLP law firm (collectively "Ramey") should not be held in civil contempt for violating the Protective Order by providing Netflix's protected confidential (AEO) material to employees of AiPi, LLC, and/or an Order sanctioning William Ramey and Ramey LLP for violating the Protective Order.

Second, Netflix requests discovery to permit Netflix and the Court to determine the full scope of the breaches and to remediate them appropriately. Specifically, Netflix requests that Mr. Ramey be ordered to:

- Produce all documents and communications between the Ramey LLP law firm and current/former employees of AiPi (at all known email addresses) related to the *Valjakka v. Netflix* matters. To the extent Mr. Ramey withholds specific documents and communications on alleged privilege grounds, he shall prepare a privilege log that states, at a minimum, the identities of all recipients of the document or communication, the subject matter of any Netflix confidential information discussed in the document or communication, and, where applicable, the Bates number(s) of the Netflix confidential documents shared, summarized, or otherwise discussed with AiPi;

REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL

- Disclose the current contact information for each person presently or previously affiliated with AiPi with whom employees of Ramey LLP communicated related to the *Valjakka v. Netflix* matter, so that Netflix can contact them to ensure its confidential information has not been further disseminated, and also ensure the individuals are not prosecuting patents in violation of the prosecution bar in the Protective Order; and

- Appear for a half-day (3.5 hour) deposition concerning the communications between Ramey LLP and current/former AiPi employees that include, relate to, or otherwise discuss Netflix confidential materials.

-2-

REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.     INTRODUCTION**

Netflix recently learned that William Ramey and his law firm were not the lead counsel litigating Mr. Valjakka's now-dismissed patent infringement claims. Mr. Valjakka contracted with an entity called AiPi, LLC to be responsible for all substantive legal work related to Mr. Valjakka's litigation campaign, but he and Mr. Ramey only disclosed AiPi's involvement to Netflix after two years of litigation, and even then, downplayed its role in the case. AiPi is not a law firm, but it is comprised largely of attorneys. Yet none of them ever appeared in the case to represent Mr. Valjakka.[1]

No AiPi employees were authorized to receive Netflix's confidential documents. But Valjakka's nominal lead counsel, Mr. Ramey and his firm, ignored the Protective Order and, unbeknownst to Netflix, freely shared Netflix's AEO materials (such as years of sensitive financial records) or summaries of those materials (e.g., in expert reports) with AiPi. Netflix does not yet know the full extent of the breach because it has only seen a small fraction of AiPi's years of correspondence with Mr. Ramey about Mr. Valjakka's litigation campaign, which Netflix obtained through a subpoena to AiPi in the Eastern District of Virginia.

Mr. Ramey maintains that this sharing of Netflix AEO information and source code was permitted because "they worked for me" and will not commit to providing further information regarding the scope or depth of the improper disclosure. Netflix thus has no choice but to seek the Court's assistance to remedy Mr. Ramey's wholesale disregard of the Protective Order.[2]

**II.    STATEMENT OF FACTS**

**A.     Netflix Produced Sensitive Materials in Reliance on the Protective Order.**

Netflix produced approximately forty documents under one of two confidentiality levels in the Protective Order: (1) CONFIDENTIAL or (2) HIGHLY CONFIDENTIAL – ATTORNEYS'

---

[1] This raises another issue, i.e., AiPi's undisclosed, unauthorized practice of law as Mr. Valjakka's counsel. Netflix will address that issue separately, at least in its forthcoming motion for attorneys' fees.

[2] If Mr. Ramey provides more information after Netflix files this motion, Netflix will update the Court accordingly.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL

1  EYES ONLY ("AEO"). These documents describe or comprise, for example, the technical

2  operation of the accused products and services, detailed non-public financial data for many years

3  of Netflix's business, and Netflix's license agreements with third parties. Declaration of Elise Edlin

4  in Support of Netflix, Inc.'s Motion for Order to Show Cause and Sanctions ("Edlin Decl."), ¶5.

5  Netflix also made its source code available for inspection pursuant to the Protective Order's

6  "HIGHLY CONFIDENTIAL AEO – SOURCE CODE" designation ("Source Code"). *Id.* The

7  Protective order is based on this District's Model Order for Litigation Involving Patents, but

8  through "negotiations in good faith" between Mr. Ramey (for Mr. Valjakka) and counsel for

9  Netflix, the parties made "several modifications" in view of the "unique and complex nature of this

10  action." *See* ECF No. 55 at 2. None of those modifications addressed AiPi or any of its employees.

11  *See id.*

12         The only persons affiliated with Mr. Valjakka permitted to review Netflix AEO and Source

13  Code material were Mr. Valjakka's experts and "Outside Counsel of Record in this action," which

14  the Protective Order defines as "attorneys who are not employees of a party to this action but are

15  retained to represent or advise a party to this action and have appeared in this action on behalf of

16  that party or are affiliated with a law firm which has appeared on behalf of that party." Edlin Decl.,

17  Ex. A, ¶¶2.11, 7.3. The only outside counsel to appear for Mr. Valjakka while his claims were

18  pending are attorneys at the Ramey LLP law firm, including William Ramey and Susan Kalra, an

19  attorney named Erick Robinson, and attorneys at the Mahamedi IP Law firm.[3] With respect to

20  Netflix CONFIDENTIAL material, the Protective Order also permitted review by certain "officers,

21  directors, and employees (including [in-h]ouse [c]ounsel)" of the plaintiff. Edlin Decl., Ex. A, ¶7.2.

22  But Plaintiff Mr. Valjakka is an individual and has no such officers, directors, or employees; and

23  even if he did, disclosure would only be allowed to those "to whom [it] is reasonably necessary for

24  this litigation" and who have also signed an undertaking to be bound by the terms of the Protective

25  Order. *See id.*

26  _____

27  [3] Late in the case, Joseph Zito of Whitestone Law filed a motion for admission *pro hac vice* in
    order to appear for Mr. Valjakka. ECF No. 208. However, Mr. Zito voluntarily withdrew his
    request for admission a few weeks later and would eventually appear in the case on behalf of

28  AiPi. *See* ECF Nos. 218 (notice of withdrawal of motion *pro hac*), 235-236.

-4-

REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL

1

2

**B.    Mr. Valjakka and Ramey Never Disclosed That Attorneys at AiPi, LLC Were Shadow Lead Counsel.**

3

Over two years into this case, Mr. Ramey told Netflix that attorneys at an entity called AiPi,

4

LLC were his "co-counsel." ECF No. 216-3 at 5. At depositions shortly before and after, Mr.

5

Valjakka testified that AiPi was his litigation funder, but he did not call its attorneys his litigation

6

counsel. *See generally* ECF No. 216 (Netflix's Motion to for an OSC to AiPI) at 3. And AiPi's

7

attorneys refuted any role as outside counsel. *See generally* ECF No. 233-1. Regardless, Netflix

8

sought discovery from AiPi because the distribution of Mr. Valjakka's litigation proceeds (in the

9

face of Netflix's demand for fees) is at the heart of Netflix's claim under the California Uniform

10

Voidable Transactions Act ("CUVTA"). But Netflix also sought discovery into AiPi's unclear role

11

as Mr. Valjakka's legal advisor. AiPi resisted this discovery at every step. Ultimately, Judge

12

Brinkema in the Eastern District of Virginia compelled AiPi to provide full and complete discovery

13

regarding its communications with Mr. Ramey about "material litigation decisions." *See generally*

14

Edlin Decl., Exs. C (Netflix's Motion for Contempt of Order Compelling Production Against AiPi

15

in Case No. 1:24-mc-00002-LMB-WEF) & D (January 27, 2025 Order on Netflix's for Contempt).

16

That discovery established that AiPi was Mr. Valjakka's primary counsel, with Ramey LLP

17

(an actual law firm) as the public face and counsel of record. Pursuant to their "Engagement

18

Agreement," AiPi would perform "all drafting of documents, legal work, and research" for each of

19

at least six anticipated litigation campaigns (including Mr. Valjakka's). *See* Edlin Decl., Ex. E at

20

1-2 & exhibit A thereto. In its "Litigation Plan" for Mr. Valjakka, AiPi further explains that it will

21

draft the complaint for an "acceptable US law firm" to file, and then do all "substantive" legal work

22

in each of Mr. Valjakka's cases, including expressly against Netflix. Edlin Decl., Ex. F at 1.

23

Although AiPi ultimately did not perform *all* substantive legal work—at least because counsel of

24

record is required to appear at hearings, depositions, and on meet and confer calls—AiPi's role was

25

so significant that it purportedly amassed thousands of documents from the Valjakka campaign

26

alone. *See* Edlin Decl., Ex. G, ¶10 ("based on [a] preliminary search for documents" by AiPi co-

27

founder Eric Morehouse, AiPi possessed "thousands of documents" responsive to Netflix's

28

subpoena); Edlin Decl., Ex. H (AiPi's Reply in Support of Motion to Quash Netflix's Subpoena)

REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL

at 11 (AiPi's attorneys assert that five thousand responsive documents would be a "conservative estimate"); *see also id.*, Ex. P at 1 (Mr. Ramey repeatedly emphasizing that AiPi's attorneys "work[ed] for" him).

### C. What We Know (So Far) About the Netflix Protected Materials That Ramey Provided to AiPi.

While AiPi has not produced the "thousands of documents" from its legal work for Mr. Valjakka, its court-ordered response to the EDVA subpoena to date confirms that Mr. Ramey provided Netflix's confidential information to AiPi on multiple occasions. For example, on January 6, 2023, Mr. Ramey emailed AiPi attorneys Eric Lund and Eric Moorehouse. Edlin Decl., Ex. I. The subject is "here are the Netflix financials," and the email attaches a copy of NFX_VALJ-00007111, a spreadsheet produced by Netflix and designated AEO under the Protective Order. *See id.*, ¶11 & Ex. I. The spreadsheet is a "master" financial report containing over seven years of detailed profit and loss information across Netflix's various business lines and units. Edlin Decl., ¶11. Mr. Ramey asks that Messrs. Lund and Moorehouse "treat [it] as AEO," demonstrating his knowledge that the information was protected. But that request does not absolve his violation of the Protective Order given that neither recipient was permitted to receive AEO material. Edlin Decl., Ex. I.

AiPi's productions confirm other violations:

- In December 2022, a paralegal from Ramey LLP sent Messrs. Morehouse and Lund a two-gigabyte folder called "Netflix Production.zip." *See* Edlin Decl., Ex. J. By then, Netflix had already produced sixteen Confidential and AEO documents. *Id.*, ¶12. While it is not clear whether some or all of Netflix's production was included in the folder (it appears to have been sent via separate file transfer system), AiPi attorney Ken Sheets ████████████████████████████████████████ ████████████████████████████████. *See Id.*, Ex. J at 2 (describing "document #6545"); *id.*, ¶12 (noting that NFX-VALJ-00006545 was produced AEO);

- Also in December 2022, Mr. Lund sent Mr. Ramey supplemental infringement contentions for the '102 asserted patent. *Id.*, Ex. K. Mr. Lund explained that ████████ ████████████████████████████████████████████████████████ *See id.* That same day, Mr. Valjakka served supplemental infringement contentions that included complete copies of three Netflix AEO technical documents and a discussion of their contents. *Id.*, ¶13;

REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL

- On July 5, 2023, Mr. Ramey sent Messrs. Morehouse, Lund, and Sheets a draft copy of the expert report of Robert Held regarding damages. *Id.*, Ex. L. That report (and particularly the exhibits, which Mr. Ramey also sent) reproduced Netflix's AEO financials and summarized AEO license agreements; and

- In September 2022, Mr. Sheets emailed Messrs. Lund, Ramey and Morehouse, attaching ███████████████████████████████████████████████ *Id.*, Ex. M. The draft included a description of Netflix's AEO patent licenses and finances ██████████████████████████████ *See id.*

Netflix did not produce copies of its Confidential or AEO documents to AiPi. Edlin Decl., ¶5. To the extent AiPi had the documents and used them to draft work product for Mr. Valjakka, they could only have come from Ramey (as in the above examples) or another of Mr. Valjakka's outside counsel.

Netflix also understands that AiPi employees were privy to information contained in Netflix's Source Code. In one email, Mr. Morehouse ███████████████████████████ ████████████████████████████████████████.[4] In another, Mr. Ramey asked the AiPi attorneys ████████████████████████████████████████████████ ██████████████████████████████. *See* Edlin Decl., Ex. O.

**D.    Mr. Ramey Prevents Netflix from Ascertaining the Full Extent of His Protective Order Violations.**

Netflix first learned that Mr. Ramey emailed its sensitive financial data to AiPi when AiPi produced documents to Netflix on December 27, 2024. Edlin Decl., ¶18 & Ex. P at 6-7. On December 30, Netflix notified Mr. Ramey and counsel for AiPi of the Protective Order violation and invited them to explain the disclosure of Netflix's AEO information. *See id.*, Ex. P at 6-7. Mr. Ramey did not respond. *See id.*, ¶18.

Netflix then discovered further apparent violations on an AiPi privilege log and emailed Mr. Ramey again on January 21, 2025. *Id.*, Ex. P at 4-6. So that Netflix could assess and attempt to remediate, it requested that Mr. Ramey produce and/or log his emails with AiPi. *See id.* at 5. Mr. Ramey refused. *Id.* at 3-4. He suggested that the AEO financial email was a one-off "error," but

---

[4] ████████████████████████████████████████████████████████████████████████████ *See* Edlin Decl., Ex. N at 2.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL

1  also tried to justify broader disclosure on the basis that Messrs. Morehouse, Lund, and Sheets

2  "worked for [him] on the NFX case" and were "lawyers for Valjakka." *See id.* According to Mr.

3  Ramey, "[n]o document was given to AiPi as a separate entity." *See id.* After Netflix provided Mr.

4  Ramey with specific examples of him violating the Protective Order, he abandoned inadvertent

5  disclosure and doubled-down on the idea that that disclosure was proper because Messrs.

6  Morehouse, Sheets, and Lund "work[ed] for" him. *See id.* at 1. Mr. Ramey never asserted that any

7  of the AiPi attorneys were admitted in this district or have appeared in this case for Mr. Valjakka.

8      During a telephonic meet-and-confer, Mr. Ramey suggested he would have no issue

9  promptly producing Netflix's discovery; but days later, he about-faced and refused to commit. *See*

10  Edlin Decl., Ex. Q. He maintained that he had disclosed AiPi attorneys by "late 2023" (i.e., after

11  summary judgment motions had been filed), as if to suggest Netflix should have assumed then that

12  Mr. Ramey was improperly sending them Netflix's protected information. *See id.*

13  **III.    LEGAL STANDARDS**

14      **A.    Civil Contempt**

15      Courts have the "inherent power to enforce compliance with their lawful orders through

16  civil contempt." *Spallone v. United States*, 493 U.S. 265, 276 (1990) (citation omitted). An order

17  of civil contempt is warranted where "(1) [the party] violated [a] court order, (2) beyond substantial

18  compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear

19  and convincing evidence." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693,

20  695 (9th Cir. 1993). "The contempt need not be willful, and there is no good faith exception to the

21  requirement of obedience to a court order." *Id.* (cleaned up). "Civil contempt sanctions are

22  employed for two purposes: (1) to coerce compliance with a court's order; and (2) to compensate

23  the complainant for the losses sustained." *In re Search of Content Stored at Premises Controlled*

24  *by Google Inc.*, No. 16-mc-80263-RS, 2017 WL 4700056, at *1 (N.D. Cal. Oct. 19, 2017) (*citing*

25  *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947).

26      In an application for an order to show cause, the moving party must cite the Court-ordered

27  provisions at issue and allege that the non-moving party has not complied with those provisions.

28  *Reynolds v. Roberts*, 207 F.3d 1288, 1298 (11th Cir. 2000). "If [the court is] satisfied that the

REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL

1  [complainant]'s motion states a case of non-compliance, the court orders the [non-moving party]

2  to show cause why he should not be held in contempt and schedules a hearing for that purpose."

3  *Id.*; *LifeScan Scot., Ltd. v. Shasta Techs, LLC*, No. 11-cv-04494-WHO, 2013 WL 4604746 (N.D.

4  Cal. Aug. 28, 2013) (ordering plaintiff to show cause regarding violations of protective order where

5  it used confidential information obtained in litigation to send cease-and-desist send letters to

6  defendant's customers).

7         A court has "wide latitude in determining whether there has been contemptuous defiance of

8  its order." *Gifford v. Heckler*, 741 F.2d 263, 265-66 (9th Cir. 1984).

9         **B.     Sanctions for Discovery Order Violations**

10        Courts are authorized under Federal Rule of Civil Procedure 37 to impose sanctions against

11 litigants and their attorneys for violating protective orders. *See Falstaff Brewing Corp. v. Miller*

12 *Brewing Co.,* 702 F.2d 770, 783 (9th Cir. 1983). Federal Rule of Civil Procedure 16, which

13 references Rule 37, also provides courts with such authority. Fed. R. Civ. P. 16(f) (authorizing

14 courts to "issue any just orders … if a party or its attorney … fails to obey a scheduling *or other*

15 pretrial order" (emphasis added)).

16        "Sanctions are permissible under Rule 37 when a party fails to comply with a court order,

17 regardless of the reasons." *Life Techs. Corp. v. Biosearch Techs., Inc.*, No. C-12-00852-

18 WHA(JCS), 2012 WL 1600393, at *8 (N.D. Cal. May 7, 2012); *see also Yeti by Molly, Ltd. v.*

19 *Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (when requested sanction is less than

20 dismissal, moving party is not required to prove "bad faith or willfulness."). If the Court finds that

21 a party or their attorney violated a protective order without substantial justification, then the

22 payment of attorneys' fees and costs is a mandatory part of any sanctions award, and additional

23 sanctions are within the Court's discretion. Fed. R. Civ. P. 37(b)(2)(A), (C); *see also Holley v.*

24 *Gilead Scis., Inc.*, No. 18-cv-06972-JST, 2021 WL 940594, at *2 (N.D. Cal. Mar. 12, 2021) (Rule

25 37 sanctions "may serve either remedial and compensatory purposes or punitive and deterrent

26 purposes.") (citation omitted).

27

28

4:22-CV-01490-JST
NETFLIX'S MOTION FOR AN OSC AND SANCTIONS

REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL

## IV.    ARGUMENT

### A.    Mr. Ramey Should be Ordered to Show Cause Because He Violated the Court's Protective Order.

The governing Protective Order unambiguously restricts a party who receives confidential information from disclosing that information beyond "the categories of persons and under the conditions described in this Order." Edlin Decl., Ex. A, ¶7.1. In particular, AEO materials can only be provided to outside counsel who are "Outside Counsel of Record," which means they "have appeared in this action" or "are affiliated with a law firm which has appeared on behalf" of a party in the action. *See id,* ¶¶7.3(a), 9.2(a) & 2.11. AiPi's attorneys never appeared in the action, are not barred in California, and are not "affiliated" with either of the law firms that appeared for Mr. Valjakka while his claims were pending (Ramey LLP and Mahamedi IP). And while Netflix's Confidential material could have additionally been shown (under certain positions) to a plaintiff's "officers, directors, and employees," Mr. Valjakka as an individual has none. *See id,* ¶¶7.2(a)-(b) & 2.11. Because AiPi's employees do not fall into any of the categories of persons who can receive Netflix's Protected Material, Mr. Ramey violated the Protective Order by disclosing Netflix's confidential information to them. Edlin Decl., Ex. I. And each time Mr. Ramey sent and/or discussed other Netflix confidential material in Mr. Valjakka's infringement and damages contentions and expert reports, he violated the Protective Order again. *See supra*, Section II.C.

Under similar circumstances, courts in this Circuit will grant orders to show cause—if not find contempt outright. *See, e.g., In re Banc of Cal. Sec. Litig.*, No. 17-cv-118, 2024 WL 4597254, at *7 (C.D. Cal. Sept. 30, 2024) (law firm in contempt of protective order for providing client with copy of expert report that "repeatedly cited to [AEO] information"); *OmniGen Rsch., LLC v. Wang*, No. 6:16-cv-268-MC, 2018 WL 11512767, at *10-11 (D. Or. Nov. 6, 2018) (finding "clear and convincing" evidence of contempt where attorney improperly forwarded to client document productions and expert report containing AEO information of opposing party); *Systemic Formulas, Inc. v. Kim*, 2009 WL 5205995, at *1-2, 4 (D. Utah Dec. 23, 2009) (finding contempt against attorney who provided client with list of information derived from AEO material).

REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL

1    Because Netflix has demonstrated that Mr. Ramey violated specific provisions of the

2    Protective Order, the Court should shift the burden to Mr. Ramey to justify his breaches. But the

3    Court should afford Mr. Ramey no deference because *he negotiated* the provisions of the Protective

4    Order that he subsequently (and repeatedly) breached. *See Clarke v. First Transit, Inc.*, No. 07-CV-

5    6476 GAF (MANx), 2012 WL 12877865, at *12 (C.D. Cal. Nov. 2, 2012) ("a party who participates

6    in drafting the order should do so with an understanding of what it can reasonably accomplish.")

7    (*quoting* Moore's Fed. Practice, Civil § 37.51 (Matthew Bender, 2012 ed.).) If Mr. Ramey wanted

8    shadow lead counsel at AiPi to have access to Netflix's confidential information, he could have

9    negotiated access directly into the Protective Order.[5] Or if he had doubts about AiPi's ability to

10   review the information under the Protective Order terms, he could have raised the issue with Netflix

11   or sought relief from the Court to modify the Protective Order at any point during the eighteen

12   months between the issuance of the Protective Order and dismissal of Mr. Valjakka's claims.

13   Instead, Mr. Ramey withheld AiPi's role while he repeatedly fed them Netflix's Highly

14   Confidential documents.[6]

15       **B.    Ramey's Misuse of Netflix's Confidential Information Warrants Monetary**
            **Sanctions Under Rule 37.**

16

17       Regardless of the outcome on contempt, Mr. Ramey's conduct is also sanctionable under

18   Rule 37. *See, e.g., Holley*,, 2021 WL 940594, at *1-2 (sanctioning party for "incorrectly" filing

19   confidential documents on public docket); *Life Techs.*, 2012 WL 1600393, at *9-10 (sanctioning

20   party for "inadvertently" disclosing AEO information to client); *see also LifeScan*, No. 11-cv-

21   04494-WHO, 2013 WL 5949629, at *3-4 (N.D. Cal. Nov. 6, 2013) (declining to find contempt

22

23   _____

24   [5] This is exactly what Netflix did when it identified certain Valjakka AEO documents that it wanted
its in-house counsel to be able to review prior to mediation. *See* Edlin Decl., Ex. B (order granting

25   stipulation among parties to amend the Protective Order and permit Netflix's in-house counsel to
access enumerated Valjakka AEO documents) (ECF No. 120).

26   [6] Because this Motion seeks an order to show cause, Netflix does not address its entitlement to fees.
If the Court eventually finds Mr. Ramey in contempt, then Netflix should be awarded its "actual

27   losses" from Mr. Ramey's contempt, which the at least its attorneys' fees and costs it has (and will
continue to) expend to address his violations, including motion practice. *See, e.g., United States v.*

28   *Nat'l Med. Enterprises, Inc.,* 792 F.2d 906, 910 (9th Cir. 1986).

1    where party in violation had "good faith and reasonable interpretation" justifying noncompliance

2    but finding conduct "still sanctionable" as a failure to obey the protective order).

3          While it is within the Court's discretion to craft a sanction that is "punitive and deterrent"

4    in nature, *see Falstaff*, 702 F.2d at 783, Netflix is entitled at a minimum to compensatory sanctions,

5    i.e., "reasonable, expenses, including attorney's fees, caused by" Ramey's breach. Fed. R. Civ. P.

6    37(b)(2)(A), (C). Netflix's expenses caused by the breach are thus far limited—a few

7    (unsuccessful) attempts to seek Ramey's compliance, review of a few small document productions

8    and a privilege log, and drafting this Motion. But Netflix expects it will occur significant additional

9    expense investigating and remediating the breach through reviewing the voluminous record of

10   Ramey's and AiPi's communications and contacting persons who unlawfully accessed Netflix's

11   confidential information. For that reason, Netflix asks that the Court permit it to submit a final

12   itemized bill of costs and fees with an explanation for their reasonableness after it has an

13   opportunity to complete its investigation (an approach that is typical in contempt proceedings,

14   which this Motion also seeks to initiate). *See, e.g., Apple, Inc. v. Samsung Elecs. Co.*, No. 5:11-cv-

15   01846-LHK(PSG), 2014 WL 12596470, at *9-10 (N.D. Cal. Jan. 29, 2014) & *id.*, 2014 WL

16   2854994, at *1 (Jun. 20, 2014); *Silicon Genesis Corp. v. EV Grp. E. Thallner GmbH*, No. 22-cv-

17   04986-JSC, 2023 WL 6882749, at *4 (N.D. Cal. Oct. 18, 2023) & *id.*, 2024 WL 1643677, at *1

18   (Apr. 15, 2024).

19         **C.**    **The Court Should Order Ramey to Provide Discovery into What Appears to**

20                  **be Many Other Protective Order Violations.**

21         Whether viewed as part of a contempt proceeding or as one type of sanction under Rule 37,

22   Courts permit discovery to determine the extent of a non-moving party's sanctionable conduct. *See*

23   *generally Cardell Fin. Corp. v. Suchodolski Assocs., Inc.*, 2012 WL 12932049, at *57-60 (S.D.N.Y.

24   July 17, 2012) (collecting cases from "[a] number of courts [that] have referenced the use of

25   discovery in contempt proceedings or similar circumstances in which the issue to be determined

26   was whether or not a violation of an order had occurred.") For example, in the *Apple v. Samsung*

27   litigation, the Court ordered discovery from Samsung to allow Apple to investigate the extent of

28   Samsung's distribution of an AEO-laden expert report within its organization and to other outside

REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL

counsel. *See, e.g., Apple v. Samsung*, No. 5:11-cv-01846-LHK, 2013 WL 9768650, at *2-3 (N.D. Cal. Oct. 2, 2013); *aff'd* 2013 WL 5693759 (Oct. 15, 2013). While Samsung offered to provide a "log of documents associated with the transmission[] of the" report, the Court recognized that this limited information would not address the litany of unanswered "basic questions" about the disclosure: To whom? When? For what purpose? *See id.* As such, the Court ordered Samsung to produce documents and communications within an eighteen-month window from every Samsung employee who received the confidential information and produce at least six employees to sit for a deposition. *See id.*

Here, because Mr. Ramey also refuses to provide Netflix with answers to the "basic questions," discovery is warranted. AiPi and its employees were previously found to be outside of the jurisdiction of this Court (*see* ECF No. 284 at 8)[7] and have not signed an undertaking committing themselves to the Protective Order, so they have no apparent obligation to keep the information confidential.[8] Netflix needs to know who had access to what to ensure that information is safe. Indeed, because Netflix's AEO and Source Code are so sensitive, the parties agreed to a prosecution bar that applies to "*any individual* who receives access" to those materials. Edlin Decl., Ex. A, ¶8 (emphasis added). But the bar cannot serve its purpose—"to mitigate the risk of inadvertent use of confidential information learned in litigation"—if all current and former employees of AiPi are not bound by it. *See generally EPL Holdings, LLC v. Apple Inc.*, No. C-12-04306-JST(JSC), 2013 WL 2181584, at *4 (N.D. Cal. May 20, 2013). And even if they were, Netflix could not police their prosecution activity because it does not know who they are. AiPi employs patent attorneys, patent agents, scientists, and inventors, all of whom are likely (if not

---

[7] Netflix respectfully contends that the recent discovery from AiPi demonstrates that AiPi has availed itself of this Court's jurisdiction. *See supra*, Section II.B-C.

[8] After Netflix alerted AiPi to the Protective Order violations, Mr. Morehouse promised (on behalf of AiPi) to "be bound by the terms of [the Protective Order]" and made additional promises about his own use of Netflix's protected information. Edlin Decl., Ex. R at 3. But Mr. Morehouse made no promises about improper use of Netflix's protected information in the more than two years since it received them and makes no promises about what AiPi's now-former employees are doing to protect Netflix's information. And nobody affiliated with AiPi has signed the undertaking attached to the Protective Order.

-13-

REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL

1   necessarily) involved in patent prosecution activities. *See* Edlin Decl., Ex. F (introducing "[k]ey

2   members of AiPi's team" to Mr. Valjakka).

3          The discovery Netflix requests is narrowly tailored to provide answers to the "basic

4   questions" that will allow Netflix to protect its confidential information: Who received it? What

5   did they receive? How can Netflix communicate with them to ensure additional breaches of the

6   Protective Order have not and will not occur?

7   **V.      CONCLUSION**

8          For the reasons stated above, Netflix requests the Court grant Netflix's requested relief.

-14-

REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL

Dated: February 18, 2025

Respectfully submitted,

*/s/ Elise Edlin*

Sarah E. Piepmeier, Bar No. 227094
Elise S. Edlin, Bar No. 293756
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, California 94105
SPiepmeier@perkinscoie.com
EEdlin@perkinscoie.com
Telephone: +1.415.644.7000
Facsimile: +1.415.344.7050

Janice L. Ta (appearance *pro hac vice*)
PERKINS COIE LLP
405 Colorado Street, Suite 1700
Austin, Texas 78701
JTa@perkinscoie.com
Telephone: +1.737.256.6100
Facsimile:  +1.737.256.6300

Adam Hester, Bar No. 311206
PERKINS COIE LLP
33 E. Main Street, Ste. 201
Madison, Wisconsin, 53703
AHester@perkinscoie.com
Telephone: +650.838.4311

Rachael D. Lamkin (SBN 246066)
Karan Singh Dhadialla (SBN 296313)
BAKER BOTTS L.L.P.
101 California Street, Suite 3200
San Francisco, CA 94111
Telephone: + 1.415. 291.6200
Facsimile: +1.415.291.6300
rachael.lamkin@bakerbotts.com
karan.dhadialla@bakerbotts.com

***Attorneys for Defendant***
***NETFLIX, INC.***

4:22-CV-01490-JST
NETFLIX'S MOTION FOR AN OSC AND SANCTIONS