EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

AiPi, LLC,

        Movant,

      v.

NETFLIX, INC.,

        Respondent.

Civ. Action No. 1:24mc2 (LMB/WEF)

**NETFLIX, INC.'S MEMORANDUM IN SUPPORT OF
ITS MOTION FOR CIVIL CONTEMPT**

# <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    LEGAL AUTHORITY ......................................................................................... 3

III.   ARGUMENT ........................................................................................................ 4

      A.    AiPi Violated This Court's Order By Failing To Produce Responsive Documents 4

      B.    AiPi Violated This Court's Order By Failing To Conduct An Adequate Search For Documents ...................................................................................... 12

      C.    AiPi Disregarded This Court's Admonition To Only Make Legitimate Privilege Objections ......................................................................................... 14

      D.    AiPi Should Be Held In Contempt ..................................................................... 16

          1)    AiPi had knowledge of this Court's Order ............................................... 16

          2)    The Court's Order was in Netflix's favor ................................................ 17

          3)    AiPi violated the Court's Order and had constructive knowledge of its violation ..................................................................................... 17

          4)    Netflix has suffered cognizable harm ...................................................... 18

      E.    Netflix Respectfully Requests Briefing On the Privilege Issues ......................... 18

      F.    AiPi's Litigation Misconduct Warrants An Order Mandating Forensic Discovery ............................................................................................................ 21

          1)    AiPi is committing perjury and fraud upon the courts at a national scale 21

          2)    AiPi is committing the unauthorized practice of law ............................... 23

          3)    AiPi used Netflix's confidential financial information, clearly designated Highly Confidential Outside Counsel Only ............................. 24

          4)    AiPi's conduct, including gamesmanship, improper withholding, and multiple instances of perjury, necessitates forensic discovery ................ 25

IV.   REMEDIES SOUGHT ...................................................................................... 26

V.    THE PARTIES' MEET AND CONFER DID NOT ADDRESS NETFLIX'S CONCERNS ...................................................................................................... 26

VI.   CONCLUSION .................................................................................................. 27

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Buffalo Wings Factory, Inc. v. Mohd*,
  No. 1:07cv612 (JCC), 2008 U.S. Dist. LEXIS 82247 (E.D. Va. Oct. 15, 2008)....................17

*California Innovations v. Ice Rover*,
  1:22-cv-01986-RM-NRN, ECF Nos. 61-1, 61-2 (D. Colo. Dec. 12, 2023) ..........................22

*Capital Associated Indus. v. Stein*,
  922 F.3d 198 (4th Cir. 2019) .....................................................................................24

*Carbajal v. Hayes Mgmt. Serv.*,
  No. 4:19-cv-00287-BLW, 2022 U.S. Dist. LEXIS 130744 (D. Idaho July 21, 2022) ...........19

*De Simone v. VSL Pharms., Inc.*,
  36 F.4th 518 (4th Cir. 2022) ................................................................................4, 16, 18

*Delta T, LLC v. Williams*,
  337 F.R.D. 395 (S.D. Ohio 2021) ..............................................................................25

*Drueding v. Travelers Home and Marine Insurance Co.*,
  22-cv-00155-LK, 2022 WL 17092736 (W.D. Wash. Nov. 21, 2022) ..................................25

*Fennell v. Town of Pocahontas*,
  No. 1:05CV00045, 2005 U.S. Dist. LEXIS 19007 (W.D. Va. Sep. 2, 2005)..........................19

*Galaxy CSI, LLC v. Galaxy Comput. Servs., Inc. (In re Galaxy Comput. Servs., Inc.)*,
  Civil Action No. 04-07-A (LMB), 2004 U.S. Dist. LEXIS 28162 (E.D. Va. Mar. 31, 2004) 19

*Gasner v. Dinwiddie*,
  162 F.R.D. 280 (E.D. Va. 1995) ................................................................................22

*Hawkins v. Stables*,
  148 F.3d 379 (4th Cir. 1998) .....................................................................................19

*IHS Global Ltd. v. Trade Data Monitor LLC*,
  2019 U.S. Dist. LEXIS 220327, 2019 WL 7049687 (D.S.C. Dec. 23, 2019) ........................25

*In re Gen. Motors Corp.*,
  61 F.3d 256 (4th Cir. 1995) .........................................................................................4

*John B. v. Goetz*,
  531 F.3d 448 (6th Cir. 2008) .....................................................................................25

*Johnson v. Deputy LNU*,
No. 3:20-CV-01923-AKK, 2021 U.S. Dist. LEXIS 273746 (N.D. Ala. Dec. 17, 2021)..........4

*Mt. Valley Pipeline, LLC v. Easements To Construct, Operate, & Maintain A Nat. Gas Pipeline*,
No. 7:17-cv-00492, 2018 U.S. Dist. LEXIS 75780 (W.D. Va. May 4, 2018).........................18

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014)....................................................................................................................23

*Progressive Southeastern Insurance Company v. Arbormax Tree Service, LLC*,
2018 WL 4431320 (E.D. N.C. Sept. 17, 2018)........................................................................16

*Rainbow Sch., Inc. v. Rainbow Early Educ. Holding LLC*,
887 F.3d 610 (4th Cir. 2018) ..........................................................................................3, 16, 25

*Rambus, Inc. v. Infineon Techs. AG*,
222 F.R.D. 280 (E.D. Va. 2004) ...............................................................................................19

*Redner's Mkts., Inc. v. Joppatowne G.P. Ltd. P'ship*,
608 F. App'x 130 (4th Cir. 2015) ......................................................................................16, 26

*Richmond Ass'n of Credit Men v. Bar Ass'n of City of Richmond*,
167 Va. 327, 189 S.E. 153 (1937)..............................................................................................24

*Ronsdorf v. Raiffeisenbank Dornbirn Reg. Gen. M.B.H.*,
63 Va. Cir. 499 (Cir. Ct. 2003) .................................................................................................24

*Rutledge v. City of Danville*,
No. 4:13-cv-00066, 2013 U.S. Dist. LEXIS 172934 (W.D. Va. Dec. 9, 2013).......................21

*S. Coal Corp. v. Brickstreet Mut. Ins. Co.*,
Civil Action No. 7:19-cv-00457, 2024 U.S. Dist. LEXIS 32356 (W.D. Va. Feb. 26, 2024)
.....................................................................................................................................4, 16, 17, 18

*Schwartz v. Rent-A-Wreck of Am.*,
261 F. Supp. 3d 607 (D. Md. 2017) .............................................................................................4

*Shillitani v. United States*,
384 U.S. 364 (1966)....................................................................................................................16

*Stone Basket Innovations, LLC v. Cook Med. LLC*,
892 F.3d 1175 (Fed. Cir. 2018)..................................................................................................23

*Teleglobe Communs. Corp. v. BCE, Inc. (In re Teleglobe Communs. Corp.)*,
493 F.3d 345 (3d Cir. 2007)..........................................................................................................2

*Townhouse Rest. of Oviedo v. Nuco2*,
No. 19-14085-CIV-ROSENBERG/MAYNARD, 2020 U.S. Dist. LEXIS 108809 (S.D. Fla. May 5, 2020) ..............................................................................................................................15

*United States v. Okun*,
281 F. App'x 228 (4th Cir. 2008) ....................................................................................................2

*Witthohn v. Fed. Ins. Co.*,
164 F. App'x 395 (4th Cir. 2006) ..................................................................................................22

STATUTES

35 U.S.C. § 285 ...............................................................................................................18, 21, 23, 24

KVIP Law ...........................................................................................................................................13

Va. Code Ann. § 54.1-3904 ..............................................................................................................24

Whitestone Law .................................................................................................................................22

OTHER AUTHORITIES

Fed. R. Civ. P. 45(e)(2)(A) .............................................................................................................14

Fed. R. Civ. P. 45(g) ......................................................................................................................3, 16

L.R. 3-15 ..........................................................................................................................................6, 13

Netflix's "Highly Confidential, Attorneys' Eyes Only" ...................................................................9

Order, 15:3-21 ...................................................................................................................................17

Order, 15:6–8, 15:15–17 ...................................................................................................................4

Order, 15:7-8, 15:15-17 .....................................................................................................................1

Order, 15:12-14 ..............................................................................................................................2, 14

Order, 16:17-19 .................................................................................................................................25

Rule 11, Section 1927, and Section 285 ..........................................................................................10

Rule 45 ...........................................................................................................................................14, 23

Va. Sup. Ct. R. 1A:5(e) .....................................................................................................................24

Netflix, Inc. ("Netflix") respectfully moves for an order of contempt against AiPi, LLC ("AiPi") pursuant to Federal Rule of Civil Procedure 45(g) and this Court's inherent authority. Given that Netflix is seeking compliance with Judge Brinkema's order mandating discovery from AiPi, and that magistrate judges cannot issue contempt orders (28 U.S.C. § 636(e)), Netflix respectfully requests that this Motion be heard by Judge Brinkema in the first instance.

## I.    INTRODUCTION

AiPi should be held in civil contempt for violating this Court's December 13, 2024 Order (ECF Nos. 49, 50; hereinafter "Order"). In denying AiPi's Motion to Quash, this Court commanded AiPi to provide "full and open discovery" and "the full range of discovery." Order, 15:7-8, 15:15-17.[1] And yet, despite its material involvement in Valjakka's seventeen (17) litigations[2] spanning three (3) years and counting, and even though AiPi's principal, Eric Morehouse, swore to this Court under oath that he was in possession of "thousands" of responsive documents, AiPi produced a mere twenty (20) responsive documents. *See* Morehouse Decl., ECF No. 17-2, at ¶ 8; *see also* AiPi Reply, ECF No. 24, at 8-9.

Moreover, Morehouse was the *only* representative of AiPi that even participated in a search for documents responsive to Netflix's subpoena. Messrs. Lund and Sheets did not participate, and Morehouse did not himself search Lund or Sheets' email accounts, hard drives, company folders, etc.  Morehouse did not even search his own email accounts. Instead, Morehouse only searched (i) a single folder on his personal hard drive and (ii) emails "from" William Ramey using but two search terms, "Netflix," and "CDN," ignoring all of the other relevant search terms. As detailed below, AiPi's search for responsive documents was woefully inadequate.

---

[1] Citations refer to the transcript serving as the Court's Order, ECF No. 50.
[2] Fifteen (15) district court litigations and two (2) *inter partes* reviews before the USPTO.

Further, AiPi's privilege log ignores this Court's admonition that "[AiPi's] counsel . . . better make sure that you have a legitimate reason to argue that it's attorney/client privilege." Order, 15:12-14. For example, there are entries that comprise emails between members of AiPi alone. *See, e.g.*, Nimeroff Decl., Exh. Nos. B-C, Privilege Log Entry ("PLE") No. 9.  AiPi claims that it is not a law firm and does not provide legal services or advice.  Lund Decl., ECF No. 11-2, ¶¶ 10-12. In its privilege log, AiPi describes the email contents as "Email discussing Netflix's letter outlining deficiencies in Plaintiff's infringement contentions and strategies for responding. Discussion potential amendments for the '167 patent to bolster infringement claims." *Id.* That is, Messrs. Morehouse, Lund, and Sheets—solely amongst themselves—discussed strategies for responding to Netflix's letter detailing deficiencies in Valjakka's infringement contentions and how to amend those contentions to improve Valjakka's infringement allegations.  AiPi withheld that email citing three (3) distinct privilege doctrines: (i) the attorney client privilege, (ii) the attorney work product privilege, and (iii) the common interest privilege.  It is entirely improper for AiPi to claim these three (3) privileges for emails solely between members of AiPi.  For example, the common interest privilege only applies as between separate counsel communicating between separate entities. *Teleglobe Communs. Corp. v. BCE, Inc. (In re Teleglobe Communs. Corp.)*, 493 F.3d 345, 365 (3d Cir. 2007) ("[T]he privilege only applies when clients are represented by separate counsel."); *United States v. Okun*, 281 F. App'x 228, 231-32 (4th Cir. 2008) ("But in this case, Okun failed to establish that he and IPA were represented by separate legal counsel engaged in a joint strategy."). AiPi is a single (allegedly non-legal) entity communicating with itself; the common interest privilege does not apply to PLE No. 9. This is but one example of the many "[il]legitimate" reasons supplied by AiPi in contravention of this Court's Order. Indeed, AiPi claimed the common interest privilege in sixty-seven (67) of

the sixty-eight (68) privilege log entries and not one of those entries appears to satisfy the requisite elements, including the use of separate counsel between two distinct entities.

As a remedy for AiPi's contempt of this Court's Order, Netflix merely seeks that which this Court already ordered: full and complete discovery before the close of fact discovery in the underlying litigation ("NDCA Litigation") on March 27, 2025. To meet the close of fact discovery, and given AiPi's brinksmanship thus far, Netflix seeks (i) AiPi's full and complete production, with sanctions imposed for any failure to comply; and (ii) briefing on AiPi's unfounded privilege objections.

Further, AiPi's meager production contains evidence that AiPi has engaged in nationwide litigation misconduct including (1) perjury, (2) the improper use of Netflix's Highly Confidential, Attorneys' Eyes Only ("AEO") financial information, (3) participation in Valjakka's fraudulent transfers, and (4) the unauthorized practice of law, all described more fully below.

Finally, AiPi's minimal production, privilege log, and litigation misconduct raise significant concerns about AiPi's diligence in responding to these requests, and therefore Netflix requests forensic discovery to ensure that AiPi is meeting its Court-ordered discovery obligations.

## II.    LEGAL AUTHORITY

"The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g). Further, this Court has the inherent authority to issue a civil contempt order. *Rainbow Sch., Inc. v. Rainbow Early Educ. Holding LLC*, 887 F.3d 610, 617 (4th Cir. 2018).

The party moving for civil contempt must establish the following four elements by clear and convincing evidence: (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's favor; (3) that the alleged

contemnor by its conduct violated the terms of the decree, and had knowledge (or at least constructive knowledge) of such violations; and (4) that the movant suffered harm as a result. *S. Coal Corp. v. Brickstreet Mut. Ins. Co.*, Civil Action No. 7:19-cv-00457, 2024 U.S. Dist. LEXIS 32356, at *5 (W.D. Va. Feb. 26, 2024) (citing *De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 529 (4th Cir. 2022)). Once the movant meets its initial burden of showing these four elements, the burden of production shifts to respondent to raise a defense on an appropriate ground. *Id.* (citing *Schwartz v. Rent-A-Wreck of Am.*, 261 F. Supp. 3d 607, 613 (D. Md. 2017)).

"The appropriate remedy for civil contempt is within the court's broad discretion." *De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 535-36 (4th Cir. 2022) (citing *In re Gen. Motors Corp.*, 61 F.3d 256, 259 (4th Cir. 1995)); *see also Johnson v. Deputy LNU*, No. 3:20-CV-01923-AKK, 2021 U.S. Dist. LEXIS 273746, at *3 (N.D. Ala. Dec. 17, 2021) ("District courts enjoy wide discretion to fashion an equitable remedy for civil contempt that is appropriate to the circumstances.") (cleaned up).

## III. ARGUMENT

### A. AiPi Violated This Court's Order By Failing To Produce Responsive Documents

This Court was clear: "this is definitely a case where I think the defendant has a right to get full and open discovery . . . there's enough smoke about this case that I think it's appropriate that the full range of discovery should be granted." Order, 15:6–8, 15:15–17. Moreover, this Court warned AiPi that it should not provide evasive or incomplete discovery and that AiPi would be "required to provide appropriate answers to all of the outstanding requests within 14 days of today's date." *Id.* at 15:18–20. AiPi ignored this Court's Order.

AiPi produced a meager seventy-nine (79) documents, and most of those documents are nonresponsive. Many of the documents are either duplicates, or emails from Ramey to Morehouse

asking AiPi to pay Ramey's outstanding invoices. As detailed below, AiPi produced a mere twenty (20) responsive documents. But when AiPi was seeking to quash Netflix's subpoena, AiPi's principal and founder Eric Morehouse submitted a declaration to this Court averring under oath that there were "thousands" of documents responsive to Netflix's original requests. Morehouse Decl., ECF No. 17-2, at ¶ 8.[3] Indeed, AiPi's recent briefing stated that a production of "five thousand documents" would be a "conservative estimate." ECF No. 24, at 9.

AiPi produced six (6) folders of documents, each corresponding to the six (6) Topics in Netflix's subpoena. The evidence before this Court demonstrates that AiPi failed to produce material responsive documents:

**Topic No. 1** seeks "All agreements and drafts of same between AiPi and persons/entities with a financial interest in Valjakka's Campaign, e.g., Lauri Valjakka, Ramey LLP, Kenealy Vaidya, LLP, IP Case Group 1 LLC, and investors in Valjakka's Campaign." ECF No. 35-2 at 11.

Folder 1 contains eleven (11) documents. One of those documents is just the signature page of another document in the folder. Another document is non-responsive (a pre-suit assignment of the Asserted Patents). One of the documents is a duplicate, leaving a mere eight (8) documents produced pursuant to Topic 1.

Further, with one (1) exception, AiPi only produced its agreements with Valjakka and Ramey. But in documents filed in the NDCA Litigation, Valjakka represented that both Kenealy Vaidya, LLP and IP Case Group 1 have a financial interest in litigation. *See*, *e.g.*, NDCA

---

[3] Netflix then issued a subsequent subpoena (the one at issue here), which AiPi complained was even "broader" than the first. ECF No. 46, at 20; *see also* ECF No. 35-1, at 2 ("While one of the six requests/topics did narrow the scope of the subpoena, the remaining five topics actually expanded the scope of the subpoena that had previously been issued.").

Litigation, ECF No. 174 (L.R. 3-15 Certificate of Interested Parties). AiPi did not produce any agreements with either Kenealy Vaidya, LLP or IP Case Group 1.

AiPi did produce a "Subscription Agreement" with an entity called AiPi Litigation Funding, LLC. That Agreement does not mention Valjakka, and the subscription amount is only $95,000. Erik Lund submitted a declaration before Judge Tigar that discloses that AiPi raised a total of $1,500,000 for the Valjakka campaign.[4] Lund Decl., ECF No. 11-2 ¶¶ 30-34. None of that money is accounted for in the folder for Topic 1. And, none of the drafts requested were produced.

Further, AiPi has only claimed privilege over Topic Nos. 4 and 5, so none of the documents responsive to this Topic should have been withheld. *See* ECF Nos. 35-1, at 37, at 15-16.

**Topic No. 2** seeks "Documents regarding the creation and purpose of CDN Licensing and payments to/from CDN Licensing." ECF No. 35-2 at 11. CDN Licensing is the Finnish entity created by Valjakka to facilitate his fraudulent transfer of settlement money to CDN to avoid paying contingent creditors (Netflix's attorneys' fees for his meritless litigations).

Folder 2 contains seventeen (17) documents, half of them duplicates. Every single one of the documents comprises technical disclosures about the Content Distribution Network (CDN) technology behind the Asserted Patents; not a single document is relevant to **CDN Licensing**, the entity. Notably, AiPi agreed to produce documents responsive to Topic 2 prior to the Court's Order. *See* ECF No. 35-1, at 2 n.2; *see also* October 25, 2024 Hearing Tr., at 5:22-24 ("[W]e agreed to Topic 2, which involves documents relating to CDN Licensing. So I think that's fine. I think that's fair game."). Despite conceding the relevance of documents regarding CDN Licensing,

---

[4] During the Parties' meet and confer, AiPi stated, "AiPi will produce signed copies of the subscription agreement for each of the investors, which should account for that discrepancy." But AiPi provided no explanation for why that wasn't already done. If AiPi does produce these documents, Netflix will advise the Court of same.

AiPi failed to produce responsive documents.

Notably, folder 6, not folder 2, contains an email thread between Morehouse and Valjakka's attorney in Finland (Onni Hietalahti) dated April 20, 2022. Lamkin Decl., Exh. A.  In that email, Morehouse tells Hietalahti, "I'm transferring the $230K now. Please confirm that this is the correct bank info and that Lauri is OK with this account." Morehouse then lists the bank account information for Valjakka's entity, CDN Licensing. In response, Hietalahti confirms that the bank information for CDN Licensing is correct. This email demonstrates that AiPi was directly involved in transferring Enforcement Assets (with a sum of $230,000) to CDN Licensing. This email is not only responsive to Topic 2, but also demonstrates that Morehouse committed perjury before this Court when he submitted a declaration stating unequivocally, "AiPi has not transferred any settlement proceeds to CDN." Morehouse Decl., ECF No. 17-2 ¶ 9.

Further, buried in Hietalahti's 2022 email is the following statement, "When you have time please . . . give me a call on further measures re the ownership issue."  The "ownership issue" almost certainly refers to Valjakka's lack of ownership of the asserted '167 Patent (the patent at issue in the NDCA Litigation), an issue Hietalahti was tasked with solving. And note, the email says "further measures," implying that the "ownership issue" discussion was ongoing. In the NDCA Litigation, Judge Tigar granted Netflix's motion for summary judgment that Valjakka did not own the asserted '167 Patent. NDCA Litigation, ECF No. 257. AiPi appears to have been on notice years ago that there were serious concerns that Valjakka did not own the asserted '167 Patent.  But there are no documents related to ownership produced under Topic 2, and only one document responsive to Topic 6.

Upon receipt of AiPi's document production on December 27, 2024, Netflix sent multiple letters and emails to AiPi regarding Netflix's concerns with that production, including Netflix's

concerns over the lack of documents under Topic 2. Lamkin Decl., Exhs. B-E. Three (3) weeks after the production, on January 15, 2025, Morehouse gave Netflix a declaration that avers, *inter alia*, "AiPi has produced all documents containing 'CDN.'" Morehouse January 15, 2015 Declaration ¶ 4(b) (Lamkin Decl., Exh. F). Morehouse's representation is demonstrably false. By way of but one example, in the NDCA Litigation, Valjakka produced an email with Morehouse and Lund dated November 20, 2022 that discusses CDN Licensing. Lamkin Decl., Exh. G (Under Seal). Morehouse is a direct recipient of the email filed as Exhibit G; AiPi has in fact not "produced all documents containing 'CDN.'" Morehouse Decl., January 15, 2025, ¶ 4(b). Netflix is in possession of multiple other emails with "CDN" that were not produced by Morehouse.

**Topic No. 3** requests any presentations prepared or provided by AiPi to potential investors related to Valjakka's Campaign. *See* ECF No. 35-2 at 11. Folder 3 contains six (6) documents: (1) a "Cisco Claim Chart" (an infringement chart) created by AiPi for the *Valjakka v. Cisco* litigation on August 20, 2021; (2) an invalidity analysis of the asserted '167 Patent, dated October 7, 2021, with Erik Lund listed as the author in the metadata; (3) a "Validity Analysis" created by Erik Lund and Weir King of AiPi on October 7, 2021; (4) a "Venue Analysis" of the *Valjakka v. Cisco* litigation drafted by Erik Lund on October 17, 2021; (5) a PowerPoint presentation created by AiPi and dated "September 2021," titled "Patent Litigation Investments—Timelines and Financial Projections"; and (6) another PowerPoint presentation created by AiPi and dated "September 2021," titled "Patent Litigation Investments—WD Texas Patent Litigation Statistics."

Netflix assumes that these documents are responsive and that they were sent to investors as part of AiPi's efforts to raise money for Valjakka's campaign. But curiously, none of these documents even mention Valjakka. None of the documents specific to investing in Valjakka's Campaign are accounted for and none appear to be on AiPi's privilege log. If the documents were

provided to potential and actual investors via email, AiPi did not provide any of the emails to which these documents were attached. And none of the financial projections specific to Valjakka's campaign were provided.

Further, according to a declaration that AiPi principal Erik Lund filed in the NDCA Litigation, AiPi raised about $1.5 million from investors for the Valjakka Campaign. Lund Decl., ECF No. 11-2 ¶¶ 28, 34. It is unfathomable that AiPi raised $1.5 million from investors without sending a single email, letter, PowerPoint, or any method of presenting the investment opportunity.

**Topic No. 4** seeks emails between AiPi and Ramey LLP and/or Erick Robinson (Valjakka's former litigation counsel) regarding material litigation decisions. The folder for Topic 4 contains fourteen (14) emails, none of which is responsive.

Most of the emails are from Ramey asking AiPi to pay his invoices.[5] But not one of the documents in folder 4 is an email between AiPi and Ramey LLP and/or Erick Robinson regarding material litigation decisions. And AiPi's privilege log does not account for the volume of communications that should be responsive to Topic 4. For example, the earliest entry in AiPi's privilege log is dated September 13, 2021. Nemiroff Decl., Exhs. B-C, PLE No. 1. AiPi/Ramey filed Valjakka's first lawsuits (against Akamai, Cisco, and Amazon) on September 10, 2021. There should be considerable entries related to material litigation decisions, including any pre-suit investigation before AiPi/Ramey/Robinson/Valjakka chose to sue Akamai, Cisco, and Amazon. But AiPi did not produce a single document responsive to Topic 4.

**Topic No. 5** seeks "Any communications to or from AiPi related to attorneys' fees or sanctions in the Valjakka Campaign." ECF No. 35-2 at 11. AiPi produced a single email from

---

[5] One email discloses Netflix's "Highly Confidential, Attorneys' Eyes Only" financials to AiPi in violation of the NDCA Litigation Protective Order, discussed *infra*.

Joseph Zito (the attorney who took over about ninety (90) AiPi cases for Ramey) to AiPi's Morehouse, Lund, and Sheets, dated February 20, 2024. The email is redacted in its entirety.

But Netflix is aware of at least one email between Ramey and AiPi warning AiPi that its litigation strategies may lead to sanctions. ECF No. 37-3. And Netflix sent numerous letters to Ramey that implicate attorneys' fees based on Rule 11, Section 1927, and Section 285, including a February 8, 2022 letter from S. Piepmeier regarding improper venue allegations; a December 12, 2022 letter from S. Piepmeier regarding litigation misconduct; a December 16, 2022 letter from S. Piepmeier regarding insufficient supplemental infringement contentions for the '102 patent; and a June 23, 2023 letter from S. Piepmeier regarding bad faith litigation. Netflix would expect AiPi's "full and open" response to Topic No. 5 to include at least the communications related to these letters, as well as any other communications related to attorneys' fees or sanctions. But AiPi produced nothing beyond one email redacted in its entirety, and there appear to be no other corresponding entries in AiPi's privilege log.[6] Nemiroff Decl., Exhs. B-C.

After Netflix sent multiple communications detailing the deficiencies in AiPi's December 27, 2024 production, including concerns with the absence of documents under this Topic, Morehouse submitted a declaration to Netflix averring, "AiPi produced all documents concerning the risk of attorney fees to be awarded against Valjakka. I searched for all documents contained within the Netflix folder. I was also the primary contact person from AiPi regarding the Valjakka litigation and I am not aware, or have any recollection, of any communications other than AIPI_Privilege000001-000005." Morehouse Decl., January 15, 2025, ¶ 4(f) (Lamkin Decl., Exh.

---

[6] There is one entry nearly two (2) weeks after Ms. Piepmeier's February 8, 2022 correspondence that cites "Netflix's letter," but the description of the correspondence doesn't match the contents of the 2/8/22 letter.  *See* Nimeroff Decl., Exhs. B-C, PLE No. 9.

F).[7] Netflix respectfully submits that Morehouse's representation is not credible, and the extremely limited scope of his search is plainly inadequate. For example, the CTD matter, when Microsoft sent a letter threatening sanctions and fees to Ramey, Ramey sent that letter directly to Morehouse and AiPi. Lamkin Decl., Exh. I (Under Seal). Here, Netflix's counsel, Sarah Piepmeier, *supra*, sent Ramey at least four (4) letters threatening sanctions and fees, and yet Morehouse is claiming he is not in possession of a single one those letters or any communications related thereto (or was unable to find them in the single folder that he searched).

Finally, **Topic No. 6** seeks "All documents showing payments to any person/entity of the Enforcement Assets."[8] ECF No. 35-2 at 11. The folder corresponding to Topic 6 contains thirteen (13) documents. Nine (9) of the documents are emails from Ramey asking AiPi to pay his invoices. Those invoices demonstrate, consistent with the AiPi Engagement Agreement, AiPi did the legal work for the AiPi plaintiffs, including Valjakka. *See* AiPi/Ramey Engagement Agreement ¶ 1(b) (Lamkin Decl., Exh. J – Under Seal).

The remaining four (4) documents appear to be responsive in that they appear related to settlement money from/to the Valjakka Campaign, including the email wherein Morehouse says he is transferring money to CDN Licensing "now." Lamkin Decl., Exh. A. But there is no way to assess the amount of monies paid to investors in Valjakka's campaign. There are no bank records, wire transfer records, no proof of payment, and no invoices.

In his declaration filed in the NDCA Litigation, Erik Lund explains that AiPi paid (i) Ramey $295,539.00, (ii) experts $267,594.76, (iii) Valjakka $258,500, and (iv) investors $393,911. Lund Decl., ECF No. 11-2 ¶¶ 29-34. But AiPi failed to produce a single bank transfer

---

[7] AIPI_Privilege000001-000005 is the 2024 document redacted in its entirety in folder 5, *supra*.
[8] AiPi only claimed privilege over Topics Nos. 4-5, so none of the documents responsive to this Topic should have been withheld. *See* ECF Nos. 35-1, at 15-16.

confirmation. The same Lund declaration states that "[t]he Valjakka case has reached settlement

with five entities for a total of $1,285,000." *Id*., at ¶ 28. Documents evidencing these payments by

AiPi to entities/persons must exist for said payments to have occurred, but AiPi did not produce

them.[9]

### B.  AiPi Violated This Court's Order By Failing To Conduct An Adequate Search For Documents

Upon receipt of its December 27, 2024 production, Netflix sent AiPi multiple

communications detailing the inadequacy of AiPi's production. Lamkin Decl., Exhs. B-E. Initially,

AiPi ignored Netflix's communications. Lamkin Decl., Exh. D. Ultimately, Morehouse provided

a declaration detailing his very limited search for documents. Lamkin Decl., Exh. F. Morehouse's

declaration raises more concerns than it assuages.

Morehouse explained that he only searched two sources (i) a single "Netflix" folder on a

hard drive in his "possession" (likely a folder on his personal laptop), and (ii) his own emails from

Ramey using two search terms, "Netflix" and "CDN":

> AiPi's business records are stored locally on a computer in my possession. AiPi
> maintains a computer file on Mr. Valjakka's lawsuit against Netflix ("Netflix
> File"). This file contains the documents AiPi has relating to Mr. Valjakka'a lawsuit
> against Netflix. In addition, I saved emails relevant to Mr. Valjakka's lawsuit
> against Netflix within this folder.
>
> In response to the subpoena issued by Netflix, I conducted a search for documents
> and emails responsive to the six topics by reviewing each of the documents
> contained within the Netflix folder. I categorized the documents as they pertained
> to the six topics in the subpoena. In addition to this search, I also searched all of the
> emails from William Ramey relating to "Netflix." All of these emails containing
> the term "Netflix" were produced or logged as privileged. I searched for the term
> "Netflix" because this search term would necessarily encompass the subtopics

---

[9] During the pre-filing meet and confer, and in Morehouse's declaration, AiPi says it will attempt
to obtain copies of the wire transfers. *See* Morehouse January 15, 2025 Decl., at ¶ 4(g) ("I will
search to see if I can obtain this information from AiPi's bank."). AiPi offers no explanation for
why this hasn't already been done. And Morehouse's statement makes little sense; confirmation
of transfers should be available online with AiPi's bank and evidence suggests that Morehouse
retained wire transfers. *See, e.g*., Lamkin Decl., Exh. N (Under Seal).

listed within topic 4. I also separately searched for "CDN" as it pertained to topic 2 and topic 4(e).

Morehouse Decl., January 15, 2025, ¶¶ 2-3 (Lamkin Decl., Exh. F.)

Morehouse's search was woefully inadequate. As for the "Netflix File" folder stored "locally" on his personal hard drive, the only documents on Morehouse's hard drive would be documents he took the time to save in that folder. And, at the relevant time, there were thirty-four (34) employees and advisors for AiPi. Individuals working on the Valjakka Campaign would likely have no ability to place their work product or emails on Morehouse's personal computer, and Morehouse did not search any other computers.

Morehouse did not even search his own emails, much less Sheets or Lund's emails, or any of the other many AiPi employees mentioned in AiPi's privilege log, *e.g.* "JMerril," "mozmen," "rkerber, or "slewis". Nemiroff Decl., Exhs. B-C, PLE Nos. 1, 12.

The only actual email Morehouse claims to have searched (other than those allegedly saved to his hard drive) were emails (presumably to him) "from" Ramey, and he only searched using two terms, (1) Netflix, and (2) CDN. Morehouse failed to search using terms clearly relevant under Netflix's Topics, including: "Valjakka," "CUVTA," "fraudulent transfer," "Attorneys' fees," "Onni," "sanctions," "ownership" and "standing" to name a handful.

In addition to failing to thoroughly search his AiPi email, Morehouse did not search the other email accounts he used for this work, including emorehouse@kviplaw.com. Lamkin Decl., Exh. H (Under Seal).[10]

Morehouse's inadequate search fails to comply with this Court's Order mandating a full and complete production.

---

[10] KVIP Law is Kenealy, the other entity with a financial interest in the Valjakka Campaign according to the Local Rule 3-15 disclosures that Valjakka filed in the NDCA Litigation.

### C. AiPi Disregarded This Court's Admonition To Only Make Legitimate Privilege Objections

AiPi did not heed this Court's warning that "counsel . . . better make sure that you have a legitimate reason to argue that it's attorney/client privilege." Order, 15:12-14. Pursuant to Rule 45, "[a] person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material ***must*** . . . describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, ***will enable the parties to assess the claim***." Fed. R. Civ. P. 45(e)(2)(A) (emphasis added). Here, AiPi's privilege log appears both under- and over-inclusive—*i.e.*, it both fails to log all seemingly withheld communications, and also claims protection for communications that are clearly not privileged.

***First***, Morehouse and AiPi told this Court there were thousands of responsive documents ECF Nos. 17-2 ¶ 8; 35-1 at 2; 46 at 2 n.2; 46 at 20. But AiPi produced only twenty (20) responsive documents, and its privilege log contains only sixty-eight (68) entries.

***Second***, 67 of the 68 entries have a cut-and-paste claim to three (3) privileges: the attorney-client privilege, work product doctrine, and common interest privilege. Netflix is skeptical that AiPi can meet its burden of showing that 67 of 68 entries are protected by all three (3) privileges. And, as discussed above, AiPi cited the common interest privilege and the attorney client privilege to withhold documents that are plainly not subject to those privileges.

***Third***, AiPi Erik Lund submitted a sworn declaration to Judge Tigar averring:

o   "Eric Morehouse, Joseph Zito, Erik Lund, and Ken Sheets are not co-counsel with William Ramey," ¶ 6;

o   "I did not provide legal services to Mr. Valjakka," ¶¶ 10-12; and

o   "AiPi is not involved in legal decision making." ¶¶ 11-12.

Lund Decl., ECF No. 11-2.

14

And yet, AiPi's privilege log describes multiple communications wherein Erik Lund is sending work product to Ramey as "attorney client communication" and "attorney work product." *See, e.g.*, Nemiroff Decl., Exhs. B-C, PLE Nos. 4-9. Incredibly, as noted above, at least one of the entries comprises an email that is just between members of AiPi. *Id.*, at PLE No. 9. AiPi cannot have it both ways: if AiPi "did not provide legal services to Mr. Valjakka," then its communications regarding Valjakka's case and alleged work product are not protected. If it did, Lund committed perjury.

**Fourth**, AiPi's first entry is dated September 13, 2021. *Id.*, at PLE No. 1. Erick Robinson (AiPi/Valjakka's original outside counsel) filed lawsuits on behalf of Valjakka against Cisco, Akamai, and Amazon on September 10, 2021. There should be dozens (or more) entries for any pre-suit communications between Robinson, AiPi, and Valjakka discussing, *inter alia*, (1) which entities to sue, (2) which claims to allege, (3) which products to accuse, (4) which forum to file, (5) any invalidity or patent eligibility concerns, to name a handful of material litigation decisions and analyses that must occur before filing suit. None of those communications were logged.

**Fifth**, numerous privilege log entries consist of multiple emails contained in a thread. In fact, 36 of the 86 entries are "threads" of multiples emails. AiPi cannot bury emails in a "thread" and use a single (inadequate) descriptor for all the emails in the thread. *See Townhouse Rest. of Oviedo v. Nuco2*, No. 19-14085-CIV-ROSENBERG/MAYNARD, 2020 U.S. Dist. LEXIS 108809, at *3 (S.D. Fla. May 5, 2020) ("This Court agrees with what appears to be the majority view that emails should be individually described in a privilege log even if they appear in a string of emails.") (collecting cases).

**Sixth**, the privilege log also fails to identify the roles of the persons listed as authors and/or recipients of the communications listed, which makes it impossible for Netflix to ascertain whether

any applicable privilege was waived through communications with third parties. *See, e.g.*, Nemiroff Decl., Exhs. B-C, PLE No. 12 (listing unidentified Diana Kelman; mozmen@aipisolutions.com; rkerber@aipisolutions.com; slewis@aipisolutions.com; Andy Rosen; henning@safecast.co.uk); *see also Progressive Southeastern Insurance Company v. Arbormax Tree Service, LLC*, 2018 WL 4431320, at *8 (E.D. N.C. Sept. 17, 2018) (finding privilege log deficient for not identifying roles of each person listed). Some entries even mention a recipient named "USPTO," which would indicate that this communication was sent to a third party—the United States Trademark and Patent Office—thereby waiving any privilege claim for these communications. *See* Nemiroff Decl., Exhs. B-C, PLE Nos. 39-40, 42. At least one of the entries includes Henning von Spreckelsen (henning@safecast), an investor for a separate plaintiff (SafeCast) in another set of the one hundred and forty (140) AiPi/Ramey litigations, waiving privilege for those communications. *See id.,* at PLE No. 12.

AiPi's privilege log is woefully inadequate and claims privilege where none can possibly apply, in violation of this Court's Order and the Federal Rules.

### D. AiPi Should Be Held In Contempt

"There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Redner's Mkts., Inc. v. Joppatowne G.P. Ltd. P'ship*, 608 F. App'x 130, 131 (4th Cir. 2015) (citing *Shillitani v. United States*, 384 U.S. 364, 370 (1966)); *see also Rainbow Sch., Inc. v. Rainbow Early Educ. Holding LLC*, 887 F.3d 610, 617 (4th Cir. 2018); Fed. R. Civ. P 45(g).

All four requisite elements for civil contempt are met here. *See S. Coal Corp. v. Brickstreet Mut. Ins. Co*., Civil Action No. 7:19-cv-00457, 2024 U.S. Dist. LEXIS 32356, at *5 (W.D. Va. Feb. 26, 2024) (citing *De Simone v. VSL Pharms., Inc*., 36 F.4th 518, 529 (4th Cir. 2022)).

### 1) AiPi had knowledge of this Court's Order

Element 1 for civil contempt is "the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge." *Brickstreet, supra*, at *5. It is beyond dispute that AiPi had actual knowledge of this Court's Order. AiPi's counsel appeared at the hearing and received notice through the Court's ECF system; AiPi produced documents and a privilege log in response to that Order; and Morehouse submitted a declaration describing his limited efforts to comply with that Order.

### 2) The Court's Order was in Netflix's favor

Element 2 for civil contempt is "the decree was in the movant's favor." *Brickstreet, supra*, at *5. This element is satisfied. *See* Order, 15:3-21.

### 3) AiPi violated the Court's Order and had constructive knowledge of its violation

Element 3 for civil contempt is "the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (or at least constructive knowledge) of such violations." *Brickstreet, supra*, at *5. This Court should have "no difficulty" finding AiPi violated this Court's Order and has knowledge thereof. *See Buffalo Wings Factory, Inc. v. Mohd*, No. 1:07cv612 (JCC), 2008 U.S. Dist. LEXIS 82247, at *32 (E.D. Va. Oct. 15, 2008). AiPi's "attempts to comply have been, thus far, late, half-hearted, and insufficient." *Id*. AiPi's obdurate production is sufficient to find constructive knowledge of its violation of this Court's Order. *Id*.

Further, AiPi is comprised of attorneys with more than 100 years of legal experience. Morehouse was admitted to the Virginia bar in 2003 and the D.C. bar in 1995, among other admissions. Sheets was admitted to the Virginia bar in 1999, among other admissions. Lund was admitted to the USPTO in 2021, among other admissions. Weinstein was admitted to the USPTO in 1998, among other admissions. Giammittorio was admitted to the Virginia bar in 1988.[11]  All

---

[11]    *See*    https://web.archive.org/web/20230817111619/https://aipisolutions.com/who-we-are/, https://web.archive.org/web/20231209021913/https://aipisolutions.com/who-we-are/

are deeply experienced patent litigators. There is no question that these lawyers understand an order compelling a full and complete production and an admonition against unfounded privilege allegations.[12]

### 4)   Netflix has suffered cognizable harm

The final element is "the movant suffered harm as a result." *Brickstreet, supra*, at *5.  The attorneys' fees Netflix expended for attempting to obtain AiPi's compliance with this Court's Order, and bringing this Motion, constitutes cognizable harm. *Mt. Valley Pipeline, LLC v. Easements To Construct, Operate, & Maintain A Nat. Gas Pipeline*, No. 7:17-cv-00492, 2018 U.S. Dist. LEXIS 75780, at *52-53 (W.D. Va. May 4, 2018) (finding that the harm element was satisfied where "MVP has incurred attorneys' fees in having to prosecute the contempt motion").

Further, Netflix has suffered "informational harm" because it continues to be prejudiced by AiPi's withholding of evidence that is relevant to Netflix's Section 285 claim for fees against AiPi. *See De Simone*, 36 F.4th at 535.  Netflix has certainly suffered harm in the lengthy delay to the NDCA Litigation.

Netflix has established each requisite element, based on this record before the Court, and therefore respectfully requests an order finding AiPi in civil contempt.

### E.  Netflix Respectfully Requests Briefing On the Privilege Issues

In addition to the remedies discussed in Section IV, *infra*, Netflix seeks briefing on AiPi's privilege allegations.[13] Fact discovery is set to close on March 27, 2025 in the NDCA Litigation

---

[12] Further, AiPi's intent is irrelevant. *Telecomm. Sys. v. Mobile* 365, Inc., No. 3:06CV485, 2009 U.S. Dist. LEXIS 126761, at *11 (E.D. Va. Mar. 31, 2009) (collecting cases).

[13] While AiPi and Ramey signed an Engagement Agreement saying AiPi would do "all" of the legal work, at least in the NDCA Litigation, Ramey appears to have done substantial work later in the case. It is possible AiPi and Ramey entered into a subsequent agreement. Any subsequent agreement modifying the original Engagement Agreement must be produced. Netflix has requested same, should it exist.

and there is no guarantee Judge Tigar will extend the schedule for a fourth time. The alleged privilege issues should be decided now. Especially where, as here, AiPi's multiple crimes are likely to prevent any privilege (assuming *arguendo* one existed) from attaching. *Rambus, Inc. v. Infineon Techs. AG*, 222 F.R.D. 280, 287 n.18 (E.D. Va. 2004) ("[I]n order to establish the applicability of the attorney-client privilege, the proponent must show, *inter alia*, that the communication was not made 'for the purpose of committing a crime or tort.'") (citing *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998)).

Regarding CUVTA, none of the AiPi communications related to CUVTA should be privileged. *Galaxy CSI, LLC v. Galaxy Comput. Servs., Inc. (In re Galaxy Comput. Servs., Inc.)*, Civil Action No. 04-07-A (LMB), 2004 U.S. Dist. LEXIS 28162, at *1, *5–6 (E.D. Va. Mar. 31, 2004); *Carbajal v. Hayes Mgmt. Serv*., No. 4:19-cv-00287-BLW, 2022 U.S. Dist. LEXIS 130744, at *55 (D. Idaho July 21, 2022). As such, CUVTA-related email should be produced. *See, e.g*., Nemiroff Decl., Exhs. B-C, PLE Nos. 62, 67, 69.

Moreover, perjury is a crime. *Fennell v. Town of Pocahonta*s, No. 1:05CV00045, 2005 U.S. Dist. LEXIS 19007, at *13 (W.D. Va. Sep. 2, 2005) ("Perjury is a crime[.]") Morehouse submitted at least one perjurious declaration. In his July 22, 2024 declaration submitted to this Court, Morehouse averred, "AiPi has not transferred any settlement proceeds to CDN." ECF 17-2 ¶ 9. That statement is demonstrably false. Lamkin Decl., Exhs. A, N. Morehouse may also have committed perjury when he told this Court there were "thousands" of responsive documents when trying to quash Netflix's subpoena. ECF No. 17-2, at ¶ 8.[14]

---

[14] AiPi cannot be heard to say that Morehouse was describing documents responsive to an earlier served and broader subpoena when AiPi consistently represented to this Court that the current subpoena at-issue is even "broader" than the subpoena Morehouse was referring to. *See, e.g.,* ECF Nos. 35-1, at 2; 46, at 2; 46, at 20.

Morehouse's January 15, 2025 declaration also contains demonstrably false statements, including that "AiPi has produced all documents containing 'CDN.'" *Compare* Lamkin Decl., Exh. F ¶ 4(b) *with* Exh. G.

Erik Lund committed perjury when he repeatedly swore to Judge Tigar that neither he nor AiPi performed legal services for Valjakka. ECF No. 11-2 ¶¶ 10-12. The Ramey/AiPi Engagement Agreement and Valjakka Litigation Plan make clear that AiPi will be providing legal services. Lamkin Decl., Exhs. J-K. To be clear, these Agreements do not state that AiPi will "support" Ramey, they do not say that Ramey will review AiPi's work product. They say the opposite: AiPi will do all legal work.

AiPi's privilege log appears to confirm that Erik Lund did in fact draft Valjakka's complaint and infringement charts, for example. *Compare* Nemiroff Decl., Exhs. B-C, PLE Nos. 1,4 *with* Lund Decl. ¶ 10; *see also* Zito Decl., ECF No. 21-2, Exh. I ¶ 5 ("In November of 2021, Morehouse said he wanted to work with [Ramey] and Ramey LLP. He [Morehouse] proposed a financial arrangement whereby Ramey LLP would enter the appearances and assist with case work but his [Morehouse's] internal attorneys and staff would handle the majority of the drafting, including discovery.").

Lund and Morehouse's perjury, perpetrated upon this Court and upon Judge Tigar, was done in furtherance of several schemes, including (i) preventing Netflix from obtaining discovery to which it is entitled, (ii) preventing Judge Tigar from joining AiPi to the NDCA Litigation, and (iii) keeping their illegal business structure with William Ramey secreted from the courts. Thus, any communications in furtherance of those schemes are not privileged and should be produced.

Further, Morehouse and Lund's perjury before this Court should undermine any claim to privilege over documents pertaining to the subjects of their perjury, including (1) AiPi's role in

providing legal advice in the Valjakka litigations, such as the material decisions related to Netflix's upcoming § 285 fees motion (Topic Nos 4-5), and (2) the search for and collection of documents responsive to this Court's Order and Netflix's subpoena.

Finally, the unauthorized practice of law is a crime. *Rutledge v. City of Danville*, No. 4:13-cv-00066, 2013 U.S. Dist. LEXIS 172934, at *2-3 (W.D. Va. Dec. 9, 2013) ("[T]he unauthorized practice of law is a Class 1 Misdemeanor in the Commonwealth of Virginia."). As such, again, communications and documents pertaining to AiPi's role in providing legal advice in the Valjakka litigations, including the material decisions related to Netflix's upcoming § 285 fees motion (Topic Nos 4-5) are not privileged.

Netflix respectfully requests briefing on these issues to ensure that a ruling can be obtained, and AiPi's compliance ensured, prior to the March 27, 2025 discovery cut-off in the NDCA Litigation.

### F. AiPi's Litigation Misconduct Warrants An Order Mandating Forensic Discovery

#### 1) AiPi is committing perjury and fraud upon the courts at a national scale

For the first time in this litigation, AiPi produced its Engagement Agreement with Ramey. Lamkin Decl., Exh. J (Under Seal). The Agreement demonstrates that the members of AiPi have committed the unauthorized practice of law, perjury, and fraud upon courts on a grand scale. This scheme—just discovered—is relevant to each of the issues raised in this Motion and to attorneys' fees in the underlying NDCA Litigation.

AiPi's Engagement Agreement with Ramey expressly states that AiPi, not Ramey, will do "***all*** drafting of documents, legal work and research[.]" Lamkin Decl., Exh. J, at 1-2 (emphasis added). Under this Agreement, Ramey is a ventriloquists' doll, mouthing AiPi's legal work to the courts.

AiPi also produced its Litigation Plan with Valjakka, which also makes clear that AiPi will do all "substantive" legal work in each of the Valjakka's cases, including expressly against Netflix. Lamkin Decl., Exh. K.

Ramey appeared on behalf of AiPi and AiPi-backed plaintiffs in one hundred and forty (140) litigations under this Agreement. Lamkin Decl., Exhs. L, M (*California Innovations v. Ice Rover*, 1:22-cv-01986-RM-NRN, ECF Nos. 61-1, 61-2 (D. Colo. Dec. 12, 2023) (Ramey Decl. listing all AiPi/Ramey cases)). As Judge Neureiter rightly suspected in one of the Ramey/AiPi cases:

> The Court has received attorney William Ramey's Response (Dkt. #61) to the Show Cause Order (Dkt. #58) regarding whether Mr. Ramey should be referred to the Court's Committee on Conduct for his neglectful behavior in this case. (Dkt. #58). Mr. Ramey's response raises more questions than it answers. These questions include the scope of the relationship between Ramey LLP, Mr. Eric Morehouse, and Whitestone Law, PLLC ("Whitestone") (formerly "AiPi LLC"); and whether Mr. Ramey was essentially acting as "straw man" (or "straw lawyer") by filing cases under his name on behalf of other lawyers or a law firm that was expected to do the work without Mr. Ramey or Ramey LLP's meaningful involvement, and without Mr. Ramey or Ramey LLP having any meaningful connection with the clients on behalf of whom the suits were being prosecuted.
>
> . . .
>
> The Court has serious concerns about the arrangements outlined in Mr. Ramey's declaration—whether they are consistent with a lawyer's obligations to his clients and the Court under the Colorado Rules of Professional Conduct, and whether such an arrangement in this matter has interfered with the fair administration of justice.

*California Innovations,* No. 1:22-cv-01986-RM-NRN, ECF No. 65.[15]

Judge Neureiter was unable to confirm his suspicions as AiPi submitted a false declaration in response (ECF No. 21-2, Exh. I) and the case settled thereafter. But he was absolutely correct,

---

[15] Netflix respectfully asks this Court to take judicial notice of the court documents in other AiPi/Ramey cases. *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 397 (4th Cir. 2006) (stating courts may take judicial notice of court records) (citing *Gasner v. Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995)).

Ramey was the "straw man" for AiPi and AiPi was expected to do the legal work without Ramey's "meaningful involvement." And under the Ramey/AiPi Engagement Agreement, their fraud upon the courts was to be repeated one hundred and forty (140) times. Lamkin Decl., Exh. J, at 7 ("The above list is not intended to be exhaustive and it is AiPi's intention to pursue as many case groups of both tiers as possible with Ramey & Schlvaller."); *id.*, Exhs. L, M.[16]

The relevance and materiality of the scheme being perpetrated on the courts by AiPi (and Ramey) to these proceedings include: (1) it evidences that AiPi is engaged in the unauthorized practice of law, undermining any claim to privilege; (2) the scheme and perjury therein will be considered by Judge Tigar as part of Netflix's § 285 fees motion and thus necessarily expands the scope of Netflix's Rule 45 subpoena as explained by this Court in its Order (*see, e.g.*, 3:11-15, 14:13-21, 14:22-15:2); and (3) the existence of the scheme itself and the multiple perjurious declarations filed by Ramey and AiPi before courts across this country demonstrate the need for forensic discovery here.

Under controlling caselaw, AiPi's scheme must be considered in Judge Tigar's § 285 attorneys' fees calculus in the underlying NDCA Litigation. *Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1183 (Fed. Cir. 2018) ("In considering the 'totality of the circumstances' in a § 285 motion, a party's similar conduct in other litigation is also relevant.") (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). Further, all told, AiPi's scheme—just disclosed—is relevant to nearly every issue raised in this Motion.

2) <u>AiPi is committing the unauthorized practice of law</u>

Under its contracts with Ramey and Valjakka and as demonstrated by the evidence cited herein, AiPi is clearly practicing law, but it is not a law firm. As such, it and its members are

---

[16] Judge Neureiter's order contains one error: AiPi did not become Whitestone. They are separate entities (though with considerable overlap in personnel).

engaged in the unauthorized practice of law. Va. Sup. Ct. R. 1A:5(e); *Richmond Ass'n of Credit Men v. Bar Ass'n of City of Richmond*, 167 Va. 327, 336, 189 S.E. 153, 158 (1937); Va. Code Ann. § 54.1-3904 (citing *Richmond*); *see also Capital Associated Indus. v. Stein*, 922 F.3d 198 (4th Cir. 2019) (affirming a finding of the unauthorized practice of law under North Carolina law on similar facts: a non-law firm, employing attorneys, providing legal services outside their organization). The unauthorized practice of law is a crime. *Ronsdorf v. Raiffeisenbank Dornbirn Reg. Gen. M.B.H.*, 63 Va. Cir. 499, 500 (Cir. Ct. 2003) ("Unauthorized practice of law can constitute a Class 1 misdemeanor under the law of Virginia."). These crimes present yet another reason why AiPi's communications and work product in furtherance of its scheme (and its "exceptional" conduct pursuant to 35 U.S.C. § 285) are not privileged.

### 3) AiPi used Netflix's confidential financial information, clearly designated Highly Confidential Outside Counsel Only

AiPi produced an email sent by Ramey to AiPi with the subject "here are the Netflix financials." Lamkin Decl., Exh. O (Under Seal). Ramey notes in the body of the email "please treat as AEO." *Id*. The document includes detailed and highly confidential financial information belonging to Netflix. Ramey never should have sent the AEO financials to AiPi, especially given that AiPi is a litigation funder. And AiPi should have immediately deleted the Highly Confidential AEO financials. But instead, it appears that AiPi used Netflix's AEO information as part of AiPi's work product in the Valjakka Campaign. *See* Privilege Log, PLE Nos. 10-11; *see also id*., at 22, 68 (discussing AEO documents). AiPi's possession and use of Netflix's AEO financial information is highly concerning, given its status as a litigation funder and its demonstrated disregard for the law.[17]

---

[17] During the pre-filing meet and confer, AiPi stated, "Mr. Morehouse has indicated that he has not used this document for any purpose, including within the lawsuit. He also has no recollection

4)  Underline AiPi's conduct, including gamesmanship, improper withholding, and multiple instances of perjury, necessitates forensic discovery

Forensic imaging of computer devices ("forensic discovery") is not uncommon in civil litigation. *IHS Global Ltd. v. Trade Data Monitor LLC*, 2019 U.S. Dist. LEXIS 220327 at *9, 2019 WL 7049687 at *3 (D.S.C. Dec. 23, 2019) ("[F]orensic imaging is not uncommon in the course of civil discovery.") (quoting *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008)); *Delta T, LLC v. Williams*, 337 F.R.D. 395, 400 (S.D. Ohio 2021) (accord)).

AiPi's discovery conduct makes clear the need for forensic discovery. *See Drueding v. Travelers Home and Marine Insurance Co.*, 22-cv-00155-LK, 2022 WL 17092736, at *6 (W.D. Wash. Nov. 21, 2022) ("Ms. Drueding's repeated misrepresentations and foot-dragging raise serious concerns about her future efforts to comply with discovery obligations in good faith and lead the Court to conclude an independent forensic examination of her electronic devices is necessary and appropriate."). AiPi's conduct to date has already been strongly admonished by this Court, and its egregiously deficient response to this Court's Order only bolsters this conclusion. *See* Order, 16:17-19 ("If that case were before me on these facts, I'd be finding it's an extraordinary case. This is not how patent litigation should be done in this country."); *see also id.* at 12:7-12 (describing Valjakka's and AiPi's litigation tactics as "illegal extortion").

As such, Netflix requests permission to conduct forensic discovery of AiPi. *See IHS Glob.*, 2019 U.S. Dist. LEXIS 220327, at *17; *see also Rainbow Sch.*, 887 F.3d at 617 (affirming the trial court: "the court invoked its broad discretion to craft an appropriate remedy and ordered the appointment of a 'temporary, independent auditor [to] help resolve these questions and bring [Early Education's] business activities into compliance with the injunction to the extent that this

---

of reviewing the document at issue. He is willing to sign a statement to that effect."  Mr. Morehouse received emails with Lund and Sheets' use of Netflix's AEO financials. Nemiroff Decl., Exhs. B-C, PLE Nos. 10-11.

can reasonably be accomplished'"). Said imaging should include the imaging of all computers used by members of AiPi from, at least, June 1, 2021 to the present.

## IV. REMEDIES SOUGHT

"The appropriate remedy for civil contempt is within the court's broad discretion[.]" *Redner's Mkts.*, 608 F. App'x at 131. Here, based on AiPi's conduct, Netflix requests the following remedies:

(1) Full and complete discovery, including:

    a.  A full and complete production responsive to Netflix's subpoena Topics.

    b.  Discovery into AiPi's use of Netflix's AEO financial information.

    c.  A third-party expert to conduct forensic discovery, including the imaging of all computers used by members of AiPi from, at least, June 1, 2021 to the present.

    d.  The production of a complete and proper privilege log concurrent with the (1)(a) production.

    e.  Briefing on the privilege issues after the (1)(a) production.

    f.  A deposition of AiPi covering the topics in (1)(a), *supra*, before March 3, 2025.

## V. THE PARTIES' MEET AND CONFER DID NOT ADDRESS NETFLIX'S CONCERNS

AiPi's Court-ordered production occurred on Friday, December 27, 2024. On Monday December 30, 2024, Netflix wrote to AiPi and asked AiPi to immediately identify all persons that accessed Netflix's AEO financials. Lamkin Decl., Exhs. B, D. AiPi still has not provided the requested information.

Netflix also raised many concerns with AiPi's document production that still have not been addressed. *See* Lamkin Decl., Exhs. B-E. Indeed, Morehouse provided a declaration explaining his search methods that raises more concerns that it alleviates. *Id.*, at Exh. F. Nonetheless, during its

January 15, 2025 meet and confer with AiPi pertaining to this Motion, Netflix told AiPi that it would inform the Court as to any efforts AiPi made to rectify Netflix's concerns over the next ten (10) days in anticipation of the January 24, 2025 hearing.

As to AiPi's privilege log, during the pre-filing meet and confer, AiPi stated that it would simply produce all of the documents on said log if Netflix signed a stipulation stating that said production did not amount to a subject matter waiver. AiPi also said Netflix could argue the full scope of waiver over any documents sought that were privileged but not currently on AiPi's privilege log. But, AiPi's proposed solution favors AiPi and harms Netflix. First, it harms Netflix greatly to give up its rights to a subject matter waiver. And, Netflix would still have to engage in litigation over documents not yet properly listed on AiPi's privilege log, of which there are many, *supra*. Netflix declined AiPi's proposed "solution," but will continue to try to find areas of compromise before the noticed hearing.[18]

## VI.    CONCLUSION

For the reasons stated herein, Netflix respectfully requests the remedies detailed in Section IV, *supra*.


Dated: January 17, 2025                              Respectfully submitted,

                                                     */s/ Cailyn Reilly Knapp*
                                                     Cailyn Reilly Knapp (VA Bar No. 86007)
                                                     BAKER BOTTS L.L.P.
                                                     700 K Street N.W.
                                                     Washington, DC 20001
                                                     Tel: (202) 639-7753
                                                     Fax: (202) 585-4070
                                                     Email: cailyn.reilly.knapp@bakerbotts.com

---

[18] AiPi produced eight (8) documents late last night. Netflix will review and provide a summary of the documents in its Reply to this Motion to be filed next week.

Rachael Lamkin (admitted *pro hac vice*)
BAKER BOTTS L.L.P.
101 California Street, Suite 3200
San Francisco, CA 94111
Tel: (415) 291-6264
Fax: (415) 291-6364
Email: rachael.lamkin@bakerbotts.com

*Counsel for Respondent Netflix, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th of January, 2025, I electronically filed a copy of the foregoing with the Clerk of Court using the Court's CM/ECF System which will send notification of such filing to all registered filers.  I also caused the foregoing to be served by electronic mail on the following:

Brendan J. Klaproth (VSB No. 97494)
**Klaproth Law PLLC**
2300 Wisconsin Avenue, NW
Suite 100A
Washington, DC 20007
202-618-2344
Fax: 202-618-4636
Email: bklaproth@klaprothlaw.com

*Counsel for Movant AiPi, LLC*

*/s/ Cailyn Reilly Knapp*
Cailyn Reilly Knapp (VA Bar No. 86007)
BAKER BOTTS L.L.P.
700 K Street N.W.
Washington, DC 20001
Tel: (202) 639-7753
Fax: (202) 585-4070
Email: cailyn.reilly.knapp@bakerbotts.com

*Counsel for Respondent Netflix, Inc.*