# EXHIBIT H

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

AiPi, LLC

    Movant,

    v().

Netflix Inc.,

    Respondent.

Case No. 1:24-mc-00002 (LMB/WEF)

## REPLY BRIEF IN SUPPORT OF
## AIPI, LLC'S MOTION TO QUASH SUBPOENA

AiPi, LLC ("AiPi") respectfully submits this reply brief in support of its Motion to Quash a Subpoena issued by Netflix, Inc. ("Netflix") (ECF No. 17) in the pending lawsuit in the Northern District of California, *Lauri Valjakka v. Netflix Inc.,* Case No. 4:22-cv-01490-JST ("*Netflix Litigation*").

## ARGUMENT

Netflix's Opposition (ECF No. 21), and its Notice of Supplemental Information (ECF No. 23), has crystallized the issues for the Court, requiring that the subpoena be quashed. Each of the issues are set forth below.

**I. Netflix's Subpoena Seeks Irrelevant Information and is Issued for an Improper Purpose**

In opposing the motion to quash, Netflix has revealed its true intentions in issuing the subpoena. In its Opposition, Netflix argues:

> AiPi ***may*** be liable: (1) under the California Uniform Fraudulent Transfer Act ("CUVTA") for its possible participation in or dominion over Mr. Valjakka's fraudulent transfers in the underlying patent litigation in the Northern District of California ("NDCA Litigation"); (2) for some or all of Netflix's attorneys' fees in the NDCA Litigation; and (3) for violating Judge Tigar's preliminary

> injunction, enjoining the patentee Mr. Valjakka and those acting in
> concert with Valjakka.

Opp'n at 1 (emphasis added). Netflix is even clearer in its Notice of Supplemental Information wherein it states in an email to the plaintiff in the *Netflix Litigation*:

> As we have stated publicly, **the purpose of the subpoena is to determine AiPi's liability under CUVTA**, **AiPi's liability for Netflix's attorneys' fees**, and to ascertain **whether AiPi violated Judge Tigar's preliminary injunction**.

ECF No. 23 at 1 (citing Exhibit A) (emphasis added).

Netflix must have forgotten the claims it is litigating in the *Netflix Litigation* and the basic maxim of Rule 26. A party may only obtain discovery "regarding any **nonprivileged** matter that is **relevant** to any party's **claim or defense** and proportional to the needs of the case…" Fed. R. Civ. P. 26(b)(1). AiPi is not a party to the *Netflix Litigation* and Netflix has no claims against AiPi under CUVTA or for attorneys' fees in that lawsuit. Whether AiPi has any potential liability as argued by Netflix is not at issue in the *Netflix Litigation*. Thus, the "purpose of the subpoena," as proclaimed by Netflix, is not intended to seek *relevant* information to any claim or defense in the *Netflix Litigation*.

And this is especially important because the court in the *Netflix Litigation* has already rejected Netflix's attempts to join AiPi in the *Netflix Litigation*. Indeed, Netflix moved to join AiPi to the *Netflix Litigation*, but the court there denied the motion finding that "[b]ecause Netflix does not allege any transfer from Valjakka to AiPi after Valjakka's potential liability to Netflix became known, Netflix has not stated any right to recover from AiPi as a transferee, initial or otherwise. Therefore, AiPi is not a necessary party." *Netflix Litigation*, ECF No. 284 at 8. The court further denied Netflix's motion for contempt wherein it alleged that AiPi violated the

preliminary injunction. The court found there was no evidence that AiPi aided and abetted any such transfers in violation of the preliminary injunction. *Netflix Litigation*, ECF No. 284 at 5-6.

Furthermore, although the court did not reach the question of personal jurisdiction, the court in the *Netflix Litigation* found that if it did, it would find "it does not have jurisdiction over AiPi because Netflix has not shown that AiPi did anything 'causing harm that [it] knows is likely to be suffered in the forum state." *Id.* 8 (citing *Doe v. WebGroup Czech Republic, a.s.*, 93 F.4th 442, 452 (9th Cir. 2024)).[1]

As such, the court firmly rejected Netflix's efforts to inject AiPi into the *Netflix Litigation*. Dissatisfied with that decision, Netflix is pursuing a subpoena against AiPi, not related to any claim or defense in the litigation, but instead to determine whether AiPi has any liability towards Netflix. This is improper. If Netflix had a viable claim against AiPi, then the court would have granted Netflix's request to join AiPi in the litigation. But it did not. Accordingly, whether AiPi has any liability towards Netflix is not relevant to any claim or defense in the *Netflix Litigation*.

Thus, the subpoena should be quashed because it does not seek relevant information or documents, and is issued for an improper purpose. *In re ThompsonMcMullan, P.C.*, Civil Action No. 3:16-MC-1, 2016 U.S. Dist. LEXIS 35172, at *18 (E.D. Va. Mar. 17, 2016) ("subpoenas must impose parameters limiting the subpoena's scope to evidence relevant in the underlying litigation. Without such parameters, the subpoena is overbroad or seeks irrelevant information, and imposes an undue burden."); *see also Singletary v. Sterling Transp. Co.,* 289 F.R.D. 237, 241 (E.D. Va. 2012) ("the Court may quash a subpoena duces tecum as overbroad if it 'does not limit the [documents] requested to those containing subject matter relevant to the underlying action.'")

---

[1] It begs the question, if there is no personal jurisdiction over AiPi in California how could the California Uniform Voidable Transactions Act possibly apply to AiPi?

And as a final point, all of the documents Netflix seeks to obtain with the subpoena could be obtained from the plaintiff in the *Netflix Litigation*. The reality is that the court in the *Netflix Litigation* has not compelled, and would not likely compel, the plaintiff to produce his communications with his lawyers and with AiPi. As discussed *infra*, Netflix was required to seek this information from a party to the case before resorting to third party discovery.

## II. Netflix's Subpoena Seeks Privileged Information

Netflix argued in its Opposition, that the common interest privilege cannot apply because it is not a "stand-alone privilege" and that Valjakka (the holder of the privilege) has not asserted the attorney-client privilege or work-product privilege. Opp'n at 8-9. To Netflix's credit, it communicated with the plaintiff, Lauri Valjakka, to ascertain whether he was asserting privilege over the subpoenaed information. Notice of Supplemental Information at Ex. A (ECF No. 23-1). Valjakka's lawyer replied that he was asserting the privilege:

> Dear Rachel,
>
> Apologies for late reaction.
>
> Lauri does not oppose AiPi rule 45 discovery as long as it will not cover issues/documents that are protected by client-attorney privilege between:
> - Lauri and Bill Ramey / Ramey´s law firm
> - Lauri and AiPi
> - Lauri and Whitestone.

*Id.* This should put that issue to rest.

## III. The Common Interest Privilege Extends to all Communications and Work Product with AiPi

The attorney-client and work-product privileges extend to all communications under the common interest privilege between Valjakka, his attorney, and AiPi. *See Hunton & Williams v. United States DOJ,* 590 F.3d 272, 274 (4th Cir. 2010) (hereinafter *"Hunton"*); *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1298 (D.C. Cir. 1980) (hereinafter *"AT&T"*). The common

4

interest privilege "enables parties with a shared legal interest to pursue a joint legal strategy." *Hunton*, 590 F.3d at 274. The "doctrine permits parties whose legal interests coincide to share privileged materials with one another in order to more effectively prosecute or defend their claims." *Id.* at 277. Here, there is a written agreement between Valjakka and AiPi that they have a "common interest." *See* Decl. of Morehouse at ¶¶ 5-6 (ECF No. 17-2). As stated in it is Motion, AiPi will produce the agreement for an in-camera review.

Despite this, Netflix argues that the common interest privilege cannot apply because AiPi and Valjakka's interest are adverse. Opp'n at 9. With circular logic, Netflix argues that because Netflix has claims against Valkjakka and AiPi (it does not), "Valjakka and AiPi's interests are directly adverse because liability with respect to CUVTA and/or attorneys' fees is 'zero-sum,' where any liability that attaches to AiPi reduces any relief sought from Valjakka, and *vice versa*." *Id.* at 10.[2] In other words, according to Netflix, the common interest privilege is defeated simply because Netflix believes it has claims against AiPi and Valjakka. This is flawed logic though. If that were the case, then there would be no such thing as a joint defense agreement among co-defendants. Nonetheless, as set forth in the written agreement, AiPi and Valjakka did in fact have a common interest in pursuing patent infringement claims, including claims against Netflix. Decl. of Morehouse at ¶¶5-7. And because of this common purpose, the parties entered into an agreement

---

[2] Netflix also cites to the order in which the court disqualified Whitestone Law from representing AiPi when it had previously represented Valjakka. But an ethical conflict of interest for a lawyer does not mean that the Parties interests are adverse. For example, although Zito was disqualified from representing AiPi and Valjakka, that does not mean that AiPi and Valjakka do not have a common interest in defending against Netflix's claims against both of them. An example of this is when Netflix alleged that AiPi aided and abetted Valjakka in violating the preliminary injunction. Obviously both AiPi and Valjakka shared a common interest in establishing that Valjakka did not violate the preliminary injunction and both opposed the motion.

5

to share privileged information and work product with the express understanding that the privilege would not be waived. *Id.*

Next, Netflix argues that the common interest does not apply because the relationship between AiPi and Valjakka is not "legal in nature." Opp'n at 10. Providing no analysis, Netflix argues in a conclusory fashion that the relationship between AiPi and Valjakka is instead a business relationship. *Id.* But Netflix fails to account for the fact that for the privilege to apply "parties must share a common interest about a **legal matter**." *United States v. Aramony,* 88 F.3d 1369, 1392 (4th Cir. 1996) (emphasis added). Valjakka and AiPi easily satisfy this test as they had a "'common legal interest' in purusing claims against potential [patent] infringers" and even signed a "Litigation Plan." Decl. of Morehouse at ¶ 5 (ECF No. 17-2).

Finally, relying on an unreported decision from the U.S. District Court of Illinois, Netflix argues that AiPi "must instead assert the common interest doctrine on a document-by-document basis." Opp'n at 11. Netflix is incorrect. In situations like this, where the documents sought are categorically privileged, a party can categorically assert the privilege. *Mayor & City Council of Balt. v. Unisys Corp., No*. JKB-12-614, 2014 U.S. Dist. LEXIS 206018, at *4 (D. Md. June 6, 2014). Indeed, "[a] categorical log may be used in place of a traditional, itemized log 'where (a) a document-by-document listing would be unduly burdensome and (b) the additional information to be gleaned from a more detailed log would be of no material benefit to the discovering party in assessing whether the privilege claim is well-grounded.'" *Id.* (quoting *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 255 F.R.D. 98, 109 (S.D.N.Y. 2008). "[W]here voluminous documents are claimed to be privileged, a categorical description may be more appropriate than a log that lists particularized details." *Id.* (citing Fed. R. Civ. P. 26 Commentary). And this makes sense. If AiPi were to subpoena Netflix's attorneys for all of their communications with Netflix, Netflix would

not need to do a document-by-document assertion of privilege, and log all of those documents. The same rings true here with respect to the common interest privilege.

Here, all of the documents at issue arise from the written agreement between AiPi and Valjakka establishing the common interest privilege, and the subsequent litigation that flowed from that agreement. Decl. of Morehouse at ¶¶6-8. There are no responsive documents other than those disclosed under the common interest privilege. *Id.* As discussed below in Section V, to require AiPi to log every single communication is unnecessary and unduly burdensome. Thus, AiPi's categorical assertion of the privilege is appropriate.

Because the documents and information sought by Netflix's subpoena are protected by the common interest privilege, the subpoena must be quashed.

### IV. AiPi Properly Invoked the Privilege by Moving to Quash the Subpoena

Netflix next makes the peculiar argument that although AiPi filed a timely motion to quash the subpoena on the basis of privilege, it somehow waived privilege by not also serving written objections. Opp'n at 7. Netflix misapprehends the mechanics of Rule 45. According to Netflix, the privilege is waived if a party does not serve objections to a subpoena under Rule 45(d)(2)(B). Opp'n at 7. While a party can serve written objections, which then shifts the burden to the party issuing the subpoena to then move to compel compliance with the subpoena, it is not required in order to assert the privilege. *See* Rule 45(d)(2)(B). Notably, the language in Rule 45(d)(2)(B) states a party "***may*** serve…written objections."  In the alternative though, the party served with the subpoena can move to quash if the subpoena "requires disclosure of privileged or other protected matter…" Rule 45(d)(3). The case law is aligned with the plain text of Rule 45.[3] *Judicial Watch,*

---

[3] In each of the cases cited by Netflix, the subpoenaed party did not file a timely motion to quash the subpoena. So they have no application here.

7

*Inc. v. United States DOC*, 34 F. Supp. 2d 47, 56 (D.D.C. 1998) ("The appropriate means of objecting to a subpoena is by timely written objection or by timely motion to quash or modify the subpoena"); *Long v. City of Concord,* No. 5:21-CV-201-D, 2022 U.S. Dist. LEXIS 205701, at *2-3 (E.D.N.C. Nov. 14, 2022) ("In response to such a subpoena, a non-party may either file a motion to quash or modify the subpoena pursuant to Fed. R. Civ. P. 45(d)(3)(A), move for a protective order pursuant to Fed. R. Civ. P. 26(c), or oppose a motion to compel production of the subpoenaed documents pursuant to Fed. R. Civ. P. 45(d)(2)(B)"). Here, there is no dispute that AiPi timely filed its motion to quash the subpoena. Thus, its assertion of privilege has not been waived. And the fact that Netflix would even make this argument in response to a timely filed motion to quash demonstrates the vacuity of its position regarding the subpoena.

**V.   The Subpoena Issued by Netflix is Unduly Burdensome**

As a final point, in its continued insistence on AiPi creating an itemized privilege log for each document over which the privilege is asserted (*see supra*, it does not need to as the categorical assertion of the privilege is appropriate), Netflix argues that AiPi has not showed that the subpoena creates an undue burden that warrants cost-shifting. Opp'n at 15. Netflix cites to *Sziber v. Dominion Energy, Inc*., Civil Action No. 3:20-cv-117, 2021 WL 6332784, at *3 (E.D. Va. Sept. 14, 2021) wherein this Court found that a generalized assertion that "many hours, maybe weeks, of compiling documents" was insufficient to establish an undue burden. What Netflix does not account for though is that in *Sziber* there was no claim of privilege. *Sziber v. Dominion Energy, Inc*., 2021 WL 6332784, at *1. The issue there simply involved the time it would take the company to compile and produce the requested documents.

Here, there is a claim of privilege and Netflix is requesting that every document be logged. This requires an attorney to review and log each document. There are "thousands of documents

8

that would be responsive to the subpoena." Decl. of Morehouse at ¶ 8. So, to take an example, if there were five thousand documents (which is a conservative estimate), and 10 documents could be reviewed and logged per hour (6 minutes per document to review and log), then it would take 500 hours of attorney work product. At $700 per hour (which is also conservative relative to the hourly rate Netflix will presumably seek in its claim for attorney fees in the *Netflix Litigation*), the cost to create the privilege log would be $350,000. This is a significant burden on a small business like AiPi.

This burden is also completely unnecessary since all of the documents sought by the subpoena are necessarily in the possession of Valjakka, a party to the *Netflix Litigation*, and/or his former attorney. Specifically, each of the requests seek information regarding communications with Valjakka or his lawyers, Valjakka's patents, Valjakka's businesses, or Valjakka's litigation. Netflix has not requested this information from Valjakka in the *Netflix Litigation*. As stated above, the court in the *Netflix Litigation* has not compelled, and would not likely compel, the plaintiff to produce his communications with his lawyer or with AiPi. So, Netflix thought it found a workaround to attack the privileged information by subpoenaing AiPi. But *Sziber* tells us tactics like this do not work:

> if the party seeking discovery can obtain the information from another party in the litigation, it must do so rather than burden a nonparty with a subpoena request. Moreover, "the requesting party should be able to explain why it cannot obtain the same information, or comparable information that would also satisfy its needs, from one of the parties to the litigation—or, in appropriate cases, from other third parties that would be more logical targets for the subpoena

*Sziber*, 2021 U.S. Dist. LEXIS 250163, at *7-8. Having failed to show why Netflix cannot obtain this information from a party to the *Netflix* litigation, such as Valjakka or his lawyers, then it is not

9

entitled to seek this information from a third party, particularly given the significant burden imposed on the third party.

Accordingly, if the Court were to deny the motion to quash or require AiPi to log each of the documents, AiPi requests that the costs of compliance, including attorney fees, be shifted to Netflix under Rule 45(d). *See Hinterberger v. Am. Nurses Ass'n (In re Am. Nurses Ass'n),* 643 F. App'x 310, 314 (4th Cir. 2016) (ordering shifting of attorney fees necessary to the production of discovery materials).

## CONCLUSION

There is no secret what Netflix is up to by issuing the subpoena. It has unabashedly admitted that the subpoena was served to obtain information to pursue claims against AiPi, rather than claims or defenses in the underlying litigation. But it fails out of the gate, because a subpoena must be limited to documents containing subject matter to the underlying case. *Singletary,* 289 F.R.D. at 241. Because AiPi is not a party to the underlying case, the information sought is not relevant. In addition, even if the documents were relevant, Netflix cannot get past the next hurdle—privilege. All of the documents sought by the subpoena are categorically subject to the common interest privilege. This too requires that the subpoena be quashed. Finally, the subpoena poses a significant hardship on AiPi, a third party. Leaving the privilege aside, all of the information sought by the subpoena could be obtained from Valjakka or his lawyers. Netflix has not demonstrated that it has sought the information from a party to the litigation prior to seeking third party discovery. Thus, if AiPi is required to log each of the documents responsive to the subpoena, costs and attorney fees should be shifted to Netflix.

Dated: August 7, 2024  Respectfully submitted,

KLAPROTH LAW PLLC

*/s/* Brendan J. Klaproth
Brendan J. Klaproth
2300 Wisconsin Ave NW
Suite 100A
Washington, DC 20007
Tel: 202-618-2344
Email: bklaproth@klaprothlaw.com
*Counsel for AiPi, LLC*

11