William P. Ramey, III (appearance pro hac vice)
Email: wramey@rameyfirm.com
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, TX 77006
Telephone: (713) 426-3923
Fax: (832) 689-9175

*Attorney for Third-party William P. Ramey, III and Ramey LLP*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| LAURI VALJAKKA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>NETFLIX, INC.,<br><br>　　　　　Defendant. | Case No. 3:22-cv-01490-JST<br><br>**RAMEY LLP AND WILLIAM P. RAMEY, III'S RESPONSE TO MOTION FOR AN ORDER TO SHOW CAUSE AND SANCTIONS**<br><br>Judge: Hon. Jon S. Tigar |

# TABLE OF CONTENTS

I.   LEGAL STANDARD ................................................................................................. 1

II.  ARGUMENT ............................................................................................................. 2

    A.   Introduction ................................................................................................... 2

    B.   The Protective Order Allows Disclosure to the Whitestone Lawyers .................. 4

    C.   AiPi is Authorized as a Professional Vendor .................................................... 6

    D.   Ramey LLP Has Fully Cooperated With Netflix ............................................... 7

    E.   Netflix Shows No Harm Other Than its Self-Inflicted Expense ......................... 11

III. CONCLUSION ......................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992) ................ 13

*General Signal Corp. v. Donallco, Inc.,* 787 F.2d 1376 ............................................. 1

*In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361 (9th Cir.1987) ............. 1, 2

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693 (9th Cir. 1993) ................................................................................................................ 2, 12

*Life Techs. Corp. v. Biosearch Techs., Inc.*, No. C-12-00852 WHA JCS, 2012 WL 1600393 (N.D. Cal. May 7, 2012) ....................................................................... 2

No. 5:11-cv-01846-LHK, 2013 WL 9768650 (N.D. Cal. Oct. 2, 2013), *aff'd* 2013 WL 5693759 (Oct. 15, 2013) ............................................................................. 12

*Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.,* 689 F.2d 885 (9th Cir.1982) .... 1

Third parties, and former counsel, Ramey LLP and William P. Ramey, III respectfully file this response in opposition to Netflix, Inc.'s Motion for an Order to Show Cause and Sanctions against Plaintiff's Former Attorney, William Ramey and Ramey LLP ("Netflix's Motion"), showing the Court that Netflix's Motion is simply another delay tactic to avoid going to trial. It is to no one's surprise that employees of AiPi, LLC were also working as lawyers for Plaintiff Lauri Valjakka ("Valjakka"). In fact, Netflix and Mr. Valjakka have made numerous filings in this Court to establish that very fact.[1] Netflix's Motion is nothing more than another dilatory tactic to further prolong this case by conducting a further fishing expedition into attorney client communications and it should be denied.

## I. LEGAL STANDARD

Civil contempt in the context of a court ordered protective order consists of a party's disobedience to that specific and definite court-ordered protective order by failure to take all reasonable steps within the party's power to comply. The contempt "need not be willful," and there is no good faith exception to the requirement of obedience to a court order.[2]  However, a person should not be held in contempt if the action appears to be based on a good faith and reasonable interpretation of the court's order.[3] "Substantial compliance" with the court order is a defense to civil contempt, and is not vitiated by "a few technical violations" where every reasonable effort has been made to comply.[4]

The party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by clear and convincing evidence.[5]

In the event contempt is found, the award to the aggrieved party is limited to actual loss for

---

[1] Doc. No. 217 at 2-3, 8-9; Doc. No. 223-01 at ¶¶2-5.
[2] *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1353 (9th Cir.1987).
[3] *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.,* 689 F.2d 885, 889 (9th Cir.1982).
[4] *Id.* at 891; *see also General Signal Corp. v. Donallco, Inc.,* 787 F.2d 1376, 1378–79 (9th Cir.1986).
[5] *Vertex,* 689 F.2d at 889.

injuries which result from the noncompliance.[6] Such damages would not include the costs of a spare no expense, punitive discovery expedition by the aggrieved party, but rather must be tied to the noncompliance.[7] A court will order the payment of reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.[8]

## II.   ARGUMENT

### A.  Introduction

Netflix's Motion for Order to Show Cause is a classic example from Big Tech's playbook to weaken intellectual property rights and to deter others from enforcing their patent rights by unnecessarily increasing the costs of patent litigation. William P. Ramey, III and Ramey LLP were removed from this case on March 4, 2024, by Order of this Court based on nonpayment.[9] At that time, summary judgment had been granted against Plaintiff.[10] At the summary judgment hearing, the Court encouraged the parties to resolve this dispute, but Netflix sought to continue the case by joining a litigation services entity, AiPi, LLC, into the case, the entity that had quit paying Ramey LLP's legal fees and expenses.[11] However, the Court denied Netflix's attempt to join AiPi, specifically holding "there is no allegation of any transfer from Valjakka to AiPi after Valjakka became aware of Netflix's contingent claim for attorney's fees. Nor is there any such allegation in Netflix's motion for joinder…. Therefore, AiPi is not a necessary party."[12]

Now, almost a year later, to further extend the case, Netflix seeks to drag Mr. Ramey and Ramey LLP back into the case under the guise of a breach of a protective order. While Netflix's

---

[6] *Crystal Palace,* 817 F.2d at 1366.
[7] *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 696 (9th Cir. 1993).
[8] *Life Techs. Corp. v. Biosearch Techs., Inc.*, No. C-12-00852 WHA JCS, 2012 WL 1600393, at *8 (N.D. Cal. May 7, 2012).
[9] Doc. No. 277; Declaration of William P. Ramey, III ("Ramey Decl.") at ¶2.
[10] Doc. No. 257 (The Court found that Valjakka did not own the Patent-in-Suit and therefore could not have revived the abandoned application).
[11] Ramey Decl. at ¶2.
[12] Doc. 284 at 8.

1  outside counsel proclaims to have only recently discovered the alleged breach on December 27,
2  2024,[13] Mr. Ramey fully disclosed to Rachael Lamkin, counsel for Netflix, that each of Eric
3  Morehouse, Erik Lund and Ken Sheets had full access to Netflix's documents produced in discovery
4  no later than November of 2023.[14] Mr. Ramey explained that they were working at his control and
5  direction. In fact, each is also a lawyer at Whitestone Law, a firm that entered an appearance in this
6  case, a firm founded by Eric Morehouse and Erik Lund.[15] For Netflix's outside counsel to assert
7  otherwise is a deliberate misrepresentation to this Court and only meant to unreasonably and
8  vexatiously extend this litigation.

9     Ramey LLP withdraw from the case in part because AiPi quit properly funding its legal
10 expenses and fees.[16] At that point, Rachael Lamkin contacted Mr. Ramey to obtain any information
11 she could get on AiPi, knowing that Ramey LLP was adverse to AiPi.[17]

12    Ms. Lamkin and Mr. Ramey were opposing counsel on other matters before this case and had
13 numerous phone calls from May of 2023 until at least July of 2024 from her personal cell phone, as
14 shown in Exhibits D (sealed) and E (sealed). Exhibit D shows Mr. Ramey's cell phone records and
15 Exhibit D shows Mr. Ramey's office phone.[18] Ms. Lamkin's cell phone is the other party in each
16 of the highlighted cases. During the November 2023 conversations through July 2024, Ms. Lamkin
17 repeatedly told Mr. Ramey that she and the lawyers from Perkins Coie were interested in getting
18 AiPi joined in the case and did not care about Ramey LLP. She did add that Ms. Piepmeier wanted
19 to file a § 1927 motion directed towards Mr. Ramey at the end of the case, but other than that, they
20 simply wanted AiPi.[19]

21    During one of the several phone conversations in November of 2023, Ms. Lamkin and Mr.

---

[13] Doc. No. 302 at 7.
[14] Ramey Decl. at ¶3.
[15] Doc. No. 208; Ramey Decl. at ¶3.
[16] Doc. No. 260 at 3.
[17] Ramey Decl. at ¶5.
[18] Ramey Decl. at ¶5.
[19] Ramey Decl. at ¶5.

3
RAMEY LLP AND WILLIAM P. RAMEY, III'S RESPONSE TO
MOTION FOR AN ORDER TO SHOW CAUSE AND SANCTIONS
Case No. 4:22-CV-01490-JST

Ramey discussed the role of Eric Morehouse, Erik Lund and Ken Sheets ("Whitestone Lawyers"[20]). Ms. Lamkin wanted to say that they directed the litigation and controlled Ramey LLP. However, Mr. Ramey was adamant that he was the attorney in charge and he controlled and directed each of the Whitestone Lawyers when it came to working on the Valjakka case.[21] Mr. Ramey specifically told her that the Whitestone Lawyers had access to all materials, including the Attorney's Eyes Only material. There were multiple discussions about their role in the case in November of 2023 and she said she would think about it, discuss it with the other Netflix lawyers and get back to M. Ramey if there was a problem. No issue was raised until Netflix's Motion. Ramey LLP requests the Court see Netflix's Motion for what it is, a belated effort to continue litigation that should have ended long ago and a tool to further drive up the costs of litigation.

After November of 2023, Netflix continued to pursue the narrative that the Whitestone Lawyers (which Netflix refers to as AiPi) controlled Ramey LLP and the course of the litigation. In July of 2024, Ms. Lamkin contacted Mr. Ramey asking for any documents that would show how Ramey LLP worked with Eric Morehouse. In an effort to finally convince her that Mr. Ramey was the attorney in charge and each of the Whitestone Lawyers worked at his direction and control, Mr. Ramey sent her the unsealed portion of a filing in a Colorado federal court.[22] The pleading in that case explained that each of the Whitestone Lawyers would collaborate with Ramey LLP in working cases but that Mr. Ramey was the attorney in charge. However, it appears that Netflix's lawyers were unconvinced and now seek to further waste resources by pushing its narrative.[23]

B.   **The Protective Order Allows Disclosure to the Whitestone Lawyers**

It is unsurprising that the Whitestone Lawyers received Protected Material as each was affiliated with a law firm authorized under the Protective Order. The Protective Order defines Protected Material as "any Disclosure or Discovery Material that is designated as

---

[20] Weir King later joined the firm.
[21] Ramey Decl. at ¶6.
[22] Ex I, Response filed in Colorado.
[23] Ramey Decl. at ¶20.

'CONFIDENTIAL,' or as 'HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY.' or as 'HIGHLY CONFIDENTIAL AEO – SOURCE CODE.'"[24]  Those allowed access to each of these three designations include:

> (a) the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A;
> …
> (d) court reporters and their staff, professional jury or trial consultants, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A….[25]

Here, Whitestone Lawyers are allowed access because they are affiliated with Whitestone Law, a firm that in fact entered an appearance, through Joe Zito, who was Outside Counsel of Record.[26]   The Protective Order defines Outside Counsel of Record as "attorneys who are not employees of a party to this action but are retained to represent or advise a party to this action and have appeared in this action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party."[27]  Thus, all attorneys at Whitestone Law are authorized under the Protective Order to have access to all Protected Material.

Prior to Mr. Zito's appearance, each of the Whitestone Lawyers was working for Mr. Ramey, under his direction and control.[28]  Each of the Whitestone Lawyers was provided a copy of the Protective Order and Mr. Ramey discussed its terms with each of them.  Each of them agreed to be bound by the terms.[29]  The Protective Order defines Outside Counsel as "attorneys who are not

---

[24] Doc. No. 56 at 3.
[25] Doc. No. 56 at 9-10.
[26] Doc. No. 208.
[27] Doc. No. 56 at 3.
[28] Ramey Decl. at ¶8, 11.
[29] Ramey Decl. at ¶8.

employees of a party to this action but are retained to represent or advise a party to this action and have appeared in this action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party."[30] Mr. Ramey was confident that the Whitestone Lawyers were affiliated with Ramey LLP for this case as he controlled their actions and his professional liability insurance further covered their actions.[31] As well, Whitestone Law did in fact enter an appearance.[32]

Neither Netflix or its counsel raised any objection to Joe Zito from Whitestone Law appearing for Valjakka.[33] As well, each of Eric Morehouse, Erik Lund, Ken Sheets, Weir King and Joe Zito from Whitestone Law handled the California Uniform Voidable Transactions Act ("CUVTA") discovery responses at Mr. Ramey's request because he was busy on the summary judgment responses in this case.[34] Moreover, Ken Sheets, Weir King and Joe Zito appeared and represented Valjakka at his October 12, 2023 deposition.[35] No objections were made by counsel for Netflix, including Rachael Lamkin, Elise Edlin and Sarah Piepmeier, when they were told that the lawyers at Whitestone Law, including Eric Morehouse, Erik Lund and Ken Sheets, had been involved in "all aspects" from the start. No one raised a fuss at all, until now, when Netflix seeks to further extend this case, likely because discovery from AiPi revealed that it does not have the ability to pay the sanctions motion they intend to file. Mr. Ramey's e-mail even referred to Eric Morehouse, Erik Lund, Ken Sheets and Joe Zito as co-counsel, to highlight that they had access to everything.[36]

---

[30] Doc. No. 56 at 3.
[31] Ramey Decl. at ¶8.
[32] Doc. No. 208.
[33] Doc. No. 208.
[34] Ex. A, October 3, 2023 -e-mail from me to counsel for Netflix.
[35] Ex. B, cover page of October 12, 2023, deposition of Valjakka.
[36] Ramey Decl. at ¶8.

### C. AiPi is Authorized as a Professional Vendor

Ramey LLP provided no documents to AiPi, however, as a provider of litigation support services, a Professional Vendor, AiPi is authorized under the Protective Order to receive Protected Material.[37] Erik Lund filed a declaration specifying the services AiPi provided to Plaintiff, Lauri Valjakka, which included:

> AiPi is a legal support company and has assisted counsel in the production of Valjakka documents, as instructed by counsel, including the collection of documents from Valjakka, the marking of documents and providing documents to counsel for Defendant, as instructed by counsel for Plaintiff.[38]

Mr. Lund clearly stated that AiPi did not provide legal services.[39] These services fall within the definition of Professional Vendors, "persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.").[40] Therefore, AiPi was also authorized under the Protective Order.

### D. Ramey LLP Has Fully Cooperated With Netflix

Ramey LLP was first made aware of Netflix's 'newly' discovered issue over the holidays, on December 30, 2024. After internally investigating Ms. Lamkin's December 30, 2024, e-mail, Mr. Ramey responded on January 23, 2025.[41] In the second paragraph Mr. Ramey again explained that it was no surprise Eric Morehouse, Erik Lund and Ken Sheets received documents as they were lawyers of Valjakka and that no document was given to AiPi as a separate entity.[42] Based on Ms.

---

[37] Doc. No. 56 at §§ 7.2 (e) and 7.3 (d).
[38] Doc. No. 233-1 at ¶26.
[39] Doc. No. 233-1 at ¶¶ 17, 21.
[40] Doc. No. 56 at §2.14.
[41] Ramey Decl. at ¶12.
[42] Ex. H, January 23, 2025 e-mail chain.

Lamkin's December 30th e-mail and a subsequent discussion with Brendan Klaproth,[43] Mr. Ramey became aware that Netflix was continuing its pursuit to join AiPi in this case by seeking discovery from Eric Morehouse through a Virginia Federal Court.[44]

After receiving Netflix's counsel's demands for Ramey LLP's internal communications, Mr. Ramey asked Mr. Valjakka if Ramey LLP could produce the documents to Netflix, as Ramey LLP wanted to cooperate and assure Netflix that its production was properly handled. However, Mr. Valjakka would not waive his privilege,[45] a fact Mr. Ramey made Netflix well aware of. In preparing this declaration, Mr. Ramey requested that Mr. Valjakka allow Ramey LLP to use Exhibits F and J as evidence and he agreed.[46]

Notwithstanding Mr. Valjakka's decision not to waive his privilege, Ramey LLP immediately began verifying that there were no violations of the protective order by conducting an internal investigation of communications with each of Eric Morehouse, Erik Lund, Ken Sheets, Weir King and anyone else related to the Valjakka case.[47] It was verified that Ramey LLP only sent Netflix production, including the Protected Material, to individuals believed authorized under the protective order, including Eric Morehouse, Erik Lund, Ken Sheets and Weir King. Additionally, Ramey LLP sent Netflix production to outside experts who had signed the acknowledgement from the protective order. There were no other recipients of Netflix production other than Eric Morehouse, Erik Lund, Ken Sheets and Weir King.[48]

While not believed necessary as there was no improper disclosure, in the interests of working

---

[43] AiPi lawyer in Virginia.
[44] Ramey Decl. at ¶12.
[45] Declaration of Lauri Valjakka ("Valjakka Decl.") at ¶¶4-7; Ex. J, Valjakka e-mail.
[46] Valjakka Decl. at ¶7.
[47] Ramey Decl. at ¶13.
[48] Ramey Decl. at ¶13.

with Netflix's counsel to reassure Netflix that its production, including its Protected Material was handled appropriately, Mr. Ramey reached out to each of Eric Morehouse, Erik Lund, Ken Sheets, and Weir King.[49] Eric Morehouse responded through his lawyer, Brendan Klaproth, that Eric Morehouse only used all Netflix produced material, including the Protected Material, for the Valjakka case and has not disclosed it to anyone else.[50] Erik Lund confirmed that he only used Netflix produced material, including the Protected Material, for the Valjakka case and has not disclosed it to anyone else.[51] Ken Sheets confirmed that he only used Netflix produced material, including the Protected Material, for the Valjakka case and has not disclosed it to anyone else.[52] Weir King confirmed during a phone conversation with Mr. Ramey that he only used the Netflix produced material, including the Protected Material, for the Valjakka case and has not disclosed it to anyone else.[53]

Netflix's argument appears to be that because Eric Morehouse, Erik Lund, Ken Sheets and Weir King used e-mail addresses that included AiPi, the Protected Material must have been disclosed to someone not authorized under the Protective Order. However, Netflix's outside counsel already has the answer to this question from its CUVTA discovery fight in Virginia. Attached as Exhibit K to the Ramey Declaration is a Declaration from Eric Morehouse as custodian of records for AiPi, LLC.[54] Morehouse declares that AiPi has not used a document sent to him and Mr. Lund that included attorneys' eyes only information for any purpose other than the litigation. Moreover, Morehouse swears to be bound by the terms of the Protective Order and swears "not

---

[49] Eric Morehouse, Erik Lund, Ken Sheets, and Weir King were the lawyers I identified that were provided Netflix production.
[50] Ramey Decl. at ¶15.
[51] Ramey Decl. at ¶15.
[52] Ramey Decl. at ¶15.
[53] Ramey Decl. at ¶15.
[54] Ex. K, Morehouse Declaration.

disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order."[55] Lauri Valjakka declares by sworn declaration that he never received any Neflix Protected Material from AiPi, Whitestone Law, the Whitestone Lawyers, or the lawyers at Ramey LLP.[56] Therefore, Netflix already has what it seeks, that its Protected material is not improperly disclosed. Netflix's requests for production from Ramey LLP is simply a fishing expedition to uncover attorney-client information in a case that should be closed.

  Eric Morehouse, Ken Sheets, and Erik Lund often corresponded from an e-mail address that included Aipi. However, each was a lawyer with Whitestone Law and each worked at Mr. Ramey's direction and control on the Valjakka matter. Exhibit F to Mr. Ramey's declaration is an e-mail where he was directing production related to the CUVTA discovery. In the e-mail, Eric Morehouse, Erik Lund and Ken Sheets are using an AiPi e-mail address,[57] but each had also appeared from Whitestone Law and had been identified as my co-counsel for Mr. Valjakka's October 12, 2023, deposition.[58] More importantly, Exhibit F is an e-mail chain with Netflix's counsel that includes Eric Morehouse, Erik Lund and Ken Sheets as part of AiPi. Thus, Netflix was fully aware that lawyers who also worked at AiPi worked on the case.

  On February 15, 2025, Ramey LLP again informed Netflix's counsel that Mr. Valjakka would not waive his privilege.[59] In that communication, Netflix's counsel was reminded that they have known at least from late 2023 that the Whitestone Lawyers were on all aspects of the case. In the February 15th communication, Mr. Ramey also conveyed his understanding that a judge in

---

[55] Ex. K, at ¶6.
[56] Valjakka Decl. at ¶¶9-11.
[57] Ex. F, November 14, 2023 e-mail chain.
[58] Ex. A.
[59] Ex. G, February 15, 2025 e-mail chain.

Virginia had ordered a forensic review of Eric Morehouse's computer and production. Brendan Klaproth, the attorney representing AiPi, with Eric Morehouse being AiPi's representative, in the Virginia discovery dispute, sent me the declaration from Eric Morehouse wherein Mr. Morehouse swears that AiPi would abide by the terms of the Stipulated Protective Order:

> AiPi has not used [Netflix production] for any purpose outside of the lawsuit. AiPi agrees to be bound by all to be bound by all the terms of this Stipulated Protective Order. I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order.[60]

Mr. Klaproth further sent an order where a Virginia federal court ordered a forensic search of Eric Morehouse's computer and full production to Netflix's lawyers.[61] Therefore, everything sent to Eric Morehouse, from Ramey LLP or others, will be discovered. Exhibit M is a true and correct copy of an order denying Mr. Valjakka's claim of privilege and requiring full production to the Virginia court's chambers.[62] This Court should deny Netflix's Motion because a Virginia court has already given them the relief they seek. There simply is no allegation that Ramey LLP sent any documents to anyone other than the Whitestone Lawyers, which Mr. Ramey believed was reasonable under the Protective Order.

### E. Netflix Shows No Harm Other Than its Self-Inflicted Expense

Netflix's Motion is much to do about nothing. No person or entity outside of the Whitestone Lawyers has been shown to have received any Protected Material. Netflix should not be allowed to 'create' issues from facts it has known about for over a year. The statement that it only recently learned of the matter is frivolous and does nothing to advance this case. Netflix asks the Court to

---

[60] Ex. K at 3.
[61] Ex. L, Order from Virginia federal court.
[62] Ramey Decl. at ¶18.

award it:

    1.    Discovery of all documents and communications between AiPi and Ramey LLP related to *Valjakka v. Netflix*;

    2.    Discovery of the contact information for AiPi employees; and,

    3.    The deposition of William P. Ramey, III.[63]

The Court should deny Netflix's requested relief because it has not shown that the Whitestone Lawyers were not authorized under the Protective Order to receive the Protected Material. If the Court determines that the Whitestone Lawyers were not authorized, Netflix has not shown any harm from the disclosure. Ramey LLP was operating under a good faith belief that it was in compliance with the Protective Order when it provided the documents to the Whitestone lawyers.[64] In fact, the only evidence before the Court is that Mr. Ramey reviewed the Protective Order with each of the Whitestone Lawyers to ensure compliance.[65] This is not a case where there was an intentional breach, but rather a good faith effort to faithfully litigate a case for its client in the most efficient manner possible. Further, this is a case where Mr. Ramey and Ramey LLP have gone out of their way to assure Netflix that its Protected Material was not improperly disclosed.[66]

There has been no harm shown by Netflix. The only expenses Netflix is incurring are due to its own litigation tactics. No damages should be awarded to Netflix as such damages would not include the costs of a spare no expense, punitive discovery expedition by the aggrieved party, but rather must be tied to the noncompliance.[67] Here, either there is compliance or if the Court determines a breach, there is noncompliance with no damage. There can be no question that the

---

[63] Doc. No. 302 at 1-2.
[64] Ramey Decl. at ¶¶7-8.
[65] Ramey Decl. at ¶8.
[66] Ramey Decl. at ¶¶14-18.
[67] *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 696 (9th Cir. 1993).

Whitestone Lawyers are lawyers for Mr. Valjakka. In either case, Netflix is not entitled to recover any damages.

Netflix cites the case of *Apple v. Samsung*[68] as supposed support that it is entitled to far ranging discovery. However, Apple and Samsung are competitors. Here, there is not even an allegation that Netflix and the Whitestone lawyers or even AiPi are competitors. As such, none of the Whitestone Lawyers can be said to be competitive decision makers.[69] Further, Mr. Valjakka's sorn statement provides that he is not a competitor of Netflix.[70] Mr. Valjakka is a non-practicing entity. As such, the case is readily distinguishable. Here, Netflix has been provided with the answers it seeks, the full list of recipients of Protected Material, each of whom are bound by the Protective Order, and no further discovery is necessary.

### III. CONCLUSION

Ramey LLP and William P. Ramey, III respectfully request the Court deny Netflix's Motion because there has been no breach of the protective order or any breach was unintended and caused Netflix no harm. It is time to end this case.

Dated: March 25, 2025                Respectfully submitted,

/s/ William P. Ramey, III
William P. Ramey, III (*appearance pro hac vice*)
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, TX 77006
Telephone: (713) 426-3923
Email: wramey@rameyfirm.com

---

[68] No. 5:11-cv-01846-LHK, 2013 WL 9768650, at *2-3 (N.D. Cal. Oct. 2, 2013); *aff'd* 2013 WL 5693759 (Oct. 15, 2013).
[69] *See, e.g., Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992).
[70] Valjakka Decl. at ¶12.

*Attorneys for Third-party William P. Ramey, III and Ramey LLP*