William P. Ramey, III (appearance *pro hac vice*)
wramey@rameyfirm.com
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
Telephone:  +1.713.426.3923
Facsimile:   +1.832.689.9175

**Attorneys for Third-party William P. Ramey, III and Ramey LLP**

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| LAURI VALJAKKA,<br><br>  Plaintiff,<br><br>v.<br><br>NETFLIX, INC.,<br><br>  Defendant. | Case No. 4:22-cv-01490-JST<br><br>**DECLARATION OF WILLIAM RAMEY IN SUPPORT OF RESPONSE TO MOTION FOR AN ORDER TO SHOW CAUSE AND SANCTIONS**<br><br>Judge:  Jon S. Tigar |

I, William P. Ramey, III, declare as follows:

  1.  My name is Willim P. Ramey, III. I am over 18 years of age and have personal knowledge of the facts set forth in this declaration. I make this declaration in support of William P. Ramey, III and Ramey LLP's Response to the Motion For An Order To Show Cause And Sanctions Against Plaintiff's Former Attorney, William Ramey And Ramey LLP ("Netflix's Motion for Order to Show Cause") (Doc. No. 302).  I and other lawyers at my Firm, Ramey LLP, previously appeared as an attorney for Lauri Valjakka ("Valjakka") in the above captioned matter.  I still have an attorney client relationship with Valjakka but neither I or Ramey LLP is counsel

of record in this matter.

2. Netflix's Motion for Order to Show Cause is a classic example from Big Tech's playbook to weaken intellectual property rights and to deter others from enforcing their patent rights by unnecessarily increasing the costs of patent litigation. My firm was removed from this case on March 4, 2024, by Order of this Court based on nonpayment.[1] At that time, summary judgment had been granted against Plaintiff.[2] At the summary judgment hearing, the Court encouraged the parties to resolve this dispute, but Netflix sought to continue the case by joining a litigation funding entity, AiPi, LLC into the case, the entity that had quit paying my Firm's legal fees and expenses. However, the Court denied Netflix's attempt to join AiPi, specifically holding "there is no allegation of any transfer from Valjakka to AiPi after Valjakka became aware of Netflix's contingent claim for attorney's fees. Nor is there any such allegation in Netflix's motion for joinder…. Therefore, AiPi is not a necessary party."[3]

3. Now, almost a year later, to extend the case, Netflix seeks to drag my Firm back into the case under the guise of a breach of a protective order. While Netflix's outside counsel proclaims to have only recently discovered the alleged breach on December 27, 2024,[4] I fully disclosed to Rachael Lamkin, counsel for Netflix, that each of Eric Morehouse, Erik Lund and Ken Sheets had full access to Netflix's documents produced in discovery no later than November of 2023. I explained that they were working at my control and direction and were affiliated with me. In fact, each is also a lawyer at Whitestone Law, a firm that entered an appearance in this case, a firm founded by Eric Morehouse and Erik Lund.[5] For Netflix's outside counsel to assert otherwise is a deliberate misrepresentation to this Court and only

---

[1] Doc. No. 277.
[2] Doc. No. 257 (The Court found that Valjakka did not own the Patent-in-Suit and therefore could not have revived the abandoned application).
[3] Doc. 284 at 8.
[4] Doc. No. 302 at 7.
[5] Doc. No. 208.

DECLARATION OF WILLIAM P. RAMEY, III

2

meant to unreasonably and vexatiously extend this litigation.

4. When my Firm moved to withdraw from the case in part because AiPi quit properly funding,[6] Rachael Lamkin swooped in for as much dirt as she could get on AiPi, knowing that I, and Ramey LLP, were adverse to AiPi. In a sworn declaration filed in this matter, Erik Lund swears that he is a lawyer with Whitestone Law[7] and provides litigation support services through AiPi.[8] Mr. Lund swears that AiPi services were limited to supporting the Valjakka litigation and managing third party funding.[9] Mr. Lund particularly states that the services of AiPi and its members, partners, or staff was not legal advice.[10]

5. Ms. Lamkin and I were opposing counsel on other matters before this case and we had numerous phone calls from May of 2023 until at least July of 2024 from her personal cell phone, as shown in Exhibits D and E. Exhibit D shows my cell phone records and Exhibit D shows my office phone. Ms. Lamkin's cell phone is the other party in each of the highlighted cases. During the November 2023 conversations through July 2024, Ms. Lamkin repeatedly told me that she and the lawyers from Perkins Coie were interested in getting AiPi joined in the case and did not care about my Firm. She did add that Ms. Piepmeier wanted to file a § 1927 motion directed towards me at the end of the case, but other than that, they simply wanted AiPi. Ms. Lamkin attempted all trickery to get dirt on Eric Morehouse and AiPi.

6. During one of our several phone conversations in November of 2023, Ms. Lamkin and I discussed the role of Eric Morehouse, Erik Lunch and Ken Sheets ("Whitestone Lawyers"). Ms. Lamkin wanted to say that they directed the litigation and controlled me. I was adamant that I was the attorney in charge and I controlled

---

[6] Doc. No. 260 at 3.
[7] Doc. No. 233-1 at ¶2.
[8] Doc. No. 233-1 at ¶¶3-11.
[9] Doc. No. 233-1 at ¶14.
[10] Doc. No. 233-1 at ¶17.

DECLARATION OF WILLIAM P. RAMEY, III

3

1  and directed each of the Whitestone Lawyers when it came to working on the Valjakka case. I specifically told her that the Whitestone Lawyers had access to all materials, including the Attorney's Eyes Only material. We had multiple discussions about their role in the case in November of 2023 and she said she would think about it, discuss it with the other Netflix lawyers and get back to me if there was a problem. I never heard from her again on the matter until now.

7. In July of 2024, Ms. Lamkin contacted me asking for any documents I might have that would show how my Firm worked with Eric Morehouse. In an effort to finally convince her that I was the attorney in charge and each of the Whitestone Lawyers worked at my direction and control, I sent her the unsealed portion of a response in a Colorado federal court.[11] The pleading in that case explained that each of the Whitestone Lawyers would collaborate with my Firm in working cases.

8. Each of the Whitestone Lawyers was provided a copy of the Protective Order and I discussed its terms with each of them. Each of them agreed to be bound by the terms. The Protective Order defines Outside Counsel as "attorneys who are not employees of a party to this action but are retained to represent or advise a party to this action and have appeared in this action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party."[12] I was confident that the Whitestone Lawyers were affiliated with my Firm for this case as I controlled their actions and his professional liability insurance covered their actions. As well, Whitestone Law did in fact enter an appearance.[13] Weir King became a Whitestone Lawyer later in the case.

9. Neither Netflix or its counsel raised any objection to Joe Zito from Whitestone Law appearing for Valjakka, which necessarily included the Whitestone Lawyers.[14] Each of Eric Morehouse, Erik Lund, Ken Sheets, Weir King and Joe Zito

---

[11] Ex I, Response filed in Colorado.
[12] Doc. No. 56 at 3.
[13] Doc. No. 208.
[14] Doc. No. 208.

DECLARATION OF WILLIAM P. RAMEY, III

4

from Whitestone Law handled the California Uniform Voidable Transactions Act ("CUVTA") discovery responses at my request because I was busy on the summary judgment responses in this case.[15] In fact, each of Ken Sheets, Weir King and Joe Zito appeared and represented Valjakka at his October 12, 2023 deposition.[16] No objections were made by counsel for Netflix, including Rachael Lamkin, Elise Edlin and Sarah Piepmeier, when they were told that the Whitestone Lawyers, including Eric Morehouse, Erik Lund and Ken Sheets, had been involved in "all aspects" from the start. No one raised a fuss at all, until now, when Netflix seeks to further extend this case, likely because discovery from AiPi revealed that it does not have the ability to pay the sanctions motion they intend to file. My e-mail even referred to Eric Morehouse, Erik Lund, Ken Sheets and Joe Zito as co-counsel, to highlight that they had access to everything. I have been completely transparent.

10. I am managing partner of Ramey LLP, a law firm that protects the rights of Intellectual Property owners. The mission of Ramey LLP is to make patent litigation available to all patent owners with valid infringement claims. By efficiently litigating patent infringement cases, we are able to level the playing field for small patent owners who would otherwise be unable to file law suits against large corporations infringing their patents. Ramey LLP has a passion to make patent infringement litigation affordable for those patent infringement cases where the potential damages may make the case unattractive to most firms. I believe all meritorious claims can and should be pursued and all intellectual property owners deserve representation and access to the courts. That Netflix found itself accused of infringing patents is not a commentary on Ramey LLP but rather the business practices of Netflix.

11. Eric Morehouse, Ken Sheets, Erik Lund, and Weir King often corresponded from an e-mail address that included Aipi. However, each was a lawyer

---

[15] Ex. A, October 3, 2023 -e-mail from me to counsel for Netflix.
[16] Ex. B, cover page of October 12, 2023, deposition of Valjakka.

DECLARATION OF WILLIAM P. RAMEY, III

5

with Whitestone Law and each worked at my direction and control on the Valjakka matter, as an Affiliate. Exhibit F to my declaration is an e-mail where I was directing production related to the CUVTA discovery. In the e-mail, Eric Morehouse, Erik Lund and Ken Sheets are using an AiPi e-mail address,[17] but each had also appeared from Whitestone Law and had been identified as my co-counsel.[18] More importantly, Exhibit F is an e-mail chain with Netflix's counsel that includes Eric Morehouse, Erik Lund and Ken Sheets as part of AiPi. Thus, Netflix was fully aware that lawyers at AiPi worked on the case.

12. On December 30, 2024, when Ms. Lamkin sent her e-mail, I was remote with poor e-mail or data connection, in the Big Bend area of Texas. I did not return until January 3, 2025. After internally investigating Ms. Lamkin's December 30, 2024, e-mail, I responded on January 23, 2025. In the second paragraph I again explained that it was no surprise Eric Morehouse, Erik Lund and Ken Sheets received documents as they were lawyers of Valjakka and that no document was given to AiPi as a separate entity.[19] Based on Ms. Lamkin's December 30th e-mail and a subsequent discussion with Brendan Klaproth, I became aware that Netflix was continuing its pursuit to join AiPi in this case by seeking discovery from Eric Morehouse through a Virginia Federal Court.

13. After receiving Netflix's counsel's demands for our internal communications, we asked our client Mr. Valjakka if we could produce the documents to Netflix, as we wanted to assure Netflix that its production was properly handled. However, Mr. Valjakka would not waive his privilege,[20] a fact I made Netflix well aware of. In preparing this declaration, I requested that Mr. Valjakka allow me to use Exhibit F as evidence and he agreed.

14. Notwithstanding Mr. Valjakka's decision not to waive his privilege, we

---

[17] Ex. F, November 14, 2023 e-mail chain.
[18] Ex. A.
[19] Ex. H, January 23, 2025 e-mail chain.
[20] Ex. J, Valjakka e-mail.

DECLARATION OF WILLIAM P. RAMEY, III

6

immediately began verifying that there were no violations of the protective order by conducting an internal investigation of communications with each of Eric Morehouse, Erik Lund, Ken Sheets, Weir King and anyone else related to the Valjakka case. We verified that we only sent Netflix production to individuals we believed authorized under the protective order, including Eric Morehouse, Erik Lund, Ken Sheets and Weir King. Additionally, we sent Netflix production to outside experts who had signed the acknowledgement from the protective order. There were no other recipients of Netflix production.

15. While not believed necessary as there was no improper disclosure, in the interests of working with Netflix's counsel to reassure Netflix that its production, including its Attorneys' Eyes Only material was handled appropriately, I reached out to each of them. Eric Morehouse responded through his lawyer, Brendan Klaproth, that Eric Morehouse only used all Netflix produced material, including the Protected Material, for the Valjakka case and has not disclosed it to anyone else. Erik Lund confirmed that he only used Netflix produced material, including the Protected Material, for the Valjakka case and has not disclosed it to anyone else. Ken Sheets confirmed that he only used Netflix produced material, including the Protected Material, for the Valjakka case and has not disclosed it to anyone else. Weir King confirmed during a phone conversation with me that he only used the Netflix produced material, including the Protected Material, for the Valjakka case and has not disclosed it to anyone else.

16. On February 15, 2025, we again informed Netflix's counsel that our client would not waive his privilege.[21] In that communication, we reminded Netflix's counsel that they have known at least from late 2023 that the Whitestone Lawyers were on all aspects of the case. In the February 15th communication, I also conveyed my understanding that a judge in Virginia had ordered a forensic review of Eric

---

[21] Ex. G, February 15, 2025 e-mail chain.

DECLARATION OF WILLIAM P. RAMEY, III

Morehouse's computer and production. Brendan Klaproth, the attorney representing AiPi in the Virginia discovery dispute, sent me a declaration from Eric Morehouse wherein Mr. Morehouse swears that AiPi would abide by the terms of the Stipulated Protective Order:

> AiPi has not used [Netflix production] for any purpose outside of the lawsuit. AiPi agrees to be bound by all to be bound by all the terms of this Stipulated Protective Order. I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order.[22]

17. It is my understanding from discussions with Brendan Klaproth that a Virginia federal court has ordered a forensic search of Eric Morehouse's computer and full production.[23] Therefore, everything sent to Eric Morehouse, from my Firm or others, will be discovered.

18. I also understand that the Court in Virginia will allow Mr. Valjakka to object on the basis of privilege and he has so objected, *pro se*. Exhibit M is a true and correct copy of an order denying Mr. Valjakka's claim of privilege and requiring full production to chambers.

19. I am not counsel for Mr. Valjakka in the Virginia matter nor do I intend to become counsel.

20. Netflix's Motion for Order to Show Cause directed against me and my Firm is a classic example of Big Tech running up the legal fees and pursuing baseless motions when its attorneys already know the truth. I am not surprised at Netflix fanning the flames of a dead matter. Big Tech and its lawyers act like this all of the time.

---

[22] Ex. K at 3.
[23] Ex. L, Order from Virginia federal court.

DECLARATION OF WILLIAM P. RAMEY, III

8

21. As an example, during a phone conversation in November of 2023, Ms. Lamkin told me that in the Spring of 2023, in-house counsel at Microsoft Corporation was trying to get one of its outside counsel to file a complaint against me at the United States Patent & Trademark Office's Office of Enrollment & Discipline, the department that handles my license to practice. The basis of the complaint was to be that my firm filed too many lawsuits, including the ones against Microsoft. Now Ms. Lamkin says she declined to file the complaint for Microsoft, but I do not know what to believe. Ms. Lamkin is already being sued for defamation by Leigh Rothschild based on her claims that his companies are bankrupt.[24]

22. For Big Tech Microsoft to attack my professional license is reprehensible and beyond the pale. Something must be done to protect lawyers from such predatory actions that are designed to deny access to the courts to patent owners, a right protected by the First Amendment.

23. In another tactic, Big Tech attempts to turn clients against their attorneys, promising not to seek fees from the clients if they falsely claim the attorneys did something wrong, like what is happening in this case. However, Big Tech Netflix is not alone, in *CTD Networks, LLC v. Microsoft Corporation*, Microsoft agreed to settle its fee dispute with CTD if CTD would falsely accuse me through a declaration of not following its directions in filing an amended complaint. Microsoft then used the declaration to try and sanction me personally. The Judge in that case saw through Big Tech trickery and ruled that CTD did in fact authorize the filing of the Second Amended Complaint and denied Microsoft's sanction request. However, Microsoft's tactics increased the cost of the litigation and did not serve justice. Moreover, Microsoft went further and defamed me by giving a quote to news organization based on the false declaration it procured from CTD as *quid pro quo* for settlement.

24. In another example, Big Tech company Google LLC is currently using its

---

[24] https://myconvergence.bna.com/contentitem/PrintArticlePublic/263217404000000016/298944?itemguid=b4f14fef-d221-4cbb-9c99-7b96a557a9d7

DECLARATION OF WILLIAM P. RAMEY, III

9

outside counsel to drive a wedge between my firm and another client with offers to settle disputes with the client but not my Firm. The lawyers acting on Google's behalf are violating ethical codes that prevent interference with the attorney client relationship. Luckily, my client is an honorable person and the offer has been rejected. Rather than defend the infringement allegations, Big Tech tries to make it too expensive to litigate with them. Something must be done to stop Big Tech from using these tactics.

25. Exhibit A is a true and correct copy of an e-mail chain dated October 3, 2023, from me to counsel for Netflix.

26. Exhibit B is a true and correct copy of the cover page from the October 12, 2023 deposition of Lauri Valjakka.

27. Exhibit C is a true and correct copy of a December 30, 2024, e-mail from Ms. Lamkin to me and Brendan Klaproth.

28. Exhibit D is a true and correct copy of my Verizon phone bill dated December 8, 2023.

29. Exhibit E is a true and correct copy of search results of calls between my office phone and the cell phone of Ms. Lamkin.

30. Exhibit F is a true and correct copy of an e-mail chain between counsel for Netflix and counsel for Valjakka.

31. Exhibit G is a true and correct copy of an e-mail chain between counsel for Valjakka and counsel for Netflix.

32. Exhibit H is a true and correct copy of a January 23, 2025, e-mail in response to the December 30th e-mail from Ms. Lamkin.

33. Exhibit I is a true and correct copy of an e-mail dated July 18, 2024 from me to Ms. Lamkin sending a copy of a filing made in another case.

34. Exhibit J is a true and correct copy of an e-mail from Mr. Valjakka refusing to waive privilege.

35. Exhibit K is a true and correct copy of a declaration of Eric Morehouse filed in a Virginia federal court.

36. Exhibit L is a true and correct copy of an Order in *AiPi, LLC v. Netflix, Inc.*, requiring full production and a forensic search of Eric Morehouse's computer.

37. Exhibit M is a true and correct copy of an order from the Eastern District of Virginia dated March 14, 2025.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 25, 2025 in Harris County, Texas.

/s/ William P. Ramey, III
William P. Ramey, III