# EXHIBIT I

| | |
|---|---|
| **From:** | Eric Morehouse[emorehouse@kviplaw.com] |
| **Sent:** | Thur 12/16/2021 9:58:57 PM (UTC) |
| **To:** | Lauri Valjakka[lauri.valjakka@eezykeyz.fi]; 'Onni Hietalahti'[onni.hietalahti@tamoralegal.fi] |
| **Cc:** | Erik Lund[elund@kviplaw.com]; 'Jonathan Merril'[jmerril@aipisolutions.com]; emorehouse@aipisolutions.com[emorehouse@aipisolutions.com]; 'Matti Saraheimo'[Matti.saraheimo@mosconsulting.fi] |
| **Subject:** | RE: Status of Cases - Response - Damages for Netflix |

Lauri and Onni,

I've attached the initial damages estimate for Netflix. I've also provided responses to your comments in bold.

Comments:

   • In such a case we need a clear damage calculation over the 102 by defendants as well. USD 75k + USD 1M, covering most of the industry is not anywhere near acceptable. **See attached initial damages calculation for Netflix (about $160M).**
   • Cannot accept to include applications and any potential future IP in any settlement at such return, with or without any new patent owner entity. **I agree – no future patents will be covered.**


Comments:

   • I will decide which entity, when and where. Patent applications and the future is <u>NOT included in our agreement. We made a deal to litigate the US CDN patent only.</u> Not even the 102 was included, without mentioning anything about applications and plans. **I agree – no future patents will be covered.**


Eric

**Eric D. Morehouse**
Founder





+1 (703) 346-4787
11718 Bowman Green Dr.
Reston, VA 20190
www.aipisolutions.com
EMorehouse@aipisolutions.com

**From:** Lauri Valjakka
**Sent:** Thursday, December 16, 2021 9:25 AM
**To:** Eric Morehouse <emorehouse@kviplaw.com>; 'Onni Hietalahti' <onni.hietalahti@tamoralegal.fi>
**Cc:** Erik Lund <elund@kviplaw.com>; 'Jonathan Merril' <jmerril@aipisolutions.com>; emorehouse@aipisolutions.com; 'Matti Saraheimo' <Matti.saraheimo@mosconsulting.fi>
**Subject:** VS: Status of Cases - Response

Eric,
Just quickly on the 102:

> • "I am strictly resisting to include that patent at such pocket exchange price with RPX or Akamai, since merely the development of the system costed over € 5 M so far. And without the R&D there would not be any patents around the encryption **We will need to include the 102 patent in the settlement agreements, however will be able to avoid future patents."**

Comments:

> • In such a case we need a clear damage calculation over the 102 by defendants as well. USD 75k + USD 1M, covering most of the industry is not anywhere near acceptable.
> • Cannot accept to include applications and any potential future IP in any settlement at such return, with or without any new patent owner entity.


> • "We have 2 more patents to come, and they will together with the 102 make a reasonably powerful Patent Portfolio with a Patent Family elsewhere in this World, so the sums must be totally in higher scale to encourage us to even consider – **We will be able to avoid the future patents, but the current patents will need to be included in the settlement agreements.**
> • Pls. advise with a more detailed plan and totally different sums - **We can put the future patents in a different entity that isn't "controlled" by you."**


Comments:

> • I will decide which entity, when and where. Patent applications and the future is <u>NOT included in our agreement. We made a deal to litigate the US CDN patent only.</u> Not even the 102 was included, without mentioning anything about applications and plans.


BR
Lauri

**Lähettäjä:** Eric Morehouse <emorehouse@kviplaw.com>
**Lähetetty:** torstai 16. joulukuuta 2021 2.43
**Vastaanottaja:** Lauri Valjakka <lauri.valjakka@eezykeyz.fi>; 'Onni Hietalahti' <onni.hietalahti@tamoralegal.fi>
**Kopio:** Erik Lund <elund@kviplaw.com>; 'Jonathan Merril' <jmerril@aipisolutions.com>; emorehouse@aipisolutions.com; 'Matti Saraheimo' <Matti.saraheimo@mosconsulting.fi>
**Aihe:** RE: Status of Cases - Response

Lauri,

Great questions.  My responses are provided in bold below.

1. Netflix damage calculation

   • Can I see now a more detailed Netflix damage calculation with criteria as well as all other similar by defendant, because the only calculation I have seen so far came from Finnegan a long time ago and that was only on Akamai covering years 2014 – 2019 (20 and 21 missing) **I'll send you the detailed damages analysis by separate email.**
   • Also I would like to learn who made it and if possible some references of other closed cases by the maker (hopefully an Excel table available) **The damages export is Jack Liu, who is one of the most experienced patent damages experts in the US, and importantly is located in WD Teas and so has enormous experience there.  I don't think that I can get a list of specific cases that he's worked on because of privilege issues, but frankly only know one other person with comparable expoeriecne.  He works through Bob Held of HeldIP when I work with him so that I can also get Bob Held's opinions.  Jack's signature block is provided below.**

   *Jack Lu*, **PhD, CFA, CIPP/US**
   **Partner & Chief Economist ◊ IPMAP, LLC ◊ www.ipmapllc.com**
   **Sr. VP Economic Analysis & Survey ◊ LES USA Canada ◊ www.lesusacanada.org**
   **Author Pages:** ssrn.com/author=230071; Google Scholar; ResearchGate
   **Office: 512-238-3088  Cell: 512-828-1928**
   **13785 Research Blvd, Suite 125, Austin, TX 78750**

   *IAM 300: World's Leading IP Strategists*

2. Contradiction in your response on ownership issue

   • You state that the Dr. at Laws' statement and the other Finnish law firm's comments are not sufficient and we need more similar comments from many Finnish law firms **- We could proceed with what we have, but to optimize our position, the more Finnish law firms that**

reach the same conclusion the better.  We can streamline this process with other Finnish firms by sending them a clear statement of the chain of title and with a conclusion already drafted and ask if they need to make any changes.  However, we're a few months away form being able to draft a tailored document to this effect.

• To get 5-6 opinions more is possible, but would only cause more work to read and analyze and time consumed - **We would attempt to streamline the process based on the above.  We will obviously be paying all fees from the Finnish law firms.  We're just trying to increase our chances of winning on the ownership issue, obtaining higher settlement offers, and ultimately winning the cases.**

• Where do we need them if there would be an wipe out agreement with Akamai, to whom? **– I don't understand the question.**

• To my understanding the statement we got is merely sufficient as it is covering three well-referred and significant legal aspects. When you look at who wrote it, it stands for at least 10 to 15 law firm opinions or does quantity walk over quality in the US Justice System? **Especially because there is not Finnish case law on this issue, it helps to obtain as many Finnish law firm opinions as possible.  We're trying to get as far away as possible as the situation where we have one firm and Akamai has one firm contradicting our firm.**

• Have you studied the statement with time and thoughts? Has anyone else? Legal analysis? **Yes – the statement is great, but I (like the judge) don't know anything about Finnish law, I haven't met the person, etc.**

3. RPX Settlement plan

• Are Apple, Google and Sony included in that 1 to 2 M plan? **Ultimately, the settlement with RPX will include them, however the upcoming offer from RPX did not include them because we haven't filed the complaints against them yet.  I'm hoping that we can persuade RPX to significantly increase their price once these 3 additional defendants are identified, complaints are filed, and the relevant complaints include the 102 patent.**

4. 102 Patent and sacrificing the EEZY KEYZ®

• I see the possible Akamai settlement will take away the uniqueness of the encryption method patented in the 102 **– No defendant including Akamai will settle without getting peace on all related patents.  Thus, citing the 102 patent in the settlement agreement doesn't really affect the fact that we won't be able to sue Akamai going forward.**

• I am strictly resisting to include that patent at such pocket exchange price with RPX or Akamai, since merely the development of the system costed over € 5 M so far. And without the R&D there would not be any patents around the encryption **We will need to include the 102 patent in the settlement agreements, however will be able to avoid future patents.**

• We have 2 more patents to come, and they will together with the 102 make a reasonably powerful Patent Portfolio with a Patent Family elsewhere in this World, so the sums must be totally in higher scale to encourage us to even consider – **We will be able to avoid the future patents, but the current patents will need to be included in the settlement agreements.**

• Pls. advise with a more detailed plan and totally different sums - **We can put the future**

> patents in a different entity that isn't "controlled" by you.

These are just my initial thoughts and I will come back with more detailed comments later. Especially on the ownership issue.

BR
Lauri

---

**Lähettäjä:** Eric Morehouse <emorehouse@kviplaw.com>
**Lähetetty:** keskiviikko 15. joulukuuta 2021 3.19
**Vastaanottaja:** Onni Hietalahti <onni.hietalahti@tamoralegal.fi>; Lauri Valjakka <lauri.valjakka@eezykeyz.fi>
**Kopio:** Erik Lund <elund@kviplaw.com>; 'Jonathan Merril' <jmerril@aipisolutions.com>; emorehouse@aipisolutions.com
**Aihe:** RE: Status of Cases - Response

Lauri and Onni,

Responses are provided below in bold below adjacent the questions.

1. **Akamai settlement**

   • Once more: Why is the settlement at seemingly all cost so critical? **If we don't settle with Akamai, then they will file a 12(b)(1) motion asserting that we haven't sufficiently shown ownership of the patent. Once that happens, no other defendant will even engage in settlement negotiations, including RPX.** Also, because this issue is being handled at the pleadings phase of the litigation, the judge will be less apt to spend a lot of time on it, and without much commitment to the case, will be more given to just dismiss it. **We also need more time (6 months) to put together our ownership position to increase our chances of winning in case any of the other defendants identify this issue, and so we need to get Akamai out of the way to give us that time** – right now our position is not well-articulated and we need more Finnish law firms to get on board with us. The US judge won't have any sense for Finnish law, and so when faced with different/opposite opinions from different Finnish law firms, it is impossible to predict which side he will determine to be correct, and so we estimate our chances of success on this issue at the pleadings phase to be 50%-50%. The judge is very unlikely to identify any of our Finnish lawyers as the actual definitive expert, especially based on the fact there is no case law directly on point. **In addition, from a US perspective, the aspect of Finnish law indicating that possession is controlling is incredibly sketchy – there is no US equivalent and so the judge will be biased against our position. Once we lose on this issue, it's over and the cases are all dead – never coming back. Thus, settling with Akamai now will allow us to achieve some other settlements and give us time to solidify our position in case it comes up again.**
   • By whom were the terms negotiated? **Bill Ramey and Akamai's attorneys.**
   • Why did the timetable become much tighter than originally anticipated? – **The timetable**

became <u>longer</u> than originally anticipated because Ramey gave them an extension to file their Answer.  The timeframe was due to the fact that they needed to file the 12(b)(1) motion by the Answer deadline.
• How this poor outcome could have been avoided?  **By not creating the ownership issue in the first place.  Ownership of the patent was handled in an incredibly cavalier manner creating the most convoluted chain of title that I've ever seen in a US patent infringement litigation.**
• Why new evidence regarding ownership seems to be irrelevant to satisfy you/our counsel/ the judge/Akamai?  **As indicated above, the US judge won't have any sense for Finnish law, and so when faced with different/opposite opinions from different Finnish law firms, it is impossible to predict which side he will determine to be correct.  In other words, the US judge is just going to see different Finnish lawyers saying opposite things, and is probably just going to use his common sense.  Unfortunately, from a US perspective, the aspect of Finnish law indicating that possession is controlling is surprising and not consistent with a common-sense approach from a US perspective.**


2. **RPX negotiations**

• Which RPX members are currently engaged in negotiations?  **Ryan Hanneken, Director, Acquisitions**
• Which additional RPX members / infringers have we identified?  **Apple, Google, Sony**
• How many members / infringers do we estimate to be?  **We suspect a few more, two or three other RPX members, but we need more time on this issue.**
• What is the target amount/defendant for the settlement? **RPX contacted Ramey today and indicated that they will provide a low 7 figure settlement offer by the end of the year – probably around $1M or $1.5M.  We should be able to get that up to $2M or hopefully more.**
• How do we define the amount? Do we have damages expert calculations?  **Based on the ability of the defendants to invalidate the patent, the ownership issue, and complicated nature of the damages analysis.**


3. **Netflix negotiations**

• What negotiations have taken place (when, by whom, who with, how)  **Erick Robinson and then Bill Ramey had initial discussions explaining our infringement position.  Netflix has since asserted that they may attempt to move the case from WD Texas, which is not concerning.**
• What exactly has been the content of the negotiations (touch base or more specific) **Just the above.  Because the damages calculations with Netflix is relatively high, Ramey hasn't artificially attempted to speed-up the negotiations.**
• What is the expected timeline of upcoming negotiations / continuation of litigation – **Over the next few months, however we may want to take them past claim construction to achieve a significant settlement/award.**
• What is the 80 MUSD settlement / award amount based on? Have you consulted a damages expert?  **Netflix streams movies/videos to customers (millions of customers), and so damages accrue for each download.  In other words, damages accrue each time content is sent through the Netflix server or content delivery network, resulting in significant potential damages.  Based on the amount of potential damages, an $80M award is possible.**

4. <u>Our counsel</u>

• What kind of assignment do we have in place? **Bill Ramey has been officially engaged based on his submission of representation to the court.**
• Where do we stand with current billing? **About $160K.  That number will increase a little over the next few months, such as to cover the Finnish law firms.  It will increase a lot more as we get to claim construction.**
• What is his track record on major patent litigations? **Bill Ramey has spent his career on these types of patent litigations.  He is one of a small number of patent litigators in WD Texas who handle and successfully resolve large numbers of cases there.  In my opinion, Erick Robinson and Bill Ramey are 2 of the top 5 or 10 attorneys to handle these types of cases in WD Texas.**

5. <u>102 patent</u>

• Have you substantiated the infringement?  **Yes – we sent you the claim chart for Amazon on Dec. 6 – see attached email with claim chart.  We are in the process of preparing claim charts for other defendants.**
• How? **See the attached claim chart.**
• With respect to which defendants?  **We've done Amazon and are working on Netflix now.  Microsoft also seems to be an option.**
• We have not agreed anything on filing complaints for 102 – how should this be addressed in our mutual agreement? **Adding the 102 patent to the existing complaints increases the amount that the defendants will be willing to settle for and otherwise very much strengthens the cases.  Besides the ownership issue, the biggest weakens in the cases is the fact that they are single patent cases.  We won't file anything before receiving your authorization.  It is also important to note that no defendant will settle without ensuring that they also get a license to other related patents, and so asserting the 102 patent doesn't hurt us.**
• Why do we have to rush filing new complaints for 102? **Because it significantly helps our settlement discussions, which will go quickly with RPX.**

6. <u>Ownership issue</u>

• What is required in addition to existing documentation (especially the professor written statement) to guarantee that this issue will not be successfully raised by any of the remaining infringers? **There is no guarantee that other defendants will not raise this issue, and no way to predict whether any other defendants identify this issue.  However, it is unlikely to be identified by other defendants until the discovery phase of the litigation, giving us time now to fully prepare our position.  We need about 6 months to fully prepare our position to increase the likelihood of success to 90%+.**
• How critical is the fact that the revival application was based on a transfer and now our strongest argument is that Lauri became the owner after occupation of the abandoned application?  **It will be important to show that Lauri was the owner at the time of revival.  It shouldn't matter who owned it at the time of abandonment.**

- Can the loose ends be tied in retrospect i.e. is it enough just to show that Lauri ultimately became the owner (before and after the revival application). **We can develop a strong position that Lauri was the owner prior to revival..**
- We have around 10 k€ of expenses with respect to the ownership issue – on Friday we talked that we may invoice AIPI. Kindly confirm this and the invoicing address. **Please send us the Invoice to:  AiPi, LLC, 11718 Bowman Green Drive, Reston, VA 22066**


Eric


**Eric D. Morehouse**
Founder



+1 (703) 346-4787
11718 Bowman Green Dr.
Reston, VA 20190
www.aipisolutions.com
EMorehouse@aipisolutions.com


---

**Lähettäjä:** Eric Morehouse <emorehouse@kviplaw.com>
**Lähetetty:** sunnuntai 12. joulukuuta 2021 2.35
**Vastaanottaja:** Onni Hietalahti <onni.hietalahti@tamoralegal.fi>; Lauri Valjakka <lauri.valjakka@eezykeyz.fi>
**Kopio:** 'Jonathan Merril' <jmerril@aipisolutions.com>
**Aihe:** Status of Cases

Lauri and Onni,

I've provided the following status update on the cases.  Let's discuss tomorrow.

==Akamai sent us their draft settlement agreement, which we're reviewing and will be making changes thereto.==  The most important issue is to make sure that it doesn't prevent us from suing other relevant entities, including but not limited to RPX members and Netflix.  We'll send you a draft with our changes in a few days.  We will need to send them a revised version next week.  ==As discussed, we need to finalize terms with Akamai to avoid potentially losing on the ownership issue, which will permanently prevent any future enforcement actions on the patent.==

RPX will be sending us a settlement offer shortly, which will be too low but they already communicated that they have room to increase their offer.  We don't want to rush into negotiations with them because we need to amend the current complaints to add the second patent, and to file/serve complaints against other RPX members.  Both of these actions will dramatically increase the amount that RPX will be willing to settle for in the early stages of these cases and provide revenue that we understand that you need asap.  We also need to identify other RPX members who may be

infringing and file/serve complaints on them.  It's a lot of work and we are literally working 7 days a week on it.

We need to be incredibly careful with any settlement agreements with RPX.  On a positive side, we should be able to achieve a 7-figure settlement with RPX – even at this early stage.  However, it's a potentially dangerous situation because they will want to settle for all of their members and so we need to identify all of their members who infringe.  They also tend to want to add a clause to their settlement agreements where future members are covered by the settlement for payment of a nominal fee to the patent owner – which is impossible for us to do in this situation.

Netflix appears be be the biggest infringer in terms of potential damages.  We have engaged in early discussions with them mainly focusing on our infringement position, and are planning to have more substantive settlement discussions.  We can partner/settle with them early, but may probably ultimately want to take them to (or up to) trail to try and achieve a very significant damages award - $80M+.

We also need to identify additional infringers who are not RPX members and stage filing/serving complaints on them – it's important to weight infringers of both patents and where we can easily get venue in WD Texas.

We also need to have a Zoom call with the WD Texas attorney – Bill Ramey.  I'll find out his availability and schedule it early this upcoming week.

Please call me anytime tomorrow to discuss.

Eric

**Eric D. Morehouse**
Founder





+1 (703) 346-4787
11718 Bowman Green Dr.
Reston, VA 20190
www.aipisolutions.com
EMorehouse@aipisolutions.com

.