UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURI VALJAKKA,<br><br>          Plaintiff,<br><br>     v.<br><br>NETFLIX, INC.,<br><br>          Defendant. | Case No. 22-cv-01490-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART NETFLIX'S MOTION FOR AN ORDER TO SHOW CAUSE AND SANCTIONS**<br><br>Re: ECF No. 315 |

Before the Court is Defendant Netflix, Inc.'s motion for an order to show cause and sanctions against William Ramey and Ramey LLP, who formerly represented Plaintiff Lauri Valjakka in this action. ECF No. 315. The Court will grant the motion in part and deny it in part.

**I.     BACKGROUND**

The facts are well-known to the parties and the Court has summarized the background of this action in detail in prior orders. In short, this is a patent infringement case brought by Valjakka against Netflix. The present motion for sanctions arises out of Ramey's conduct related to his firm's relationship with third party AiPi, LLC. AiPi has participated in the litigation at least by "managing third party funding for Valjakka" and retaining counsel (Mr. Ramey) to represent him. ECF No. 233-1 ¶¶ 13, 14. The extent to which AiPi had an additional role in this action is disputed, as described more fully below.

Netflix filed the instant motion on February 18, 2025. ECF No. 302; *see also* ECF No. 315 (publicly filed unredacted version). Mr. Ramey opposes the motion. ECF No. 311. Netflix has filed a reply. ECF No. 318. The Court held a hearing in this matter on May 8, 2025.

**A.     Protective Order**

Pursuant to stipulation, the Court entered a protective order on July 25, 2022. ECF No. 56.

## II. LEGAL STANDARD

### A. Civil Contempt

"Civil contempt [. . .] consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006) (citing *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)). "The party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by 'clear and convincing evidence,' not merely a preponderance of the evidence." *In re Dual-Deck Video*, 10 F.3d at 695 (quoting *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982)). The moving party must also demonstrate that the noncompliance was more than "a few technical violations." *Id.* "'Substantial compliance' with the court order is a defense to civil contempt." *Id.*

### B. Rule 37

"Federal Rule of Civil Procedure 37 authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983) (internal citations omitted). "The violation need not be willful, unless the sanction is dismissal." *O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2017 WL 3782101, at *4 (N.D. Cal. Aug. 31, 2017), *appeal dismissed*, No. 17-16859, 2017 WL 6398066 (9th Cir. Sept. 27, 2017) (citing *Lew v. Kona Hosp.*, 754 F.2d 1420, 1426–27 (9th Cir. 1985)). The court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Sanctions imposed under Rule 37(b) "may serve either remedial and compensatory purposes or punitive and deterrent purposes." *Falstaff Brewing Corp. v. Miller Brewing Corp.*, 702 F.2d 770, 783 (9th Cir. 1983). "The imposition and selection of particular sanctions are matters left to the sound discretion of the trial court." *Id.*

**C.     Rule 16**

Under Federal Rule of Civil Procedure 16, "the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order."  Fed. R. Civ. P. 16(f)(1).  Rule 16 also provides for the payment of reasonable expenses incurred because of noncompliance "unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 16(f)(2).  "Sanctions under this rule, too, are committed to the district court's discretion."  *O'Connor*, 2017 WL 3782101, at *4 (citing *Ayers v. City of Richmond*, 895 F.2d 1267, 1269–70 (9th Cir. 1990)).

## III.   DISCUSSION

**A.     Sanctions Under Rule 37**

Netflix argues that Ramey violated the Court's protective order, ECF No. 56, by sharing Netflix's confidential documents, so designated under the protective order, with attorneys employed by third-party entity AiPi LLC.

Netflix learned through discovery received from AiPi that Mr. Ramey shared Netflix confidential material with AiPi attorneys on several occasions.  In December 2022, for example, Mr. Ramey's paralegal sent AiPi attorneys Eric Morehouse and Erik Lund a file entitled "Netflix Production.zip," which kicked off an email chain discussion in which AiPi attorney Ken Sheets later called out a particular Netflix document that had been marked "Highly Confidential— Attorneys' Eyes Only.  ECF No. 315-1 at 3 (discussing "document #6545"); ECF No. 302-1 ¶ 12 (document NFX_VALJ_00006545 was produced by Netflix and designated "Attorneys' Eyes Only").

Also in December 2022, AiPi attorney Lund sent Mr. Ramey supplemental infringement contentions, explaining, "[t]he added docs support our position and are AEO from Netflix's latest production."  *Id.*

On January 6, 2023, Mr. Ramey emailed AiPi attorneys Lund and Morehouse, "here are the Netflix financials," attaching a spreadsheet that Netflix had designated as "Highly Confidential—Attorneys' Eyes Only" under the protective order and which Netflix represents was

3

a "'master' financial report containing over seven years of detailed profit and loss information." ECF No. 302-10 at 2; ECF No. 315 at 10.

On May 16, 2023, Mr. Ramey emailed Netflix's counsel with a series of technical complaints about Netflix's production of source code, including that it was "lacking in documentation" and contained "no code that provides the logic for transferring files." ECF No. 315-6 at 2. Shortly after, Mr. Ramey emailed AiPi attorneys Morehouse, Lund, and Sheets: "Does this sum it up?" *Id.* Netflix contends that this communication shows that "AiPi employees were privy to information contained in Netflix's source code." ECF No. 315 at 11.

On July 5, 2023, Mr. Ramey sent AiPi attorneys Morehouse, Lund, and Sheets a draft copy of an expert report and its exhibits, which discussed and reproduced Netflix materials that were marked "Highly Confidential—Attorneys' Eyes Only." ECF No. 315-3 at 2.

Mr. Ramey does not dispute that he shared Netflix confidential documents with attorneys from AiPi. In fact, he acknowledges that AiPi attorneys Morehouse, Lund, and Sheets "had full access to Netflix's documents produced in discovery." ECF No. 311 at 6. Instead, he raises several arguments in an attempt to justify that sharing.

Mr. Ramey first argues that attorneys Morehouse, Lund, and Sheets were "each affiliated with a law firm authorized under the Protective Order," namely, Whitestone Law. ECF No. 311 at 7. Mr. Ramey contends that Whitestone Law was an authorized firm under the protective order because attorney Joseph Zito entered an appearance in this action. *Id.* at 8. This argument fails for at least two reasons. First, although the Court granted Mr. Zito's application to appear *pro hac vice* in November 28, 2023, ECF No. 236, by that time Mr. Ramey had already been sharing Netflix confidential information with lawyers Morehouse, Lund, and Sheets for at least several months. Second, contrary to Mr. Ramey's claims, Mr. Zito never entered an appearance on behalf of Plaintiff Valjakka. He moved for leave to appear *pro hac vice* on behalf of Valjakka, ECF No. 208, but the Court entered an order to show cause for failure to identify a California-based local co-counsel. ECF No. 209. Mr. Zito then withdrew his motion for leave to appear. ECF No. 218. Mr. Zito later appeared on behalf of third party AiPi, LLC, ECF No. 236, but that appearance on behalf of a *third party* did not render him or his firm Outside Counsel of Record for a *party* for

4

purposes of the protective order. *See* ECF No. 56 at ¶ 2.11.

Mr. Ramey next contends that, while he "provided no documents to AiPi,"[1] AiPi is "a provider of litigation support services" and thus "a Professional Vendor" for the purpose of the protective order. ECF No. 311 at 10.

It is true that the protective order contemplates access to protected documents for "Professional Vendors," i.e.,

> persons or entities that provide litigation support service (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

ECF No. 56 ¶ 2.14. Mr. Ramey says that AiPi fits this description because AiPi "assisted counsel in the production of Valjakka documents . . . including the collection of documents from Valjakka, . . . and providing documents to counsel for Defendant." ECF No. 311 at 10 (quoting ECF No. 233-1 ¶ 26). But the protective order requires both that Professional Vendors sign the "Acknowledgment and Agreement to Be Bound" and that disclosure of documents to Professional Vendors be "reasonably necessary." ECF No. 56 ¶ 7.2(f). Mr. Ramey offers no evidence that AiPi signed the Acknowledgment or that the disclosure of *Netflix's* confidential material was "reasonably necessary" for AiPi to assist with production of *Valjakka*'s documents. Thus, neither of these conditions was satisfied.

Mr. Ramey further argues that Netflix "was fully aware that lawyers who also worked at AiPi worked on the case"[2] because (1) Morehouse, Lund, and Sheets appeared on an email chain with Netflix's counsel in November 2023; and (2) Morehouse, Lund, and Sheets appeared as

---

[1] This contention is hard for the Court to accept. Mr. Ramey maintains that he shared Netflix confidential information with "Whitestone lawyers," not AiPi, but the email addresses he consistently used for these lawyers had AiPi-related domain names. *See, e.g.*, ECF No. 315-6 at 2 (Ramey emailing emorehouse@aipisolutions.com, elund@aipisolutions.com, and ksheets@aipisolutions.com about Netflix source code). In at least some instances, the "Whitestone" lawyers also used their AiPi titles in communications, prominently featured the AiPi logo, and discussed their role as litigation funders. ECF No. 315-1. On the current record, it appears the distinction between Whitestone and AiPi existed in name only.

[2] Although Mr. Ramey does not expressly label it as such, the Court construes this as an argument that Netflix failed to comply with Civil Local Rule 7-8(c)'s requirement that a sanctions motion "be made as soon as practicable after the filing party learns of the circumstances that it alleges make the motion appropriate." Otherwise, the Court fails to see the relevance of this argument to the underlying question of whether Mr. Ramey violated the protective order.

5

counsel for Valjakka at Valjakka's deposition on October 21, 2023. ECF No. 311 at 13. Netflix responds persuasively that these actions did not put it on notice that AiPi had access to its confidential material; Valjakka's deposition, for instance, could not have included confidential material because Valjakka himself was not permitted to review such material. *See* ECF No. 318 at 9–10.

Finally, Mr. Ramey contends that Netflix suffered no harm as a result of his violations of the protective order and that "[t]he only expenses Netflix is incurring are due to its own litigation tactics." ECF No. 311 at 15. The Court disagrees. Netflix, upon discovering that a third-party entity responsible for funding litigation against it had access to, *inter alia*, its confidential financial documents and source code, acted reasonably in taking steps to investigate the extent of the spread of its confidential information and to mitigate the spread thereof.[3] For the same reason, and despite Mr. Ramey's attempts to distinguish it, the Court finds *Apple Inc. v. Samsung Electronics Co., Ltd.*, No. CV 11-01846 LHK, 2013 WL 9768650 (N.D. Cal. Oct. 2, 2013) to be useful authority. In *Apple v. Samsung*, a patent case, Samsung's attorneys sent an unredacted expert report, including key terms of Apple license agreements that had been designed "Highly Confidential—Attorneys' Eyes Only," to their client, a direct competitor of Apple. *Id.* at *1. The court described the important role protective orders play in facilitating discovery and assuaging fears by litigants that competitors will wrongfully acquire their confidential information:

> Time and again in competitor patent cases, parties resist producing confidential information to their adversaries' lawyers. They fear, among other things, that the lawyers will insufficiently shield the information from the competitors that they represent. Yet time and again, the court assuages these fears with assurances that a protective order will keep the information out of the competitors' hands. . . . [C]onfidential information remains confidential because counsel and clients alike follow court orders. If parties breach this basic rule, the court's assurances become meaningless.

*Id.*; *see also id.* at *2 (ordering discovery into protective order violations); *Apple, Inc. v. Samsung Elecs. Co.*, No. 5:11-cv-01846-LHK (PSG), 2014 WL 12596470, at *9–10 (N.D. Cal. Jan. 29,

---

[3] Netflix did not "address its entitlement to fees" in its motion. ECF No. 315 at 15. The Court also expects that Netflix will incur more fees and costs as a result of the court-ordered discovery described below. The Court will therefore order the parties to file supplemental briefs concerning the appropriate amount of fees, as explained below.

6

2014) (granting motion for sanctions). While Netflix and AiPi are not direct competitors, as in *Apple*, it is undisputed that AiPi is in the business of funding litigation against tech companies—including Netflix. Netflix's interests in preventing AiPi's improper access to its confidential materials are incontestable.

In sum, Mr. Ramey's arguments are unavailing. The Court is persuaded that he violated the protective order by sharing confidential material covered by that order with unauthorized parties, namely attorneys employed by AiPi. The Court will award compensatory sanctions under Federal Rule of Civil Procedure 37(b) to compensate Netflix for the reasonable costs it incurred because of Mr. Ramey's noncompliance.

### B.     Civil Contempt

Netflix also asks the Court to issue an order to show cause why Mr. Ramey should not be held in civil contempt for violating a Court order. "Civil contempt sanctions . . . are employed for two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992); *see id.* ("Unlike the punitive nature of criminal sanctions, civil sanctions are wholly remedial."); *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778 (9th Cir. 1983) (purpose of compensatory sanctions is "to compensate the contemnor's adversary for the injuries which result from the noncompliance").

Neither consideration provides a basis for contempt here. There is no need for contempt sanctions to "coerce the defendant into compliance with the court's order," because Mr. Ramey no longer represents the plaintiff in this action. And contempt sanctions are not necessary to "compensate the complainant for losses sustained" because, as explained above, the Court has granted the motion for Rule 37 sanctions to compensate Netflix for its losses. Accordingly, the Court declines to issue an order to show cause why Mr. Ramey should not be held in civil contempt for his violations of the protective order.

### C.     Discovery

Netflix seeks three forms of discovery: (1) all documents and communications between Ramey LLP and AiPi related to this action; (2) current contact information for each person

1  presently or previously affiliated with AiPi with whom employees of Ramey LLP communicated;
2  and (3) a 3.5-hour deposition of Mr. Ramey, concerning the communications between Ramey LLP
3  and current/former AiPi employees that include, relate to, or otherwise discuss Netflix confidential
4  materials.  ECF No. 315 at 5–6.

5         The Court grants the second and third categories of discovery, and also permits Netflix to
6  request identification by Mr. Ramey and Ramey LLP (collectively "Ramey") of any documents
7  designated "Confidential," "Highly Confidential–Attorneys' Eyes Only," or "Highly Confidential
8  AEO–Source Code" under the protective order that were shared with third parties; to request
9  identification of such third parties; and to request production of any communication to or from
10 Ramey or AiPi, or Ramey and any other third party, concerning such documents.

## CONCLUSION

12        For the reasons set forth above, Netflix's motion for an order to show cause and sanctions
13 is granted in part and denied in part.  Netflix's request for discovery is granted in part and denied
14 in part as set forth above.

15        Netflix shall file a supplemental brief within 14 days of the completion of the discovery
16 described above that "itemize[s] with particularity the otherwise unnecessary expenses, including
17 attorney fees, directly caused by the alleged violation or breach, and set[s] forth an appropriate
18 justification for any attorney-fee hourly rate claimed."  Civ. L.R. 37-4(b)(3).  Mr. Ramey may file
19 a response no later than 14 days after Netflix files its brief.

20        The Court sets a case management conference on September 23, 2025 at 2:00 p.m.  Mr.
21 Ramey shall appear at that conference.  Updated joint case management statements are due
22 September 16, 2025.

23        **IT IS SO ORDERED.**

24 Dated: July 10, 2025

                                          JON S. TIGAR
                                     United States District Judge