Rachael Lamkin (SBN 246066)
rachael.lamkin@bakerbotts.com
Karan Singh Dhadialla (SBN 296313)
karan.dhadialla@bakerbotts.com
BAKER BOTTS L.L.P.
101 California St., Suite 3200
San Francisco, CA 94111
Telephone: +1.415.291.6200
Fax: +1.415.291.6300

Attorneys For Defendant
NETFLIX, INC.

(*Additional counsel listed in signature block*)

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| LAURI VALJAKKA | Case No.: 4:22-cv-01490-JST |
| Plaintiff, | **DEFENDANT NETFLIX, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| v. | |
| NETFLIX, INC. | |
| Defendant. | Date:      October 2, 2025<br>Time:      2:00 p.m.<br>Crtrm:    6, 2nd Floor<br>Judge:    Hon. Jon S. Tigar |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on October 2, 2025, at 2:00 p.m., or before or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable Jon S. Tigar, 1301 Clay Street, Oakland, California 94612, Defendant Netflix, Inc. ("Netflix") will and hereby does move this Court for an order granting Netflix's Motion for Summary Judgment. Netflix's Motion is based on this Notice of Motion, the Motion, the memorandum of points and authorities and declarations in support filed herewith, documents sealed concurrently herewith, the proposed order filed herewith, any additional pleadings and papers on file in this matter, and any arguments that may be presented at the hearing.

## STATEMENT OF RELIEF REQUESTED

Netflix respectfully requests that this Court grant summary judgment in Netflix's favor on its claim under the CUVTA. Netflix further requests that this Court order Valjakka to continue holding the Enforcement Assets until this Court has adjudicated Netflix's forthcoming motion for attorneys' fees.


Dated:   August 21, 2025                    Baker Botts L.L.P.


By: */s/ Rachael Lamkin*
<u>                                              </u>
Rachael Lamkin
rachael.lamkin@bakerbotts.com
Karan Singh Dhadialla
karan.dhadialla@bakerbotts.com
BAKER BOTTS, L.L.P.
101 California Street, Suite 3200
San Francisco, CA 94111
Telephone: +1.415.291.6200
Fax: +1.415.291.6300

Sarah E. Piepmeier, Bar No. 227094
SPiepmeier@perkinscoie.com
Elise S. Edlin, Bar No. 293756
EEdlin@perkinscoie.com
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, California 94105
Telephone: +1.415.344.7000
Facsimile: +1.415.344.7050

Janice L. Ta (appearance *pro hac vice*)
JTa@perkinscoie.com
PERKINS COIE LLP
405 Colorado Street, Suite 1700
Austin, Texas 78701
Telephone: +1.737.256.6100
Facsimile: +1.737.256.6300

Adam Hester, Bar No. 311206
PERKINS COIE LLP
33 E. Main Street, Ste. 201
Madison, Wisconsin 53703
AHester@perkinscoie.com
Telephone: +650.838.4311

***Attorneys for Defendant
NETFLIX, INC.***

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND
AUTHORITIES

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ........................................................................................................1

II. BACKGROUND AND UNDISPUTED FACTS .....................................................1

A.  Valjakka Secretly Transferred Assets After He Filed Suit ..................................1

B.  Valjakka Commits Settlement Fraud and Violates the Court's Rules to Avoid
Disclosing CDN ....................................................................................................3

III. LEGAL STANDARD................................................................................................4

IV. ARGUMENT ............................................................................................................5

A.  Netflix Is a Creditor Under the CUVTA................................................................5

B.  Valjakka Transferred the Enforcement Assets to CDN ........................................5

C.  Valjakka's Transfers to CDN Are Subject to the CUVTA Because They Were Made
with Actual Intent to Hinder, Delay, or Defraud Netflix .....................................5

    (a)  The CUVTA Badges of Fraud Evidence Valjakka's Actual Fraudulent Intent.......5

        i.  Badge 1: Valjakka's Insider Transactions Evidence His Fraudulent
Intent ............................................................................................................6

        ii.  Badge 2: Valjakka Controls CDN................................................................6

        iii.  Badge 3: Valjakka's Extensive Efforts to Conceal CDN Evidences His
Fraudulent Intent .........................................................................................6

        iv.  Badge 5: Valjakka's Transfer of Substantially All of His Assets
Evidences His Fraudulent Intent ..................................................................7

        v.  Badge 7: Valjakka's Removal and Concealment of the Enforcement
Assets Evidences His Fraudulent Intent .......................................................8

        vi.  Badge 8: The Low Cost of the CDN Licenses Versus the Value of the
Enforcement Assets Evidences Valjakka's Fraudulent Intent ....................8

        vii.  Badge 9: Valjakka and/or CDN and/or IPRA's Likely Insolvency
Evidences Valjakka's Fraudulent Intent ......................................................8

    (b)  There Exists Considerable Further Evidence of Valjakka's Fraudulent Intent .......9

        i.  Valjakka Transferred the Assets and Kept the Liabilities, Further
Evidencing His Fraudulent Intent ................................................................9

        ii.  Valjakka's Overall Litigation Strategy Demonstrates His Fraudulent
Intent ............................................................................................................9

D.  Valjakka Also Violated the Constructive Fraud Provisions of the CUVTA ....................10

iii

E.      Valjakka Has Not Raised Any Valid Defense to the Fraudulent Transfer Claims............11

        (a)      Valjakka's Transfers Did Not Have a Legitimate Supervening Purpose ..............11

V.      CONCLUSION............................................................................................................12

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*AiPi, LLC v. Netflix, Inc.*,
No. 1:24-mc-00002-LMB-WEF (E.D. Va. Apr. 11, 2025) ...................................10

*Anderson v. Liberty Lobby*, *Inc.*,
477 U.S. 242 (1986) .............................................................................................5

*Brandlin v. Eurolux, LLC*,
No. 21-56001, 2022 WL 2713232 (9th Cir. July 13, 2022)................................11

*Carmen v. San Francisco Unified Sch. Dist.*,
237 F.3d 1026 (9th Cir. 2001) .............................................................................5

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..............................................................................................4

*In re Acequia, Inc.*,
34 F.3d 800 (9th Cir. 1994) ...........................................................................10, 11

*In re Beverly*,
374 B.R. 221 (B.A.P. 9th Cir. 2007).....................................................................6

*Keenan v. Allan*,
91 F.3d 1275 (9th Cir. 1996) ...............................................................................5

*Max Sugarman Funeral Home, Inc. v. A.D.B. Invs.*,
926 F.2d 1248 (1st Cir. 1991) ............................................................................11

*Valjakka v. Akamai Techs., Inc.*,
No. 6:21-cv-00942-ADA (W.D. Tex. Sept. 10, 2021) ........................................10

*Virtue Glob. Holdings Ltd. V. Rearden LLC*,
No. 15-CV-00797-JST, 2016 WL 9045855 (N.D. Cal. June 17, 2016) ................10

*Wimbledon Fund, SPC Class TT v. Graybox, LLC*,
648 Fed. App'x 701 (9th Cir. 2016) ....................................................................10

STATUTES

35 U.S.C. § 285..........................................................................................................5, 10

Cal. Civ. Code §§ 3439.01(b) and (c)..............................................................................9

Cal. Civ. Code § 3439.04(a)(2)......................................................................................11

Cal. Civ. Code § 3439.04(a)(7)........................................................................................8

Cal. Civ. Code § 3439.04(a)(9)..................................................................................................8

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On October 18, 2023, this Court found it likely that Netflix would prevail on its California Uniform Voidable Transactions Act ("CUVTA") claim against Plaintiff Lauri Valjakka ("Valjakka"). ECF No. 204 ("PI Order"). At the close of its PI Order, this Court held: "Valjakka is hereby restrained and enjoined, pending trial, from selling, using, moving, concealing, transferring, or otherwise disposing of any Enforcement Asset in his possession, custody, or control."[1] PI Order, 12:27-13:1. Since that Order, Netflix has uncovered additional evidence of fraud, none of which has been or could be contested by Valjakka. Netflix respectfully asks that this Court find at summary judgment that Valjakka committed fraudulent transfers in violation of CUVTA and order Valjakka to continue to hold the Enforcement Assets pending adjudication of Netflix's forthcoming attorneys' fees motion.

## II.    BACKGROUND AND UNDISPUTED FACTS

In September 2021, Valjakka began filing complaints in the Western District of Texas, alleging infringement of patents purportedly held in Valjakka's name. In late October 2021, Akamai—a defendant in one of Valjakka's suits—provided to Valjakka's then-outside counsel, Erick Robinson, two Finnish court opinions finding and affirming that Valjakka did not own the Asserted Patents. Within days, Valjakka transferred all rights in the Asserted Patents from himself to CDN Licensing Oy ("CDN")—a Finnish entity he owns and controls—without disclosing the transfers to the Court, Netflix, or the numerous parties with whom he would later settle his infringement assertions.[2] This transfer remained hidden for nearly two (2) years spanning sixteen (16) related actions.

### A.    Valjakka Secretly Transferred Assets After He Filed Suit

Plaintiff Lauri Valjakka is a citizen of Finland, living in Finland. Third Amended Complaint, ECF No. 74 ¶1. Valjakka owns CDN and IPRA Technologies Ltd. Oy, another Finnish entity that attempted to monetize Valjakka's patents prior to litigation. Lamkin Decl., Exh. 1 (Valjakka Depo Tr.) at 4:20-23, 7:12-17, 25:6-21, 27:1-2, 41:19-42:3. Valjakka voluntarily submitted to the

---

[1] Enforcement Assets "consist of damages, litigation, or licensing revenues related to the Asserted Patents." PI Order, at 12:24-26.
[2] In fact, Valjakka did not own the Asserted Patents when he filed his complaints, so the transfer to CDN was a nullity. But Valjakka kept that secret for the next two years.

jurisdiction of this Court and other U.S. courts so that he could pursue sixteen (16) lawsuits against U.S. companies in his own name.[3] *See* Answer to Def's Counterclaims, ECF No. 117 ¶4 (Valjakka admitting this Court has jurisdiction over his person).

In September 2021, Valjakka sued five (5) entities alleging patent infringement, including Defendant Netflix, originally asserting U.S. Patent No. 8,495,167 and later adding U.S. Patent No. 10,726,102 (the '167 and '102 Patents, or the "Asserted Patents," collectively).[4] Shortly after filing suit, Akamai's outside counsel provided to Valjakka's then-outside counsel, Erick Robinson, two Finnish legal opinions (trial court and appellate court opinions) determining and affirming that Valjakka did not own the Asserted Patents. ECF No. 116-2 at 2, 12. Within days, apparently anticipating a prompt settlement of the Akamai matter, Valjakka began secretly transferring Enforcement Assets to CDN that might otherwise be used to settle contingent debts held by defendants, including Netflix.

For example, in November 2021, Valjakka transferred all rights in the asserted '167 Patent to the Finnish Entity, CDN. The '167 License expressly states that ████████████████████ ████████████████████████████████████

████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████

---

[3] *Valjakka v. Akamai Technologies, Inc*., No. 6:21-cv-00942-ADA (W.D. Tex. Sept. 10, 2021); *Valjakka v. Cisco Sys., Inc.*, No. 6:21-cv-00944-ADA (W.D. Tex. Sept. 10, 2021); *Valjakka v. Amazon.Com, Inc.* et al, No. 6:21-cv-00945-ADA (W.D. Tex., Sept. 10, 2021); *Valjakka v. Netflix, Inc.*, No. 6:21-cv-00947-ADA (W.D. Tex. Sept. 13, 2021); *Valjakka v. Microsoft Corp.,* No. 6:21-cv-01006-ADA (W.D. Tex. Sept. 29, 2021); *Valjakka v. Apple Inc.*, No. 6:22-cv-00003-ADA (W.D. Tex. Jan. 3, 2022); *Valjakka v. Google LLC*, No. 6:22-cv-00004-ADA (W.D. Tex. Jan. 3, 2022); *Valjakka v. Sony Interactive Ent. Inc.,* No. 6:22-cv-00005-ADA (W.D. Tex. Jan. 3, 2022); *Valjakka v. Philips North America LLC*, No. 6:22-cv-00226-ADA (W.D. Tex. Mar. 2, 2022); *Valjakka v. Intertrust Technologies Corp.,* No. 6:22-cv-00234-ADA (W.D. Tex. Mar. 3, 2022); *Valjakka v. Charter Communications Inc.*, No. 6:22-cv-00491-ADA (W.D. Tex. May 13, 2022); *Valjakka v. Comcast Corp.*, No. 6:22-cv-00493-ADA (W.D. Tex. May 13, 2022); *Valjakka v. Meta Platforms Inc.*, No. 6:22-cv-00495-ADA (W.D. Tex. May 13, 2022); *Valjakka v. Zoom Video Communications Inc.*, No. 6:22-cv-00496-ADA (W.D. Tex. May 13, 2022); *Valjakka v. Cox Communications Inc. et al*, No. 6:22-cv-00497-ADA (W.D. Tex. May 16, 2022).
[4] *Valjakka v. Netflix, Inc.,* No. 6:21-cv-00947-ADA (W.D. Tex. Sept. 13, 2021); *Valjakka v. Amazon.Com, Inc. et al*, No. 6:21-cv-00945-ADA (W.D. Tex., Sept. 10, 2021); *Valjakka v. Cisco Sys., Inc.*, No. 6:21-cv-00944-ADA (W.D. Tex. Sept. 10, 2021); *Valjakka v. Akamai Technologies, Inc.*, No .6:21-cv-00942-ADA (W.D. Tex. Sept. 10, 2021); *Valjakka v. Microsoft Corp.*, No. 6:21-cv-01006-ADA (W.D. Tex. Sept. 29, 2021).

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

ECF No. 126-3 ('167 License, NFX-VALJ-00011048-65) at 49 (Certified Finnish translation).

Valjakka admits to assigning the '167 Patent's rights and revenue to a new Finnish entity to shield that revenue from the creditors of Valjakka and his company, IPRA Technologies. *See* ECF No. 204 ("PI Order") at 2:15-24. Valjakka hid this conduct from the Court, Netflix, and all settling defendants.

**B.    Valjakka Commits Settlement Fraud and Violates the Court's Rules to Avoid Disclosing CDN**

On December 22, 2021, Valjakka entered into a settlement and licensing agreement with Akamai, one of the first five defendants sued. Therein, Valjakka purported to grant Akamai a license to both Asserted Patents, but Valjakka no longer had that right; CDN exclusively held the right to grant licenses to the '167 Patent. *See* ECF No. 126-3 ('167 License) at 50. Undaunted, ███████ █████████████████████████████████████████████████████████████████████████. ECF No. 126-5 (LV004030-37) at 33 (6(c)).

On December 31, 2021, Valjakka signed the '102 License, granting ███████████████ ███████████████████████████████████████████████████████████████████████ ██████████████████████████████████████." ECF No. 126-6 ('102 License; NFX-VALJ-00011043-46) at 43. As with the '167 License, the '102 License granted CDN exclusive rights to the '102 Patent, all revenue therefrom, and expressly stated that only CDN can grant licenses to the '102 Patent: "the Licensor cannot grant parallel licenses based on the same patent to third parties." *Id*.

Valjakka had, again, transferred all litigation and licensing revenues from himself personally to the Finnish entity that he owned, CDN, in yet another insider transaction. Concluding the unusual agreement, the only right Valjakka retained was the right to ███████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ████████████████████████████." ECF No. 126-6 ('102 License; NFX-VALJ-00011043-46) at 43.

The next business day after Valjakka signed the '102 License, January 3, 2022, Valjakka sued three (3) more entities in his own name, attesting to be the owner of the Asserted Patents. *See, e.g.*,

*Valjakka v. Sony*, No. 6:22-cv-00005, ECF No. 1 ¶ 15 ("Plaintiff Lauri is the owner of the entire right, title, and interest in and to the patents-in-suit.").

Ultimately, Valjakka would sign five (5) more settlement and licensing agreements.[5] In each, Valjakka again fraudulently warranted ███████████████████████████████. In each, he concealed CDN. ECF No. 126-9 (LV004058-69) at 64 (5.5(a)); ECF No. 126-10 (LV004038-57) at 43 (5.1.1); ECF No. 126-8 (LV004070-86) at 70, 73 (VI(2)-(4)); ECF No. 126-7 (LV003942-86) at 46-47 (2(a)-(c)).

As of November 24, 2023, Valjakka had received settlement payments "for a total of $1,285,000." ECF No. 233-1 (Lund Decl.) ¶28. AiPi, Valjakka's litigation funder, ████████████ ████████████████████████████████████████████████████████████████. Lamkin Decl., Exh. A (DOC-000154294). CUVTA discovery has revealed the following payments received by CDN ████████████████████ representing Valjakka's share of the Enforcement Assets:

- 4/22/2022 – ██████████ (Lamkin Decl., Exh. B (CUVTA000102) at CUVTA000103);
- 7/18/2022 – ██████████ (Lamkin Decl., Exh. C (CUVTA000108) at CUVTA000109); and
- 7/21/2022 – ██████████ (Lamkin Decl., Exh. C (CUVTA000108) at CUVTA000109).

## III.    LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail, the moving party must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* at 324. The party opposing summary judgment must then present affirmative

---

[5] One of the settlement agreements ████████████████████ ECF No. 126-7. As such, there are ████████████████████ According to Valjakka, one (1) defendant was dismissed without signing a settlement agreement, and Netflix has not settled (thus accounting for sixteen (16) defendants across Valjakka's campaign).

evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 257 (1986).

On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (citation omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 242. The court determines whether the record "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. In ruling on a motion for summary judgment, the court only needs to consider cited materials but may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The court is not obligated to scour the record. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). Counsel has an obligation to lay out their support clearly. *See Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

## IV.    ARGUMENT

### A.    Netflix Is a Creditor Under the CUVTA

Netflix is a "creditor" under the CUVTA. PI Order at 4:22-5:5. Netflix holds a contingent claim for attorney's fees under 35 U.S.C. § 285. *Id.*

### B.    Valjakka Transferred the Enforcement Assets to CDN

As of November 24, 2023, Valjakka had "reached settlement with five entities for a total of $1,285,000." ECF No. 233-1 (Lund Decl.) ¶28. CUVTA discovery has revealed transfers of the Enforcement Assets totaling at least ▮▮▮▮▮▮▮ to CDN. *See* Lamkin Decl., Exh. B (CUVTA000102) at CUVTA000103; Lamkin Decl., Exh. C (CUVTA000108) at CUVTA000109.

### C.    Valjakka's Transfers to CDN Are Subject to the CUVTA Because They Were Made with Actual Intent to Hinder, Delay, or Defraud Netflix

#### (a)    The CUVTA Badges of Fraud Evidence Valjakka's Actual Fraudulent Intent

CUVTA enumerates eleven (11) nonexclusive factors—the "badges of fraud"—that indicate actual intent to hinder, delay, or defraud creditors. PI Order at 6:17-7:17. When multiple badges coalesce—particularly involving concealment, insider transfers, and insolvency—the inference of

5

fraudulent intent becomes legally conclusive in the absence of any material countervailing evidence. *See In re Beverly*, 374 B.R. 221, 236 (B.A.P. 9th Cir. 2007) ("The presence of several badges of fraud can constitute conclusive evidence of actual intent to defraud, absent 'significantly clear' evidence of a legitimate supervening purpose."). No such rebuttal exists here.

These badges demonstrate Valjakka's fraudulent intent in transferring the Enforcement Assets to CDN. Collectively, they present an undisputed pattern of concealment, insider self-dealing, and inadequate consideration that no reasonable jury could overlook. Given the totality of the evidence, and applying the standard under Rule 56, the record is so one-sided in favor of Netflix that summary judgment is not only appropriate—it is compelled.

### i.   Badge 1: Valjakka's Insider Transactions Evidence His Fraudulent Intent

The Court found Badge 1 satisfied because the transfer of assets from Valjakka to CDN was an insider transaction. PI Order at 8:2-3 ("Because Valjakka controls CDN, that entity is an insider, and the transfer of the Licenses between Valjakka and CDN constituted an insider transaction.") Nothing in discovery alters that correct finding.

Indeed, the Court-ordered CUVTA discovery confirms the insider nature of Valjakka's transfer of the Enforcement Assets. AiPi established ███████████ to manage settlement proceeds from Valjakka's patent assertion campaign. Lamkin Decl., Exh. A (DOC-000154294). Each of the settlement agreements directed the litigation licensee to ████████████████████ ██████████. ECF Nos. 126-5 at 2, 126-7 at 4, 126-8 at 3, 126-9 at 3-4, 126-10 at 4. ████████ ██████████████████████████. Lamkin Decl., Exh. D (DOC-000002323). Rather than delivering those funds to Valjakka himself, ████████████ transferred Valjakka's share to CDN. *See* Lamkin Decl., Exh. B (CUVTA000102) CUVTA000103; Lamkin Decl., Exh. C (CUVTA000109) at CUVTA000109.

### ii.   Badge 2: Valjakka Controls CDN

"[T]he parties agree that Valjakka retains control over CDN." PI Order at 8:4-7. Badge 2 is satisfied and nothing in discovery has evidenced otherwise.

### iii.   Badge 3: Valjakka's Extensive Efforts to Conceal CDN Evidences His Fraudulent Intent

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

1    The Court found that Valjakka concealed the transfer of assets, satisfying Badge 3. PI Order

2    at 8:8-9:3. Nothing in discovery has evidenced a lack of concealment.

3    The CUVTA discovery further highlights the egregious nature of Valjakka's behavior. Not

4    only did Valjakka hide the existence of CDN and his plans to transfer the Enforcement Assets to it,

5    but he also hid the fact that the transfers had already occurred. As discussed in Netflix's request for a

6    preliminary injunction, on June 9, 2022, Netflix served Interrogatory No. 8, which states: "Identify

7    every person or entity with any past, current, or prospective financial, ownership, or other interest in

8    the Asserted Patents[.]" ECF No. 126-11 at 19. In his response served on July 11, 2022, Valjakka did

9    not disclose CDN Licensing. *Id.* at 19–20. Valjakka chose not to disclose CDN despite CDN receiving

10    ██████████ in Enforcement Assets on ████████████████████████. Lamkin Decl.,

11    Exh. B (CUVTA000102) at CUVTA000103. Further, Valjakka's supplemental response dated

12    September 9, 2022 still did not identify CDN. ECF No. 126-11 at 20-21. By this time, CDN had

13    received an additional ████████ in Enforcement Assets. Lamkin Decl., Exh. C (CUVTA000109)

14    at CUVTA000109.

15        iv.    *Badge 5: Valjakka's Transfer of Substantially All of His Assets Evidences His*

16    *Fraudulent Intent*

17    Discovery propounded after this Court granted Netflix's preliminary injunction motion reveals

18    that Valjakka transferred substantially all his assets to CDN. For example, Valjakka's personal Finnish

19    attorney, Onni Hietahlati, advised Valjakka to "██████████████████████████████████

20    ████████████████████████████████████ Lamkin Decl.

21    Exh. E (CUVTA000226) (emphasis added). Even taking this approach, Onni warned that ████████

22    ████████████████████████████████████████

23    ████████████ *Id.* (emphasis added). Onni explained that, even if Valjakka received larger

24    settlements than expected, ████████████████████████████████████

25    ████████████████████████ *Id.* Thus, Valjakka transferred substantially all his assets to an

26    entity he intended to use for his personal financial obligations. Indeed, Valjakka contemplated offering

27    ████████████████████ as collateral for outstanding debts. Lamkin Decl. Exh. F

28    (CUVTA000231).

v.    *Badge 7: Valjakka's Removal and Concealment of the Enforcement Assets Evidences His Fraudulent Intent*

There is no question that Valjakka "removed or concealed assets." *See* Cal. Civ. Code § 3439.04(a)(7) ("Whether the debtor removed or concealed assets."). As shown herein and previously found by this Court, Valjakka has consistently secreted and concealed the ultimate recipient of the Enforcement Assets. PI Order at 9. No discovery alters this correct finding.

vi.    *Badge 8: The Low Cost of the CDN Licenses Versus the Value of the Enforcement Assets Evidences Valjakka's Fraudulent Intent*

This Court found Badge 8 satisfied as "the consideration for the Licenses was not reasonably equivalent to the value of the transferred assets." PI Order at 9:21-23. Valjakka propounded no evidence or discovery that disputes this finding.

vii.    *Badge 9: Valjakka and/or CDN and/or IPRA's Likely Insolvency Evidences Valjakka's Fraudulent Intent*

The evidence demonstrates that Valjakka, and CDN, were "insolvent or became insolvent shortly after the transfer was made or the obligation was incurred." Cal. Civ. Code § 3439.04(a)(9). Valjakka transferred all of his assets to CDN, and even those assets were not sufficient to cover Valjakka's financial obligations. *See supra* at § IV.C.(a).iv. ███████████████ ████████████ For example, a loan agreement entered into by CDN on November 5, 2021 explains, ██████████████████████████████████████████████████████ █████████████████████████████ Lamkin Decl. Exh. G (CUVTA000091). An email from Onni to Valjakka explained that one of Valjakka's creditors ███████████████████ Lamkin Decl. Exh. H (CUVTA000234).

In his June deposition, Valjakka announced that his company IPRA Technologies, the entity—other than himself—standing to benefit from the litigation settlements, declared bankruptcy days before in May 2023. ECF No. 127-2 (Valjakka Depo Tr.) at 45:21-46:12. Further, in his deposition, Valjakka explained that CDN is being "restructure[ed]" because of "the bankruptcy." *Id.* at 50:25-51:6.

Thus, Valjakka intended the Enforcement Assets transferred from Valjakka to himself (CDN) to be used to cure or attempt to cure debtor claims upon IPRA Technology or upon Valjakka himself due to pending insolvency issues.

(b)    There Exists Considerable Further Evidence of Valjakka's Fraudulent Intent

The CUVTA's badges of fraud are not exhaustive; this Court is permitted to consider other evidence in determining whether Valjakka has committed a fraudulent transfer. *Virtue Glob. Holdings Ltd.*, 2016 WL 9045855, at *6 ("The enumerated factors are nonexclusive[.]").

i.    *Valjakka Transferred the Assets and Kept the Liabilities, Further Evidencing His Fraudulent Intent*

Another indicium of fraud is that Valjakka transferred rights to the Asserted Patents and Enforcement Assets, but not the associated liabilities. *See Virtue Glob. Holdings Ltd.*, 2016 WL 9045855, at *7 (agreeing that plaintiff "used the transfer as a means to shoulder the debt but strip [it]self of assets with which to pay the debt," and that said conduct was relevant under CUVTA). Netflix's claim for attorneys' fees is a contingent claim creating a liability held by Valjakka. *See* Cal. Civ. Code §§ 3439.01(b) and (c). Valjakka stands before this Court in name only. His representation and submission to this Court's jurisdiction became a sham when Valjakka secretly transferred all assets to CDN. If this Court finds that Valjakka is liable to Netflix for attorneys' fees, it is an empty order if it cannot be enforced.

ii.    *Valjakka's Overall Litigation Strategy Demonstrates His Fraudulent Intent*

Netflix has uncovered considerable additional evidence of Valjakka's fraudulent concealment. For example, in the settlement agreements, Valjakka represents that the Asserted Patents have never ███████████████████████████████████████ *See, e.g.*, ECF No. 126-7 (LV003942-86) at 48 (2.1(j)). That is false: Valjakka not only admitted under oath in deposition that the Asserted Patents were subject to litigation in Finland over their proper title, but he admitted to losing that litigation. ECF No. 127-2 (Valjakka Depo Tr.) at 75:3-77:5.

By way of second example, Valjakka created CDN and transferred all patent rights into CDN just days after his attorneys and litigation funders were made aware, by Defendant Akamai, that Valjakka was found not to have any rights in the Asserted Patents by Finnish courts in 2009. Valjakka

filed his first Complaint of the campaign against Akamai on September 10, 2021. *Valjakka v. Akamai Techs., Inc.*, No. 6:21-cv-00942-ADA, ECF No. 1 (W.D. Tex. Sept. 10, 2021). On October 22, 2021, James Day, Akamai's outside counsel, sent an email to Erick Robinson, Valjakka's initial litigation counsel, suggesting that Mr. Day provided to Robinson the Finnish court opinions determining and affirming that Valjakka had not owned the asserted '167 Patent since at least 2005.[6] *AiPi, LLC v. Netflix, Inc.*, No. 1:24-mc-00002-LMB-WEF ("EDVA Litigation"), ECF No. 92-5 (E.D. Va. Apr. 11, 2025) at AiPi0000367; ECF No. 316-3 at 6-7, 9.

████████████████████████████████ after Akamai's sending of the Finnish court opinions, Valjakka had created CDN and transferred all rights in the asserted patents. ECF No. 126-3 ('167 License) at 50; ECF No. 126-6 ('102 License; NFX-VALJ-00011043-46) at 43. He did so with full knowledge of the ownership issues and the fraudulent nature of his continued assertions.

On November 13, 2021, Robinson told Morehouse (AiPi) that he ████████████ ████████████████████████" Lamkin Decl. Exh. I (DOC-000129137).

On December 22, 2021, Valjakka settled with Akamai for a trivial sum, further evidencing his understanding that the Valjakka Campaign would fail if the ownership issue were made public. ECF No. 316-4 at 7.

In sum, the confluence of these many badges of fraud and additional circumstantial evidence constitutes conclusive evidence of Valjakka's actual intent to defraud. *See Virtue Glob. Holdings Ltd.*, 2016 WL 9045855, at *7 (*citing In re Acequia, Inc.*, 34 F.3d 800, 806 (9th Cir. 1994)); *see also Wimbledon Fund, SPC Class TT v. Graybox, LLC*, 648 Fed. App'x 701, 702 (9th Cir. 2016) (affirming issuance of injunction on satisfaction of five (5) badges of fraud). No reasonable jury could find that Valjakka transferred the Enforcement Assets without actual intent to hinder, delay, or defraud Netflix or Valjakka's other creditors. The evidence demands a finding that Valjakka transferred the Enforcement Assets to avoid paying Netflix's contingent claim for Section 285 fees.

**D.     Valjakka Also Violated the Constructive Fraud Provisions of the CUVTA**

---

[6] This email had several attachments. Mr. Day's email has been produced to Netflix by AiPi, but the attachments have not. Valjakka did not produce the Finnish court opinions to Netflix until 8/31/2022, and he produced them in Finnish with no indication of their import.

10

Even if Valjakka lacked actual intent, summary judgment is still appropriate under the constructive fraud provisions of the CUVTA. A transfer is voidable if the transferor "(1) did not receive 'reasonably equivalent value in exchange for the transfer' and (2) made the transfer when it 'believed or reasonably should have believed' it could not pay its debts 'as they became due.'" *Brandlin v. Eurolux, LLC*, No. 21-56001, 2022 WL 2713232, at *1 (9th Cir. July 13, 2022) (quoting Cal. Civ. Code § 3439.04(a)(2)). CDN paid approximately ███████ total for exclusive rights to patents, ECF No. 126-3 at 4; ECF No. 126-6 at 3, that have yielded over $1.2 million in revenue. ECF No. 233-1 (Lund Decl.) ¶28. Moreover, the record shows Valjakka, CDN, and IPRA were each insolvent or approaching insolvency at the time of the transfers. *See, e.g.*, Lamkin Decl. Exh. G (CUVTA000091) (explaining that ███████████████████████████████████████████ ████████████████████████████████████████████), Exh. H (CUVA000234) (stating that one of Valjakka's creditors ███████████████). This satisfies the second prong of § 3439.04(a)(2), which does not require intent, only inadequate consideration and financial distress.

Because no genuine dispute exists on these points, summary judgment is also proper on constructive fraudulent transfer under the CUVTA.

**E.    Valjakka Has Not Raised Any Valid Defense to the Fraudulent Transfer Claims**

   (a)    <u>Valjakka's Transfers Did Not Have a Legitimate Supervening Purpose</u>

Valjakka also cannot meet his burden to negate the irrefutable evidence of actual fraudulent intent by providing "'significantly clear' evidence of a legitimate supervening purpose." *In re Acequia*, 34 F.3d at 806 (9th Cir. 1994) (quoting *Max Sugarman Funeral Home, Inc. v. A.D.B. Invs.*, 926 F.2d 1248, 1254–55 (1st Cir. 1991)). Valjakka argued that CDN was created to "easily divide [his] financial interest in the '167 and '102 patents with other investors, to obtain financing for this litigation and others, and to more easily administer the financing and proceeds from this litigation and others." ECF No. 143-1 ¶10. As this Court previously concluded, however, "Valjakka neither explains, nor provides supporting evidence showing, how the creation of CDN allows Valjakka to accomplish these goals." PI Order at 10. No new evidence justifies a different conclusion.

Thus, no reasonable jury could conclude that Valjakka has shown a valid defense for his violations of the CUVTA.

11

## V.     CONCLUSION

This Court ordered: "Valjakka is hereby restrained and enjoined, ***pending trial***, from selling, using, moving, concealing, transferring, or otherwise disposing of any Enforcement Asset in his possession, custody, or control." PI Order, 12:27-13:1 (emphasis added). Since that Order, Netflix has uncovered even more evidence of fraud, none of which has been or could be contested by Valjakka.

Netflix respectfully requests that this Court grant summary judgment in Netflix's favor on its claim under the CUVTA. Netflix further requests that this Court order Valjakka to continue holding the Enforcement Assets until this Court has adjudicated Netflix's forthcoming motion for attorneys' fees.


Dated:     August 21, 2025                    Respectfully submitted,


                                    By: */s/ Rachael Lamkin*
                                         Rachael Lamkin
                                         rachael.lamkin@bakerbotts.com
                                         Karan Singh Dhadialla
                                         karan.dhadialla@bakerbotts.com
                                         BAKER BOTTS, L.L.P.
                                         101 California Street, Suite 3200
                                         San Francisco, CA 94111
                                         Telephone: +1.415.291.6200
                                         Fax: +1.415.291.6300

                                         Sarah E. Piepmeier, Bar No. 227094
                                         SPiepmeier@perkinscoie.com
                                         Elise S. Edlin, Bar No. 293756
                                         EEdlin@perkinscoie.com
                                         PERKINS COIE LLP
                                         505 Howard Street, Suite 1000
                                         San Francisco, California 94105
                                         Telephone: +1.415.344.7000
                                         Facsimile: +1.415.344.7050

                                         Janice L. Ta (appearance *pro hac vice*)
                                         JTa@perkinscoie.com
                                         PERKINS COIE LLP
                                         405 Colorado Street, Suite 1700
                                         Austin, Texas 78701
                                         Telephone: +1.737.256.6100
                                         Facsimile: +1.737.256.6300

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

Adam Hester, Bar No. 311206
PERKINS COIE LLP
33 E. Main Street, Ste. 201
Madison, Wisconsin 53703
AHester@perkinscoie.com
Telephone: +650.838.4311

***Attorneys for Defendant
NETFLIX, INC.***

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND
AUTHORITIES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF CONFERENCE

On August 15, 2025, Rachael Lamkin emailed Lauri Valjakka stating, "If you intend to file an affirmative 'cross summary judgment motion,' we need to coordinate and file by 8/21. Do you intend to file your own summary judgment motion? (To be clear, if Netflix files one, you have the opportunity to respond regardless of whether you file your own.)" Mr. Valjakka did not respond until 8/21, the date cross motions would be due. On that date, he said that he was filing a summary judgment motion and would be filing on 8/25. Ms. Lamkin wrote back and again explained that the parties needed to coordinate and asked Mr. Valjakka what type of motion he would be filing. Mr. Valjakka did not respond. Given that the last date to file summary judgment motions in a cross-motion situation is today, Netflix files its CUVTA motion today. Netflix will continue to try to coordinate with Mr. Valjakka if he does in fact file a summary judgment motion on 8/25, including suggesting a briefing schedule that preserves the October 2, 2025 hearing date.

Dated: August 21, 2025              */s/ Rachael Lamkin*
                                     Rachael Lamkin