# Exhibit 1

Plaintiff Lauri Valjakka ("Valjakka") files this ~~memorandum of law in opposition to Defendant Netflix, Inc.'s ("Netflix" or "Defendant")~~ Motion for ~~Preliminary Injunction ("Defendant's~~Summary Judgement Dismissing the CUVTA Counterclaim ("Valjakka's Motion") and in support thereof states as follows:

## I. INTRODUCTION

~~As the case nears trial and Netflix's opportunities to evade this eventual outcome grow slimmer, Netflix has lashed out with a wholly improper claim and motion for preliminary injunction which serves only to delay this case, waste the time of the parties and the Court, and harass Lauri Valjakka. Netflix asserts that it is entitled to control how Lauri Valjakka re-organizes his own personal assets based on a single line of their counterclaim claiming attorney's fees. Netflix's motion wholly disregards the validity of their underlying claim for attorney's fees. Netflix disregards that Lauri's re-organization of his own personal assets has no effect on Netflix's potential right to future recovery. And Netflix disregards that a ruling in its favor for this case implies that in every patent case there exists a debtor-creditor relationship between the parties just by nature of 35 U.S.C. § 285. Netflix's claims under the California Uniform Voidable Transactions Act ("CUVTA") should be dismissed. Cal.~~ The Court granted Defendant Netflix, Inc.'s Motion to assert a counterclaim under the California Uniform Voidable Transactions Act ("CUVTA") on September 28, 2023.[1] However, Netflix cannot establish the elements to support its CUVTA counterclaim.

~~Civ. Code § 3439.~~

## II. FACTUAL BACKGROUND

On September 13, 2021, Lauri Valjakka filed his first complaint for patent infringement against Defendant. Anticipating a significant amount of settlement money, to better manage that money and setup an income stream for himself instead of a large lump sum payment, Valjakka assigned his rights to revenue of the '167 and '102 patents to a new corporation, CDN Licensing, in November 2021. Valjakka is the owner of CDN Licensing.[2] Valjakka disclosed CDN Licensing as one of his subsidiaries in response to Netflix's *first round of interrogatories*. Valjakka further disclosed how he uses CDN Licensing to manage the settlement money he had earned by asserting the '167 and '102 patents: "CDN Licensing Oy is a company established in 2021 to manage expenses and revenue from the Action."[3] Valjakka maintains control over CDN Licensing.

~~Valjakka maintains control over CDN Licensing.~~ Netflix filed its first Answer on December 23, 2022, the answer contains two lines seeking a judgment under 35 U.S.C. § 285 for attorney's fees.[4] On August 16, 2023, counsel for Plaintiff received a letter from newly added counsel for Netflix asserting that Valjakka's usage of his own subsidiary CDN Licensing to manage his trial and settlement proceeds was fraudulent and requesting a 4~~5 month extension of the trial date. In communications between counsel following the receipt of the August 16th letter,~~

---

[1] Doc. No. 182.
[2] Declaration of Lauri Valjakka ("Valjakka Decl.") at ¶3, attached as Exhibit 1.
[3] Dkt. 127-2, Plaintiff Lauri Valjakka's Responses And Objections To Defendant Netflix's First Set of Interrogatories, p. 19.
[4] Doc. No. 75

~~it was explained that Valjakka is an owner of CDN Licensing and thus Netflix's possible future recovery of attorney's fees was not affected in any way by Valjakka's internal money management strategy. Counsel for Netflix provided no basis to support their position during these communications. On August 21, 2023, Netflix filed its Motion for a preliminary injunction which continues to neglect to mention any viable method by which Netflix's possible ability to recover attorney's fees has been harmed~~ 5-month extension of the trial date.

### ~~III. VALJAKKA HAS NOT PUT ASSETS OUTSIDE THE REACH OF AN ADVERSE JUDGMENT AGAINST HIS PERSON~~

~~The CUVTA covers transactions to a third-party beneficiary, one whom the creditor cannot enforce a judgment against for the same claim against the debtor. The CUVTA says of the creditor's remedies, "In an action for relief against a transfer or obligation under this chapter, a creditor, subject to the limitations in Section 3439.08, may obtain: (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim." Cal. Civ. Code § 3439.07. This protects creditors from debtors who seek to immunize themselves from liability by transferring their assets to a third-party before or after a judgment is rendered against them, leaving no reachable assets with which they can pay their debt. Transfers that do not hinder or delay a creditor's ability to collect are not fraudulent under the CUVTA. "A creditor cannot premise a UFTA claim on a transfer unless the "the transfer puts beyond [the creditor's] reach property [the creditor] otherwise would be able to subject to the payment of [ ] debt." " Opperman v. Path, Inc., 87 F. Supp. 3d 1018 (N.D. Cal. 2014), citing Mehrtash v. Mehrtash, 93 Cal.App.4th 75, 80, 112 Cal.Rptr.2d 802 (2001).~~

~~California courts have consistently held that the CUVTA only applies to transactions between two separate parties. In Lo v. Lee the court said, "A fraudulent conveyance is a transfer by the debtor of property to a **third person** undertaken with the intent **to prevent a creditor from reaching that interest to satisfy its claim**." [emphasis added]. Lo v. Lee, 24 Cal. App. 5th 1065, 234 Cal. Rptr. 3d 824 (2018), citing Yaesu Electronics Corp. v. Tamura 28 Cal.App.4th 8, 13, 33 Cal.Rptr.2d 283. (1994).~~

~~Defendant however misinterprets the CUVTA and attempts to apply it to a transfer by Valjakka "from himself to himself"⁵. Defendant cites no California case wherein the CUVTA is successfully applied to prevent a Defendant from transferring assets either to itself, or to a corporation wholly owned by itself. Defendant mistakenly cites to Virtue Glob. Holdings Ltd. v. Rearden LLC, to support their allegation that, "Straddling both sides of the deal is one of the most damning facts considered when determining if a party has fraudulently transferred assets to avoid paying a claim." See Defendant's Motion at 3. A full reading of Rearden LLC however reveals no support for Defendant's position.~~

~~In Rearden LLC, Plaintiff SHST transferred assets to a separate company, VGH. SHST owned no part of VGH and vice versa. They were both owned, SHST only in part, by a third company, DDHL. DDHL was not a party to the lawsuit and was not subject to the court's jurisdiction. Based on the timing of the transfer, it occurred a day after the court granted leave for Defendant's to amend their counterclaims to allege monetary damages against SHST, and the~~

---

⁵ ~~Defendant's Motion at p. 6.~~

~~special relationship between SHST and VGH, both being owned by the same company, the court found that the transaction from SHST to VGH was fraudulent. *Virtue Glob. Holdings Ltd. v. Rearden LLC*, No. 15-CV-00797-JST, 2016 WL 9045855 (N.D. Cal. June 17, 2016).~~

~~Contrary to Defendant's assertion, SHST was not, "Straddling both sides of the deal" in *Rearden LLC*. It is specifically because SHST was not an owner of VGH and that a judgment against SHST could not reach assets of VGH that the CUVTA was implicated. Because the relationship between SHST and VGH signaled oneness of identity while assets of VGH were insulated from a judgment against SHST, the transaction showed indicia of fraud.~~

~~Defendant skirts around the fact that the current situation involves a transfer from an owner to his own direct subsidiary. As Defendant states, "Valjakka is on both sides of the fraudulent transaction. Asking him to hold assets or not to pass assets from one of his hands to the other does no harm."[6] Valjakka passing assets from one of his hands to the other also does not affect Defendant's ability to recover a potential future debt. The entity to which Valjakka transferred licensing rights is a part of his assets and thus any theoretical future judgment against Valjakka will necessarily include his ownership of CDN as an asset. For that reason, Defendant's requested injunction serves no purpose other than harassment.~~

## ~~IV.~~III.  DEFENDANT HAS NO COGNIZABLE CLAIM AGAINST VALJAKKA SUFFICIENT TO IMPLICATE THE CUVTA

### A.  A Potential Section 285 Award is to Remote to a Be A CUVTA Claim

Defendant does not turn Valjakka into its debtor merely by asserting a 35 U.S.C. § 285 claim during ongoing litigation.[7] The ~~patent litigation~~ suit filed by Valjakka against Defendant is ongoing~~.~~ but summary judgment was granted against Valjakka's infringement claim.[8] This Court has indeed upheld Valjakka's claims ~~in the most recent ruling on~~as late as August 22, 2023 which dismissed in-part a motion made by Defendant against Valjakka's '167 patent.[9] Admittedly, that was pleading stage.

Motions for attorney's fees in patent infringement cases may only be made by a party that has already prevailed in the underlying action. See 35 U.S.C. § 285; and Fed. R. Civ. P. 54(d)(2)(B) which provides:

> "the motion must: (i) be filed no later than 14 days after the entry of judgment; (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award; (iii) state the amount sought or provide a fair estimate of it;"

 See *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005). At this stage of litigation, Defendant has only a remote possibility of asserting a valid claim for attorney's

---

[6] ~~Defendant's Motion at p. 15~~

[7] Moreover, a §285 claim can only be asserted when one party prevails and the litigation is concluded.

[8] Doc. No. 257.

[9] The Court did dismiss, with leave to amend, Plaintiff's infringement claim for the '102 patent. However, Plaintiff previously informed Defendant it was withdrawing the claim of infringement for the '102 patent and the parties were discussing whether that would be with or without prejudice.

fees. To have a cognizable claim for attorney's fees Defendant first needs to prevail in the main action, earn a judgment in its favor to become the prevailing party, then successfully show that this case is "exceptional" enough to warrant an award of attorney's fees, subject to the discretion of this Court. *See Maurice A. Garbell, Inc. v. Boeing Co.*, 546 F.2d 297 (9th Cir. 1976) ("the district court may award reasonable attorney's fees to the prevailing party in "exceptional" patent cases. This award is within the discretion of the trial court"). Under Defendant's interpretation, in every patent infringement case there is an automatic debtor-creditor relationship created between every plaintiff and defendant which is sufficient to warrant application of the CUVTA. This is untenable and allowing Defendant's claim to go forward would spark a rash of unnecessary and harmful delays across future patent infringement litigation. Defendant cannot plausibly allege that it is a creditor of Valjakka merely by pleading for a Section 285 award and thus Defendant's CUVTA claim fails.

## ~~V. THE INDICIAS OF FRAUD UNDER THE CUVTA FAVOR VALJAKKA~~

### ~~A. Valjakka disclosed the supposedly concealed assets.~~

~~Defendant's assertion that they were unaware of the assets, which include a potential future recovery against them arising out of this very same litigation, is nonsensical at best. Valjakka cannot hide the right to recover patent infringement proceeds from a Defendant against whom he is asserting the very same patents. By the very nature of bringing the suit Defendant is made aware of Valjakka's right to recover. Defendant asserts, "There is no question that Valjakka 'removed or concealed assets' [...] Valjakka has consistently secreted and concealed the ultimate recipient of the Enforcement Assets." *See* Defendant's Motion p. 11. Defendant fails here first by conflating the assets with the recipient of the assets and secondly by failing to acknowledge that the final recipient of the enforcement assets is Valjakka himself as an owner of CDN Licensing Finland Oy with a right to control.[10]~~

~~Further, Valjakka disclosed, as part of discovery, confidential documents to Defendant concerning settlement amounts from prior cases asserting the '167 and '102 patents. Defendant has been informed not only of the existence of Valjakka's right to recover on the '167 and '102 patents, but further has been made aware of specific amounts of prior recovery. Defendant paradoxically alleges that these assets were concealed from Defendant while citing to the very same settlement agreements.~~

### ~~B. The licenses granted to CDN Licensing Finland Oy were made for a reasonably equivalent value.~~

~~When Valjakka licensed the rights to litigation proceeds to the '102 and '167 patents to CDN Licensing Finland Oy he received equivalent value for each license.[11] At the time the licenses were granted, the value of infringement suits asserting the '167 and '102 patents were untested and potential future proceeds were merely potential. Defendant has failed to cite to any basis for a determination of the value of the licenses granted to CDN Licensing Finland Oy at the time that the licenses were granted.~~

---

~~[10] Valjakka Decl. at ¶4, attached as Exhibit 1.~~
~~[11] Valjakka Decl. at ¶8, attached as Exhibit 1~~

~~**C. The timing of the transfer indicates lack of fraudulent intent.**~~

~~The CUVTA states one indicia of fraud is, "Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit." Cal. Civ. Code § 3439.04(a). Valjakka's license to CDN was granted on November 2021, more than a year before Defendant's claim for attorney's fees was first filed on December 23, 2022. Defendant asserts that Valjakka must have anticipated, more than a year in advance, that Defendant would in the future allege a claim for attorney's fees against Valjakka and that Valjakka's granting of a license to CDN Licensing Finland Oy was made to disrupt their ability to collect on an unfiled claim for attorney's fees. Valjakka's actual intent in the creating of CDN Licensing Finland Oy is consistent with his discovery disclosures. CDN Licensing Finland Oy is a convenient business to help Valjakka manage financing and the proceeds of his patent infringement litigation.[12] In fact, the needs for financing patent litigation are well-known and Mr. Valjakka's organization of the proceeds to help accomplish that end illustrates his good faith towards his investors.[13]~~

~~Mr. Valjakka was firm in his statement that there was no intent to avoid paying future creditors when granting the license to CDN Licensing Finland Oy.[14] How could Mr. Valjakka have known of a potential future attorneys' fee award when there is no motion presently pending?[15] Moreover, in every patent litigation, is there an implied CUVTA violation if litigation financing is involved that requires the creation of an entity to receive funds? Such a result would seem absurd.~~

~~**D. Defendant was made aware of the existence of CDN as early as July 11, 2022 Valjakka has made no attempt to hide the existence of CDN Licensing.**~~

~~In fact, CDN Licensing was disclosed to Defendant in Valjakka's first response to interrogatories. Defendant asserts without a basis that, "Valjakka has, at every single opportunity, concealed the existence of CDN and the transfer of the Enforcement Assets."[16] In Valjakka's responses to Netflix's first round of interrogatories he disclosed, "CDN Licensing Oy is a company established in 2021 to manage expenses and revenue from the Action."[17] What more could Mr. Valjakka have done?~~

~~Defendant's Motion misrepresents the facts and falsely attempts to malign Mr. Valjakka. Such conduct should not be permitted. It is clear that this Motion is nothing more than a last-ditch effort to avoid trial and attempt to redirect the Court from Mr. Valjakka's claims of infringement. Valjakka has acted appropriately at every stage of this litigation and this pleading by Defendant is baseless, even frivolous. Every purported fact alleged by Defendant is defeated by the record evidence.~~

**B. ~~VI~~Valjakka Transferred No Money to CDN After July of 2022**

---

[12] ~~Valjakka Decl. at ¶10.~~
[13] ~~See id.~~
[14] ~~Valjakka Decl. at ¶¶10-13.~~
[15] ~~Valjakka Decl. at ¶13.~~
[16] ~~Defendant's Motion at 11~~
[17] ~~Dkt. 127-2 Plaintiff Lauri Valjakka's Responses And Objections To Defendant Netflix's First Set Of Interrogatories, p. 19.~~

Lauri Valjakka transferred no money to CDN after July 21st 2022 and therefore there can be no CUVTA violation. Even assuming Defendant's counterclaim is proper, Defendant did not answer until December 23, 2022.[18] Therefore, no claim for a sanction under Section 285 was made until the earliest of December 23, 2022.

The CUVTA states in relevant part:

(a) A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:
(1) With actual intent to hinder, delay, or defraud any creditor of the debtor.
(2) Without receiving a reasonable equivalent value in exchange for the transfer or obligation, and the debtor either:
(A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.
(B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.[19] Here, Defendant alleges that transfers of money from Valjakka to CDN five months prior to Valjakka´s knowledge of Netflix´s claim under Section 285 are CUVTA violations.[20] However, Defendant has no evidence of any transfer from Valjakka to CDN after July of 2022. As such, there is no CUVTA violation as there was no transfer. Valjakka's declaration provides CDN's main ledgers for each of 2022, 2023, 2024 and 2025.[21] The last transfer AiPi controlled IP Casegroup on behalf of Valjakka made to CDN was on July 21st of 2022.[22] Valjakka made no transfers after July of 2022 to CDN.[23] As a CUVTA violation requires a transfer, as there were no transfers, there can be no violation. To the extent that Defendant argues that the transfers in July of 2022 are still amenable to CUVTA, Defendant did not plead for a Section 285 sanction until December of 2022.[24] However, the case was filed in 2021 and therefore if Defendant believed it had a claim it could have plead that claim. As it did not, the claim cannot be recognized until at least the date it was plead, in December of 2022. Therefore, as there were no transfers after July of 16 2022, summary judgment is appropriate as to Defendant's counterclaim for a CUVTA violation.

## C. Valjakka acted in good faith

Until the Summary Judgement of January 8th 2023 Valjakka has been in firm belief both regarding validity of his infringement claim and his ownership of ´167 patent. This understanding has been supported by several legal experts and by Valjakka´s advisors prior to filing application to restore the abandoned patent application with the USPTO and over 10 years prior to filing the lawsuit against Netflix. In addition, Valjakka is currently processing a retroactive ownership confirmation claim in a Finnish court.

---

[18] Doc. No. 72.
[19] Cal. Civ. Code § 3439.04(a)
[20] Doc. No. 128 at 4/6 – 6/6; Doc. No. 147 at 4-9.
[21] Valjakka Decl. at ¶¶16-19.
[22] Valjakka Decl. at ¶16.
[23] Valjakka Decl. at ¶¶16-19.
[24] Doc. No. 175.

Therefore, on July 21st 2022, when Valjakka transferred the last payment to CDN he had no grounds to expect that Netflix would file a claim under Section 285 nor grounds to view any of his actions with respect to settlement proceeds as contrary to rights of his creditors.

Valjakka has established CDN for the sole purposes of tax effective administration 10 and division with his Finnish partners of possible litigation proceeds. Valjakka has had no reason to hide existence of CDN and he has, during discovery in summer 2022, disclosed CDN´s existence to AiPi legal team whom Valjakka understood to be his legal counsels. For reasons unknown to Valjakka this information was not conveyed to Netflix in the interrogatory answers finalized by AiPi legal team whom Valjakka as a foreign citizen had to trust.

For the foregoing reasons Valjakka has acted in good faith without an intention to act fraudulently against any of his creditors.

## IV. CONCLUSION

For the foregoing reasons, Valjakka respectfully requests this honorable Court dismiss Defendant's counterclaim for an alleged violation of the California Uniform Voidable Transactions Act, Cal. Civ. Code § ~~deny Defendant's motion for a preliminary injunction.~~3429 et. seq.