William P. Ramey, III (admitted *pro hac vice*)
wramey@rameyfirm.com
RAMEY LLP
446 Heights Blvd., Suite 200
Houston, Texas 77007
Telephone:  +1.713.426.3923

Attorneys for William P. Ramey, III
and Ramey LLP

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| **LAURI VALJAKKA,** | Case No. 4:22-cv-01490-JST |
| Plaintiff, | **OPPOSITION OF WILLIAM P. RAMEY, III AND RAMEY LLP TO NETFLIX, INC.'S MOTION FOR ATTORNEYS' FEES** |
| v. | |
| **NETFLIX, INC.,** | Date:  July 2, 2026 |
| Defendant. | Time:  2:00 p.m. |
| | Place:  Courtroom 6 |
| | Judge:  Hon. Jon S. Tigar |

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................................. 1

II.   STATEMENT OF RELEVANT FACTS ........................................................................... 3

    A.    Mr. Ramey Did Not File This Case and Inherited a Developed Record on Ownership ......... 3

    B.   The Court Itself Confirmed the Underlying Litigation Was Not Frivolous ............................ 5

    C.   The Finnish Supreme Court Has Now Confirmed That Ownership Remains Unresolved ...... 6

    D.   Mr. Ramey Withdrew on March 24, 2024 and Has Not Been Counsel for More Than Two Years ..... 7

    E.   Mr. Ramey and Ramey LLP'as Sanction has Already Been Adjudicated ............................. 8

III.  LEGAL STANDARD.......................................................................................................... 8

    A.    Section 285 Does Not Authorize Fee Awards Against Counsel........................................... 8

    B.    Section 1927 Requires Subjective Bad Faith Established by Clear and Convincing Evidence ..... 8

    C.    Inherent-Power Sanctions Require a Specific Finding of Bad Faith. ................................... 9

    D.   Fee Sanctions Must Be Compensatory and Causally Linked to Specific Misconduct ........... 9

IV.   ARGUMENT...................................................................................................................... 10

    A.    Section 285 Cannot Reach Mr. Ramey or Ramey LLP as a Matter of Law ........................ 10

    B.   Netflix Has Not Made the Showing Section 1927 Requires................................................ 11

        1.   Counsel held a colorable, expert-supported theory of ownership that the Finnish Supreme Court has now confirmed is justiciable ......................................................... 12

        2.   The Court's own Rule 12(c) ruling refutes the "baseless from day one" narrative ..... 13

        3.   The USPTO's grant of the petition to revive forecloses a bad-faith inference ............... 14

        4.   Netflix's "concealment" narrative does not survive examination ................................. 15

        5.   Netflix's authorities are distinguishable ........................................................................ 17

    C.   The Court Should Decline to Invoke Its Inherent Power on This Record ............................ 19

    D.   Even if Liability Could Attach, the Requested Amount Is Plainly Overbroad..................... 19

        1.   The March 24, 2024 withdrawal is a hard cut-off ......................................................... 19

        2.   The $95,000 already paid for the protective-order violation cannot be recovered again 22

ii

OPPOSITION OF WILLIAM P. RAMEY, III AND RAMEY LLP TO
NETFLIX, INC.'S MOTION FOR ATTORNEYS' FEES
Case No. 4:22-cv-01490-JST

3.   Netflix's "we'll take half" framing does not establish reasonableness............................22

E.   Equitable Considerations Weigh Against Any Award Against Counsel ............................23

V.   CONCLUSION.........................................................................................................................24

**OPPOSITION OF WILLIAM P. RAMEY, III AND RAMEY LLP TO
NETFLIX, INC.'S MOTION FOR ATTORNEYS' FEES
Case No. 4:22-cv-01490-JST**

# TABLE OF AUTHORITIES

**Cases**

*Akazawa v. Link New Tech. Int'l, Inc.*,
    520 F.3d 1354 (Fed. Cir. 2008) ..................................................................................................16

*Amlong & Amlong, P.A. v. Denny's, Inc.*,
    500 F.3d 1230 (11th Cir. 2007) ..................................................................................................14

*Aristocrat Technologies Australia Pty Ltd. v. International Game Technology*,
    543 F.3d 657 (Fed. Cir. 2008) ..............................................................................................17, 18

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991)........................................................................................................11, 22, 25

*Dragon Intellectual Property, LLC v. DISH Network L.L.C.*,
    956 F.3d 1358 (Fed. Cir. 2020) ....................................................................................1, 10, 12, 25

*Fink v. Gomez*,
    239 F.3d 989 (9th Cir. 2001) ....................................................................................1, 10, 13, 14, 25

*Fox v. Vice*,
    563 U.S. 826 (2011)........................................................................................................................13

*Goodyear Tire & Rubber Co. v. Haeger*,
    581 U.S. 101 (2017)..................................................................................................2, 3, 4, 11, 19, 24

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)........................................................................................................................27

*In re Keegan Mgmt. Co. Sec. Litig.*,
    78 F.3d 431 (9th Cir. 1996) ......................................................................................................10, 23

*Koji IP, LLC v. Renesas Electronics America, Inc.*,
    No. 24-cv-03089-PHK, 2025 WL 917110 (N.D. Cal. Mar. 26, 2025)........................................21

*Lahiri v. Universal Music & Video Distrib. Corp.*,
    606 F.3d 1216, 1219 (9th Cir. 2010) ......................................................................................10, 11, 14, 23

*mCom IP, LLC v. City National Bank of Florida*,
    2025 WL 939224 (S.D. Fla. Mar. 28, 2025)................................................................................22

*mCom IP, LLC v. City National Bank of Florida*,
    No. 2024-2089 (Fed. Cir. May 15, 2026)................................................1, 3, 4, 5, 6, 12, 14, 15, 22

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008) ......................................................................................................27

*Morganroth v. Quigg*,
    885 F.2d 843 (Fed. Cir. 1989) ................................................................................................18

*Munchkin, Inc. v. Luv n' Care, Ltd.*,
    960 F.3d 1373 (Fed. Cir. 2020) ..............................................................................................13

*Norelus v. Denny's, Inc.*,
    628 F.3d 1270 (11th Cir. 2010) ..............................................................................................14

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014)...........................................................................................................10, 13

*Raydiant Oximetry, Inc. v. ALC Med. Holdings LLC*,
    808 F. Supp. 3d 987 (N.D. Cal. 2025).....................................................................................21

*Roadway Express, Inc. v. Piper*,
    447 U.S. 752 (1980)........................................................................................................11, 22

*Stone Basket Innovations, LLC v. Cook Med. LLC*,
    892 F.3d 1175 (Fed. Cir. 2018) .............................................................................7, 8, 9, 13, 16

**Constitutional Provisions & Statutes**

28 U.S.C. § 1927................................................................................1, 10, 20, 23, 25, 28

35 U.S.C. § 285.................................................................................1, 9, 12, 25, 28

**Rules & Regulations**

Fed.R.Civ.P. 12(c) ................................................................................ ii, 5, 13, 23

**OPPOSITION OF WILLIAM P. RAMEY, III AND RAMEY LLP TO
NETFLIX, INC.'S MOTION FOR ATTORNEYS' FEES
Case No. 4:22-cv-01490-JST**

## I. INTRODUCTION

Netflix's motion conflates two distinct fee-shifting regimes and asks this Court to do the same. It briefs the standards governing 35 U.S.C. § 285—which authorizes fees only against a *party*—and then asks the Court to apply those standards to impose joint and several liability on Mr. Valjakka's former counsel. The Federal Circuit has squarely foreclosed that move. Section 285 does not reach attorneys. *Dragon Intellectual Property, LLC v. DISH Network L.L.C.*, 956 F.3d 1358, 1361–62 (Fed. Cir. 2020). That alone disposes of the bulk of Netflix's motion as it pertains to Mr. Ramey and Ramey LLP.

The only vehicles by which counsel may be made jointly liable for fees here are 28 U.S.C. § 1927 and the Court's inherent power. Both require something Netflix's brief never establishes: subjective bad faith on the part of counsel personally. *See, e.g., Fink v. Gomez*, 239 F.3d 989, 993–94 (9th Cir. 2001). Netflix's eighty-page recitation of grievances against Mr. Valjakka is no substitute for that showing.

The Federal Circuit has recently confirmed the point. In *mCom IP, LLC v. City National Bank of Florida*, No. 2024-2089 (Fed. Cir. May 15, 2026), the court reversed both a § 285 fee award against a patentee and a § 1927 sanction against the patentee's counsel, holding that the grounds presented to the district court were insufficient to establish either an exceptional case under § 285 or bad faith under § 1927.

Four further points control the outcome.

*First*, the underlying ownership theory was not frivolous. This Court itself denied judgment on the pleadings as to the '167 patent, holding the case "present[ed] a close call" at *Alice* step one and that the claim recited an inventive concept at step two. ECF No. 132 at 9–11. The summary-judgment ruling, in turn, rested on a discretionary comity determination concerning a Finnish court's interpretation of a Finnish contract—not on any holding that counsel's positions were sanctionable. ECF No. 257 at 9–13. And the position has now been *vindicated* by the highest court in Finland: on August 26, 2025, the

Supreme Court of Finland overturned the lower-court ruling ("Supreme Court of Finland Decision") on which Netflix relies and held that the ownership dispute had not been adjudicated on the merits and must be reopened by the Helsinki District Court.  Declaration of Lauri Valjakka ("Valjakka Decl.") ¶¶ 13–25; Declaration of Onni Hietalahti ("Hietalahti Decl.") ¶¶ 5–26.  A true and correct copy of the Supreme Court of Finland Decision and translation is filed as ECF No. 348-1.  Declaration of William P. Ramey, III ("Ramey Decl.") at ₱22.  Counsel cannot be sanctioned for litigating an ownership theory that the Finnish Supreme Court has now confirmed remains a live, justiciable dispute under Finnish law.

*Second*, Mr. Ramey withdrew as counsel of record on March 24, 2024.  ECF No. 277; Ramey Decl. ¶ 3.  A substantial portion of Netflix's claimed $6.2 million in fees that was incurred after that date—including the entire CUVTA proceeding, the AiPi-related third-party discovery in the Eastern District of Virginia, and the present fee motion itself—cannot, as a matter of causation under § 1927, be laid at Mr. Ramey's feet.  *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108–09 (2017).

*Third*, the Court has already determined the reasonable sanction for the only conduct of counsel it has actually adjudicated: $95,000 for the protective-order issue.  ECF No. 353.  The Supreme Court has held that fee-based sanctions must be compensatory rather than punitive and calibrated to the damages caused by specific misconduct.  *Goodyear*, 581 U.S. at 108.  Netflix's effort to relitigate that adjudicated issue under the guise of a $3 million fees motion is precisely the type of duplicative recovery *Goodyear* forecloses.

*Fourth*, Mr. Ramey did not file this action; he inherited it.  The case was filed in the Western District of Texas in September 2021 by Erick Robinson, and Mr. Ramey first appeared in November 2021—substituting in only after performing his own diligence review.  Ramey Decl. ¶¶ 3, 4.  Mr. Robinson did not advise Mr. Ramey at the time that the claims were defective; to the contrary, he represented that the ownership issues raised by Akamai were contestable and capable of being

**OPPOSITION OF WILLIAM P. RAMEY, III AND RAMEY LLP TO
NETFLIX, INC.'S MOTION FOR ATTORNEYS' FEES
Case No. 4:22-cv-01490-JST**

successfully addressed through legal argument and supporting evidence, including expert and foreign law submissions. *Id.* ¶ 4. On that record, a finding of subjective bad faith on the part of Mr. Ramey would lack any basis, much less clear and convincing evidence.

The motion should be denied in full as to Mr. Ramey and Ramey LLP. In the alternative, any award should be limited to the period during which Mr. Ramey was counsel of record and exclude all fees attributable to the protective-order conduct already sanctioned at ECF No. 353.

## II. STATEMENT OF RELEVANT FACTS

This Opposition addresses only those facts material to whether Mr. Ramey and Ramey LLP, as opposed to Mr. Valjakka, may be held liable for Netflix's fees. Mr. Valjakka, who is now proceeding pro se, addresses Netflix's motion as to him through his own opposition.

### A. Mr. Ramey Did Not File This Case and Inherited a Developed Record on Ownership.

Mr. Valjakka filed this action in the Western District of Texas on September 13, 2021, represented by Erick Robinson. *See* ECF No. 1. Mr. Ramey did not appear until November 2021—after Mr. Robinson's withdrawal. Ramey Decl. ¶¶ 3, 4. Mr. Ramey was approached by Mr. Robinson, who represented that he was "switching firms and could not take the cases with him." *Id.* ¶ 4. Mr. Ramey discussed each of the cases with Mr. Robinson and agreed to substitute on many, including Mr. Valjakka's case, after he performed his own diligence review. *Id.*

Mr. Robinson did not communicate to Mr. Ramey that the claims "were fundamentally defective or incapable of being maintained in good faith." *Id.* ¶ 5. He instead expressed that the ownership issues raised by Akamai were contestable and capable of being successfully addressed through legal argument and supporting evidence, including expert and foreign law submissions. *Id.* ¶ 6. Communications from

**OPPOSITION OF WILLIAM P. RAMEY, III AND RAMEY LLP TO
NETFLIX, INC.'S MOTION FOR ATTORNEYS' FEES
Case No. 4:22-cv-01490-JST**

Akamai's counsel asserting an ownership challenge were treated by all involved—including Mr. Robinson—as advocacy positions by opposing counsel, not dispositive determinations. *Id.* ¶ 9.

To the extent Mr. Robinson now characterizes his withdrawal as "primarily" driven by ownership concerns, that characterization is incomplete. *Id.* ¶10. In contemporaneous discussions with Mr. Ramey, Mr. Robinson explained that withdrawal was driven "in substantial part" by professional and business considerations associated with his transition to a new firm—including potential conflicts and concerns about how the matters would be perceived internally. *Id.* ¶ 11. Mr. Robinson did not state to Mr. Ramey that withdrawal was compelled by any ethical violation or inability to proceed in good faith. *Id.* ¶ 14.

By the time Mr. Ramey appeared, the record on patent ownership already included: (i) the *nunc pro tunc* assignments executed in 2007 and recorded with the USPTO; (ii) the USPTO's grant of the December 2010 Petition to Revive the '685 application; (iii) the issuance of the '167 patent in July 2013 over an examined record that included the assignment chain; and (iv) the considered opinions of Mr. Valjakka's Finnish counsel on the operation of Finnish law to the abandoned application. The merits theory Mr. Ramey carried forward was the theory that already existed when he arrived.

That theory rested on three independently sufficient grounds. *First*, under California contract law, the *nunc pro tunc* assignments operated only prospectively; the December 2005 Utilization Agreement remained in force from execution through the August 2007 *nunc pro tunc* date, and its reversion provisions returned ownership to Mr. Valjakka and the SBO co-owners when SBO ceased operations. *See* ECF No. 188 at 7–9. *Second*, under Finnish common law, Mr. Valjakka had appropriated the abandoned application—a doctrine recognized in Finnish jurisprudence and explicated by Professor Jarno Tepora, a Finnish-law authority, in a sworn declaration that walked through each element of appropriation and concluded all were satisfied. ECF No. 188 at 4–7. The record showed that SBO failed to respond to the December 23, 2009 Office Action, failed to pay required fees, and took no action to

**OPPOSITION OF WILLIAM P. RAMEY, III AND RAMEY LLP TO**
**NETFLIX, INC.'S MOTION FOR ATTORNEYS' FEES**
**Case No. 4:22-cv-01490-JST**

prosecute the application—satisfying every criterion for abandonment under Finnish law. *Id.* at 9–10. Mr. Valjakka then filed a Petition to Revive in December 2010, obtained USPTO approval in March 2011, and prosecuted the application to issuance of the '167 patent in July 2013—a chain of affirmative acts of ownership and control. *Id.* at 6–7. *Third*, Mr. Valjakka's Finnish personal counsel, Onni Hietalahti, provided sworn testimony confirming the contemporaneous understanding among Mr. Valjakka, the SBO co-owners, and Finnish counsel that ownership had reverted upon SBO's cessation of business and the application's abandonment. Hietalahti Decl. ¶¶ 17–24.

These were not afterthought theories. They were the theories under which Mr. Valjakka represented his ownership to the USPTO when seeking revival; the USPTO—exercising its discretion under MPEP § 711.03(c)—granted the petition; the patent issued; and Mr. Valjakka recorded the chain of title with the USPTO. By the time Mr. Ramey signed his appearance, the patent had been issued and recorded on the basis of those theories for nearly a decade.

**B. The Court Itself Confirmed the Underlying Litigation Was Not Frivolous.**

The Court's own rulings refute the contention that the case was a baseless shakedown maintained in bad faith. On August 22, 2023, the Court granted Netflix's Rule 12(c) motion as to the '102 patent but **denied** it as to the '167 patent. ECF No. 132 at 8–13. As to the '167 patent, the Court held that the case "presents a close call[] about how to characterize what the claims are directed to," and proceeded to find that the '167 claim recited an inventive concept tied to a specific structure of components that "operate in an unconventional manner to achieve an improvement in [network] functionality." ECF No. 132 at 9–11 (citation omitted). A patent the Court itself has held to satisfy *Alice* step two cannot, as a matter of law, support a finding that maintaining the case to summary judgment was sanctionable.

The summary-judgment order, granted nearly five months later, did not turn on any finding of frivolousness. It turned on (i) a discretionary determination to extend comity to a Finnish court's

**OPPOSITION OF WILLIAM P. RAMEY, III AND RAMEY LLP TO NETFLIX, INC.'S MOTION FOR ATTORNEYS' FEES**
**Case No. 4:22-cv-01490-JST**

interpretation of a Finnish contract under Finnish law, and (ii) a holding that Finnish common-law appropriation theory was preempted by federal patent law as to abandonment and revival. ECF No. 257 at 9–13. Both are debatable propositions of law on which reasonable counsel could—and did—disagree. The Court did not find the positions sanctionable. It found them losing. There is a difference. *See Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1181 (Fed. Cir. 2018).

### C. The Finnish Supreme Court Has Now Confirmed That Ownership Remains Unresolved.

Events since this Court's summary-judgment order have *strengthened*, not weakened, the good-faith basis for the underlying ownership theory. On August 26, 2025, the Supreme Court of Finland—the highest judicial authority in Finland—issued a binding decision concerning the ownership dispute relating to the '167 patent. Valjakka Decl. ¶¶ 13–14; Hietalahti Decl. ¶¶ 4–5. The Supreme Court overturned the lower court's refusal to hear Mr. Valjakka's ownership claim and held that the Helsinki District Court must reopen proceedings and examine ownership on the merits. Valjakka Decl. ¶¶ 17–18; Hietalahti Decl. ¶¶ 7–8. The Supreme Court further clarified that earlier Finnish rulings declining to hear the case "were based on procedural or jurisdictional grounds, not a final adjudication of ownership." Hietalahti Decl. ¶ 15. This is important as it conclusively establishes that the prior Finnish Court Opinion, the Market Court Opinion, was not an adjudication that Mr. Valjakka did not own the patent.

Mr. Hietalahti, an attorney qualified to practice in Finland with experience in Finnish civil procedure and ownership disputes, has explained the effect of the decision under Finnish law. Hietalahti Decl. ¶¶ 1–3. In his professional opinion, the Supreme Court's ruling restores Mr. Valjakka's ability to pursue a determination of ownership and confirms that such determination has not yet been made. *Id.* ¶ 16. The decision establishes that the ownership of the '167 Patent remains an open and unresolved legal

**OPPOSITION OF WILLIAM P. RAMEY, III AND RAMEY LLP TO NETFLIX, INC.'S MOTION FOR ATTORNEYS' FEES**
**Case No. 4:22-cv-01490-JST**

question under Finnish law.  *Id.* ¶ 14.  And it confirms that the position that ownership remained unsettled—and subject to litigation—was consistent with Finnish law.  *Id.* ¶ 24.

Mr. Valjakka's sworn account is consistent.  At all relevant times, he believed in good faith that he held enforceable rights in the '167 patent based on his role as inventor, his understanding of the underlying agreements, the advice of counsel including analysis of Finnish law, and his understanding that prior Finnish proceedings had not finally resolved ownership on the merits.  Valjakka Decl. ¶¶ 4–6.  The Supreme Court's 2025 decision confirms his long-standing understanding: that ownership of the '167 Patent has not been finally adjudicated against him, and remains an open legal question.  *Id.* ¶ 25.

This development is dispositive of Netflix's central rhetorical theme—that counsel pressed an "objectively baseless" theory of ownership long after the issue had been resolved.  The highest court in Finland has now held the opposite.  A position that has been vindicated, in the very forum Netflix invoked to argue the case had been "decided," cannot be the predicate for a finding of subjective bad faith.

### D. Mr. Ramey Withdrew on March 24, 2024 and Has Not Been Counsel for More Than Two Years.

The Court granted Mr. Ramey's withdrawal on March 24, 2024.  ECF No. 277; Ramey Decl. ¶ 3.  From that date forward, Mr. Ramey and Ramey LLP have had no substantive role in this case.  *Id.*  They did not represent Mr. Valjakka through the entire CUVTA proceedings, in the AiPi-related third-party discovery in the Eastern District of Virginia, or in any cross-motion practice on the CUVTA claims.  The firm's only post-withdrawal activity was, as a courtesy to a client who could not navigate the ECF system, filing certain documents on Mr. Valjakka's behalf until he successfully registered pro se.  *Id.*  That two-year span is critical to the present motion because Netflix seeks to recover fees incurred during that span—fees no act or omission of Mr. Ramey could have caused.

**OPPOSITION OF WILLIAM P. RAMEY, III AND RAMEY LLP TO
NETFLIX, INC.'S MOTION FOR ATTORNEYS' FEES
Case No. 4:22-cv-01490-JST**

### E.  Mr. Ramey and Ramey LLP's Sanction has Already Been Adjudicated.

On July 10, 2025, the Court found that Mr. Ramey had violated the protective order by sharing materials with AiPi.  ECF No. 324.  After supplemental briefing, the Court determined on November 19, 2025 that the reasonable sanction was $95,000.  ECF No. 353 at 1, 4.  The Court reached that figure by applying the lodestar method, considering Netflix's documentation that it had incurred over $300,000 in costs investigating, mitigating, and pursuing sanctions, and accepting Netflix's voluntary request for "less than a third" of those costs.  *Id.* at 3.  That award stands as this Court's only adjudicated determination of fees chargeable to counsel in this case.

## III.  LEGAL STANDARD

### A.  Section 285 Does Not Authorize Fee Awards Against Counsel.

Section 285 provides, in full: "The court in exceptional cases may award reasonable attorney fees to *the prevailing party*."  35 U.S.C. § 285 (emphasis added).  The statute identifies one source of fees and one recipient—the prevailing party—and is silent as to attorneys.  The Federal Circuit has held that this silence is dispositive: § 285 does not authorize a court to award attorneys' fees against the attorneys representing the losing party.  *Dragon IP*, 956 F.3d at 1361.

The *Octane Fitness* totality-of-the-circumstances test governs whether a *case* is "exceptional" under § 285.  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).  It does not transform § 285 into a vehicle for sanctioning counsel.

### B.  Section 1927 Requires Subjective Bad Faith Established by Clear and Convincing Evidence.

Section 1927 provides that an attorney who so multiplies the proceedings in any case unreasonably and vexatiously may be required to pay excess fees and costs.  28 U.S.C. § 1927.  In the

Ninth Circuit, sanctions under § 1927 require subjective bad faith or, alternatively, recklessness combined with frivolousness, harassment, or an improper purpose. *Fink*, 239 F.3d at 993–94; *In re Keegan Mgmt. Co. Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996). Even if found reckless, reckless nonfrivolous filings, without more, may not be sanctioned. *Keegan*, 78 F.3d at 436. So, too, is litigation conduct that turns out, with hindsight, to have been mistaken or unsuccessful. *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010).

## C.   Inherent-Power Sanctions Require a Specific Finding of Bad Faith.

A district court's inherent power to sanction is "*both broader and narrower*" than other sanctions mechanisms. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). It is narrower in that "*[a] court must, of course, exercise caution in invoking its inherent power*" and may impose sanctions only on a finding that the offending party has acted "*in bad faith, vexatiously, wantonly, or for oppressive reasons*." *Id.* at 50 (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980)). The bad-faith finding must be specific and supported by the record. *Id.* The Ninth Circuit has found that clear and convincing supporting evidence suffices. *See Lahiri*, 606 F.3d at 1219.

## D.   Fee Sanctions Must Be Compensatory and Causally Linked to Specific Misconduct.

Whatever statutory or inherent basis a court invokes, fee-based sanctions must be compensatory rather than punitive and calibrated to the damages caused by the specific misconduct identified. *Goodyear*, 581 U.S. at 108–09. The Court must "establish a causal link" between the sanctioned conduct and the fees claimed. *Id.* at 109. Fees that would have been incurred regardless of the alleged misconduct may not be shifted; nor may a movant recover twice for the same conduct. *Id.*

**OPPOSITION OF WILLIAM P. RAMEY, III AND RAMEY LLP TO
NETFLIX, INC.'S MOTION FOR ATTORNEYS' FEES
Case No. 4:22-cv-01490-JST**

## IV.  ARGUMENT

### A.  Section 285 Cannot Reach Mr. Ramey or Ramey LLP as a Matter of Law.

Netflix's motion proceeds on the unstated premise that a § 285 award can be entered jointly and severally against an attorney.  It cannot.  The Federal Circuit's holding in *Dragon IP* is unambiguous: § 285's "prevailing party" framework authorizes fees only against the non-prevailing party.  956 F.3d at 1361–62.  The court rested on the plain text of the statute, which speaks only of "the prevailing party," and on the absence in § 285 of the textual hooks (such as "person responsible" or "any attorney") that Congress has used elsewhere to extend liability to counsel.  *Id.*

Tellingly, Netflix's own motion concedes the point in its section heading: "*Netflix Is Entitled to Attorneys' Fees from Valjakka Under 35 U.S.C. § 285.*"  ECF No. 388 at 12 (emphasis added).  That heading correctly identifies the only person from whom a § 285 award could be entered.  The body of the motion then asks the Court to make Mr. Ramey and Ramey LLP "jointly and severally liable" with Mr. Valjakka under that same statute.  *See, e.g.*, ECF No. 388 at 1, 12, 25.  Whatever the merits of the rest of Netflix's motion, that request is foreclosed.

The Federal Circuit's recent decision in *mCom IP, LLC v. City National Bank of Florida*, No. 2024-2089 (Fed. Cir. May 15, 2026), confirms this framework.  The district court there entered a § 285 award against the patentee and a separate § 1927 sanction against the patentee's counsel—the two-track structure *Dragon IP* requires, and the very structure Netflix's motion collapses by seeking a § 285 award jointly against counsel.  The Federal Circuit reversed the § 285 award on the independent ground that the movant's conclusory assertions of weakness could not establish that the case "stand[s] out from others" as exceptional, *Octane Fitness*, 572 U.S. at 554; *see Munchkin, Inc. v. Luv n' Care, Ltd.*, 960 F.3d 1373, 1378–80 (Fed. Cir. 2020), and declined to remand for a further opportunity to develop the record, *see Fox v. Vice*, 563 U.S. 826, 838 (2011).

This Court need go no further than this section to deny the motion as to Mr. Ramey and Ramey LLP under § 285. The remaining sections address the alternative bases on which Netflix purports to seek attorney sanctions—§ 1927 and the Court's inherent power—and explain why neither can be invoked on this record.

**B. Netflix Has Not Made the Showing Section 1927 Requires.**

Section 1927 requires subjective bad faith. *Fink*, 239 F.3d at 993–94. Netflix's motion does not establish either. The motion catalogs litigation conduct—protracted discovery disputes, supplemental contentions, expert disagreements, an unsuccessful ownership theory—but at no point identifies any evidence that Mr. Ramey personally acted with bad faith, recklessness combined with improper purpose, or any of the other states of mind § 1927 requires. The Federal Circuit has emphasized that an unreasonable position is not necessarily a sanctionable one. *Stone Basket*, 892 F.3d at 1181. Reading the Court's adverse rulings as evidence of attorney bad faith is precisely the inferential leap *Lahiri* and *Keegan* foreclose. *Lahiri*, 606 F.3d at 1219.

The Federal Circuit's recent decision in *mCom IP, LLC v. City National Bank of Florida*, No. 2024-2089 (Fed. Cir. May 15, 2026), is directly instructive. There, as here, the fee movant argued that the patentee's counsel should have investigated the case more carefully and, had counsel done so, would have recognized that the suit should be abandoned. The Federal Circuit reversed the resulting § 1927 sanction. Because the district court had made no determination that the case was frivolous, the court held, counsel's asserted lack of diligence does not rise to the level of needless obstruction, and it was not unreasonable for counsel to litigate a non-frivolous case to a ruling on a dispositive motion. The Federal Circuit applied Eleventh Circuit law, under which § 1927 reaches only conduct that is "egregious" and "objectively reckless"—conduct "tantamount to bad faith"—and requires that counsel "knowingly or recklessly pursue a frivolous claim or needlessly obstruct the litigation of a non-frivolous claim." *Amlong*

**OPPOSITION OF WILLIAM P. RAMEY, III AND RAMEY LLP TO
NETFLIX, INC.'S MOTION FOR ATTORNEYS' FEES
Case No. 4:22-cv-01490-JST**

& *Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1242 (11th Cir. 2007); *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1282–83 (11th Cir. 2010). That standard is materially congruent with the Ninth Circuit's requirement of subjective bad faith, or recklessness coupled with frivolousness, harassment, or an improper purpose. *Fink*, 239 F.3d at 993–94. Netflix's motion against Mr. Ramey rests on the same theory the Federal Circuit rejected—that counsel should have recognized and abandoned the ownership position earlier. Because that position was not frivolous, it cannot support a § 1927 award here.

### 1. Counsel held a colorable, expert-supported theory of ownership that the Finnish Supreme Court has now confirmed is justiciable.

The "ownership issue" lies at the heart of Netflix's narrative and warrants direct response. The theory that Mr. Valjakka owned the '167 patent was developed *before* Mr. Ramey appeared. Ramey Decl. ¶¶ 3, 4(c). It was the theory under which the USPTO had granted the petition to revive in 2011 and issued the patent in 2013. It was the theory recorded in the chain of title at the USPTO. And it was supported by sworn evidence: the *nunc pro tunc* assignments themselves; Professor Tepora's declaration on Finnish appropriation law (ECF No. 188 at 4–7); and Mr. Hietalahti's testimony on contemporaneous understanding under Finnish law (Hietalahti Decl. ¶¶ 17–24).

The theory had two independent legs. Under the Finnish-law leg, Mr. Valjakka had acquired title to the abandoned application by appropriation—a doctrine recognized in Finnish jurisprudence and explicated by Professor Tepora in his sworn declaration. *See* ECF No. 188 at 4–7. Under the California contract-law leg, the *nunc pro tunc* assignments operated prospectively only, leaving the Utilization Agreement in force from December 2005 through August 2007 and triggering the reversion provisions of that Agreement when SBO ceased operations and abandoned the application. *See* ECF No. 188 at 7–9. Either leg, if accepted, was sufficient to establish ownership.

**OPPOSITION OF WILLIAM P. RAMEY, III AND RAMEY LLP TO
NETFLIX, INC.'S MOTION FOR ATTORNEYS' FEES
Case No. 4:22-cv-01490-JST**

The Court ultimately accepted neither leg. As to the first, it held that abandonment and revival of U.S. patent applications are matters of federal patent law that displace Finnish common law. ECF No. 257 at 12–13. As to the second, it extended comity to the Finnish courts' interpretation of the Utilization Agreement and treated that interpretation as foreclosing the California-law argument. *Id.* at 9–11. These are reasoned holdings on contested questions of law—not findings of frivolousness, and not the showing required for § 1927 sanctions. *See Akazawa v. Link New Tech. Int'l, Inc.*, 520 F.3d 1354, 1357 (Fed. Cir. 2008) (recognizing that questions of patent ownership and assignment can turn on foreign law).

The Finnish Supreme Court's August 26, 2025 decision now establishes that the Finnish judgment on which this Court extended comity did not, in fact, resolve the ownership dispute on the merits—and that the dispute remains open under Finnish law. Valjakka Decl. ¶¶ 13–25; Hietalahti Decl. ¶¶ 5–26. Mr. Hietalahti, a qualified Finnish attorney, opines that earlier rulings declining to hear the case were based on procedural or jurisdictional grounds, not a final adjudication of ownership," and that the Supreme Court's decision restores Mr. Valjakka's ability to pursue a determination of ownership and confirms that such determination has not yet been made. Hietalahti Decl. ¶¶ 15–16. The development is dispositive of Netflix's bad-faith narrative. Counsel cannot be sanctioned for asserting a position that the highest court of the only foreign forum implicated has now confirmed remains a live, justiciable dispute.

Even setting that decision aside, counsel pressed an ownership theory that the USPTO had credited and an expert in Finnish law had supported. That is not the record on which subjective bad faith is found. *Stone Basket*, 892 F.3d at 1181.

## 2. The Court's own Rule 12(c) ruling refutes the "baseless from day one" narrative.

Netflix tells a story in which counsel pressed a hopeless case for years, undeterred by what should have been obvious defects. The Court's own Rule 12(c) ruling refutes that story.

**OPPOSITION OF WILLIAM P. RAMEY, III AND RAMEY LLP TO NETFLIX, INC.'S MOTION FOR ATTORNEYS' FEES**
**Case No. 4:22-cv-01490-JST**

On the '102 patent, the Court found the claims directed to an abstract idea and lacking an inventive concept. ECF No. 132 at 5–8. As soon as Mr. Valjakka's expert reviewed Netflix's source code and reported that he could not opine on infringement of the '102 patent, that patent was voluntarily dropped from the case. *See* ECF No. 388 at 7–8. That is exactly the response the rules require of competent counsel: when discovery does not support a claim, the claim is dismissed.

On the '167 patent—the patent that drove the case forward—the Court denied Netflix's motion. The Court held that the '167 claim presented a "close call" at *Alice* step one and supplied an inventive concept at step two. ECF No. 132 at 9–11. That is not the holding a Court issues in a frivolous case. Counsel who continue to litigate a patent the Court itself has held to satisfy *Alice* step two are not litigating in bad faith. They are doing their job.

### 3. The USPTO's grant of the petition to revive forecloses a bad-faith inference.

Netflix devotes considerable energy to characterizing the December 2010 Petition to Revive as fraudulent. The Federal Circuit has foreclosed exactly that line of attack. In *Aristocrat Technologies Australia Pty Ltd. v. International Game Technology*, 543 F.3d 657 (Fed. Cir. 2008), the court held that "[p]rocedural lapses during examination, should they occur, do not provide grounds of invalidity. Absent proof of inequitable conduct, the examiner's or the applicant's absolute compliance with the internal rules of patent examination becomes irrelevant after the patent has issued." *Id.* at 663.

The USPTO is the agency Congress charged with deciding revival petitions, and its determinations are entitled to substantial deference. *Morganroth v. Quigg*, 885 F.2d 843, 848 (Fed. Cir. 1989). Counsel who litigate a patent the USPTO revived and issued—and who do so against the backdrop of *Aristocrat*'s holding that revival errors are not even an invalidity defense—cannot fairly be charged with bad faith. The legal landscape was the opposite of what Netflix's "should have known" theme suggests: a patent the PTO had revived; an *Aristocrat* doctrine immunizing the patent from revival-based

14

**OPPOSITION OF WILLIAM P. RAMEY, III AND RAMEY LLP TO NETFLIX, INC.'S MOTION FOR ATTORNEYS' FEES**
**Case No. 4:22-cv-01490-JST**

attack; an expert declaration on Finnish law; a colorable California-contract argument; and a Court that itself denied 12(c) on the surviving patent.

### 4. Netflix's "concealment" narrative does not survive examination.

Netflix accuses counsel of "burying" the Finnish Court Order, "concealing" AiPi's role, and "hiding" the CDN License.  None of that withstands scrutiny.

The Finnish Court Order was produced in discovery.  Netflix had it.  That Netflix says counsel produced only a Finnish-language version overlooks two facts: (i) the document was filed in a Finnish court and was originally drafted in Finnish; and (ii) Netflix's litigation team includes counsel and consultants capable of obtaining a translation, as Netflix did when it submitted its own translation.  The duty to produce a document in discovery is not a duty to translate it.  Mr. Valjakka has confirmed in his declaration that he disclosed relevant Finnish proceedings to counsel, including discussions with attorney Onni Hietalahti.  Valjakka Decl. ¶¶ 26–30; Hietalahti Decl. ¶ 17.

The Akamai settlement included a confidentiality provision.  Confidentiality provisions are standard in patent litigation settlements industry-wide.  They are not "concealment."  They are how patent settlements get done.  Netflix itself has settled patent matters under such provisions, including in this district.  The notion that securing a confidentiality clause is evidence of attorney bad faith is unsupported and unsupportable.

The AiPi relationship was disclosed in response to the discovery requests calling for it and in response to Netflix's joinder motion.  *See* ECF No. 216.  AiPi's role was as a permissible litigation-support entity in a complex patent case involving Finnish law, U.S. patent law, foreign-law expert testimony, and contractual interpretation.  Such arrangements are typical, not sanctionable.  Critically, Netflix identifies no evidence that any confidential information was misused or disclosed outside the

litigation—and the absence of any such harm is independently fatal to its sanctions theory under *Goodyear*, 581 U.S. at 108–09.

The CDN agreements were produced in response to discovery requests.  These productions occurred on the schedule the discovery rules and the parties' negotiations required.  That Netflix would have preferred earlier disclosure is not the standard.

The "WE CANNOT …." email Netflix wields is a private, candid communication between co-counsel about the pressure of difficult litigation.  *See* ECF No. 388 at 2 (quoting Ex. A).  It is the kind of email every litigator has sent at some point.  Reading subjective bad faith into a typo-laden expression of pressure requires precisely the inferential leap *Lahiri* forecloses.  *Lahiri*, 606 F.3d at 1219.  Additionally, Exhibits 388-2, 388-10, 388-15, 388-18, 388-19, 388-36, 388-37, 388-38 and 388-39 ("Work Product E-mails") are subject to objections pending before this Court, as each is privileged material.  ECF. No. 400 at ….  Netflix obtained the Work Product E-mails from a third-party deposition of Eric Morehouse of AiPi.  While Mr. Morehouse may have waived his claim to privilege, Mr. Ramey did not.

Separately, and independent of the privilege objection, the substantive content of the Work Product E-mails is not authored by Mr. Ramey, and what those communications actually document is the conduct of third parties — not any "multiplication of the proceedings" by Mr. Ramey within the meaning of § 1927. Exhibit 388-10 contains a November 8–15, 2021 exchange between Akamai's counsel and Erick Robinson of Spencer Fane that predates Mr. Ramey's appearance in this case. Ramey Decl. ¶¶ 3, 4. Exhibit 388-2 is a "money" email authored by Eric Morehouse of AiPi addressing the funder's payment obligations to Ramey LLP — not litigation conduct directed at Netflix or this Court. Exhibit 388-36 is Erik Lund's pleading analysis explaining why willfulness could not be re-pled consistent with the Court's October 11, 2022 order — authored by AiPi, and reflecting precisely the kind of good-faith refusal to plead a claim without a basis that Rule 11 demands. Exhibit 388-39 is Mr. Lund's transmittal of the '102

**OPPOSITION OF WILLIAM P. RAMEY, III AND RAMEY LLP TO**
**NETFLIX, INC.'S MOTION FOR ATTORNEYS' FEES**
**Case No. 4:22-cv-01490-JST**

supplemental infringement contentions prepared by AiPi. Exhibits 388-15, 388-18, and 388-19 are Mr. Ramey's internal communications with AiPi seeking client authority to settle a separate matter with Akamai — work-product deliberations among attorney, client representatives, and the client's litigation-support agents, not conduct directed at Netflix or this Court. Exhibits 388-37 and 388-38 reflect routine intra-firm and counsel-to-counsel correspondence concerning deposition scheduling, briefing logistics, and substantive analysis of a § 101 motion — none of which has ever been adjudicated as sanctionable, and none of which Netflix identifies any specific basis to characterize as bad faith.

Section 1927 reaches "*any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously.*" 28 U.S.C. § 1927 (emphasis added). The statute sanctions the attorney's own multiplicative acts; it does not authorize sanctions based on statements made *to* the attorney by his client, by a litigation-support entity, or by prior counsel, and it does not authorize sanctions for conduct that, under *Goodyear*'s causation rule, was not caused by the sanctioned attorney's own act. 581 U.S. at 108–09. To the extent the Work Product E-mails document anything actionable, they document the conduct of third parties whom Netflix has not joined as respondents to this motion, who are not attorneys subject to § 1927, and against whom the present motion seeks no relief. Reading them as evidence of Mr. Ramey's subjective bad faith would require precisely the inferential leap *Lahiri* forecloses. 606 F.3d at 1219.

### 5. *Netflix's authorities are distinguishable.*

Netflix's brief leans heavily on a handful of district-court decisions awarding attorney fees against counsel.  Each is distinguishable.

*Raydiant Oximetry, Inc. v. ALC Med. Holdings LLC*, 808 F. Supp. 3d 987 (N.D. Cal. 2025)—the sanctioned attorneys had been put on notice in advance of suit that the claims were "objectively baseless" and pressed forward with no evidentiary basis. *Id.* at 1003–05.  Mr. Ramey, by contrast, inherited a case

**OPPOSITION OF WILLIAM P. RAMEY, III AND RAMEY LLP TO**
**NETFLIX, INC.'S MOTION FOR ATTORNEYS' FEES**
**Case No. 4:22-cv-01490-JST**

in which the patent had already been issued by the USPTO, supported by a recorded chain of title, an expert opinion, and a granted revival petition. Ramey Decl. ¶¶ 3, 4. The two records are not comparable.

*Koji IP, LLC v. Renesas Electronics America, Inc.*, No. 24-cv-03089-PHK, 2025 WL 917110 (N.D. Cal. Mar. 26, 2025)—this decision is currently on appeal to the Federal Circuit and is therefore subject to change. The conduct sanctioned in *Koji*—a "two complaints" violation—bears no factual resemblance to the situation here.

*mCom IP, LLC v. City National Bank of Florida*, 2025 WL 939224 (S.D. Fla. Mar. 28, 2025)— to the extent Netflix relies on this district-court fee ruling, it has been reversed. In *mCom IP, LLC v. City National Bank of Florida*, No. 2024-2089 (Fed. Cir. May 15, 2026), the Federal Circuit set aside both the § 285 award against the patentee and the § 1927 sanction against its counsel, holding that the grounds presented to the district court were insufficient to support a finding that the case was exceptional under § 285 or that counsel acted in bad faith under § 1927. That precedential decision now cuts against Netflix's motion, not for it.

*Lowe v. Sheildmark, Inc.*, *Advanced Video Techs. LLC v. HTC Corp.*, *WiNet Lab LLC v. Motorola Mobility, LLC*, *Max Sound Corp. v. Google, Inc.*, *Inventor Holdings*, *Kilopass*, and *Chromadex*—every one of these is a § 285 award against the *plaintiff*, not a § 1927 or inherent-power award against counsel. They establish the metes and bounds of § 285. They do not establish that counsel may be sanctioned under any provision.

Netflix has cited no Federal Circuit case, and very few district-court cases, imposing seven-figure § 1927 sanctions against counsel based on the kind of record presented here. The reason is that the bar for such sanctions is high, and Netflix has not cleared it.

### C.   The Court Should Decline to Invoke Its Inherent Power on This Record.

Netflix's brief gestures at the Court's inherent power but never engages the standards that govern it.  Inherent-power sanctions require a specific, particularized finding of bad faith.  *See Chambers*, 501 U.S. at 50; *Roadway Express*, 447 U.S. at 766; *Lahiri*, 606 F.3d at 1219 (finding supported by supported by clear and convincing evidence).  An *Octane Fitness* totality-of-the-circumstances inquiry—the framework Netflix's brief actually applies—is the wrong standard.  *Octane Fitness* governs § 285 against parties; it does not govern inherent-power sanctions against counsel.

The record cannot bear the weight of the bad-faith finding *Chambers* requires.  Counsel litigated theories the USPTO had credited, this Court had partially sustained, an expert in Finnish law had supported, and the Finnish Supreme Court has now confirmed remain unresolved.  Valjakka Decl. ¶¶ 13–25; Hietalahti Decl. ¶¶ 5–26; Ramey Decl. ¶ 4(c).  Counsel withdrew when conflict required.  Ramey Decl. ¶ 3.  Counsel has already been sanctioned $95,000 for the only attorney conduct the Court has actually adjudicated as improper.  ECF No. 353.  There is no evidence of bad faith on this record, and the Court should decline to invoke its inherent power.

### D.   Even if Liability Could Attach, the Requested Amount Is Plainly Overbroad.

If the Court reaches the question of amount, four independent defects in Netflix's calculation require substantial reduction.  Together, these defects swallow most of the $3 million Netflix demands.

#### 1.   *The March 24, 2024 withdrawal is a hard cut-off.*

Section 1927 by its terms reaches only an attorney who "so multiplies the proceedings in any case unreasonably and vexatiously."  28 U.S.C. § 1927.  An attorney who has withdrawn is not, by definition, multiplying proceedings.  An attorney who is not in the case cannot cause fees to be incurred there.  The causation requirement is fundamental*Keegan*, 78 F.3d at 436.  The Supreme Court reaffirmed the

principle in *Goodyear*: a fee award must be calibrated to the damages caused by specific misconduct, with a causal link established between the conduct and the fees claimed.  581 U.S. at 108–09.

Mr. Ramey withdrew on March 24, 2024.  ECF No. 277; Ramey Decl. ¶ 3.  Netflix's motion seeks fees through April 17, 2026—more than two years past the withdrawal date.  A substantial portion of Netflix's claimed fees was incurred during that two-year window, including Netflix's third-party discovery from AiPi in the Eastern District of Virginia; Netflix's cross-motion for summary judgment on the CUVTA claims; and the CUVTA summary-judgment ruling (ECF No. 368).

Mr. Ramey did not represent Mr. Valjakka through the entirety of any of those proceedings. Ramey Decl. ¶ 3.  The firm's only post-withdrawal involvement was the limited courtesy of ECF filings on behalf of a client who could not navigate the system pro se.  *Id.*  He could not have caused the post-withdrawal fees Netflix claims.  Section 1927—and any inherent-power analog—therefore cannot reach them.

A line-item analysis of the four exhibits Netflix filed in support of its Motion for Attorneys' Fees — ECF Nos. 388-49, 388-50, 388-52, and 388-53 — produces 4,947 individual time entries spanning every dated charge in the publicly-filed invoices and unbilled summaries.  (Exhibit A) Tagged by date and reconciled against the headline figures in Piepmeier ¶ 27 and Lamkin ¶ 23, the data show that of the 7,998.70 hours that appear in the line items for Netflix's fourteen requested timekeepers, **2,269.60 hours — 28.4% — were billed after March 4, 2024**, the date Ramey LLP withdrew from this case. ECF No. 277. Applied to Netflix's $3,000,000 ask, that fraction corresponds to approximately **$851,238 of the request**. The post-withdrawal work is concentrated in proceedings to which Mr. Ramey and Ramey LLP were strangers: the CUVTA cross-motions, the AiPi-related forensic discovery in the Eastern District of Virginia, pretrial preparation, and preparation of the fees motion itself. More than two-thirds of the post-

withdrawal time (1,568.30 hours) is Baker Botts work; Baker Botts was not retained until July 2023, after the conduct on which Netflix bases its present motion. Lamkin Decl. ¶ 1.

The Federal Circuit holds that 35 U.S.C. § 285 does not authorize fee shifting against counsel. *Dragon Intellectual Prop., LLC v. DISH Network L.L.C.*, 956 F.3d 1358, 1361–62 (Fed. Cir. 2020). To the extent Netflix's motion proceeds against Mr. Ramey or Ramey LLP at all, it must do so under 28 U.S.C. § 1927 or the Court's inherent power, both of which require a particularized showing that the multiplication of proceedings was *caused* by counsel's subjective bad faith. *Fink v. Gomez*, 239 F.3d 989, 993–94 (9th Cir. 2001); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). Causation is dispositive here: counsel cannot have caused fees incurred during a period in which counsel had no role in the case. The 2,269.60 hours billed after March 4, 2024 are, as a matter of arithmetic, beyond the reach of any sanction against Mr. Ramey or Ramey LLP regardless of how the Court resolves the merits of Netflix's § 1927 and inherent-power theories.

The analysis also identifies a series of independent infirmities in Netflix's submission — a 342-hour aggregate shortfall between the Baker Botts line items and Lamkin ¶ 23 (worth approximately $308,988 at the implied blended rate); a 47.70-hour Delacenserie discrepancy that runs in the opposite direction of any protective-order deduction; recurring block billing, vague entries, and clerical work billed at attorney rates; an asserted but unverifiable protective-order deduction made via blue highlighting that does not appear in the public record; an unsubstantiated "approximately $800,000" deduction for non-requested timekeepers; and unsupported "hundreds of thousands" in expert-cost deductions. Each is a basis on which the Court may further reduce the lodestar. But the 28.4% reduction urged here does not depend on the Court resolving any of them. It rests on a single fact that Netflix's own submission establishes: more than a quarter of the time for which Netflix seeks fees was billed during a period in which Mr. Ramey and Ramey LLP were not in the case.  Therefore, while no fee award is believed

**OPPOSITION OF WILLIAM P. RAMEY, III AND RAMEY LLP TO
NETFLIX, INC.'S MOTION FOR ATTORNEYS' FEES
Case No. 4:22-cv-01490-JST**

appropriate, if the Court issues any award, it should be reduced by no less than $852,000, to no more than $2,148,000, which is 28.4% of the fees Netflix seeks.

### 2. The $95,000 already paid for the protective-order violation cannot be recovered again.

Mr. Ramey and Ramey LLP have already been sanctioned $95,000 in compensatory sanctions for the protective-order issue. ECF No. 353. That award reflected this Court's lodestar determination of the *reasonable* fees Netflix incurred in connection with that conduct. *Id.* at 3–4. Netflix has explicitly described its present motion as excluding the PO-related fees: "This figure already removes the full amount of fees Netflix's lawyers incurred related to the PO violation motion, i.e., over $300K, from which Netflix sought only $95,000." ECF No. 388 at 24 n.10. Mr. Ramey takes Netflix at its word and asks the Court to enforce that representation.

### 3. Netflix's "we'll take half" framing does not establish reasonableness.

Netflix's request for $3 million on a claimed $6.2 million in fees is unusual. Netflix advertises this as a discount of less than 50%. ECF No. 388 at 24. The framing itself raises questions. A fee request supported by reasonable, contemporaneous time records and reasonable rates does not need to be discounted by half to be presentable to the Court. The discount suggests Netflix itself cannot defend the underlying $6.2 million figure.

The lodestar inquiry requires Netflix to document hours actually worked on tasks reasonably necessary to the litigation, at reasonable rates. *Hensley v. Eckerhart*, 461 U.S. 424, 433–37 (1983); *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). Producing a $6.2 million figure and a 50% discount is not the same as producing defensible billing records. A proper fee request requires contemporaneous records segregated by task and date and conduct its own lodestar analysis on a clean record.

**OPPOSITION OF WILLIAM P. RAMEY, III AND RAMEY LLP TO NETFLIX, INC.'S MOTION FOR ATTORNEYS' FEES**
**Case No. 4:22-cv-01490-JST**

### E.  Equitable Considerations Weigh Against Any Award Against Counsel.

Even where a movant has shown the elements for § 1927 or inherent-power sanctions, the Court retains discretion to decline.  The equities here counsel restraint.

Mr. Ramey did not file this case.  Ramey Decl. ¶ 3.  He inherited it from Mr. Robinson, who represented to him that the ownership issues were "contestable and capable of being successfully addressed through legal argument and supporting evidence," *id.* ¶ 4, and who did not state to Mr. Ramey that withdrawal was compelled by any ethical violation or inability to proceed in good faith. *Id.* ¶ 4.  Mr. Ramey performed his own diligence review and substituted in on that basis.  *Id.* ¶ 4.  He litigated theories grounded in a recorded chain of title, a granted USPTO petition, and an expert declaration on Finnish law.  He prevailed in resisting Netflix's Rule 12(c) motion as to the patent that drove the case forward. ECF No. 132 at 9–11.  He withdrew when conflict required.  Ramey Decl. ¶ 3.  And the position he advanced has now been confirmed as colorable by the highest court in Finland.  Valjakka Decl. ¶¶ 13–25; Hietalahti Decl. ¶¶ 5–26.

Netflix, for its part, did not raise the standing issue forcefully until well into the case.  Netflix had the same Finnish Court Order Mr. Ramey did.  Netflix had the same chain of title at the USPTO.  Netflix participated in discovery, *Markman*, and dispositive motions for nearly two years before pressing the standing argument that ultimately resolved the case.

On a record in which counsel litigated theories the USPTO had accepted, the Court had partially sustained, an expert had supported, and the Finnish Supreme Court has now confirmed remain unresolved—and after counsel has already been sanctioned for the one piece of conduct the Court has adjudicated as improper—adding a multi-million-dollar fee award would not advance the deterrence purposes of § 1927 or the Court's inherent power.  It would impose a windfall on Netflix at the expense of an attorney who tried a hard case and lost.

**OPPOSITION OF WILLIAM P. RAMEY, III AND RAMEY LLP TO
NETFLIX, INC.'S MOTION FOR ATTORNEYS' FEES
Case No. 4:22-cv-01490-JST**

## V.  CONCLUSION

For the foregoing reasons, Mr. Ramey and Ramey LLP respectfully request that the Court:

1.  **Deny** Netflix's motion in full as to Mr. Ramey and Ramey LLP under 35 U.S.C. § 285, as that statute does not authorize fee awards against counsel;

2.  **Deny** the motion under 28 U.S.C. § 1927 and the Court's inherent power for failure to establish bad faith by clear and convincing evidence;

3.  In the alternative, limit any award to fees incurred during Mr. Ramey's representation (November 2021 through March 24, 2024) and exclude all fees attributable to the protective-order conduct already sanctioned at ECF No. 353; and

4.  **Grant** such other and further relief as the Court deems just and proper.

Respectfully submitted,

**RAMEY LLP**

By: /s/ William P. Ramey, III
**William P. Ramey, III** (admitted *pro hac vice*)
wramey@rameyfirm.com
RAMEY LLP
446 Heights  Blvd., Suite 200
Houston, Texas 77007
Telephone:  +1.713.426.3923

*Attorneys for William P. Ramey, III
and Ramey LLP*

OPPOSITION OF WILLIAM P. RAMEY, III AND RAMEY LLP TO
NETFLIX, INC.'S MOTION FOR ATTORNEYS' FEES
Case No. 4:22-cv-01490-JST