# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| LAURI VALJAKKA,<br><br>        Plaintiff,<br><br>    v.<br><br>NETFLIX, INC.,<br><br>        Defendant. | Case No. 4:22-cv-01490-JST<br><br>**DECLARATION OF WILLIAM P. RAMEY, III IN SUPPORT OF RESPONSE TO MOTION FOR ATTORNEYS' FEES** |

1. My name is William P. Ramey, III. I am over the age of 21. I have never been convicted of a felony, and I have personal knowledge of the facts contained herein, which are true and correct. If called as a witness, I could competently testify to these statements.

2. I am licensed to practice law in the state of Texas, and I am managing partner of the law firm of Ramey LLP, which represents the Plaintiff in the above-captioned lawsuit.

3. I was lead counsel for Plaintiff, Lauri Valjakka in the above captioned matter from November of 2021, until my withdraw was granted by ECF No. 277 on March 24, 2024. My firm continued to file documents for Mr. Valjakka because he said he could not determine how to sign up pro se. As he was a client, we felt it best to provide that limited assistance rather than risk him not being capable of filing documents. We were eventually successful in having Mr. Valjakka register pro se.

4. I was approached by Erick Robinson in 2021 to substitute for him on several cases and several plaintiffs. One such plaintiff was Mr. Valjakka. Mr. Robinson told me that he was switching firms and could not take the cases with him. I discussed each of the cases with Mr. Robinson and agreed to substitute on many, including Mr. Valjakka's case, after I performed my own diligence review.

5. Mr. Robinson did not communicate to me at the time that the Valjakka cases were fundamentally defective or incapable of being maintained in good faith as I would not have taken the case.

6. To the contrary, during our communications November 2021, Mr. Robinson expressed that the ownership issues raised by Akamai were contestable and capable of being successfully addressed through legal argument and supporting evidence, including expert and foreign law submissions.

7. At no time prior to his withdrawal did he advise me that the claims lacked any legal or factual basis.

8. As reflected in the email chains attached to Mr. Robinson's declaration, counsel for Akamai asserted an ownership challenge and threatened potential fee exposure.

9. Those communications were treated by all involved—including Mr. Robinson—as advocacy positions by opposing counsel, not dispositive determinations. It was understood that such positions would be tested through motion practice and, if necessary, expert submissions regarding Finnish law and the relevant agreements.

10. Mr. Robinson's declaration asserts that his "primary motivation" for withdrawal was concern regarding ownership of the '167 Patent. That characterization is incomplete and misleading.

11. In contemporaneous discussions with me, Mr. Robinson explained that his withdrawal was driven in substantial part by professional and business considerations associated with his transition to a new law firm, including concerns about how the matters would be perceived internally and the desire to avoid complications with firm management and existing client relationships.

12. Mr. Robinson also referenced a potential conflict but I do not recall from that conversation the identity of the client.

13. In my discussions with Mr. Robinson, it was clear that the stated concerns regarding ownership were intertwined with—and, in practical terms, secondary to—these broader professional considerations.

14.    Mr. Robinson did not state to me that withdrawal was compelled by any ethical violation or inability to proceed in good faith. Instead, he indicated that withdrawal was the prudent course given his new firm's sensitivities, potential conflicts, and business risk considerations. To the extent Mr. Robinson communicated something different to Eric Morehouse, I have no knowledge of that and would find it remarkable as Mr. Robinson would be intentionally misleading me to take the case.

15.    In my opinion, the November 13, 2021 email cited in Mr. Robinson's declaration reflects a disagreement about litigation strategy, including whether to withdraw and refile after further development of ownership issues.

16.    That communication does not reflect that the claims lacked merit. Rather, it reflects a strategic disagreement about timing and approach—specifically, whether to continue litigating while addressing ownership issues or to pause and attempt to "fix" those issues before proceeding.

17.    Importantly, Mr. Robinson's suggestion to withdraw and refile presupposed that the claims could be viable if presented with additional supporting material, which is inconsistent with any suggestion that the claims were objectively baseless.

18.    At all relevant times, I understood—and Mr. Robinson confirmed—that there was a good-faith basis to assert the claims on behalf of Mr. Valjakka, including:

a.    reliance on documentary evidence and legal analysis concerning ownership and inventorship and

b.    the availability of expert testimony regarding Finnish law and the effect of prior proceedings.

19.     The mere existence of a dispute regarding ownership—particularly one involving foreign proceedings and complex contractual history—does not render claims frivolous or sanctionable.

20.     To the extent Mr. Robinson now characterizes his withdrawal as primarily driven by concerns regarding ownership, that characterization is inconsistent with his contemporaneous statements to me.

21.     ECF No. 348-1 is a true and correct copy of the Finnish Supreme Court Opinion with a certified translation at the end that Mr. Valjakka and Mr. Hietalahti informed me reversed a lower court decision and reopened proceedings concerning whether Mr. Valjakka owned that '167 patent.

22.     Attached hereto as Exhibit A is a true and correct copy of an analysis prepared at my direction in connection with this opposition. The analysis consists of a line-item extraction of every dated time entry that appears in the four exhibits Netflix filed in support of its Motion for Attorneys' Fees: ECF No. 388-49 (Perkins Coie invoices, Exhibit ZV); ECF No. 388-50 (Perkins Coie unbilled February–March 2026 summary, Exhibit ZW); ECF No. 388-52 (Baker Botts invoices, Exhibit A to the Lamkin Declaration); and ECF No. 388-53 (Baker Botts unbilled February–March 2026 prebill, Exhibit B to the Lamkin Declaration). Each of the 4,947 line items in the audit is identified by its source ECF number, the firm, the date, the timekeeper, the hours, and a period flag indicating whether the entry pre-dates or post-dates Ramey LLP's withdrawal from this matter on March 4, 2024 (ECF No. 277), together with an excerpt of the time-entry narrative as it appears in the cited ECF filing. The aggregate per-timekeeper hours are reconciled against the headline hours figures Netflix declares at Piepmeier Decl. ¶ 27 (ECF No. 388-1) and Lamkin Decl. ¶ 23 (ECF No. 388-51). To the best of my knowledge, the spreadsheet attached as

Exhibit B is a true and correct compilation of the time-entry data appearing in the four ECF filings identified above.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 22, 2026.

_____

William P. Ramey, III

DECLARATION OF WILLIOAM P. RAMEY, III IN SUPPORT RESPONSE TO MOTION FOR
ATTORNEYS' FEES -  4:22-CV-01490-JST