Rachael D. Lamkin (SBN 246066)
rachael.lamkin@bakerbotts.com
Karan Singh Dhadialla (SBN 296313)
karan.dhadialla@bakerbotts.com
BAKER BOTTS L.L.P.
101 California Street, Suite 3200
San Francisco, California 94111
Phone: (415) 291-6200
Fax: (415) 291-6300

Attorneys for Defendant
NETFLIX, INC.

(Additional counsel listed in signature block)

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| LAURI VALJAKKA, | Case No.: 4:22-cv-01490-JST |
| *Plaintiff*, | **DEFENDANT NETFLIX, INC.'S OPPOSITION TO WILLIAM RAMEY'S MOTION TO STRIKE EMAIL EXHIBITS FROM NETFLIX, INC.'S MOTION FOR ATTORNEYS' FEES** |
| v. | |
| NETFLIX, INC., | |
| *Defendant*. | Judge:    Hon. Jon S. Tigar |

NETFLIX INC.'S OPPOSITION TO WILLIAM RAMEY'S MOTION TO STRIKE

## I.    INTRODUCTION

Mr. Ramey's Motion to Strike, ECF No. 399, asks this Court to suppress some of the very evidence that demonstrates his litigation misconduct. Netflix lawfully obtained this evidence sixteen months ago through a court-ordered production in the Eastern District of Virginia ("EDVA") after Mr. Ramey was given repeated opportunities to assert privilege and chose not to. *See, e.g.*, ECF Nos. 403-2, 403-3, 403-4, 403-5. His motion rests on three principal arguments: that the nine emails are protected work product, that they are shielded by a common-interest privilege, and that Netflix improperly used a Rule 45 subpoena to circumvent this Court's denial of joinder. ECF No. 399 at 2–3. None of these arguments support Mr. Ramey's request that this Court strike material evidence.

The fundamental flaw in Mr. Ramey's motion is waiver. Mr. Ramey took no action for over sixteen months after receiving notice of AiPi's productions, links to access those productions, and an accompanying court order mandating the process for asserting any privilege. He did not assert work-product protection. He did not assert common-interest privilege. He did not seek a protective order or file any objection in the EDVA proceeding. Only now, confronted with a motion for attorneys' fees supported by those very documents, does Mr. Ramey belatedly claim privilege. Under settled Ninth Circuit law, his claim comes far too late.

Mr. Ramey's circumvention argument fares no better. This Court's denial of Netflix's motion to join AiPi addressed whether AiPi was a necessary party to Netflix's CUVTA claim under Rule 19, not whether AiPi possessed relevant, discoverable documents or whether Netflix could issue a subpoena to AiPi. *See* ECF No. 284 at 6–8. A Rule 45 subpoena to a non-party is an independent discovery mechanism, and nothing in this Court's joinder ruling barred Netflix from seeking documents from AiPi under Rule 45.

## II.    BACKGROUND

On January 23, 2024, Netflix served Valjakka's litigation funder, AiPi, a Rule 45 subpoena. After a year of litigation, the Eastern District of Virginia court ordered AiPi and its members, including Messrs. Morehouse, Lund, and Sheets, to submit their computers for forensic discovery. ECF No. 403-2. After the forensic vendor pulled all relevant documents, the EDVA court ordered,

NETFLIX INC.'S OPPOSITION TO WILLIAM RAMEY'S MOTION TO STRIKE

"AiPi shall then review the responsive information and ***inform any persons it believes may have claims to privilege*** over responsive information and that any objections based on privilege ***must be filed in this Court***." *Id*. at ¶ 2(d) (emphasis added). Counsel for AiPi provided the Production Order and links to multiple productions to both Mr. Ramey and Mr. Valjakka, advising both Ramey and Valjakka:

> We are in the middle of forensic discovery ordered by the Court, here's the first production: [link to AiPi documents]. We are producing this to you so you have the opportunity to assert privilege before it is produced to Netflix. I have reattached the Court order as a reference. If you wish to assert privilege, you'll need to follow the attached order.

ECF No. 403-3 at 6.

AiPi's counsel sent three (3) separate productions of AiPi documents to Mr. Ramey, each time reminding Mr. Ramey, "if you intend to assert privilege to any of the documents, please follow the attached [Production Order]." ECF Nos. 403-4, 403-5. Mr. Ramey responded to the emails from AiPi's counsel, demonstrating he received them, but he did nothing to preserve any privileges he may have believed he held. *See* ECF No. 403-3 at 5. Further, fifteen months ago, Mr. Ramey submitted a declaration to this Court stating, "It is my understanding from discussions with Brendan Klaproth that a Virginia federal court has ordered a forensic search of Eric Morehouse's computer and full production. Therefore, everything sent to Eric Morehouse, from my Firm or others, will be discovered." ECF No. 311-1, at ¶ 17. Mr. Ramey attached the EDVA court's production order to that declaration. ECF No. 311-14.

Neither AiPi nor its members, including Messrs. Morehouse, Lund, and Sheets, opposed the production of AiPi's documents based on privilege. ECF No. 403-7 at 1 ("AiPi is not asserting any privilege to prevent the disclosure of that discovery to respondent Netflix, Inc.").

Mr. Valjakka asserted both the attorney client and common interest privileges, and he lost on both counts. ECF Nos. 403-6, 403-7. The EDVA judge ordered every collected AiPi document produced to Netflix, because Mr. Valjakka had no "common interest" with AiPi and because any privilege had been destroyed by the crime-fraud exception, *inter alia*. *Id*.

Mr. Ramey did not assert work product or common interest privilege in EDVA even though he was repeatedly advised to do so. Now, sixteen months later, Mr. Ramey claims nine of the documents Netflix received as part of the EDVA procedure are privileged.

## III.   ARGUMENT

### A.   Mr. Ramey Waived Any Privilege He May Have Held By Failing to Assert It in EDVA Despite Repeated Notice and Opportunity

Fed. R. Civ. Pro 26(b)(3), which substantially codifies the Supreme Court's articulation of the work-product doctrine in *Hickman v. Taylor*, 329 U.S. 495 (1947), "protect[s] against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *See also Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 576 (9th Cir. 1992). The exhibits Mr. Ramey seeks to strike do not qualify for this protection. For example, at least two of the exhibits are email chains between Mr. Ramey and Akamai's counsel regarding settlement discussions, which were forwarded to AiPi without Mr. Ramey's mental impressions. *See* ECF Nos. 388-15, 388-18. Another exhibit is an email chain between Mr. Ramey and Eric Morehouse discussing the payment of past bills. *See* ECF No. 388-2. Still another exhibit is an email forwarding a draft document to Erik Lund that includes neither the draft document nor any discussion of its substance. *See* ECF No. 388-39.

Even if, *arguendo*, the emails could be considered attorney work product, Mr. Ramey has waived any privilege he may have once possessed. Mr. Ramey asserts he "had no notice of the contents of the production" and "had no opportunity to review, log, or move to quash." ECF No. 399 at 5; ECF No. 399-1 ¶¶ 7, 9. Mr. Ramey's sworn representations are central to Mr. Ramey's arguments, but are squarely contradicted by the record. The EDVA Production Order specifically required AiPi to "inform any persons it believes may have claims to privilege over responsive information and that any objections based on privilege must be filed in this Court." ECF No. 403-2, ¶ 2(d). AiPi's counsel did precisely that, sending Mr. Ramey the actual documents, the Production Order, and express instructions on how to assert privilege. ECF Nos. 403-2, 403-3, 403-4. Mr. Ramey confirmed receipt of those communications, yet asserted no privilege. *See, e.g.*, ECF No. 403-3 at 5.

Under Ninth Circuit law, involuntary disclosure does not automatically waive privilege, but the privilege holder must act promptly and reasonably to preserve confidentiality. *United States v. De La Jara*, 973 F.2d 746, 750 (9th Cir. 1992); *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1130 (9th Cir. 2012). In *de La Jara*, a six-month delay in asserting privilege constituted waiver. 973 F.2d at 750. Here, sixteen months elapsed between February 2025, when Mr. Ramey received the productions and was told how to preserve privilege, and his belated assertion in May 2026. *See* ECF No. 403-3 at 6. Further, at least one of the exhibits Mr. Ramey seeks to strike—Exhibit ZL (ECF No. 388-39)—was previously cited and attached to Netflix's Motion for an Order to Show Cause and Sanctions against Mr. Ramey filed on February 18, 2025. ECF No. 302-12. Before filing, counsel for Netflix notified Mr. Ramey of its possession of this document and its intent to use it in this Court. Lamkin Decl., Exh. A (2-5-2025 Email from Bill Ramey) at 2. Mr. Ramey raised no privilege objections at that time.

*Pacific Pictures* is squarely on point. There, the Ninth Circuit held that a subpoena does not automatically make disclosure involuntary, particularly where the privilege holder had an opportunity to assert privilege and failed to do so. *In re Pacific Pictures Corp.*, 679 F.3d at 1130. Here, the EDVA procedure did more than provide an opportunity. Judge Brinkema *required* privilege objections to be filed within seven days (ECF No. 403-2 at 3), and AiPi's counsel expressly told Mr. Ramey how to proceed (ECF No. 403-3 at 6). His failure to use that procedure waived or forfeited any privilege claim.

Mr. Ramey's reliance on *Transamerica Computer Co. v. IBM*, 573 F.2d 646, 650–52 (9th Cir. 1978) and *Bittaker v. Woodford*, 331 F.3d 715, 720–21 (9th Cir. 2003), is misplaced. *Transamerica* involved a situation where the privilege holder had no meaningful notice or opportunity to intervene before production occurred. 573 F.2d at 652. Here, Mr. Ramey had both. He received multiple productions, received clear instructions, and was given the chance to object. He simply chose not to. *Bittaker* involved an analysis of the scope of waiver when a habeas petitioner raises a claim of ineffective assistance of counsel, and that analysis is irrelevant to the arguments raised by Mr. Ramey. 331 F.3d at 716.

The facts here are even more striking when one considers that the documents at issue resided on AiPi's systems—a third-party litigation funder, not a law firm or co-counsel of record. Whatever confidentiality arrangements may have existed between Mr. Ramey and AiPi, once Mr. Ramey learned that those documents were being produced to Netflix, he was obligated to act. He did not. An alleged privilege holder who learns that protected materials are about to be disclosed to an adversary and does nothing cannot later claim that the disclosure was involuntary. *See Pacific Pictures*, 679 F.3d at 1130.

### B.    Rule 502(b) Independently Forecloses Mr. Ramey's Privilege Claim

Even assuming, *arguendo*, that the emails at issue were once privileged and that the production could be characterized as inadvertent, Federal Rule of Evidence 502(b) independently forecloses Mr. Ramey's belated claim. Rule 502(b) preserves privilege after inadvertent disclosure only where the privilege holder: (1) took reasonable steps to prevent disclosure, and (2) promptly took reasonable steps to rectify the error. FED. R. EVID. 502(b)(1)–(2).

Mr. Ramey satisfied neither requirement. He received the EDVA Production Order. ECF No. 403-3 at 6. He received production links and contemporaneously recognized that "everything sent to [] Morehouse, from [his] Firm . . . will be discovered" in that litigation. ECF No. 311-1, at ¶ 17; *see also* ECF Nos. 403-3, 403-4, 403-5. He was expressly told he could assert privilege before production to Netflix. ECF No. 403-3 at 6. He was reminded with each of the separate productions to follow the EDVA procedure. ECF Nos. 403-4 at 2, 403-5 at 2. He responded to those emails, confirming receipt. ECF No. 403-3 at 5. Yet he asserted no privilege in EDVA and sought no timely clawback. That is waiver under any formulation of the standard.

Mr. Ramey's belated Rule 26(b)(5)(B) clawback notice, filed contemporaneously with his motion to strike sixteen months after production (*see* ECF No. 399 at 8–9), does not satisfy the requirement that the privilege holder "promptly" act to rectify the disclosure. *See* FED. R. EVID. 502(b)(3). The Advisory Committee Notes to Rule 502 make clear that whether steps were "prompt" is assessed in light of all the circumstances, including when the holder knew or should have known of the disclosure. FED. R. EVID. 502 advisory committee's note ("[T]he rule does require the producing party to follow up on any obvious indications that a protected communication

or information has been produced inadvertently."). Mr. Ramey knew in February 2025. He acted in May 2026. That is not prompt by any measure.

**C.    The Denial of Joinder Has No Bearing on Whether Netflix Could Subpoena AiPi Under Rule 45**

Mr. Ramey devotes substantial briefing to the argument that Netflix "used the EDVA subpoena to circumvent this Court's denial of joinder." ECF No. 399 at 9–10. This argument fundamentally mischaracterizes what the joinder ruling decided and what Rule 45 permits.

This Court denied Netflix's motion to join AiPi as a party under Rule 19. ECF No. 284. The Court's analysis addressed whether AiPi was a "necessary" party to Netflix's CUVTA claim. *Id.* at 6–8. Specifically, the Court analyzed whether complete relief could be accorded in the absence of AiPi. *Id.* The Court found that Netflix had not alleged any transfer from Valjakka to AiPi after Valjakka's potential liability to Netflix became known, and therefore AiPi was not a necessary party. *Id.* at 8. The Court did not reach the question of whether joinder was feasible, noting only in a footnote that jurisdiction over AiPi may have been lacking. *Id.* at 8 n.3.

Critically, the joinder ruling said nothing about: (1) whether AiPi possessed documents relevant to this litigation; (2) whether Netflix was barred from seeking discovery from AiPi in any forum; or (3) whether a Rule 45 subpoena to AiPi would be improper. The ruling was a Rule 19 determination about party status in this action. It was not a discovery ruling. It did not restrict Netflix's ability to subpoena non-parties.

Mr. Ramey's argument conflates party status with discoverability. The fact that a non-party cannot be joined as a party under Rule 19 does not mean that the non-party has no relevant documents, cannot be subpoenaed, or is somehow immune from discovery. To the contrary, Rule 45 exists precisely to obtain discovery from persons who are not parties to the litigation. *See* FED. R. CIV. P. 45(a)(1). If the mere denial of joinder barred all subsequent discovery from the non-joined entity, Rule 45 would be rendered meaningless in most cases.

Mr. Ramey's reliance on *Hasbro v. Serafino*, 168 F.R.D. 99, 100–01 (D. Mass. 1996), is inapposite. *Hasbro* addressed whether a Rule 45 subpoena is the appropriate vehicle to obtain discovery from another party in the same case. 168 F.R.D. at 100. Here, the discovery at issue was

obtained by a Rule 45 subpoena served on a non-party to this case, as was proper after the Court denied Netflix's motion to join AiPi.

Moreover, AiPi's role in this litigation extends far beyond that of an ordinary non-party. AiPi "agreed to engage a law firm to file a Complaint and initiate the Valjakka litigation," "agreed to support the Valjakka litigation and manage third-party funding," "assisted counsel in the production of Valjakka documents," and managed settlement funds from Valjakka's assertions against other defendants. ECF No. 233-1 ¶¶ 13–14, 26, 28. AiPi disbursed these settlement funds to Valjakka, Ramey LLP, expert witnesses, and other investors. *Id.*, ¶¶ 30–33. AiPi represented to this Court that it would "comply with any discovery requests directed thereto." *Id*., ¶ 27. Indeed, the very documents Mr. Ramey seeks to strike show how involved AiPi's principals were in the day-to-day activities of this litigation. An entity so deeply embedded in the initiation, funding, management, and document production of this very litigation plainly possessed documents relevant to a motion for attorneys' fees. Netflix's decision to subpoena such documents was entirely proper.

Moreover, the EDVA court had personal jurisdiction over AiPi and independently evaluated the propriety of the Rule 45 subpoena, entertained AiPi's objections, and ordered production. Mr. Ramey's invitation to this Court to second-guess the EDVA court's production order, issued after full briefing and careful analysis, should be declined.

**D.      The Common-Interest Doctrine Does Not Shield the Communications at Issue**

Mr. Ramey invokes the common-interest doctrine to extend privilege to communications between himself and "the KVI lawyers." ECF No. 399 at 7. But there were never any "KVI lawyers" on this case. KVI was a law firm that employed Mr. Morehouse and Mr. Lund, and they used KVI email addresses while setting up AiPi. Lamkin Decl., Exh. B (Morehouse Depo Tr.), 39:9-13, 98:18-99:22. There was never any relationship between KVI and AiPi. *Id.* at 39:9-13. As Mr. Ramey knows, he was hired by AiPi. ECF No. 302-6. As such, the relevant relationship is between Ramey and his employer, AiPi.

Regardless, Mr. Ramey misunderstands the common interest privilege. "Rather than a separate privilege, the 'common interest' or 'joint defense' rule is an exception to ordinary waiver rules designed to allow attorneys *for different clients* pursuing a common legal strategy to

communicate with each other." *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012) (emphasis added); *see also Fox v. Shinseki*, No. CV 11-04820 EDL, 2013 WL 11319070, at *3 (N.D. Cal. June 11, 2013) (collecting cases). Here, Mr. Ramey attempts to shield communications between himself and his employer, made purportedly on behalf of Mr. Valjakka. The common interest privilege does not apply to those communications. *Regents of Univ. of California v. Affymetrix, Inc.*, No. 17-cv-01394-H-NLS, 2018 WL 3752752, at *5 (S.D. Cal. Aug. 6, 2018) ("the common interest privilege only applies when clients are represented by separate counsel") (collecting cases); *RJ v. Cigna Health & Life Ins. Co.*, No. 20-cv-02255EJDVKD, 2023 WL 187565, at *1 (N.D. Cal. Jan. 13, 2023) ("The doctrine does not create a privilege but comes into play only if a privilege or protection already covers the material disclosed to the third party."); *see also Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578-79 (N.D. Cal. 2007) (describing boundaries and application of common interest doctrine).

**E.     The Crime-Fraud Exception Independently Defeats Any Remaining Privilege Claim**

Even if the communications were otherwise privileged, the EDVA court found that the crime-fraud exception had destroyed any privilege over AiPi's documents. ECF Nos. 403-6, 403-7. The EDVA court "ordered every collected AiPi document produced to Netflix, because Mr. Valjakka had no 'common interest' with AiPi and because any privilege had been destroyed by the crime-fraud exception, inter alia." *Id.*

The crime-fraud exception applies when a client uses or intends to use an attorney's services to further a crime or fraud. The EDVA court's finding on this point constitutes a judicial determination that the communications at issue fall within this exception. Mr. Ramey should not be allowed to attack that finding by collaterally relitigating privilege in this Court.

Further, this Court may find that the emails at issue were made in furtherance of a fraud upon this Court by Mr. Ramey's continued assertion of a patent that he understood was not owned by Mr. Valjakka. *In re Icenhower,* 755 F.3d 1130, 1141 (9th Cir. 2014) (affirming abrogation of privilege where counsel communications furthered obstruction of a court judgment); *Pumphrey v.*

NETFLIX INC.'S OPPOSITION TO WILLIAM RAMEY'S MOTION TO STRIKE

*K.W. Thompson Tool Co.,* 62 F.3d 1128, 1131–32 (9th Cir. 1995) (fraud on the court includes schemes that undermine the judicial process).

### F.     Mr. Ramey Cannot Use Privilege as Both Sword and Shield

Netflix's Motion for Attorneys' Fees concerns the conduct of this litigation, including the conduct of Mr. Ramey and his co-counsel. *See generally* ECF No. 388. Indeed, Mr. Ramey's response to Netflix's Motion for Attorneys' Fees claims he "held a colorable, expert-supported theory of ownership." ECF No. 402 at 12. Where an attorney's own conduct is at issue, the attorney cannot invoke privilege to prevent examination of that conduct because privilege "may not be used both as a sword and a shield." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992).

Here, the emails are relevant precisely because they shed light on how Mr. Ramey and his co-counsel conducted this litigation. Netflix argues that Mr. Ramey's prosecution of this case was unreasonable, vexatious, or conducted in bad faith. The challenged emails are directly probative of whether Mr. Ramey's litigation decisions were reasonable. Indeed, Mr. Ramey characterizes the "WE CANNOT …." email (ECF No. 388-2) as a "candid attorney risk-assessment," thereby acknowledging that it reflects his own assessment of the merits of this litigation. ECF No. 399 at 6–7. That is precisely what Netflix's fee motion concerns: whether Mr. Ramey and his co-counsel pursued claims they knew lacked merit. The very characterization Mr. Ramey offers in defense of privilege demonstrates why the documents are relevant and probative and why suppressing them would be unjust.

## IV.     CONCLUSION

For the foregoing reasons, the Court should deny Mr. Ramey's Motion to Strike. Mr. Ramey waived any privilege he may have held by failing to assert it in the EDVA proceeding despite repeated notice and opportunity over sixteen months. The nine emails at issue were lawfully obtained through a court-ordered production, after all interested parties had the opportunity to assert privilege. They are relevant to Netflix's pending motion for attorneys' fees. The Court should permit their use.

Dated: June 5, 2026

Respectfully submitted,

By: */s/ Rachael Lamkin*
Rachael Lamkin
rachael.lamkin@bakerbotts.com
Karan Dhadialla
karan.dhadialla@bakerbotts.com
BAKER BOTTS, L.L.P.
101 California Street, Suite 3200
San Francisco, CA 94111
Telephone: +1.415.291.6200
Fax: +1.415.291.6300

Sarah E. Piepmeier, Bar No. 227094
SPiepmeier@perkinscoie.com
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, California 94105
Telephone: +1.415.344.7000
Facsimile: +1.415.344.7050

Janice L. Ta, (appearance pro hac vice)
JTa@perkinscoie.com
PERKINS COIE LLP
405 Colorado Street, Suite 1700
Austin, Texas 78701
Telephone: +1.737.256.6100
Facsimile: +1.737.256.6300

Adam Hester, Bar No. 311206
AHester@perkinscoie.com
PERKINS COIE LLP
33 E. Main Street, Ste. 201
Madison, WI 53703
Telephone: +1.650.838.4311

*Attorneys for Defendant, NETFLIX, INC.*

NETFLIX INC.'S OPPOSITION TO WILLIAM RAMEY'S MOTION TO STRIKE