United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LAURI VALJAKKA,

Plaintiff,

v.

NETFLIX, INC.,

Defendant.

Case No. 22-cv-01490-JST

**ORDER GRANTING DEFENDANT'S MOTION FOR ATTORNEY'S FEES**

Re: ECF No. 388

Before the Court is Defendant Netflix's motion for attorneys' fees. ECF No. 388. Nonparty William Ramey has also filed a motion to strike certain material attached to the motion for attorneys' fees. ECF No. 399. The Court will grant the fees motion in part and deny the motion to strike.

I.    **BACKGROUND**

This action is based on two patents: (1) United States Patent No. 8,495,167 ("'167 Patent") and (2) U.S. Patent No. 10,726,102 ("'102 Patent"). ECF No. 74 ¶¶ 12, 13; ECF No. 162-2. The history of this case is lengthy, but the following sets forth facts relevant to the present fees motion.

A.    **Ownership Defect**

In 2005, Valjakka sold and transferred the rights in the patent application underlying the '167 Patent (the "'685 Application") to a Finnish company, Suomen Biisi Oy ("SBO"), owned by himself and two other persons. ECF No. 257 at 2; ECF No. 116-2 at 9. SBO subsequently went bankrupt. *Id*. In 2008, Valjakka filed suit in the Helsinki District Court seeking to confirm that the rights in the '685 Application had reverted to Valjakka and SBO's two other co-owners upon SBO's bankruptcy, citing to a December 2005 Utilization Agreement between Valjakka and SBO. ECF No. 257 at 3; ECF No. 116-2 at 8. In a 2009 opinion affirmed by the Helsinki Court of

Appeals in 2010, the Helsinki District Court found that Valjakka had already transferred away his rights to the '685 Application at the time he entered the Utilization Agreement with SBO, which therefore "ha[d] not been demonstrated to have prescribed on those rights." ECF No. 257 at 3–4; ECF No. 116-2 at 12. The Finnish courts rejected Valjakka's ownership claim and exempted SBO from all liability to Valjakka. *Id.*

Without disclosing the Finnish court opinions, Valjakka subsequently brought his theory to the U.S. Patent and Trademark Office ("USPTO") that the rights in the '685 Application had reverted to him upon SBO's bankruptcy pursuant to the Utilization Agreement. ECF No. 257 at 4–5. The USPTO revived the application and ultimately issued the '167 Patent. *Id.*

Represented by an attorney named Erick Robinson, Valjakka initiated this lawsuit in the Western District of Texas in September 2021, asserting only the '167 Patent. ECF No. 1. Robinson had been retained on Valjakka's behalf by Eric Morehouse, the head of a litigation funding firm called AiPi. ECF No. 388-6 ¶ 3; *see* ECF No. 324 at 1. Around the same time, Valjakka and Morehouse sued at least 20 other defendants in separate litigations for infringement of the '167 Patent and others. *See* ECF No. 328-2 at 9 n.3 (listing cases filed by Valjakka in 2021 and 2022).

In October 2021, counsel for Akamai, the defendant in another of Valjakka's suits concerning the '167 Patent, notified Robinson of its belief that Valjakka did not own the '167 Patent based on the Finnish court decisions. ECF No. 388-6 ¶¶ 5, 6 & Ex. A; ECF No. 388-7; ECF No. 387-3 at 10. Six days later, Morehouse told Valjakka that the decision was "a problem" and that Robinson was threatening to withdraw, as he would "not litigate this case unless we solve the [ownership] issue immediately." ECF No. 316-2 at 8. Through Robinson, Valjakka then produced to Akamai an opinion letter drafted by his personal Finnish attorney Onni Heitalahti under the direction of Morehouse. ECF No. 388-9. It opined that the Finnish courts erred, the Utilization Agreement was enforceable, and "a U.S. Court handling a complaint regarding an asserted better right to the patent would not be bound by the outcome of the court proceedings in 2009–2010." *Id.* at 5; *see also* ECF No. 388-10 at 7; ECF No. 316-2 at 3; ECF No. 388-8. Two days after Akamai accused Valjakka of inequitable conduct for failing to disclose the Finnish court

2

order to the USPTO, threatened to share it with other defendants, and invoked a possible fees award under Section 285, ECF No. 388-10 at 5–6, Robinson resigned from all Valjakka cases involving the '167 Patent, ECF No. 370-10; *see also* ECF No. 388-6 ¶ 14. Around the same time, Morehouse wrote to Hietalahti and Valjakka that there was "no evidence supporting our position," and that "the evidence of record actually contradicts" Hietalahti's arguments about Valjakka's ownership claim. ECF No. 388-12 at 3. Nonetheless, Valjakka procured a second opinion, this time from a Finnish IP law firm called Berggren Oy. ECF Nos. 388-13; 388-14. This letter advanced a different theory, arguing that Valjakka had revived the patent after its abandonment by SBO. *Id*. In rejecting this letter, Akamai reiterated its threat to "coordinate with the other defendants to effectively defend against your client's baseless claims." ECF No. 388-15 at 6–7. Shortly after, Heitalahti wrote to Valjakka that "[g]etting Akamai out of the game is now the absolute top priority, because until then nothing else will move forward, and the entire campaign is exposed to a fatal risk." ECF No. 388-17 at 5.

Attorney William Ramey and his firm, Ramey LLP, stepped in for Robinson in November 2021, at which point AiPi notified him of the Finnish court decisions. ECF No. 388-10 at 2–3. Ramey acknowledged that "[t]his is a mess" and "[t]he Appeals Court decision and district court decision do seem to address ownership." *Id*. at 2. He nonetheless pursued and achieved a settlement agreement with Akamai including a detailed nondisclosure provision. ECF No. 388-18 at 4. When another defendant later noticed the ownership issue, Valjakka and his counsel similarly "contain[ed] the ownership issue" through settlement. ECF No. 388-22 at 4; ECF No. 388 at 12 n.5.

In discovery for this case, Netflix requested documents about the ownership of the asserted patents. *See, e.g.*, ECF No. 388-31 at 12 (RFPs 31 and 32). Valjakka produced a Finnish-language copy of the Finnish court order. ECF No. 388 at 15. He did not, however, identify the Finnish Court Order as proof that he was complying with the request for production concerning ownership in response to Netflix's repeated challenges about the sufficiency of production. ECF Nos. 388-32–388-35; ECF No. 388 at 15. He also never produced either of the Finnish counsel opinions concerning ownership, English-language copies of the Finnish court order, or prior art he

3

received from Akamai.  ECF No. 388-1 ¶ 75.

In August 2025, the Supreme Court of Finland issued a decision requiring the Helsinki District Court to reopen proceedings and examine the merits of Valjakka's ownership claim.  ECF No. 398-2.  The decision holds that a prior determination of the lower courts that they lacked jurisdiction to consider Valjakka's ownership claim was erroneous.  *Id*. at 5.  But even assuming that the Supreme Court decision will result in another opportunity for Valjakka to establish ownership, he will presumably now advance ownership based not on the Utilization Agreement theory presented to the USPTO—which the Finnish courts have already rejected on the merits—but on the theory that Valjakka appropriated the patent application and gained ownership after it was abandoned by SBO.  In its prior summary judgment order, however, this Court noted that a theory of ownership based on abandonment and reappropriation would be based on United States patent law, not Finnish law, and that U.S. law cannot support Valjakka's claim.  ECF No. 257 at 12–13.

## B.    Assignment of Rights to CDN

In November 2021, Valjakka transferred all rights to litigation and licensing proceeds from the asserted '167 Patent to CDN Licensing Oy, a Finnish entity that Valjakka owned and controlled.  ECF No. 368 at 2; ECF No. 143-1 ¶ 5.  On December 31, 2021, Valjakka also granted a license to CDN for the rights in the '102 Patent.  ECF No. 143-1 ¶ 6.  Both licenses included the exclusive right to all litigation and licensing proceeds, including from settlement and final judgments relating to the Asserted Patents (the "Enforcement Assets").  ECF No. 143-1 ¶¶ 5–6; ECF No. 126-3 at 4; ECF No. 126-6 at 2.  Both licenses also included the exclusive right to license the patent to third parties.  ECF No. 126-3 at 4; ECF No. 126-6 at 2.  The only right Valjakka retained was the right to sue for infringement: "With this agreement, the Parties intend to agree on the transfer to the Licensee of all rights associated with the patent, however, in such a way that the Licensor, as the registered owner of the patent in the US Patent Register and based on ownership, is the plaintiff in legal proceedings concerning patent infringements."  ECF No. 126-6 at 43; *see also* ECF No. 126-3 at 5.

Despite having transferred these rights, Valjakka repeatedly brought suit and entered

4

settlement and licensing agreements in which he purported to own the relevant rights to the asserted patents and to license rights to them to various defendants.  ECF No. 368 at 3; *see also* ECF Nos. 126-5, 126-8, 126-9, 126-10.  Pursuant to the licensing agreements, Valjakka transferred the proceeds from those settlements to CDN.  ECF No. 368 at 3–4.  Because Valjakka made those transfers with fraudulent intent, knowing that he might face an attorney's fees motion under Section 285, this Court granted summary judgment to Netflix on its counterclaims under the California Uniform Voidable Transactions Act.  ECF No. 368.

In addition, Valjakka failed to disclose the licensing agreements with CDN in response to multiple relevant discovery rules and requests.  He was required to disclose entities with "a financial interest in the outcome of the litigation" at the outset of litigation under Civil Local Rule 3-15(b)(2).  Requests for Production Nos. 22, 31, and 33 and Interrogatory Nos. 7 and 8, which relate to financial interests in the patents and litigation, should also have triggered disclosure of the CDN licensing agreements.  ECF No. 387-3 at 15; ECF No. 388-31 at 11, 12–13; ECF No. 388-32 at 3–4; ECF No. 368 at 9–10.  On several occasions, Netflix wrote Valjakka regarding deficiencies in his objections and responses to these and similar discovery requests.  *See, e.g.*, ECF No. 388-32 at 3–4; ECF No. 387-5; ECF No. 388-35 at 4.  But Valjakka only produced his exclusive license agreements with CDN (1) in Finnish and (2) as discovery was closing.  ECF No. 388-1 ¶ 29; *see also* ECF No. 204 at 8 (this Court's preliminary injunction order on the CUVTA counterclaims, finding that while "Valjakka disclosed the existence of CDN in his responses to Netflix's interrogatories," he "concealed the actual transfer of rights to Enforcement Assets through the Licenses during discovery and in his settlement agreements").  Ramey argues that Valjakka produced the CDN agreements "on the schedule the discovery rules and the parties' negotiations required," ECF No. 402 at 21, but he served the licenses a year after the first relevant discovery requests and only after numerous follow-up letters.  *See* ECF No. 388-31 at 11; ECF No. 388-1 ¶ 29.

### C.     Basis for Infringement Claims

#### 1.     '102 patent.

In his infringement contentions for the '102 patent, Valjakka mostly relied on conclusory

United States District Court
Northern District of California

assertions on "information and belief," and did not connect the allegedly infringing Netflix web pages to the claim limitations. *See* ECF No. 388-23 at 41–46, ECF No. 388-24 at 2–3. Netflix promptly identified these deficiencies, *id*., but when Valjakka served supplemental contentions seven months later, he made no changes to his '102 patent claim charts. *See* ECF No. 388-25 at 154–59. After Netflix wrote again to demand sufficient notice of Valjakka's infringement theories, ECF No. 388-21 at 2–3, Valjakka supplemented a second time, citing a few additional Netflix documents and explaining some of his theories in more than conclusory terms, but still not articulating how Netflix performs various key steps of the only asserted independent claim. *See* ECF No. 388-26 at 4–5. Indeed, Valjakka's retained technical expert, Dr. Jonyer, reviewed Netflix's source code and confirmed that Netflix did not infringe the '102 patent. *See* ECF No. 315-5 at 2–3. Almost immediately after code review, Valjakka voluntarily dropped his claims for the '102 Patent. *See* ECF No. 388-26 at 4.

Adjudicating Netflix's motion for judgment on the pleadings, this Court also found that the '102 Patent contains no limitations transforming the claim into a patent-eligible application. ECF No. 132 at 8.

### 2.    '167 patent.

Netflix's claims based on the '167 Patent were also deficient: Netflix's accused Open Connect system did not have the "transport request" necessary to infringe every asserted claim under the '167 Patent. ECF No. 388 at 13. Netflix told Valjakka about this deficiency at least three times. ECF No. 388-24 at 3–7; ECF No. 388-21 at 2–3; ECF No. 388-26 at 5. As with the '102 patent, Dr. Jonyer reviewed Netflix's source code and concluded that Netflix did not infringe. *See* ECF No. 315-5 at 2–3. Valjakka fired Dr. Jonyer and hired a new expert who was willing to opine on infringement, including under a not-previously-disclosed doctrine of equivalents theory. *See generally* ECF No. 162 at 28–32.

### D.    Failure to Disclose AiPi's Involvement and Facilitation of UPL

Finally, Valjakka failed to disclose AiPi's involvement in the case in response to multiple relevant discovery rules and requests. As noted previously, he was required to disclose entities with "a financial interest in the outcome of the litigation" at the outset of litigation under Civil

United States District Court
Northern District of California

6

Local Rule 3-15(b)(2). Requests for Production Nos. 22, 31, and 33, as well as Interrogatories 7 and 8 also sought information about entities with a financial interest in the case. ECF No. 387-3 at 15; ECF No. 388-31 at 11, 12–13; ECF No. 388-32 at 3–4; ECF No. 368 at 9–10.

Having failed to disclose AiPi's role, Ramey also (1) violated the protective order in place in this matter by sharing confidential technical and financial records with AiPi and (2) facilitated AiPi's unauthorized practice of law. The former conduct has already been addressed and sanctioned in separate orders. ECF Nos. 324, 353. As to the unauthorized practice of law, AiPi attorneys were not admitted to practice in this district and yet dictated case strategy, drafted pleadings and contentions, revised expert reports, and generally served as outside counsel to Valjakka. *See, e.g.*, ECF Nos. 315-3 (AiPi attorneys review damages report), 315-4 (AiPi attorneys revise damages contentions), ECF No. 388-36 (AiPi attorneys draft amended complaint), ECF No. 388-37 (Ramey asks AiPi to draft MSJs), ECF No. 388-38 (AiPi drafts opposition to Netflix's motion for judgment on the pleadings), ECF No. 388-39 (AiPi drafts supplemental infringement contentions). Indeed, according to the Engagement Agreement between Ramey and AiPi, AiPi would do "all drafting of documents, legal work and research" for the Valjakka campaign. ECF No. 302-6 at 1–2. Ramey repeatedly told the Court in briefing on a prior motion that "I controlled [the AiPi lawyers'] actions and [my] professional liability insurance covered their actions." ECF 311-1 ¶ 8.

\*\*\*

Defendant Netflix, Inc. moves for an order awarding Defendant Netflix, Inc. $3 million in reasonable attorneys' fees pursuant to 35 U.S.C. § 285, 28 U.S.C. § 1927, the Court's inherent power, Fed. R. Civ. P. 54, and Civil L.R. 54-5. ECF No. 388 at 7. That amount is less than 50% of the fees it incurred defending this action.[1] Netflix seeks an order holding Valjakka, Ramey, and

---

[1] Although Valjakka labels Netflix's fee request "grossly disproportionate," ECF No. 398 at 9, neither Ramey nor Valjakka dispute that Netflix's attorneys' hourly rates are reasonable for this type of litigation or that the hours of attorney time were reasonably expended. *See, e.g.*, *Silicon Genesis Corp. v. EV Grp. E. Thallner GmbH*, No. 22-cv-04986-JSC, 2024 WL 1643677, at \*1 (N.D. Cal. Apr. 15, 2024) (citing *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993)) (explaining the "lodestar" method for calculating reasonable fees). Ramey does contest his responsibility for hours incurred after he was no longer counsel of record, ECF No. 402 at 25, but this order concludes that his conduct caused the litigation that continued after his departure.

United States District Court
Northern District of California

Ramey LLP jointly and severally responsible for the total sum. *Id*. After Netflix filed the motion on April 17, 2026, Valjakka and Ramey opposed in separate briefs on May 22, 2026. ECF Nos. 398, 402. Netflix filed two separate replies on June 18, 2026. ECF Nos. 407, 408. Ramey's motion to strike certain documents attached to the motion for fees was also filed on May 22, 2026. ECF No. 399. Netflix opposed on June 5, 2026 and Ramey replied on June 2, 2026. ECF Nos. 406, 405.[2] The Court held a hearing on July 2, 2026.

## II.    JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1331.

## III.    LEGAL STANDARD

First, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. A case is exceptional if (1) it "stands out from others with respect to the substantive strength of a party's litigating position," considering the law and the facts, or (2) it was litigated in an unreasonable manner. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). Either prong of this test may support a fees award to compensate the moving party and deter future misconduct. *See id*. at 554, 554 n.6. "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id*. at 554. Courts may consider "frivolousness, motivation, [and] objective unreasonableness (both in the factual and legal components of the case)" in addition to compensation and deterrence. *Id*. at 1756 n.6. "A district court must 'provide a concise but clear explanation of its reasons for the fee award.'" *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 963 F.3d 1371, 1376 (Fed. Cir. 2020) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). The preponderance of the evidence standard applies. *Octane Fitness*,

---

Ramey also identifies various "discrepancies" in Netflix's hours calculations, but (1) several of those are deductions from the total, (2) Netflix already reduced its fees by half, and (3) Ramey does not actually request a reduction in the award based on any purported discrepancies. ECF No. 402 at 26. Thus, the Court concludes that Netflix's $3 million request is reasonable.

[2] Netflix erroneously labeled its opposition to an administrative motion to seal the disputed documents as its opposition to the motion to strike, leading Ramey to reply to that opposition prematurely. *See* ECF No. 404. Because the motion to seal concerned the same arguments as the motion to strike, Ramey does not appear to have been prejudiced and does not seek an opportunity to file another opposition.

United States District Court
Northern District of California

572 U.S. at 557–58; *Energy Heating, LLC v. Heat-On-The-Fly, LLC*, 15 F.4th 1378, 1382 (Fed. Cir. 2021).

Second, any attorney who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "The key term in the statute is 'vexatiously'; carelessly, negligently, or unreasonably multiplying the proceedings is not enough." *In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010). "Sanctions pursuant to [S]ection 1927 must be supported by a finding of subjective bad faith." *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015). "[B]ad faith is present when an attorney knowingly or recklessly raises a frivolous argument." *Lake v. Gates*, 130 F.4th 1064, 1070 (9th Cir. 2025) (quoting *Blixseth*, 796 F.3d at 1007). "[A] finding that the attorney recklessly or intentionally misled the court is [also] sufficient to impose sanctions under § 1927." *In re Girardi*, 611 F.3d at 1061 (citing *Malhiot v. S. Calif. Retail Clerks Union,* 735 F.2d 1133, 1138 (9th Cir. 1984)). A finding of bad faith based on recklessness usually requires "something more, such as frivolousness, harassment, or an improper purpose." *Koji IP v. Renesas Elecs. Am., Inc.*, No. 24-cv-03089, 2025 WL 980796, at *5 (N.D. Cal. Mar. 31, 2025) (cleaned up).[3] The evidentiary standard of proof for a Section 1927 award remains unsettled. *See Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010)); *see also Nat'l Prods. Inc. v. Innovative Intelligent Prods. LLC*, No. 2:20-cv-00428, 2026 WL 100721, at *6 (W.D. Wash. Jan. 14, 2026) ("The Ninth Circuit has not addressed whether a movant must show bad faith by a preponderance of the evidence or clear and convincing evidence.").

Third, district courts have the inherent authority to manage their own affairs. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). This includes the power to order appropriate sanctions as discipline. *Id*. at 44–45; *see also Hall v. Cole*, 412 U.S. 1, 4–5 (1973) (holding that a district court

---

[3] Ninth Circuit cases evince some confusion regarding whether recklessness alone can support a fee award under Section 1927. See *In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010) ("[O]ur cases have been less than a model of clarity regarding whether a finding of mere recklessness alone may suffice to impose sanction for attorneys' fees." (quoting *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002)). In any case, the Court does not base its decision here on mere recklessness.

9

"may award attorneys' fees when the interests of justice so require").  To impose sanctions under its inherent power, the Court must find bad faith or conduct "tantamount to bad faith . . . including recklessness when combined with an additional factor such as frivolousness, harassment, or improper purpose." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001); *see also In re Intel Sec. Litig.*, 791 F.2d 672, 675 (9th Cir. 1986) (citations omitted) (holding that sanctions may be appropriate where "counsel has 'willfull[y] abuse[d] judicial process' or otherwise conducted litigation in bad faith" (citations omitted)).

Statutory or inherent power fee-based sanctions must be compensatory rather than punitive and calibrated to the damages caused by the misconduct.  *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108–09 (2017).  The Court must "establish a causal link" between the sanctioned conduct and the fees claimed.  *Id*. at 108 n.5.  A court may also award fees for costs incurred because of the decision to pursue litigation or because of an entire course of litigation conduct, where warranted.  *See Chambers*, 501 U.S. at 51, 57–58 (affirming sanction shifting all of plaintiff's legal fees based on defendant's "entire course of conduct" during litigation); *Lahiri*, 606 F.3d at 1222 (affirming "district court's bad faith finding" against attorney "based on the cumulative effect of his litigation conduct for more than five years"); *see also Goodyear Tire*, 581 U.S. at 110–11 (2017) ("If a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior, the court may again make a blanket award" without partaking in "the grind of segregating individual expense items.").

Courts in this district have sanctioned counsel with joint and several liability for an award of attorneys' fees against a party under Section 285, based on Section 1927 or the Court's inherent authority.  *See Koji IP v. Renesas Elecs. Am., Inc.*, No. 24-cv-03089, 2025 WL 980796, at \*5 (N.D. Cal. Mar. 31, 2025) (holding Ramey and Ramey LLP jointly and severally responsible for attorneys' fees awarded based on lack of pre-suit diligence regarding accused products that were in fact prior art and for violating the "two complaints" rule by initiating three subsequent lawsuits involving the same infringement allegations).  Courts in this district will also hold individual attorneys jointly and severally liable with their firms when awarding sanctions under Section 1927.  *See Raydiant Oximetry, Inc. v. ALC Med. Holdings LLC*, 808 F. Supp. 3d 987, 1004–06

United States District Court
Northern District of California

(N.D. Cal. 2025).

## IV.    DISCUSSION

### A.    Valjakka and Ramey's Knowledge that Valjakka Did Not Own the '167 Patent

Netflix first argues that this case is exceptional per se because Valjakka filed an infringement action based on the '167 Patent knowing that he did not own it, and because his attorneys maintained the lawsuit while concealing that fact.  ECF No. 388 at 19.  In 2009 and 2010, the Helsinki District Court and Helsinki Court of Appeals rejected Valjakka's ownership claim in the '167 Patent based on the Utilization Agreement.  ECF No. 257 at 3–4.  Valjakka nonetheless told the USPTO that he owned the patent application because of the Utilization Agreement, failing to disclose the Finnish court orders.  *Id*.; ECF No. 388 at 18.  Over the course of this litigation, he maintained that he owned the '167 Patent based on two theories: (1) the rejected Utilization Agreement theory and (2) a theory based on revival of the patent after SBO abandoned it, which this Court has rejected under federal patent law.  ECF No. 257 at 11.

In the summary judgment order concerning ownership of the '167 Patent, this Court noted that "[i]n California, '[t]he doctrine of comity prescribes that a court . . . recognize the judgment of a court of a foreign nation when the foreign court had proper jurisdiction and enforcement does not prejudice the rights of United States citizens or violate domestic public policy.'"  ECF No. 257 at 9 (quoting *In re Stephanie M.*, 7 Cal. 4th 295, 314 (1994)).  California courts may also "appropriately consult" the Foreign Relations Law Restatement, under which an American court will enforce a judgment unless it is repugnant to public policy.  *Id*. (citing *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1213 (9th Cir. 2006)).  The Court held that "under Finnish law, Valjakka was not the legal title holder to the '685 Application—or, by extension, the '167 Patent."  *Id*.

Netflix identifies a number of cases in which courts awarded attorneys' fees because the plaintiff had no right to an asserted patent.  ECF No. 388 at 19 n.8; *see Max Sound Corp. v. Google, Inc.*, No. 14-cv-04412, 2017 WL 4536342, *6–7 (N.D. Cal. Oct. 11, 2017) (finding a case exceptionally weak and awarding fees where the plaintiff had no right to assert the patent at issue, despite its theories based on an agency or alter ego relationship or the existence of an implied

11

exclusive license to sue); *WiNet Lab LLC v. Motorola Mobility, LLC*, No. 20 C 1094, 2021 WL 4929220, at *1, 3–4 (N.D. Ill. Sept. 22, 2021) (awarding fees to the defendant and rejecting the plaintiff's argument that ownership of the patent had reverted to the inventors, who then assigned rights to the plaintiff, upon the original assignee's default and dissolution); *Advanced Video Techs, LLC v. HTC Corp.*, No. 1:11 Civ. 06604, 2015 WL 7621483, at *7 (S.D.N.Y. Aug. 28, 2015) (awarding fees under Section 285 where plaintiffs recorded ownership of a patent with the USPTO and pursued litigation despite being unable to trace a clear chain of title).

Netflix argues that like these cases, the present one is exceptional because Valjakka had been "informed by multiple courts of competent jurisdiction that [he] did not own the patent." ECF No. 388 at 20.  Valjakka responds that his position—that the assignment of rights to SBO was conditional and that SBO's bankruptcy triggered reversion mechanisms contained in the Utilization Agreement—was "objectively reasonable" because it supported by statements or opinions of (1) SBO's Finnish bankruptcy estate counsel, (2) a Finnish civil-law professor named Jarno Tepora, and (3) a UK patent attorney.  ECF No. 398 at 2.  That Valjakka was able to find two individual attorneys and a law professor willing to endorse his ownership claim, however, is not persuasive evidence of its strength.

There are several additional problems with Valjakka's argument.  First, while Valjakka may have believed the Finnish courts erred, the fact remains that binding decisions had been entered against him on the ownership issue.  Worse, he brought the precise theory rejected by the Finnish courts to the USPTO and sought and received issuance of the '167 Patent on that basis, failing to disclose the Finnish court opinions.  Relatedly, he and his counsel worked to conceal the implications of the Finnish court opinion by settling with Akamai and failing to disclose multiple documents relevant to ownership to Netflix in this litigation.

Valjakka also notes that the Supreme Court of Finland has reopened his ownership claim. ECF No. 398 at 2.  The decision to reopen does not revisit the Utilization Agreement theory that "has always been" the basis for Valjakka's claims.  *Id*.; ECF No. 398-2.  Rather, it reopens claims that were dismissed for lack of jurisdiction and not adjudicated on the merits, *id*. at 2—presumably the theory that Valjakka acquired the rights to the '685 Application after SBO abandoned it, by

12

taking active steps to revive that right under the Finnish property law doctrine of appropriation. ECF No. 398 at 5–6.  But no Finnish court decision on the application of Finnish law to this issue can help Valjakka because, as the Court previously noted in its summary judgment order, it is U.S. federal law that controls abandonment and revival of patent applications in the United States. ECF No. 257 at 12–13.  Under U.S. patent law, Valjakka cannot show that he properly revived the abandoned patent because intentionally abandoned patents cannot be revived.  *Id*.  "Whether Finnish common law might hold otherwise is irrelevant."  *Id*. at 13.

In his opposition to the fees motion, Ramey characterizes the Court's ownership determination as "a discretionary comity determination concerning a Finnish court's interpretation of a Finnish contract."  ECF No. 402 at 6, 10–11.  But the relevant inquiry is not whether the Court had discretion in its evaluation of Valjakka's ownership theory, but whether that theory was so substantively weak as to be exceptional.  *See, e.g.*, *Max Sound*, 2017 WL 4536342, *7 (concluding that the substantive basis for the claims was exceptionally weak after evaluating and rejecting the plaintiffs' alternative standing theories).  Applying the relevant Finnish contract law principles, two Finnish Courts had adjudicated and rejected Valjakka's ownership theory before he brought it to the USPTO and this Court.  As Netflix points out, Courts regularly award fees because of exceptionally weak ownership theories, even where those theories have not been explicitly evaluated and rejected by competent courts.  *See, e.g.*, WiNet Labs, 2021 WL 4929220, at *3–4.  And this Court has also previously concluded that Valjakka's alternative ownership theory based on abandonment and revival of the patent is likewise without basis.[4]  Under the circumstances, the Court concludes that the substantive strength of Valjakka's litigating position weighs in favor of Section 285 fees.

Netflix also argues that, for related reasons, Ramey "unreasonably and vexatiously" multiplied the proceedings and did so in bad faith, satisfying the threshold criteria for sanctions under 28 U.S.C. § 1927 and the Court's inherent authority.  Specifically, Ramey found out about

---

[4] Ramey also emphasizes the fact that the Court's summary judgment order did not find Ramey's position sanctionable, but of course, no sanctions motion was before the Court at the time.  ECF No. 402 at 11.

United States District Court
Northern District of California

the ownership defect when he joined the case in November 2021 after prior outside counsel resigned because of it, yet nonetheless assumed the representation and pursued meritless claims for almost three years. *See* ECF No. 388-10 at 2–3; ECF No. 388-11; ECF No. 388-6 ¶¶ 5, 14.

Ramey states that prior counsel "did not advise [him] at the time [that he joined the case] that the claims were defective; to the contrary, he represented that the ownership issues raised by Akamai were contestable and capable of being successfully addressed through legal argument and supporting evidence." ECF No. 402 at 7–8. But the evidence is to the contrary—specifically, an email Ramey sent on November 16, 2021 stating that "[t]his is a mess" and "[t]he Appeals Court decision and district court decision do seem to address ownership." ECF No. 388-10 at 2. It is also unclear on what basis Ramey expected to be able to convince a U.S. court to ignore comity principles and override the determinations of two Finnish courts on matters of Finnish contract law. This is especially so given that Ramey was aware of a "Federal Circuit case that essentially dictates the result" on the ownership issue. ECF No. 388-10 at 4.

In *Raydiant Oximetry*, another court in this district sanctioned attorneys under Section 1927 who pursued "frivolous counterclaims" and multiple meritless theories in moving to dismiss, "well past the point of reason." 808 F. Supp. 3d at 1003. The Court held that the attorneys' "actions here 'bespeak not negligence, but bad faith: the willful continuation of a suit known to be meritless.'" *Id*. (quoting *Edwards v. General Motors Corp.*, 153 F.3d 242, 247 (5th Cir. 1998)). Because "the only reasonable way to understand" the conduct of the defendant and its attorneys in raising multiple counterclaims and grounds for dismissal that were meritless on their face "is that it was intentional, . . . [s]anctions under this Court's inherent authority are accordingly appropriate in this case." *Id*. at 1003–04. Ramey argues that his conduct is distinguishable from that at issue in *Raydiant Oximetry* because "the patent had already been issued by the USPTO, supported by a recorded chain of title, an expert opinion, and a granted revival petition." ECF No. 402 at 22–23. This position would be more persuasive had Valjakka disclosed to the USPTO the contrary decisions of the Finnish courts. Ramey presumably knew, or at least should have known, that the USPTO granted the revival petition completely unaware of that contrary authority.

Worse, as detailed above, Ramey concealed the implications of the Finnish court opinions

14

United States District Court
Northern District of California

by (1) settling with Akamai to prevent it from disclosing the ownership defect to Netflix[5] and (2) failing to disclose the Finnish opinions of counsel, English-language copies of the Finnish court orders, or certain prior art in response to requests for production of documents relating to Valjakka's ownership of the '167 Patent.  ECF No. 388-1 ¶ 75; *see Max Sound*, 2017 WL 4536342 at *10 (discovery obfuscation among exceptionally unreasonable litigation misconduct supporting award of attorneys' fees).  Ramey's position that he adopted and propounded only a fair, valid legal theory concerning Valjakka's ownership that predated his tenure on the case, *see* ECF No. 402 at 9, would be far more compelling had he not worked to prevent knowledge of the Finnish court opinions and their implications from reaching opposing counsel.  Ramey's course of conduct suffices to demonstrate bad faith under Section 1927 and the Court's inherent authority.

In opposing the fees motion, Ramey makes a passing reference to *mCom IP, LLC v. City Nat'l Bank of Fla.*, in which the Federal Circuit overturned a fee award under Section 285 and Section 1927.  175 F.4th 1370, 1379–81 (Fed. Cir. 2026).  That case is plainly distinguishable.  In *mCom*, the district court had awarded fees because (1) the asserted patent claims were invalid, (2) the original, "shotgun" complaint was struck and the amended complaint dismissed, (3) the plaintiff had failed to investigate and discover that rights to the patent had been licensed to the defendant and (4) prior litigation suggested an impermissible purpose of "extracting nuisance-value settlements . . . unrelated to the merits."  *Id*.  The Federal Circuit rejected the first two grounds because mere weakness on the merits is insufficient to support a finding of exceptionality, but rejected the second two grounds only because they were unsupported by the record.  *Id*.  The Court's determination here is not merely that Valjakka's patent claims were weak on the merits, although they were.  Rather, the case is exceptional under Section 285 and brought in bad faith under Section 1927 because two competent courts had rejected Valjakka's ownership theory and Valjakka and Ramey concealed that fact, knowing that Valjakka did not own the patent.

---

[5] As Ramey points out in opposition, settlement agreements frequently contain confidentiality provisions, so that fact by itself is unremarkable.  But the lead-up to the Akamai settlement—including Akamai's threat to "coordinate with other defendants," Valjakka's recognition that Akamai's potential disclosure exposed the patent to a "fatal risk," and Ramey and Valjakka's subsequent failure to timely disclose the Finnish court opinion—distinguish this from the garden variety case.

United States District Court
Northern District of California

### B.   Divestment of Exclusive Rights in Both Patents

A month after filing this case asserting the '167 Patent and two months before amending his complaint to add the '102 Patent, Valjakka assigned to CDN all exclusive rights to license the patents to third parties and receive litigation and other proceeds.  Valjakka's amended complaint, which Ramey signed, nonetheless claimed he owned "all rights, title, and interest" in the patents.  *See* ECF No. 14 ¶¶ 12–13.  And despite multiple requirements that he disclose information about the CDN agreements—and multiple requests from Netflix that he comply with those requirements—Valjakka failed to do so until the end of fact discovery, when he produced Finnish-language copies of the agreements.  *See* ECF No. 388-1 ¶ 29.  Netflix incurred significant fees as a result, namely in adding and litigating counterclaims under CUVTA to protect its ability to secure an eventual fees award through the present motion.

In *Lowe v. Shieldmark, Inc.*, the plaintiffs transferred away their rights to enforce the asserted patent and therefore had no standing to pursue the action.  No. 1:19-cv-748, 2022 WL 3647773, at *4, 6 (N.D. Ohio Aug. 23, 2022).  After the defendants independently discovered the existence of the transfer agreement, the Court granted summary judgment for lack of standing.  *See id*. at *6.  In a subsequent opinion, the Court granted attorneys' fees under Section 285 because, with respect to information about the relevant agreements, "Plaintiffs (1) took no initiative to supplement their productions; (2) refused to produce the ownership and license documents when confronted by Defendants; and (3) filed a Fourth Amended Complaint in which Plaintiffs explicitly misrepresented to Defendants and to this Court the status of the patent."  *See* No. 1:19-cv-00748, 2023 WL 3043769, at *4-5 (Apr. 21, 2023), *aff'd on other grounds*, No. 2023-1786, 2025 WL 893211 (Fed. Cir. Mar. 24, 2025) (affirming award based on Court's inherent authority but not deciding appropriateness of sanction under Section 285).  *Lowe* is like this case in that Valjakka concealed the existence and effect of the CDN licensing agreements in this litigation and in multiple settlement agreements.

This additional misconduct is properly considered part of the "totality of the circumstances" supporting a fee award under Section 285.  However, because Netflix does not argue that Ramey was aware of the CDN transfers when he signed the complaint and does not

otherwise establish that Ramey facilitated this obfuscation in bad faith, this conduct will not be considered part of the basis for the fee award against Ramey.

### C.    No Reasonable Basis for Infringement Claims

As the Court detailed above, the infringement contentions concerning the '102 Patent and the '167 Patent each suffered significant deficiencies. As to the '102 Patent, Valjakka repeatedly failed to explain how Netflix infringed. As to the '167 Patent, Valjakka asserted that the Open Connect system infringed even though it did not have the "transport request" necessary to infringe every asserted claim. Weak infringement claims, standing alone, are not sanctionable. *See mCom IP, LLC*, 175 F.4th at 1379–81. However, a patent owner's pursuit of an "entirely baseless" infringement theory can amount to objectively unreasonable conduct warranting imposition of fees, particularly where the patent owner was notified of the deficiencies. *See, e.g.*, *Kilopass Tech. Inc. v. Sidense Corp.*, No. C 10-02066 SI, 2014 WL 3956703, at *10 (N.D. Cal. Aug. 12, 2014). Here, Netflix notified Valjakka at least three times, including early in discovery, that his infringement read on the '167 patent was severely deficient. *See* ECF Nos. 388-21, 388-24, 388-26. Yet Valjakka refused to dismiss, even in the highly unusual situation in which his own expert had reviewed the source code and confirmed Netflix did not infringe. *See* ECF No. 315-5 at 2–4.

With respect to the '102 patent, Valjakka's infringement contentions never evolved beyond conclusory assertions for key limitations, despite repeated requests from Netflix that he identify his theories and support them with evidence. *See* ECF Nos. 388-21–388-26; *see IPVX Pat. Holdings, Inc. v. Voxernet LLC*, No. 5:13-CV 01708 HRL, 2014 WL 5795545, at *5–8 (N.D. Cal. Nov. 6, 2014) (awarding attorneys' fees and holding that patentee's "litigation position on infringement was unreasonable" where patentee "assert[ed] literal infringement without comparing the elements of the claim to the accused product in more than a wholly conclusory fashion"). While Valjakka eventually voluntarily dismissed his '102 patent infringement claims, the parties had by then already litigated the claim for eighteen months and Netflix had filed a Section 101 motion.

Since *Octane Fitness*, district courts have deemed exceptional cases asserting patents whose claims were clearly directed toward unpatentable subject matter. *See, e.g.*, *Inventor*

*Holdings, LLC v. Bed Bath & Beyond Inc.*, No. CV 14-448-GMS, 2016 WL 3090633, at *3 (D. Del. May 31, 2016) ("The case at hand is an exceptional case because following the *Alice* decision, IH's claims were objectively without merit.").  Here, Valjakka should have known the '102 patent claims were ineligible under *Alice* and its progeny, and the Court found that his arguments in opposition to Netflix's motion were "unpersuasive" and "mischaracterize[d]" binding precedent.  ECF No. 132 at 6–6; *see also Chromadex, Inc. v. Elysium Health, Inc.*, No. 18-1434-CFC, 2024 WL 1255520, at *2 (D. Del. Mar. 25, 2024) (patent owner's litigation position "st[ood] out" from other patent eligibility cases where it was clearly invalid under binding precedent that patent owner "confusing[ly]–if not misleading[ly]" characterized in opposing summary judgment).

Valjakka's assertion of the '102 Patent and, to a lesser extent, the '167 Patent, without a reasonable basis and despite Netflix's repeated advisals of the deficiencies in his claims, goes to the exceptional substantive weakness of this case and therefore contributes to the court's conclusion that Section 285 fees are warranted.

As to Ramey, Netflix argues that he "knew, or should have known, that the asserted '102 patent was likely to be found invalid under 35 U.S.C. § 101, and that Valjakka's infringement allegations as to each asserted patent were at least unsupported, if not entirely incorrect, including at least because Netflix repeatedly told them as much in correspondence throughout discovery." ECF No. 388 at 27–28; *see also* ECF No. 407 at 13–14.  This is insufficient to show that Ramey acted in bad faith.  Because Netflix has not shown bad faith as opposed to an exceptionally meritless position, this conduct will not be considered part of the basis for a fees award against Ramey.

### D.   Unauthorized Practice of Law

"Litigation misconduct and unprofessional behavior are relevant to the award of attorney fees, and may suffice, by themselves, to make a case exceptional." *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed. Cir. 2002).  Here, Valjakka facilitated AiPi's covert unauthorized practice of law.  That conduct is part of the "totality of the circumstances" supporting a Section 285 fee award.  *Octane Fitness*, 572 U.S. at 554

"Attorneys practicing in the Northern District of California must either be members of the Court's bar, or alternatively, admitted to practice in a particular case pending in the Court pro hac vice." *Koji IP*, 2025 WL 917110, at *14 (citing Civil L.R. 11-1(a), 11-3). AiPi's attorneys performed extensive legal work for Valjakka's case, including: (1) drafting the original complaint and claim chart, ECF No. 388-43; (2) amending the complaint and preparing infringement contentions, ECF No. 388-36, ECF No. 388-39; and (3) responding to dispositive motions, ECF No. 388-38. Ramey entered into an engagement agreement with AiPi providing that AiPi would do "all drafting of documents, legal work and research" and Ramey subsequently directed AiPi attorneys to do so. ECF No. 302-6 at 1–2; ECF Nos. 388-36, 388-37. Having out-of-state, unadmitted attorneys "perform the bulk of substantive work, including overall case strategy," constitutes the unauthorized practice of law. *Koji IP*, 2025 WL 917110, at *19–20. As the Court described above, Valjakka and Ramey also avoided disclosing the role AiPi played until the eleventh hour.

The facilitation of the unauthorized practice of law and concealment of AiPi's role constitute unreasonable litigation conduct supporting an award of fees under Section 285.

### E. Scope of Sanctions Against Ramey

Ramey withdrew as counsel of record on March 24, 2024. ECF No. 277; ECF No. 402-1 ¶ 3. He argues that the Court should not hold him responsible for fees incurred after that date. Netflix responds that "Ramey should not be allowed to escape sanctions for the proceedings he multiplied while he was counsel, simply because those proceedings happened after he chose to withdraw." ECF No. 406 at 6.

The law requires courts to draw a causal connection between sanctionable conduct and the fees incurred as a result. *Goodyear Tire*, 581 U.S. at 108; *see Fleming v. Escort, Inc.*, No. 1:12-cv-0066, 2014 WL 4853033, at *5-6 (D. Id. Sept. 29, 2014) (awarding sanctions under Section 1927 for fees incurred preparing numerous filings "directly caused by" and "reasonabl[y] respons[ive]" to "the misleading representations of Escort's counsel" regarding source code produced during discovery). Netflix argues that Ramey's conduct in failing to produce information about CDN and AiPi during the original discovery period caused it to incur discovery

United States District Court
Northern District of California

costs after Ramey withdrew. *See* ECF No. 407 at 14–15. The Court agrees. In addition to the fees incurred between November 2021 and his withdrawal in March 2024, Ramey is responsible for discovery costs incurred after his withdrawal but attributable to his reticence to disclose information about CDN and AiPi.

In addition, Ramey has already been sanctioned for violating the protective order in this case by sharing Netflix's confidential information with outside litigation funder AiPi. ECF No. 324. The fees incurred by Netflix in investigating, mitigating, and pursuing sanctions for that breach are not recoverable twice and must be excluded from the amount for which Ramey and Valjakka are responsible.

## V.    MOTIONS TO STRIKE

### A.    Ramey's Motion

Accompanying the present motion are two motions to strike. First, Ramey moves to strike certain exhibits attached to Netflix's fees motion on the grounds that they are protected by the attorney work-product doctrine and the common-interest privilege. ECF No. 399. Netflix does not dispute that the attorney work-product doctrine and/or the common-interest doctrine apply to at least some of the documents in question on their face. *See* ECF No. 406 at 4. Netflix argues, however, that Ramey waived any privilege by failing to assert it. *Id*. at 4–7. Netflix is correct.

On January 23, 2024, Netflix served AiPi with a Rule 45 subpoena in litigation in the Eastern District of Virginia, *AiPi, LLC v. Netflix, Inc.*, No. 1:24 mc-00002-LMB-WEF. That court ordered AiPi to "review the responsive information and inform any persons it believes may have claims to privilege over responsive information and that any objections based on privilege must be filed in this Court." ECF No. 403-2 ¶ 2(d). Counsel for AiPi provided the Production Order and links to multiple productions to both Ramey and Valjakka, advising them that:

> We are in the middle of forensic discovery ordered by the Court, here's the first production: [link to AiPi documents]. We are producing this to you so you have the opportunity to assert privilege before it is produced to Netflix. I have reattached the Court order as a reference. If you wish to assert privilege, you'll need to follow the attached order.

ECF No. 403-3 at 6. AiPi's counsel sent three separate productions of AiPi documents to Mr.

United States District Court
Northern District of California

Ramey, each time reminding Mr. Ramey, "if you intend to assert privilege to any of the documents, please follow the attached [Production Order]." ECF Nos. 403-4, 403-5. Ramey responded to the emails from AiPi's counsel, demonstrating he received them, but he did nothing to preserve any privileges. *See* ECF No. 403-3 at 5.

By Ramey's own admission, he was aware that AiPi was ordered to produce documents to Netflix in a proceeding involving Valjakka. ECF No. 399 at 7. He asserts that he "had no notice of the contents of the production" and "had no opportunity to review, log, or move to quash," ECF No. 399 at 5; ECF No. 399-1 ¶¶ 7, 9, but these assertions are squarely contradicted by the record, which contains emails providing Ramey with the full contents of the production and advising him of his opportunity to object. ECF Nos. 403-2, 403-3, 403-4.

Ramey argues that "[w]hen a non-party is compelled by court order to produce documents that contain another party's privileged work product, the privilege holder's rights are not waived." ECF No. 399 at 8 (citing *Transamerica Computer Co. v. IBM*, 573 F.2d 646, 650–52 (9th Cir. 1978)); *see also id*. at 11. But Netflix does not argue that Ramey's privilege was waived by AiPi's disclosure to Netflix; it argues that Ramey waived privilege by failing to assert it when given the opportunity to object to the disclosure to Netflix. "[W]aiver requires intentional relinquishment by the holder," and Ramey *did* intentionally relinquish his privileges when he allowed the documents at issue to be disclosed to Netflix without raising any objection. *See Bittaker v. Woodford*, 331 F.3d 715, 720-721 (9th Cir. 2003). This is especially so given that Ramey was explicitly encouraged to object in each of the three emails producing the documents that would be disclosed to Netflix. ECF Nos. 403-2, 403-3, 403-4.

Ramey also argues that he was "not on notice of the use Netflix would make of the documents." ECF No. 399 at 11. In light of his role as counsel to Netflix's litigation opponent, this statement is hard to credit. Certainly he was aware that Valjakka's lawsuit against Netflix in this district was ongoing. He was also aware of the possibility of a forthcoming fees motion in this litigation. ECF No. 388-2 at 4. As a seasoned patent attorney, he was almost certainly aware of the possibility that Netflix would seek fees not only against Valjakka but against Ramey personally.

United States District Court
Northern District of California

In *United States v. de la Jara*, the Ninth Circuit held that although the attorney-client privilege is not waived by compelled or inadvertent disclosure, it may nonetheless be waived by implication when the privilege holder "fails to pursue all reasonable means of preserving the confidentiality of the privileged matter" in the face of such compelled disclosure. 973 F.2d 746, 749–50 (9th Cir. 1992). The Court held that de la Jara had waived the privilege by doing nothing to recover or protect the confidentiality of the document at issue during a six-month period after the government obtained the letter during a search of his home but before they sought to admit it into evidence. *Id*. at 750.

In *In re Pacific Pictures Corporation*, the Ninth Circuit again considered waiver of privilege in circumstances of involuntary disclosure. 679 F.3d 1121, 1130 (9th Cir. 2012). There, the privilege holder had produced documents pursuant to a subpoena but "chose not to assert the privilege when it was appropriate to do so." *Id*. (quoting *In re Grand Jury Proceedings*, 219 F.3d 175, 187 (2d Cir. 2000)). As such, the court found that the privilege holder had voluntarily waived privilege. *Id.* Here, the subpoena of AiPi's litigation documents was directed at a third party in a proceeding in which Ramey was not involved. He nonetheless had notice of the pendency and nature of the proceedings, the document production and its contents, his opportunity to object, and the fact that a fees motion against him may be forthcoming in litigation involving the same parties. Under those circumstances, the Court easily concludes that he waived privilege. *See id.* (noting that "even though the subpoena specifically contemplated that Toberoff may choose to redact privileged materials, he did not").

Because Ramey has waived privilege,[6] his motion to strike is denied. At Ramey's request, Netflix also filed two administrative motions concerning the documents at issue: a motion to remove incorrectly filed documents and a motion to consider whether another party's material should be sealed. ECF Nos. 396, 397. For the reasons just explained, the motion to consider sealing is denied. Netflix shall refile the documents subject to ECF No. 397 publicly on the

---

[6] At least one of the documents Ramey seeks to strike, ECF No. 388-39, was previously cited and attached to a prior Netflix motion, ECF No. 302-12. Ramey's failure to object on privilege grounds at that time provides an additional basis for the Court to conclude that privilege has been waived.

docket. The motion to remove incorrectly filed documents, ECF No. 396, is denied as moot.

### B.    Netflix's Motion

Netflix also moves to strike evidence attached to Valjakka's opposition to the motion for fees because it was never produced during the litigation, is irrelevant, or is otherwise improper. ECF No. 408 at 8–10. Because the evidence supports the grant of fees against Valjakka even when those documents are considered, Netflix's motion to strike is denied as moot.

### CONCLUSION

This litigation was objectively baseless. Valjakka did not own the '167 patent, and he and Ramey both knew it. Their arguments regarding Valjakka's ownership directly contradicted controlling United States law. And Valjakka's own expert concluded that Netflix did not infringe either the '167 or the '102 patent. The Court, having considered Defendant Netflix, Inc.'s Motion for Attorneys' Fees, hereby orders that the motion is granted in part, as set forth above. The Court awards Netflix, Inc. attorneys' fees of $3,000,000 from Plaintiff Lauri Valjakka. It awards fees from attorney William Ramey and the law firm Ramey LLP, jointly and severally liable with Valjakka, in an amount to be determined. Within 28 days of the date of this order, the parties are ordered to meet and confer and submit joint or separate proposals, not to exceed five pages each, explaining the amount of fees for which Ramey is liable. These proposal(s) shall take into account, among other relevant matters, the Court's determinations concerning bad faith and the law's requirement that fee-based sanctions evince a causal relationship between misconduct and the fees incurred. The total amount of fees awarded shall not exceed $3,000,000.

In addition, Ramey's motion to strike, ECF No. 399, is denied. The administrative motions to remove incorrectly filed documents and consider whether another party's material should be sealed, ECF Nos. 396, 397, are likewise denied.

**IT IS SO ORDERED.**

Dated:  July 13, 2026

_____
JON S. TIGAR
United States District Judge

United States District Court
Northern District of California

23