Sarah E. Piepmeier, Bar No. 227094
Sarah.Piepmeier@ashurstperkins.com
ASHURST PERKINS COIE US LLP
505 Howard Street, Suite 1000
San Francisco, California 94105
Telephone: +1.415.344.7000
Facsimile: +1.415.344.7050

Janice L. Ta (appearance *pro hac vice*)
Janice.Ta@ashurstperkins.com
ASHURST PERKINS COIE US LLP
405 Colorado Street, Suite 1700
Austin, Texas 78701
Telephone: +1.737.256.6100
Facsimile: +1.737.256.6300

***Attorneys for Defendant***
***NETFLIX, INC.***

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

LAURI VALJAKKA,

*Plaintiff*,

v.

NETFLIX, INC.,

*Defendant*.

**Case No. 4:22-cv-01490-JST**

**NETFLIX, INC.'S OPPOSITION TO PLAINTIFF'S RULE 59(e) MOTION TO AMEND THE COURT'S ORDER GRANTING ATTORNEYS' FEES**

Date: To be re-noticed[1]
Time: 2:00 PM
Place: Courtroom 6
Judge: Hon. Jon S. Tigar

[1] Plaintiff originally noticed the motion for hearing on September 16. On August 11, the Court vacated Plaintiff's noticed hearing date due to the Court's unavailability, and informed Plaintiff that he needs to re-notice the motion for a new hearing date. ECF No. 427. As of the filing of this opposition, Plaintiff has yet to re-notice the motion.

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

II. LEGAL STANDARD ..... 2

III. ARGUMENT ..... 3

A. Valjakka Fails to Demonstrate Clear Error in the Court's Finding That Valjakka Asserted the '167 Patent While Knowing He Did Not Own It ..... 3

1. Valjakka's Rule 59(e) motion improperly relitigates the knowledge issue based on the same facts and arguments he presented previously. ..... 3

2. The Court expressly considered most of Valjakka's evidence and correctly concluded Valjakka knew he did not own the '167 patent. ..... 5

3. Valjakka's remaining evidence was impliedly rejected and fails to undermine scienter. ..... 6

B. The $3 Million Fee Award Against Valjakka Is Fully Supported Even if the Court Amends Its Finding on Knowledge. ..... 8

1. At a minimum, Valjakka's belief regarding ownership was objectively unreasonable, which also justifies Section 285 fees ..... 9

2. Valjakka's baseless infringement allegations and litigation misconduct also support a fee award covering the entire case ..... 9

C. Valjakka's Attempts to Challenge Other Aspects of the Fee Order Must be Rejected. ..... 10

IV. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**CASES**

*Advanced Video Techs. LLC v. HTC Corp.*,
No. 1:11 Civ. 06604, 2015 WL 7621483 (S.D.N.Y. Aug. 28, 2015) ...... 9

*Backlund v. Barnhart*,
778 F.2d 1386 (9th Cir. 1985)...... 2

*Bull v. City & Cnty. of S.F.*,
758 F. Supp. 2d 925 (N.D. Cal. 2010) ...... 2

*Carroll v. Nakatani*,
342 F.3d 934 (9th Cir .2003)...... 2

*Conklin v. Hill*,
No. 16-cv-02860, 2019 WL 10982835 (N.D. Cal. Jan. 16, 2019)...... 4

*EscapeX IP, LLC v. Google LLC*,
159 F.4th 1360 (Fed. Cir. 2025)...... 5

*Goodyear Tire & Rubber Co. v. Haeger*,
581 U.S. 101 (2017) ...... 11

*J & J Sports Prods., Inc. v. Ho*,
No. 5:11-cv-01163, 2012 WL 1910041 (N.D. Cal. May 24, 2012)...... 2, 3

*Jackson Family Farms, LLC v. Moore*,
No. 24-cv-06763, 2025 WL 2670977 (N.D. Cal. Sept. 17, 2025) ...... 7

*Kilopass Tech., Inc. v. Sidense Corp.*,
82 F. Supp. 3d 1154 (N.D. Cal. 2015) ...... 10

*Leslie Salt v. United States*,
55 F.3d 1388 (9th Cir. 1995)...... 2

*McDowell v. Calderon*,
197 F.3d 1253 (9th Cir. 1999) (*en banc*) ...... 2

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014) ...... 9

*Weeks v. Bayer*,
246 F.3d 1231 (9th Cir.2001)...... 2

*Wells Fargo Bank, N.A. v. Mahogany Meadows Ave. Tr.*,
979 F.3d 1209 (9th Cir. 2020)...... 3, 4, 10

*WiNet Lab LLC v. Motorola Mobility, LLC*,
No. 20 C 1094, 2021 WL 4929220 (N.D. Ill. Sept. 22, 2021) .... 9

*Young v. Peery*,
163 F. Supp. 3d 751 (N.D. Cal. 2015) .... 2, 5

*Zarcone v. United States*,
No. C 04-01428, 2004 WL 2196560 (N.D. Cal. Sept. 27, 2004) .... 3

*Zimmerman v. City of Oakland*,
255 F.3d 734 (9th Cir. 2001) .... 2, 3

**STATUTES**

35 U.S.C. § 285 .... 1, 9

**OTHER AUTHORITIES**

Local Rule 7-9 .... 2

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| Valjakka | Plaintiff Lauri Valjakka |
| Netflix | Defendant Netflix, Inc. |
| ’167 patent | U.S. Patent No. 8,495,167 |
| ’102 patent | U.S. Patent No. 10,726,102 |
| AiPi | AiPi, LLC |
| CDN | CDN Licensing Finland OY |
| CUVTA | California's Uniform Voidable Transactions Act |
| USPTO | United States Patent and Trademark Office |
| No Ownership MSJ Order | Order Granting Defendant’s Motion for Summary Judgment dated July 8, 2024 (ECF No. 257). |
| CUVTA MSJ Order | Order on Cross-Motions for Summary Judgment (ECF No. 368). |
| Finnish Court Orders | March 24, 2010 Helsinki Court of Appeal Order (affirming Helsinki District Court order of January 26, 2009) regarding “Dispute on rights based on a patent”) (ECF No. 116-02). |
| Fee Motion | Netflix’s Motion for Attorneys’ Fees (ECF No. 388). |
| VJ Fee Opp. | Valjakka’s Opposition to Netflix’s Motion for Attorneys Fees (ECF No. 398). |
| Fee Order | Order Granting Defendant’s Motion for Attorney’s Fees (ECF No. 416). |
| Motion or Mot. | Valjakka’s Motion to Alter or Amend the July 13, 2026 Attorneys’ Fees Order (ECF No. 416) Pursuant to Fed. R. Civ. P. 59(e) (ECF No. 425). |

# I. INTRODUCTION

Valjakka's Rule 59(e) motion ("Motion") seeks to undo a $3 million attorneys' fee award by challenging one specific finding from the Court's order: that Valjakka knew he did not own the asserted '167 patent. While Valjakka does not dispute the merits (that he in fact *did not own* the patent), he challenges scienter. But extraordinarily relief under Rule 59(e) requires that Valjakka demonstrate the Court not only erred but did so *clearly*. Valjakka fails to establish that the Court clearly erred in concluding that he knowingly asserted a patent he did not own. Nor could he—it is undisputed that Valjakka was aware of two Finnish Court orders confirming that he did not own the '167 patent.

In any event, the fees award does not hinge on proof that Valjakka *actually* knew he lacked ownership. The question is whether his assertion of the patent and maintenance of the litigation without ownership was "exceptional" under 35 U.S.C. § 285. If Valjakka subjectively believed he owned the '167 patent (a conclusion that the record does not support), but that belief was objectively unreasonable (as it would have been here), then his infringement campaign could still be exceptional. Besides, Netflix proved (and the Court found in the Fee Order) that Valjakka, his named attorneys at Ramey LLP, and his shadow outside counsel at AiPi all engaged in additional exceptional conduct, including pursuing baseless patent infringement claims against Netflix. Thus, even if Valjakka demonstrated that the Court's knowledge finding was clear error, the record would still support an award of fees in at least the amount requested by Netflix (which was less than half of its total attorneys' fees incurred by its top-billing outside counsel, exclusive of costs and other expenses).

Ultimately, Valjakka's Motion relies on arguments he raised (or could have raised) in his opposition to Netflix's Motion for Attorney Fees; not just on the issue of knowledge, but on other substantive issues, like the amount of Netflix's reasonable attorneys' fees incurred. But Rule 59(e) is not a vehicle for a losing party to ask for a "re-do" on the same factual record. Valjakka's misuse of the judicial process here further highlights the exceptional manner in which he and his counsel

have litigated this case from the start. The Court should accordingly deny Valjakka's Motion, and the Court's attorneys' fees award against Valjakka should stand..[2]

## II. LEGAL STANDARD

Amending or altering a judgment is an "extraordinary remedy, to be used sparingly" and at the discretion of the Court. *Carroll v. Nakatani*, 342 F.3d 934, 940, 945 (9th Cir .2003) (citation omitted). A judgment may be amended only if the district court (1) "is presented with newly discovered evidence," (2) "committed clear error or made an initial decision that was manifestly unjust," or (3) "there is an intervening change in controlling law." *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001); *accord McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (*en banc*). The requisite showing presents a "high hurdle" surmounted only under "highly unusual circumstances." *Weeks v. Bayer*, 246 F.3d 1231, 1236 (9th Cir.2001).

As to the second category, courts will grant reconsideration due to error "only if the prior decision was '*clearly*' wrong" and not "*merely* wrong." *Bull v. City & Cnty. of S.F.*, 758 F. Supp. 2d 925, 928 (N.D. Cal. 2010) (emphasis added) (*citing Leslie Salt v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995)). "A district court does not commit clear error warranting reconsideration when the question before it is a debatable one." *Young v. Peery*, 163 F. Supp. 3d 751, 753 (N.D. Cal. 2015) (citing *McDowell*, 197 F.3d at 1256).

"A motion under Rule 59(e) must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." *J & J Sports Prods., Inc. v. Ho*, No. 5:11-cv-01163, 2012 WL 1910041, at *4 (N.D. Cal. May 24, 2012) (internal quotation marks and citation omitted); *see also Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985) ("The motion was properly denied here because ... it presented no arguments that had not already been raised in

[2] Concurrently with the filing of this Motion, Valjakka filed an application for leave to file a motion for reconsideration under Civil Local Rule 7-9(b)(3) in the event the Court deems the Fee Order non-final (and thus, ineligible for attack via Rule 59(e)). *See* ECF No. 426. For the purposes of this opposition, Netflix assumes that the Fee Order is final (as to Valjakka) and focuses on the substance of Valjakka's request for reconsideration (which is meritless). To the extent the Court finds the Fee Order is non-final as to Valjakka, it should still ***not*** order further briefing on Valjakka's alternative application (*see* Local Rule 7-9(d)) because his request relies on the same general theory as the instant Motion (that the Court misapprehended his arguments in opposing Netflix's Fee Motion), which is not supported by the record as set forth in this opposition.

opposition to summary judgment."). Additionally, "[a] Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier." *Wells Fargo Bank, N.A. v. Mahogany Meadows Ave. Tr.*, 979 F.3d 1209, 1218 (9th Cir. 2020) (internal quotations and emphasis omitted).

## III. ARGUMENT

While Valjakka notes the narrow circumstances justifying Rule 59(e) relief (Mot. at 6:12-22), he fails to assert (let alone prove) that his arguments fit into any of them. He admits that his motion is not premised on new facts or law (*see*, *e.g.*, Mot. at 6:23-24, 8:5-7), and he does not argue that there is anything manifestly unjust about the Fee Order. Best understood, Valjakka argues that the Court erred in finding that he asserted the '167 patent knowing he did not own it, such that the $3 million fee award should be reduced (if not vacated). (*See, e.g.*, Mot at 14:23-25.) Valjakka also appears to challenge the amount of fees awarded. (*Id.* at 16:18-25.)

All of Valjakka's arguments were, or could have been, previously raised in the case. And the Court expressly rejected most (and impliedly rejected the rest) in its Fee Order. Ultimately, the Motion reflects Valjakka's ongoing "disagreement with the Court's decision" on the ownership issue and fees, which "fails to carry" his burden on reconsideration. *See J & J Sports Prods.*, 2012 WL 1910041, at *4. Accordingly, the Motion should be denied.

### A. Valjakka Fails to Demonstrate Clear Error in the Court's Finding That Valjakka Asserted the '167 Patent While Knowing He Did Not Own It.

#### 1. Valjakka's Rule 59(e) motion improperly relitigates the knowledge issue based on the same facts and arguments he presented previously.

Courts in this circuit routinely reject Rule 59(e) motions premised on arguments that were previously raised before the judgment in dispute was rendered. *See, e.g., Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001) (affirming denial of motion for reconsideration where "[w]ith one exception, the motion repeated legal arguments made earlier and sought to introduce facts that were available earlier in the proceedings," and the "only new argument" was immaterial to merits of claims); *Zarcone v. United States*, No. C 04-01428, 2004 WL 2196560, at *1-2 (N.D. Cal. Sept. 27, 2004) (following dismissal of a complaint on jurisdictional grounds, denying motion

for reconsideration that was a "thinly-disguised attempt to relitigate old matters" that were (or could have been) raised in opposition to dismissal).

Valjakka's Motion is no different. The evidence he relies on to challenge the Court's finding of knowledge was in the record and addressed by Valjakka in his opposition to the Fee Motion. For example, he previously contended that a trio of *nunc pro tunc* assignments that divested him of ownership evidence a "conditional structure" that purportedly led him to believe he owned the '167 patent, notwithstanding the Finnish Court Orders to the contrary. (*Compare* VJ Fee Opp. at 7:26-8:10, *with* Mot. at 7:16-24). Valjakka concedes his "ownership theory" based on these agreements is the same one the Finnish Courts already rejected; he is now "asking the Court to reconsider" the impact of that evidence on his state of mind. (*See* Mot. at 8:3-7). A request to reconsider a fact, without more, does not warrant relief under Rule 59(e). *See Conklin v. Hill*, No. 16-cv-02860, 2019 WL 10982835, at *1 (N.D. Cal. Jan. 16, 2019) (denying Rule 59(e) motion where "petitioner present[ed] no new evidence and simply [sought for] the Court to reconsider the evidence and arguments that were already examined and denied") Valjakka similarly returns to well-trodden ground to argue, *inter alia*, that the "language of the Utilization Agreement," the shutdown of Suomen Biisi Oy's ("SBO's") operations prior to bankruptcy, its abandonment of the application that would result in the '167 patent, and various declarations and agreements that post-date the Finnish Court Orders, all "undermine the proposition that Plaintiff knew his ownership position was false." (*See* Mot. at 11:24-25; c*ompare* VJ Fee Opp. at 3:15-5:17, 7:1-11 *with* Mot. at 8:18-11:25.) He attributed the same significance to the same evidence in his Fee Opposition: "those facts are inconsistent with the accusation that Plaintiff knowingly asserted rights he knew he did not have." (VJ Fee Opp. at 8:8-10.)[3]

The only "new" evidence that Valjakka cites is his own declaration (ECF No. 425-1), but nothing *in* the declaration is new, as Valjakka attests. (*See id.* at 1:19-21 ("The paragraphs below identify the earlier record material underlying the factual positions I had already presented before the fee Order").) And even if Valjakka's declaration contained anything new, the Court should

[3] To extent Valjakka argues in reply that his Motion recontextualizes this same evidence in a different light, the Court should not consider that argument given it could have been raised in Valjakka's Fee Opposition. *See Wells Fargo*, 979 F.3d at 1218.

disregard it because it could have been addressed by Valjakka in the declaration he submitted in opposing the Fee Motion. *Cf. EscapeX IP, LLC v. Google LLC*, 159 F.4th 1360, 1368 (Fed. Cir. 2025) (affirming denial of Rule 59(e) motion predicated on employee declarations because "these witnesses were always within the control of [appellant] and their knowledge … was always available," so the "declarations reasonably could have been prepared and offered to the court much earlier.").

Because the Motion simply seeks a do-over on Valjakka's knowing lack of ownership, the Court can deny it on that basis.

**2. The Court expressly considered most of Valjakka's evidence and correctly concluded Valjakka knew he did not own the '167 patent.**

Even if the Court were to consider Valjakka's repeat arguments and evidence, Valjakka fails to demonstrate that the Court's factual finding was clearly erroneous. Considered in view of context that Valjakka repeatedly ignores (namely, the Finnish Court Orders that found he lacked ownership), Valjakka's evidence, at most, makes it "debatable" whether he had actual knowledge—rather than held objectively unreasonable beliefs—which is insufficient to warrant amendment or vacatur of the Fee Order. *Young*, 163 F.Supp.3d at 753. But contrary to Valjakka's suggestions, the Court *has* already addressed and rejected most of his evidence:[4]

***Utilization Agreement:*** Valjakka contends that his understanding of the "conditional" nature of SBO's rights in the '167 patent was rooted in the "language of the Utilization Agreement." (Mot. at 8:19-9:7.) But over fifteen years ago, Finnish Courts told Valjakka that the agreement had "no significance" on the ownership issue, so he strains credulity by contending that he based any belief about ownership on that agreement or its terms (including any "contractual triggers"

[4] Some of the evidence Valjakka relies on was previously subject to a motion to strike by Netflix because, among other things, Valjakka failed to timely produce it. (*See* ECF No. 210-03 (Netflix's Reply in Support of Summary Judgment) at 13:15-15:21 (moving to strike Setala, Tepora, Hietalahti and Valjakka declarations); ECF No. 408 (Netflix's Reply in Support of Motion for Attorneys' Fees) at 3:24-4:2 (moving to strike ECF No. 398-03, undated "extract" from SBO's bankruptcy counsel).) The Court denied Netflix's motions as moot because, even considering the evidence in a light most favorable to Valjakka, the evidence still supported granting Netflix's substantive motions for summary judgment and attorneys' fees. (*See* No Ownership MSJ Order at 7:12-17; Fee Order at 23:2-6.) To the extent the Court considers Valjakka's reconsideration arguments related to these documents, Netflix renews its motions to strike them.

reverting ownership, see Mot. at 9:18-20). (*See* ECF No. 257 (Order Granting Summary Judgment of No Ownership) at 3 (quoting ECF No. 116-2 at 12).) Here too, the Court acknowledged Valjakka's contentions but nonetheless found Valjakka's misconduct was knowing. (*See* Fee Order at 12:10-12, 12:17-23, 23:8-9.)

***Valjakka's Own Conduct***: Valjakka argues that his efforts to revive and prosecute the '167 application following SBO's bankruptcy are "inconsistent with a finding that Plaintiff simply knew he had no rights and proceeded anyway." (Mot. at 10:1-2.) But the Court disagreed here as well, once again because Finnish Courts had then-recently told Valjakka he did not own the patent. (Fee Order at 12:17-21.) The Court further found it "problem[atic]" that Valjakka withheld the Finnish Courts' decisions from the USPTO (Fee Order at 12:17-21), which supports the inference that he knew doing so would be fatal to his revival claim.

***Declarations from a Bankruptcy Attorney and Professor***: While Valjakka emphasizes that declarations from the SBO bankruptcy estate and Professor Jarno Tepora support his purported subjective belief (Mot. at 12:1-13), the Court already rejected their import: that "Valjakka was able to find [them] to endorse his ownership claim … is not persuasive evidence of its strength." (Fee Order. at 12:13-16.) And besides, Valjakka provides no evidence that he was aware of these declarations (or the opinions of these persons) before filing this lawsuit. *See* ECF No. 398-03 (undated "extract" from SBO's bankruptcy counsel); ECF No. 398-04 (Tepora statement dated December 7, 2021).

***Statements by Robinson, Ramey, and AiPi***: Valjakka is right that the correspondence among his attorneys does not "contain[] [an] admission by Plaintiff that he did not own the patent," but the Court's order never connects these documents to Valjakka's scienter pre-suit. (*See* Mot. at 12:19-13:23.) What these documents demonstrate is that Valjakka chose to maintain his ownership claim despite being told early in litigation that the claim was unsupported.

**3. Valjakka's remaining evidence was impliedly rejected and fails to undermine scienter.**

While the Court addressed many of Valjakka's "problem[atic]" arguments in the Fee Order, it did not expressly remark on a handful of other documents and declarations that Valjakka

emphasizes in his Rule 59(e) motion. The Court need not address every argument or piece of evidence in granting or denying relief, and "[t]he Court's refusal to discuss an argument constitutes an implicit rejection of those arguments." *See Jackson Family Farms, LLC v. Moore*, No. 24-cv-06763, 2025 WL 2670977, at *2 (N.D. Cal. Sept. 17, 2025) (internal quotations omitted). But the Fee Order makes clear why Valjakka's remaining evidence in support of reconsideration fares no better than his other evidence discussed above:

***Nunc Pro Tunc Agreements:*** Valjakka contends that the Fee Order "did not address the specific limiting language" in the *nunc pro tunc* agreements that rendered them "conditional" (Mot. at 8:8-10), but the Court considered Valjakka's related argument that "the assignment of rights to SBO was conditional," and found that Valjakka's assertion of the '167 patent without ownership was knowing. (*See* Fee Order at 12:10-11, 23:8-9.) These agreements were part of the record in the Finnish Court proceedings, which rejected the import of any "conditional" ownership structure, so Valjakka again strains credulity by claiming to have relied on them for his purported belief about ownership. (*See* No Ownership MSJ Order at 3:9-10 ("These nunc pro tunc documents were before the Helsinki District Court").)

***Pakarinen Assignment***: Valjakka contends that Pekka Parkarinen "could otherwise have asserted an interest" in the '167 patent under the purported "conditional structure" of ownership, but Valjakka does not say why a 2010 agreement assigning Parkarinen's purported rights had any import on Valjakka's state of mind. Besides, Valjakka would have known that Parkarinen had no interest in the patent in view of the "binding decisions" of the Finnish Courts in the years prior. (*See* Fee Order at 12:17-21.) If anything, that Valjakka lodged the Parkarinen assignment with the USPTO is consistent with the fraud he perpetuated: it would appear to tie up an otherwise loose end (the interest of an individual named in the Utilization Agreement Valjakka relied on before the USPTO) while he "fail[ed] to disclose the Finnish court opinions" that held he did not own the patent application. (*See id.* at 12:19-21.)

***Setala Declaration***: While Valjakka suggests that Juha Setala (an SBO co-owner) "approved" of his claim to own the '167 patent's application, it is unclear why Valjakka would have relied on Setala when the very company Setala purported represented (SBO) fought

Valjakka's ownership in multiple Finnish court actions and then intentionally abandoned the underlying patent application. (*See* Mot. at 11:3-23; Fee Order at 1:22-2:5.) And in any event, the Setala declaration is one of several *post hoc* declarations that Valjakka "was able to find" to justify his conduct that is belied by the broader factual record. (*See* Fee Order at 12:14-23.)

***Berggren IP Statement***: Valjakka inexplicably relies on an attorney declaration from late 2021 to justify his state of mind before he filed the case. (*See* Mot. at 12:5-13; *see also* ECF No. 425-7 (Nov. 2021 statement).) By November 2021, this case was pending, and the Court had found Valjakka and his counsel were "work[ing] to conceal the implications of the Finnish court opinion." (*See* Fee Order at 2:17-3:21, 12:21-23. Worse, Valjakka suggests that it "bear[s] directly" on the inference "that Plaintiff knew his position was false," even though the IP Statement is, as Valjakka admits, predicated on the "abandonment" theory of ownership that Valjakka never articulated prior to litigation. (*See* Mot. at 12:9-10 ("Berggren expressly described the adverse Finnish decisions and nevertheless concluded … that Plaintiff had a basis to take over and own the U.S. patent rights."); *cf.* Fee Order at 12:19-21 (noting that the theory of ownership Valjakka advanced to revive the '167 patent's application was based on theories rejected by the Finnish court opinions).) This statement, like Setala's, is yet another *post hoc* opinion Valjakka "was able to find" to try and rationalize his prior conduct for litigation.

Accordingly, Valjakka has failed to demonstrate any error, let alone *clear* error, in the Court's finding that he knew he did not own the '167 patent. As such, Valjakka's Rule 59(e) motion should be denied.

### B. The $3 Million Fee Award Against Valjakka Is Fully Supported Even if the Court Amends Its Finding on Knowledge.

While Valjakka goes to great length to contest actual knowledge and requests "vacat[ur] of the fee award that rests upon" that finding (Mot. at 14:23-25), he fails to address an alternative basis for the fee award: that Valjakka's purported subjective belief of ownership was objectively unreasonable. And he misrepresents the Fee Order's findings regarding his baseless infringement claims, which would independently support an award covering the entire case, particularly given his other litigation misconduct. Netflix advanced both theories in its Fee Motion, and Valjakka did

not challenge them (or the cases Netflix relied on) in his opposition. (*See* ECF No. 388 at 14:8-22 (no ownership), 17:10-27 (noninfringement).) So even if the Court accepts Valjakka's contention that he lacked actual knowledge of his non-ownership and removes that finding from its Fee Order, it should not disturb the $3 million award against Valjakka.

**1. At a minimum, Valjakka's belief regarding ownership was objectively unreasonable, which also justifies Section 285 fees.**

Netflix's Fee Motion anticipated that Valjakka might dispute his subjective beliefs regarding ownership, and Netflix made clear that "under Section 285, a plaintiff's subjective belief that it owned the patent is no excuse if [that belief] is *objectively unreasonable*." (*See* ECF No. 388 at 14:8-16 (emphasis in original).) Netflix cited a pair of cases demonstrating that principle (*AVT* and *WiNet Labs*) that Valjakka did not address in his opposition to the Fee Motion, and he does not address them in his Rule 59(e) Motion, either. In *AVT*, the court found that the plaintiff "genuinely but naively believed it held title to the patent-in-suit" but its belief was "mistaken," and relying on mere belief was "objectively unreasonable," so the case was exceptional on that basis alone. *See Advanced Video Techs. LLC v. HTC Corp.,* No. 1:11 Civ. 06604, 2015 WL 7621483, at *6 (S.D.N.Y. Aug. 28, 2015). And in *WiNet Labs*, the court awarded fees despite "post-hoc intentions asserted" by the patent owners because, under controlling law, they had "no claim" to owning the asserted patent. *See WiNet Lab LLC v. Motorola Mobility, LLC*, No. 20 C 1094, 2021 WL 4929220, at *1, 3-4 (N.D. Ill. Sept. 22, 2021). Even under the rosiest version of history set forth in the Motion, Valjakka's purported subjective belief was still objectively unreasonable and would still merit an exceptional case award in view of these and other cases. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 n.6 (2014) (the circumstances a court should consider under Section 285 include, among other things "objective unreasonableness (both in the factual and legal components of the case).")

**2. Valjakka's baseless infringement allegations and litigation misconduct also support a fee award covering the entire case.**

Contrary to Valjakka's characterizations, the Court's Fee Order did not find his infringement claims merely "weak" and base the fee award solely on "[t]he knowledge

proposition." (Mot. at 15:24-27, 16:9-12.) The Fee Order acknowledged the "significant deficiencies" in Valjakka's infringement contentions that Valjakka was notified about but never fixed, and in the case of the '167 patent—for example, he "refused to dismiss [the claims], even in the highly unusual situation in which his own expert had reviewed the source code and confirmed Netflix did not infringe." (Fee Order at 17:4-16.) The Court expressly found that Valjakka's assertion and maintenance of these infringement claims "goes to the exceptional substantive weakness of this case." (*See id.* at 18:11-14.)

Netflix's Fee Motion explained that, under circumstances consistent with the Court's findings in the Fee Order, a court may award "all reasonable attorneys' fees arising out of" patent infringement claims in view of "objectively baseless" infringement allegations with other misconduct of the kind the Court found in its Fee Order. (*See* Fee Motion at 25:22-24 (*quoting Kilopass Tech., Inc. v. Sidense Corp.,* 82 F. Supp. 3d 1154, 1164, 1166 (N.D. Cal. 2015), 17:2-20:5.) Here again, Valjakka failed to address (let alone distinguish) the *Kilopass* case in his Fee Opposition and does not address it (or the Court's related discussion) in his Motion. Setting aside the ownership issue, the $3 million fee award is supported by the remaining misconduct described in the Fee Order.

### C. Valjakka's Attempts to Challenge Other Aspects of the Fee Order Must be Rejected.

While Valjakka presents the Motion as a challenge to the ownership-knowledge finding, he also asks the Court to vacate the entire fee award based solely on the amount he must pay. (*See* Mot. at 16:18 ("The $3,000,000 amount independently requires vacatur").) In his opposition to Netflix's Fee motion, Valjakka had an opportunity to contest the amount of Netflix's requested fees, including the reasonableness of the billing rates and total amount of hours billed, but he declined to address these issues. (*See generally* VJ Fee. Opp.) Because he could have raised these challenges earlier, they do not warrant amending or altering judgment. *See Wells Fargo Bank*, 979 F.3d at 1218 ("[a] Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier.") (internal quotation marks and

emphasis omitted). But the arguments fail on the merits, including because the Court already addressed them.

While Valjakka questions the $3 million in fees awarded against him based on supposed "exclusions and causation questions" in the Fee Order, the Court made no such findings as to him. (Mot. at 17:1-2.) The Court did find that Valjakka's attorneys, William Ramey and Ramey LLP, would not be responsible for certain categories of fees. But as to Valjakka, the Court found virtually every aspect of his case supported an exceptional case finding and fees: from his knowing lack of ownership, concealment of the CDN licensing agreements, baseless infringement allegations, the fact that the asserted '102 patent was plainly ineligible, various types of fraud associated with Netflix's CUVTA claims, and his facilitation and concealment of AiPi's unauthorized practice of law. (*See* Mot. at 15:22-4, 16:23-25, 18:3-6, 18:11-14, 19:14-15.) The only "exclusion[]" referenced in the Fee Order related to fees incurred related to Mr. Ramey's violation of the case protective order. (Fee Order at 20:5-9.) But as Netflix made clear in its Fee Motion, it already omitted those fees from its reasonable fee request. (*See* Fee Motion at 24:11-13, n.10.) Valjakka's appeal to the *Goodyear* case fails for similar reasons. While *Goodyear* emphasized that fee awards must be causally tied to the misconduct, it recognized that in some cases, the misconduct would be so pervasive as to warrant a blanket fee award. *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 110-11 (2017) ("If a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior, the court may again make a blanket award" without partaking in "the grind of segregating individual expense items."). The Court's broad misconduct findings support a blanket award (although Netflix only sought less than half the fees it incurred).

Valjakka also points to Mr. Ramey's previous challenges to a subset of Netflix's reasonable fees incurred (Mot. at 17:6-9), but Netflix already investigated, and could not corroborate, Mr. Ramey's claims beyond a few tens of thousands of dollars inadvertently included due to billing system discrepancies. (*See* ECF No. 407 (Netflix's Reply to Mr. Ramey) at 14:13-15:7.) Because Netflix seeks only $3 million on over $6 million in incurred fees, the Court need not adjust the fee award.

## IV. CONCLUSION

For the foregoing reasons, Valjakka's Rule 59(e) motion to amend the Fee Order should be denied.

Dated: August 24, 2026

Respectfully submitted,

*/s/ Adam Hester*

Sarah E. Piepmeier, Bar No. 227094
ASHURST PERKINS COIE US LLP
505 Howard Street, Suite 1000
San Francisco, California 94105
Sarah.Piepmeier@ashurstperkins.com
Telephone: +1.415.644.7000
Facsimile: +1.415.344.7050

Janice L. Ta (appearance pro hac vice)
ASHURST PERKINS COIE US LLP
405 Colorado Street, Suite 1700
Austin, Texas 78701
Janice.Ta@ashurstperkins.com
Telephone: +1.737.256.6100
Facsimile: +1.737.256.6300

Adam Hester, Bar No. 311206
ASHURST PERKINS COIE US LLP
33 E. Main Street, Ste. 201
Madison, WI 53703
Adam.Hester@ashurstperkins.com
Telephone: +1.650.838.4311

***Attorneys for Defendant***
***NETFLIX, INC.***