Sarah E. Piepmeier, Bar No. 227094
Sarah.Piepmeier@ashurstperkins.com
ASHURST PERKINS COIE US LLP
505 Howard Street, Suite 1000
San Francisco, California 94105
Telephone: +1.415.344.7000
Facsimile: +1.415.344.7050

Janice L. Ta (appearance *pro hac vice*)
Janice.Ta@ashurstperkins.com
ASHURST PERKINS COIE US LLP
405 Colorado Street, Suite 1700
Austin, Texas 78701
Telephone: +1.737.256.6100
Facsimile: +1.737.256.6300

***Attorneys for Defendant***
***NETFLIX, INC.***

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| LAURI VALJAKKA,<br><br>*Plaintiff*,<br><br>v.<br><br>NETFLIX, INC.,<br><br>*Defendant*. | **Case No. 4:22-cv-01490-JST**<br><br>**NETFLIX, INC.'S SEPARATE PROPOSAL REGARDING ATTORNEYS' FEE LIABILITY OF WILLIAM RAMEY AND RAMEY LLP (RE: ECF NO. 416)** |

Pursuant to ECF No. 416, Netflix proposes that William Ramey and Ramey LLP (together, "Ramey") be found liable for the full $3 million fee award. Ramey's maintenance of infringement allegations involving a patent he knew Valjakka did not own directly caused Netflix to incur millions in fees defending against those allegations through dispositive motions. (*See* ECF No. 416 at 15:6-10, 23:8-9.) And Ramey's decision to withhold documents and information regarding CDN and AiPi caused Netflix to incur additional fees seeking the discovery directly from AiPi. (*See id.* at 19:27-20:4.) Netflix carefully reviewed its many hundreds of pages of invoices to ensure that it would not seek fees caused from, *inter alia*, the other exceptional misconduct described in the fee order. That review demonstrated that at least ***$3,368,481*** of Netflix's total attorneys' fees ($6.2+ million) directly flow from these two flavors of bad faith misconduct by Ramey. Ramey's proposal relies on a tortured interpretation of the Court's fee order, and so should be rejected.

## I. NETFLIX INCURRED $2.3M DEFENDING AGAINST THE '167 PATENT

In awarding fees against parties who do not own patents they assert, courts broadly include fees incurred from defending all aspects of the case. *See, e.g., Max Sound Corp. v. Google, Inc.*, No. 14-cv-04412, 2017 WL 4536342, *13 (N.D. Cal. Oct. 11, 2017) ("because …Max Sound's unreasonable litigation conduct began with its filing of this case, the Court finds that Defendants are entitled to fees incurred from the date Max Sound filed its Complaint forward."); *Raniere v. Microsoft Corp.*, No. 3:15-CV-0540, 2016 WL 4626584, at *5 (N.D. Tex. Sept. 2, 2016) (granting all fees under Section 285 and the Court's inherent authority from date of Rule 16 Conference through dismissal). While the *Max Sound* award is based on Section 285, fees ordered pursuant to that statute must also be causally connected to the relevant misconduct. *See In re Rembrandt Techs. LP*, 899 F.3d 1254, 1280 (Fed. Cir. 2018). As in these cases, Netflix should be awarded all of its fees incurred in its defense of the '167 patent.

To reflect the reasoning in the Court's Order, Netflix's proposal accounts its fees differently before and after the Court dismissed the other asserted patent ('102) in June 2023. From then until the Court granted summary judgment of no ownership (January 2024), the '167 patent was the sole patent. Thus, all merits litigation during that time was caused by Ramey maintaining the suit (although Netflix still conservatively excludes certain categories of fees during this window).

In contrast, for the period prior to the dismissal of the ’102 patent, Netflix includes only 50% of its total fees that were not specifically allocated to work regarding one of the patents, and excludes all work specifically related to the ’102 patent. And in *both* periods of time, Netflix *excludes* any fees attributed to work related to CUVTA issues because the Court did not find Ramey liable for fees related to Valjakka’s CUVTA violations. To be even more conservative, Netflix does not include any fees incurred by Baker Botts prior to January 2024 even though their attorneys supported merits litigation (while primarily working on CUVTA).[1] As a result, ***$2,326,749*** represents a conservative accounting of Mr. Ramey’s liability during the merits portion of the case.

### A. ’102 Patent Dismissal to ’167 Patent Dismissal (Jun. 13, 2023 through Jan. 8, 2024) – $1,409,499

This covered the most time-intensive aspects of a patent case: the close of fact discovery, mediation, expert discovery, and dispositive motions and *Dauberts* (including preparatory mock hearings). (*See generally* Hester Decl., Exs. A (Perkins Coie invoices) at 176-258 and D (fee summary).) With the ’102 patent out of the picture, the only substantive litigation of Valjakka’s claims related to the ’167 patent. And about one week after the Court dismissed the ’102 patent, Netflix wrote to Ramey informing him that it now knew about and understood that Valjakka did not own the ’167 patent, and that Netflix would be pursuing its fees. (ECF No. 388-26 (June 23, 2023 letter) at 1-2.) Ramey’s continued maintenance of the ’167 patent allegations thereafter directly caused the significant attorneys’ fees Netflix incurred during this period.

### B. First Assertion to Dismissal of ’102 Patent (Jan. 3, 2022 through Jun. 12, 2023) – $917,250

On January 3, 2022, Ramey signed and filed an Amended Complaint falsely claiming that Valjakka owned the ’167 patent. (*See* ECF No. 416 at 16:4-6.) From then until the Court dismissed the ’102 patent, Netflix prepared its defense and litigated both asserted patents by, among other things, investigating prior art, conducting discovery, corresponding with Ramey regarding the deficiencies in Valjakka’s case, briefing and arguing claim construction, and conducting

[1] Netflix ***does*** include fees related to its efforts to take discovery from AiPi (given the Court’s finding regarding Ramey’s responsibility for them, see Section II below) and its preliminary investigation into attorneys’ fees liability (which is recoverable, see Section III).

depositions. (*See generally* Exs. A at 24-175 & D.) In its billing entries, Netflix did not typically attribute its work to one of the two patents; oftentimes one single billed activity (such as a strategy call) could involve issues unique to each patent but also common issues too. To be sure, where Netflix has specifically attributed billed work to only one of the patents, Netflix includes those fees for the '167 patent (***$29,553***) and excludes them for the '102 patent. For the remaining fees incurred during this period, Netflix allocates 50% to Ramey's maintenance of claims regarded the '167 patent. Thus, Ramey's liability for Netflix's fees from this period is ***$917,250*** (***$29,553*** ('167-only) + ***$887,696*** (half of fees not attributed to only one patent, net of the exclusions)).

Where time is billed on recoverable and non-recoverable work, Courts can apportion or allocate the fees to award only an appropriate portion. For example, in *David Austin Roses, Ltd. v. Jackson & Perkins Wholesale, Inc.*, the court awarded 70% of the movant's requested fees "[t]o account for work on" a contract claim to which the movant was not entitled to fees. No. 09-3027, 2010 WL 555674, at *2 (D. Or. Feb. 16, 2010). While "[t]he billing records submitted … d[id] not separate work" between the recoverable patent and nonrecoverable contract claims, the Court accounted for that by attributing 30% of the work to the contract claim, given that it "was simpler than the patent claim." *See id.* And in *Cambrian Sci. Corp. v. Cox Commc'ns, Inc*, the court awarded 25% of requested fees on "intertwined" time given the accused products subject to the fee award "played a much smaller role" than the products not subject to the award. *See* No. 11-01011, 2015 WL 12765635, at *4 (C.D. Cal. Nov. 20, 2015). Here, litigation of the '167 patent involved more issues relative to the '102 patent; namely identifying and investigating Valjakka's lack of ownership, which required additional written discovery, document review, interviews, and depositions. Given then the '167 patent litigation was less "simple[]" than that involving the '102, Netflix's requested allocation of 50% of unattributed fees to Ramey is conservative. *Cf. David Austin Roses*, 2010 WL 555674, at *2.

## II. NETFLIX INCURRED AN ADDITIONAL $957,728 IN DISCOVERY CAUSED BY RAMEY WITHHOLDING DOCUMENTS ABOUT AIPI AND CDN

The Court found that Ramey "is responsible for discovery costs … attributable to his reticence to disclose information about CDN and AiPi." (ECF No. 416 at 19:27-20:4.) After the

Court dismissed the '102 patent, Netflix incurred ***$957,728*** related primarily to a highly contested Eastern District of Virginia litigation to compel AiPi to produce documents that, by and large, could (and should) have been produced by Ramey during discovery. (*See generally* Exs. A at 258-320, C (Baker Botts invoices) at 51-207, D.) Netflix also incurred fees reviewing the documents and litigating a baseless privilege challenge lodged by Valjakka acting *pro se*. (*See id.*). This could have been avoided had Ramey complied with their obligations during fact discovery and not withheld these highly-relevant materials. Netflix took particular care to exclude the variety of unrelated work its attorneys simultaneously performed (i.e., work on Netflix's CUVTA claim, investigation into Ramey's protective order violations). To be even more conservative, Netflix omits general entries regarding case investigation and strategy.

## III. NETFLIX IS ENTITLED TO ITS FEES (AT LEAST $84,000) INCURRED IN PREPARING ITS FEE MOTION

In this circuit, Section "1927 allows an award of attorneys' fees incurred in obtaining a sanctions award." *Blixseth v. Yellowstone Mountain Club, LLC*, 854 F.3d 626, 632 (9th Cir .2017). Between January 8, 2024 (when the Court disposed of Valjakka's '167 patent infringement claim) and March 2026 (when Netflix was preparing to file its fee motion), Netflix incurred fees from researching and drafting its fee motion. (*See generally* Exs. A at 259, 271, 274, 277, 289, 293, 295-357; B at 3-4, D.) Ramey should be liable for ***$84,004*** of these fees, which excludes any time that expressly dedicated to researching or drafting issues for which the Court did not find those parties liable. Netflix's proposal is conservative insofar as it includes only fees reflected in the record at the time it filed its fee motion: it omits fees incurred between April 1 and April 17 (when Netflix filed its motion), any fees related to Netflix's reply to Ramey, time preparing for oral argument, and time preparing this proposal (as well as any unrelated (e.g., CUVTA) or already recovered (protective order violation) fees from this period).

## IV. RAMEY'S PROPOSAL TRIES TO REWRITE THE FEE ORDER

As best understood from the parties' conferrals, Ramey contends that (1) his ownership-related misconduct was limited to suppressing knowledge of the issue (so any fee award should be accordingly limited); and (2) the Court did not find Ramey responsible for Netflix's fees incurred

from his bad faith withholding of materials regarding AiPi and CDN. Both fail to justify a reduced fee award. As to the ownership issue, the Court did merely not find that Ramey suppressed discovery regarding ownership: "Ramey found out about the ownership defect when he joined the case in November 2021 … yet nonetheless assumed the representation [of Valjakka] and pursued meritless claims for almost three years." (ECF No. 416 at 13:25-14:2.) A broad fee award covering all litigation related to the '167 patent is consistent with *Raydiant Oximetry, Inc. v. ALC Med. Holdings LLC*, where the movant was awarded its litigation fees from the date the nonmovant filed frivolous counterclaims that it "willful[ly] continu[ed]" while "know[ing] [them] to be meritless." 808 F. Supp. 3d 987, 1003 (N.D. Cal. 2025); (*see also* ECF No. 416 at 14:14-27 (noting Ramey's failure to distinguish the case).) And as to Ramey's contentions regarding the impact of his discovery failures, the Court expressly found that he was "***responsible for discovery costs*** … ***attributable to his reticence to disclose*** information about CDN and AiPi." (ECF No. 416 at 19:27-20:4 (emphasis added). Given that Ramey can only be "responsible" for Netflix's costs under §1927 or the court's inherent authority if his conduct was (or was "tantamount to") bad faith (*see id.* at 9:3-10:7), the fee order thus finds that Ramey's withholding of material documents and information was in bad faith. Ramey's "reticence" caused Netflix to pursue discovery from AiPi directly, and he is responsible for those costs.

Ramey may also take issue with Netflix's attribution of specific fees to Ramey's misconduct. But the "essential goal in shifting fees is to do rough justice, not to achieve auditing perfection." *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 110 (2017). Netflix has taken care to do better than "rough justice," but to the extent Netflix's allocations are imperfect, its conservative approach to seeking fees provides ample offsets (i.e., it sought less than half of its total fees; Ramey's liability exceeds the cap by at least $368,000).)

## V. CONCLUSION

For the foregoing reasons, the Court should find Mr. Ramey and Ramey LLP jointly and severally liable for the full $3 million fee award.

Dated: August 31, 2026

Respectfully submitted,

/s/ Sarah E. Piepmeier
Sarah E. Piepmeier, Bar No. 227094
ASHURST PERKINS COIE US LLP
505 Howard Street, Suite 1000
San Francisco, California 94105
Sarah.Piepmeier@ashurstperkins.com
Telephone: +1.415.644.7000
Facsimile: +1.415.344.7050

Janice L. Ta (appearance pro hac vice)
ASHURST PERKINS COIE US LLP
405 Colorado Street, Suite 1700
Austin, Texas 78701
Janice.Ta@ashurstperkins.com
Telephone: +1.737.256.6100
Facsimile: +1.737.256.6300

Adam Hester, Bar No. 311206
ASHURST PERKINS COIE US LLP
33 E. Main Street, Suite 201
Madison, WI 53703
Adam.Hester@ashurstperkins.com
Telephone: +1.650.838.4311

***Attorneys for Defendant***
***NETFLIX, INC.***