CUAUHTEMOC ORTEGA (SBN 257443)
cortega@stris.com
**STRIS & MAHER LLP**
17785 Center Court Dr. N., Ste 600
Cerritos, CA 90703
Tel: (213) 995-6805

***Attorney for William P. Ramey, III and Ramey LLP***

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| LAURI VALJAKKA<br><br>*Plaintiff*,<br><br>v.<br><br>NETFLIX INC,,<br><br>*Defendant*. | Case No. 4:22-cv-01490-JST<br><br>**RESPONDENTS WILLIAM P. RAMEY, III, AND RAMEY LLP'S PROPOSAL RE: ORDER GRANTING DEFENDANT'S MOTION FOR ATTORNEY'S FEES; DECLARATION OF WILLIAM P. RAMEY, III, EXHIBITS A-F; PROPOSED ORDER**<br><br>Judge: Hon. Jon S. Tigar |

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| Valjakka | Plaintiff Lauri Valjakka |
| Netflix | Defendant Netflix, Inc. |
| ’167 Patent | U.S. Patent No. 8,495,167 |
| ’102 Patent | U.S. Patent No. 10,726,102 |
| AiPi | AiPi, LLC |
| CDN | CDN Licensing Finland OY |
| CUVTA | California’s Uniform Voidable Transactions Act |
| USPTO | United States Patent and Trademark Office |
| Finnish opinion(s) | March 24, 2010 Helsinki Court of Appeal Order (affirming Helsinki District Court order of January 26, 2009 regarding “Dispute on rights based on a patent”) (ECF No. 116-02) |
| Fee Motion | Netflix’s Motion for Attorney’s Fees (ECF No. 388) |
| Fee Opposition | Opposition of William P. Ramey III and Ramey LLP to Netflix Inc.’s Motion for Attorney’s Fees (ECF No. 402). |
| Fee Order | Order Granting Defendant’s Motion for Attorney’s Fees (ECF No. 416) |
| Ramey Decl. | Declaration of William P. Ramey, III in Support of Respondents’ Proposal RE: Order Granting Defendant’s Motion for Attorney’s Fees (filed concurrently herewith) |
| Respondents | William P. Ramey, III and Ramey LLP |

## I. INTRODUCTION

As directed by the Court, the parties met and conferred on August 21 and August 27, 2026, but did not reach a joint proposal regarding a fee award. Respondents believe Netflix's proposal is inconsistent with *Goodyear Tire & Rubber Co. v. Haeger,* 581 U.S. 101 (2017), because it adopts a broad, temporal approach that fails to causally tailor the requested fees to specific bad faith findings. Respondents' approach complies with *Goodyear*'s mandate because it uses targeted keyword searches to isolate time entries specifically attributable to covered conduct. Respondents' position is that the Court should impose no fee award, or in the alternative, an award no larger than $330,471 for the reasons cited herein.

## II. PROPER RUBRIC FOR ANALYSIS

Under *Goodyear,* "the court can shift only those attorney's fees incurred because of the misconduct at issue." 581 U.S. at 108. The fee analysis is thus controlled in the first instance by the language of the Fee Order itself, which issued limited findings as to respondents under 28 U.S.C. § 1927 and the Court's inherent authority compared to the broader findings against Valjakka under 35 U.S.C. § 285. The primary finding relates to concealing ownership of the '167 patent. ECF No. 416 at 15 ("the case is . . . brought in bad faith under Section 1927 because two competent courts had rejected Valjakka's ownership theory and . . . *Ramey concealed that fact*, knowing that Valjakka did not own the patent" (emphasis added)). The Court also found respondents "responsible for discovery costs incurred after [Mr. Ramey's] withdrawal but attributable to his reticence to disclose information about CDN and AiPi." *Id.* at 19-20.[1] It addition to excluding the CDN assignments and related CUVTA proceedings, it also excluded the merits litigation regarding infringement and the unauthorized practice of law issue, assigning this conduct to Valjakka only under § 285. ECF No. 416 at 16-19. As to the included conduct, the Court must apply a "but-for test," which allows the moving party to recover only the fees that "were incurred because of, and solely because of, the misconduct at issue . . . ." 581 U.S. at 113. Importantly, the moving party cannot rely on "temporal

[1] Though the Fee Order includes CDN here, it had already excluded CDN-related conduct from the fees award against respondents (assigning it only to Valjakka). *Id.* at 16-17. Thus, respondents believe this conduct is not properly assigned to them and do not include it in their proposal.

limitation[s]" to assign fees. *Id.*; *see also Lu v. United States*, 921 F.3d 850, 862 (9th 2019) (rejecting argument that fees were recoverable "merely because the government's bad faith conduct 'existed from the inception of the litigation'" because it adopted the "temporal approach rejected in *Goodyear*").

*Goodyear* acknowledges that there will be "exceptional cases" where the but-for standard "permits a trial court to shift all of a party's fees, from either the start or some midpoint of a suit, in one fell swoop." 581 U.S. at 110. These cases involve conduct where a district court "could reasonably conclude that *all* legal expenses" were caused by a party's "fraudulent or brazenly unethical efforts." *Id.* (emphasis added). Or, where "a plaintiff initiates a case in complete bad faith, so that *every* cost of defense is attributable only to sanctioned behavior." *Id.* (emphasis added). This case is not exceptional under *Goodyear*. The Court found Netflix did not prove bad faith as to several areas. ECF No. 416 at 16–20. Thus, respondents' conduct could not have caused "all legal expenses" or "every cost of defense." 581 U.S. at 110. In sum, a specific but-for causal analysis of the included conduct (ownership concealment and AiPi discovery (subject to the objection below)) is necessary before awarding any fees because "[i]f an expense would have been incurred even absent any bad faith conduct, it cannot be part of a bad faith fee award." *Lu*, 921 F.3d at 860.

## III. <u>RESPONDENTS' ANALYSIS</u>

Netflix has the burden to prove that the fee award it seeks is causally linked to the sanctioned behavior. As explained in Mr. Ramey's declaration, respondents used comprehensive keyword searches and further review to categorize Netflix's 10,190.0 billed hours according to the subjects addressed in the Fee Order to determine what entries were causally linked to the Court's findings. Ramey Decl. ¶¶ 8-10. For entries that could not be cleanly assigned because they covered multiple subjects, respondents also calculated a ceiling that resolves every overlap touching ownership in Netflix's favor. *Id.* ¶¶ 13, 19. Netflix's approach strays from *Goodyear*, first, because it creates categories tied to phases of the case using the prohibited "temporal" approach. *Lu*, 921 F.3d at 862. And second, because its categories are substantively broad and reach conduct the Fee Order did not cover. For example, in one category, Netflix proposes to assign respondents 50 percent of fees not specifically attributed to either the '102 or '167 patent. But if the work is not specifically linked to

the bad faith conduct, *Goodyear* forecloses its inclusion.[2] Respondent's approach performs the targeted causal linking *Goodyear* requires with more accuracy.

Respondent's Position on Ownership Concealment. At the heart of the bad faith finding against respondents is the contention that Mr. Ramey concealed the Finnish opinion regarding the '167 patent from Netflix, and in doing so, abused the judicial process. Respondents do not intend to relitigate the bad faith finding in this filing, but they identify certain facts that both inform the reasonableness of the fees requested and which they seek to preserve should there be an appeal. First, though respondents are accused of concealing the Finnish opinion, Netflix received the Finnish opinion early in the case, even if in its foreign language original state. On August 20, 2022, plaintiff conveyed the Finnish opinion (in Finnish) to Netflix, bearing the bates stamp range LV002216-LV002226. Ramey Decl. ¶ 26 & Exs. C, D. On August 31, 2022, respondents re-produced the opinion (this time bearing bates stamp range LV002274- LV002284) in response to an issue Netflix cited with the first production. *Id.* Exs. E, F. Although the Fee Order refers to Valjakka providing the Finnish-language opinion to Netflix, Netflix does not state the date of receipt in its motion.[3] ECF No. 416 at 3 (citing to ECF No. 388 at 15). Netflix also does not appear to affirmatively establish respondents possessed an English translation, which is relevant to assessing disclosure obligations.

To establish intent to conceal and subvert the judicial process, Netflix cites to an email Mr. Ramey sent on November 16, 2021 saying, "[t]his is a mess," and that the "Appeals Court decision and district court decision do seem to address ownership." ECF No. 388-10 at 2. In the latter part of the same email, however, Mr. Ramey asks, "[b]ut, it is a property right and we have the current assignment, correct?" *Id.* He posed the question because prior counsel, Erick Robinson, told him the ownership issue might be resolvable. On November 14, 2021, Mr. Ramey emailed Mr. Robinson asking, "Ok and there is a title problem?" Ramey Decl. ¶ 24, Ex. B. Mr. Robinson responded, "Have Eric explain it. *It may be okay.* They have an opinion of counsel from a Finnish law firm." *Id.* (emphasis added). Mr. Robinson told Mr. Ramey that "[i]t may be okay" *after* corresponding with

---

[2] Respondents rely on information learned through the meet and confer process; to the extent Netflix's argument varies, respondents request an opportunity to respond.

[3] Respondents during the meet and confer asked Netflix to confirm the date it first received the Finnish-language version. As of this filing, Netflix has not provided the date.

Akamai counsel about the ownership issue on November 11, 2021, ECF No. 388-10 at 4-5, and *after* emailing AiPi saying the "ownership issue is troubling to me" on November 13, 2021. ECF No. 388-6 at 23. Though it is probative of and relevant to Mr. Ramey's intent, Mr. Robinson failed to mention this in the declaration Netflix filed with its motion. ECF No. 388-6.

The theory that Mr. Ramey intended to conceal the Finnish opinion and thereafter improperly multiply the proceedings is difficult to reconcile with his *production* of the opinion early in the case, which placed Netflix on notice of its existence. Netflix's sophisticated counsel surely was able to interpret the document using any number of widely available translation tools. Netflix points to a host of other issues (ownership opinions, prior art, and settlement negotiations) to show a course of conduct. But all effectively trace back to the existence of the Finnish opinion. Thus, respondents believe Netflix's possession of the opinion, which it was capable of reviewing, should end the inquiry and no fee amount should be imposed.

If the Court nonetheless believes it should fix a fee amount, respondents analyze the issue as follows: For the ownership concealment category, respondents conducted keyword searches using two filters: (1) under an "exclusion dominant" filter, which excludes compound time entries that include narrative references to both ownership and excluded categories, and (2) an "ownership dominant" filter, which includes every entry that contains ownership key words, even if it contains narrative descriptions that also fall in excluded categories. Ramey Decl. ¶¶ 13, 16-19. The former category yielded 425.4 hours during the time Mr. Ramey was counsel for Valjakka, and the latter 1098. *Id.* ¶¶ 17-19. Thus, the range of hours relating to ownership range from 425.4 (under the more restrictive filter) to 1098 (under the overinclusive filter). *Id.* Netflix's fee proposal in its opening moving papers cut its fees by approximately 50 percent, resulting in a $3 million request; the Court subsequently capped the potential award at the same amount. In light of these parameters, full or blended rates should not be used. Instead, respondents apply a pro rata rate based on $3 million to each hour. Applying that rate to 425.4 and 1098 yields a range of $125,240 and $323.258.

<u>Discovery Related to AiPi Following Mr. Ramey's Withdrawal</u>. As a threshold matter, there is no express bad faith finding linked to respondents through § 1927 or the Court's inherent authority with respect to AiPi discovery. The Court awarded fees for facilitating the unauthorized practice of

law only under § 285, and § 285 fees don't reach counsel. *Dragon Intell. Prop. LLC v. DISH Network L.L.C.*, 101 F.4th 1366, 1372 (Fed. Cir. 2024). Without a bad faith finding, respondents object to any fee award in this category. While the Court references respondents' "reticence" to disclose AiPi's role, "reticence" falls short of the specific bad-faith finding required to impose sanctions under the Court's inherent authority. *See Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648–49 (9th Cir. 1997) (holding that even the district court's characterization of counsel's arguments as "totally frivolous" and conduct as "inexcusable" still did not establish the requisite finding of bad faith). Respondents propose that the Court impose no fee in this category. Without waiving this position, respondents calculate that a total of 3,267.7 hours post-date respondents' withdrawal. Of those, 666.6 hours pertain to entries whose narratives involve both discovery activity and AiPi. Ramey Decl. ¶¶ 20-21. The number decreases to 360.8 hours once entries for excluded or irrelevant categories (including protective order litigation, the Fee Motion hours, CDN, and CUVTA). *Id.* Applying the same pro rata rate, these hours yield a sum of $106,222. Had AiPi's role been disclosed earlier, Netflix would still likely have had to investigate AiPi, sought discovery from it, reviewed its productions, litigated objections, and taken discovery concerning its role in the case. The analysis must consider that "[i]f an expense would have been incurred even absent any bad faith conduct, it cannot be part of a bad faith fee award." *Lu*, 921 F.3d at 860. Netflix cannot establish that it wouldn't have engaged in protracted discovery-related activity with AiPi, even if it had learned of it earlier.

## IV. CONCLUSION

For the foregoing reasons, respondents request that the Court impose no fee award in either category. In the alternative, respondents propose the midpoint of the ownership concealment range, or $224,249. The proposal is reasonable because it includes all entries clearly tied to ownership, and half of the compound entries where the extent of ownership work is more ambiguous. As to AiPi discovery, respondents propose a sum of $106,222. Thus, in total, respondents' total fee proposal if their objections are overruled, is $330,471.

DATED: August 31, 2026

Respectfully submitted,

**STRIS & MAHER LLP**

*/s/ Cuauhtemoc Ortega*

Cuauhtemoc Ortega (SBN 257443)
STRIS & MAHER LLP
17785 Center Court Dr. N., Ste 600
Cerritos, CA 90703
Tel: (213) 995-6805
cortega@stris.com

COUNSEL FOR WILLIAM P. RAMEY, III AND RAMEY LLP