CUAUHTEMOC ORTEGA (SBN 257443)
cortega@stris.com
**STRIS & MAHER LLP**
17785 Center Court Dr. N., Ste 600
Cerritos, CA 90703
Tel: (213) 995-6805

***Counsel for William P. Ramey, III and Ramey LLP***

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| LAURI VALJAKKA<br>*Plaintiff*,<br>v.<br>NETFLIX INC,,<br>*Defendant*. | Case No. 4:22-cv-01490-JST<br>**DECLARATION OF WILLIAM P. RAMEY, III IN SUPPORT OF RESPONDENT'S PROPOSAL RE: ORDER GRANTING DEFENDANT'S MOTION FOR ATTORNEY'S FEES; EXHIBITS A-F; PROPOSED ORDER**<br>Judge: Hon. Jon S. Tigar |

I, William P. Ramey, III, declare as follows:

1. I am the managing partner of Ramey LLP and a respondent to the Court's Order Granting Defendant's Motion for Attorney's Fees ("Fee Order"). ECF No. 416. I make this declaration in support of Respondent's Proposal re: Order Granting Defendant's Motion for Fees. Except where stated on information and belief, I have personal knowledge of the matters set forth below and could testify competently to them if called. I am over eighteen years of age.

**A. Netflix Billing Investigation**

*(a) Deriving Hours Data from Netflix Counsel's Billing Records*

2. In response to the Fee Order's directive that the parties propose a fee amount attributable to Ramey LLP and me, my firm conducted, and I oversaw, a review of Netflix counsel's four billing exhibits filed with Netflix's Motion for Attorney's Fees. ECF No. 388. Specifically: Exhibit ZV to the Sarah Piepmeier Declaration, ECF No. 388-49 (forty-eight Perkins Coie invoices); Exhibit ZW to the Piepmeier Declaration, ECF No. 388-50 (Perkins Coie time for February 3 through March 31, 2026); Exhibit 1 to the Rachel D. Lamkin Declaration, ECF No. 388-52 (Baker Botts invoices covering thirty monthly periods from July 2023 through January 2026 (except April 2024, during which no time is billed); and, Exhibit 2 to the Lamkin Declaration, ECF No. 388-53 (Baker Botts unbilled time through March 31, 2026). For accuracy and clarity, given the various exhibit numbering conventions in the parties' briefing, I will refer to these exhibits by their docket number below and in the spreadsheet exhibits.

3. Every dated time entry in the foregoing exhibits was reviewed and analyzed. The analysis identified 5,160 time entries in the four records, totaling 10,190.0 hours.[1]

4. Submitted as **Exhibit A** is a true and correct copy of the complete 5,160-row Excel spreadsheet containing all billing time entries and showing each entry's source, date, timekeeper, hours, the work description narrative, and other fields described further below. Exhibit A will be filed in its native electronic form.

[1] This analysis supersedes ECF 402-1, which identified 4,947 entries. ECF No. 402-1 ¶ 22; ECF No. 402-2

5. On August 28, 2026, my counsel received unredacted versions of Netflix's billing records. Exhibit A, however, remains based on the redacted billing records Netflix publicly filed. Certain entries are categorized as "Untagged" or "Excluded" because the publicly filed narratives do not contain any of the search terms used in the analysis. A review indicates that many of these entries concern general litigation or administrative matters. In addition, I conducted an independent review of the unredacted time entries and determined that none of the existing document tagging required modification in light of the unredacted text.

6. The hours extracted and included in Exhibit A reconcile with the underlying invoices as follows: For ECF No. 388-49, the extracted hours equal the "Total Services" figure stated on each of the forty-eight Perkins Coie invoices exactly. For ECF No. 388-52, where a Baker Botts invoice period states a "Matter Hours" total, the extracted hours matched the total almost exactly (there were 2.0 more hours on the invoices than were captured by Exhibit A. For ECF No. 388-53, the extracted hours equal the stated prebill total of 68.00 hours exactly.

*(b) Hourly Rate Figure Used*

7. Netflix counsel redacts every hourly rate, per-entry bill amount, timekeeper rate and fee total in the four publicly filed billing exhibits. The dollar figures in this declaration and in the accompanying exhibits, therefore, allocate the Court's $3,000,000 cap pro rata by share of hours rather than applying a rate. This approach means that if Netflix spent 1% of the total 10,190.0 hours (101.9 hours) on a certain task related to the ownership issue (e.g., research or deposition preparation), that constitutes 1% of the $3,000,000 cap the Court implemented based on the amount Netflix requested after discounting its hours by approximately 50 percent. ECF No. 416 at 23.

*(c) Allocating Hours to Into Categories Pursuant to the Court's Findings*

8. The Court's Fee Order in "IV. Discussion" describes the conduct that is properly considered for purposes of a fee award and the conduct that's excluded from consideration. In this declaration and its accompanying exhibits, I use "IV" (in reference to the Discussion section number) and the corresponding subsection number (i.e., IV.A, IV.B, IV.C, IV.D, and IV.E) to refer to those portions of the Fee Order.

9. Each time entry in Exhibit A was assigned to a category according to the entry's narrative by testing the narrative text against category-specific search terms. The categories include each of the Fee Order's discussion sections (according to the methodology described in the preceding paragraph), and four additional categories (fee and sanctions litigation; discovery not tied on its face to any basis; case administration; and, general litigation work).

10. Each entry was also assigned to one of three periods: (1) before November 16, 2021 (the date of the email the Court identified as the moment of knowledge regarding the Finnish opinion issue, ECF No. 416 at 4, 14); (2) from November 16, 2021 through March 4, 2024, when I withdrew from the case, ECF No. 277; and, (3) the time period after my withdrawal. Of the total 10,190.0 hours, 189.7 fall into category (1); 6,732.6 fall into category (2); and 3,267.7 fall into category (3).

11. Exhibit A in its native form is an Excel allocation workbook with additional tabs. Each were created under my supervision, reviewed by me:

- The tab titled "Detail" includes every time entry collected from Netflix's billing records as well as their corresponding tagging on the ownership and AiPi discovery issues.

- The tab titled "Methodology" contains a complete list of search terms and the precedence rules used for the hours analysis.

In addition, the tabs below were derived from performing searches using the "Detail" tab:

- The tab titled "Bifurcated - Exclusion Dominant" is comprised of the time entries determined to be related to the ownership concealment issue (under the exclusion dominant theory discussed below). This list was generated by selecting the "in-window" filter in Column G and the "A1" filter in Column H of the "Detail" tab.

- The tab titled "Bifurcated - Ownership Dominant" is comprised of the time entries determined to be related to the ownership concealment issue (under the ownership dominant theory discussed below). This list was generated by selecting the "in-window" filter in Column G and the "A1" filter in Column I of the "Detail" tab.

- The tab titled "AiPi Discovery" is comprised of the time entries determined to be related to the AiPi involvement issue as set out in the Fee Order. This list was generated by selecting the "Residual" filter in Column L.

12. Some billing entries understandably cover work relating to multiple aspects of the case, making it impossible to cleanly divide or assign the hours among substantive categories. These entries are tagged as "Compound" in Exhibit A.

13. As to the ownership issue, Exhibit A identifies 369 compound entries, totaling 1,216.0 hours, whose narratives implicate more than one category. These entries are analyzed under two alternative rules applied in parallel. The exclusion-dominant approach assigns a compound entry to an excluded or separately treated category rather than ownership when both are implicated. The ownership-dominant approach does the opposite, assigning the entire entry to ownership whenever ownership-related work appears in the narrative. The latter resolves every overlap in Netflix's favor and thus provides a ceiling on potentially ownership-related hours, while the former provides the corresponding floor without attempting to divide the time recorded in individual entries.

14. The categories and applicable precedence rules are set out in the Methodology tab:

- A1 (Ownership): Ownership-related work, including the Finnish proceedings and opinions, Akamai, standing, chain of title, assignments, and related translation work.
- E1 (CDN/CUVTA): CDN, CUVTA, voidable-transfer, and related asset-transfer work.
- E2 (Patent Merits): Infringement, claim construction, validity, § 101, technical issues, and expert work.
- E3 (Protective Order): Protective-order and forensic-production issues.
- D1 (AiPi/Unauthorized Practice): AiPi, unauthorized-practice, and related proceedings.
- FEE (Fees/Sanctions): Fee, sanctions, privilege, and appellate work.
- DISC (Discovery): General discovery activity not otherwise assigned to a substantive category.
- GEN (General Litigation): General litigation, strategy, and motion practice.
- ADM (Case Administration): Administrative, scheduling, and case-management activity.
- UNTAGGED/EXCLUDED: Entries that do not sufficiently match the search terms.

The precedence rules below determine which single category controls when a billing entry is tagged with more than one category. They do not change the underlying tags; they simply resolve overlaps so that each entry is counted only once.

| | |
|---|---|
| **Precedence, exclusion-dominant reading:** | E3 > E1 > E2 > D1 > FEE > A1 > DISC > ADM > GEN |
| **Precedence, ownership-dominant reading:** | A1 > E3 > E1 > E2 > D1 > FEE > DISC > ADM > GEN |

15. For example, an entry tagged A1 (ownership) and E2 (other patent merits issue) is classified as E2 under the exclusion-dominant rule, because E2 ranks above A1, but as A1 under the ownership-dominant rule, because A1 ranks first. This allows the same underlying tagging to generate the ownership floor and ceiling without double-counting or dividing the hours within a billing entry.

16. Ownership-related searches test for references to the Finnish decisions and opinions of counsel, standing, the Akamai settlement, inventorship, chain of title, abandonment, revival and comity).

17. Under the exclusion-dominant reading, the allocation is as follows:

| Category (ECF 416, Part IV) | Hours | Share | Pro rata of few award cap set by Court |
|---|---|---|---|
| **IV.A — Ownership, Finnish decisions, Akamai** | 470.4 | 4.62% | $138,489 |
| IV.B — CDN divestment and CUVTA | 1,139.5 | 11.18% | $335,476 |
| IV.C — Infringement, claim construction, § 101, experts | 2,938.1 | 28.83% | $864,995 |
| **IV.D — AiPi role and unauthorized practice** | 1,398.3 | 13.72% | $411,668 |
| IV.E — Protective-order breach work | 377.4 | 3.70% | $111,109 |
| Fee, sanctions and appellate litigation | 350.8 | 3.44% | $103,278 |
| Discovery tied to no basis on the entry's face | 1,481.4 | 14.54% | $436,133 |
| Case administration | 785.7 | 7.71% | $231,315 |
| General litigation and strategy | 965.0 | 9.47% | $284,102 |
| No subject matter discernible on the entry | 283.4 | 2.78% | $83,435 |
| **Total** | **10,190.0** | **100.00%** | **$3,000,000** |

18. As shown above, 470.4 hours fall into the IV.A category: of those, 425.4 fall within the primary window of representation (2) and 45.0 after withdrawal (3).

19. Under the ownership-dominant reading it comprises 1,222.6 hours: 1,098 within the window and 124.6 after withdrawal. Under either reading, no ownership-category hours precede

November 16, 2021. As shares of the 10,190.0-hour universe applied to the $3,000,000 cap, those figures are $125,240 and $323,258 respectively. This yields a "midpoint" amount of $224,249 under the pro rata approach.

*(d) The Post-Withdrawal Entries*

20. Of the 3,267.7 post-withdrawal hours accrued across all categories, 666.6 are entries whose narratives involve both discovery activity and AiPi. Removing entries whose narratives concern the protective-order breach or the forensic production reduces the amount to 548.9 hours. Further removing entries whose narratives concern the fee motion, sanctions, privilege disputes or appellate matters leaves 383.4 hours. Further removing entries referencing CDN or CUVTA leaves 360.8 hours. The filter terms are summarized in full in Exhibit D (Methodology). As shares of the 10,190.0-hour universe applied to the $3,000,000 cap, that figure is $106,222.

21. I have personally reviewed the 360.8-hour residual entry by entry. Substantially all of it consists of the subpoena proceedings Netflix prosecuted against AiPi in the Eastern District of Virginia (attempts at service, a Rule 45(g) motion, motions to compel compliance, review of the resulting productions, and the deposition of Eric Morehouse). The Court denied Netflix's motions to join AiPi in this action and for an order to show cause on May 29, 2024. ECF No. 284.

22. Limits of the analysis: The subject-matter categories in Exhibit A were assigned by keyword review of the truncated narratives as they appear in Netflix counsel's publicly filed exhibits. Some keywords generated results that were facially irrelevant. For example, a search for "standing" returned entries referring to "outstanding action items." *See, e.g.*, ECF 386-6 at 244. Those entries were identified and excluded upon further review.

**B. Beginning of Representation**

23. On November 13, 2021, Erick Robinson wrote proposing to transfer to me the Lauri Valjakka matters, among others. Attached as **Exhibit B** is a true and correct copy of my email exchange with Mr. Robinson. I located this email after the Court's hearing on Netflix's Motion for Attorney's Fees. ECF No. 388.

24. On November 14, 2021, I asked Mr. Robinson in that same email chain, "Ok and there is a title problem?" He replied: "Have Eric explain it. It may be okay. They have an opinion

of counsel from a Finnish law firm." Mr. Robinson did not tell me that the ownership claim was defective, and he did not tell me that he was withdrawing from representing Valjakka because of it.

25. I appeared as counsel for plaintiff Lauri Valjakka on November 16, 2021. ECF No. 11. The Court granted my withdrawal request on March 4, 2024. ECF No. 277. (In a previous declaration, I mistakenly stated in one section that my withdrawal was granted "on March 24, 2024." ECF No. 402-1 ¶ 3. The order granting withdrawal, however, is dated March 4, 2024, as paragraph 22 of the same declaration correctly stated. ECF No. 402-1 ¶ 22.)

**C. Production of Finnish Order**

26. During my representation, plaintiff twice produced copies of the Finnish order (in Finnish) to Netflix. Attached as **Exhibit C** is an email dated August 20, 2022 conveying the first document production to Netflix. The Finnish Order is bates-stamped LV002274-LV002284 and is attached hereto as **Exhibit D**. Attached as **Exhibit E** is a subsequent email dated August 31, 2022, reconveying our document production to correct an issue Netflix identified with the first production. This subsequent production also contained a copy of the Finnish Order, bates-stamped LV002216-LV002226, and attached hereto as **Exhibit F**.

27. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 31, 2026, in Houston, Texas.

/s/ William P. Ramey, III
WILLIAM P. RAMEY, III
(*electronically signed by counsel with permission*)