Case 4:22-cv-01490-JST

**Lauri Valjakka (Pro Se)**
Arinakatu 2 B 38
FI-53100 Lappeenranta, Finland
Telephone: +358 50 467 0090
Email: lauri.valjakka@eezykeyz.fi
Plaintiff, Pro Se

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| **LAURI VALJAKKA,**<br><br>Plaintiff,<br><br>v.<br><br>NETFLIX, INC.,<br><br>Defendant. | **Case No. 4:22-cv-01490-JST**<br><br>**PLAINTIFF LAURI VALJAKKA'S REPLY IN SUPPORT OF MOTION TO ALTER OR AMEND THE JULY 13, 2026 ATTORNEYS' FEES ORDER (ECF NO. 416) PURSUANT TO FED. R. CIV. P. 59(e)**<br><br>Hearing Date: December 17, 2026<br>Time: 2:00 p.m.<br>Place: Videoconference Only<br>Judge: Hon. Jon S. Tigar |

Case 4:22-cv-01490-JST

## TABLE OF CONTENTS

I. ISSUES PRESENTED....4
II. INTRODUCTION....4
III. RELEVANT RECORD....6
IV. ARGUMENT....7
A. Rule 59(e) permits correction of the identified errors....7
B. Actual-knowledge narrative conflicts with the fee-stage record....8
C. Netflix cannot substitute an unmade objective-unreasonableness holding....11
D. Fee Order overstates the unresolved infringement record and ECF No. 315-5....12
E. Distinct misconduct findings cannot supply missing ownership scienter....14
F. $3 million award lacks the required causation and exclusion analysis....15
V. CONCLUSION....17

Case 4:22-cv-01490-JST

## TABLE OF AUTHORITIES

Allstate Ins. Co. v. Herron, 634 F.3d 1101 (9th Cir. 2011)....7
Advanced Video Techs. LLC v. HTC Corp., 2015 WL 7621483 (S.D.N.Y. Aug. 28, 2015)....11
Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101 (2017)....15–16
In re Rembrandt Techs. LP Patent Litig., 899 F.3d 1254 (Fed. Cir. 2018)....14–16
Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877 (9th Cir. 2000)....7
mCom IP, LLC v. City Nat'l Bank of Fla., 175 F.4th 1370 (Fed. Cir. 2026)....6–7, 11–12, 14
Munchkin, Inc. v. Luv n' Care, Ltd., 960 F.3d 1373 (Fed. Cir. 2020)....7
Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545 (2014)....8
Rishor v. Ferguson, 822 F.3d 482 (9th Cir. 2016)....7
Stone Basket Innovations, LLC v. Cook Med. LLC, 892 F.3d 1175 (Fed. Cir. 2018)....11
Wells Fargo Bank, N.A. v. Mahogany Meadows Ave. Tr., 979 F.3d 1209 (9th Cir. 2020)....7–8
WiNet Lab LLC v. Motorola Mobility, LLC, 2021 WL 4929220 (N.D. Ill. Sept. 22, 2021)....11
35 U.S.C. § 285....7, 11–12, 15
Fed. R. Civ. P. 59(e)....1, 6–7, 16–17
Civil L.R. 7-3, 7-4, and 7-9....17

Case 4:22-cv-01490-JST

## I. ISSUES PRESENTED

1. Whether the Court should correct the categorical finding that Plaintiff actually knew he did not own the ’167 Patent, where Netflix now concedes that the attorney correspondence contains no admission by Plaintiff; the fee-stage record documented a longstanding, pre-fee-dispute ownership position grounded in conditional agreements, a disputed 2006 assignment, termination and reversion events, UKIPO restoration materials, USPTO revival, and a Finnish ownership proceeding reopened by the Supreme Court of Finland; and ECF No. 416 nevertheless treated the adverse merits history as proof of knowing falsity.

2. Whether Netflix can preserve the existing $3,000,000 personal fee award by substituting post hoc alternative theories for the findings ECF No. 416 actually made, where ECF No. 257 disposed of the ’167 Patent claims on ownership/standing rather than infringement and Plaintiff expressly preserves his appellate challenge to that ownership ruling; the document used to characterize Plaintiff’s “own expert” as finding noninfringement of both patents is neither the expert’s report nor testimony and identifies no patent, claim, or limitation; the later record contains claim-specific technical analysis; and the Fee Order imposes the requested $3 million while simultaneously requiring exclusions and a causal relationship between misconduct and fees.

## II. INTRODUCTION

Netflix’s Opposition attempts to preserve an extraordinary personal fee award by compressing a two-decade, multi-jurisdictional title dispute into a single accusation: Finnish courts ruled adversely, therefore Valjakka knew he did not own the ’167 Patent. The fee-stage record does not permit that shortcut. ECF No. 416 made the categorical finding that Plaintiff and Ramey “both knew” Plaintiff did not own the ’167 Patent. Fee Order 23:8–9. Netflix now expressly concedes that the attorney correspondence cited in support of that narrative contains no admission by Plaintiff that he lacked ownership. Opp. 6:20–24. The finding therefore stands, if at all, only as an inference from the surrounding record. But that record included an assignment expressly made “subject to certain

Case 4:22-cv-01490-JST

conditions," termination and reversion materials, Plaintiff's sworn denial that he signed or authorized the disputed August 21, 2006 assignment, UK restoration materials reflecting the same longstanding position, USPTO revival of the U.S. application, and the Supreme Court of Finland's 2025 decision returning the ownership proceeding to the Helsinki District Court. ECF No. 188-7 at 2; ECF No. 398 at 6–8 ¶¶ 34–55; ECF No. 398-1 ¶¶ 21–53. Whatever the ultimate legal effect of those materials, they are incompatible with treating knowing falsity as the automatic consequence of an adverse merits history.

This Motion does not ask for sympathy, leniency, or a second trial on title. Nor does Plaintiff concede the correctness of ECF No. 257. That order is expressly challenged on appeal, and Plaintiff continues to dispute its ownership determination. For purposes of this Rule 59(e) motion only, Plaintiff does not ask this Court to relitigate ECF No. 257; he asks the Court to correct a separate fee-stage proposition—that he secretly knew his ownership position was false—before that proposition is used to impose a $3 million personal award. The fee-stage scienter finding must be tested against the evidence that Plaintiff's ownership position was longstanding, documented, litigated across jurisdictions, and actively pursued years before Netflix sought fees.

The infringement narrative contains a separate and equally concrete record problem. ECF No. 315-5 is not a report, declaration, deposition, claim chart, or testimony from Dr. Jonyer. It is a third-party email concerning unpaid invoices that reports a generalized negative view during the source-code review described in the email. The email identifies neither the '102 Patent nor the '167 Patent, identifies no claim or limitation, does not state that Plaintiff personally fired Jonyer, and expressly says Jonyer was willing to continue as a consulting expert. ECF No. 315-5 at 2–3. Yet ECF No. 416 turns that document into categorical findings that Plaintiff's "own expert" concluded Netflix did not infringe either patent and that Plaintiff "fired" him. Fee Order 5:9–11, 5:21–23, 17:13–16, 23:8–10. That is not a minor wording issue. It is a material expansion of the evidence used as part of the justification for the award.

Case 4:22-cv-01490-JST

The procedural posture makes accuracy especially important. This case began as a patent-infringement action; ECF No. 257 disposed of the case on the separate ownership-standing issue and never adjudicated Netflix's noninfringement contentions. The Fee Order nonetheless converts the unresolved technical record and the disputed ownership history into a $3 million personal fee award. The more extraordinary the consequence, the less room there is for a factual predicate broader than the cited evidence. Rule 59(e) does not require the Court to defend an overstatement simply because it appeared in an earlier order; it permits the Court to correct it.

## III. RELEVANT RECORD

The fee-stage record was not a blank slate on ownership or state of mind. Plaintiff's opposition squarely rejected Netflix's "never owned and knew it" narrative. It placed before the Court the conditional utilization structure; the disputed August 21, 2006 assignment and Plaintiff's sworn denial that he signed or authorized it; the September 2007 termination; the absence of a competing present claimant; the 2010–2011 USPTO revival and assignment history; UKIPO restoration and correction materials reflecting Plaintiff's longstanding ownership position; and the Supreme Court of Finland's 2025 decision reopening the ownership proceeding. ECF No. 398 at 6–8 ¶¶ 34–55; ECF No. 398-1 ¶¶ 21–53. Plaintiff's opposition expressly argued that this was a complex cross-border ownership dispute, not a knowingly baseless fiction. ECF No. 398 at 7–8 ¶¶ 47–55.

ECF No. 416 nevertheless went materially beyond the merits judgment. It did not merely say Plaintiff lost on title. It concluded that Plaintiff and Ramey "both knew" he did not own the '167 Patent, then paired that knowledge finding with the proposition that Plaintiff's "own expert" concluded Netflix did not infringe either patent, and imposed Netflix's requested $3 million on Plaintiff. Fee Order 23:8–14. At page 15, the Court relied on knowledge to distinguish mCom's rule that ordinary merits weakness is not enough. Id. 15:3–12. The challenged findings were therefore part of the architecture of the award, not harmless surplusage.

Case 4:22-cv-01490-JST

Netflix's Opposition narrows the dispute but does not cure it. Netflix concedes: "Valjakka is right that the correspondence among his attorneys does not contain an admission by Plaintiff that he did not own the patent." Opp. 6:20–22. Netflix then changes theories, arguing that the same correspondence supports an inference because Plaintiff continued litigating after criticism from counsel. Id. 6:22–24. That concession does not make circumstantial proof legally impossible, but it removes any direct-admission theory and exposes the actual question: whether the complete fee-stage record—not selected warnings detached from the contrary materials—supports the categorical conclusion that Plaintiff actually knew his ownership position was false.

## IV. ARGUMENT

### A. Rule 59(e) exists to correct the material errors identified here.

The Motion presents a classic Rule 59(e) problem: not a new ownership theory, but material factual and legal errors in findings drawn from the existing record. Rule 59(e) permits amendment to correct clear error or prevent manifest injustice. Allstate Ins. Co. v. Herron, 634 F.3d 1101, 1111 (9th Cir. 2011). Kona Enterprises bars repetition of arguments merely because a party dislikes the result; it does not require a court to preserve a fee award after the predicate facts on which that award rests are shown to be misstated or overstated. See Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000); Rishor v. Ferguson, 822 F.3d 482, 492 (9th Cir. 2016). Where the asserted error is the Court's treatment of evidence already in the record, the absence of "new" evidence is not a defect. It is the point.

Netflix's "implicit rejection" response does not solve the problem. Opp. 6:25–7:17. A court need not discuss every exhibit, but an unstated rejection cannot transform evidence into something it is not. It cannot turn counsel's warning into Plaintiff's admission, and it cannot convert a third-party email that identifies no patent, claim, or limitation into an expert finding of noninfringement as to both asserted patents. Section 285 requires a reasoned explanation sufficient to show why the case stands out and why the fees imposed follow from the identified conduct. mCom IP, LLC v. City Nat'l Bank of Fla., 175

Case 4:22-cv-01490-JST

F.4th 1370, 1378–81 (Fed. Cir. 2026); Munchkin, Inc. v. Luv n' Care, Ltd., 960 F.3d 1373, 1378–80 (Fed. Cir. 2020). "Implicit rejection" cannot substitute for evidentiary support.

Nor does Wells Fargo insulate the award from review. Plaintiff's fee opposition expressly objected that Netflix's request was grossly disproportionate. ECF No. 398 at 9; Fee Order 7 n.1. More importantly, the specific causation defect challenged now was created by ECF No. 416 itself: the Order requires an exclusion yet imposes the full requested amount without identifying what was excluded or how the final figure resulted. A party cannot forfeit an objection to an inconsistency that did not exist until the order was entered. Wells Fargo prohibits a genuinely new argument that reasonably could have been raised earlier; it does not bar correction of a newly entered order's own internal defect. Wells Fargo Bank, N.A. v. Mahogany Meadows Ave. Tr., 979 F.3d 1209, 1218 (9th Cir. 2020).

**B. Netflix's "knew he did not own it" narrative cannot be reconciled with the fee-stage record.**

**1. Adverse merits decisions do not establish subjective knowledge of falsity.**

Plaintiff does not ignore the adverse Finnish rulings or the district court's ruling in ECF No. 257; he challenges ECF No. 257 on appeal and separately disputes Netflix's leap from those outcomes to subjective knowledge of falsity. A merits judgment answers what a court concluded about legal title; a scienter finding asks what Plaintiff actually knew and believed. Those are not interchangeable questions. A litigant may ultimately lose a title issue while sincerely relying on a complicated chain of agreements, termination events, later assignments, restoration proceedings, and legal advice. Octane's totality analysis does not authorize an adverse merits ruling to become an irrebuttable proxy for bad faith. Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 554 & n.6 (2014).

Here the distinction is not abstract. Before ECF No. 416 issued, Plaintiff put into the fee record that the 2006 assignment was disputed and unauthorized by him; that the utilization structure was conditional; that the utilization agreement was terminated and Plaintiff maintained that the rights reverted; that the U.S. application was revived through the USPTO in 2010–2011 and later issued as the '167 Patent; that UK restoration materials reflected his longstanding ownership position; and that the

Case 4:22-cv-01490-JST

Supreme Court of Finland had returned his ownership claim to the Helsinki District Court for renewed proceedings. ECF No. 398 at 6–8 ¶¶ 34–55; ECF No. 398-1 ¶¶ 24–53. The Court was free to reject those matters as legally insufficient to establish U.S. title. It was not free to treat their existence as though it proved the opposite state of mind.

That distinction is decisive here because the fee-stage evidence showed a title position asserted and acted upon long before Netflix's fee motion. Plaintiff pursued USPTO revival in 2010–2011; UK restoration materials later reflected his challenge to the 2006 assignment; and the fee opposition documented that those events predated the present sanctions dispute by years. ECF No. 398 at 6–7 ¶¶ 38–42. A court may ultimately reject the legal consequences Plaintiff draws from that history. It cannot fairly characterize the history itself as evidence that he knew he had no rights at all.

**2. The assignment's express conditional language is evidence of state of mind, regardless of the merits outcome.**

The conditionality theory is not a post hoc invention. ECF No. 188-7 itself says the assignment was "subject to certain conditions set forth in separate business transfer and inventor's agreements with ASSIGNEE." ECF No. 188-7 at 2. Plaintiff's fee opposition expressly tied that text to the utilization and reversion structure and explained why the registry history, in his view, did not resolve substantive ownership. ECF No. 398 at 7–8 ¶¶ 48–55. Netflix's answer—that earlier Finnish courts rejected Plaintiff's legal position—goes to ultimate title. It does not erase the instrument's conditional language, the termination history, or the documented basis for Plaintiff's belief.

The same is true of the official patent-prosecution history. Plaintiff's fee opposition showed that the U.S. application became abandoned, that he pursued revival, that the USPTO granted revival on March 4, 2011, and that the patent issued in 2013. ECF No. 398 at 6 ¶¶ 38–40. It also showed that UK patent counsel told UKIPO years before the fee dispute that the August 21, 2006 assignment was improper, that Plaintiff denied signing it, and that rights reverted under the relevant agreement structure; UKIPO later restored the UK patent in proceedings reflecting Plaintiff's asserted ownership position. Id. ¶¶ 41–42. None of that establishes U.S. title by itself. But it destroys the premise that

Case 4:22-cv-01490-JST

Plaintiff's ownership position first appeared as an opportunistic litigation fiction after Netflix challenged standing.

**3. The state-of-mind record cannot be reduced to the fact that the ownership theory ultimately lost.**

Netflix tries to neutralize the state-of-mind record by calling the supporting materials irrelevant, rejected, or post hoc. Opp. 5:12–8:17. That response again answers the wrong question. The issue is not whether each item independently conveyed title; the issue is whether the complete record supports a finding of knowing falsity. Setälä's sworn declaration addressed reversion and later confirmations. ECF No. 188-24 ¶¶ 5–6, 9–12; ECF No. 398-18. Bankruptcy counsel's extract and Professor Tepora's statement addressed estate ownership and appropriation. ECF Nos. 398-3, 398-4. The Supreme Court of Finland later returned the ownership dispute to the general civil court after finding the earlier jurisdictional dismissal manifestly based on misapplication of law. ECF No. 398-2 at 5. These materials may not carry the merits burden for U.S. title. They nevertheless make the categorical scienter finding substantially harder, not easier.

Plaintiff likewise does not overstate the November 2021 Berggren statement. Because the action began in September 2021, that opinion cannot establish Plaintiff's pre-suit state of mind. Its relevance is narrower: early in the litigation, after the adverse Finnish history was disclosed, a legal opinion still concluded that later abandonment and related events could support Plaintiff's U.S. position. ECF No. 388-14; Mot. 12:5–13. Netflix may attack the weight of that opinion. What it cannot fairly do is turn the existence of competing legal advice into proof that Plaintiff knew only Netflix's view was correct.

**4. Netflix concedes the correspondence contains no admission by Plaintiff; the knowledge finding therefore depends on inference, not direct evidence.**

The Fee Order cited statements by Morehouse, Hietalahti, Robinson, and Ramey. Fee Order 2:17–3:21, 12:21–23. The Motion identified the obvious evidentiary limit: those speakers are not Plaintiff. Hietalahti's "fatal risk" language was a lawyer's risk assessment; Morehouse's and Ramey's statements were theirs; none was Plaintiff admitting that he lacked ownership. Mot. 12:19–13:23. Netflix now

Case 4:22-cv-01490-JST

concedes exactly that. Opp. 6:20–22. A court may infer knowledge from circumstances, but it cannot convert third-party warnings into a confession by the client. Once the supposed admission disappears, the inference must be tested against the whole record—including the documents showing why Plaintiff continued to believe the ownership issue was genuinely disputed.

Netflix therefore falls back on persistence: Plaintiff continued after lawyers criticized the ownership position. Opp. 6:22–24. But receiving contrary advice is not the same as knowing it is correct, especially where other lawyers, patent-office events, restoration proceedings, contract language, and later foreign-court proceedings supported a different understanding. Stone Basket illustrates why notice must be focused and supported before continued litigation becomes exceptional baselessness. 892 F.3d at 1181–83. The record may support criticism of Plaintiff's judgment. It does not compel the far more serious finding that he knew his ownership position was false.

**5. Actual knowledge was load-bearing, not surplusage.**

Netflix now argues that the $3 million award survives unchanged even if actual knowledge is removed. Opp. 8:21–10:16. That is not what ECF No. 416 says. Its conclusion expressly states that Plaintiff and Ramey "both knew" Plaintiff did not own the '167 Patent. Fee Order 23:8–9. At page 15 the Court used that knowledge premise to distinguish mCom. Id. 15:3–12. Netflix cannot obtain the same extraordinary result by declaring after the fact that a finding the Court expressly made and relied upon was unnecessary. Once that load-bearing premise is corrected, the totality must be reconsidered on the record that actually remains.

**C. Netflix cannot salvage the award by substituting an unmade objective-unreasonableness holding.**

Netflix asks the Court to preserve the award on a different theory: even if Plaintiff sincerely believed he owned the patent, that belief was objectively unreasonable. Opp. 9:5–24. Section 285 allows objective unreasonableness to matter, but an argument in a fee motion is not the same thing as an alternative holding in a judicial order. ECF No. 416 made the stronger finding of actual knowledge and used it in the totality analysis. Netflix's Opposition cannot rewrite the Order so that an unmade holding

Case 4:22-cv-01490-JST

retroactively carries the same $3 million result. If actual knowledge is corrected, the Court must determine anew whether the remaining facts independently make the case exceptional and, if so, why.

Advanced Video and WiNet do not eliminate that obligation. This record is not a clean, one-directional chain of title followed by a late subjective excuse. The fee-stage record contained conditional agreements, actual termination events, a disputed assignment Plaintiff swore he did not sign, official UK restoration materials reflecting that same position years before the fee dispute, USPTO revival and issuance, and a Finnish ownership proceeding reopened by the country's highest court. ECF No. 398 at 6–8 ¶¶ 34–55. The Court rejected Plaintiff's ultimate title theory. That does not make this record factually interchangeable with cases in which the claimed ownership basis simply did not exist.

mCom makes Netflix's proposed shortcut especially untenable. The Federal Circuit left the merits dismissal intact but reversed the § 285 award because the reasons for exceptionality were legally deficient or inadequately supported by the record. 175 F.4th at 1378–81. The point is not that mCom decides this case; it is that a merits loss does not relieve the fee court of separately explaining why the litigating position was exceptionally weak. ECF No. 257 is the district court's adverse ownership ruling, and Plaintiff expressly continues to challenge that ruling on appeal. Whatever its present operative effect, ECF No. 257 does not itself establish knowing falsity, and it cannot silently become a stand-alone finding that the same $3 million award would necessarily follow under objective unreasonableness alone.

### D. The Fee Order converts an unresolved infringement record into a categorical two-patent concession the cited evidence does not establish.

#### 1. ECF No. 257 did not adjudicate infringement.

Netflix argues that infringement independently justifies fees for the entire case. Opp. 9:25–10:16. The problem is that ECF No. 257 did not adjudicate infringement. It expressly framed the dispositive question as "purely legal": whether Plaintiff possessed title sufficient for standing. ECF No. 257 at 7:18–24. Netflix's noninfringement arguments in ECF No. 162 remained party advocacy; they did not become judicial findings merely because the Court disposed of the case on ownership. A fee order may

Case 4:22-cv-01490-JST

evaluate litigation conduct, but it cannot describe an unresolved infringement dispute as though the merits had been adjudicated against Plaintiff patent by patent and claim by claim.

**2. ECF No. 315-5 does not say what the Fee Order says it says.**

The specific evidentiary problem is stark. ECF No. 416 says Dr. Jonyer reviewed Netflix source code and "confirmed" noninfringement of the '102 Patent, repeats the proposition for the '167 Patent, states that Plaintiff "fired" him, and finally summarizes that Plaintiff's "own expert concluded that Netflix did not infringe either" patent. Fee Order 5:9–11, 5:21–23, 23:8–10. Each proposition is tied to ECF No. 315-5. The document should therefore be read for what it actually says—not for the broader narrative later placed upon it.

ECF No. 315-5 is a Rosenberg-to-Morehouse email thread about invoices. Rosenberg reports that Jonyer "did not feel" there was infringement "given how [Netflix's] code was architected and implemented." ECF No. 315-5 at 2–3. That is adverse evidence and Plaintiff does not dispute that. But the document does not identify the '102 Patent, the '167 Patent, any asserted claim, or any limitation. It is not Jonyer's report or sworn testimony. It does not state that Plaintiff ordered Jonyer removed. On the contrary, it says Jonyer was asked to continue as a consulting expert and was "more than willing" to do so. Id. The Fee Order thus transforms a generalized, secondhand negative view into a claim-specific conclusion on two identified patents plus a finding that Plaintiff fired the expert. The cited document does not support that expansion.

The contemporaneous record makes the overstatement still more consequential. On May 16, 2023, counsel told Netflix that the source-code review had stopped because the production lacked documentation, functional specifications, and "code that provides the logic for transferring files." ECF No. 315-6 at 2. That communication does not prove infringement. It does show why the record cannot be reduced to the proposition that a completed, definitive, two-patent expert analysis established noninfringement and Plaintiff simply replaced the expert to evade it.

Case 4:22-cv-01490-JST

**3. The later ’167 record confirms that infringement remained a contested, claim-specific technical issue.**

The later record confirms the point. Netflix’s own summary-judgment brief described Dr. Tibor Kozek’s July 7, 2023 written analysis and attacked his element-by-element theories concerning the “transport request” limitation, literal infringement, and equivalents. ECF No. 162 at 28–32; ECF No. 162-1 ¶ 15. A publicly filed deposition transcript further records that Kozek produced technical analysis addressing each element of Claim 1 of the ’167 Patent as applied to Open Connect and that damages expert Robert Held used the results of that analysis. ECF No. 213-2 at 105:5–106:22. The later technical record may have been disputed, but it existed; ECF No. 257 never adjudicated it.

Plaintiff does not seek a late infringement ruling. He seeks correction of a fee narrative that erased the distinction between disputed evidence and adjudicated fact. The record did not end with a definitive expert conclusion that Netflix did not infringe either patent. It contained a later claim-specific competing analysis. The Court itself recognized that “Weak infringement claims, standing alone, are not sanctionable.” Fee Order 17:8–12 (citing mCom). That proposition cannot be reconciled with using a secondhand email broader than its text as an independent basis for a blanket award covering the entire case.

**E. Distinct misconduct findings cannot supply the missing ownership scienter.**

Netflix also invokes CUVTA, AiPi, discovery, and protective-order findings as though aggregation can cure a missing predicate. It cannot. Plaintiff does not concede the correctness of the Court’s CUVTA ruling or any other adverse merits or sanctions ruling; those challenges remain preserved to the extent properly reviewable in the pending appellate proceedings. CUVTA is referenced here only because, even on its own terms, it addressed transfers and disclosure—not whether Plaintiff knew, when pursuing the ’167 Patent, that his ownership position was false. ECF No. 368. The AiPi findings likewise concern different disclosure and professional-responsibility issues. Fee Order 18:25–20:9. However serious the Court considered those matters, they cannot be repurposed as proof of an ownership scienter finding they never decided.

Case 4:22-cv-01490-JST

The distinction is particularly important where counsel conduct is involved. The record and ECF No. 416 repeatedly differentiate Plaintiff, Ramey, and AiPi rather than treating them as one actor. The Court separately analyzed what Ramey knew, what conduct could be attributed to him, and what fees his conduct caused. Id. 19:1–20:9, 23:13–24. Plaintiff should not be saddled with a $3 million personal award by collapsing every disputed act by every participant into one undifferentiated story of wrongdoing. The protective-order breach, moreover, had already been separately sanctioned, and ECF No. 416 expressly bars double recovery of the related fees. Id. 20:5–9.

**F. The $3 million award cannot survive without the causal analysis and exclusion ECF No. 416 itself requires.**

**1. Causation is not a billing-detail objection and was preserved.**

Netflix tries to reframe causation as a waived challenge to rates and time entries. Opp. 10:19–28. That is not the issue. Rembrandt vacated a $51 million fee award even though the appellant had not made specific objections to the tabulated hours or hourly rates, because the district court failed to establish the causal connection between misconduct and the fees awarded. In re Rembrandt Techs. LP Patent Litig., 899 F.3d 1254, 1279–81 (Fed. Cir. 2018). Plaintiff likewise challenges the legal scope of the $3 million award: what conduct made the case exceptional, what work that conduct caused, and what fees must be excluded. Those questions are not a spreadsheet audit.

Nor is causation optional because the Court found the case exceptional. Under § 285, the amount still must be reasonable in relation to the basis for exceptionality. Rembrandt, 899 F.3d at 1279–81. Under inherent authority, fee sanctions are compensatory and require but-for causation. Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101, 108–11 (2017). Rough justice permits reasonable approximation where precision is impossible; it does not permit an unexplained round number untethered to the conduct identified as exceptional.

Case 4:22-cv-01490-JST

**2. The Fee Order requires an exclusion for both Ramey and Plaintiff, yet awards Plaintiff the requested $3 million without showing the exclusion.**

ECF No. 416 contains an express command that makes the defect concrete. Fees incurred investigating, mitigating, and pursuing sanctions for the protective-order breach "are not recoverable twice and must be excluded from the amount for which Ramey and Valjakka are responsible." Fee Order 20:5–9 (emphasis added). That language is not limited to Ramey; it names Plaintiff. Yet the Order then imposes Netflix's requested $3,000,000 on Plaintiff without stating the amount excluded, identifying the categories removed, or making a finding that the requested figure already implemented the mandated exclusion. Id. 23:11–14.

Netflix's Opposition now assures the Court that its request already omitted those fees. Opp. 11:3–14. That assertion cannot retroactively supply the judicial finding and calculation missing from ECF No. 416. Nor does the fact that $3 million is less than Netflix's claimed total answer causation. A discount says nothing about which fees were caused by which conduct, which categories were excluded, or why the remaining amount equals $3 million. Rembrandt requires a causal rationale from the Court, not an unexplained ratio defended after the fact by the prevailing party.

**3. Goodyear does not authorize causation by assumption.**

Goodyear permits a blanket award only when a case was initiated in such complete bad faith that every defense cost would have been avoided but for the sanctionable conduct. 581 U.S. at 110–11. ECF No. 416 is not structured that way. It recognizes that weak infringement claims standing alone are not sanctionable; distinguishes among Plaintiff, Ramey, and AiPi; identifies a protective-order breach already separately sanctioned; mandates an exclusion; and orders additional causation submissions before fixing Ramey's liability. Fee Order 17:8–12, 19:1–20:9, 23:11–24. Those features are irreconcilable with assuming—without explanation—that every dollar included in Plaintiff's award was caused by one indivisible act of complete bad faith.

The remedy should therefore be direct. Vacate the actual-knowledge finding and the $3 million award, then reconsider exceptionality and amount on the record as it actually exists. If the Court

Case 4:22-cv-01490-JST

declines full vacatur, it should at minimum require Netflix to identify every excluded category, identify the conduct said to cause each remaining fee category, permit Plaintiff to respond, and enter a reasoned amount determination consistent with Rembrandt and Goodyear. Plaintiff does not concede that any fee is owed. The alternative request preserves a minimum procedural and causal safeguard; it is not acceptance of any part of Netflix's demand.

## V. CONCLUSION

Plaintiff respectfully requests that the Court grant the Rule 59(e) Motion. Nothing in this Reply concedes, accepts, or waives Plaintiff's challenges to ECF No. 257, the CUVTA ruling, the Court's § 101 ruling, or any other adverse ruling subject to appellate review. This Reply addresses only the fee award and does not acquiesce in the underlying merits or sanctions rulings. The $3,000,000 award cannot stand where the Fee Order converts a disputed ownership history into knowing falsity, relies on correspondence Netflix concedes contains no admission, treats an unadjudicated infringement dispute as a two-patent expert concession the cited email does not make, and imposes an award requiring exclusions and causation without showing either. The Court should vacate or amend the actual-knowledge finding, reconsider exceptionality on the corrected record, and vacate the $3,000,000 award. Alternatively, it should make a renewed record-based determination identifying required exclusions and the causal connection between specific conduct and specific fees. Plaintiff concedes no liability. If Rule 59(e) is deemed unavailable because ECF No. 416 is interlocutory, Plaintiff relies on his separately filed Conditional Application under Civil Local Rule 7-9(b)(3).

Dated: September 13, 2026

Respectfully submitted,
**/s/ Lauri Valjakka**
Plaintiff, Pro Se
lauri.valjakka@eezykeyz.fi

**CERTIFICATE OF SERVICE**

I certify that on September 13, 2026, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system. The CM/ECF system will send a Notice of Electronic Filing to all registered counsel of record.

**/s/ Lauri Valjakka**
**Lauri Valjakka**