# EXHIBIT 1

CUAUHTEMOC ORTEGA (SBN 257443)
cortega@stris.com
**STRIS & MAHER LLP**
17785 Center Court Dr N, Ste 600
Cerritos, CA 90703
Tel: (213) 995-6800

*Counsel for William P. Ramey, III*
*and Ramey LLP*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| LAURI VALJAKKA,<br><br>Plaintiff,<br><br>v.<br><br>NETFLIX INC.,<br><br>Defendant. | Case No. 4:22-cv-01490-JST<br><br>**MOTION FOR RECONSIDERATION OF ORDER GRANTING DEFENDANT'S MOTION FOR ATTORNEY'S FEES (ECF NO. 416); PROPOSED ORDER**<br><br>Date: [To Be Determined]<br>Time: 2:00 p.m.<br>Dept.: Courtroom 6, 2nd Floor<br>Judge: Hon. Jon S. Tigar |

TABLE OF CONTENTS

PAGE

NOTICE OF MOTION AND MOTION ... 1

MEMORANDUM OF POINTS AND AUTHORITIES ... 2

I. INTRODUCTION ... 2

II. FACTUAL BACKGROUND ... 4

A. Fee Order's Findings Regarding Knowledge ... 4

B. The November 2021 Correspondence Record ... 4

C. Finnish Opinions Produced August 2022 in Discovery ... 6

D. The Hearing on the Fee Motion ... 6

III. LEGAL STANDARD ... 7

A. Reconsideration Subject Matter ... 7

B. Bad Faith Standard ... 8

IV. ARGUMENT ... 9

A. There is No Evidence Prior Counsel Told Mr. Ramey the '167 Patent Claim Was Defective and the Newly Submitted Email Reflects the Opposite. ... 9

B. The Full Context of the November 16, 2021, Email Exchange Shows Mr. Ramey Investigating Facts, Not Accepting That the Ownership Question is Foreclosed and Proceeding Forward Anyway ... 10

C. There Was No "Course of Conduct" to Deceive, Since the Finnish Opinions Were Produced in the First Document Production in Discovery in August 2022, as Netflix Must Concede. ... 12

V. CONCLUSION ... 13

## TABLE OF AUTHORITIES

PAGE(S)

**Federal Cases**

*Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004 (9th Cir. 2015) .......... 8

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882 (9th Cir. 2001) .......... 7, 8

*Fink v. Gomez*, 239 F.3d 989 (9th Cir. 2001) .......... 8

*In re Worlds of Wonder Sec. Litig.*, 814 F. Supp. 850 (N.D. Cal. 1993) .......... 8

*Jensen Elec. Co. v. Moore, Caldwell, Rowland & Dodd, Inc.*, 873 F.2d 1327 (9th Cir. 1989) .......... 7

*Lake v. Gates*, 130 F.4th 1064 (9th Cir. 2025) .......... 8

*R.E. Serv. Co. v. Johnson & Johnston Assocs., Inc.* No. C-92-20672 RPA,1995 WL 540072 (N.D. Cal. Sept. 6, 1995) .......... 8

**Federal Statutes**

28 U.S.C. § 1927 .......... *passim*

**Other**

Federal Rule of Civil Procedure 54(b) .......... 8

Civil Local R. 7-9(b) .......... 7, 8

TABLE OF ABBREVIATIONS

| | |
|---|---|
| Valjakka | Plaintiff Lauri Valjakka |
| Netflix | Defendant Netflix, Inc. |
| ’167 Patent | U.S. Patent No. 8,495,167 |
| AiPi | AiPi, LLC |
| Finnish Opinion(s) | March 24, 2010, Helsinki Court of Appeal Order (affirming Helsinki District Court order of January 26, 2009) (ECF Nos. 441-5, 441-7) |
| Fee Hr’g Tr. | Transcript of July 2, 2026, Hearing on the Fee Motion |
| Fee Motion | Netflix, Inc.’s Motion for Attorney’s Fees (ECF No. 388) |
| Fee Opposition | Opposition of William P. Ramey, III and Ramey LLP to Netflix Inc.’s Motion for Attorney’s Fees (ECF No. 402). |
| Fee Order | Order Granting Defendant’s Motion for Attorney’s Fees (ECF No. 416) |
| Ramey Decl. | Declaration of William P. Ramey, III in Support of Respondents’ Proposal RE: Order Granting Defendant’s Motion for Attorney’s Fees (ECF No. 441-1) |
| Ramey Supp. Decl. | Declaration of William P. Ramey, III in Support of Respondents’ Motion for Leave to File Motion for Reconsideration |
| Respondents | William P. Ramey, III and Ramey LLP |

**NOTICE OF MOTION AND MOTION**

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that [*on a date and time to be determined upon filing approval from the Court*], Respondents William P. Ramey, III and Ramey LLP will and hereby do move for reconsideration of the Order Granting Defendant's Motion for Attorney's Fees, ECF No. 416, limited to the issue of whether Respondents acted in bad faith under 28 U.S.C. § 1927 and the Court's inherent authority and are therefore liable for attorney's fees. Respondents submit that (1) newly located email correspondence from plaintiff's prior counsel, when read in conjunction with the existing record, shows Respondents did not knowingly assume and pursue the '167 patent litigation in bad faith and (2) correction of the omitted or mistaken chronology provided by Netflix regarding the production of the original Finnish Opinions shows Respondents did not intentionally conceal their existence or import, which was interpreted by the Court as an indicator of bad faith. Taken together, these two issues require denial of Netflix's Fee Motion as to Respondents and vacatur of the determination that Respondents are liable for attorney's fees.

The motion is based on this notice, the attached Memorandum of Points and Authorities, the Supplemental Declaration of William P. Ramey, III, in support of the motion for leave, and the remaining records in this case.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION[1]

This motion seeks reconsideration of the Court's Fee Order finding that Respondents acted in bad faith pursuant to 28 U.S.C. § 1927 and the Court's inherent authority. ECF No. 416. The Fee Order rests on the central finding that Mr. Ramey knowingly pursued claims he understood to be baseless from the inception of the case, and that he failed to disclose relevant evidence. Specifically, with regard to the '167 patent, the Court concluded that Mr. Ramey "found out about the ownership defect when he joined the case in November 2021 after prior outside counsel resigned because of it." *Id.* at 13-14. The Court further concluded that Mr. Ramey "concealed" the fact that "two competent courts had rejected Valjakka's ownership theory." *Id.* at 15. Though Mr. Ramey, in opposition to the Fee Motion, asserted that prior counsel had not told him the '167 ownership issue was defective, the Court did not credit Mr. Ramey's explanation, citing to a November 16, 2021, email where Mr. Ramey states that "[t]his is a mess" and "[t]he Appeals Court decision and district court decision do seem to address ownership." *Id.* at 14.

As referenced in Respondents' Proposal Re: Order Granting Defendant's Motion for Attorney's Fees, ECF No. 441, there exist important facts that were not presented to the Court but that bear directly on the substance and accuracy of the conclusion that Mr. Ramey acted in bad faith and require reconsideration and denial of Netflix's Fee Motion as to Respondents.

First, Respondents, after the Court issued its Fee Order on July 13, 2026, located a contemporaneous email from prior counsel Erick Robinson, sent immediately before Mr. Ramey entered the case, squarely addressing the ownership issue. In the November 13-14, 2021, email exchange, Mr. Ramey pointedly asked regarding the '167 patent: "Ok and there is a title problem?" Mr. Robinson answered, having already exchanged substantive correspondence with opposing

[1] Because the arguments in the motion for leave and motion for reconsideration overlap, this motion reincorporates the content of the motion for leave where appropriate.

counsel for another party regarding the issue: “Have Eric explain it. *It may be okay.* They have an opinion of counsel from a Finnish law firm.” ECF No. 441-3 at 2 (emphasis added).[2]

This key email exchange contradicts the position and arguments Netflix made both in the pleadings and at the hearing where it accused Mr. Ramey of frivolousness and mischaracterization for asserting that Mr. Robinson told him the ownership issue was not foreclosed. But it was not before the Court when it ruled on the Fee Motion. It bears directly, however, on Mr. Ramey’s state of mind and the resulting bad faith finding, and warrants reconsideration of the Fee Order.

Second, the disclosure chronology of the Finnish Opinions was ambiguous in Netflix’s moving papers and inaccurately stated at the July 2, 2026, hearing. These omissions materially bear on the accuracy of the bad faith findings, too. The Court found that Respondents “concealed” the Finnish courts’ conclusions regarding the ’167 patent. ECF No. 416 at 15. But the Finnish Opinions were *produced* to Netflix on August 20, 2022, and again later that month, on August 31, 2022. Ramey Supp. Decl. ¶ 4; ECF Nos. 441-4, 441-5, 441-6, 441-7. Though the Fee Order acknowledged that a Finnish-language opinion was produced at some point in time, ECF No. 416 at 3, it did not address the exact timing of that production, which is critically important to assessing the intent to conceal. At the Fee Motion hearing, Netflix aggravated the ambiguity by misstating the chronology of the productions, saying, “[w]e only received [the Finnish court opinions] in Finnish *a couple of years later*, and we had to have them translated to figure out what the significance was.” Exhibit 2 (“Fee Hr’g Tr.”) at 9:14-16 (emphasis added). The fact, however, is the Finnish court opinions were produced in response to Netflix’s first requests for production. Ramey Supp. Decl. ¶ 4. The email correspondence conveying the productions confirms this fact, ECF Nos. 441-4, 441-5, 441-6, 441-7, and Netflix itself confirms it in correspondence attached to its motion. ECF No. 388-26 at 2 (acknowledging receipt of the Finnish-language opinions in August 2022).

When these two matters are applied to the record that the Court considered prior to issuing the Fee Order, the totality of the facts does not support a finding of bad faith under § 1927 and the

[2] Page numbers here, and with respect to subsequently discussed email exhibits, are to the CM/ECF pagination of the exhibits, as opposed to the original pagination used for briefs and other cited materials.

Court's inherent authority that Mr. Ramey knowingly pursued frivolous litigation and concealed evidence regarding the Finnish opinions. Accordingly, the Fee Order's bad faith findings and attorney's fees apportionment must be vacated as to Respondents.

## II. FACTUAL BACKGROUND

### A. Fee Order's Findings Regarding Knowledge

The Fee Order concluded that Mr. Ramey "found out about the ownership defect when he joined the case in November 2021 after prior outside counsel resigned because of it, yet nonetheless assumed the representation and pursued meritless claims for almost three years." ECF No. 416 at 13-14 (citing ECF No. 388-10 at 2-3; ECF No. 388-11; ECF No. 388-6 ¶¶ 5, 14). It rejected Mr. Ramey's assertion that prior counsel did not advise him about problems with the ownership issue, finding that "the evidence is to the contrary—specifically, an email Ramey sent on November 16, 2021 stating that '[t]his is a mess' and '[t]he Appeals Court decision and district court decision do seem to address ownership.'" *Id.* at 14 (citing ECF No. 388-10 at 2). The Court added that it was "unclear on what basis Ramey expected to be able to convince a U.S. court to ignore comity principles" in light of the Finnish Opinions, "especially so given that Ramey was aware of a 'Federal Circuit case that essentially dictates the result' on the ownership issue." *Id.* (citing ECF No. 388-10 at 4). On these bases, the Fee Order concludes that the case was "brought in bad faith under Section 1927 because two competent courts had rejected Valjakka's ownership theory and Valjakka and Ramey concealed that fact, knowing that Valjakka did not own the patent." *Id.* at 15; *see also id.* at 23 ("Valjakka did not own the '167 patent, and he and Ramey both knew it."). The Fee Order further describes Mr. Ramey as having "concealed the implications of the Finnish court opinions by (1) settling with Akamai to prevent it from disclosing the ownership defect to Netflix and (2) failing to disclose the Finnish opinions of counsel, English-language copies of the Finnish court orders, or certain prior art in response to requests for production of documents relating to Valjakka's ownership of the '167 patent." *Id.* at 14-15.

### B. The November 2021 Correspondence Record

The correspondence the Fee Order cites, together with the email located after the hearing, establishes the following chronology:

On November 13, 2021, Mr. Robinson wrote to Mr. Ramey under the subject "Transfer of Morehouse cases," proposing that Mr. Ramey take over the Valjakka matters and others. ECF No. 441-3. That same day, Mr. Robinson wrote to Eric Morehouse with AiPi that the ownership issue was "troubling to me," and that he could not "in good faith continue as counsel," suggesting that Mr. Morehouse "speak with [Mr.] Ramey to see whether he will take over the Valjakka cases," and saying he "will contact [Mr. Ramey] today." ECF No. 388-6 at 23-25; ECF No. 388-11 at 2-4. In the same email, Mr. Robinson mentions he had proposed to "withdraw the cases, fix any potential ownership issues, and then refile"; he also stated that he had "never spoken with Mr. Valjakka." ECF No. 388-6 at 23. The next day, on November 14, 2021, Mr. Ramey asked Mr. Robinson: "Ok and there is a title problem?" Mr. Robinson answered: "Have Eric explain it. *It may be okay.* They have an opinion of counsel from a Finnish law firm." ECF No. 441-3 at 3 (emphasis added).

On November 15, 2021, Jim Day, counsel for Akamai, wrote Mr. Robinson, copying Erik Lund, that Akamai had "identified the attached Federal Circuit case that essentially dictates the result here," and that refusing to dismiss "could easily lead to a Section 285 fee motion down the road." ECF No. 388-10 at 4. Mr. Lund forwarded that email to Mr. Morehouse, copying Mr. Robinson and Mr. Ramey. *Id.* at 3-4; ECF No. 388-6 ¶ 12. It is the first message in the exchange on which Mr. Ramey appears. On November 16, 2021, Mr. Ramey replied to Mr. Lund and Mr. Morehouse, copying Mr. Robinson:

> Is there a foreign court order establishing ownership? ¶ I must be missing some of the facts. My impression was that there was a foreign bankruptcy that resulted in the three principals having ownership. The patent then went abandoned and our guy Lowry [sic] revived the patent. Later in time, the two other principals assigned their rights to Lowry. [sic] Later still, Lowery sued. [sic] ¶ Let me know what is wrong with my facts? ¶ If correct, what is Akami's [sic] position? What piece are they missing?

ECF No. 388-10 at 3; ECF No. 388-6 at 16. Mr. Lund answered that there is "a Helinski [sic] Appeals court decision affirming a Helinski [sic] district court decision stating that a [December 20, 2005] Utilization contract has []no significance" to who held the rights to the invention; that "[t]he client's position is that the Helinski [sic] Appeals court decision pertained only to the [December 20, 2005]

Utilization contract and not the overall ownership of the patent"; and, attaching an opinion of counsel and the referenced "utilization contract." ECF No. 388-10 at 3. Mr. Ramey responded:

> This is a mess. ¶ The Appeals Court decision and district court decision do seem to address ownership. ¶ The legal opinion is light on citation to authority. ¶ But, it is a property right and we have the current assignment, correct?

*Id.* at 2. Mr. Morehouse replied: "Yes. We've got the assignment recorded at the PTO." *Id.* Mr. Ramey appeared for Mr. Valjakka in this action on the same day (November 16, 2021). ECF No. 11.

Mr. Robinson's declaration, executed April 17, 2026 and submitted with Netflix's Fee Motion, describes his emails with Mr. Day and with AiPi and attaches four exhibits. ECF No. 388-6 ¶¶ 1-15. It does not describe any communication with Mr. Ramey. The exhibits, Mr. Robinson states, "came from a production by AiPi to Netflix. They did not come from my files." *Id.* ¶ 15.

**C. Finnish Opinions Produced August 2022 in Discovery**

Netflix served its First Set of Requests for Production on June 9, 2022. Requests 31 and 32 sought all documents relating to ownership, title, transfer, and assignment of the asserted patents. ECF No. 388-31 at 12. On August 20, 2022, plaintiff produced LV000001 through LV003723; on August 31, 2022, he re-produced the set as LV000001 through LV003681. ECF Nos. 441-4, 441-6. Both productions contained the Finnish Opinions, in Finnish, Bates-stamped LV002274-LV002284 and LV002216-LV002226, respectively. ECF Nos. 441-5, 441-7. On June 23, 2023, nearly a year later, Netflix wrote to Respondents alleging the ownership defect. ECF No. 388-26. In the letter, Netflix acknowledges receiving the Finnish appellate opinion in August 2022. *Id.* at 3.

**D. The Hearing on the Fee Motion**

At the July 2, 2026, hearing, Netflix argued that "[a] reasonable litigant, when faced with these issues, would have done what Erick Robinson did," and that Mr. Robinson's November 13, 2021 email and Fee Motion declaration were "so important" because he "was faced with the same evidence—or a smaller amount of it, at least—as Mr. Ramey." Fee Hr'g Tr. at 30:8-16. Netflix described the November 13, 2021 email as "a contemporaneous email . . . which Mr. Robinson credited and reaffirmed" in his declaration. *Id.* at 14:4-6. The Court asked Netflix whether "another lawyer in his situation [would] have done anything different as it pertains solely to Akamai?

Wouldn't someone have just tried to get out of the case, and settle it, and why wouldn't you make it confidential?" *Id.* at 31:24-32:2. Netflix answered: "Your Honor, I agree with that. I agree that a reasonable litigant is going to try to get out, and get a little bit of money, and—which is what they did—and settle the case. But I do think it's part of a broader course of conduct in the case." *Id.* at 32:4-8. Netflix also told the Court that Respondents possessed an English version of the Finnish court opinions "that still today have not been produced to Netflix," that "[w]e only received them in Finnish *a couple of years later*, and we had to have them translated," *id.* at 9:12-15 (emphasis added), and that Netflix "didn't find out about [the ownership defect] until about 18 months later, through two trips to Helsinki." *Id.* at 10:7-8. There were no witnesses at the hearing; it consisted entirely of argument by counsel. The Fee Order followed on July 13, 2026, containing bad faith findings as to Mr. Ramey and directing the parties to meet and confer regarding the amount of attorney's fees for which Respondents are liable. ECF No. 416.

## III. LEGAL STANDARD

### A. Reconsideration Subject Matter

Local Rule 7-9 permits a party to seek leave to file a motion for reconsideration of an interlocutory order. The party must show diligence in bringing the motion and the motion must be based on one of three grounds:

> (b)(1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civil L. R. 7-9(b). The Fee Order remains interlocutory because the amount of fees has not yet been fixed. *See Jensen Elec. Co. v. Moore, Caldwell, Rowland & Dodd, Inc.*, 873 F.2d 1327, 1329 (9th Cir. 1989). The Court, therefore, retains authority to reconsider it. *See City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001). Local Rule 7-9 cross references

Federal Rule of Civil Procedure 54(b), which permits courts to revise an interlocutory order "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). In addition, the Court "has the inherent power to modify or change its orders to correct a mistake or error." *See R.E. Serv. Co. v. Johnson & Johnston Assocs., Inc.*, No. C-92-20672 RPA, 1995 WL 540072, at *3 (N.D. Cal. Sept. 6, 1995) (citing *In re Worlds of Wonder Sec. Litig.*, 814 F. Supp. 850, 874 (N.D. Cal. 1993); *Santa Monica Baykeeper*, 254 F.3d at 885 ("The general rule regarding the power of a district court to rescind an interlocutory order is as follows: 'As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient.'") (citation omitted).

Respondents bring this motion pursuant to Local Rule 7-9(b)(1) specifically, Federal Rule of Civil Procedure 54(b), and the Court's inherent authority to correct mistakes and errors.

**B. Bad Faith Standard**

Sanctions under Section 1927 "must be supported by a finding of subjective bad faith," which "is present when an attorney knowingly or recklessly raises a frivolous argument." ECF No. 416 at 9 (quoting *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015), and *Lake v. Gates*, 130 F.4th 1064, 1070 (9th Cir. 2025)). The Court's Fee Order correctly notes that in the Ninth Circuit, the case law is unclear regarding whether "mere recklessness" is sufficient to impose sanctions for attorney's fees under Section 1927. ECF No. 416 at 9 n.3. Mr. Ramey's position is that bad faith, and not just recklessness, must be found for such severe sanctions, and he affirmatively preserves this position should there be an appeal in this matter.

Inherent-power sanctions require a specific finding of bad faith or conduct "tantamount to bad faith." *Fink v. Gomez*, 239 F.3d 989, 993-94 (9th Cir. 2001). Under *Fink*, recklessness alone does not suffice: rather, it must be "combined" with an additional factor such as "frivolousness, harassment, or improper purpose." ECF No. 416 at 10 (citing *Fink*, 239 F.3d at 994). Mr. Ramey's position is that a bad faith finding should be required to impose attorney's fees sanctions under the Court's inherent authority and affirmatively preserves this argument should there be an appeal. If the same severe sanctions can be imposed under either Section 1927 or the Court's inherent

authority, then the same high standard should apply, rather than a broader, vaguer "tantamount to bad faith" standard.

Mr. Ramey's position is that, when the record is reconsidered with the information presented by this motion, he did not knowingly engage in bad faith conduct.[3]

## IV. ARGUMENT

### A. There is No Evidence Prior Counsel Told Mr. Ramey the '167 Patent Claim Was Defective and the Newly Submitted Email Reflects the Opposite.

The Fee Order finds that Mr. Ramey "found out about the ownership defect when he joined the case . . . after prior outside counsel resigned because of it," citing prior counsel's declaration and emails. ECF No. 416 at 13-14 (citing ECF No. 388-10 at 2-3; ECF No. 388-11; ECF No. 388-6 ¶¶ 5, 14). But Mr. Robinson's declaration does not support the proposition that he told Mr. Ramey about any defect. In paragraph 5, Mr. Robinson says that Akamai's counsel told him they believed Valjakka did not own the patent; Mr. Robinson also says he had been unaware of any ownership issue before that point. ECF No. 388-6 ¶ 5. And, in paragraph 14, Mr. Robinson, referring to email correspondence from the time period, says his "primary motivation for withdrawing was [his] concern regarding ownership." *Id.* ¶ 14. But Mr. Robinson does not state in either paragraph, or elsewhere, that he told Mr. Ramey there was a potential ownership defect with the '167 patent.

What Mr. Robinson did tell Mr. Ramey is now in the record through the newly submitted email correspondence. On November 13, 2021, having told Morehouse he would "contact [Mr. Ramey] today," ECF No. 388-6 at 23; ECF No. 388-11 at 2, Mr. Robinson did exactly that: he wrote to Mr. Ramey proposing to transfer cases, including the instant one. ECF No. 441-3. The next day, on November 14, 2021, Mr. Ramey asked directly whether "there is a title problem." *Id.* Mr. Robinson answered: "Have Eric explain it. *It may be okay.* They have an opinion of counsel from a Finnish law firm." *Id.* (emphasis added). A departing lawyer who tells his successor that the issue "may be okay" and points him to an opinion of counsel is not telling the successor that the claim is baseless. He is telling him the opposite. Mr. Robinson's email to Mr. Ramey *followed* his

[3] In so arguing, he does not concede that the present Fee Order on the record it relied on is sufficient for the bad faith finding. Mr. Ramey affirmatively preserves this issue for appeal, as well.

communications with Mr. Morehouse where he refers to the ownership issue as "troubling" him in the context of discussing potential "fix[es]" he had proposed. ECF No. 388-6 at 23.

Mr. Robinson's declaration was ostensibly offered to prove that Mr. Ramey took the instant case knowing it was defective—and to make the point that another lawyer would have seen the ownership problem and withdrawn—but it omits Mr. Robinson's own statement to Mr. Ramey that the issue "may be okay." A statement Mr. Robinson made after being presented with the purported problems. Netflix, at the Fee Motion hearing, told the Court that Mr. Robinson's declaration "credited and reaffirmed" the contemporaneous record. Fee Hr'g Tr. 14:4-6. But the contemporaneous record was incomplete. It now includes what Mr. Robinson actually told Mr. Ramey, and the declaration does not address or explain it.[4]

The Court did not find Mr. Ramey's sworn account of these conversations credible. ECF No. 402-1 ¶¶ 4-7, 10-14, 20. It found "the evidence is to the contrary," and it identified that evidence as the November 16, 2021, email (addressed below). ECF No. 416 at 14. Excluding the November 16 email, the record contains one witness (Mr. Ramey) who swears Mr. Robinson did not tell him the claim was fatally defective, but rather that there may be a path forward with the litigation; an email from Mr. Robinson to Mr. Ramey saying the ownership issue "may be okay;" and, a declaration from Mr. Robinson that does not address the subject. This evidence is insufficient to support a finding that Mr. Ramey knew his client's claim was baseless because his predecessor told him so. His predecessor told him the opposite.

**B. The Full Context of the November 16, 2021, Email Exchange Shows Mr. Ramey Investigating Facts, Not Accepting That the Ownership Question is Foreclosed and Proceeding Forward Anyway**

The Fee Order cites to the November 16, 2021, email where Mr. Ramey says "[t]his is a mess" and "[t]he Appeals Court decision and district court decision do seem to address ownership." ECF No. 416 at 3, 14. The email is the third message Mr. Ramey wrote that day on a subject to

[4] Respondents are clear here that they are not accusing Mr. Robinson or Netflix of any willful omission with respect to the newly submitted email. Mr. Robinson may not have had access to the newly submitted email. The fact of the matter, however, is that the newly submitted email materially changes the context of the record in a way that requires reconsideration and withdrawal of the bad faith finding.

which he had just been introduced. According to this exchange, Mr. Ramey began the day by asking Mr. Lund and Mr. Morehouse, with Mr. Robinson copied, "Is there a foreign court order establishing ownership? I must be missing some of the facts," followed by his understanding of the chain of title and a request to be told "what is wrong with my facts" and "what is Akami's [sic] position? What piece are they missing?" ECF No. 388-10 at 3. Mr. Ramey's question reflects what might be expected from a lawyer who has just received a forwarded chain from opposing counsel and does not yet understand the issues. Mr. Lund answered by discussing the Finnish Opinions, the client's position that they concerned only the 2005 Utilization contract "and not the overall ownership of the patent," the client's "most recent legal opinion on this issue" from Berggren Oy, and the Utilization contract itself. *Id.* Mr. Ramey's reply acknowledged that the Finnish decisions "do seem to address ownership," criticized the opinion of counsel as "light on citation to authority," and asked the question that at that juncture he thought mattered for the purposes of continuing with the action: "But, it is a property right and we have the current assignment, correct?" *Id.* at 2. Mr. Morehouse replied that the assignment was recorded at the PTO. *Id.*

Mr. Robinson's email stating that the ownership issue "may be okay" is uniquely important to understanding why Mr. Ramey proceeded forward here. No lawyer has reason to believe that a colleague would hand him a frivolous, indefensible suit—*particularly* after he has specifically posed the question of ownership and received affirmation that a strategy to move forward might exist. That is exactly what Mr. Robinson conveyed to Mr. Ramey, which is significant, but which was absent from the record the Court relied on for the Fee Order. To be clear, Respondents are not asserting that their merits arguments throughout the litigation were correct or that their lawyering was beyond reproach. But the question here is *bad faith*, not quality lawyering. The November 16, 2021 emails reflect that Mr. Ramey, upon first receiving a new matter, and after being told by departing counsel that there may be a path forward, engaged with the issues and asked candid questions just as any other lawyer onboarding onto a case would. None of the emails reflect Mr. Ramey taking on the case with the purpose of conceiving a scheme to deceive Netflix.

**C. There Was No "Course of Conduct" to Deceive, Since the Finnish Opinions Were Produced in the First Document Production in Discovery in August 2022, as Netflix Must Concede.**

The Fee Order describes a bad-faith course of conduct and finds that Mr. Ramey "concealed the implications of the Finnish court opinions" by settling with Akamai and not producing Finnish opinion-related documents. ECF No. 416 at 14-15. At the hearing, the Court asked Netflix whether another lawyer in Mr. Ramey's position would have done anything different as to Akamai, and Netflix agreed that a reasonable litigant "is going to try to get out, and get a little bit of money, and—which is what they did—and settle the case," arguing the settlement mattered only as "part of a broader course of conduct." Fee Hr'g Tr. 31:24-32:8. The settlement issue boils down to the theory that Mr. Ramey tried to conceal the Finnish Opinions and their import, however. ECF No. 416 at 15 n.5 (noting settlement confidentiality agreements are "unremarkable" but citing *inter alia* the "failure to timely disclose the Finnish court opinion" as a reason to factor it into the course of conduct theory).

As previously stated, the Fee Order found that the case was brought in bad faith "because two competent courts had rejected Valjakka's ownership theory and Valjakka and Ramey *concealed* that fact." ECF No. 416 at 15 (emphasis added). The Order also acknowledges that Mr. Valjakka "*produced* a Finnish-language copy of the Finnish court order." *Id.* at 3. These two findings regarding concealment and production are not reconciled, and the Fee Order never asks when the production occurred. The answer is that the Finnish Opinions were delivered to Netflix in plaintiff's first document production, on August 20, 2022, two months after Netflix served the requests that called for them, and again on August 31, 2022. ECF Nos. 441-4 through 441-7. Thus, by August 31, 2022, at the latest, Netflix held the Finnish Opinions in hand. True, the opinions were in Finnish, but modern technology permits anyone—and certainly Netflix's sophisticated counsel—to immediately translate foreign language documents and, at minimum, comprehend their nature. Production of the original source during discovery is not concealment by the producing party, and it is not evidence that supports a bad faith finding.

At the hearing on the Fee Motion, Netflix told the Court that it received the Finnish orders "*a couple of years later*," Fee Hr'g Tr. 9:12-15 (emphasis added), and that it "didn't find out about

[the issue] until about 18 months later, through two trips to Helsinki." *Id.* at 10:7-8. But the emails transmitting the discovery production show receipt in August 2022. ECF Nos. 441-4 through 441-7. Netflix was also aware of (even if perhaps it did not recall) the Finnish Opinions' production date because it appended to its Fee Motion a June 23, 2023, letter where it states that it received the Finnish Opinions in their original language in August 2022. ECF Nos. 441-4, 441-6; ECF No. 388-26 at 3. In sum, Netflix's description of the timeline at the hearing was wrong and the chronology in its moving papers was ambiguous. The Order's concealment finding, though, was entered in reliance of these descriptions and without reference to the August 2022 productions. The timing, however, is everything: Mr. Ramey produced the opinions during discovery; he would *not* have produced them if he intended to conceal them and their significance.

Netflix asserted at the hearing that Mr. Ramey personally possessed "an English version of the Finnish court opinions that still today have not been produced to Netflix." Fee Hr'g Tr. 9:12-14. Mr. Ramey answered at the hearing that he did not recall possessing such copies. *Id.* at 21:14-17. In any event, the point does not change the analysis. Even if Mr. Ramey was in possession of an English translation circulated by Akamai, which he does not recall, not producing the translation does not equate to bad faith. He produced the primary source documents, which could be translated and understood by anyone with access to the Internet, in August 2022. The opinion-of-counsel letters and the Akamai prior art, which the Order also lists, ECF No. 416 at 15, are different documents to be sure. But their significance is that they all stem from or relate to the underlying Finnish Opinions, which were produced. The bottom line is that Netflix had the Finnish Opinions in hand as of August 2022. Again, had Mr. Ramey truly intended to conceal the opinions and their import, he would not have produced them in the first phase of discovery.

## V. CONCLUSION

A finding that a lawyer knowingly pursued a baseless claim in bad faith is the most serious finding a court makes about a member of the bar short of a referral. It carries professional consequences independent of any dollar figure, and for that reason personal sanctions against counsel should carry the strictest due-process protections. For the foregoing reasons, Respondents respectfully ask the Court to reconsider and deny Netflix's motion as to Respondents and vacate the

determination that Respondents acted in bad faith under Section 1927 and the Court's inherent authority, together with the derivative conclusion that Respondents are liable for attorney's fees. Respondents ask the Court to set an evidentiary hearing if it determines that any factual issues remain unresolved or require additional clarity.

DATED: September 21, 2026

Respectfully submitted,

*/s/ Cuauhtemoc Ortega*

Cuauhtemoc Ortega (SBN 257443)
STRIS & MAHER LLP
17785 Center Court Dr. N., Ste 600
Cerritos, CA 90703
Tel: (213) (995)-6800
cortega@stris.com

COUNSEL FOR WILLIAM P. RAMEY, III AND RAMEY LLP

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| LAURI VALJAKKA<br>*Plaintiff*,<br>v.<br>NETFLIX INC,<br>*Defendant*. | Case No. 4:22-cv-01490-JST<br>**[PROPOSED] ORDER GRANTING RESPONDENTS WILLIAM P. RAMEY, III AND RAMEY LLP'S MOTION FOR RECONSIDERATION OF ORDER GRANTING DEFENDANT'S MOTION FOR ATTORNEY'S FEES (ECF NO. 416)**<br>Judge: Hon. Jon S. Tigar |

Before the Court is Respondents William P. Ramey, III and Ramey LLP's Motion for Reconsideration of the Order Granting Defendant's Motion for Attorney's Fees, ECF No. 416. The motion for reconsideration is **GRANTED**. Netflix's motion for attorney's fees, ECF. No. 388, is **DENIED** as to Respondents William P. Ramey, III and Ramey LLP, and no award of attorney's fees shall be entered against them. The Court's ruling on Netflix's motion for attorney's fees remains unchanged as to Plaintiff Lauri Valjakka.

IT IS SO ORDERED.

DATED:

JON S. TIGAR
United States District Judge