United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LAURI VALJAKKA,
Plaintiff,

v.

NETFLIX, INC.,
Defendant.

Case No. 22-cv-01490-JST

**ORDER SETTING FEE AMOUNT UNDER SECTION 1927**

Re: ECF No. 416

## I. BACKGROUND

On April 17, 2026, Defendant Netflix, Inc. moved for an order awarding it $3 million in reasonable attorneys' fees pursuant to 35 U.S.C. § 285, 28 U.S.C. § 1927, the Court's inherent power, Federal Rule of Civil Procedure 54, and Civil Local Rule 54-5. ECF No. 388 at 7. That amount was less than 50% of the approximately $6.2 million it incurred defending this action. ECF No. 416 at 7. Netflix sought an order holding Plaintiff Lauri Valjakka, his attorney William Ramey, and the law firm Ramey LLP jointly and severally responsible for the total sum. ECF No. 388 at 7. On July 13, 2026, the Court granted the motion and imposed the $3 million award on Valjakka (the "Fee Order"). ECF No. 416 at 23. It found Ramey and Ramey LLP jointly and severally liable with Valjakka for those fees in an amount to be determined upon consideration of further submissions from the parties. *Id.* Those submissions were to "take into account, among other relevant matters, the Court's determinations concerning bad faith and the law's requirement that fee-based sanctions evince a causal relationship between misconduct and the fees incurred." *Id.* This order resolves that question and sets the fee amount against Ramey and Ramey LLP.

## II. LEGAL STANDARD

As the Court explained in its prior order, sanctions against Ramey are imposed under 28

United States District Court
Northern District of California

U.S.C. § 1927. Section 1927 authorizes fee-based sanctions against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." *See* 28 U.S.C. § 1927. Section 1927 sanctions require the attorney to have acted in bad faith. *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015). In addition, such fee-based sanctions must be compensatory rather than punitive and calibrated to the damages caused by the misconduct. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108–09 (2017). The Court must "establish a causal link" between the sanctioned conduct and the fees claimed. *Id*. at 108 n.5. A court may also award fees for costs incurred because of the decision to pursue litigation or because of an entire course of litigation conduct, where warranted. *See id.* at 110–11 (2017) ("If a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior, the court may again make a blanket award" without partaking in "the grind of segregating individual expense items.").

## III. DISCUSSION

The Fee Order awarded fees based on the following conduct: (1) the pursuit of claims based on the '167 Patent even though Valjakka did not own it and concealment of that fact, ECF No. 416 at 13–14, 15; (2) concealment and misrepresentation of the fact that Valjakka had divested exclusive rights in both patents to a company called CDN, *id*. at 17; (3) the pursuit of claims based on exceptionally meritless infringement theories, *id*. at 18; (4) the facilitation of unauthorized practice of law by outside attorneys at AiPi, LLC, *id*. at 19; and (5) the concealment of the relationship with AiPi, *id*. at 19–20. Only the first and fifth grounds provided a basis for Section 1927 fees against Ramey. *Id*. at 15, 19–20.

The Court did not consider the *facilitation* of unauthorized practice of law (the fourth ground) to be part of the basis of a fee award against Ramey because it did not "vexatiously multiply" litigation as Section 1927 requires. ECF No. 416 at 19. The concealment of the relationship, however, did multiply litigation by forcing Netflix to seek discovery elsewhere. *Id*. at 19–20. It was also manifestly in bad faith. Ramey entered into the engagement agreement with AiPi and expressly directed them to perform a wide range of legal tasks without disclosing their role to Netflix or to the Court. ECF No. 416 at 19. The concealment of the unauthorized practice

of law was especially egregious given Ramey's extensive prior engagement with AiPi in similar cases and under similar circumstances. ECF No. 387-3 at 25.

**A. Concealment of the '167 Patent Ownership Issue**

Because the Court has concluded that Ramey acted in bad faith in pursuing litigation based on the '167 Patent and concealing the fact that Valjakka did not own it, the entirety of the subsequent litigation over the '167 Patent was caused by his misconduct. *See Raydiant Oximetry, Inc. v. ALC Med. Holdings LLC*, 808 F. Supp. 3d 987, 1003 (N.D. Cal. 2025) (noting attorneys' duty to withdraw meritless litigation positions and awarding litigation fees for "the willful continuation of a suit known to be meritless" (citation omitted)).

Netflix proposes a reasonable method of parsing the fees attributable to the '167 Patent from fees attributable to litigation concerning the other asserted patent (the '102 Patent): between June 13, 2023, when the Court dismissed the '102 Patent, and January 8, 2024, when the Court found that Valjakka did not own the '167 Patent, fees are solely attributable to the '167 Patent. ECF No. 440 at 2, 3; ECF No. 439-6 at 2–4. Prior to that date, "Netflix includes only 50% of its total fees that were not specifically allocated to work regarding one of the patents, and excludes all work specifically related to the '102 patent." *Id*. at 3. The Court considers such a reduction reasonable because a single billed activity—Netflix provides the example of a strategy call—may include "issues unique to each patent but also common issues." *Id*. at 4. In addition, the record supports Netflix's position that '167 Patent litigation warrants higher billing than the '102 Patent litigation because it involved ownership issues not present for the '102 Patent and because the '102 Patent was not otherwise more complex or demanding. As such, an even allocation between patents is not only reasonable but conservative. *See David Austin Roses, Ltd. v. Jackson & Perkins Wholesale, Inc.*, No. 09-3027, 2010 WL 555674, at *2 (D. Or. Feb. 16, 2010) (allocating undifferentiated fees between recoverable patent and nonrecoverable contract claims in a 70%–30% split because the contract claim "was simpler than the patent claim"); *Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*, No. 11-01011, 2015 WL 12765635, at *4 (C.D. Cal. Nov. 20, 2015) (awarding 25% of requested fees on "intertwined" time given the accused products subject to the fee award "played a much smaller role" than the products not subject to the award). Netflix also

excludes "any fees attributed to work related to CUVTA issues because the Court did not find Ramey liable for fees related to Valjakka's CUVTA violations." ECF No. 440 at 3. The end result is a sum of $2,326,749 attributable to the enforcement of the '167 Patent and concealment of the ownership issue. *Id*.

Ramey argues that Netflix advocates a "temporal" approach prohibited by *Goodyear Tire*, wherein the court grants "all attorney's fees incurred 'during the time when [Goodyear was] acting in bad faith.'" 581 U.S. at 112–13; ECF No. 441 at 4. Not so. As *Goodyear Tire* recognized, all fees were caused by an attorney or party's conduct where the litigation would not have been initiated or continued but for that conduct. *Id*. at 110–11. As the Court set forth in the Fee Order and above, that is the case here.

Ramey's counterproposal is that fees attributable to the concealed ownership defect should be calculated according to one of two keyword-search approaches: "(1) under an 'exclusion dominant' filter, which excludes compound time entries that include narrative references to both ownership and excluded categories, and (2) an 'ownership dominant' filter, which includes every entry that contains ownership key words, even if it contains narrative descriptions that also fall in excluded categories." ECF No. 441 at 6. The Court rejects this approach. Any such approach would be overly restrictive, ignoring the fact that the concealment of the '167 Patent ownership defect caused the litigation to be sustained when it should not have been. As the Court held in the Fee Order, "Ramey found out about the ownership defect when he joined the case in November 2021 … yet nonetheless assumed the representation [of Valjakka] and pursued meritless claims for almost three years." ECF No. 416 at 13–14. In other words, Ramey's conduct caused Netflix to expend hours litigating not just ownership, but all issues related to the '167 Patent. Had the ownership defect been brought to light from the beginning, the litigation would have quickly ceased. Because of Ramey's conduct, it was not resolved until the Court's summary judgment order of January 8, 2024.[1] ECF No. 257.

[1] Ramey also attempts to relitigate the Court's bad faith finding with respect to the concealment of the ownership issue. ECF No. 441 at 5–6. These issues exceed the scope of the supplemental briefing ordered by the Court, and, in any case, were adequately considered in the Fee Order.

United States District Court
Northern District of California

**B. Discovery Caused by Concealment of AiPi**

In his opposition to the original fees motion, Ramey argued that any fees award should be truncated at March 4, 2024, the date he withdrew as counsel. ECF No. 402 at 25. Netflix argued that his bad-faith conduct in concealing the relationship with AiPi continued to cause Netflix to incur significant late-breaking discovery costs after that date. ECF No. 407 at 14–15. The Court adopted that position. ECF No. 416 at 20 ("Ramey is responsible for discovery costs incurred after his withdrawal but attributable to his reticence to disclose information about CDN[2] and AiPi.").

Netflix asserts that it incurred $957,728 related primarily to highly contested Eastern District of Virginia litigation to compel AiPi to produce documents that Ramey should have produced during discovery. ECF No. 440 at 5; ECF No. 439-6 at 5. They argue that these fees "could have been avoided had Ramey complied with [his] obligations during fact discovery and not withheld these highly-relevant materials." ECF No. 440 at 5. Ramey counters that "[h]ad AiPi's role been disclosed earlier, Netflix would still likely have had to investigate AiPi, sought discovery from it, reviewed its productions, litigated objections, and taken discovery concerning its role in the case," so "Netflix cannot establish that it wouldn't have engaged in protracted discovery-related activity with AiPi, even if it had learned of it earlier." *Id*. Netflix's point, of course, is that the process of securing the necessary information was far more burdensome through parallel federal litigation than it would have been had Ramey made the appropriate productions pursuant to his discovery obligations in this matter. Nonetheless, because Ramey is likely correct that a significant amount of discovery-related activity would still likely have been required even if Ramey had complied, the Court reduces the figure Netflix seeks by half, from $957,728 to $478,864.

Ramey also argues that only 360.8 hours of Netflix's billed time pertain to entries whose

[2] The Fee Order erred in stating that Ramey was responsible for discovery costs attributable to the nondisclosure of CDN, because the Court also could not conclude that Ramey's failure to disclose CDN's role was not in bad faith. Sanctions awards under either the Court's inherent authority or Section 1927 require a finding of bad faith. Because Netflix's accounting only discusses discovery costs incurred because of the failure to disclose AiPi's existence, the Court's error does not affect this order. *See* ECF No. 440 at 4–5.

United States District Court
Northern District of California

narratives involve both discovery activity and AiPi but do not mention the protective-order breach, the forensic production, the fee motion, sanctions, privilege disputes, appellate matters, CDN, or CUVTA. ECF No. 441 at 7; ECF No. 441-1 ¶ 20. He does not justify removing entries wholesale merely because they mention one of these categories; in addition, with respect to several categories (e.g., "the forensic production," "privilege disputes"), it is unclear why those terms should provide a basis for reduction at all. The cited paragraph of his declaration references an Exhibit D containing methodological details, but that exhibit does not appear to be attached—instead, Exhibit D to his filing is a copy of a Finnish court order. *See* ECF No. 441-5. In any case, the Court has roughly accounted for some overbilling concerning the Eastern District of Virginia litigation by reducing the amount Netflix seeks by half.

**C. Fees Incurred in Preparing the Fees Motion**

As Netflix argues, "[Section] 1927 allows an award of attorneys' fees incurred in obtaining a sanctions award." *Blixseth*, 854 F.3d at 632. Netflix attributes $84,004 to fees incurred researching and drafting the fees motion, excluding any time expressly dedicated to researching or drafting issues for which the Court did not find Ramey and Ramey LLP liable. ECF No. 440 at 5; ECF No. 439-6 at 6. This amount is conservative in that it excludes time spent on the reply, oral argument preparation, and the supplemental briefing ordered by the Court and resolved in this order. *Id*. The Court finds it reasonable.

**D. Further Reduction**

The fees caused by Ramey's bad faith conduct are $2,326,749 plus $478,864 plus $84,004, for a total of $2,889,617.

In its motion for a fee award, Netflix proposed reducing the total fees spent on relevant aspects of the litigation—an estimated $6.2 million[3]—to $3 million. ECF No. 387-3 at 30. In response, Ramey did not dispute that Netflix's attorneys' hourly rates were reasonable for this

[3] This figure only incorporated the hours of attorneys who billed in excess of 100 hours on the matter; it excluded "over $800,000 in additional fees for work performed by other attorneys, paralegal and other non-attorney support on this district court litigation," "work related to PTAB proceedings on the asserted patents," and "hundreds of thousands in costs and fees to technical and damages experts." ECF No. 387-3 at 30.

United States District Court
Northern District of California

type of litigation or that the hours of attorney time were reasonably expended. ECF No. 402 at 24–26.[4] The Court adopted Netflix's suggestion that its fees be reduced by half, which saved the parties and the Court considerable energy in parsing each billing entry to determine whether the hours expended were overly lengthy, duplicative, performed by an individual of inappropriate seniority, or otherwise unreasonable.

Netflix now seeks to impose the entire fee award on Ramey because the hours it has attributed to his misconduct exceed $3 million. ECF No. 440 at 6. But the parties and the Court have already decided on an across-the-board reduction of approximately half. The Court therefore reduces the total fees attributable to Ramey's misconduct by the same proportion it reduced the initial award ($6.2 million to $3 million). Doing so yields a figure of $1,398,201.77.

## CONCLUSION

Ramey and Ramey LLP are jointly and severally liable with Valjakka for $1,398,201.77 of the total $3 million fee award.

**IT IS SO ORDERED.**

Dated: September 28, 2026

JON S. TIGAR
United States District Judge

[4] There is one exception: Ramey's opposition mentioned in passing "a 342 hour aggregate shortfall between the Baker Botts line items and Lamkin ¶ 23 (worth approximately $308,988 at the implied blended rate)," "a 47.70-hour Delacenserie discrepancy that runs in the opposite direction of any protective-order deduction," and "recurring block billing, vague entries, and clerical work billed at attorney rates." ECF No. 402 at 26. He provided no further detail and did not ask the Court to reduce the award to account for any of these alleged deficiencies, however. The Court declined to do so on its own initiative, having already reduced the fee award from $6.2 million to $3 million at Netflix's suggestion.